DREW TULUMELLO (#196484)
drew.tulumello@weil.com
MARK A. PERRY (#212532)
mark.perry@weil.com
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
Tel: 202 682 7000
Fax: 202 857 0940

*Attorneys for Visa Inc.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| K.A.,<br><br>              Plaintiff,<br><br>       v.<br><br>MINDGEEK S.A.R.L.; MG FREESITES, LTD; MINDGEEK USA INCORPORATED; MG PREMIUM LTD.; MG GLOBAL ENTERTAINMENT INC.; 9219-1568 Quebec, Inc.; BERND BERGMAIR; FERAS ANTOON; DAVID TASSILLO; COREY URMAN; VISA INC.; REDWOOD CAPITAL MANAGEMENT, LLC ; REDWOOD DOE FUNDS 1-7 ; COLBECK CAPITAL MANAGEMENT, LLC; COLBECK DOE FUNDS 1-3,<br><br>              Defendants. | Case No. 2:24-CV-04786-WLH-ADS<br><br>Judicial Officer: Wesley L. Hsu<br>Courtroom: 9B<br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT VISA INC.'S OMNIBUS MOTION TO DISMISS**<br><br>Date: January 31, 2025<br>Time: 1:30 p.m. |

# <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ....................................................................................... 1

BACKGROUND ......................................................................................... 3

I.  Plaintiffs' Allegations Against MindGeek ...................................... 3

II.  Visa's Business ................................................................................ 4

III.  Plaintiffs' Allegations Regarding Visa ........................................... 5

IV.  Procedural History .......................................................................... 6

LEGAL STANDARD ................................................................................. 7

ARGUMENT .............................................................................................. 8

I.  Plaintiffs Lack Article III Standing as to Visa ............................... 9

II.  The Complaints Do Not State a Claim Against Visa for Direct TVPRA Liability ............................................................................ 14

III.  The Complaints Do Not State A Claim For Civil Conspiracy Against Visa ................................................................................... 17

IV.  The Complaints Fail To Allege A State Law Claim Under California Business And Professions Code §§ 17200, 17500 ........................ 17

V.  The Complaints Fail To Allege Intentional Infliction Of Emotional Distress ........................................................................ 17

VI.  The Complaints Should Be Dismissed With Prejudice As To Visa ............ 20

CONCLUSION .......................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.B. v. Hilton Worldwide Holdings Inc.*,
   484 F. Supp. 3d 921 (D. Or. 2020)..................................................................... 15

*Adobe Sys. Inc. v. Blue Source Grp., Inc.*,
   125 F. Supp. 3d 945 (N.D. Cal. 2015)................................................................ 18

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................................................ 7

*B.M. v. Wyndham Hotels & Resorts, Inc.*,
   2020 WL 4368214 (N.D. Cal. July 30, 2020) ................................................. 14

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................................ 7

*Benavidez v. County of San Diego*,
   993 F.3d 1134 (9th Cir. 2021) ............................................................................. 8

*Boschma v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,
   2018 WL 2251629 (C.D. Cal. May 16, 2018)................................................. 12

*Christensen v. Super. Ct.*,
   54 Cal. 3d 868 (1991) .......................................................................................... 19

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*,
   911 F.2d 242 (9th Cir. 1990) ............................................................................. 20

*Daniel v. Nat'l Park Serv.*,
   891 F.3d 762 (9th Cir. 2018) ............................................................................. 11

*Doe #1 v. Red Roof Inns, Inc.*,
   21 F.4th 714 (11th Cir. 2021) ............................................................... 14, 15, 16

*Doe #9 v. Wyndham Hotels & Resorts, Inc.*,
   2021 WL 1186333 (S.D. Tex. Mar. 30, 2021) .............................................. 15

*Doe I v. Apple Inc.*,
2021 WL 5774224 (D.D.C. Nov. 2, 2021), *aff'd*, 96 F.4th 403 (D.C. Cir. 2024) ................................................................................................ 12

*Dutta v. State Farm Mut. Auto. Ins. Co.*,
895 F.3d 1166 (9th Cir. 2018) ...................................................... 11

*Emery v. Visa Int'l Serv. Ass'n*,
95 Cal. App. 4th 952 (2002) .......................................................... 4

*Ess v. Eskaton Props., Inc.*,
97 Cal. App. 4th 120 (2002) ......................................................... 20

*Fleites v. MindGeek S.a.r.l.*,
617 F. Supp. 3d 1146 (C.D. Cal. 2022) ................................*passim*

*Flores v. J.C. Penney*,
2006 WL 8442634 (S.D. Cal. Mar. 16, 2006), *aff'd*, 256 F. App'x 979 (9th Cir. 2007) ............................................................................... 19

*Gauvin v. Trombatore*,
682 F. Supp. 1067 (N.D. Cal. 1988)............................................. 18

*Hughes v. Pair*,
46 Cal. 4th 1035 (2009) .......................................................... 17, 18

*J.C. v. Choice Hotels Int'l, Inc.*,
2020 WL 6318707 (N.D. Cal. Oct. 28, 2020) ........................ 15, 16

*Jacobsen v. Marin Gen. Hosp.*,
192 F.3d 881 (9th Cir. 1999) ........................................................ 20

*Janken v. GM Hughes Elecs.*,
46 Cal. App. 4th 55 (1996) ........................................................... 19

*Kaing v. Pulte Homes, Inc.*,
2010 WL 625365 (N.D. Cal. Feb. 18, 2010), *aff'd*, 464 F. App'x 630 (9th Cir. 2011) ............................................................................... 13

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)........................................................................ 9

*Madstad Eng'g, Inc. v. U.S. Patent & Trademark Off.*,
756 F.3d 1366 (Fed. Cir. 2014) .................................................... 12

*Mayfield v. County of Merced*,
    2014 WL 2574791 (E.D. Cal. June 9, 2014) .......................................................... 18, 19

*Murthy v. Missouri*,
    144 S. Ct. 1972 (2024)...................................................................................9, 10, 12

*Native Village of Kivalina v. ExxonMobil Corp.*,
    663 F. Supp. 2d 863 (N.D. Cal. 2009), *aff'd*, 696 F.3d 849 (9th Cir.
    2012) ................................................................................................................. 13

*Ratha v. Phatthana Seafood Co.*,
    2017 WL 8293174 (C.D. Cal. Dec. 21, 2017), *aff'd*, 26 F.4th 1029 (9th
    Cir. 2022) ........................................................................................................... 14

*Ratha v. Rubicon Res., LLC*,
    111 F.4th 946 (9th Cir. 2024) ............................................................................. 15

*Reddy v. Litton Indus., Inc.*,
    912 F.2d 291 (9th Cir. 1990) .............................................................................. 20

*S.J. v. Choice Hotels Int'l, Inc.*,
    473 F. Supp. 3d 147 (E.D.N.Y. 2020) ................................................................ 16

*Simon v. E. Ky. Welfare Rts. Org.*,
    426 U.S. 26 (1976)............................................................................................... 9

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ........................................................................................... 10

*Wilson v. JPMorgan Chase Bank, N.A.*,
    2010 WL 2574032 (E.D. Cal. June 25, 2010) ..................................................... 19

**Statutes**

18 U.S.C. § 1591 ...............................................................................................*passim*

18 U.S.C. § 1594................................................................................................. 6, 17

18 U.S.C. § 1595............................................................................................ 14, 15, 17

Cal. Bus. & Prof. Code § 17200 ............................................................................. 17

Cal. Bus. & Prof. Code § 17500 ............................................................................. 17

VISA'S MEMORANDUM OF LAW IN
SUPPORT OF OMNIBUS MOTION TO
DISMISS
        iv
        2:24-CV-04786-WLH-ADS

# INTRODUCTION

Like the plaintiff in *Fleites v. MindGeek S.a.r.l.*, No. 21-CV-4920, Plaintiffs in these related cases allege they were underage victims of sexual exploitation, including the creation of explicit videos that were uploaded to the free adult video website, Pornhub, and other websites allegedly owned or operated by Defendant MindGeek S.a.r.l. ("MindGeek") and/or its officers and affiliates.  As it has made clear before, Defendant Visa, Inc. ("Visa") unequivocally condemns the creation or dissemination of child sexual abuse material ("CSAM") and other unlawful content.

Visa files this omnibus motion because, as a payment card processing company that does not even contract directly with merchants like MindGeek, it is not liable for the conduct alleged in the related complaints and should not be a defendant in these litigations.  As in *Fleites*, Visa is not alleged to have known anything about Plaintiffs, their individual circumstances, or the videos uploaded to Pornhub prior to the filing of this lawsuit, and Visa has at all times prohibited its partner banks from dealing with merchants that use Visa's payment processing services for unlawful purposes. Nevertheless, Plaintiffs accuse Visa (in identical terms across all complaints) of participating in or conspiring with MindGeek to operate a trafficking venture.  There are no plausible or legally sufficient allegations to support these claims, which should be dismissed in their entirety as against Visa.

At the outset, none of Plaintiffs' injuries—which all arise from the production and dissemination of the unlawful videos made of them—is traceable to Visa.  The only conduct alleged as to Visa is the processing of payments for some of MindGeek's websites, but there is no connection between such payment processing and the underlying conduct that caused Plaintiffs' harm.  Any theory that seeks to tie Visa to the harm would require impermissible speculation about the conduct of third parties, in contravention of longstanding precedent recently reaffirmed by the Supreme Court.

On the merits, Plaintiffs' claim for direct, participation liability under the Trafficking Victims Protection Reauthorization Act ("TVPRA") against Visa fails.  The

overwhelming precedent holds that a party "participat[es]" in a trafficking venture only if that party knowingly participates in the specific conduct involving a particular plaintiff. Here, however, there are no allegations that Visa actively participated in any trafficking venture or that Visa had any knowledge of Plaintiffs, the videos, or Plainitffs' efforts to remove the videos from MindGeek's websites.  It is for that reason that Judge Carney in *Fleites* dismissed this theory of liability in almost summary terms.  The same result should follow here.

Plaintiffs' conspiracy claims—under the TVPRA and the common law—and their claims pursuant to California's Unfair Competition Law ("UCL") fail for the reasons set forth in Visa's motion to dismiss the second amended complaint in *Fleites*.  *See* Ex. A.  Visa incorporates those arguments by reference here.  *See* ECF No. 54.

The only claims asserted by Plaintiffs in these cases not asserted by the plaintiff in *Fleites* are for intentional infliction of emotional distress ("IIED").  But those claims are easily dispatched as to Visa.  To start, Plaintiffs engage in impermissible group pleading, lumping all "defendants" together under this count without identifying the actual conduct of any particular Defendant.  More crucially, Plaintiffs do not allege any "outrageous" or "extreme" conduct by Visa that would come even close to meeting the standard for an IIED claim.  All Plaintiffs have alleged is the routine processing of credit card payments by Visa, which is the kind of ordinary and normal conduct courts have rejected as insufficient to give rise to an IIED claim.  And finally, Plaintiffs have not alleged any conduct by Visa "directed at" Plaintiffs, which is an essential element of an IIED claim.  Again, Visa had no knowledge of any of Plaintiffs or the videos that gave rise to their injuries.

The gravity of Plaintiffs' allegations is not disputed, but it does not follow that Visa can or should be held liable for that abuse simply because it provides general-use payment processing services to acquiring banks.  Under settled law, Plaintiffs' claims against Visa should be dismissed.

# BACKGROUND

The allegations described below come from the Complaint filed in the above-captioned action. The related cases that are the subject of this omnibus motion to dismiss contain identical allegations as to Visa.

## I. Plaintiffs' Allegations Against MindGeek

Each of the complaints describes Plaintiffs' experience as a victim of underage sexual exploitation. By way of example only—because each Plaintiff's story is unique—Plaintiff K.A. alleges that at the age of seventeen, her adult boyfriend coerced her into a sexual encounter, which he recorded and uploaded to Pornhub. Compl. ¶ 311. Pornhub is an adult video website with user-generated content owned and operated by MindGeek S.a.r.l., a Canada-based company, and its subsidiary entities. *See id.* ¶¶ 11–12. K.A. alleges that MindGeek earned revenue from the video by placing it alongside advertisements from third parties. *See id.* ¶ 313. K.A. contacted the police, who conducted an investigation in which K.A.'s ex-boyfriend admitted that he had uploaded the video to Pornhub and that K.A. was underage at the time. *See id.* ¶ 315. Pornhub removed the video approximately two years after its initial upload. *See id.* ¶ 316. K.A. alleges that she was victimized when (1) her ex-boyfriend coerced and exploited her, (2) her ex-boyfriend uploaded the video to Pornhub, (3) MindGeek transferred the video to other free "tubsesites," *see infra* p. 5, and (4) when MindGeek failed to police and report the content to the authorities. *Id.* ¶ 318. There is no allegation that Visa was at any time aware of the video or the investigation into K.A.'s ex-boyfriend.

Plaintiffs allege more broadly that MindGeek had the capacity to monitor its websites for underage and non-consensual content, but failed to identify and remove such content. *See, e.g.*, Compl. ¶¶ 83–91, 371, 383. Plaintiffs also allege that MindGeek has participated in a sexual exploitation venture by allowing underage and non-consensual content to flow through its websites, which allows MindGeek to earn revenue from advertisers and from subscription plans. *See, e.g., id.* ¶¶ 108, 115, 121–124.

## II.    Visa's Business

Visa has no direct relationship with MindGeek.   Instead, Visa enters into contractual relationships with banks (the Acquirers), and those banks then enter into separate contracts with merchants like MindGeek to process transactions through Visa's network.   *See* Compl. ¶¶ 286, 290, 296; *see also, e.g.*, Visa, Annual Report (Form 10-K), p.63 (Nov. 15, 2023) ("Visa 2023 Form 10-K") ("The Company delivers its payments network services directly to issuers and acquirers, who provide those services to others within the payments network: the merchants and consumers."); *Emery v. Visa Int'l Serv. Ass'n*, 95 Cal. App. 4th 952, 956 (2002) (explaining that Acquirers process transactions when consumers use Visa-branded payment cards to make a purchase from the merchant). The Visa network electronically links the Acquirers and card-issuing financial institutions (the Issuers) by gathering transaction data that enables the Acquirers and Issuers to settle billions of transactions daily via the Visa network.   *See* Compl. ¶ 296; *see also* Visa 2023 Form 10-K, pp. 4–5, 60, 63–64; *Emery*, 95 Cal. App. 4th at 956.   In operating this network, Visa enters into agreements with the Acquirers and Issuers, but generally *not* the individual businesses and merchants.   *See* Compl. ¶¶ 274, 290, 296; *see also* Visa 2023 Form 10-K, pp. 4–5, 60, 63–64.

Visa imposes rules governing the types of merchants that the Acquirers may contract with, but contrary to some public perception, it is the Acquirers, not Visa, that initiate and maintain relationships with merchants.   *See* Compl. ¶ 296; *see also, e.g.*, Visa 2023 Form 10-K, pp. 60, 63–64.   The Acquirers monitor merchant activity and are responsible for ensuring that merchants comply with Visa's standards:   Among other things, Visa's standards prohibit the Acquirers from accepting payment from a merchant for any transaction that the Acquirer knows involves illegal activities or products.   *See* Compl. ¶ 296; *see also, e.g.*, Visa 2023 Form 10-K, pp. 18, 26–27; Visa Core Rules and Visa Prod. and Serv. Rules §§ 1.5.1.4, 1.5.2.1, 5.3.4.4 (Oct. 19, 2024), https://usa.visa.com/content/dam/VCOM/download/about-visa/visa-rules-public.pdf.

III.    **Plaintiffs' Allegations Regarding Visa**

Plaintiffs do not allege that Visa created, uploaded, disseminated, or monitored any content on MindGeek's websites.  Nor do Plaintiffs allege that Visa was aware, prior to this lawsuit, of any videos depicting Plaintiffs, those videos' presence on Pornhub, or Plaintiffs' efforts to have those videos removed.

Instead, the complaints allege that Visa, through its Acquirers and Issuers (not named as Defendants), generally provided merchant banking services to MindGeek.  *See* Compl. ¶¶ 272–75.  Specifically, Plaintiffs allege that Visa and its "member banks," which include both Acquirers and Issuers, provided "merchant services to MindGeek [and] were aware of its trafficking venture and knowingly profited from it."  *Id.* ¶ 274.

According to the complaints, MindGeek profits from its business in two ways. First, MindGeek operates premium "paysites" where users can access content only by purchasing the content or by subscribing.  *See* Compl. ¶ 41.  Second, MindGeek operates free "tubesites" that contain content—uploaded by users—that users can access without paying MindGeek.  *See* Compl. ¶¶ 38, 41, 63.  MindGeek earns advertising revenue through its affiliate, TrafficJunky, for advertisements appearing on those free websites (and on paid websites as well).  *See id.*  The complaints allege generally that Visa (through its member banks) processed payments for consumers purchasing subscriptions to MindGeek's premium sites and for unnamed advertisers paying TrafficJunky to place ads on unnamed MindGeek sites.  *See id.* ¶ 334.  Plaintiffs do not identify any specific example where the Visa system was used to process a payment credential for a transaction related to the videos of Plaintiffs, which are alleged to have appeared only on MindGeek's free sites ("tubesites").  *E.g.*, *id.* ¶¶ 312–18.

The complaints allege that payment card companies, including Visa, knew or should have known that illegal content generally was available on MindGeek's sites, based either on third-party advocacy and reporting or by conducting ad hoc searches on MindGeek's sites.  *See id.* ¶¶ 274–76, 286, 290.  Plaintiffs also allege that Visa and its member banks were "well aware that it is was impossible to segregate MindGeek's

1  trafficking venture from its legitimate porn business." *See id.* ¶ 282.  The complaints
2  further state that Visa was "intimately familiar with MindGeek's business model and that
3  all its content, including its trafficked content and CSAM/child pornography, was
4  inextricably intertwined in . . . promotion, solicitation, and funneling of website traffic to
5  its paid porn services." *Id.*  Plaintiffs allege that Visa had *de facto* control over MindGeek,
6  as evidenced by MindGeek's removal of nearly 10 million videos after Visa suspended
7  payment processing in December 2020.  *See id.* ¶¶ 272, 334.

8  **IV.  Procedural History**

9  Before these related complaints were filed, the law firm representing Plaintiffs in
10  these actions filed a similar lawsuit against many of the same Defendants, pursuing the
11  same factual and legal theories.  *See Fleites v. MindGeek S.a.r.l.*, No. 21-CV-4920 (C.D.
12  Cal.).  Defendants in that lawsuit, including Visa, moved to dismiss the First Amended
13  Complaint.  On July 29, 2022, Judge Carney—then presiding—issued a decision granting
14  in part and denying in part Visa's motion to dismiss.  *See Fleites v. MindGeek S.a.r.l.*,
15  617 F. Supp. 3d 1146 (C.D. Cal. 2022).

16  Judge Carney first concluded that the plaintiff had standing to pursue her claims
17  against Visa, because Visa provided MindGeek the means to monetize the unlawful
18  videos of her.  *Fleites*, 617 F. Supp. 3d at 1154–58.  He then concluded, however, that
19  Visa could not be held directly liable under the TVPRA, 18 U.S.C. § 1591(a)(2), for
20  benefitting from direct participation in a sex-trafficking venture, because Visa "is not
21  alleged to have had any direct interaction with Plaintiff, her direct traffickers, or her
22  videos, and therefore cannot bear beneficiary liability for knowingly *participating* in the
23  sex trafficking venture that harmed Plaintiff." *Id.* at 1161–62.  Next, Judge Carney held
24  that the plaintiff had stated a claim against Visa for *conspiring* with MindGeek to
25  financially benefit from unlawful sexual exploitation pursuant to 18 U.S.C. § 1594(c),
26  based on the allegation that Visa "continue[d] to recognize MindGeek as a merchant
27  despite allegedly knowing that MindGeek monetized a substantial amount of child porn
28  on its websites." *Id.* at 1162–64.  Judge Carney did not analyze whether Visa's conduct

1  could be deemed "unfair" under the UCL.  *Id.* at 1166–67.

2      Jurisdictional discovery as to other defendants in the *Fleites* case ensued, and

3  merits discovery was stayed.  The plaintiff filed her Second Amended Complaint on May

4  23, 2024.  *See* Second Am. Compl., *Fleites*, No. 21-CV-4920 (C.D. Cal. May 23, 2024),

5  ECF No. 385.  On August 30, Visa filed a motion to dismiss the Second Amended

6  Complaint.  *See* Ex. A.

7      Following the plaintiff's filing of the Second Amended Complaint in *Fleites*,

8  counsel filed these related cases naming Visa and others as Defendants.  The complaints

9  are identical to one another (and to *Fleites*) as to the allegations against Visa, and are

10  largely identical otherwise except in describing each Plaintiff's individual circumstances

11  and experience.  By stipulation and order of October 9, 2024, the Court permitted Visa to

12  file an omnibus motion to dismiss these related cases.  *See* ECF No. 54.  The Court

13  instructed that "[t]his omnibus motion shall include any case-specific issues raised in any

14  of the complaints in the Related Cases and may incorporate by reference the arguments

15  made by the Parties in the motion to dismiss briefing in *Fleites*."  *Id.* at 2.

16  ### LEGAL STANDARD

17      A motion to dismiss for failure to state a claim under Federal Rule of Civil

18  Procedure 12(b)(6) should be granted where the complaint fails to allege "sufficient

19  factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

20  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  "A claim has facial

21  plausibility when the plaintiff pleads factual content that allows the court to draw the

22  reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  The

23  complaint must plead "more than labels and conclusions, and a formulaic recitation of the

24  elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

25  555–56 (2007).  "Thus, 'conclusory allegations of law and unwarranted inferences are

insufficient to defeat a motion to dismiss.'" *Benavidez v. County of San Diego*, 993 F.3d 1134, 1145 (9th Cir. 2021).

## ARGUMENT

As in *Fleites*, Visa is not a proper defendant in this litigation. None of the complaints alleges cognizable claims against Visa.

*First*, all of Plaintiffs' claims against Visa fail for lack of standing. In order to have Article III standing, a plaintiff must show that her injury is traceable to each named defendant. The Supreme Court has recently clarified that where a plaintiff's theory of traceability depends on the conduct of independent third parties, the plaintiff faces a high bar. Here, Visa is not alleged to have directly caused any of Plaintiffs' injuries, which arise solely out of the creation and dissemination of the CSAM videos. Instead, Visa's only connection is the processing of payments. But Plaintiffs have not plausibly tied Visa's processing of payments to any of the conduct giving rise to their injuries. Judge Carney concluded otherwise in *Fleites*, but Visa respectfully submits that the decision is wrong in that respect and should not guide the Court's decision here.

*Second*, Plaintiffs' claims against Visa for direct participation liability under the TVPRA should be dismissed because Plaintiffs have not alleged (and cannot allege) that Visa participated in any unlawful venture or was aware of any unlawful activity as to any individual Plaintiff. Courts—including Judge Carney in *Fleites*—have repeatedly recognized that being generally aware of the possibility for trafficking or other unlawful activity is not sufficient to give rise to direct liability under the TVPRA. That precedent compels dismissal of Plaintiffs' claims here.

*Third*, Plaintiffs have failed to state a claim for conspiracy liability. Visa fully briefed this issue in its motion to dismiss in *Fleites*, and all of those arguments apply with equal force here.

*Fourth*, Plaintiffs have failed to state a claim under the UCL. Again, Visa's arguments in the *Fleites* motion to dismiss apply equally here.

*Fifth*, Plaintiffs cannot sustain claims for IIED against Visa. Plaintiffs do not allege

any conduct by Visa at all under this count, much less any conduct that would qualify as "extreme" or "outrageous," as required under the law. Moreover, Plaintiffs do not allege any conduct by Visa that is "directed at" Plaintiffs—again, Visa is not alleged to have had any knowledge of Plaintiffs' individual circumstances.

For these reasons, Plaintiffs' claims against Visa should be dismissed in their entirety. Because repeated efforts at amendment have demonstrated that no amendment could cure the legal defects in the claims against Visa, dismissal should be with prejudice. For the avoidance of doubt, Visa incorporates by reference all arguments made under points I–IV of its *Fleites* motion to dismiss. *See* Ex. A, at 40–62.

## I.    Plaintiffs Lack Article III Standing as to Visa

Plaintiffs' claims against Visa should be dismissed for lack of Article III standing. The injuries as alleged by Plaintiffs are not fairly traceable to Visa, who is alleged only to have processed credit card payments for advertisements—which were not themselves alleged to be unlawful—appearing alongside videos on MindGeek's tubesites.

Article III imposes an "irreducible constitutional minimum of standing," which consists of three elements: (1) an "injury in fact," (2) a "causal connection between the injury and the conduct complained of," and (3) a likelihood that "the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (quotation marks omitted). "[S]tanding is not dispensed in gross"—"plaintiffs must demonstrate standing for each claim that they press against each defendant, and for each form of relief that they seek." *Murthy v. Missouri*, 144 S. Ct. 1972, 1988 (2024) (quotation marks omitted).

The second element of standing is referred to as "traceability," and "requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party." *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41–42 (1976). Consistent with this standard, courts "have been reluctant to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment." *Murthy*, 144 S. Ct.

1    at 1986 (quotation marks omitted).  "Requiring a plaintiff to demonstrate a concrete and

2    particularized injury caused by the defendant and redressable by the court ensures that

3    federal courts . . . exercise their proper function in a limited and separated government."

4    *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (quotation marks omitted).

5         The Supreme Court recently clarified the strict standard for traceability where

6    third-party conduct is involved.  In *Murthy*, plaintiffs sued various government officials

7    for allegedly coercing or pressuring social media platforms like Twitter and Facebook

8    into censoring the plaintiffs' posts about topics such as COVID vaccines and

9    election-related issues.  In assessing the plaintiffs' standing to sue the government

10   officials, the Court emphasized the "tall order" that parties seeking to establish standing

11   based on the conduct of third parties face. 144 S. Ct. at 1986.  Analyzing traceability, the

12   Court observed that '[t]he primary weakness in the record of past restrictions [on

13   plaintiff's social media posts] is the lack of specific causation findings with respect to any

14   discrete instance of content moderation."  *Id.* at 1987.  The Court continued that "the

15   platforms had independent incentives to moderate content and often exercised their own

16   judgment."  *Id.* at 1987–88.  Thus, any alleged link between government conduct and

17   platform moderation "must be evaluated in light of the platform's independent incentives

18   to moderate content."  *Id.* at 1988.  On the basis of these and other conclusions, the Court

19   held that the plaintiffs lack standing to obtain prospective equitable relief.

20        These principles compel dismissal of Plaintiffs' claims against Visa for lack of

21   traceability.  Plaintiffs helpfully outline the four types of injury they each allegedly

22   suffered: (1) the initial coercion and exploitation by the perpetrators, (2) the uploading of

23   the illicit videos to MindGeek's sites, (3) MindGeek's transfer of the videos to other

24   tubesites, and (4) MindGeek's failure to police and report the content.  *See* Compl. ¶ 318.[1]

25   None of those injuries turns on anything that Visa did—Visa is not alleged to have any

---

[1] Although these allegations appear in the portion of K.A.'s complaint that is specific to her circumstances, similar allegations appear in the other complaints.  *See, e.g.*,

part in creating, uploading, or disseminating the videos of Plaintiffs, and is not alleged to have even been aware of any content depicting Plaintiffs. Instead, each of these theories of injuries relates to the conduct either of the individuals directly responsible for the exploitation of Plaintiffs or of MindGeek and its affiliates. Only if Plaintiffs could draw a plausible line of causation from Visa's payment processing, through the independent conduct of MindGeek and others, to Plaintiffs' ultimately injuries could they establish standing. They have not done so.

Plaintiffs do not articulate in their complaints any identifiable theory of traceability as to Visa. In the order denying in part Visa's motion to dismiss in *Fleites*, Judge Carney concluded that the plaintiff's "case focuses on the monetization of child porn after it was made and posted to MindGeek's sites, which, if what Plaintiff alleges is true, Visa knowingly took part in." 617 F. Supp. 3d at 1155. But that conclusion confuses the elements of the statute with constitutional requirement of standing: "[T]o satisfy Article III's standing requirement, a plaintiff seeking damages for the violation of a statutory right must not only plausibly allege the violation but must also plausibly allege a 'concrete' injury causally connected to the violation." *Dutta v. State Farm Mut. Auto. Ins. Co.*, 895 F.3d 1166, 1172 (9th Cir. 2018); *see also Daniel v. Nat'l Park Serv.*, 891 F.3d 762, 767 (9th Cir. 2018) (allegations of statutory violation were insufficient to satisfy traceability because complaint did not allege a "link" between the violation and the harm alleged). Simply because the statute provides a cause of action does not mean Plaintiffs have Article III standing against Visa.

Another possibility is that Plaintiffs intend to allege that had Visa not provided MindGeek with payment processing services, it would have no economic motivation to allow the videos to be uploaded or to reupload the videos other sites. Judge Carney posited a similar theory in his order. *Fleites*, 617 F. Supp. 3d at 1155. That theory is articulated nowhere in the complaint and can be rejected for that reason. *See Murthy*, 144 S. Ct. at 1991 n.7 (rejecting standing theory "that [the plaintiff] herself has not set forth"). But it also is wrong.

Any effort to connect Visa's payment processing services to Plaintiffs' injuries is speculation. As an initial matter, there is no allegation that Visa's services were ever used to process payments for advertisements appearing next to the videos of Plaintiffs. Instead, the allegations are that Visa's services *generally* were used to process payments on MindGeek's websites. As in *Murthy*, this theory "approache[s] standing at a high level of generality," failing to tie Visa's conduct to the specific injuries alleged here. 144 S. Ct. at 1987. Additionally, the theory that Visa could have prevented the harm to Plaintiffs by withholding its payment processing services and therefore encouraging MindGeek to implement stricter content moderation policies is too attenuated: Traceability cannot be established through speculation about whether the defendant's conduct might encourage the third-party conduct giving rise to an injury-in-fact. *See Madstad Eng'g, Inc. v. U.S. Patent & Trademark Off.*, 756 F.3d 1366, 1374 (Fed. Cir. 2014) (alleged increased risk in cyber threat not traceable to statutory provision allegedly increasing incentive for cyber attacks); *Doe I v. Apple Inc.*, 2021 WL 5774224, at *7 (D.D.C. Nov. 2, 2021) (human rights violations in cobalt mines not traceable to electronics manufacturer who drove demand for cobalt), *aff'd*, 96 F.4th 403 (D.C. Cir. 2024); *Boschma v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 2018 WL 2251629, at *3 (C.D. Cal. May 16, 2018) (gun violence not traceable to government officials' alleged failure to enforce or enact gun legislation).

Judge Carney's analysis of this issue was unpersuasive and undertaken without the benefit of *Murthy*. He contended that MindGeek would not have operated its freesites the way it did absent Visa's processing of payments. *Fleites*, 617 F. Supp. 3d at 1155. There is no support for that supposition—Visa is not the only payment processor, and even if it were, this theory would essentially make Visa potentially liable for any use of its payment processing services that violates the law. Judge Carney pointed to the fact that MindGeek allegedly removed 10 million videos after Visa suspended MindGeek's merchant privileges upon the revelations about MindGeek's practices. *Id.* at 1156; *see also* Compl. ¶ 334. But this happened only after both Visa *and* Mastercard suspended their services.

*See* Compl. ¶¶ 295–97.  Moreover, the complaints cite to a report from the Canadian Privacy Commission from 2024 concluding that MindGeek still today "ha[s] not taken necessary corrective measures."  Compl. ¶ 107 (alteration and quotation marks omitted).  Visa therefore clearly does *not* have the power to coerce MindGeek into altering its content moderation policies, because MindGeek is still alleged to be allowing the proliferation of CSAM today (without the aid of Visa's payment processing).

It is notable that through several pages of discussion regarding traceability, Judge Carney did not cite a single case in support of these conclusions.  *See Fleites*, 617 F. Supp. 3d at 1154–58.  The cases Judge Carney did cite were offered by Visa, and Judge Carney's efforts to distinguish those cases are unavailing.  Specifically, Judge Carney asserted that in the cases Visa cites, "various plaintiffs sought to pin intractable and complicated social, economic, or political problems on one or a few actors despite the existence of multiple, independent actors who could also be blamed for the plaintiffs' harms."  *Id.* at 1157.  But the same is true here:  CSAM and the proliferation of unlawful explicit conduct on the Internet is surely a "complicated social" problem.  And there can be little dispute that there are "multiple, independent actors" at play here:  The complaints name 14 separate Defendants, without even accounting for the perpetrators responsible for the actual production (and uploading) of CSAM.  But in either event, the social complexity of a problem or the number of other possible causes are not the relevant factors.  The question is whether there is a plausible, cognizable theory *tracing* the injury back to the defendant.  *See Native Village of Kivalina v. ExxonMobil Corp.*, 663 F. Supp. 2d 863, 881 (N.D. Cal. 2009) (global warming not traceable to oil company), *aff'd*, 696 F.3d 849 (9th Cir. 2012); *Kaing v. Pulte Homes, Inc.*, 2010 WL 625365, at *6 (N.D. Cal. Feb. 18, 2010) (loss in property value not traceable to subprime mortgage lending practices), *aff'd*, 464 F. App'x 630 (9th Cir. 2011).  Here, there is not.

Because Plaintiffs' injuries—even though very real and significant—cannot be traced to Visa, the complaints should be dismissed as to Visa on that ground alone.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## II. The Complaints Do Not State a Claim Against Visa for Direct TVPRA Liability

Under Section 1595(a), a plaintiff may bring a civil claim based on a violation of one of the criminal offenses set forth in the TVPRA.  Plaintiffs have asserted a claim against Visa based on its alleged violation of Section 1591(a)(2), which applies to a person who knowingly "benefits, financially or by receiving anything of value, from participation in a" sex-trafficking venture.  18 U.S.C. § 1591(a)(2).  Section 1595(a) provides a civil remedy against anyone "whoever knowingly benefits . . . financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." *Id.* § 1595(a).  This claim fails because Visa is not alleged to have had any interaction with or even knowledge of Plaintiffs, their traffickers, or their videos.

There are no plausible allegations that Visa "participat[ed]" in an unlawful venture within the meaning of Sections 1591(a)(2) and 1595(a).  In order to incur participation liability under the TVPRA, a defendant must have "took some action to operate or manage the venture, such as directing or participating in [the alleged venture]." *Ratha v. Phatthana Seafood Co.*, 2017 WL 8293174, at *4 (C.D. Cal. Dec. 21, 2017) (quotation marks omitted), *aff'd*, 26 F.4th 1029 (9th Cir. 2022), *amended by* F.4th 1159 (9th Cir. 2022).  Liability "requires more than receipt of a passive benefit." *Id.*  Put otherwise, a plaintiff must allege that the defendant "*directly* participated in [the] venture." *B.M. v. Wyndham Hotels & Resorts, Inc.*, 2020 WL 4368214, at *5 (N.D. Cal. July 30, 2020) (emphasis added); *see also Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 727 (11th Cir. 2021) ("In short, to participate in a venture under Section 1595(a), a defendant must take part in a common undertaking involving risk or profit.").

There are no allegations here that Visa played a direct, active role on the operation or management of any alleged unlawful venture.  Visa does not even have a direct contractual relationship with MindGeek, and the services it provided through its payment network are the same services made available to millions of businesses.  Plaintiffs allege

that Visa participated by "making at least two public statements falsely suggesting that all of the content on MindGeek's tubesites was lawful and legitimate." Compl. ¶ 334. But even setting aside the fact that such statements (if made) would not have contributed to any unlawful venture, the statements Plaintiffs cite in fact assert are entirely accurate: "Visa only permits transactions on the Visa network for the purchase or sale of lawful products and services," and "any truly effective solution must come from thoughtful changes to laws and regulations." *Id.* ¶¶ 285, 293. Those are accurate descriptions of Visa's policies and do not remotely constitute any kind of "participat[ion]" in an unlawful trafficking venture.

Additionally, Visa cannot be liable for participation liability because it had no knowledge of any specific Plaintiff. The precedent overwhelmingly establishes that in order to incur liability under Section 1591(a)(2) and 1595(a), the defendant must have had knowledge of the *specific victim or trafficking incident* that forms the basis for the claim. *See Red Roof Inns, Inc.*, 21 F.4th at 725 ("[T]he defendant must have either actual or constructive knowledge that the venture—in which it voluntarily participated and from which it knowingly benefited—violated the TVPRA *as to the plaintiff.*" (emphasis added)), *cited with approval in Ratha v. Rubicon Res., LLC*, 111 F.4th 946, 963 (9th Cir. 2024); *Doe #9 v. Wyndham Hotels & Resorts, Inc.*, 2021 WL 1186333, at *1 (S.D. Tex. Mar. 30, 2021) ("More specifically, the complaint must contain facts sufficient to establish that the defendant knew or should have known about the trafficking of the plaintiff in particular—not about trafficking occurring on the premises in general."); *J.C. v. Choice Hotels Int'l, Inc.*, 2020 WL 6318707, at *6 (N.D. Cal. Oct. 28, 2020) ("[G]eneral allegations about sex trafficking problems throughout the hospitality industry is not enough to put them on notice about the sex trafficking of this plaintiff."); *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 939 (D. Or. 2020) ("Plaintiff must allege facts showing how [defendants] received notice that Plaintiff A.B. was trafficked at their respective properties."). That is because "[t]he statutory text speaks in singular terms—'participation in *a* venture which that person should have known *has* engaged in

*an* act in violation of this chapter." *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020) (alteration omitted).

Here, there are no allegations that Visa was aware of any particular act of trafficking by the perpetrators, MindGeek, or anyone else. Nor is Visa alleged to have known about the existence of the videos that were uploaded to MindGeek's free tubesites, let alone that those videos were the product of unlawful trafficking. And nowhere is Visa alleged to have had any knowledge of or contact with any of the individual Plaintiffs. The only allegations as to Visa's knowledge are that Visa knew or could have known that MindGeek's tubesites *generally* contained unlawful material. *See supra* pp. 4–5. That is not sufficient: Courts have repeatedly held that franchisors are not liable for "participation" under the TVPRA simply because they know or believe their franchisees' properties be used for trafficking, *see, e.g.*, *Red Roof Inns, Inc.*, 21 F.4th at 725; *Choice Hotels Int'l, Inc.*, 2020 WL 6318707, at *6, and the allegations against Visa are even more remote.

Indeed, the Court in *Fleites* had little trouble resolving this claim as to Visa, dismissing it in a single paragraph. 617 F. Supp. 3d at 1161–62. Judge Carney explained that unlike other Defendants, "Visa . . . is not alleged to have had any direct interaction with Plaintiff, her direct traffickers, or her videos, and therefore cannot bear beneficiary liability for knowingly *participating* in the sex trafficking venture that harmed Plaintiff." *Id.* The Court posited, "having not had any interaction with Plaintiff and her videos, how can it be said that Visa knew or should have known that Plaintiff was a victim of sex trafficking?" *Id.* at 1162. Notably, the Court did "not permit Plaintiff to amend her section 1591(a)(2) claim against Visa," saying that "[s]uch amendment would be futile because Plaintiff simply has no basis for claiming Visa directly participated in the sex trafficking ventures that harmed her." *Id.* at 1168.[2]

---

[2] As set forth in the *Fleites* motion to dismiss, Visa respectfully disagrees with Judge Carney's conclusions on other aspects of the motion.

There are no new facts alleged that would alter this conclusion, which was correct when made.  The TVPRA is designed to capture those individuals or entities who have a direct relationship to an identifiable and known act of trafficking, not to expand liability to anyone with some tangential relationship to the unlawful conduct.  In no sense of the term could Visa be said to have been a "participant" in a trafficking venture, and the precedent confirms as much.

## III.    The Complaints Do Not State A Claim For Civil Conspiracy Against Visa

Plaintiffs' only other claims against Visa under the TVPRA are for civil conspiracy under Section 1594(c) and 1595(a).  Those claims, as well as Plaintiffs' claims for common-law conspiracy, fail for the reasons stated in Visa's motion to dismiss in the *Fleites* case.  *See* Ex. A, at 42–57, 59 –62.  Pursuant to the direction of the Court, *see* ECF No. 54, Visa incorporates those arguments by reference here.

## IV.    The Complaints Fail To Allege A State Law Claim Under California Business And Professions Code §§ 17200, 17500

Plaintiffs have not stated claims against Visa for unfair business practices or false advertising under California Business and Professions Code §§ 17200, 17500 (the UCL).  For purposes of this motion only, Visa accepts Plaintiffs' allegation that California law applies to this claim.  These claims fail for the reasons stated in Visa's motion to dismiss in the *Fleites* case.  *See* Ex. A, at 57–59.  Pursuant to the direction of the Court, *see* ECF No. 54, Visa incorporates those arguments by reference here.

## V.    The Complaints Fail To Allege Intentional Infliction Of Emotional Distress

Plaintiffs have asserted one set of claims that does not appear in the *Fleites* action: claims for intentional infliction of emotional distress under California law.  To sustain a claim for intentional infliction of emotional distress, a plaintiff must adequately allege "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Hughes v. Pair*, 46 Cal.

4th 1035, 1050 (2009) (quotation marks omitted).  While Visa does not dispute for purposes of this motion that Plaintiffs suffered severe or extreme emotional distress, the other elements are not met.

*First*, Plaintiffs' allegations under this theory impermissibly lump all Defendants together without distinction.  *See* Compl. ¶¶ 447–51.  A complaint that "lumps together . . . multiple defendants in one broad allegation fails to satisfy the notice requirement of Rule 8(a)(2)."  *Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945, 964 (N.D. Cal. 2015) (cleaned up); *see also Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) (complaint failed to state a claim where "all defendants are lumped together in a single, broad allegation").  Such group pleading is impermissible because it obscures differences among defendants.  That problem is apparent here.

Plaintiffs offer no allegations under their IIED claims that are directed at Visa. Plaintiffs allege, for example, that "Defendants knew, or recklessly disregarded, that Plaintiff was harmed by the illegal CSAM featuring her on defendants' websites, but did nothing to help her, and instead directed and encouraged the proliferation of CSAM on *its* websites."  Compl. ¶ 449 (emphasis added).  Visa does not own or operate any of the websites at issue in this case and is not allegedly to have known or recklessly disregarded any harm to Plaintiffs.  Like the UCL allegations, the allegations under this theory are directed at MindGeek and its affiliates, not Visa.

*Second*, Visa did not engage in extreme or outrageous conduct.  "A defendant's conduct is outrageous when it is so extreme as to exceed all bounds of that usually tolerated in a civilized community."  *Hughes*, 46 Cal. 4th at 1050–51 (quotation marks omitted).  Courts have repeatedly held that ordinary business conduct—such as making personnel decisions or making other normal business decisions—does not give rise to an IIED claim.  *See Mayfield v. County of Merced*, 2014 WL 2574791, at *15 (E.D. Cal. June 9, 2014) ("[M]anaging personnel is not outrageous conduct beyond the bounds of human decency, but rather conduct essential to the welfare and prosperity of society." (quotation marks omitted)), *findings & recommendations) adopted by* 2014 WL 3401177

1    (E.D. Cal. July 10, 2014); *Wilson v. JPMorgan Chase Bank, N.A.*, 2010 WL 2574032, at

2    \*11 (E.D. Cal. June 25, 2010) ("Plaintiff has failed to allege anything beyond normal debt

3    collection practices that would rise to the level of 'extreme and outrageous' conduct

4    necessary to state a claim for intentional infliction of emotional distress."); *Flores v. J.C.*

5    *Penney*, 2006 WL 8442634, at \*11 (S.D. Cal. Mar. 16, 2006) ("Even taking everything

6    in [the plaintiff's] deposition as true, [the defendant's] actions amount to no more than

7    normal conduct that cannot be considered outrageous."), *aff'd*, 256 F. App'x 979 (9th Cir.

8    2007).

9          The only conduct by Visa alleged by Plaintiffs is the processing of credit card

10    payments for advertisements on MindGeek's free tubesites that may or may not have

11    appeared alongside one of the videos involving Plaintiffs.  There is nothing "outrageous"

12    or "extreme" about Visa conducting its everyday business of processing payments.  That

13    is true regardless of whether Visa knew or believed that MindGeek's tubesites contained

14    some illegal content, because the subjective belief or intent of the defendant does not

15    determine whether the challenged conduct was "outrageous."  *See Mayfield*, 2014 WL

16    2574791, at \*15 ("[A]ctions that are within the realm of ordinary personnel actions by an

17    employer—such as hiring, firing, setting duties and priorities—are insufficient to support

18    a claim of IEED *even when those decisions are motivated by improper considerations*

19    such as retaliation or discrimination." (emphasis added)); *Janken v. GM Hughes Elecs.*,

20    46 Cal. App. 4th 55, 80 (1996) ("A simple pleading of personnel management activity is

21    insufficient to support a claim of intentional infliction of emotional distress, even if

22    improper motivation is alleged.").

23          *Third*, Visa's conduct was not directed at nor committed in the presence of

24    Plaintiffs.  Under California law, "[i]t is not enough that the conduct be intentional and

25    outrageous.  It must be conduct *directed at the plaintiff*, or occur in the presence of a

26    plaintiff of whom the defendant is aware."  *Christensen v. Super. Ct.*, 54 Cal. 3d 868, 903

27    (1991) (emphasis added).  Accordingly, a failure to take action—or a failure to provide

28    adequate safeguards against the misconduct of others—is not sufficient to give rise to an

IIED claim. *See Ess v. Eskaton Props., Inc.*, 97 Cal. App. 4th 120, 131 (2002) (no IIED claim where "Plaintiff charg[ed] defendants with nonfeasance" in failing to provide adequate security at a property managed by the defendants). And if a defendant does not even know the *identity* of the injured plaintiff, there is no IIED claim. *See Jacobsen v. Marin Gen. Hosp.*, 192 F.3d 881, 887 (9th Cir. 1999) (affirming dismissal where "the complaint allege[d] that the defendants did not know the identity" of the plaintiff).

This precedent forecloses Plaintiffs' IIED claims here. None of Visa's conduct could even arguably be said to have been "directed" at Plaintiffs. Indeed, there is no allegation that Visa was aware of Plaintiffs or any of the videos of them, which is itself sufficient under the precedent to foreclose Plaintiffs' claims. The allegation that Visa could have taken action to prevent Plaintiffs' injuries—disposed of above, *see supra* pp. 4–6—is likewise insufficient to satisfy this element of an IIED claim. There is, in short, no theory that would allow Plaintiffs to hold Visa liable under the narrow theory of IIED. This catch-all claim should be dismissed as to Visa.

## VI.     The Complaints Should Be Dismissed With Prejudice As To Visa

Each claim against Visa should be dismissed with prejudice because the pleadings "could not possibly be cured by the allegation of other facts." *See Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (affirming dismissal of appeal where amendment could not cure defect in pleadings); *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990) (affirming dismissal with prejudice where amendment would be futile). There are dispositive legal impediments to Plaintiffs' claims against Visa, which could not be cured by amendment, as demonstrated by the fact that the Plaintiff in the lead case (*Fleites*) has not yet stated a valid claim against Visa there in three iterations of her complaint. Accordingly, all of the complaints should be dismissed with prejudice as to Visa.

# CONCLUSION

The Court should dismiss all claims—Counts II, IV, XIV, XVI, and XVII—asserted against Visa, with prejudice.

Dated: October 30, 2024

RESPECTFULLY SUBMITTED,

*/s/ Drew Tulumello*
DREW TULUMELLO (#196484)
drew.tulumello@weil.com
MARK A. PERRY (#212532)
mark.perry@weil.com
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
Tel: 202 682 7000
Fax: 202 857 0940
*Attorneys for Defendant Visa Inc.*

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Visa, certifies that this brief is within the fifty (50) page limit set by Court Order, ECF No. 54, Oct. 9, 2024.

Dated: October 30, 2024

*/s/ Drew Tulumello*
DREW TULUMELLO