1  WIECHERT, MUNK & GOLDSTEIN, PC
   David Wiechert, CA Bar No. 94607
2  4000 MacArthur Boulevard,
3  Suite 600 East Tower
   Newport Beach, CA 92660
4  Phone: (949) 361-2822
   Facsimile: (949) 361-5722
5  Email: dwiechert@aol.com

6  MORVILLO ABRAMOWITZ
   GRAND IASON & ANELLO PC
7  Jonathan S. Sack (*pro hac vice*)
   Alexander F.R. Peacocke (*pro hac vice*
8  pending)
   565 Fifth Avenue
9  New York, New York 10017
   Phone: (212) 856-9600
10 Facsimile: (212) 856-9494
   Email: jsack@maglaw.com
11 Email: apeacocke@maglaw.com

12 *Attorneys for Specially Appearing*
   *Defendant David Tassillo*

COHEN & GRESSER LLP
Jason Brown (*pro hac vice*)
Matthew V. Povolny (*pro hac vice*)
Joanna Chan
800 Third Avenue
New York, New York 10022
Phone: (212) 957-7600
Facsimile: (212) 957-4514
Email: jbrown@cohengresser.com
Email: mpovolny@cohengresser.com
Email: jchan@cohengresser.com

*Attorneys for Specially Appearing*
*Defendant Feras Antoon*

13
## UNITED STATES DISTRICT COURT
14
## CENTRAL DISTRICT OF CALIFORNIA
15

16 | K.A.,

17 | Plaintiff,

18 | v.

MINDGEEK S.A.R.L. a foreign entity;
19 | MG FREESITES, LTD., a foreign entity;
MINDGEEK USA INCORPORATED, a
20 | Delaware corporation; MG PREMIUM
LTD, a foreign entity; MG GLOBAL
21 | ENTERTAINMENT INC., a Delaware
corporation; 9219-1568 QUEBEC, INC., a
22 | foreign entity; BERND BERGMAIR, a
foreign individual; FERAS ANTOON, a
23 | foreign individual; DAVID TASSILLO, a
foreign individual; VISA INC., a Delaware
24 | corporation; REDWOOD CAPITAL
MANAGEMENT, LLC, a Delaware
25 | limited liability company; REDWOOD
DOE FUNDS 1-7; COLBECK CAPITAL
26 | MANAGEMENT, LLC, a Delaware
limited liability company; COLBECK
DOE FUNDS 1-3,

27 | Defendants.

Case No. 2:24-cv-04786-WLH-ADS

SPECIALLY APPEARING
DEFENDANTS FERAS
ANTOON AND DAVID
TASSILLO'S NOTICE OF
MOTION AND OMNIBUS
MOTION TO DISMISS THE
COMPLAINTS;
MEMORANDUM OF POINTS
AND AUTHORITIES IN
SUPPORT THEREOF

Hearing Date:  January 31, 2025
Hearing Time:  1:30 p.m.
Courtroom:  9B
Judge:  Hon. Wesley Hsu
Complaint Filed: June 7, 2024
Trial Date: not set

28
FERAS ANTOON AND DAVID TASSILLO'S
OMNIBUS MOTION TO DISMISS

N.L.,

Plaintiff,

v.

MINDGEEK S.A.R.L. a foreign entity; MG FREESITES, LTD., a foreign entity; MINDGEEK USA INCORPORATED, a Delaware corporation; MG PREMIUM LTD, a foreign entity; MG GLOBAL ENTERTAINMENT INC., a Delaware corporation; 9219-1568 QUEBEC, INC., foreign entity; BERND BERGMAIR, a foreign individual; FERAS ANTOON, a foreign individual; DAVID TASSILLO, a foreign individual; VISA INC., a Delaware corporation; REDWOOD CAPITAL MANAGEMENT, LLC, a Delaware limited liability company; REDWOOD DOE FUNDS 1-7; COLBECK CAPITAL MANAGEMENT, LLC, a Delaware limited liability company; COLBECK DOE FUNDS 1-3,

Defendants.

Case No. 2:24-cv-04788-WLH-ADS

SPECIALLY APPEARING DEFENDANTS FERAS ANTOON AND DAVID TASSILLO'S NOTICE OF MOTION AND OMNIBUS MOTION TO DISMISS THE COMPLAINTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Hearing Date:  January 31, 2025
Hearing Time:  1:30 p.m.
Courtroom:  9B
Judge:  Hon. Wesley Hsu
Complaint Filed: June 7, 2024
Trial Date: not set

L.T.,

Plaintiff,

v.

MINDGEEK S.A.R.L. a foreign entity; MG FREESITES, LTD., a foreign entity; MINDGEEK USA INCORPORATED, a Delaware corporation; MG PREMIUM LTD, a foreign entity; MG GLOBAL ENTERTAINMENT INC., a Delaware corporation; 9219-1568 QUEBEC, INC., foreign entity; BERND BERGMAIR, a foreign individual; FERAS ANTOON, a foreign individual; DAVID TASSILLO, a foreign individual; VISA INC., a Delaware corporation; REDWOOD CAPITAL MANAGEMENT, LLC, a Delaware limited liability company; REDWOOD DOE FUNDS 1-7; COLBECK CAPITAL MANAGEMENT, LLC, a Delaware limited liability company; COLBECK DOE FUNDS 1-3,

Defendants.

Case No. 2:24-cv-04791-WLH-ADS

SPECIALLY APPEARING DEFENDANTS FERAS ANTOON AND DAVID TASSILLO'S NOTICE OF MOTION AND OMNIBUS MOTION TO DISMISS THE COMPLAINTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Hearing Date:  January 31, 2025
Hearing Time:  1:30 p.m.
Courtroom:  9B
Judge:  Hon. Wesley Hsu
Complaint Filed: June 7, 2024
Trial Date: not set

| | |
|---|---|
| T.C., | |
| Plaintiff, | Case No. 2:24-cv-04795-WLH-ADS |
| v. | |
| MINDGEEK S.A.R.L. a foreign entity; MG FREESITES, LTD., a foreign entity; MINDGEEK USA INCORPORATED, a Delaware corporation; MG PREMIUM LTD, a foreign entity; MG GLOBAL ENTERTAINMENT INC., a Delaware corporation; 9219-1568 QUEBEC, INC., foreign entity; BERND BERGMAIR, a foreign individual; FERAS ANTOON, a foreign individual; DAVID TASSILLO, a foreign individual; VISA INC., a Delaware corporation; REDWOOD CAPITAL MANAGEMENT, LLC, a Delaware limited liability company; REDWOOD DOE FUNDS 1-7; COLBECK CAPITAL MANAGEMENT, LLC, a Delaware limited liability company; COLBECK DOE FUNDS 1-3, | SPECIALLY APPEARING DEFENDANTS FERAS ANTOON AND DAVID TASSILLO'S NOTICE OF MOTION AND OMNIBUS MOTION TO DISMISS THE COMPLAINTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF<br><br>Hearing Date:  January 31, 2025<br>Hearing Time:  1:30 p.m.<br>Courtroom:  9B<br>Judge:  Hon. Wesley Hsu<br>Complaint Filed: June 7, 2024<br>Trial Date: not set |
| Defendants. | |
| X.N., | |
| Plaintiff, | Case No. 2:24-cv-04800-WLH-ADS |
| v. | |
| MINDGEEK S.A.R.L. a foreign entity; MG FREESITES, LTD., a foreign entity; MINDGEEK USA INCORPORATED, a Delaware corporation; MG PREMIUM LTD, a foreign entity; MG GLOBAL ENTERTAINMENT INC., a Delaware corporation; 9219-1568 QUEBEC, INC., foreign entity; BERND BERGMAIR, a foreign individual; FERAS ANTOON, a foreign individual; DAVID TASSILLO, a foreign individual; VISA INC., a Delaware corporation; REDWOOD CAPITAL MANAGEMENT, LLC, a Delaware limited liability company; REDWOOD DOE FUNDS 1-7; COLBECK CAPITAL MANAGEMENT, LLC, a Delaware limited liability company; COLBECK DOE FUNDS 1-3, | SPECIALLY APPEARING DEFENDANTS FERAS ANTOON AND DAVID TASSILLO'S NOTICE OF MOTION AND OMNIBUS MOTION TO DISMISS THE COMPLAINTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF<br><br>Hearing Date:  January 31, 2025<br>Hearing Time:  1:30 p.m.<br>Courtroom:  9B<br>Judge:  Hon. Wesley Hsu<br>Complaint Filed: June 7, 2024<br>Trial Date: not set |
| Defendants. | |

FERAS ANTOON AND DAVID TASSILLO'S
OMNIBUS MOTION TO DISMISS

| | |
|---|---|
| N.Y., | Case No. 2:24-cv-4801-WLH-ADS |
| Plaintiff, | SPECIALLY APPEARING DEFENDANTS FERAS ANTOON AND DAVID TASSILLO'S NOTICE OF MOTION AND OMNIBUS MOTION TO DISMISS THE COMPLAINTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF |
| v. | |
| MINDGEEK S.A.R.L. a foreign entity; MG FREESITES, LTD., a foreign entity; MINDGEEK USA INCORPORATED, a Delaware corporation; MG PREMIUM LTD, a foreign entity; MG GLOBAL ENTERTAINMENT INC., a Delaware corporation; 9219-1568 QUEBEC, INC., foreign entity; BERND BERGMAIR, a foreign individual; FERAS ANTOON, a foreign individual; DAVID TASSILLO, a foreign individual; VISA INC., a Delaware corporation; REDWOOD CAPITAL MANAGEMENT, LLC, a Delaware limited liability company; REDWOOD DOE FUNDS 1-7; COLBECK CAPITAL MANAGEMENT, LLC, a Delaware limited liability company; COLBECK DOE FUNDS 1-3, | |
| | Hearing Date: January 31, 2025 |
| | Hearing Time: 1:30 p.m. |
| | Courtroom: 9B |
| | Judge: Hon. Wesley Hsu |
| | Complaint Filed: June 7, 2024 |
| | Trial Date: not set |
| Defendants. | |
| J.C., | Case No. 2:24-cv-04971-WLH-ADS |
| Plaintiff, | SPECIALLY APPEARING DEFENDANTS FERAS ANTOON AND DAVID TASSILLO'S NOTICE OF MOTION AND OMNIBUS MOTION TO DISMISS THE COMPLAINTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF |
| v. | |
| MINDGEEK S.A.R.L. a foreign entity; MG FREESITES, LTD., a foreign entity; MINDGEEK USA INCORPORATED, a Delaware corporation; MG PREMIUM LTD, a foreign entity; MG GLOBAL ENTERTAINMENT INC., a Delaware corporation; 9219-1568 QUEBEC, INC., foreign entity; BERND BERGMAIR, a foreign individual; FERAS ANTOON, a foreign individual; DAVID TASSILLO, a foreign individual; VISA INC., a Delaware corporation; REDWOOD CAPITAL MANAGEMENT, LLC, a Delaware limited liability company; REDWOOD DOE FUNDS 1-7; COLBECK CAPITAL MANAGEMENT, LLC, a Delaware limited liability company; COLBECK DOE FUNDS 1-3, | |
| | Hearing Date: January 31, 2025 |
| | Hearing Time: 1:30 p.m. |
| | Courtroom: 9B |
| | Judge: Hon. Wesley Hsu |
| | Complaint Filed: June 12, 2024 |
| | Trial Date: not set |
| Defendants. | |

FERAS ANTOON AND DAVID TASSILLO'S
OMNIBUS MOTION TO DISMISS

W.L.,

Plaintiff,

v.

MINDGEEK S.A.R.L. a foreign entity;
MG FREESITES, LTD., a foreign entity;
MINDGEEK USA INCORPORATED, a
Delaware corporation; MG PREMIUM
LTD, a foreign entity; MG GLOBAL
ENTERTAINMENT INC., a Delaware
corporation; 9219-1568 QUEBEC, INC.,
foreign entity; BERND BERGMAIR, a
foreign individual; FERAS ANTOON, a
foreign individual; DAVID TASSILLO, a
foreign individual; VISA INC., a Delaware
corporation; REDWOOD CAPITAL
MANAGEMENT, LLC, a Delaware
limited liability company; REDWOOD
DOE FUNDS 1-7; COLBECK CAPITAL
MANAGEMENT, LLC, a Delaware
limited liability company; COLBECK
DOE FUNDS 1-3,

Defendants.

Case No. 2:24-cv-04977-WLH-ADS

SPECIALLY APPEARING
DEFENDANTS FERAS
ANTOON AND DAVID
TASSILLO'S NOTICE OF
MOTION AND OMNIBUS
MOTION TO DISMISS THE
COMPLAINTS;
MEMORANDUM OF POINTS
AND AUTHORITIES IN
SUPPORT THEREOF

Hearing Date:  January 31, 2025
Hearing Time:  1:30 p.m.
Courtroom:  9B
Judge:  Hon. Wesley Hsu
Complaint Filed: June 13, 2024
Trial Date: not set

C.S.,

Plaintiff,

v.

MINDGEEK S.A.R.L. a foreign entity;
MG FREESITES, LTD., a foreign entity;
MINDGEEK USA INCORPORATED, a
Delaware corporation; MG PREMIUM
LTD, a foreign entity; MG GLOBAL
ENTERTAINMENT INC., a Delaware
corporation; 9219-1568 QUEBEC, INC.,
foreign entity; BERND BERGMAIR, a
foreign individual; FERAS ANTOON, a
foreign individual; DAVID TASSILLO, a
foreign individual; VISA INC., a Delaware
corporation; REDWOOD CAPITAL
MANAGEMENT, LLC, a Delaware
limited liability company; REDWOOD
DOE FUNDS 1-7; COLBECK CAPITAL
MANAGEMENT, LLC, a Delaware
limited liability company; COLBECK
DOE FUNDS 1-3,

Defendants.

Case No. 2:24-cv-04992-WLH-ADS

SPECIALLY APPEARING
DEFENDANTS FERAS
ANTOON AND DAVID
TASSILLO'S NOTICE OF
MOTION AND OMNIBUS
MOTION TO DISMISS THE
COMPLAINTS;
MEMORANDUM OF POINTS
AND AUTHORITIES IN
SUPPORT THEREOF

Hearing Date:  January 31, 2025
Hearing Time:  1:30 p.m.
Courtroom:  9B
Judge:  Hon. Wesley Hsu
Complaint Filed: June 13, 2024
Trial Date: not set

FERAS ANTOON AND DAVID TASSILLO'S
OMNIBUS MOTION TO DISMISS

1  S.O.,

2              Plaintiff,

3  v.

MINDGEEK S.A.R.L. a foreign entity;
4  MG FREESITES, LTD., a foreign entity;
MINDGEEK USA INCORPORATED, a
5  Delaware corporation; MG PREMIUM
LTD, a foreign entity; MG GLOBAL
6  ENTERTAINMENT INC., a Delaware
corporation; 9219-1568 QUEBEC, INC.,
7  foreign entity; BERND BERGMAIR, a
foreign individual; FERAS ANTOON, a
8  foreign individual; DAVID TASSILLO, a
foreign individual; VISA INC., a Delaware
9  corporation; REDWOOD CAPITAL
MANAGEMENT, LLC, a Delaware
10  limited liability company; REDWOOD
DOE FUNDS 1-7; COLBECK CAPITAL
11  MANAGEMENT, LLC, a Delaware
limited liability company; COLBECK
12  DOE FUNDS 1-3,

              Defendants.

Case No. 2:24-cv-04998-WLH-ADS

SPECIALLY APPEARING
DEFENDANTS FERAS
ANTOON AND DAVID
TASSILLO'S NOTICE OF
MOTION AND OMNIBUS
MOTION TO DISMISS THE
COMPLAINTS;
MEMORANDUM OF POINTS
AND AUTHORITIES IN
SUPPORT THEREOF

Hearing Date:  January 31, 2025
Hearing Time:  1:30 p.m.
Courtroom:  9B
Judge:  Hon. Wesley Hsu
Complaint Filed: June 13, 2024
Trial Date: not set

13  L.S.,

14              Plaintiff,

15  v.

MINDGEEK S.A.R.L. a foreign entity;
16  MG FREESITES, LTD., a foreign entity;
MINDGEEK USA INCORPORATED, a
17  Delaware corporation; MG PREMIUM
LTD, a foreign entity; MG GLOBAL
18  ENTERTAINMENT INC., a Delaware
corporation; 9219-1568 QUEBEC, INC.,
19  foreign entity; BERND BERGMAIR, a
foreign individual; FERAS ANTOON, a
20  foreign individual; DAVID TASSILLO, a
foreign individual; VISA INC., a Delaware
21  corporation; REDWOOD CAPITAL
MANAGEMENT, LLC, a Delaware
22  limited liability company; REDWOOD
DOE FUNDS 1-7; COLBECK CAPITAL
23  MANAGEMENT, LLC, a Delaware
limited liability company; COLBECK
24  DOE FUNDS 1-3,

25              Defendants.

Case No. 2:24-cv-05026-WLH-ADS

SPECIALLY APPEARING
DEFENDANTS FERAS
ANTOON AND DAVID
TASSILLO'S NOTICE OF
MOTION AND OMNIBUS
MOTION TO DISMISS THE
COMPLAINTS;
MEMORANDUM OF POINTS
AND AUTHORITIES IN
SUPPORT THEREOF

Hearing Date:  January 31, 2025
Hearing Time:  1:30 p.m.
Courtroom:  9B
Judge:  Hon. Wesley Hsu
Complaint Filed: June 14, 2024
Trial Date: not set

26

27

28

FERAS ANTOON AND DAVID TASSILLO'S
OMNIBUS MOTION TO DISMISS

1  W.P.,

2          Plaintiff,

   v.

3  MINDGEEK S.A.R.L. a foreign entity;
4  MG FREESITES, LTD., a foreign entity;
   MINDGEEK USA INCORPORATED, a
   Delaware corporation; MG PREMIUM
5  LTD, a foreign entity; MG GLOBAL
   ENTERTAINMENT INC., a Delaware
6  corporation; 9219-1568 QUEBEC, INC.,
   foreign entity; BERND BERGMAIR, a
7  foreign individual; FERAS ANTOON, a
   foreign individual; DAVID TASSILLO, a
8  foreign individual; VISA INC., a Delaware
   corporation; REDWOOD CAPITAL
9  MANAGEMENT, LLC, a Delaware
   limited liability company; REDWOOD
10 DOE FUNDS 1-7; COLBECK CAPITAL
   MANAGEMENT, LLC, a Delaware
11 limited liability company; COLBECK
   DOE FUNDS 1-3,
12
           Defendants.

13 A.K.,

14         Plaintiff,

15 v.

16 MINDGEEK S.A.R.L. a foreign entity;
   MG FREESITES, LTD., a foreign entity;
17 MINDGEEK USA INCORPORATED, a
   Delaware corporation; MG PREMIUM
18 LTD, a foreign entity; MG GLOBAL
   ENTERTAINMENT INC., a Delaware
19 corporation; 9219-1568 QUEBEC, INC.,
   foreign entity; BERND BERGMAIR, a
20 foreign individual; FERAS ANTOON, a
   foreign individual; DAVID TASSILLO, a
21 foreign individual; VISA INC., a Delaware
   corporation; REDWOOD CAPITAL
22 MANAGEMENT, LLC, a Delaware
   limited liability company; REDWOOD
23 DOE FUNDS 1-7; COLBECK CAPITAL
   MANAGEMENT, LLC, a Delaware
24 limited liability company; COLBECK
   DOE FUNDS 1-3,
25
           Defendants.

26

27

28

Case No. 2:24-cv-05185-WLH-ADS

SPECIALLY APPEARING DEFENDANTS FERAS ANTOON AND DAVID TASSILLO'S NOTICE OF MOTION AND OMNIBUS MOTION TO DISMISS THE COMPLAINTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Hearing Date:  January 31, 2025
Hearing Time:  1:30 p.m.
Courtroom:  9B
Judge:  Hon. Wesley Hsu
Complaint Filed: June 20, 2024
Trial Date: not set

Case No. 2:24-cv-05190-WLH-ADS

SPECIALLY APPEARING DEFENDANTS FERAS ANTOON AND DAVID TASSILLO'S NOTICE OF MOTION AND OMNIBUS MOTION TO DISMISS THE COMPLAINTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Hearing Date:  January 31, 2025
Hearing Time:  1:30 p.m.
Courtroom:  9B
Judge:  Hon. Wesley Hsu
Complaint Filed: June 20, 2024
Trial Date: not set

FERAS ANTOON AND DAVID TASSILLO'S
OMNIBUS MOTION TO DISMISS

J.L.,

                    Plaintiff,

          v.

MINDGEEK S.A.R.L. a foreign entity;
MG FREESITES, LTD., a foreign entity;
MINDGEEK USA INCORPORATED, a
Delaware corporation; MG PREMIUM
LTD, a foreign entity; MG GLOBAL
ENTERTAINMENT INC., a Delaware
corporation; 9219-1568 QUEBEC, INC.,
foreign entity; BERND BERGMAIR, a
foreign individual; FERAS ANTOON, a
foreign individual; DAVID TASSILLO, a
foreign individual; VISA INC., a Delaware
corporation; REDWOOD CAPITAL
MANAGEMENT, LLC, a Delaware
limited liability company; REDWOOD
MASTER FUND, LTD, a foreign
entity; MANUEL 2018, LLC, a
Delaware limited liability company;
GINOGERUM, LLC, a Delaware
limited liability company; WHITE
HATHAWAY OPPORTUNITY, LLC,
a Delaware limited liability company, CB
MEDIA VENTURES LLC, a Delaware
limited liability company; CB AGENCY
SERVICES, LLC, a Delaware limited
liability company; and CB
PARTICIPATIONS SPV, LLC, a
Delaware limited liability company,

                    Defendants.

Case No. 2:24-cv-07046-WLH-
ADS

SPECIALLY APPEARING
DEFENDANTS FERAS
ANTOON AND DAVID
TASSILLO'S NOTICE OF
MOTION AND OMNIBUS
MOTION TO DISMISS THE
COMPLAINTS;
MEMORANDUM OF POINTS
AND AUTHORITIES IN
SUPPORT THEREOF

Hearing Date:  January 31, 2025
Hearing Time:  1:30 p.m.
Courtroom:  9B
Judge:  Hon. Wesley Hsu
Complaint Filed: August 20, 2024
Trial Date: not set

FERAS ANTOON AND DAVID TASSILLO'S
OMNIBUS MOTION TO DISMISS

## NOTICE OF MOTION AND OMNIBUS MOTION TO DISMISS

PLEASE TAKE NOTICE that, on January 31, 2025 at 1:30 p.m., or as soon thereafter as the matters may be heard in Courtroom 9B in the U.S. District Court for the Central District of California, located at the First Street Courthouse, 350 W. 1st Street, Courtroom 9B, 9th Floor, Los Angeles, California 90012, before the Honorable Wesley Hsu, Specially Appearing Defendants Feras Antoon and David Tassillo will move, and hereby move, for Orders dismissing each of the Plaintiffs' Complaints in the above-captioned actions (the "Related Actions") pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(6) and 9(b).

Neither Antoon nor Tassillo consents nor submits to the jurisdiction of this Court, and they appear in these actions for the limited purpose of contesting jurisdiction.

This Omnibus Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on October 14, 2024.

If the Court finds jurisdiction over Antoon and Tassillo, they respectfully move for dismissal on the ground that each of the Plaintiffs in the Related Actions has failed to state a claim against them upon which relief can be granted. This Omnibus Motion is based on this Notice of Motion; the accompanying Memorandum of Law which was filed only in *K.A. v. MindGeek S.A.R.L., et al.*, No. 2:24-cv-04786 (WLH) (ADS) (C.D. Cal.) for the sake of judicial economy, but is incorporated in full into each of the Related Actions; and all other matters properly before this Court.

DATED: October 30, 2024                    Respectfully Submitted,

By: _____

COHEN & GRESSER LLP
Jason Brown (*pro hac vice*)
Matthew V. Povolny (*pro hac vice*)
Joanna Chan

*Attorneys for Specially Appearing Defendant Feras Antoon*

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO PC
Jonathan S. Sack (*pro hac vice*)
Alexander F.R. Peacocke (*pro hac vice* pending)

*Attorneys for Specially Appearing Defendant David Tassillo*

WIECHERT, MUNK & GOLDSTEIN, PC
David Wiechert (SBN 94607)

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES .......................................................................... iii

INTRODUCTION .......................................................................................... 1

BACKGROUND ............................................................................................ 5

    Procedural History ................................................................................ 5

    MindGeek .............................................................................................. 8

    Feras Antoon and David Tassillo ........................................................ 8

LEGAL STANDARD ................................................................................... 11

ARGUMENT ................................................................................................ 13

I.     THE COURT DOES NOT HAVE PERSONAL
      JURISDICTION OVER FERAS ANTOON OR DAVID
      TASSILLO ......................................................................................... 13

      A.    Jurisdictional Legal Standard ............................................... 13

      B.    Plaintiffs Do Not Plead Any Facts Demonstrating Antoon
          or Tassillo Personally Directed Their Conduct at
          California or Availed Themselves of The Benefits of
          Doing Business Here .............................................................. 16

      C.    Plaintiffs Fail to Overcome the Fiduciary Shield Doctrine
          Because Each Has Not Adequately Pled Personal
          Jurisdiction Under an Alter Ego Theory ............................... 18

          1.    Plaintiffs Do Not Allege "Injustice" Generally or
               "Injustice" Caused by Acts of Antoon or Tassillo ......... 20

          2.    There Is No "Unity of Interest and Ownership"
               Between Antoon or Tassillo and Non-Contesting
               Defendants ..................................................................... 24

II.    ALL OF THE INTERNATIONAL PLAINTIFFS' CLAIMS
      INVOLVE IMPERMISSIBLE EXTRATERRITORIAL
      APPLICATIONS OF FEDERAL LAW ....................................... 28

III.   FOREIGN PLAINTIFFS' CLAIMS INVOLVE
      IMPERMISSIBLE APPLICATIONS OF CALIFORNIA LAW ... 31

IV.   PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH
      RELIEF MAY BE GRANTED ...................................................... 33

      A.    Plaintiffs Do Not Allege that Antoon or Tassillo
          Knowingly Assisted, Facilitated, or Benefitted from Any

i

Primary Trafficking Violation by The Alleged Third-
Party Wrongdoers .................................................................. 33

B.    Plaintiffs Do Not Allege that Antoon or Tassillo
Received and Distributed CSEM Under 18 U.S.C. § 2252 ............... 36

C.    Plaintiffs Fail to Allege Any Claim Under State Law ....................... 37

V.    SECTION 230 IMMUNITY EXTENDS TO ANTOON AND
TASSILLO ........................................................................................... 43

CONCLUSION ................................................................................................. 47

FERAS ANTOON AND DAVID TASSILLO'S OMNIBUS MOTION TO
DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abundant Living Fam. Church v. Live Design, Inc.*,
    No. 5:22-CV-00140 (MRW), 2022 WL 2176583 (C.D. Cal. June
    15, 2022)..................................................................................................18

*Aldini AG v. Silvaco, Inc.*,
    No. 5:21-CV-06423 (JST), 2022 WL 20016826 (N.D. Cal. Aug. 3,
    2022)........................................................................................................32

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*,
    No. 2:14-CV-03053 (MWF) (VBK), 2015 WL 12777092 (C.D.
    Cal. Oct. 23, 2015) .................................................................................26

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
    7 Cal. 4th 503 (1994)..............................................................................43

*ARC Ecology v. U.S. Dep't of Air Force*,
    411 F.3d 1092 (9th Cir. 2005).................................................................29

*Ardente, Inc. v. Shanley*,
    No 3:07-CV-04479 (MHP), 2010 WL 546485 (N.D. Cal. Feb. 10,
    2010)........................................................................................................12

*Art Attacks Ink, LLC v. MGA Ent., Inc.*,
    No. 3:04-CV-01035 (BLM), 2009 WL 10672486 (S.D. Cal. Aug.
    10, 2009), *aff'd*, 581 F.3d 1138 (9th Cir. 2009)...................................27

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...............................................................................12

*AT&T v. Compagnie Bruxelles Lambert*,
    94 F.3d 586 (9th Cir. 1996)......................................................................5

*In re Auto. Antitrust Cases I & II*,
    135 Cal.App.4th 100 (2005)....................................................................13

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
    874 F.3d 1064 (9th Cir. 2017).................................................................14

iii

*Ayla, LLC v. Alya Skin Pty. Ltd.*,
    11 F.4th 972 (9th Cir. 2021) .............................................................................. 17

*Barnes v. Yahoo!, Inc.*,
    570 F.3d 1096 (9th Cir. 2009), *as amended* (Sept. 28, 2009) ............................ 44

*Beatport LLC v. SoundCloud Ltd*,
    No. 2:19-CV-00847 (MRW), 2020 WL 3977602 (C.D. Cal. July
    13, 2020) ............................................................................................................ 17

*Billion Int'l Trading Inc. v. Universal Sportswear Inc.*,
    No. 2:12-CV-06705 (BRO) (E), 2013 WL 12403059 (C.D. Cal.
    Dec. 27, 2013) .................................................................................................... 13

*Boeing Co. v. KB Yuzhnoye*,
    No. 2:13-CV-00730 (AB) (AJW), 2016 WL 2851297 (C.D. Cal.
    May 13, 2016) .................................................................................................... 21

*In re Boon Glob. Ltd.*,
    923 F.3d 643 (9th Cir. 2019) ......................................................... 19, 20, 22, 24

*Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco
Cnty.*,
    582 U.S. 255 (2017) ....................................................................................... 14-15

*Butler v. Adoption Media, LLC*,
    486 F. Supp. 2d 1022 (N.D. Cal. 2007) ............................................................ 21

*Calder v. Jones*,
    465 U.S. 783 (1984) .......................................................................................... 13

*Calise v. Meta Platforms, Inc.*,
    103 F.4th 732 (9th Cir. 2024) ........................................................................... 44

*Calvert v. Huckins*,
    875 F.Supp. 674 (E.D. Cal. 1995) .................................................................... 19

*Caraccioli v. Facebook, Inc.*,
    700 F.App'x 588 (9th Cir. 2017) ...................................................................... 38

FERAS ANTOON AND DAVID TASSILLO'S OMNIBUS MOTION TO
DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

*Core-Vent Corp. v. Nobel Indus. AB*,
    11 F.3d 1482 (9th Cir. 1993), *holding modified on other grounds
    by Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
    433 F.3d 1199 (9th Cir. 2006)........................................................................16

*Coste v. Fox Beverages USA Inc.*,
    No. 2:23-CV-02053 (WLH) (RAO), 2023 WL 8522987 (C.D. Cal.
    Oct. 10, 2023) ...............................................................................................24

*Cummings v. Worktap, Inc.*,
    No. 4:17-CV-06246 (SBA), 2019 WL 4221652 (N.D. Cal. Sept. 4,
    2019)................................................................................................................21

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) .......................................................................................14

*Daramola v. Oracle Am., Inc.*,
    No. 3:19-CV-07910 (JD), 2022 WL 2047553 (N.D. Cal. June 7,
    2022), *aff'd*, 92 F.4th 833 (9th Cir. 2024)...................................................32

*Davis v. Metro Prods., Inc.*,
    885 F.2d 515 (9th Cir. 1989) .........................................................................19

*Doe v. Grindr Inc.*,
    No. 2:23-CV-02093 (ODW) (PD), 2023 WL 9066310 (C.D. Cal.
    Dec. 28, 2023) ...............................................................................................33

*Doe v. MySpace*, Inc.
    474 F.Supp.2d 843 (W.D. Tex. 2007), *aff'd,* 528 F.3d 413 (5th Cir.
    2008)................................................................................................................40

*Doe v. Twitter, Inc.*,
    555 F. Supp. 3d 889 (N.D. Cal. 2021), *aff'd in part, rev'd in part
    and remanded sub nom. Doe #1 v. Twitter, Inc.*, No. 22-15103,
    2023 WL 3220912 (9th Cir. May 3, 2023) .......................................................34

*Doe v. Twitter, Inc.*,
    No. 3:21-CV-00485 (JCS), 2023 WL 8568911 (N.D. Cal. Dec. 11,
    2023)..........................................................................................................35, 44

*Doe v. WebGroup Czech Republic, A.S.*,
    No. 2:21-CV-02428 (SPG) (SK), 2024 WL 3533426 (C.D. Cal.
    July 24, 2024) ..........................................................................................30, 47

v

*Does 1-6 v. Reddit, Inc.*,
  51 F.4th 1137 (9th Cir. 2022)...................................................34, 46, 47

*Dole Food Co. v. Patrickson*,
  538 U.S. 468 (2003) .................................................................... 19

*Dyroff v. Ultimate Software Grp., Inc.*,
  934 F.3d 1093 (9th Cir. 2019).................................................... 45

*Eclectic Properties E., LLC v. Marcus & Millichap Co.*,
  751 F.3d 990 (9th Cir. 2014)....................................................... 36

*Edwards v. Scott David Leonard, Gia's Life Fund, LLC*,
  No. 2:23-CV-04437 (WLH) (RAO), 2023 WL 11664594 (C.D.
  Cal. Oct. 24, 2023) ...................................................................... 12

*Ent. Rsch. Grp., Inc. v. Genesis Creative Grp., Inc.*,
  122 F.3d 1211 (9th Cir. 1997)...................................................... 43

*Fair Hous. Council of Riverside Cnty., Inc. v. Grp. XIII Prop. LP*,
  No. 5:21-CV-00941 (JGB) (KK), 2023 WL 4680764 (C.D. Cal.
  Apr. 27, 2023)............................................................................... 26

*Fair Hous. Council of San Fernando Vall. v. Roommates.Com, LLC*,
  521 F.3d 1157 (9th Cir. 2008) (en banc)..................................43, 45

*Frances T. v. Vill. Green Owners Assn.*,
  42 Cal.3d 490 (1986)..................................................................... 37

*Gerritsen v. Warner Bros. Ent. Inc.*,
  116 F.Supp.3d 1104 (C.D. Cal. 2015)........................................... 20

*Gonzalez v. Google LLC*,
  2 F.4th 871 (9th Cir. 2021), *vacated and remanded,* 598 U.S. 617
  (2023)............................................................................................. 45

*Hambleton Bros. Lumber Co. v. Balkin Enters. Inc.*,
  397 F.3d 1217 (9th Cir. 2005)....................................................... 21

*Hasso v. Hapke*,
  227 Cal.App.4th 107 (2014), *as modified on denial of reh'g* (July
  15, 2014)........................................................................................ 19

vi

FERAS ANTOON AND DAVID TASSILLO'S OMNIBUS MOTION TO
DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

*Incipio, LLC v. Argento Sc By Sicura Inc.*,
No. 8:17-CV-01974 (AG) (KES), 2018 WL 4945002 (C.D. Cal.
July 18, 2018) ................................................................................... 19

*Int'l Shoe Co.* v. *State of Wash., Off. of Unemployment Comp. &
Placement*,
326 U.S. 310 (1945) ......................................................................... 18

*Jackson v. Gen. Mills, Inc.*,
No. 3:18-CV-2634 (LAB) (BGS), 2019 WL 4599845 (S.D. Cal.
Sept. 23, 2019)................................................................................. 33

*JPV I L.P. v. Koetting*,
88 Cal.App.5th 172 (2023), *review denied* (May 17, 2023) .............. 23

*Kwikset Corp. v. Superior Ct.*,
51 Cal.4th 310 (2011)....................................................................... 40

*In re L. Scott Apparel, Inc.*,
615 B.R. 881 (C.D. Cal. 2020).................................................... 24, 25

*Leitner v. Sadhana Temple of New York, Inc.*,
No. 2:13-CV-07902 (MMM) (E), 2014 WL 12588643 (C.D. Cal.
Oct. 17, 2014)................................................................................... 25

*Lennard v. Yeung*,
No. 2:10-CV-09322 (MMM) (AGR), 2012 WL 13006214 (C.D.
Cal. Feb. 23, 2012) .....................................................................25-26

*Letizia v. Facebook Inc.*,
267 F.Supp.3d 1235 (N.D. Cal. 2017) .........................................40-41

*LNS Enters. LLC v. Cont'l Motors, Inc.*,
22 F.4th 852 (9th Cir. 2022)........................................................ 15, 16

*Martinez v. Aero Caribbean*,
764 F.3d 1062 (9th Cir. 2014)........................................................... 11

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
647 F.3d 1218 (9th Cir. 2011)........................................................... 14

FERAS ANTOON AND DAVID TASSILLO'S OMNIBUS MOTION TO
DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

*Merritt v. Wells Fargo Bank, N.A.*,
  No. SACV 18-1960 (JVS) (JDE), 2019 WL 1951608 (C.D. Cal.
  Mar. 15, 2019) (Selna, J.)........................................................................42

*Morrill v. Scott Fin. Corp.*,
  873 F.3d 1136 (9th Cir. 2017)..................................................................12

*Morrison v. Nat'l Australia Bank Ltd.*,
  561 U.S. 247 (2010) ..................................................................................29

*NuCal Foods, Inc. v. Quality Egg LLC*,
  887 F.Supp.2d 977 (E.D. Cal. 2012)........................................................22

*Oakley, Inc. v. Trimera Mil. Tech., Inc.*,
  No. 8:14-CV-01649 (DOC) (DFM), 2016 WL 8794459 (C.D. Cal.
  Jan. 22, 2016)............................................................................................23

*Paguirigan v. Prompt Nursing Emp. Agency LLC*,
  286 F.Supp.3d 430 (E.D.N.Y. 2017).........................................................36

*Perfect 10, Inc. v. Giganews, Inc.*,
  No. 2:11-CV-07098 (AB) (JPR), 2015 WL 12710753 (C.D. Cal.
  June 3, 2015), *aff'd*, 847 F.3d 357 (9th Cir. 2017).................................21

*Prompt Staffing, Inc. v. United States*,
  321 F.Supp.3d 1157 (C.D. Cal. 2018).......................................................23

*Quesada v. Atrium Hosp. LP*,
  No. 2:22-CV-06143 (SVW) (MAA), 2023 WL 3727707 (C.D. Cal.
  Apr. 26, 2023)............................................................................................42

*Ranza v. Nike, Inc.*,
  793 F.3d 1059 (9th Cir. 2015).......................................20, 24, 25, 26

*RJR Nabisco v. Eur. Cmty.*,
  579 U.S. 325 (2016) ................................................................28, 29, 30

*SASA MASLIC, et al. v. ISM VUZEM D.O.O.*,
  No. 5:21-CV-02556 (BLF), 2024 WL 3408217 (N.D. Cal. July 11,
  2024)..........................................................................................................41

FERAS ANTOON AND DAVID TASSILLO'S OMNIBUS MOTION TO
DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

*ScoreBlue, LLC v. Locum Tele PC*,
   No. 2:23-CV-00345 (WLH) (AS), 2024 WL 3304515 (C.D. Cal.
   May 29, 2024)................................................................................ 15, 17

*SEC v. Jammin Java Corp.*,
   No. 2:15-CV-08921 (SVW) (MRW), 2016 WL 6595133 (C.D.
   Cal. July 18, 2016)...................................................................16-17, 27

*Sher v. Johnson*,
   911 F.2d 1357 (9th Cir. 1990)............................................................. 13

*Stephen Gould Corp. v. Osceola*,
   No. 2:22-CV-08347 (WLH) (AGR), 2023 WL 8254483 (C.D. Cal.
   Oct. 13, 2023) ..................................................................................24

*Stewart v. Screen Gems-EMI Music, Inc.*,
   81 F.Supp.3d 938 (N.D. Cal. 2015)...................................................... 23

*Sullivan v. Oracle Corp.*,
   51 Cal.4th 1191 (2011)....................................................................... 32

*Tatung Co., Ltd. v. Shu Tze Hsu*,
   217 F.Supp.3d 1138 (C.D. Cal. 2016)................................................... 23

*TradeWinds Airlines, Inc. v. Soros*,
   No. 1:08-CV-05901 (JFK), 2012 WL 983575 (S.D.N.Y. Mar. 22,
   2012)................................................................................................ 22

*Trans-World Int'l, Inc. v. Smith-Hemion Prods., Inc.*,
   972 F.Supp.1275 (C.D. Cal. 1997)....................................................27-28

*United States Liab. Ins. Co. v. Haidinger–Hayes, Inc.*,
   1 Cal.3d 586 (1970)........................................................................... 37

*United States v. Funds Held in the Name or for the Benefit of
   Wetterer*,
   210 F.3d 96 (2d Cir. 2000) ................................................................. 27

*United States v. X-Citement Video, Inc.*,
   513 U.S. 64 (1994) .........................................................................36-37

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003)............................................................. 12

ix

*In re W. States Wholesale Nat. Gas Antitrust Litig.*,
No. 2:03-CV-01431 (PMP) (PAL), 2009 WL 455658 (D. Nev.
Feb. 23, 2009) ................................................................................... 22

*Willick v. Napoli Bern Ripka & Assocs., LLP*,
No. 2:15-CV-00652 (AB) (E), 2019 WL 3064120 (C.D. Cal. Mar.
13, 2019) .......................................................................................... 24

*Wilson v. Frito-Lay N. Am., Inc.*,
961 F.Supp.2d 1134 (N.D. Cal. 2013) ............................................ 33

*Wimbledon Fund, SPC v. Graybox, LLC*,
No. 2:15-CV-06633 (CAS) (AJW), 2016 WL 7444709 (C.D. Cal.
Aug. 31, 2016) ................................................................................. 12

*Zhang v. Twitter Inc.*,
No. 3:23-CV-00980 (JSC), 2023 WL 5493823 (N.D. Cal. Aug. 23,
2023) (18 U.S.C. §§ 2252, 2252A, 2257 claims are "barred by
Section 230.") .................................................................................. 44

**Statutes**

18 U.S.C. § 1591 ................................................................................ *passim*

18 U.S.C. § 1594 ........................................................................... 9, 29, 35

18 U.S.C. § 1595 ....................................................................... 9, 33, 35, 44

18 U.S.C. § 1596 ..................................................................................... 30

18 U.S.C. § 2252 ............................................................... 10, 31, 36-37, 44

18 U.S.C. § 2255 ......................................................................... 10, 31, 44

47 U.S.C. § 230 ................................................................................ *passim*

Cal. Civ. Code § 52.5 .................................................................. 11, 32, 41

Cal. Civ. Code § 1708.85 ............................................................ 11, 32, 39

Cal. Civ. Code § 3344 .................................................................. 10, 32, 38

Cal. Civ. Proc. Code § 410.10 ............................................................... 14

FERAS ANTOON AND DAVID TASSILLO'S OMNIBUS MOTION TO
DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

Colo. Rev. Stat. Ann. § 6-2-103, et. seq. .................................................................41

Colo. Rev. Stat. Ann. § 13-21-127 ...........................................................................42

Fla. Stat. Ann. § 540.08 ............................................................................................38

Fla. Stat. Ann. § 784.049 ..........................................................................................39

Fla. Stat. Ann. § 817.41 ............................................................................................41

Mo. Ann. Stat. § 566.223 ..........................................................................................42

Mo. Ann. Stat. § 573.110 ..........................................................................................39

N.H. Rev. Stat. Ann. § 358-A:2 ...............................................................................41

N.H. Rev. Stat. Ann. § 633:11 ..................................................................................42

N.J. Stat. Ann. § 2A:30B-3 .......................................................................................40

N.J. Stat. §56:8-2 ......................................................................................................41

N.Y. Civ. Rights Law § 51 ........................................................................................38

N.Y. Civ. Rights Law § 52-b, et seq. ........................................................................39

N.Y. Soc. Serv. Law § 483-bb...................................................................................42

**Other Authorities**

Fed. R. Civ. P. 4(k).............................................................................................13, 14

Fed. R. Civ. P. 8(a) ...................................................................................................12

Fed. R. Civ. P. 9(b)........................................................................................5, 12, 40

Fed. R. Civ. P. 12(b)....................................................................................5, 11-12

Fed. R. Civ. P. 20(a) ...................................................................................................6

FERAS ANTOON AND DAVID TASSILLO'S OMNIBUS MOTION TO
DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

# INTRODUCTION

The complaints filed in each of the above-referenced 14 actions (the "Related Actions") allege a wide variety of disparate misconduct involving different alleged perpetrators, plaintiffs,[1] locations, time periods, and explicit content posted to MindGeek websites.[2]  Notwithstanding these differences, all of the Complaints contain virtually identical factual allegations[3] as to Defendants Feras Antoon and

---

[1] These 14 pseudonymous plaintiffs include Plaintiff K.A., Plaintiff N.L., Plaintiff L.T., Plaintiff T.C., Plaintiff X.N., Plaintiff N.Y., Plaintiff J.C., Plaintiff W.L., Plaintiff C.S., Plaintiff S.O., Plaintiff L.S., Plaintiff W.P., Plaintiff A.K., and Plaintiff J.L. (collectively, the "Plaintiffs").

[2] These complaints, collectively referred to herein as the "Complaints" or "Compls.," include *K.A. v. MindGeek S.A.R.L., et al.*, No. 2:24-cv-04786 (WLH) (ADS) (C.D. Cal.), ECF No. 1, Complaint (the "K.A. Complaint" or "K.A. Compl."); *N.L. v. MindGeek S.A.R.L., et al.*, No. 2:24-cv-04788 (WLH) (ADS) (C.D. Cal.), ECF No. 1, Complaint (the "N.L. Complaint" or "N.L. Compl."); *L.T. v. MindGeek S.A.R.L., et al.*, No. 2:24-cv-04791 (WLH) (ADS) (C.D. Cal.), ECF No. 1, Complaint (the "L.T. Complaint" or "L.T. Compl."); *T.C. v. MindGeek S.A.R.L., et al.*, No. 2:24-cv-04795 (WLH) (ADS) (C.D. Cal.), ECF No. 1, Complaint (the "T.C. Complaint" or "T.C. Compl."); *X.N. v. MindGeek S.A.R.L., et al.*, No. 2:24-cv-04800 (WLH) (ADS) (C.D. Cal.), ECF No. 1, Complaint (the "X.N. Complaint" or "X.N. Compl."); *N.Y. v. MindGeek S.A.R.L., et al.*, No. 2:24-cv-04801 (WLH) (ADS) (C.D. Cal.), ECF No. 1, Complaint (the "N.Y. Complaint" or "N.Y. Compl."); *J.C. v. MindGeek S.A.R.L., et al.*, No. 2:24-cv-04971 (WLH) (ADS) (C.D. Cal.), ECF No. 1, Complaint (the "J.C. Complaint" or "J.C. Compl."); *W.L. v. MindGeek S.A.R.L., et al.*, No. 2:24-cv-04977 (WLH) (ADS) (C.D. Cal.), ECF No. 1, Complaint (the "W.L. Complaint" or "W.L. Compl."); *C.S. v. MindGeek S.A.R.L., et al.*, No. 2:24-cv-04992 (WLH) (ADS) (C.D. Cal.), ECF No. 1, Complaint (the "C.S. Complaint" or "C.S. Compl."); *S.O. v. MindGeek S.A.R.L., et al.*, No. 2:24-cv-04998 (WLH) (ADS) (C.D. Cal.), ECF No. 1, Complaint (the "S.O. Complaint" or "S.O. Compl."); *L.S. v. MindGeek S.A.R.L., et al.*, No. 2:24-cv-05026 (WLH) (ADS) (C.D. Cal.), ECF No. 1, Complaint (the "L.S. Complaint" or "L.S. Compl."); *W.P. v. MindGeek S.A.R.L., et al.*, No. 2:24-cv-05185 (WLH) (ADS) (C.D. Cal.), ECF No. 1, Complaint (the "W.P. Complaint" or "W.P. Compl."); *A.K. v. MindGeek S.A.R.L., et al.*, No. 2:24-cv-05190 (WLH) (ADS) (C.D. Cal.), ECF No. 1, Complaint (the "A.K. Complaint" or "A.K. Compl."); and *J.L. v. MindGeek S.A.R.L., et al.*, No. 2:24-cv-07046 (WLH) (ADS) (C.D. Cal.), ECF No. 1, Complaint (the "J.L. Complaint" or "J.L. Compl.").

[3] Except for the substitution of Plaintiffs' initials and residencies, paragraphs 1 through 310 in each of the N.L. Compl., L.T. Compl., T.C. Compl., X.N. Compl., N.Y. Compl., J.C. Compl., W.L. Compl., C.S. Compl., S.O. Compl., L.S. Compl., W.P. Compl., A.K. Compl., and K.A. Compl. (collectively, the "June Compls."), all of which were filed between June 7 to 20, 2024, reflect nearly identical language.

---

1

FERAS ANTOON AND DAVID TASSILLO'S OMNIBUS MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

David Tassillo, all of which lack the requisite specificity to make a *prima facie* showing (a) of personal jurisdiction over Antoon and Tassillo, both of whom live and work in Canada and have no contacts with either California or the United States; and (b) that Antoon or Tassillo took any specific action in California or the United States–much less the requisite tortious or other wrongful conduct–that harmed any of the Plaintiffs. Rife with conclusory allegations, not differentiated by party, the Complaints name Antoon and Tassillo as Defendants solely based on their former job titles and employment in Canada.[4] Plaintiffs' allegations are legally insufficient, and their claims against Antoon and Tassillo should thus be dismissed for several independent reasons.

*First*, the Complaints do not contain *a single factual allegation* that either Antoon or Tassillo purposefully directed their conduct at either California or the United States, and all but concede that Antoon and Tassillo do not have relevant jurisdictional contacts with the United States. Apparently recognizing this deficiency, Plaintiffs allege that Antoon and Tassillo are the alter egos of several MindGeek entities. Plaintiffs allege that the jurisdictional contacts of various

---

Although the paragraph numbering varies at times, that near identical language has been replicated in the J.L. Compl. (together with the June Compls., the "Compls." or "Complaints"). Although the Complaints may contain some factual variations and alternative applications of non-California statutes, the causes of action in the Complaints are substantively the same. *See* K.A. Compl. ¶¶ 319-456; N.L. Compl. ¶¶ 322-459; L.T. Compl. ¶¶ 321-458; T.C. Compl. ¶¶ 319-456; X.N. Compl. ¶¶ 320-457; N.Y. Compl. ¶¶ 328-465; J.C. Compl., p. 99 at ¶ 1 to p. 125 at ¶ 138; W.L., Compl. ¶¶ 322-459; C.S., Compl. ¶¶ 319-456; S.O. Compl. ¶¶ 320-457; L.S. Compl. ¶¶ 321-458; W.P. Compl. ¶¶ 318-455; A.K. Compl. ¶¶ 321-458; J.L. Compl. ¶¶ 328-465.

[4] The arguments in the present motion are essentially the same for individual defendants Antoon and Tassillo, the former executives of one of the corporate defendants 9219-1568 Quebec, Inc. Accordingly, we make the present motion jointly in the interest of judicial economy and pursuant to the Order Granting Joint Stipulation to Request Limited Coordination for Purposes of Responding to Complaints in Related Cases. *See* K.A., ECF No. 54; N.L., ECF No. 52; L.T., ECF No. 56; T.C., ECF No. 53; X.N., ECF No. 52; N.Y., ECF No. 48; J.C., ECF No. 46; W.L., ECF No. 46; C.S., ECF No. 45; S.O., ECF No. 39; L.S., ECF No. 49; W.P., ECF No. 39; A.K., ECF No. 46; J.L., ECF No. 38.

FERAS ANTOON AND DAVID TASSILLO'S OMNIBUS MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

MindGeek subsidiaries should be imputed to Antoon and Tassillo because they formerly served as officers of one of the MindGeek corporate defendants subject to this Court's jurisdiction (the "Non-Contesting Defendants"), and because Antoon and Tassillo were minority shareholders in the MindGeek group of entities. These allegations fail because they do not make a *prima facie* showing of the essential elements of an alter ego theory of personal jurisdiction. The Complaints fail to meet basic notice pleading requirements, much less the heightened pleading standard applicable to claims that sound in fraud.

Plaintiffs fail to satisfy either prong of their alter ego theory. As to the first prong, Plaintiffs cannot establish that continued respect of the corporate form would sanction a fraud or promote injustice. The Complaints do not plausibly allege misuse of the corporate form, let alone misuse that caused Plaintiffs' alleged injury or deprived them of a right. Plaintiffs also do not allege that corporate entities are undercapitalized or otherwise judgment proof—key factors in the alter ego analysis. To the contrary, Plaintiffs allege that MindGeek is a "dominant, monopolistic" company operating in a nearly $100 billion market.[5] Plaintiffs' conclusory theory of injustice—a suggestion that the MindGeek entities were structured to escape liability—has been rejected by the Ninth Circuit. This deficiency alone is fatal for Plaintiffs' personal jurisdiction claim.

As to the second prong, Plaintiffs fail to allege a "unity of interest and ownership" such that the separateness of the corporation and Antoon or Tassillo has effectively ceased. Plaintiffs resort to impermissible group pleading regarding ultimate control of MindGeek—at times alleging that the majority shareholder, Bernd Bergmair, had ultimate control;[6] at other times, alleging that Bergmair,

---

[5] June Compls. ¶¶ 2, 37; J.L. Compl. ¶¶ 2, 35.

[6] Compls. ¶ 17.

3

Antoon, and Tassillo had ultimate control; [7] and at still other times alleging MindGeek's lenders had ultimate control. [8]   Such conclusory allegations fail to demonstrate that Antoon or Tassillo dominated every facet of MindGeek's business.

*Second*, Plaintiffs' claims involve impermissible extraterritorial applications of federal or California law.  The Complaints allege harm arising from the conduct of a variety of third parties—with no alleged connection to Antoon or Tassillo—who provided explicit content to MindGeek websites, and in at least six of those Complaints the alleged harm occurred outside the United States while the corresponding Plaintiffs were at all relevant times a resident of Colombia, Thailand, or the United Kingdom.  Neither the federal nor California statutes implicated by the Complaints were intended to apply to non-residents where the alleged tortious conduct took place outside of the United States or California.  Plaintiffs' California common law claims likewise only apply extraterritorially where the relevant conduct gives rise to liability in California.

*Third*, Plaintiffs have also failed to state a claim against either Antoon or Tassillo.  The Complaints engage in impermissible group pleading, failing to put Antoon or Tassillo on notice of the allegations against them, and fail to state a claim upon which relief can be granted as to any count.  Moreover, every one of the Plaintiffs' claims against Antoon or Tassillo arise from content provided by a third party to a website and seeks to hold the website liable as the publisher of that content.  Claims such as these are precisely those that Congress intended to preclude under Section 230 of the Communications Decency Act ("CDA"), 47 U.S.C. § 230, and fail for that reason.

---

[7] Compls. ¶¶ 18-19.
[8] Compls. ¶ 270.

FERAS ANTOON AND DAVID TASSILLO'S OMNIBUS MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

Having failed to plead sufficient facts to support personal jurisdiction or state a claim, the Court should dismiss with prejudice Plaintiffs' claims against Defendants Antoon and Tassillo.[9]

## **BACKGROUND**[10]

### **Procedural History**

On June 17, 2021, Serena Fleites and 33 other unnamed plaintiffs commenced a separate lawsuit asserting 19 causes of action against seven MindGeek-related entities[11] (the "MindGeek Entity Defendants"),[12] Visa Inc., former MindGeek majority shareholder Bernd Bergmair, and two former executives of a Canadian MindGeek subsidiary and minority shareholders, Antoon and Tassillo (together with Bergmair, the "Individual Defendants").[13]  *See Fleites,* ECF No. 1.

On October 20, 2021, Antoon, Tassillo, and the other defendants filed

---

[9] The Court should also dismiss Plaintiffs' claims against Antoon and Tassillo for the reasons set forth in (i) their Motion to Dismiss the Second Amended Complaint in *Fleites v. MindGeek S.a.r.L.*, No. 2:21-cv-04920 (WLH) (ADS) (C.D. Cal.) ("Fleites"), ECF No. 436, and (ii) concurrently filed memoranda of points and authorities submitted by the MindGeek Entity Defendants and Bernd Bergmair in the Related Actions pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(6) and 9(b), with which Antoon and Tassillo join.

[10] For purposes of a motion to dismiss, the well-pleaded factual allegations in the complaint are assumed to be true. *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).  Antoon and Tassillo's recitation of the "facts" herein is based on the allegations in the Complaints, is made solely for the purposes of this motion, and does not speak to the accuracy of any allegation.

[11] These entities are MindGeek S.a.r.l., a Luxembourg holding company; MG Freesites, Ltd., a Cypriot company; MindGeek USA Incorporated, a Delaware corporation; MG Premium Ltd., a Cypriot company; MG Global Entertainment, Inc., a Delaware corporation; and 9219-1568 Québec, Inc., a corporation established under the laws of the Province of Québec.  *See* Fleites Compl. ¶¶ 11-16.

[12] Fleites' complaint defines the MindGeek Entity Defendants as "MindGeek" but also defines the "MindGeek Defendants" to include both the entities and the Individual Defendants. *Id.*, ECF No. 167, Compl. at p. 1.  For clarity, this brief distinguishes between the "MindGeek Entity Defendants" and the "Individual Defendants."

[13] Fleites also previously brought claims against a Canadian MindGeek employee, Corey Urman.  The Complaints do not plead claims against Mr. Urman.

---

5

companion motions to dismiss the Fleites complaint for lack of personal jurisdiction and for failure to state a claim upon which relief can be granted.  *Id.*, ECF Nos. 62, 67, 68, 69, 70.  Antoon and Tassillo, foreign defendants, argued that the Fleites complaint was devoid of allegations that they had the requisite minimum contacts with California or the United States, and that Fleites failed to state a claim against them.  *See, e.g.*, *Id.*, ECF Nos. 67, 68.

On October 22, 2021, the MindGeek Entity Defendants moved to sever and dismiss the plaintiffs on the basis that they had been improperly joined under Federal Rule of Civil Procedure 20(a).  *Id.*, ECF No. 75.  Antoon and Tassillo and the other Individual Defendants joined the motion to sever.  *Id.*, ECF Nos. 76, 81, 82, 86.

On February 10, 2022, the Fleites Court granted the MindGeek Entity Defendants' motion to sever and dismiss on the basis that Plaintiffs' claims did not arise out of the same series of transactions or occurrences because the

> alleged occurrences of sex trafficking, child pornography, and appropriation and misuse of likeness differ[ed] substantially in where the improper conduct allegedly occurred, how it occurred, and who perpetrated the conduct . . . . [The Plaintiffs] were victimized by different individuals . . . . [The Plaintiffs'] videos that were posted to MindGeek's platforms also were posted at different time periods. . . . [The] interactions with MindGeek [] var[ied] widely.

*Id.*, ECF No. 119 at pp. 9-10.  The Court held that "Plaintiff Serena Fleites will continue as the only named Plaintiff in this action," and the Court dismissed without prejudice the claims of the other 33 plaintiffs.  *Id.* at p. 19.  Some of the Plaintiffs appear to have been among those 33 plaintiffs.  *See id.*, ECF No. 1 ¶¶ 270-404.

Following severance, Serena Fleites filed a First Amended Complaint and, after Defendants moved to dismiss that complaint, the court granted Fleites jurisdictional discovery.  *Id.*, ECF No. 167.  Jurisdictional discovery lasted over a year, with Defendants producing more than 99,000 pages of documents, answering

FERAS ANTOON AND DAVID TASSILLO'S OMNIBUS MOTION TO
DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

dozens of interrogatories and requests for admission, and Fleites taking seven jurisdictional depositions, including day-long depositions of Antoon and Tassillo. Nearly a year later, counsel for Fleites filed a Second Amended Complaint (the "Fleites Complaint"). *Id.*, ECF No. 387. Defendants thereafter moved to dismiss the Fleites Complaint. *See, e.g.*, *id.,* ECF No. 436. Those motions are currently pending.

The Complaints were filed nearly 18 months or more after the district court's severance ruling: Plaintiffs K.A., N.L., L.T., T.C., X.N., and N.Y. filed on June 7, 2024; Plaintiff J.C. on June 12, 2024; Plaintiffs W.L., C.S., and S.O. on June 13, 2024; Plaintiff L.S. on June 14, 2024; Plaintiffs W.P. and A.K. on June 20, 2024; and Plaintiff J.L. on August 20, 2024. Each of the Plaintiffs divulge details unique to the alleged misconduct they experienced, but none of the Complaints tailor substantive claims against Antoon or Tassillo nor pursue claims against them in a jurisdictionally appropriate forum. Rather, the allegations as to Antoon or Tassillo are *nearly identical* to those deficiently pleaded allegations in the Fleites Complaint.

All but two of the Complaints were brought by non-California residents. Colombian Plaintiffs X.N. and L.S., British Plaintiff N.Y., and Thai Plaintiffs C.S., S.O., and W.P. (collectively, the "International Plaintiffs") allege extraterritorial violations of American law and California law by foreign defendants involving wrongful conduct by third parties that allegedly took place, either explicitly or implicitly, outside the boundaries of the United States. Domestic Plaintiffs K.A., N.L., L.T., T.C., J.C., and A.K. (collectively, the "Out-of-State Plaintiffs" and together with the International Plaintiffs, the "Foreign Plaintiffs") allege extraterritorial violations of California law by foreign defendants involving wrongful conduct by third parties that allegedly occurred, either explicitly or implicitly, outside of California. And although Plaintiff W.L. is alleged to be a California resident, her complaint does not specifically allege the situs of

FERAS ANTOON AND DAVID TASSILLO'S OMNIBUS MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

wrongdoing.

**MindGeek**

Plaintiffs improperly lump together six corporate defendants—mostly non-U.S. entities—and treat them as a single business entity called "MindGeek." Compls. at p. 1. The "MindGeek" at issue in this case is the operator of various pornographic websites, including Pornhub. Compls. ¶ 11.

MindGeek's business model is similar to that of YouTube. It offers free content, primarily videos uploaded by users and third-party businesses, and uses traffic generated by that content to (a) advertise additional pornographic sites that offer paid content; (b) sell advertising for products; and (c) gather user data for marketing and development. Compls. ¶¶ 13-15; June Compls. ¶¶ 38, 47; J.L. Compl. ¶¶ 36, 45. MindGeek has comprehensive terms of service, to which users are required to agree before using the site. June Compls. ¶ 49; J.L. Compl. ¶ 47. It also employs moderators to screen the content on its websites, investigate and respond to complaints, and engage with law enforcement. *See, e.g.*, June Compls. ¶¶ 70, 214; J.L. Compl. ¶¶ 68, 212.

**Feras Antoon and David Tassillo**

Feras Antoon and David Tassillo, both Canadian residents, are the former Chief Executive Officer and Chief Operating Officer, respectively, of 9219-1568 Quebec, Inc. ("9219 Inc."). Compls. ¶¶ 18, 19. Antoon and Tassillo both previously worked at a predecessor corporation, Manwin, which became MindGeek in 2013. June Compls. ¶ 153; J.L. Compl. ¶ 151. Antoon and Tassillo became CEO and COO of 9219 Inc., in 2013, and acquired their minority equity interest the same year. Compls. p. 1 n.1, ¶¶ 18, 19; June Compls. ¶ 153; J.L. Compl. ¶ 151. 9219 Inc., occasionally referred to as "MindGeek Canada," Compls. ¶ 16, is a service company that provides managerial, administrative, engineering, sales, and other services to a

FERAS ANTOON AND DAVID TASSILLO'S OMNIBUS MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

number of other entities that in turn operate MindGeek's websites, including PornHub.

Plaintiffs allege that both Antoon and Tassillo "exercised control over all [MindGeek] entities and their collective businesses, including being aware of, endorsing, and implementing the illegal activities alleged" in the Complaints. Compls. ¶¶ 18, 19. However, Antoon and Tassillo were minority shareholders in the group that controlled MindGeek. *See* Tassillo Decl. ¶ 16; Antoon Decl. ¶ 20. At all times relevant to this action, the MindGeek Entity Defendants observed appropriate corporate formalities, kept separate bank accounts to which neither Antoon nor Tassillo had access, and were managed by their respective officers and directors. Tassillo Decl. ¶¶ 34-39; Antoon Decl. ¶¶ 38-43. Antoon and Tassillo both signed a separation agreement with 9219 Inc. in June 2022. Tassillo Decl. ¶ 17; Antoon Decl. ¶ 19. In 2023, Antoon, Tassillo, and majority shareholder Bernd Bergmair sold their interests in MindGeek to an unrelated third-party. Compls. at p. 1 n.1, ¶¶ 18, 19; Tassillo Decl. ¶ 33; Antoon Decl. ¶ 37.

Plaintiffs each assert 13 causes of action against Antoon and Tassillo. Four of Plaintiffs' causes of action assert federal claims: Counts I and IV allege violations of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. §§ 1591(A)(1), 1591(A)(2), 1595 (Count I), and 18 U.S.C. §§ 1594(c), 1595 (Count IV).[14] Counts V and VI allege violations of the federal child pornography possession

---

[14] J.L. Compl. ¶¶ 328-40, 364-372; N.Y. Compl.. ¶¶ 328-40, 364-372; AK Comp. ¶¶ 321-333, 357-365; L.S. Compl. ¶¶ 321-333, 357-365; L.T. Compl. ¶¶ 321-333, 357-365; C.S. Compl. ¶¶ 319-331, 355-363; K.A. Compl. ¶¶ 319-331, 355-363; T.C. Compl. ¶¶ 319-331, 355-363; J.C. Compl. ¶¶ 1-13, 37-45, N.L. Compl. ¶¶ 322-34, 358-66; W.L. Compl. ¶¶ 322-34, 358-66; S.O. Compl. ¶¶ 320-32, 356-64; X.N. Compl. ¶¶ 320-32, 356-64; W.P. Compl .¶¶ 318-330.

FERAS ANTOON AND DAVID TASSILLO'S OMNIBUS MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

and transportation statutes, 18 U.S.C. §§ 2252, 2255 (Count V) and 18 U.S.C. §§ 2252A, 2255 (Count VI).[15]

Plaintiffs also assert 10 California law claims against Antoon and Tassillo. Count VII asserts a common law tort claim for public disclosure of private facts.[16] Count VIII asserts a common law tort claim for intrusion into private affairs.[17] Count IX asserts a common law tort claim for placing each Plaintiff in false light.[18] Count X asserts a common law tort claim for misappropriation of name and likeness.[19] Count XI asserts a statutory claim for misappropriation of name and likeness in violation of California Civil Code § 3344.[20] Count XII asserts a statutory claim for distribution of private sexually explicit materials in violation of California

---

[15] J.L. Compl. ¶¶ 373-94; N.Y. Compl. ¶¶ 373-94; A.K. Compl. ¶¶ 366-87; L.S. Compl. ¶¶ 366-87; L.T. Compl. ¶¶ 366-87; C.S. Compl. ¶¶ 364-385; K.A. Compl. ¶¶ 364-385; T.C. Compl. ¶¶ 364-385; J.C. Compl. ¶¶ 46-67; N.L. Compl. ¶¶ 367-88; W.L. Compl. ¶¶ 367-88; S.O. Compl. ¶¶ 365-86; X.N. Compl. ¶¶ 365-86; W.P. Compl. ¶¶ 363-84.

[16] J.L. Compl. ¶¶ 395-402; N.Y. Compl. ¶¶ 395-402; A.K. Compl. ¶¶ 388-395; L.S. Compl. ¶¶ 388-395; L.T. Compl. ¶¶ 388-395; C.S. Compl. ¶¶ 386-393; K.A. Compl. ¶¶ 386-393; T.C. Compl. ¶¶ 386-393; J.C. Compl. ¶¶ 68-75; N.L. Compl. ¶¶ 389-396; W.L. Compl. ¶¶ 389-396; S.O. Compl. ¶¶ 387-394; X.N. Compl. ¶¶ 387-394; W.P. Compl. ¶¶ 385-392.

[17] J.L. Compl. ¶¶ 403-07; N.Y. Compl. ¶¶ 403-07; A.K. Compl. ¶¶ 396-400; L.S. Compl. ¶¶ 396-400; L.T. Compl. ¶¶ 396-400; C.S. Compl. ¶¶ 394-398; K.A. Compl. ¶¶ 394-398; T.C. Compl. ¶¶ 394-398; J.C. Compl. ¶¶ 76-80; N.L. Compl. ¶¶ 397-401; W.L. Compl. ¶¶ 397-401; S.O. Compl. ¶¶ 395-99; X.N. Compl. ¶¶ 395-99; W.P. Compl. ¶¶ 393-397.

[18] J.L. Compl. ¶¶ 408-14; N.Y. Compl. ¶¶ 408-14; A.K. Compl. ¶¶ 401-07; L.S. Compl. ¶¶ 401-07; L.T. Compl. ¶¶ 401-07; C.S. Compl. ¶¶ 399-405; K.A. Compl. ¶¶ 399-405; T.C. Compl. ¶¶ 399-405; J.C. Compl. at p. 116, ¶¶ 81-87; N.L. Compl. ¶¶ 402-08; W.L. Compl. ¶¶ 402-08; S.O. Compl. ¶¶ 400-06; X.N. Compl. ¶¶ 400-06; W.P. Compl. ¶¶ 398-404.

[19] J.L. Compl. ¶¶ 415-20; N.Y. Compl. ¶¶ 415-20; A.K. Compl. ¶¶ 408-13; L.S. Compl. ¶¶ 408-13; L.T. Compl. ¶¶ 408-13; C.S. Compl. ¶¶ 406-11; K.A. Compl. ¶¶ 406-11; T.C. Compl. ¶¶ 406-11; J.C. Compl. ¶¶ 88-93; N.L. Compl. ¶¶ 409-14; W.L. Compl. ¶¶ 409-14; S.O. Compl. ¶¶ 405-10; X.N. Compl. ¶¶ 405-10.

[20] J.L. Compl. ¶¶ 421-26; N.Y. Compl. ¶¶ 421-26; A.K. Compl. ¶¶ 414-19; L.S. Compl. ¶¶ 414-19; C.S. Compl. ¶¶ 412-17; K.A. Compl. ¶¶ 412-17; T.C. Compl. ¶¶ 412-17; J.C. Compl. ¶¶ 94-99; N.L. Compl. and W.L. Compl. ¶¶ 415-20; S.O. Compl. and X.N. Compl. ¶¶ 413-18; W.P. Compl. ¶¶ 411-16.

FERAS ANTOON AND DAVID TASSILLO'S OMNIBUS MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

Civil Code § 1708.85.[21]  Count XIII asserts a common law tort claim for negligence.[22]  Count XIV asserts statutory claim for violation of California Business and Professions Code §§ 17200, 17500.[23]  Count XV asserts a statutory claim for violation of California's Trafficking Victims Protection Act, California Civil Code § 52.5.[24]  Count XVI asserts a common law claim for intentional infliction of emotional distress.[25]  Count XVII asserts a common law claim for civil conspiracy.[26]

## LEGAL STANDARD

As a threshold matter, Plaintiffs bear the burden of making a *prima facie* showing of personal jurisdiction.  *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014).  Under Rule 12(b)(2), when Plaintiffs cannot make such a showing,

---

[21] J.L. Compl. ¶¶ 427-33; N.Y. Compl. ¶¶ 427-33; A.K. Compl. ¶¶420-26; L.S. Compl. ¶¶420-26, C.S. Compl. ¶¶ 418-24; K.A. Compl. ¶¶ 418-24; T.S. Compl. ¶¶ 418-24; J.C. Compl. ¶¶ 100-06; N.L. Compl. ¶¶ 421-27; W.L. Compl. ¶¶ 421-27; S.O. Compl. ¶¶ 419-25; X.N. Compl. ¶¶ 419-25; W.P. Compl.¶¶ 417-23.

[22] J.L. Compl. ¶¶ 434-38; N.Y. Compl. ¶¶ 434-38; A.K. Compl. ¶¶ 427-31; C.S. Compl. ¶¶425-29; K.A. Compl. ¶¶425-29; T.C. Compl. ¶¶425-29; J.C. Compl. ¶¶ 107-11; N.L. Compl. ¶¶ 428-32; W.L. Compl. ¶¶ 428-32; S.O. Compl. ¶¶ 426-30; X.N. Compl. ¶¶ 426-30; W.P. Compl. ¶¶ 424-28.

[23] J.L. Compl. ¶¶ 439-49; N.Y. Compl. ¶¶ 439-49; A.K. Compl. ¶¶432-442; L.S. Compl. ¶¶432-442; C.S. Compl. ¶¶ 430-440; K.A. Compl. ¶¶ 430-440; T.C. Compl. ¶¶ 430-440; J.C. Compl. ¶¶ 112-22; N.L. Compl. ¶¶ 433-43; W.L. ¶¶ 433-43; S.O. Compl. ¶¶ 431-41; X.N. Compl. ¶¶431-41; W.P. Compl. ¶¶ 429-39.

[24] J.L. Compl. ¶¶ 450-55; N.Y. Compl. ¶¶ 450-55; A.K. Compl. ¶¶ 443-448; L.S. Compl. ¶¶ 443-448; C.S. Compl. ¶¶ 441-46; K.A. Compl. ¶¶ 441-46; T.C. Compl. ¶¶ 441-46; J.C. Compl. ¶¶ 123-28; N.L. Compl. and W.L. Compl. ¶¶ 444-49; S.O. Compl. and X.N. Compl. ¶¶ 442-47; W.P. Compl. ¶¶ 440-45.

[25] J.L. Compl. ¶¶ 456-60; N.Y. Compl. ¶¶ 456-60; A.K. ¶¶ 449-53; L.S. Compl. ¶¶ 449-53; C.S. Compl. ¶¶ 447-51; K.L. Compl. ¶¶ 447-51; J.C. Compl. ¶¶ 129-33; N.L. ¶¶ 450-54; W.L. ¶¶ 450-54, S.O. ¶¶ 448-452; X.N. ¶¶ 448-452, W.P. Compl. ¶ 446-50.

[26] J.L. Compl. ¶¶ 461-65; N.Y. Compl. ¶¶ 461-65; A.K. Compl. ¶¶454-58; L.S. Compl. ¶¶454-58; C.S. Compl. ¶¶452-56; K.L. Compl. ¶¶452-56; T.C. Compl. ¶¶452-56; J.C. Compl. ¶¶ 134-38; N.L. Compl. and W.L. Compl. ¶¶ 455-59; S.O. Compl. And X.N. Compl. ¶¶ 453-57; W.P. Compl. ¶¶ 451-455.

FERAS ANTOON AND DAVID TASSILLO'S OMNIBUS MOTION TO
DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

the complaint must be dismissed.  *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1141 (9th Cir. 2017).

In addition, a complaint must be dismissed under Rule 12(b)(6) unless it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Only specific factual allegations are accepted as true, not legal assertions, "[t]hreadbare recitals of the elements," or "conclusory statements." *Id.*

Under Federal Rule of Civil Procedure 9(b), a party alleging fraud must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Rule 9(b) applies not only to explicit claims of fraud, but also to the parts of a complaint that are "said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003). When alter ego allegations sound in fraud, they too must be pled with particularity under Rule 9(b). *Wimbledon Fund, SPC v. Graybox, LLC*, No. 2:15-CV-06633 (CAS) (AJW), 2016 WL 7444709, at *5 (C.D. Cal. Aug. 31, 2016).[27]  Rule 9(b) "requires that a plaintiff plead 'the who, what, when, where, and how' of the alleged fraudulent activity." *Edwards v. Scott David Leonard, Gia's Life Fund, LLC*, No. 2:23-CV-04437 (WLH) (RAO), 2023 WL 11664594, at *2 (C.D. Cal. Oct. 24, 2023) (quoting *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009)).

---

[27] Some district courts within the Ninth Circuit have concluded that when alter ego allegations do not *per se* allege fraud, those allegations are not subject to Rule 9(b). *See Ardente, Inc. v. Shanley*, No 3:07-CV-04479 (MHP), 2010 WL 546485, at *4 (N.D. Cal. Feb. 10, 2010) (declining to apply Rule 9(b) to alter ego claims). Those cases are inapposite for two reasons. *First*, a substantial number of Plaintiffs' alter ego allegations allege fraud or a "sham," and thus must be pleaded with particularity in any event because they are either grounded in fraud or sound in fraud. *See, e.g.*, Compls. ¶¶ 20, 21, 23, 151, 322, 335, 348, 400, 407, 433-41, 444, 448. *Second*, even if Rule 9(b) is inapplicable to Plaintiff's alter ego allegations, her allegations are still so vague, conclusory, and compound that they fail under Rule 8(a).

FERAS ANTOON AND DAVID TASSILLO'S OMNIBUS MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

## ARGUMENT

### I.    THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER FERAS ANTOON OR DAVID TASSILLO

Plaintiffs fail to make a *prima facie* showing of personal jurisdiction over either Antoon or Tassillo.  "[A] plaintiff must establish personal jurisdiction over each defendant individually," including in cases where "defendants are jointly liable."  *Billion Int'l Trading Inc. v. Universal Sportswear Inc.*, No. 2:12-CV-06705 (BRO) (E), 2013 WL 12403059, at *5 (C.D. Cal. Dec. 27, 2013) (citing *Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990)); *see also Calder v. Jones*, 465 U.S. 783, 790 (1984) ("Each defendant's contacts with the forum State must be assessed individually.").

The Complaints do not allege that Antoon or Tassillo—who live and work in Canada—took any action in, or directed any action toward, California or the United States, nor that either of them took any action that related in any way to any of the Plaintiffs.  Plaintiffs fail to plead sufficient factual allegations to support an exercise of personal jurisdiction against Antoon and Tassillo individually.  *See, e.g., In re Auto. Antitrust Cases I & II*, 135 Cal.App.4th 100, 113 (2005) ("Allegations of conspiracy do not establish as a matter of law that if one conspirator comes within the personal jurisdiction of our courts, then California may exercise jurisdiction over other non-resident defendants who are alleged to be part of that same conspiracy. Personal jurisdiction must be based on forum-related acts that were personally committed by each non-resident defendant.").

### A.    Jurisdictional Legal Standard

A court's exercise of personal jurisdiction over a non-resident defendant must have both a statutory and constitutional basis.  *Sher*, 911 F.2d at 1360–61; Fed. R. Civ. P. 4(k).  Here, Plaintiffs claim that each defendant, including Antoon and Tassillo, is subject to the jurisdiction of the California courts pursuant to its long-

13

arm statute, Cal. Civ. Proc. Code § 410.10, and in the alternative, that they are subject to jurisdiction pursuant to Federal Rule of Civil Procedure 4(k)(2).  June Compls. ¶¶ 32-40; J.L. Compl. ¶¶ 30-38.  California's long-arm statute permits the exercise of jurisdiction "on any basis not inconsistent with the Constitution of this state or of the United States," Cal. Civ. Proc. Code § 410.10, and thus "the jurisdictional analyses under [California] state law and federal due process are the same." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).

Rule 4(k)(2) provides a basis for jurisdiction when a defendant is not subject to the jurisdiction in any single state, but is subject to the jurisdiction of the United States as a whole.  It permits a federal court to exercise personal jurisdiction over a defendant if that defendant is "not subject to jurisdiction in any state's courts of general jurisdiction," and the exercise of jurisdiction would otherwise be consistent with the U.S. Constitution and laws.  "The due process analysis under Rule 4(k)(2) is nearly identical to traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between [the defendant] and the forum state, we consider contacts with the nation as a whole." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1072 (9th Cir. 2017) (quoting *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 462 (9th Cir. 2007)).

Plaintiffs cannot establish that Antoon or Tassillo is subject to specific or general jurisdiction, either in California or the United States as a whole.  To be subject to general jurisdiction, a defendant's affiliations with the forum state must be "so 'continuous and systematic' as to render [him] essentially at home in the forum." *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  For individuals, the "paradigm forum" for personal jurisdiction is the individual's domicile. *Bristol-*

1    *Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255,

2    262 (2017).

3        Plaintiffs acknowledge that Antoon and Tassillo are residents of Canada and

4    do not allege they have such systematic and continuous affiliations with the U.S. or

5    California to render them essentially at home in either place.  Compls. ¶¶ 18-19.

6    Neither Antoon nor Tassillo can thus be subject to general jurisdiction in this Court.

7    *See ScoreBlue, LLC v. Locum Tele PC,* No. 2:23-CV-00345 (WLH) (AS), 2024 WL

8    3304515, at *3 (C.D. Cal. May 29, 2024) (declining to exercise jurisdiction against

9    individual defendants, all of whom are domiciled outside California, as "Plaintiff

10    argues that general personal jurisdiction exists over all the Defendants in California

11    but does not present evidence to dispute Defendants' general personal jurisdictional

12    arguments.")

13        Plaintiffs also cannot establish specific jurisdiction over Antoon or Tassillo.

14    Courts within the Ninth Circuit use a three-part test to establish specific personal

15    jurisdiction over non-resident defendants:

16        (1) The non-resident defendant must purposefully direct his activities

17        or consummate some transaction with the forum or resident thereof; or

18        perform some act by which he purposefully avails himself of the

19        privilege of conducting activities in the forum, thereby invoking the

20        benefits and protections of its laws; (2) the claim must be one which

21        arises out of or relates to the defendant's forum-related activities; and

22        (3) the exercise of jurisdiction must comport with fair play and

23        substantial justice, i.e. it must be reasonable.

24    *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 859 (9th Cir. 2022) (quoting

25    *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 741–42 (9th Cir.

26    2013)).

27

28

FERAS ANTOON AND DAVID TASSILLO'S OMNIBUS MOTION TO
DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs bear the burden of establishing the first two parts of the test, and if that burden is carried, the defendant must demonstrate a compelling case as to why the exercise of jurisdiction would not be reasonable. *Id.* When claims are asserted against a foreign defendant, a plaintiff "must meet a higher jurisdictional threshold than is required when the defendant is a United States citizen." *See Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1490 (9th Cir. 1993), *holding modified on other grounds by Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006).

**B. Plaintiffs Do Not Plead Any Facts Demonstrating Antoon or Tassillo Personally Directed Their Conduct at California or Availed Themselves of The Benefits of Doing Business Here**

As to the first prong of the test for specific jurisdiction, the Complaints are devoid of factual allegations claiming that Antoon or Tassillo—as opposed to a MindGeek Entity or another defendant—directed their conduct at California or the United States. The Complaints devote 10 paragraphs specifically to jurisdiction and venue allegations, but none of those paragraphs mention either Antoon or Tassillo by name. June Compls. ¶¶ 30-40; J.L. Compl. ¶¶ 28-38. Confusingly, many of these purported "jurisdictional" allegations refer only to "defendants" generally, without mentioning whether they are discussing the Individual Defendants, the MindGeek Entity Defendants, the Lender Defendants, or Visa. *See* June Compls. ¶¶ 32-34; J.L. Compl. ¶¶ 30-32.

The allegations regarding "defendants" generally are so vague and conclusory that they cannot support any assertion of personal jurisdiction even if they did clearly identify which defendant they are discussing. *See, e.g.*, June Compls. ¶ 33; J.L. Compl. ¶ 31 (unspecified defendants "directed their activities at United States citizens and California residents"). "[A]llegations [which are] conclusory at best, are plainly insufficient to invoke personal jurisdiction." *SEC v. Jammin Java Corp.*,

16

No. 2:15-CV-08921 (SVW) (MRW), 2016 WL 6595133, at *11 (C.D. Cal. July 18, 2016).  It is also a "basic pleading defect for a complaint to 'lump' parties together and to fail to distinguish between named defendants." *Beatport LLC v. SoundCloud Ltd,* No. 2:19-CV-00847 (MRW), 2020 WL 3977602, at *5 (C.D. Cal. July 13, 2020).  These allegations do not support an exercise of personal jurisdiction against either Antoon or Tassillo.

Critically, the remainder of the Complaints have *no other factual jurisdictional allegations* against Antoon or Tassillo.  Plaintiffs do not allege that Antoon or Tassillo took any action directed at the United States or California, that they purposefully availed themselves of the privilege of doing business there, or even interacted with any of the Plaintiffs at all.  Without at least some such allegations, this Court may not exercise personal jurisdiction over Antoon and Tassillo in their individual capacity.  *See ScoreBlue,* 2024 WL 3304515, at *6 ("The proper analysis in tort cases…looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.  The plaintiff cannot be the only link between the defendant and the forum." (internal quotation marks and citations omitted)).

As to the second prong of the specific jurisdiction test, Plaintiffs have failed to plead facts that demonstrate that each of their claims "arise out of or relate to" any forum-related activities by Antoon or Tassillo.  *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 983 (9th Cir. 2021) (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592, U.S. 351, 362 (2021)).  Plaintiffs devote substantial portions of their respective Complaints to discussing matters that could not possibly arise from or relate to their claims.  This includes unrelated allegations that MindGeek paid for nonconsensual content that did not depict any of the Plaintiffs, June Compls. ¶¶ 138-49; J.L. Compl. ¶¶ 136-147, and allegations concerning whether statements made by nonparties to either the press or on social media were accurate, June Compls. ¶¶ 200-

17

245; J.L. Compl. ¶¶ 198-243.  These allegations cannot be considered as supporting personal jurisdiction here, as they are entirely divorced from Plaintiffs' claims.

Finally, although Plaintiffs have not met their pleading burden, it is clear that an assertion of jurisdiction over either Antoon or Tassillo would offend traditional notions of fair play and substantial justice.  It would be unreasonable to hale them into court in California without any well-founded allegation that either Antoon or Tassillo had contacts with the forum.  *Int'l Shoe Co.* v. *State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (citing *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

### C.     Plaintiffs Fail to Overcome the Fiduciary Shield Doctrine Because Each Has Not Adequately Pled Personal Jurisdiction Under an Alter Ego Theory

Under the fiduciary shield doctrine, the Non-Contesting Defendants' contacts with California or the United States may not be imputed to Antoon or Tassillo. *Abundant Living Fam. Church v. Live Design, Inc.*, No. 5:22-CV-00140 (RSWL) (MRW), 2022 WL 2176583, at *2 (C.D. Cal. June 15, 2022).  Attempting to plead around this doctrine, Plaintiffs allege that the Non-Contesting Defendants' jurisdictional contacts should be imputed to Antoon and Tassillo under an alter ego theory of personal jurisdiction.  *See* Compls. ¶¶ 18-19.  Plaintiffs allege in conclusory fashion that the "entire structure" of the MindGeek business—which consists of "hundreds of subsidiaries, affiliates, and related parties located in dozens of jurisdictions throughout the world," including the Non-Contesting Defendants— is "a sham and the alter ego" of Antoon, Tassillo, and Bergmair (*i.e.*, the Individual Defendants) and was created "for illegal purposes and to insulate the Individual Defendants from liability."  Compls. ¶¶ 18-23.  The facts alleged do not support Plaintiffs' theory.

"A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003). The corporate form "serves as a shield for the individuals involved for purposes of liability *as well as jurisdiction*." *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 520 (9th Cir. 1989) (emphasis added). Under the "fiduciary shield" doctrine, a person's mere association with a corporation "is not sufficient in itself to permit [a] forum to assert jurisdiction over the person," even if the forum has personal jurisdiction over the corporation. *Id.* To ignore the corporate form, Plaintiffs must "carr[y] a high burden" of establishing an exception to the fiduciary shield doctrine. *Incipio, LLC v. Argento Sc By Sicura Inc.*, No. 8:17-CV-01974 (AG) (KES), 2018 WL 4945002, at *2 (C.D. Cal. July 18, 2018) (citing *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1134 (9th Cir. 2003)).

Plaintiffs have alleged that Antoon and Tassillo were the "alter egos" of the Non-Contesting Defendants. *See* Compls. ¶ 20-21. To obtain the "extreme remedy" of veil piercing on an alter ego theory and impute the jurisdictional contacts of a corporation to its shareholders, *Hasso v. Hapke*, 227 Cal.App.4th 107, 155 (2014), *as modified on denial of reh'g* (July 15, 2014), Plaintiffs must make a *prima facie* showing that (1) there is "a unity of interest and ownership" between the corporation and the shareholder such that "the individuality, or separateness, of the said person and corporation has ceased," and (2) continued respect of the corporate form "would sanction a fraud or promote injustice." *In re Boon Glob. Ltd.*, 923 F.3d 643, 653 (9th Cir. 2019) (citation omitted). An alter ego theory of personal jurisdiction is permitted "only in exceptional circumstances." *Calvert v. Huckins*, 875 F.Supp. 674, 678 (E.D. Cal. 1995) (citation omitted). No such circumstances exist here.

As to the "injustice" prong, Plaintiffs fail to allege a cognizable "fraud" or "injustice" against each of them as caused by the corporate form. Plaintiffs do not allege that the MindGeek entities were undercapitalized such that they could not

FERAS ANTOON AND DAVID TASSILLO'S OMNIBUS MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

recover from the Non-Contesting Defendants or any other MindGeek Defendant. Instead, Plaintiffs allege a conclusory and circular theory of alter ego liability that the Ninth Circuit has rejected:  that the entities are structured to "escape liability." *See, e.g.*, *In re Boon Global Ltd.,* 923 F.3d at 654.

As to the "unity of interest and ownership" prong, Plaintiffs once again resort to impermissible group pleading regarding ultimate control of MindGeek—at times alleging that all Individual Defendants had control, *see, e.g.*, June Compls. ¶¶ 6, 14-16, 21, 151; J.L. Compl. ¶¶ 6, 14-16, 21, 149, at other times alleging Bergmair had ultimate control as the majority shareholder, *see, e.g.*, June Compls. ¶¶ 17, 112, 152, 159, 302; J.L. Compl. ¶¶ 17, 110, 150, 157, 300, and still at other times alleging the Lender Defendants had ultimate control, *see, e.g.*, June Compls. ¶¶ 252, 258, 268, 270; J.L. Compl. ¶¶ 250, 256, 266, 268.  Plaintiffs' contradictory allegations do not plausibly demonstrate that Antoon or Tassillo "dictat[ed] every facet of the [company]'s business."  *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015) (citation omitted).  The fact that Antoon and Tassillo held a minority interest in MindGeek, while providing managerial services to various MindGeek entities, in no way amounts to a "unity of interest and ownership."

### 1. Plaintiffs Do Not Allege "Injustice" Generally or "Injustice" Caused by Acts of Antoon or Tassillo

The Court should dismiss the Complaints as to Antoon and Tassillo solely based on Plaintiffs' failure to allege a cognizable fraud or injustice.  Plaintiffs' conclusory allegations that the corporate form was designed in 2013 to "avoid" U.S. pornography and tax laws have been rejected by the Ninth Circuit.

To state a claim for alter ego personal jurisdiction, a plaintiff must also allege that the shareholders used the corporate form "unjustly and in derogation of the plaintiff's interests."  *Gerritsen v. Warner Bros. Ent. Inc.*, 116 F.Supp.3d 1104, 1136 (C.D. Cal. 2015) (quoting *Mesler v. Bragg Mgmt. Co.,* 39 Cal.3d 290, 300 (1985));

20

*see also Butler v. Adoption Media, LLC*, 486 F. Supp. 2d 1022, 1067 (N.D. Cal. 2007) (same).  "Even if improper conduct of a shareholder is shown," a plaintiff "must demonstrate a relationship between the misconduct and the plaintiff's injury." *Hambleton Bros. Lumber Co. v. Balkin Enters. Inc.,* 397 F.3d 1217, 1228 (9th Cir. 2005) (citation omitted).  In other words, "a 'causal connection' must be shown." *Id.*

Plaintiffs do not allege any facts demonstrating misuse of the corporate structure by Antoon, or Tassillo, or anyone else, that caused their injury or deprived them of a right.  "In almost every instance where a plaintiff has attempted to invoke the [alter ego] doctrine [s]he is an unsatisfied creditor." *Perfect 10, Inc. v. Giganews, Inc.*, No. 2:11-CV-07098 (AB) (JPR), 2015 WL 12710753, at *3 (C.D. Cal. June 3, 2015), *aff'd*, 847 F.3d 357 (9th Cir. 2017) (citations omitted).  Plaintiffs do not allege that the Non-Contesting Defendants were undercapitalized such that they cannot seek redress from the extant defendants.  *See Boeing Co. v. KB Yuzhnoye*, No. 2:13-CV-00730 (AB) (AJW), 2016 WL 2851297, at *25 (C.D. Cal. May 13, 2016) ("Undercapitalization and insolvency are the most relevant factors in determining whether the corporation was established to defraud its creditors or [some] other improper purpose such as avoiding the risks known to be attendant to a type of business." (citation omitted)); *see, e.g.*, *Cummings v. Worktap, Inc*., No. 4:17-CV-06246 (SBA), 2019 WL 4221652, at *12 (N.D. Cal. Sept. 4, 2019) (dismissing complaint where "the record does not show or suggest that the Individual Defendants utilized [the company]'s status as a corporation to bilk unsuspecting investors").

If anything, the Complaints' allegations support the opposite inference:  that the MindGeek entities were (and are) well-capitalized. *See, e.g.*, June Compls. ¶¶ 2, 6, 37; J.L. Compl. ¶¶ 2, 6, 35 (alleging MindGeek is "the dominant, monopolistic" company in an almost $100 billion market); A.K. Compl. ¶¶ 258, 353; L.S. Compl. ¶¶ 258, 353; L.T. Compl. ¶¶ 258, 353; C.S. Compl. ¶¶ 258, 351; K.A. Compl.

FERAS ANTOON AND DAVID TASSILLO'S OMNIBUS MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

¶¶ 258, 351; T.C. Compl. ¶¶ 258, 351; J.C. Compl. ¶¶ 33, 258; J.L. Compl. ¶¶ 256, 360; N.L. Compl. ¶¶ 258, 354; W.L. Compl. ¶¶ 258, 354; N.Y. Compl. ¶¶ 258, 360; S.O. Compl. ¶¶ 258, 352; X.N. Compl. ¶¶ 258, 352; W.P. Compl. ¶¶ 258, 350 (alleging that the company had "fully secured" financing from which its lenders were "earning millions"). Rather than allege how the Non-Contesting Defendants' capitalization undermines their interests, Plaintiffs instead claim that "injustice" would result if Antoon and Tassillo were dismissed from the case because they would avoid "legal accountability." Compls. ¶¶ 21-23. Plaintiffs specifically allege, in conclusory fashion, that MindGeek's corporate structure was designed in 2013 to "evade" pornography, tax, and monetary transaction laws. *See* June Compls. ¶ 300, J.L. Compl. ¶ 298.

Plaintiffs' claim relies on a theory of alter ego liability that the Ninth Circuit has rejected. "Conclusory allegations that [entities are structured] to escape liability are insufficient" to satisfy the injustice prong. *In re Boon Global Ltd.,* 923 F.3d at 654. "That the entities were set up in order to avoid potential liability is irrelevant to the personal jurisdiction analysis here. Indeed, almost every business enterprise in the United States ultimately forms some sort of corporate entity for the purpose of avoiding personal liability." *NuCal Foods, Inc. v. Quality Egg LLC*, 887 F.Supp.2d 977, 994 n.9 (E.D. Cal. 2012). Moreover, Plaintiffs' legal theory—that the corporate form was used to evade liability for the very causes of action that Plaintiffs alleged—is circular and one that courts in this Circuit and other circuits have rejected. *See, e.g.*, *TradeWinds Airlines, Inc. v. Soros*, No. 1:08-CV-05901 (JFK), 2012 WL 983575, at *6 (S.D.N.Y. Mar. 22, 2012) ("This 'injustice must consist of more than merely the tort or breach of contract that is the basis of the plaintiff's lawsuit.'"); *In re W. States Wholesale Nat. Gas Antitrust Litig.*, No. 2:03-CV-01431 (PMP) (PAL), 2009 WL 455658, at *12 (D. Nev. Feb. 23, 2009) (stating that that the "alleged illegal price manipulation cannot itself constitute the fraud or

FERAS ANTOON AND DAVID TASSILLO'S OMNIBUS MOTION TO
DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

injustice necessary to pierce the corporate veil"); *Stewart v. Screen Gems-EMI Music, Inc.,* 81 F.Supp.3d 938, 968 (N.D. Cal. 2015) (similar).

The Complaints also suggest "tax evasion" as another supposed "injustice" caused by the corporate structure of MindGeek.  *See, e.g.,* June Compls. ¶ 62, J.L. Compl. ¶ 60.  But this allegation fares no better; whether the corporate structure was designed to avoid U.S. tax laws has no bearing on Plaintiffs' claims.  "[T]he alter ego inquiry focuses on whether the corporate form was inequitably used under the particular circumstances of a given case, not simply whether the corporation maintained good standing for all purposes." *JPV I L.P. v. Koetting*, 88 Cal.App.5th 172, 197 (2023), *review denied* (May 17, 2023).  Although tax evasion is sometimes a relevant consideration in alter ego cases, that is only when, unlike here, the United States is the party claiming that the corporate structure worked an injustice.  *See, e.g., Prompt Staffing, Inc. v. United States*, 321 F.Supp.3d 1157, 1177 (C.D. Cal. 2018) (permitting the IRS to pierce the corporate veil because "[t]he purpose of the alter ego doctrine is to provide a remedy to creditors against individuals who improperly hide behind the corporate veil").  Plaintiffs' conclusory criticism of MindGeek's tax structure is irrelevant to personal jurisdiction on an alter ego theory.

In all events, the Complaints still do not allege "specific manipulative conduct" *by Tassillo or Antoon* that deprived Plaintiffs of a remedy against an appropriate defendant. *Tatung Co., Ltd. v. Shu Tze Hsu*, 217 F.Supp.3d 1138, 1176 (C.D. Cal. 2016).  To make a *prima facie* showing of personal jurisdiction on an alter ego theory, Plaintiffs must allege what a specific defendant did to cause the relevant injuries.  Plaintiffs have utterly failed to do that here.  *See, e.g., Oakley, Inc. v. Trimera Mil. Tech., Inc*., No. 8:14-CV-01649 (DOC) (DFM), 2016 WL 8794459, at *8 (C.D. Cal. Jan. 22, 2016) (finding that the individual defendants cannot be held responsible for the undercapitalization of an entity for alter ego purposes because

the plaintiff did not allege the individuals were involved in the initial incorporation of the company).

### 2. There Is No "Unity of Interest and Ownership" Between Antoon or Tassillo and Non-Contesting Defendants

The "unity of interest and ownership" prong of the alter ego doctrine requires Plaintiffs to show that the relevant individual controls the company "to such a degree as to render the latter the mere instrumentality of the former." *See In re Boon Glob. Ltd.*, 923 F.3d at 653 & n.4 (quoting *Ranza*, 793 F.3d at 1073, and citing *Riddle v. Leuschner*, 335 P.2d 107, 110–12 (Cal. 1959)).  To determine whether an individual (rather than a corporate parent) dominates the entity, courts weigh multiple factors. These factors include (i) "whether a single individual or family owned all of the corporate entity;" (ii) "whether the individual and the corporation commingled their assets or failed to segregate their funds;" (iii) "whether the individual utilized the corporation as a shell;" and (iv) "whether the individual treated corporate assets as his own." *Willick v. Napoli Bern Ripka & Assocs., LLP,* No. 2:15-CV-00652 (AB) (E), 2019 WL 3064120, at *4 (C.D. Cal. Mar. 13, 2019) (citation omitted). *See also Coste v. Fox Beverages USA Inc*., No. 2:23-CV-02053 (WLH) (RAO), 2023 WL 8522987, at *5 (C.D. Cal. Oct. 10, 2023) (finding as conclusory and insufficient alter ego allegations that the corporation was a mere shell and the individual defendant used corporate "assets for personal costs"); *Stephen Gould Corp. v. Osceola*, No. 2:22-CV-08347 (WLH) (AGR), 2023 WL 8254483, at *3 (C.D. Cal. Oct. 13, 2023) (dismissing alter ego allegations where complaint "is completely devoid of any of the above-mentioned factors").

"Total ownership and shared management personnel are alone insufficient to establish the requisite level of control." *Ranza*, 793 F.3d at 1073.  Nor is it sufficient to allege that the corporation is "influenced and governed" by the shareholder. *In re L. Scott Apparel, Inc.*, 615 B.R. 881, 893 (C.D. Cal. 2020).  Instead, there must be

"such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased." *Id.*

Here, the Complaints do not plausibly allege that Antoon and Tassillo (as minority shareholders) dominated or controlled any MindGeek entity, let alone that their control rendered the entity their mere instrumentality. To the contrary, the Complaints' own allegations suggest that Antoon and Tassillo did not "dictat[e] every facet of the [company]'s business," *Ranza*, 793 F.3d at 1073 (quoting *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001)). For example, the Complaints state that Antoon and Tassillo:

- consulted with and "took direction" from the "majority owner" who was the "ultimate decision maker on all material matters," June Compls. ¶ 159; J.L. Compl. ¶ 157; *see also* June Compls. ¶¶ 17, 112, 152, 202, 302; J.L. Compl. ¶¶ 17, 110, 150, 200, 300; and

- were only "nominal owners" and vulnerable to demands from lenders, who had "effective control over the business" and who had the "right to receive virtually all of its earnings for the foreseeable future," June Compls. ¶ 258; J.L. Compl. ¶ 256; *see also* June Compls. ¶¶ 252, 268, 270; J.L. Compl. ¶¶ 250, 266, 268.

Accordingly, Plaintiffs' allegations—which plainly contradict any claim that Antoon or Tassillo dominated the Non-Contesting Defendants—should be the start and end of the Court's analysis. *See, e.g.*, *Leitner v. Sadhana Temple of New York, Inc.*, No. 2:13-CV-07902 (MMM) (E), 2014 WL 12588643, at *17 (C.D. Cal. Oct. 17, 2014) (holding plaintiff did "not plausibly plead alter ego liability" because the "allegations are contradictory").

Even if Plaintiffs plausibly alleged control, the Complaints still do not allege that Antoon and Tassillo dominated the Non-Contesting Defendants such that their corporate identities and separateness ceased to exist. The Complaints fail to appreciate "that pleading alter ego liability requires allegations of fact concerning the relationship between and among *the individuals and entities involved*." *Lennard*

25

*v. Yeung*, No. 2:10-CV-09322 (MMM) (AGR), 2012 WL 13006214, at *8 (C.D. Cal. Feb. 23, 2012) (emphasis added and omitted).  Coincidentally, Plaintiffs fail to allege specific facts regarding the relationship between Antoon and Tassillo, on the one hand, and the Non-Contesting Defendants, on the other, that even remotely support domination or control, or an elimination of corporate separateness.  *See, e.g., Fair Hous. Council of Riverside Cnty., Inc. v. Grp. XIII Prop. LP*, No. 5:21-CV-00941 (JGB) (KK), 2023 WL 4680764, at *26 (C.D. Cal. Apr. 27, 2023) (dismissing action where the record did not establish that the individual defendants "are one and the same as the corporate entities they control").

The record here demonstrates the opposite:  Antoon and Tassillo kept their affairs separate from the Non-Contesting Defendants.    The Non-Contesting Defendants (i) had separate bank accounts from Antoon and Tassillo; (ii) were responsible for their own debts and neither Antoon nor Tassillo held themselves out as personally liable for the Non-Contesting Defendants' debts; and (iii) operated as separate businesses since 2008.  *See* Antoon Decl. ¶¶ 38-43; Tassillo Decl. ¶¶ 34-39.  Plaintiffs suggest that Antoon's and Tassillo's minority ownership, coupled with their executive functions at 9219 Inc., established their complete control of the MindGeek entities.  *See, e.g.*, June Compls ¶ 302; J.L. Compl. ¶ 300.  But even if such a practice were uncommon (it is not), allegations of shared ownership and management "are alone insufficient to establish the requisite level of control" under an alter ego theory.  *Ranza*, 793 F.3d at 1073.

In the absence of specific allegations about Antoon's or Tassillo's control and dominance, Plaintiffs resort to conclusory allegations and improper group pleading regarding control of the defendant entities.  Courts routinely reject such group pleading, particularly when personal jurisdiction is at issue.  *See, e.g., Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, No. 2:14-CV-03053 (MWF) (VBK), 2015 WL 12777092, at *10 (C.D. Cal. Oct. 23, 2015) (rejecting alter

ego theory because generalized allegations based on group membership are "insufficient to plausibly show [the individual defendant's] unity and control over the alleged network, and the mere inclusion of [her] with the [alleged network] does not overcome the deficiency"); *Jammin Java Corp.*, 2016 WL 6595133, at *11 (no alter ego jurisdiction where plaintiff "conclusorily lists [an individual] as one of the participants in the [wrongful] scheme" but "fails to allege in any more than conclusory language any personal conduct, if any, by these defendants").

Plaintiffs finally allege that Antoon and Tassillo engaged in "substantial self-dealing" in using company assets for personal purposes without assigning a value—even an approximate one—to the purported self-dealing. *See* June Compls. ¶¶ 300-310, J.L. Compl. ¶¶ 298-208. The Complaints' allegations regarding Antoon's and Tassillo's supposed misuse of company assets for personal matters still do not plausibly allege anything more than a *de minimis* use of company resources. *See, e.g., Art Attacks Ink, LLC v. MGA Ent., Inc.,* No. 3:04-CV-01035 (BLM), 2009 WL 10672486, at *4 (S.D. Cal. Aug. 10, 2009) (denying addition of defendants under alter ego theory and recognizing personal credit card charges were small "in relation to the total volume of charges" on the credit card), *aff'd*, 581 F.3d 1138 (9th Cir. 2009). Plaintiffs do not allege, or even suggest, that such use of company personnel for personal matters affected the capitalization of the Non-Contesting Defendants or any MindGeek entity. *See United States v. Funds Held in the Name or for the Benefit of Wetterer*, 210 F.3d 96, 107–08 (2d Cir. 2000) (reversing alter ego finding where personal charges "were small relative to the income, expenditures and operations" of the company and "(at worst) . . . represent a misappropriation of the [company's] funds rather than an identity between its director and the corporation").

At bottom, Plaintiffs have not alleged how Antoon and Tassillo have maintained a "unity of interest [with] and ownership" over the MindGeek entities. *See Trans-World Int'l, Inc. v. Smith-Hemion Prods., Inc.*, 972 F.Supp.1275, 1291

(C.D. Cal. 1997) ("[I]n every reported case in which a shareholder was held an alter ego of a corporation, that shareholder has been proven to be 'dominant,' in the sense of both owning a majority of stock and controlling the corporation's general finances and day-to-day operations."). Plaintiffs provide no basis for finding that either Antoon or Tassillo were alter egos of any Non-Contesting Defendant, which is fatal to their jurisdictional case.

## II.    ALL OF THE INTERNATIONAL PLAINTIFFS' CLAIMS INVOLVE IMPERMISSIBLE EXTRATERRITORIAL APPLICATIONS OF FEDERAL LAW

The International Plaintiffs concede that they were "[a]t all relevant times…a resident of" Colombia, Thailand, or the United Kingdom. X.N. Compl. ¶ 10; N.Y. Compl. ¶ 10; C.S. Compl. ¶ 10; S.O. Compl. ¶ 10; L.S. Compl. ¶ 10; W.P. Compl. ¶ 10. International Plaintiff L.S. explicitly pinpoints Columbia as the location of wrongdoing. L.S. Compl. ¶312. And the remaining five International Plaintiffs altogether gloss over the situs of the misconduct. *See e.g.,* X.N. Compl. ¶¶ 311-12; N.Y. Compl. ¶¶ 311-13; C.S. Compl. ¶ 311-12; S.O. Compl. ¶ 311; W.P. Compl. ¶¶ 311-12. Not one of the International Plaintiffs explicitly claim that any wrongdoing actually occurred within the boundaries of the United States. As foreign plaintiffs asserting claims arising from conduct that allegedly took place abroad, the International Plaintiffs must rebut the presumption against extraterritoriality for their statutory claims. Because they have not rebutted this presumption, the International Plaintiffs' claims must be dismissed accordingly.

"Absent clearly expressed congressional intent to the contrary, federal laws will be construed to have only domestic application." *RJR Nabisco v. Eur. Cmty.*, 579 U.S. 325, 335 (2016). A statute only applies extraterritorially where "Congress has affirmatively and unmistakably instructed that the statute will do so." *Id.* A complaint that alleges an impermissible extraterritorial application of a federal

statute must be dismissed. *See ARC Ecology v. U.S. Dep't of Air Force*, 411 F.3d 1092, 1094 (9th Cir. 2005) (affirming dismissal of complaint because a federal statute did "not provide for the extraterritorial application sought by" the plaintiffs). In determining whether a plaintiff seeks to apply a statute extraterritorially, courts apply a two-step framework. *First*, a court must assess "whether the statute gives a clear, affirmative indication that it applies extraterritorially." *RJR Nabisco*, 579 U.S. at 337. If it does not, "at the second step [a court] determine[s] whether the case involves a domestic application of the statute." *Id.* Where a statute does include an affirmative indication that it should apply extraterritorially in only some circumstances, "the presumption against extraterritoriality operates to limit that provision to its terms." *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 265 (2010).

*RJR Nabisco* is instructive. In that case, the Supreme Court held that the Racketeer Influenced and Corrupt Organizations Act ("RICO") applied only to those predicates with a specific extraterritorial effect, but not to all possible applications. 579 U.S. at 340–41. Further, the Supreme Court found that RICO's private right of action allowing those "injured in his business or property by reason of a violation of" RICO to sue required a domestic injury. *Id.* at 346. The Supreme Court held that "the presumption against extraterritoriality must be applied separately to both RICO's substantive prohibitions and its private right of action." *Id.* at 350. In the absence of a domestic injury, a foreign civil plaintiff could not assert a claim.

Here, International Plaintiffs seek extraterritorial applications of all their federal claims. International Plaintiffs' TVPRA claims (Counts I and IV, asserting claims under 18 U.S.C. §§ 1591 and 1594, respectively) fail to comply with the extraterritoriality requirements of that statute, and the TVPRA's private right of action provides no indication that it applies extraterritorially. The TVPRA states that its criminal prohibitions provide "extra-territorial jurisdiction over any offense

(or any attempt or conspiracy to commit an offense) under section . . . 1591 . . . if" either "(1) an alleged offender is a national of the United States or an alien lawfully admitted for permanent residence" or "(2) an alleged offender is present in the United States, irrespective of the nationality of the alleged offender." 18 U.S.C. § 1596(a)(1)-(2).[28]  International Plaintiffs do not allege that Antoon and Tassillo are U.S. nationals, lawful permanent residents, or are "present" in the United States, and thus plead an impermissibly extraterritorial application of the TVPRA.  *Doe v. WebGroup Czech Republic, A.S.*, No. 2:21-CV-02428 (SPG) (SK), 2024 WL 3533426, at *10 (C.D. Cal. July 24, 2024) (dismissing domestically trafficked plaintiff's claims against foreign websites as extraterritorial applications of the TVPRA).   Even if the extraterritoriality provisions were to be invoked here, International Plaintiffs' Section 1595 claim still fails for the reasons stated below.

Finally, Plaintiffs' TVPRA claim further fails because Section 1595, which provides the private right of action under the TVPRA, is silent as to its extraterritorial application.   Under the presumption against extraterritoriality, this Court must assume that it has purely domestic application and reject Plaintiffs' assertion here. *RJR Nabisco*, 579 U.S. at 350.

---

[28] Importantly for Plaintiff N.Y.'s claims, subsection (b) of this provision prevents the government from commencing a prosecution "under this section if a foreign government, in accordance with jurisdiction recognized by the United States, has prosecuted or is prosecuting such person for the conduct constituting such offense, except upon the approval of the Attorney General or the Deputy Attorney General (or a person acting in either such capacity), which function of approval may not be delegated." 18 U.S.C. § 1596(b).  This prevents a prosecution of an offender who has been prosecuted abroad, absent approval of the Attorney General. Here, Plaintiff N.Y. alleges that the primary offender has been "convicted." N.Y. Compl. ¶ 311. Publicly available records from the United Kingdom's National Crime Agency states that this offender has been prosecuted abroad, and convicted.   *See* https://www.nationalcrimeagency.gov.uk/news/graduate-jailed-for-terrorising-six-women-in-online-abuse-campaign ("Elahi is currently awaiting sentencing after admitting 158 sickening online offences in a separate NCA investigation."). Thus, absent any allegation that the Attorney General has approved a prosecution here, Section 1596(b) prevents any U.S. prosecution of an offense against Plaintiff's primary offender, and *a fortiori* precludes civil recovery via a private right of action.

FERAS ANTOON AND DAVID TASSILLO'S OMNIBUS MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

The same is true of Plaintiffs' 18 U.S.C. § 2255 claims in Counts V and VI. Section 2255 provides a civil private right of action for criminal prohibitions, and Plaintiffs assert violations of 18 U.S.C. § 2252 in Count V, and violations of 18 U.S.C. § 2252A in Count VI. Both sections 2252 and 2252A are silent as to their extraterritorial application, thus the Court must determine whether Plaintiffs' asserted application of the statute is domestic or foreign.

All International Plaintiffs allege to some extent that they personally provided explicit content to third parties. Some of the International Plaintiffs provided the content themselves or were coerced by third parties into doing so while they resided abroad. X.N. Compl. ¶ 311; C.S. Compl. ¶ 311; W.P. Compl. ¶ 311; S.O. Compl. ¶ 311; N.Y. Compl. ¶ 311-12; L.S. Compl. ¶ 311-12. As that content was subsequently uploaded by third parties to MindGeek tubesites, allegedly managed by Canadian citizens Antoon and Tassillo, the International Plaintiffs are improperly asking this Court to regulate international conduct. Their application of the statute is wholly extraterritorial, and International Plaintiffs' claims must be dismissed as impermissible extraterritorial applications of the statute.

## III. FOREIGN PLAINTIFFS' CLAIMS INVOLVE IMPERMISSIBLE APPLICATIONS OF CALIFORNIA LAW

Like the International Plaintiffs, the Out-of-State Plaintiffs concede they were not California residents at any period pertinent to their allegations. The Out-of-State Plaintiffs claim that "[a]t all relevant times" they were a resident of New York, Missouri, Colorado, New Hampshire, or Rhode Island. K.A. Compl. ¶ 10; N.L. Compl. ¶ 10; L.T. Compl. ¶ 10; T.C. Compl. ¶ 10; J.C. Compl. ¶ 10; A.K. Compl. ¶ 10. Although Plaintiff J.L. is a California resident, she expressly states that the wrongdoing occurred in the state of New Jersey. J.L. Compl. ¶¶ 310-314. And while Plaintiff W.L. is also a California resident, she does not specify the location

of the alleged misconduct.  W.L. Compl. ¶¶ 311-314.  Not one of the Plaintiffs explicitly claims that any wrongdoing occurred in California.

By expressly alleging claims arising from conduct that occurred outside of California, both the Foreign Plaintiffs and Plaintiff J.L. must also rebut the presumption against extraterritoriality for their statutory claims.  Because they have not rebutted this presumption, the Foreign Plaintiffs' claims must also be dismissed. California law also contains its own presumption against extraterritorial application of its statutes.  "As a rule, California statutes are presumed not to have an extraterritorial application." *Daramola v. Oracle Am., Inc.*, No. 3:19-CV-07910 (JD), 2022 WL 2047553, at *3 (N.D. Cal. June 7, 2022), *aff'd,* 92 F.4th 833 (9th Cir. 2024).  California law "presume[s] the Legislature did not intend a statute to be 'operative', with respect to occurrences outside the state, ... unless such intention is clearly expressed or reasonably to be inferred 'from the language of the act or from its purpose, subject matter or history.'" *Sullivan v. Oracle Corp.*, 51 Cal.4th 1191, 1207 (2011) (quoting *Diamond Multimedia Sys., Inc. v. Superior Ct.*, 19 Cal.4th 1036, 1059 (Cal.App. 1999)).  Similarly, California common law claims only apply extraterritorially where the relevant conduct gives rise to liability in California. *Aldini AG v. Silvaco, Inc.*, No. 5:21-CV-06423 (JST), 2022 WL 20016826, at *16 (N.D. Cal. Aug. 3, 2022) (dismissing common law claim on the grounds that plaintiff failed to plead "that any of the alleged wrongful conduct occurred in California.").

Plaintiffs' common law claims concerning extraterritorial conduct, purporting to implicate Canadian residents Antoon and Tassillo, cannot give rise to liability in California, and must therefore be dismissed as impermissible extraterritorial applications of statutory law.  California Civil Code §§ 3344 and 1780.85 contain no suggestion that either provision applies extraterritorially, and thus Counts XI and XII must be dismissed.  The same is true of Count XV, Foreign Plaintiffs' California's Trafficking Victims Protection Act claim, California Civil Code § 52.5.

As to the California Unfair Competition Law and False Advertising Law claims in Count XIV, California Business and Professions Code §§ 17200, 17500, "California's Unfair Competition Law does not have extraterritorial application. Nor do[es] California's . . . False Advertising Law." *Jackson v. Gen. Mills, Inc.*, No. 3:18-CV-2634 (LAB) (BGS), 2019 WL 4599845, at *4 (S.D. Cal. Sept. 23, 2019) (citation omitted); *see also Wilson v. Frito-Lay N. Am., Inc.*, 961 F.Supp.2d 1134, 1147 (N.D. Cal. 2013) (dismissing Unfair Competition Law and False Advertising Law claims "where none of the alleged misconduct or injuries occurred in California.'") (quoting *Churchill Vill., LLC v. Gen. Elec. Co.,* 169 F.Supp.2d 1119, 1126 (N.D. Cal. 2000)).

Both Foreign Plaintiffs' Complaints and the J.L. Complaint must therefore be dismissed as impermissible attempts at the extraterritorial application of California law.

## IV. PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

### A. Plaintiffs Do Not Allege that Antoon or Tassillo Knowingly Assisted, Facilitated, or Benefitted from Any Primary Trafficking Violation by The Alleged Third-Party Wrongdoers

Plaintiffs' claims under Counts I and IV of the Complaints independently fail to state a claim. Count I alleges sex trafficking in violation of 18 U.S.C. §§ 1591, 1595. Section 1591 is a criminal prohibition on sex trafficking, while Section 1595 permits civil actions for damages. Section 1591 contains two trafficking offenses: direct liability in Section 1591(a)(1), and beneficiary liability in Section 1591(a)(2).

***Direct Liability.*** "To state a claim for direct perpetrator liability, a plaintiff must allege the defendant knowingly (1) 'recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means *a person*,' knowing or recklessly disregarding that the person may be a minor and 'will be caused to engage in a commercial sex act.'" *Doe v. Grindr Inc.*, No. 2:23-CV-

33

02093 (ODW) (PD), 2023 WL 9066310, at *1056 (C.D. Cal. Dec. 28, 2023) (emphasis added). Under the plain language of Section 1591(a)(1), to state a direct liability claim, a plaintiff must allege conduct that relates to a person, and not to videos. *Doe v. Twitter, Inc.*, 555 F. Supp. 3d 889, 915 (N.D. Cal. 2021) (holding that allegations of conduct relating to videos, and not to a person, fails to state a Section 1591(a)(1) claim), *aff'd in part, rev'd in part and remanded sub nom. Doe #1 v. Twitter, Inc.*, No. 22-15103, 2023 WL 3220912 (9th Cir. May 3, 2023).

Plaintiffs' claim fails for the same reason the claims in *Twitter* failed: they do not allege that any defendant engaged in any action regarding their person. Plaintiffs do not even allege that they had any interactions with either Antoon or Tassillo. Instead, they allege that "[t]he MindGeek Defendants recruit, entice, harbor, transport, provide, obtain, advertise, maintain, patronize, or solicit ***videos and images depicting CSAM*** on their websites." A.K. Compl. ¶ 325; L.S. Compl. ¶ 325; L.T. Compl. ¶ 325; C.S. Compl. ¶ 323; K.A. Compl. ¶ 323; T.S. Compl. ¶ 323; J.C. Compl. ¶ 5; J.L. Compl. ¶ 332; N.Y. Compl. ¶ 332; N.L. Compl. ¶ 326; W.L. Compl. ¶ 326; S.O. Compl. ¶ 324; X.N. Compl. ¶ 324; W.P. Compl. ¶ 322 (emphasis added). This is not sufficient to state a direct liability claim under Section 1591(a)(1).

***Beneficiary Liability***. Plaintiffs also fail to state a claim for beneficiary liability. Beneficiary liability "punishes anyone who 'knowingly . . . benefits, financially or by receiving anything of value, from participation in a venture which has engaged in [a sex trafficking act], knowing . . . that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act . . . .'" *Does 1-6 v. Reddit, Inc.*, 51 F.4th 1137, 1145 (9th Cir. 2022) (quoting 18 U.S.C. § 1591(a)(2)). To state a claim, a plaintiff must allege that a defendant "knowingly benefit[s] from knowingly participating in child sex trafficking." *Id.* This "requires actual knowledge and 'a causal relationship between affirmative conduct furthering

the sex-trafficking venture and receipt of a benefit.'" *Id.* (quoting *Geiss v. Weinstein Co. Holdings LLC*, 383 F.Supp.3d 156, 169 (S.D.N.Y. 2019)).

Here, Plaintiffs do not allege actual knowledge of any sex trafficking venture concerning Plaintiffs, or any affirmative conduct furthering the venture concerning Plaintiffs. Plaintiffs spend much of Count I demonstrating the MindGeek Entity Defendants' alleged constructive knowledge, A.K. Compl. ¶¶ 322-26; L.S. Compl. ¶¶ 322-26; L.T. Compl. ¶¶ 322-26; C.S. Compl. ¶¶ 320-324; K.A. Compl. ¶¶ 320-324; T.C. Compl. ¶¶ 320-324; J.C. Compl. ¶¶ 2-6; J.L. Compl. ¶¶ 329-333; N.Y. Compl. ¶¶ 329-333; N.L. Compl. ¶¶ 323-327; W.L. Compl. ¶¶ 323-327; S.O. Compl. ¶¶ 321-325; X.N. Compl. ¶¶ 321-325; W.P. Compl. ¶¶ 319-323, but at no point do Plaintiffs allege actual knowledge of a sex trafficking venture concerning them or affirmative conduct furthering that venture. The absence of these allegations is fatal to Plaintiffs' beneficiary liability claim. *Doe v. Twitter, Inc.*, No. 3:21-CV-00485 (JCS), 2023 WL 8568911, at *8 (N.D. Cal. Dec. 11, 2023) (dismissing beneficiary liability claim for lack of actual knowledge and participation in sex trafficking venture; allegations of general knowledge of CSAM on Twitter was insufficient).

Count IV also fails. In Count IV, Plaintiffs allege that all defendants conspired to benefit from the monetization of CSAM, in violation of 18 U.S.C. §§ 1594(c), 1595. J.L. Compl. ¶ 365; N.Y. Compl. ¶ 365; A.K. Compl. ¶ 358; L.S. Compl. ¶ 358; L.T. Compl. ¶ 358; C.S. Compl. ¶ 356; K.A. Compl. ¶ 356; T.C. Compl. ¶ 356; J.C. Compl. ¶ 38; N.L. Compl. ¶ 359; W.L. Compl. ¶ 359; S.O. Compl. ¶ 357; X.N. Compl. ¶ 357; W.P. Compl. ¶ 355. Although Plaintiffs do not identify a specific offense that was the object of the conspiracy, they claim the acts in Counts I-III, which are all alleged to be in violation of Section 1591, were "overt acts in furtherance" of the conspiracy, suggesting that a violation of that section is the object offense. J.L. Compl. ¶ 366; N.Y. Compl. ¶ 366; A.K. Compl. ¶ 359; L.S.

FERAS ANTOON AND DAVID TASSILLO'S OMNIBUS MOTION TO
DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

Compl. ¶ 359; L.T. Compl. ¶ 359; C.S. Compl. ¶ 357; K.A. Compl. ¶ 357; T.C. Compl. ¶ 357; J.C. Compl. ¶ 39; N.L. Compl. ¶ 360; W.L. Compls. ¶ 360; W.P. Compl. ¶ 356; S.O. Compl. ¶ 358; X.N. Compl. ¶ 358.  To state a claim under Section 1594(c), Plaintiffs must "allege facts that plausibly show that the defendants 'entered into a joint enterprise with consciousness of its general nature and extent.'" *Paguirigan v. Prompt Nursing Emp. Agency LLC*, 286 F.Supp.3d 430, 440 (E.D.N.Y. 2017) (quoting *Stein v. World-Wide Plumbing Supply Inc.*, 71 F. Supp. 3d 320, 330 (E.D.N.Y. 2014)).  Plaintiffs cannot do so because they have not pled the necessary facts nor could they.

The Complaints fall short in that they provide no specific facts regarding what role, if any, either Antoon or Tassillo is alleged to have played in any purported agreement to violate the sex trafficking laws.  Accordingly, Plaintiffs have not pled that they had actual knowledge of any trafficking, and certainly cannot allege that any defendant entered into an agreement to traffic their person in violation of Section 1591(a)(1).  Without actual knowledge of the trafficking, Plaintiffs cannot claim that Antoon or Tassillo were conscious of the general nature and extent of any conspiracy.

Because none of the sex trafficking causes of action contains sufficient "facts to give fair notice" of what Antoon or Tassillo allegedly did wrong, *see Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) (citation omitted), Plaintiffs' Counts I and IV should be dismissed as to Antoon and Tassillo.

### B.    Plaintiffs Do Not Allege that Antoon or Tassillo Received and Distributed CSEM Under 18 U.S.C. § 2252

Counts V and VI assert civil claims under the federal criminal provisions prohibiting the receipt, transport, and possession of child pornography.  With respect to these alleged child exploitation materials ("CSEM") offenses, Plaintiffs fail to

36

plead, as they must, that Antoon or Tassillo "knowingly" received, transported, or possessed such materials. *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 78 (1994). Plaintiffs have not made any allegation pertaining to Antoon or Tassillo and CSEM, and certainly not that Antoon or Tassillo knew the videos at issue contained CSEM prior to any of the Plaintiffs' takedown requests. The Complaints lack allegations that Antoon or Tassillo had any involvement with any of the Plaintiffs' videos or played a role in causing their injuries. Indeed, the Complaints have no allegations that either Antoon or Tassillo were aware Plaintiffs were minors at the time their videos were made. Nor is it plausible that as the CEO and COO of a service company for a large website, Antoon and Tassillo, respectively, would have this knowledge or even would know of the existence of one individual's videos on a website containing several million consensual adult videos. Accordingly, Plaintiffs fail to state a claim because the statute requires that they be "aggrieved by reason of" the knowing receipt, transport, or possession of CSEM. 18 U.S.C. § 2252A(f)(1).

### C.    Plaintiffs Fail to Allege Any Claim Under State Law

**Counts VII, VIII, IX, and XVI (Public Disclosure of Private Facts, Intrusion into Private Affairs, Placing Plaintiffs in a False Light):** Regarding all the common law and state law torts alleged in the Complaints against Antoon and Tassillo, "[d]irectors or officers of a corporation do not incur personal liability for torts of the corporation merely by reason of their official position, unless they participate in the wrong." *United States Liab. Ins. Co. v. Haidinger–Hayes, Inc.,* 1 Cal.3d 586, 595 (1970). The Complaints are silent as to Antoon's or Tassillo's alleged participation in any wrongful acts. Plaintiffs make only group and conclusory allegations about Antoon and Tassillo, including discussing their roles as CEO and COO, and that association cannot form the basis of individual tort liability. *See Frances T. v. Vill. Green Owners Assn.*, 42 Cal.3d 490, 503 (1986) ("It

is well settled that corporate directors cannot be held vicariously liable for the corporation's torts in which they do not participate.  Their liability, if any, stems from their own tortious conduct, not from their status as directors or officers of the enterprise." (emphasis omitted)).  For this reason alone, the common law and state law torts directed against Antoon and Tassillo fail.

Even if Plaintiffs could sufficiently plead their claims, courts routinely hold that the basis for these kinds of privacy torts presupposes the website's "role as a 'republisher' of material posted by a third party," and therefore, they are barred by Section 230 of the Communications Decency Act, 47 U.S.C. § 230, as discussed below. *See, e.g., Caraccioli v. Facebook, Inc*., 700 F.App'x 588, 590 (9th Cir. 2017) (holding claims against Facebook for intrusion into private affairs and false light, among others, based on Facebook's refusal to remove private photos and videos of the plaintiff from Facebook, were barred under Section 230).

**Count X & Count XI (Common Law and California Statutory Commercial Misappropriation):**  In Counts X and XI, Plaintiffs fail to adequately allege the elements of a misappropriation claim under common law or under California Civil Code § 3344 against Antoon or Tassillo.  *See* Cal. Civ. Code § 3344 (prohibiting the knowing use of another's likeness without consent).  The Complaints do not contain any allegation that Antoon or Tassillo appropriated any of the Plaintiffs' names or likenesses, or that they used Plaintiffs' identities, knowingly or otherwise, for a commercial purpose.  Indeed, there is no indication in the Complaints that Antoon or Tassillo were contemporaneously aware of the at-issue content.  Accordingly, these claims should be dismissed due to a lack of allegations against Antoon and Tassillo.

Plaintiffs A.K.'s, J.C.'s, and T.C's. complaints alternatively plead out-of-state misappropriation claims that should be dismissed for the same reasons under Florida law, New York law, and Rhode Island law, respectively.  Fla. Stat. Ann. § 540.08

(establishing liability where a defendant publishes, prints, displays, or otherwise publicly uses a plaintiff's likeness); N.Y. Civ. Rights Law § 51 (allowing cause of action against person who uses another's likeness); 9 R.I. Gen. Laws Ann. § 9-1-28.1 (establishing right of action flowing from defendant's misconduct).

**Count XII (Cal. Civ. Code § 1708.85):**   Count XII is deficient because Plaintiffs do not adequately allege that Antoon or Tassillo distributed private sexually explicit materials in violation of California law.   The California statute provides a private right of action "against a person who intentionally distributes" private sexually explicit materials "without the other's consent" if "the person knew, or reasonably should have known, that the other person had a reasonable expectation that the material would remain private." Cal. Civ. Code § 1708.85.   But the Complaints have no allegation that Antoon or Tassillo "intentionally distribute[d]" videos or images depicting Plaintiffs, or that they even knew these materials existed.

Given this failure to show intentionality, Plaintiffs K.A.'s and J.C.'s alternative pleading similarly fails under Missouri law and New York law, respectively. Mo. Ann. Stat. § 573.110 (providing for an "offense of nonconsensual dissemination of private sexual images" where a person "[i]ntentionally disseminates an image with the intent to harass, threaten, or coerce another person"); N.Y. Civ. Rights Law § 52-b, et seq. (providing for a right of action involving knowing dissemination of nonconsensual material).   Nor can Plaintiff A. K. bring her purported analogous claim of sexual cyberharassment under Florida statute.   Fla. Stat. Ann. § 784.049 (defining sexual cyberharassment as publishing explicit content to a website "with the intent of causing substantial emotional distress to the depicted person.").

Further, because the J.L. Complaint is devoid of any allegation that Tassillo or Antoon had any interaction with her or personally had possession of the explicit content at issue, Plaintiff J.L.'s purported analogous claim fails under New Jersey

law.  The New Jersey statute provides for a civil cause of action against one who "[k]nowingly receives for the purpose of selling or who knowingly … publishes, distributes, circulates, disseminates, presents, exhibits, [or] advertises" explicit content.  N.J. Stat. Ann. § 2A:30B-3.  At no point does Plaintiff J.L. allege that Tassillo or Antoon had any knowledge of the content at issue.

Accordingly, the Complaints fail to plead any claim concerning the intentional distribution of explicit content depicting any of the Plaintiffs.

**Count XIII (Negligence):**  Count XIII fails because Plaintiffs have not alleged any legal duty owed to them by Antoon or Tassillo, much less any acts that would constitute a breach of that duty.  Absent from the Complaints is any allegation from which the Court could conclude that a special relationship existed between either Antoon or Tassillo and any of the Plaintiffs.  Courts consistently decline to find special relationships between websites and those injured by third-party uploads to such websites. *See, e.g.*, *Doe v. MySpace*, *Inc.* 474 F.Supp.2d 843, 846, 852 (W.D. Tex. 2007), *aff'd,* 528 F.3d 413 (5th Cir. 2008) (dismissing negligence claims because Myspace did not owe a legal duty to parents of a teenager who was raped to protect their daughter from criminal acts "nor to institute reasonable safety measures on its website").  The point is even more stark with respect to a purported injured third-party user and the CEO or COO of the service company that supports that website.  Accordingly, Count XIII should be dismissed due to a lack of allegations against Antoon and Tassillo individually.

**Count XIV** (**Cal. Bus. & Prof. Code §§ 17200 and 17500):**  Plaintiffs' Unfair Competition Law claim is insufficiently pleaded because Plaintiffs have not alleged any specific unlawful acts by Antoon or Tassillo.  In addition, because Plaintiffs' claim is premised on an alleged misrepresentation, it also fails to meet Rule 9(b)'s requirements because they do not allege with particularity any specific misrepresentation made by Antoon or Tassillo. *Kwikset Corp. v. Superior Ct.*, 51

Cal.4th 310, 320 & 322-25 (2011); *Letizia v. Facebook Inc.*, 267 F.Supp.3d 1235, 1244 (N.D. Cal. 2017).  Given the lack of individual allegations against Antoon or Tassillo, Count XIV should be dismissed as against them.

As a result of that same failure to plead unlawful conduct by Antoon or Tassillo, the Complaints filed by J.L., N.L., J.C., L.T., and T.C. fail under their purported analogous pleading under the laws of New Jersey, Colorado, Florida, New Hampshire, and Rhode Island, respectively.  N.J. Stat. §56:8-2 (setting forth prima facie elements of a consumer fraud claim, including an affirmative act by defendant); Colo. Rev. Stat. Ann. § 6-2-103, et. seq.  (providing for liability where an officer "assists or aids" in wrongful conduct); Fla. Stat. Ann. § 817.41 (prohibiting persons from making or disseminating "any misleading advertisement."); N.H. Rev. Stat. Ann. § 358-A:2 (itemizing actions that constitute unlawful conduct); 6 R.I. Gen. Laws Ann. § 6-13.1-2 (requiring affirmative unlawful action).  Similarly, Plaintiff N.Y. pleads a violation of the Regulation of the Eur. Parliament and of the Council 2007, 864/2007, 28 c. II, art. 6, which also expressly assumes the existence of an unlawful act.

**Count XV (California's Trafficking Victims Protection Act ("CTVPA") Cal. Civ. Code § 52.5):**  Plaintiffs' California Trafficking Victims Protection Act Claim fails for the same reason their direct liability TVPRA claim fails:  there is no allegation that any defendant took any action against their person.  The CTVPA provides a civil cause of action for victims "of human trafficking, as defined in Section 236.1 of the Penal Code."  Cal. Civ. Code § 52.5(a).  Section 236.1 of the Penal Code in turn, contains three offenses in subsections (a)-(c), each of which requires some act against a "person."  Additionally, unlike the federal TVPRA, there is no beneficiary liability under the CTVPA.  "The text of the state statutory provisions does not provide for liability against a beneficiary of a trafficking scheme, rather than a perpetrator."  *SASA MASLIC, et al. v. ISM VUZEM D.O.O.*, No. 5:21-

CV-02556 (BLF), 2024 WL 3408217, at *7 (N.D. Cal. July 11, 2024).  Plaintiffs' CTVPA claim therefore must be dismissed because they do not allege that any defendant—much less Antoon or Tassillo—took any action against their person.

These same deficiencies warrant dismissal of the complaints filed by N.L., K.A., J.C., L.T., and T.C., which alternatively plead claims under the laws of Colorado, Missouri, New York, New Hampshire, and Rhode Island, respectively. Colo. Rev. Stat. Ann. § 13-21-127 (requiring action in furtherance of human trafficking); Mo. Ann. Stat. § 566.223 (providing relief where a trafficking violation "has occurred against his or her person"); N.Y. Soc. Serv. Law § 483-bb (allowing "civil action against the perpetrator or whoever knowingly advances or profits from" a trafficking violation); N.H. Rev. Stat. Ann. § 633:11 (requiring commission of an offense); R.I. Gen. Laws Ann. § 11-67.1-18 (same).

**Count XVI (Intentional Infliction of Emotional Distress):**  To allege a claim for the intentional infliction of emotional distress, Plaintiffs must show "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Merritt v. Wells Fargo Bank, N.A.*, No. SACV 18-1960 (JVS) (JDE), 2019 WL 1951608, at *6 (C.D. Cal. Mar. 15, 2019) (Selna, J.) (quoting *Christensen v. Super. Ct.*, 54 Cal.3d 868, 903 (1991)).  The Complaints fail here, as Plaintiffs have not pled intentional or reckless conduct by Antoon or Tassillo let alone the requisite extreme and outrageous conduct necessary to establish a cause of action for intentional infliction of emotional distress.  *See, e.g., Quesada v. Atrium Hosp. LP*, No. 2:22-CV-06143 (SVW) (MAA), 2023 WL 3727707, at *11 (C.D. Cal. Apr. 26, 2023) ("To be successful, the conduct of the defendant must be 'so extreme as to exceed all bounds of that usually tolerated in a civilized society.'") (Citation

FERAS ANTOON AND DAVID TASSILLO'S OMNIBUS MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

omitted).   Accordingly, Plaintiffs' cursory claim of intentional infliction of emotional distress warrants dismissal.

**Count XVII (Civil Conspiracy):**  Plaintiffs' civil conspiracy claim fails because, under California law, civil conspiracy is not a separate and distinct tort cause of action.  *See, e.g., Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 514 (1994) (stating that, "Conspiracy is not an independent tort; it cannot create a duty or abrogate an immunity.  It allows tort recovery only against a party who already owes the duty and is not immune from liability based on applicable substantive tort law principles."); *Ent. Rsch. Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1228 (9th Cir. 1997) (stating that "merely alleging underlying tort causes of action is clearly insufficient to support a conspiracy cause of action").

## V.    SECTION 230 IMMUNITY EXTENDS TO ANTOON AND TASSILLO

Finally, Plaintiffs' claims against Antoon and Tassillo are barred by Section 230 of the CDA.   47 U.S.C. § 230(c)(1).   Congress enacted Section 230 to "immunize[] providers of interactive computer services against liability arising from content created by third parties."  *Fair Hous. Council of San Fernando Vall. v. Roommates.Com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008) (en banc).   "Today, the most common interactive computer services are websites."  *Id.* at 1162 n.6.[29]  The statute states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. § 230(c)(1).  Under the law of this circuit, when a plaintiff asserts a claim against "(1) a provider or user of an interactive

---

[29] "The term 'interactive computer service' means any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions."  47 U.S.C. § 230(f)(2).

43

computer service, (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker, (3) of information provided by another information content provider," such a claim will fail. *Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 738 (9th Cir. 2024) (quoting *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100–01 (9th Cir. 2009), *as amended* (Sept. 28, 2009)).[30]

Plaintiffs' claims fail this test. *First*, there is no dispute that Plaintiffs' claims arise from the use of a website, an interactive computer service. Compls. ¶ 41. *Second*, Plaintiffs seek to treat the MindGeek Entity Defendants—and by extension Antoon and Tassillo—as publishers. A claim seeks to treat a website as a publisher if the duty that a defendant allegedly violated would require the defendant to monitor third-party content. *Barnes*, 570 F.3d at 1103. If that duty requires monitoring third-party content, the claim seeks to treat a defendant as a publisher. *Calise*, 103 F.4th at 742.

Here, Plaintiffs' claims seek to hold Defendants liable for publishing sexually explicit videos taken while they were minors. N.Y. Compl. ¶¶ 311-27; J.L. Compl. ¶¶ 311-27; A.K. Compl. ¶¶ 311-20; L.S. Compl. ¶¶ 311-20; L.T. Compl. ¶¶ 311-20; C.S. Compl. ¶¶ 311-18; K.A. Compl. ¶¶ 311-18; T.C. Compl. ¶¶ 311-18; J.C. Compl. ¶¶ 311-19; S.O. Compl. ¶¶ 311-19; X.N. Compl. ¶¶ 311-19; N.L. Compl. ¶¶ 311-21; W.L. Compl. ¶¶ 311-21; W.P. Compl. ¶¶ 311-17. Defendants could avoid liability for these claims only by reviewing the Plaintiffs' content, and thus Plaintiffs' claims seek to treat defendants as a publisher.

*Third*, there can be no dispute that the videos of Plaintiffs were provided by another information content provider. 47 U.S.C. § 230(f)(3). Not one of the

---

[30] Section 230 also precludes federal causes of action. *See Twitter,* 2023 WL 8568911, at *8 (18 U.S.C. §§ 1591(a), 1595, 2252A, 2255 claims precluded by Section 230); *Zhang v. Twitter Inc.*, No. 3:23-CV-00980 (JSC), 2023 WL 5493823, at *4 (N.D. Cal. Aug. 23, 2023) (18 U.S.C. §§ 2252, 2252A, 2257 claims are "barred by Section 230.").

Plaintiffs alleges that Antoon or Tassillo uploaded these videos to Pornhub. Instead, most Plaintiffs allege they were coerced or coaxed into providing explicit content to third parties, some of whom are now-convicted sex offenders. K.A. Compl., N.L. Compl.; L.T. Compl.; X.N. Compl.; N.Y. Compl., T.C. Compl. C.S. Compl., S.O. Compl., W.P. Compl., and J.L. Compl. ¶ 311. Other Plaintiffs allege they received compensation in exchange for providing the at-issue content. X.N. Compl. ¶ 311; L.S. Compl. ¶312; W.P. Compl. ¶ 311. And two Plaintiffs were unknowingly recorded by unnamed third parties. J.C. Compl. and W.L. Compl. ¶ 311. Plaintiff N.Y.'s claims against Antoon and Tassillo therefore flow from an attempt to hold an interactive computer service liable as a publisher and are precluded by Section 230.

Plaintiffs also cannot demonstrate that any exception to Section 230 applies. Two such exceptions are relevant, even though neither is applicable here. *First*, even if a website is immune for content provided by third parties, it can still be liable for content that [a website] "creates itself, or is 'responsible, in whole or in part' for creating or developing, the website is also a content provider," and can be held liable notwithstanding Section 230. *Roommates*, 521 F.3d at 1162. Although each of the Plaintiffs spends much of their respective Complaints claiming the MindGeek Entity Defendants solicit and encourage the posting of unlawful material, when a website merely provides "a neutral platform that did not specify or prompt the type of content to be submitted," it cannot be considered the creator or developer of that content. *Gonzalez v. Google LLC*, 2 F.4th 871, 895 (9th Cir. 2021), *vacated and remanded,* 598 U.S. 617 (2023). Similarly, when a website treats legal and illegal content equally and merely "provides neutral tools that a user exploits" it "does not become a developer of content." *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1099 (9th Cir. 2019).

This is precisely what the Complaints allege. Plaintiffs allege the MindGeek Entities treat illegal content in the same way they treat legal content. The core of

FERAS ANTOON AND DAVID TASSILLO'S OMNIBUS MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs' allegations against the MindGeek Entities is that they operated an "'unrestricted content' SEO model that knowingly and intentionally solicited, optimized, and commercialized content of any kind," and that they "incorporated all illegal content into its SEO process *just like it did all other legal content*."   June Compls. ¶¶ 60, 115; J.L. Compl. ¶¶ 58, 113 (emphasis added).   Although Plaintiffs claim that these practices resulted in illegal, nonconsensual content being uploaded to the MindGeek Entities' websites, they expressly allege that the MindGeek Entities treated "nonconsensual content just like all other content."  June Compls. ¶ 151; J.L. Compl. ¶ 149.   Plaintiffs do not allege that any of the features of the MindGeek Entities websites were designed to differentiate illegal content from legal content, but rather allege the opposite:  that legal and illegal content were treated in the same way.  These allegations preclude Plaintiffs from treating any MindGeek Entity as an independent information content provider.

Plaintiffs also do not qualify for the TVPRA exception to Section 230.[31]   The TVPRA exception to Section 230 states that Section 230 immunity shall not "be construed to impair or limit (A) any claim in a civil action brought under section 1595 of Title 18, if the conduct underlying the claim constitutes a violation of section 1591 of that title."  47 U.S.C. § 230(e)(5).  The TVPRA exception to Section 230 immunity "requires that a defendant-website's own conduct violate 18 U.S.C. § 1591," not merely that the website benefits from other trafficking that is subject to liability under Section 1595, but not Section 1591. *Does 1-6*, 51 F.4th at 1145.  Here, for the reasons identified in Section II.A, *supra*, Plaintiffs fail to state a claim under

---

[31] The Court does not need to reach the TVPRA exception to Section 230 unless it concludes that Section 230 applies to Plaintiff's claims, and that the content creator exception does not apply.  If the Court finds that only the TVPRA exception to Section 230 applies, *a fortiori* Plaintiff's remaining, non-Section 1591 claims must be dismissed as barred by Section 230.

Section 1591 and therefore cannot qualify for the TVPRA exception to Section 230. Plaintiffs' claims must therefore be dismissed for this reason.

A recent case in this district has endorsed this understanding of Section 230 immunity.  On July 24, 2024, in a case alleging that sexually explicit videos of a minor were uploaded to a foreign defendant's pornographic websites, Judge Garnett concluded that Section 230 barred the claims. *WebGroup Czech Republic,* 2024 WL 3533426, at *9.  Judge Garnett ultimately granted plaintiff leave to amend because the Ninth Circuit decided *Does 1-6 v. Reddit* after the plaintiff filed the operative complaint.  Here, however, each of the Plaintiffs' Complaints were filed well after *Does 1-6 v. Reddit* was decided, and thus a similar opportunity to amend is not justified.

## CONCLUSION

For the reasons discussed above, Defendants Feras Antoon and David Tassillo respectfully request that the Court dismiss the Complaints for lack of personal jurisdiction or, in the alternative, for failure to state a claim.

DATED: October 30, 2024          Respectfully Submitted,

By: _____

COHEN & GRESSER LLP
Jason Brown (*pro hac vice*)
Matthew V. Povolny (*pro hac vice*)
Joanna Chan

*Attorneys for Specially Appearing*
*Defendant Feras Antoon*

1

MORVILLO ABRAMOWITZ GRAND
IASON & ANELLO PC
Jonathan S. Sack (*pro hac vice*)
Alexander F.R. Peacocke (*pro hac vice*
pending)

*Attorneys for Specially Appearing
Defendant David Tassillo*

WIECHERT, MUNK & GOLDSTEIN, PC
David Wiechert (SBN 94607)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

48

FERAS ANTOON AND DAVID TASSILLO'S OMNIBUS MOTION TO
DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

# **CERTIFICATE OF COMPLIANCE**

The undersigned counsel of record for defendant David Tassillo, certifies that this brief contains fifty (50) pages or less, as required by this Court's October 8, 2024, Order Granting Joint Stipulation to Request Limited Coordination for Purposes of Responding to Complaints in Related Cases, K.A., ECF No. 54; N.L., ECF No. 52; L.T., ECF No. 56; T.C., ECF No. 53; X.N., ECF No. 52; N.Y., ECF No. 48; J.C., ECF No. 46; W.L., ECF No. 46; C.S., ECF No. 45; S.O., ECF No. 39; L.S., ECF No. 49; W.P., ECF No. 39; A.K., ECF No. 46; J.L., ECF No. 38.


DATED: October 30, 2024      By: _____

# CERTIFICATE OF SERVICE

I, Samuel Rivas, employed in the County of Orange, State of California, declare under penalty and perjury that I am over the age of eighteen (18) and not a party to the above-entitled proceeding.

On October 30, 2024, I served the forgoing documents, described as **SPECIALLY APPEARING DEFENDANTS FERAS ANTOON AND DAVID TASSILLO'S NOTICE OF MOTION AND OMNIBUS MOTION TO DISMISS THE COMPLAINTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; [PROPOSED] ORDER** on all interested parties as follows:

**BY E-MAIL:** I caused the document(s) to be transmitted electronically by filing the forgoing with the clerk of the District Court using the CM/ECF system, which electronically notifies counsel for all parties.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 30, 2024, at Santa Ana, California.

/s/*Samuel Rivas*
Samuel Rivas

CERTIFICATE OF COMPLIANCE