JAMES M. PEARL (SB# 198481)
jamespearl@paulhastings.com
KIAURA CLARK (SB# 336314)
kiauraclark@paulhastings.com
**PAUL HASTINGS LLP**
1999 Avenue of The Stars, 27th Floor
Los Angeles, California 90067
Telephone: 1(310) 620-5700
Facsimile: 1(310) 620-5899

ADAM M. REICH (SB# 274235)
adamreich@paulhastings.com
EMMA LANZON (*pro hac vice*)
emmalanzon@paulhastings.com
**PAUL HASTINGS LLP**
71 South Wacker Drive, 45th Floor
Chicago, Illinois 60606
Telephone: 1(312) 499-6000
Facsimile: 1(312) 499-6100

*[Additional Counsel for Defendant
continued on next page]*

*Attorneys for Defendant,
Redwood Capital Management, LLC*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| K.A.,<br><br>Plaintiff,<br><br>vs.<br><br>MINDGEEK S.A.R.L. a foreign entity; MG FREESITES, LTD., a foreign entity; MINDGEEK USA INCORPORATED, a Delaware corporation; MG PREMIUM LTD, a foreign entity; MG GLOBAL ENTERTAINMENT INC., a Delaware corporation; 9219-1568 QUEBEC, INC., a foreign entity; BERND BERGMAIR, a foreign individual; FERAS ANTOON, a foreign individual; DAVID TASSILLO, a foreign individual; VISA INC., a Delaware corporation; REDWOOD CAPITAL MANAGEMENT, LLC, a Delaware limited liability company; REDWOOD DOE FUNDS 1-7; COLBECK CAPITAL | CASE NO. 2:24-cv-04786-WLH-ADS<br><br>**REDWOOD CAPITAL MANAGEMENT, LLC'S OMNIBUS MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINTS IN RELATED CASES**<br><br>Date:      January 31, 2025<br>Time:      1:30 p.m.<br>Place:     Courtroom 9B Hon.<br>Judge:    Wesley L. Hsu<br><br>Complaint filed: June 7, 2024<br><br>[Notice of Motion and Request for Judicial Notice filed concurrently herewith] |

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

---

DEFENDANT REDWOOD CAPITAL MANAGEMENT, LLC'S
MEM. OF P. & A. ISO MOT. TO DISMISS COMPLS. IN RELATED CASES

1    MANAGEMENT, LLC, a Delaware
     company, COLBECK DOE FUNDS 1-3,
2
                    Defendants.
3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    *[Additional Counsel for Defendant continued from caption page]*

2    KRISTOPHER M. HANSEN (*pro hac vice*)
     krishansen@paulhastings.com
3    **PAUL HASTINGS LLP**
     200 Park Avenue
4    New York, New York 10166
     Telephone: 1(212) 318-6000
5    Facsimile: 1(212) 752-3310

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

**Pages**

I.    Preliminary Statement ................................................................1

II.   Statement of Facts ....................................................................4

    A.    Relevant Procedural History ................................................4

        1.    The *Fleites* Lawsuit .................................................4

        2.    The Related Cases ...................................................6

    B.    Documents Incorporated by Reference in the Related Cases ...............6

    C.    The New Plaintiffs ........................................................8

        1.    California Plaintiffs ..................................................8

        2.    Non-California Plaintiffs ............................................9

        3.    Non-U.S. Plaintiffs ................................................10

    D.    Redwood ..............................................................11

    E.    New Plaintiffs' Allegations Regarding Redwood .............................12

        1.    Key Allegations Regarding Redwood's Loans to MindGeek ...12

        2.    The Pre-Financing Diligence Allegations .................................14

        3.    The Effective Control Allegations.......................................15

        4.    The Failure to Act Allegations .......................................16

III.  New Plaintiffs' Complaints Should be Dismissed for Lack of Subject Matter Jurisdiction.................................................................17

IV.   New Plaintiffs' Complaints Should Be Dismissed .........................17

    A.    Legal Standard ........................................................18

    B.    New Plaintiffs have not Stated a TVPRA Claim Against Redwood...18

        1.    Relevant Aspects of the TVPRA .............................19

        2.    New Plaintiffs Fail to Establish Proximate Cause....................21

        3.    The Beneficiary Liability Claims are Inadequately Pled. .........23

            a.    Redwood did not "Participate in a Venture."...................24

            b.    New Plaintiffs Fail to Allege that Redwood Knew or Should Have Known of Plaintiffs' Sex Trafficking........26

DEFENDANT REDWOOD CAPITAL MANAGEMENT, LLC'S
MEM. OF P. & A. ISO MOT. TO DISMISS COMPLS. IN RELATED CASES

        c.     The TVPRA Beneficiary Liability Claim Cannot Apply
Extraterritorially to Non-U.S. Plaintiffs..........................28

   4.     The TVPRA Conspiracy Claims Against Redwood are Barred
by Ninth Circuit Law ..................................................29

   5.     The Complaints do not Establish a Conspiracy by Redwood. ..30

C.   New Plaintiffs' Hybrid UCL/FAL Claim is not Legally Viable. ........33

   1.     All New Plaintiffs Lack Standing for UCL and FAL Claims..34

   2.     The Non-California and Non-U.S. Plaintiffs cannot invoke the
UCL and/or FAL for extraterritorial application.......................35

   3.     New Plaintiffs Fail to State a UCL or FAL Claim. ...................37

   4.     The "Analogous" State Statutes Claims Are Also Deficient ....39

D.   New Plaintiffs Fail to State a Claim for Intentional Infliction of
Emotional Distress ...............................................................42

E.   The Civil Conspiracy Claim is Inadequately Pled...............................45

   1.     New Plaintiffs Fail to Allege a Civil Conspiracy......................45

   2.     New Plaintiffs Fail to Allege a Civil Conspiracy......................48

V.   Conclusion....................................................................................50

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Anderson v. Louden, LLC*
    No. C 13-04159 WHA, 2013 WL 6405825 (N.D. Cal. Dec. 6, 2013).............. 43

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*
    7 Cal. 4th 503 (1994).................................................................................48, 49

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) ............................................................... 18, 43, 48

*Associated Gen. Contractors of Cal., Inc. v. Carpenters*
    459 U.S. 519 (1983) (Clayton Act) .................................................. 21

*B.J. v. G6 Hosp., LLC*
    No. 22-CV-03765-MMC, 2023 WL 3569979 (N.D. Cal. May 19, 2023)
    .............................................................................................25, 26

*B.M. v. Wyndham Hotels & Resorts, Inc.*
    No. 20-CV-00656-BLF, 2020 WL 4368214 (N.D. Cal. July 30, 2020)
    .............................................................................25, 26, 27, 28

*Bank of Am. Corp. v. City of Miami*
    581 U.S. 189 (2017) ....................................................................... 21

*Bassam v. Bank of Am.*
    No. CV 15-00587 MMM, 2015 WL 4127745 (C.D. Cal. July 8, 2015)............ 48

*Baumer v. Pachl*
    8 F.3d 1341 (9th Cir. 1993)............................................................ 31

*Bookworld Trade, Inc. v. Daughters of St. Paul, Inc.*
    532 F. Supp. 2d 1350 (M.D. Fla. 2007) ........................................ 40

*C.f. Woodhull Freedom Found. v. United States*
    72 F.4th 1286 (D.C. Cir. 2023) ..................................................... 21

*Carafano v. Metrosplash.com, Inc.*
    339 F.3d 1119 (9th Cir. 2003)....................................................... 20

*Chang v. Wachovia Mortg., FSB*
No. C-11-1951 SC, 2011 WL 5552899 (N.D. Cal. Nov. 15, 2011)...................44

*Chavez v. Whirlpool Corp.*
93 Cal. App. 4th 363 (2001) .......................................................................39

*Chern v. Bank of Am.,*
15 Cal. 3d 866, 875 (1976) ........................................................................33

*Christensen v. Superior Court*
54 Cal.3d 868 (1991) ................................................................................45

*Churchill Vill., LLC v. Gen. Elec. Co.*
169 F. Supp. 2d 1119 (N.D. Cal. 2000)......................................................36

*City of Oakland v. Wells Fargo & Co.*
14 F.4th 1030 (2021) (en banc) .................................................................22

*Cohen v. Bos. Sci. Corp.*
No. 1:20-CV-00943-PB, 2024 WL 1286904 (D.N.H. Mar. 26, 2024) .............41

*Coleman v. Republic Indem. Ins. Co. of Cal.*
132 Cal. App. 4th 403 (2005) ....................................................................44

*Cooper v. Tokyo Elec. Power Co., Inc.,*
166 F. Supp. 3d 1103 (S.D. Cal. 2015),
*aff'd,* 860 F.3d 1193 (9th Cir. 2017)..........................................................45

*Craigslist Inc. v. 3Taps Inc.*
942 F. Supp. 2d 962 (N.D. Cal. 2013)..................................................32, 46

*Davis v. HSBC Bank Nev., N.A.*
691 F.3d 1152 (9th Cir. 2012) ...................................................................18

*Doe #9 v. Wyndham Hotels & Resorts, Inc.*
No. 4:19-CV-5016, 2021 WL 1186333 (S.D. Tex. Mar. 30, 2021)..................27

*Doe 1 v. Deutsche Bank Aktiengesellschaft*
671 F. Supp. 3d 387 (S.D.N.Y. 2023) ........................................................31

*Doe I v. Apple Inc.*
No. 1:19-CV-03737 (CJN), 2021 WL 5774224 (D.D.C. Nov. 2, 2021) ...........29

DEFENDANT REDWOOD CAPITAL MANAGEMENT, LLC'S
MEM. OF P. & A. ISO MOT. TO DISMISS COMPLS. IN RELATED CASES

*Doe v. Mindgeek USA Inc.*
  558 F. Supp. 3d 828 (C.D. Cal. Sept. 3, 2021) .............................................. 21, 24

*Doe v. Twitter, Inc.*
  No. 21-cv-00485-JCS, 2021 WL 3675207 (N.D. Cal. Aug. 19, 2021) ............. 24

*Doe v. W. Alton Marina, LLC*
  646 F. Supp. 3d 315 (D.N.H. 2022) ............................................................... 42

*Doe v. WebGroup Czech Republic, a.s.*
  No. 2:21-cv-02428 SPG (SRX), 2024 WL 3533426 (C.D. Cal. July 24,
  2024) .............................................................................................................. 28

*Does 1-6 v. Reddit, Inc.*
  51 F.4th 1137 (9th Cir. 2022) ..................................................................... 20, 21

*E.S. v. Best W. Int'l, Inc.*
  510 F. Supp. 3d 420 (N.D. Tex. 2021) .......................................................... 27

*Everest Invs. 8 v. Whitehall Real Est. Ltd. P'shp XI*
  100 Cal. App. 4th 1102 (2002) ..................................................................... 50

*Fitbug Ltd. v. Fitbit, Inc.*
  78 F. Supp. 3d 1180 (N.D. Cal. 2015) ........................................................... 34

*Fleites v. Mindgeek S.A.R.L.*
  617 F. Supp. 3d 1146 (2022) ................................................................... *passim*

*Frank v. Fine*
  No. 6:23-CV-2043-PGB-RMN, 2024 WL 473718 (M.D. Fla. Jan. 5,
  2024) .............................................................................................................. 42

*Freeman v. Time, Inc.*
  68 F.3d 285 (9th Cir. 1995) ........................................................................ 38, 39

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*
  528 U.S. 167 (2000) ....................................................................................... 2

*Gifford v. Hornbrook Fire Prot. Dist.*
  No. 2:16-CV-0596-JAM-DMC, 2021 WL 4168532 (E.D. Cal. Sept. 14,
  2021) ........................................................................................................... 47, 48

*Gillis v. Principia Corp.*
  832 F.3d 865 (8th Cir. 2016) ......................................................................... 42

*Grant v. Aurora Loan Servs., Inc.*
  736 F. Supp. 2d 1257 (C.D. Cal. 2010) ................................................................. 7

*Green v. Qwest Servs. Corp.*
  155 P.3d 383 (Colo. App. 2006) ......................................................................... 42

*Holmes v. SIPC*
  503 U.S. 258 (1992) ........................................................................................... 21

*In re Kelly*
  841 F.2d 908 (9th Cir. 1988) ............................................................................... 2

*J.B. v. G6 Hosp., LLC,*
  No. 19-cv-07848-HSG, 2021 WL 4079207 (N.D. Cal. Sept. 8, 2021),
  *aff'd sub nom. J.B. v. Craigslist, Inc.*, No. 22-15290, 2023 WL 3220913
  (9th Cir. May 3, 2023) ....................................................................................... 19

*J.B. v. G6 Hosp., LLC*
  No. 19-CV-07848-HSG, 2020 WL 4901196 (N.D. Cal. Aug. 20, 2020)
  .................................................................................................................... 25, 26

*J.C. v. Choice Hotels Int'l, Inc.*
  No. 20-CV-00155-WHO, 2020 WL 6318707 (N.D. Cal. Oct. 28, 2020)
  ............................................................................................................ 20, 27, 28

*Kearns v. Ford Motor Co.*
  567 F.3d 1120 (9th Cir. 2009) ........................................................................... 38

*Kidron v. Movie Acquisition Corp.*
  40 Cal. App. 4th 1571 (1995) ............................................................................ 46

*Korea Supply Co. v. Lockheed Martin Corp.*
  29 Cal. 4th 1134 (2003) ..................................................................................... 39

*Kwikset Corp. v. Superior Court*
  51 Cal. 4th 310 (2011) ....................................................................................... 35

*Lacano Invs., LLC v. Balash*
  765 F.3d 1068 (9th Cir. 2014) ............................................................................. 7

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*
  572 U.S. 118 (2014) ............................................................................ 21, 22, 23

- vi -

*Lingad v. Indymac Fed. Bank*
    682 F. Supp. 2d 1142 (E.D. Cal. 2010) ............................................................ 46

*Long v. Dell, Inc.*
    93 A.3d 988 (R.I. 2014)........................................................................................ 41

*Melorich Builders, Inc. v. Superior Court*
    160 Cal. App. 3d 931 (1984) ............................................................................... 43

*Miletak v. Wingz, Inc.*
    No. 5:24-cv-01063, 2024 WL 3304801 (N.D. Cal. July 3, 2024) ..................... 45

*Millenium Labs., Inc. v. Universal Oral Fluid Labs., LLC*
    No. 8:11-CV-1757-MSS-TBM, 2012 WL 12906334 (M.D. Fla. Aug. 2,
    2012)....................................................................................................................... 40

*Morrison v. Nat'l Australia Bank Ltd.*
    561 U.S. 247 (2010) ............................................................................................. 29

*Nationwide Biweekly Admin., Inc. v. Superior Court,*
    9 Cal. 5th 279, 309 (2020)............................................................................. 33, 38

*Nesbit v. Speedway LLC.*
    No. 2:23-cv-00912, 2023 WL 2634731 (C.D. Cal. Mar. 10) 2023 WL
    2634287 (Mar. 23, 2023)...................................................................................... 44

*Norton v. Hoyt*
    278 F. Supp. 2d 214 (D.R.I. 2003), *aff'd sub nom. Norton v. McOsker*, 407
    F.3d 501 (1st Cir. 2005) ...................................................................................... 42

*Norwest Mortg. Inc. v. Super Ct.*
    72 Cal.App.4th 214, 85 Cal.Rptr.2d 18 (1999) ................................................. 36

*Okada v. Bank of Am., N.A.*
    No. SACV 15 00981CJC(Ex), 2015 WL 5556937 (C.D. Cal. Sept. 16,
    2015)....................................................................................................................... 37

*Otter Prods., LLC v. Wang*
    No. 18-cv-03198-CMA-SKC, 2019 WL 1403022 (D. Colo. Mar. 28,
    2019)....................................................................................................................... 41

*Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*
    96 F.3d 1151 (9th Cir. 1996)............................................................................... 42

DEFENDANT REDWOOD CAPITAL MANAGEMENT, LLC'S
MEM. OF P. & A. ISO MOT. TO DISMISS COMPLS. IN RELATED CASES

*Pardi v. Kaiser Found. Hosps.*
    389 F.3d 840 (9th Cir. 2004) ................................................................... 44

*Peterson Dev. Co. v. Torrey Pines Bank*
    233 Cal. App. 3d 103 (1991) ................................................................... 49

*Ratha v. Phatthana Seafood Co.*,
    35 F.4th 1159 (9th Cir.),
    *cert. denied*, 143 S. Ct. 491 (2022) ................................................... 28, 29

*Ratha v. Phatthana Seafood Co.*,
    No. CV 16-4271-JFW (ASX), 2023 WL 2762044 (C.D. Cal. Mar. 3, 2023),
    *aff'd sub nom. Ratha*. 111 F.4th 946, 2024 WL 3589751 946 (9th Cir. 2024) ................................................................... 3, 29, 30, 31

*Ratha v. Rubicon Res., LLC*
    111 F.4th 946 (9th Cir. 2024) ............................................................ *passim*

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*
    442 F.3d 741 (9th Cir. 2006) ..................................................................... 7

*River Colony Ests. Gen. P'ship v. Bayview Fin. Trading Grp., Inc.*
    287 F. Supp. 2d 1213 (S.D. Cal. 2003) ................................................... 49

*RTC v. BVS Dev., Inc.*
    42 F.3d 1206 (9th Cir. 1994) ............................................................ 49, 50

*Rusheen v. Cohen*
    37 Cal. 4th 1048 (2006) ........................................................................... 46

*S. A. Empresa, Etc. v. Boeing Co.*
    641 F.2d 746 (9th Cir. 1981) ................................................................... 42

*State of Cal. ex rel Metz v. CCC Info. Servs., Inc.*
    149 Cal. App. 4th 402 (2007) ................................................................... 47

*Stein v. World-Wide Plumbing Supply Inc.*
    71 F. Supp. 3d 320 (E.D.N.Y. 2014) ....................................................... 31

*Stuto v. Fleishman*
    164 F.3d 820 (2d Cir. 1999) ................................................................... 42

DEFENDANT REDWOOD CAPITAL MANAGEMENT, LLC'S
MEM. OF P. & A. ISO MOT. TO DISMISS COMPLS. IN RELATED CASES

*Sullivan v. Oracle Corp.*
  51 Cal. 4th 1191 (2011) ...................................................................... 36

*Thinking Liberally Media Inc. v. Orange Juice Blog*
  No. SACV 10-00139 DOC (RNBx), 2010 WL 11596144 (C.D. Cal. Nov.
  19, 2010) ...................................................................................... 46, 47

*Tidenberg v. Bidz.com, Inc.*
  No. 08-cv-5553, PSG (FMOx), 2009 WL 605249, (C.D. Cal. Mar. 4,
  2009) ............................................................................................ 36, 37

*United States v. Wilson*
  631 F.2d 118 (9th Cir. 1980) ............................................................... 7

*Vess v. Ciba-Geigy Corp. USA*
  317 F.3d 1097, 1103-04 (9th Cir. 2003) ......................................... 33, 39

*Wassmann v. S. Orange Cnty. Cmty. Coll. Dist.*
  24 Cal. App. 5th 825 (2018) ............................................................... 43

*Yumul v. Smart Balance, Inc.*
  733 F. Supp. 2d 1117 (C.D. Cal. 2010) .............................................. 34

STATUTES

15 United States Code § 1051 ............................................................. 21

18 United States Code §1591 .....................................................*passim*

18 United States Code § 1594 ......................................................... 3, 12

18 United States Code § 1595 .....................................................*passim*

18 United States Code § 1596 ..................................................... 20, 29

18 United States Code §§ 1961-1968 .................................................. 31

18 United States Code § 2257 ............................................................ 15

42 United States Code § 3604 ............................................................ 21

47 United States Code § 230 ....................................................... 20, 21

California Business & Professions Code §§ 16700-16770 .................... 39

California Business & Professions Code § 17200...............................................*passim*

California Business & Professions Code § 17204...................................................34

California Business & Professions Code § 17208...................................................34

California Business & Professions Code § 17500...........................................*passim*

California Business & Professions Code § 17535...................................................34

California Code of Civil Procedure § 335.1 ..........................................................43

California Code of Civil Procedure § 338 ..............................................................34

Colorado Revised Statute § 6-1-105......................................................................40

Colorado Revised Statute § 6-2-103......................................................................40

Florida Statute § 501.204......................................................................................39

Florida Statute § 817.41........................................................................................39

New Hampshire Revised Statute § 358 .................................................................41

Public Law No. 110-457, § 223, 122 Stat. 5044 (2008)........................................20

Public Law No. 117-347, § 102, 136 Stat., 6199 (2023)................................20, 30

Rhode Island General Laws § 6-13.1-2 .................................................................41

**RULES**

Federal Rules of Civil Procedure 8........................................................................48

Federal Rules of Civil Procedure 9.........................................................4, 33, 38, 39

Federal Rules of Civil Procedure 12...............................................................*passim*

Federal Rules of Civil Procedure 60......................................................................30

Federal Rules of Evidence 201 ...............................................................................7

**REGULATIONS**

Regulation of the Eur. Parliament and of the Council 2007, 864/2007, c. II,
    art. 6 ..............................................................................................41, 42

DEFENDANT REDWOOD CAPITAL MANAGEMENT, LLC'S
MEM. OF P. & A. ISO MOT. TO DISMISS COMPLS. IN RELATED CASES

**OTHER AUTHORITIES**

Memorandum of Points and Authorities in Support of Motion to Dismiss
    Plaintiff Serena Fleites' Second Amended Complaint, *Fleites Dkt. 447-1* ....... 17

DEFENDANT REDWOOD CAPITAL MANAGEMENT, LLC'S
MEM. OF P. & A. ISO MOT. TO DISMISS COMPLS. IN RELATED CASES

## I.    **PRELIMINARY STATEMENT**

Plaintiffs A.K., W.P., L.S., W.L., C.S., S.O., J.C., K.A., N.L., T.C., X.N., N.Y., L.T., and J.L. (collectively, "New Plaintiffs") have filed individual Complaints (the "Related Cases") against Redwood Capital Management ("Redwood"), along with approximately 14 other defendants.  The Related Cases are near-copycats of the Second Amended Complaint ("SAC") filed by Serena Fleites in Case No. 2:21-cv-04920.  These Related Cases assert the same fatally flawed causes of action against Redwood as the *Fleites* SAC and fail for the same reasons.[1]

The Related Cases against Redwood should be dismissed because New Plaintiffs' Complaints fail to allege facts sufficient to confer Article III standing. This Court thus lacks subject matter jurisdiction.  In addition, the Related Cases should be dismissed under Rule 12(b)(6) because they fail to plausibly allege proximate causation and the requisite elements of any cause of action against Redwood.   The reasons for dismissal arise from a simple, common, and incontrovertible premise:  none of the New Plaintiffs allege any Redwood involvement in their alleged trafficking and sexual exploitation.  In fact, Redwood has *no* connection to any New Plaintiff or to any of New Plaintiffs' traffickers who, despicably, allegedly caused their child sexual abuse material ("CSAM") to be uploaded to the internet.  Instead, all the Complaints can (and do) allege is that Redwood functioned as a simple money lender.  It issued loans to MindGeek and collected fixed coupon payments at regular intervals.  That is not enough to inculpate Redwood for *proximately causing* any New Plaintiff's injuries.

Specifically, each of the New Plaintiffs' Complaints against Redwood should be dismissed for the following reasons.

***Standing***: This Court lacks subject matter jurisdiction over New Plaintiffs'

---

[1] The individual Complaints add one unique claim against all defendants, including Redwood, for intentional infliction of emotional distress.  That new claim also fails, as explained more fully herein.

claims against Redwood and these claims must be dismissed under Rule 12(b)(1). *See In re Kelly*, 841 F.2d 908, 917 (9th Cir. 1988) (recognizing that a district court even "must *sua sponte* dismiss actions whenever it appears that subject matter jurisdiction is lacking"). That is because New Plaintiffs do not (and cannot) allege that their injuries are "fairly traceable" to Redwood's conduct. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). Indeed, their Complaints do not (and cannot) allege any actual connection between Redwood, on the one hand, and any New Plaintiff or any third parties who solicited their videos or photos and uploaded them to the internet, on the other hand. Nor do the Complaints allege that Redwood played any role in maintaining, programming, operating, moderating, or controlling any websites where violative videos or photos were allegedly uploaded.

*TVPRA*: New Plaintiffs lack standing under the Trafficking Victims Protection Reauthorization Act ("TVPRA") to pursue their beneficiary liability claims against Redwood because they each fail to adequately allege that Redwood's alleged conduct proximately caused their injuries. Their Complaints further fail to sufficiently plead the elements of a beneficiary liability claim against Redwood. Insofar as MindGeek has shown that New Plaintiffs' allegations do not establish that it violated the TVPRA, Redwood cannot, as a matter of law, be liable as a beneficiary if there was no underlying violation from which to benefit. The Complaints' allegations in the Related Cases also do not establish that Redwood "participated in a venture" that harmed New Plaintiffs because they do not allege a direct association or continuous business relationship *between Redwood and any New Plaintiff's trafficker*, nor do the Complaints plausibly allege that Redwood "knew or should have known" of any *New Plaintiff's sex trafficking*.

Furthermore, Section 1595 also does not apply extraterritorially in civil litigation to reach injuries and underlying TVPRA violations that occurred outside of

DEFENDANT REDWOOD CAPITAL MANAGEMENT, LLC'S
MEM. OF P. & A. ISO MOT. TO DISMISS COMPLS. IN RELATED CASES

the United States.  The lack of extraterritorial reach damns the TVPRA claims of New Plaintiffs W.P., C.S., S.O., X.N., L.S., and N.Y., who allege injuries suffered abroad.

Finally, under the Ninth Circuit's July 31, 2024 opinion in *Ratha v. Rubicon Res., LLC*, 111 F.4th 946 (9th Cir. 2024), New Plaintiffs also cannot state a claim against Redwood for *conspiracy* to benefit from a TVPRA violation.  The TVPRA was first amended to permit conspiracy claims in 2023.  That amendment does not provide for retroactive application and, per *Ratha*, it "does not apply to pre-enactment conduct[.]" *Ratha*, 111 F.4th at 969.  New Plaintiffs do not allege (nor can they) that any of Redwood's alleged conduct took place after the 2023 amendment.  New Plaintiffs also fail to state a viable TVPRA civil conspiracy claim against Redwood because they do not allege that Redwood agreed to or intended to violate the TVPRA. Hence, their allegations under Sections 1595 and 1594 must be dismissed.

***California Unfair Competition/False Advertising***: Each New Plaintiff's hybrid claims for violation of California's consumer protection statutes, Cal. Bus. & Prof. Code §§ 17200 (the Unfair Competition Law ("UCL")) and 17500 (the False Advertising Law ("FAL")), fails on standing grounds because New Plaintiffs cannot show an economic injury caused by any alleged unfair business practice or false advertising on the part of Redwood.  Those New Plaintiffs who are not California residents—*i.e.*, A.K., L.T., J.C., K.A., N.L., T.C., W.P., C.S., S.O., X.N., L.S., and N.Y.—also cannot invoke the UCL and/or FAL because none of their alleged misconduct or injuries occurred in California.

New Plaintiffs' UCL/FAL claims also fail because they do not allege any facts indicating that Redwood engaged in *any* relevant "competition" or "advertising," let alone any such conduct that rises to the level of a violation of these statutes.  To the extent that New Plaintiffs' hybrid UCL/FAL claims are grounded in fraud, the generic and general allegations in the Complaints fall far short of satisfying the

applicable pleading standard of Rule 9(b).  Finally, New Plaintiffs' alternative state law claims, which they half-heartedly plead in footnotes, fail because they cannot show a deceptive or unfair practice on the part of Redwood that caused them harm.

*Intentional Infliction of Emotional Distress*: The intentional infliction of emotional distress claims asserted by New Plaintiffs K.A., L.T., N.L., N.Y., X.N., C.S., S.O., W.L., L.S., A.K., and J.L are barred by the applicable statute of limitations. Additionally, these claims fail for all New Plaintiffs because they do not plead and cannot show any "extreme and outrageous conduct" *by Redwood*, let alone "conduct so extreme and outrageous as to go beyond all possible bounds of decency."  Nor can New Plaintiffs show that Redwood's conduct was directed towards them, or that their severe emotional distress was actually and proximately caused by Redwood.

*Civil Conspiracy*: New Plaintiffs' civil conspiracy claims are deficient because they do not plausibly allege that Redwood ever agreed to engage in illegal conduct. New Plaintiffs, at most, attempt to allege constructive knowledge of episodic instances of moderation delay or failure.  This does not state a claim for civil conspiracy under California law.

For these reasons, Redwood should be dismissed from the Related Cases.

## II.   STATEMENT OF FACTS

### A.   Relevant Procedural History

#### 1.   The *Fleites* Lawsuit

On June 17, 2021, plaintiffs Serena Fleites and Jane Does No. 1 through 33 filed a complaint which asserted 13 causes of action against multiple defendants. Redwood, however, was not named as a defendant in the initial Fleites Complaint. On February 10, 2022, the Court granted the defendants' motion to sever plaintiffs. *Fleites* Dkt. 119.  The Court therefore ordered that "Plaintiff Serena Fleites will continue as the only named Plaintiff in this action," and directed her to file an Amended Complaint by March 14, 2022. *Id.* at 19.  The Court dismissed plaintiffs

Jane Doe No. 1 through No. 33 without prejudice, allowing them to "re-file their actions in any court of competent jurisdiction." *Id.*

On April 14, 2022, Fleites filed an Amended Complaint that also did not name Redwood as a defendant. *Fleites* Dkt. 128. On May 23, 2022, every defendant named in the Amended Complaint filed a motion to dismiss. *See Fleites* Dkts. 135-40.

On July 29, 2022, Judge Carney entered two companion orders in the *Fleites* case. First, he entered an order that granted in part Visa's Motion to Dismiss and, *inter alia*, demanded a more definite statement with respect to plaintiff's civil conspiracy claim. *Fleites* Dkt. 166. Notably, in that Order, Judge Carney found that Fleites failed to state a claim against Visa for beneficiary liability under section 1591(a)(2) of the TVPRA:

> Visa, however, is not alleged to have had any direct interaction with Plaintiff, her direct traffickers, or her videos, and therefore cannot bear beneficiary liability for knowingly *participating* in the sex trafficking venture that harmed Plaintiff. Visa—having not touched Plaintiff's videos, unlike MindGeek—did not form any sort of continuous relationship or tacit agreement with Plaintiff's primary traffickers, her ex-boyfriend and the unnamed older man. And section 1591(a)(2) is an awkward fit with respect to Visa in another respect: having not had any interaction with Plaintiff and her videos, how can it be said that Visa knew or should have known that Plaintiff was a victim of sex trafficking? Unlike the allegations concerning MindGeek, the allegations concerning Visa in the FAC do not reflect that Visa had any knowledge— constructive or otherwise—of Plaintiff, her videos, or her age in the videos.

*Id.* at 21-22. Judge Carney also found that Fleites "failed to plead an FAL claim against Visa" and the Court could not "glean a theory of liability for Plaintiff's FAL claim from the FAC." *Id.* at 29.

In the second order issued by Judge Carney on July 29, 2022, he directed MindGeek, Bergmair, Tassillo, Antoon, and Urman (collectively referred to as the "MindGeek Defendants") to submit to jurisdictional discovery. *Fleites* Dkt. 167. Per the docket, jurisdictional discovery concluded on June 23, 2023. *See Fleites* Dkt. 355.

Nearly a year later, on May 23, 2024, Fleites filed a Motion to Amend the Caption of her pleading and attached a Second Amended Complaint. *Fleites* Dkts. 384-85. The SAC, for the first time, nearly three years after this case began, named Redwood as a defendant. On August 30, 2024, all Defendants moved to dismiss the *Fleites* lawsuit. *See Fleites* Dkts. 433, 436, 440, 442, and 447.

## 2.    The Related Cases

Between June 7, 2024, and August 20, 2024, the same counsel representing Fleites filed the Related Cases against the same Defendants in this same Court. *See Fleites* Dkt. 472-1.

Aside from the specific allegations relating to each Plaintiff's trafficking, each of the Related Cases are near copycats of each other and are substantially similar to the SAC filed by plaintiff Serena Fleites against the same Defendants. *See Fleites* Dkt. 387-1 (the "SAC"). In addition to the few new Plaintiff-specific allegations, the New Plaintiffs' Complaints also plead a unique fifth claim against all Defendants, including Redwood, for intentional infliction of emotional distress ("IIED"). Pursuant to a Joint Stipulation to Request Limited Coordination for Purposes of Responding to Complaints in Related Cases (hereinafter, "Joint Stipulation") (*see Fleites* Dkt. 472), the parties agreed to address the grounds for dismissal on all legal issues implicated by each of the Related Cases in one omnibus motion to dismiss per Defendant.

## B.    <u>Documents Incorporated by Reference in the Related Cases</u>

The Complaints in the Related Cases directly quote from, reference, and/or purport to characterize multiple extrinsic documents without attaching them. *See, e.g.*, K.A. Compl., W.L. Compl., and W.P. Compl. ¶¶ 7, 247, 252-53, 258-62, 266.[2] The incorporation by reference doctrine permits the Court, on a Rule 12(b)(6) motion,

---

[2] When referring collectively to the Complaints in the Related Cases throughout this Motion, Redwood cites to representative Complaints from each category of New Plaintiff (*see infra* Section II.C) to conserve space.

to consider documents incorporated by reference into, but not physically attached to a complaint. *See, e.g.*, *Grant v. Aurora Loan Servs., Inc.*, 736 F. Supp. 2d 1257, 1264 n.37 (C.D. Cal. 2010). In addition, courts "may look beyond the complaint and consider extrinsic evidence" when considering Rule 12(b)(1) motions. *See Lacano Invs., LLC v. Balash*, 765 F.3d 1068, 1071 (9th Cir. 2014) (citation omitted).

Redwood attached certain of the documents referenced by New Plaintiffs (including the 2013 and 2018 Financing Agreements between, *inter alios*, MindGeek and Redwood, *see Fleites* Dkts. 450-2, 450-3; the ███████████████████████ █████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████, *see id.* Dkt. 450-4; and a copy of the independent audit report of Manwin Holding S.à.r.l. ("Manwin") prepared by ██████████████████████ ██████████████████████, *see id.* Dkt. 450-1) to its Motion to Dismiss in *Fleites*, which this Court may consider pursuant to the Joint Stipulation (*see* Dkt. 472), and independent thereof, may judicially notice.[3] For purposes of judicial economy, and consistent with the Joint Stipulation, Redwood does not reattach those documents to this Motion, but identifies their corresponding *Fleites* docket numbers. These documents, incorporated by reference into *Fleites* and the Related Cases include:

- ***The financing agreements between Redwood (and other lenders) and MindGeek***, which are no more than standard loan agreements, and, as is customary in most financing agreements, imposed a requirement ████ ██████████████████████. *See* 2013 Financing Agreement (*Fleites* Dkt. 450-2) ████████; 2018 Financing Agreement (*Fleites* Dkt. 450-3) ████████ Indeed,



---

[3] This Court may *sua sponte* judicially notice "a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(a), (b). This includes documents filed in other proceedings (*United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980) ("a court may take judicial notice of its own records in other cases")), including those filed under seal (*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006)).

DEFENDANT REDWOOD CAPITAL MANAGEMENT, LLC'S
MEM. OF P. & A. ISO MOT. TO DISMISS COMPLS. IN RELATED CASES

the financing agreements contain multiple provisions requiring MindGeek's



- ***The independent audit report of MindGeek prepared by*** ████████

████████████, which shows both (1) ████████

████████████████████

████████████████████. *See*

*Fleites* Dkt. 450-1.

C.   **The New Plaintiffs**

For purposes of the legal issues presented in this Motion, the New Plaintiffs can be categorized as follows: (1) New Plaintiffs who were residents of California at all relevant times (the "California Plaintiffs"); (2) New Plaintiffs who were not residents of California, but resided in the United States at all relevant times (the "Non-California Plaintiffs"); and (3) New Plaintiffs who were not residents of the United States at the relevant time (the "Non-U.S. Plaintiffs").

1.   **California Plaintiffs**

New Plaintiffs W.L. and J.L. were both residents of California at all relevant times.  *See* W.L. Compl. ¶ 10; and J.L. Compl. ¶ 10.

According to the allegations, in 2013, when W.L. was 17 years old, her abuser took a CSAM video of her without her knowledge or consent.  *See* W.L. Compl. ¶¶ 311, 313.  W.L. discovered the CSAM video on Pornhub in April 2020.  *Id.* ¶ 311.  Upon discovery, W.L. confronted her abuser and demanded the video be removed; "within minutes" of W.L. contacting her abuser, the initial video of W.L. was removed from Pornhub's site "at the request of the uploader." *Id.* ¶ 313.  By the time W.L. discovered the video, it had already "been reuploaded countless additional times to Pornhub and other pornography sites by different uploaders who had downloaded the video." *Id.* ¶ 314.

According to the allegations, in 2017, when J.L. was 17 years old, she was solicited and coerced by GirlsDoPorn after responding to a Craigslist advertisement soliciting models for clothed shoots.  J.L. Compl. ¶¶ 309-10.  J.L. was transported to a hotel room, drugged, raped, and filmed.  Two years later, J.L. learned that her videos had been posted on GirlsDoPorn's newly launched website when a link to the video began circulating on her college campus and among her high school acquaintances.  *Id.* ¶ 315.  J.L. alleges that she emailed GirlsDoPorn begging for her video to be taken down, but does not allege that she contacted MindGeek asking for her video to be taken down.  *See id.* ¶ 316.

Redwood is not alleged to have had any contact with the California Plaintiffs or their abusers.  Nor is Redwood alleged to have known of this alleged abuse.

### 2.    Non-California Plaintiffs

New Plaintiffs A.K., L.T., J.C., K.A., N.L., and T.C. allege that they were residents of states *other than* California at all relevant times.  *See* A.K. Compl. ¶ 10 (identifying as a Florida resident); L.T. Compl. ¶ 10 (identifying as a New Hampshire resident); J.C. Compl. ¶ 10 (identifying as a New York resident); K.A. Compl. ¶ 10

(identifying as a Missouri resident); N.L. Compl. ¶ 10 (identifying as a Colorado resident); and T.C. Compl. ¶ 10 (identifying as a Rhode Island resident).

The Non-California Plaintiffs were allegedly trafficked between 2014 and 2018.[4]  They were allegedly coerced to engage in sex acts by an ex-boyfriend (L.T. Compl. ¶ 311, J.C. Compl. ¶ 311, K.A. Compl. ¶ 311, N.L. Compl. ¶ 311, T.C. Compl. ¶ 311) or boys from a neighboring high school (A.K. Compl. ¶ 311), and their CSAM was uploaded and distributed on Pornhub.  Some Non-California Plaintiffs allege they contacted law enforcement to secure removal of the videos.  *See* A.K. Compl., ¶¶ 315-16; L.T. Compl. ¶¶ 316-18, J.C. Compl. ¶ 314, and T.C. Compl. ¶ 315.  Others allege they asked Pornhub for their CSAM to be removed (*see* N.L. Compl. ¶ 316), while others allege they demanded their trafficker remove the CSAM (*see* K.A. Compl.  ¶ 315).  All Non-California Plaintiffs allege their images and/or videos were re-uploaded to other tubesites or pornography sites.  *See* A.K. Compl.  ¶ 317, L.T. Compl. ¶ 318, J.C. Compl. ¶ 315, K.A. Compl. ¶ 318, N.L. Compl. ¶ 318, and T.C. Compl. ¶ 318.  Finally, the Non-California Plaintiffs allege they have experienced damages due to "Pornhub's illegal and widespread dissemination of pornographic material and CSAM." T.C. Compl. ¶ 317.  *See also* A.K. Compl. ¶ 318, L.T. Compl. ¶ 319, J.C. Compl. ¶ 317, K.A. Compl. ¶ 316, and N.L. Compl. ¶¶ 317-19.

Redwood is not alleged to have known of Non-California Plaintiffs' abuse, or to have had any contact with any of the Non-California Plaintiffs or their abusers.

### 3.    Non-U.S. Plaintiffs

New Plaintiffs W.P., C.S., S.O., X.N., L.S., and N.Y. were all residents of countries outside of the United States at all relevant times.  *See* W.P. Compl. ¶ 10 (alleging W.P. was a resident of Thailand at all relevant times); C.S. Compl. ¶ 10 (same); S.O. Compl. ¶ 10 (same); X.N. Compl. ¶ 10 (alleging X.N. was a resident of

---

[4] New Plaintiffs J.C., K.A., and T.C. do not allege the year in which their CSAM was filmed and/or photographed.

Colombia at all relevant times); L.S. Compl. ¶ 10 (same); and N.Y. Compl. ¶ 10 (alleging N.Y. was a resident of the United Kingdom at all relevant times).

These Non-U.S. Plaintiffs were allegedly trafficked prior to 2018.[5] Non-U.S. Plaintiffs allege they were coerced to engage in sex acts by now-convicted human traffickers (W.P. Compl. ¶ 311, C.S. Compl. ¶ 311, X.N. Compl. ¶ 311, L.S. Compl. ¶ 311, N.Y. Compl. ¶ 311) or unspecified sex trafficking enterprises (S.O. Compl. ¶ 311), and that their CSAM was uploaded and distributed on Pornhub. Some Non-U.S. Plaintiffs allege they contacted Pornhub to demand removal of the CSAM (*see* C.S. Compl. ¶ 312, and N.Y. Compl. ¶ 318), while others turned to nonprofit organizations or law enforcement to secure removal (*see* X.N. Compl. ¶ 315, L.S. Compl. ¶ 316, N.Y. Compl. ¶ 316, and S.O. Compl. ¶ 315). Others do not allege that they attempted to secure the removal of the CSAM (*see* W.P. Compl. ¶¶ 311-17). All Non-U.S. Plaintiffs allege that their images and/or videos were ultimately re-uploaded to other pornography sites. *See* W.P. Compl. ¶ 314, N.Y. Compl. ¶ 322, C.S. Compl. ¶ 315, S.O. Compl. ¶ 316, X.N. Compl. ¶ 316, and L.S. Compl. ¶ 317. The Non-U.S. Plaintiffs allege damages caused by the "illegal dissemination of [their] CSAM and [associated] harassment." N.Y. Compl. ¶ 327. *See also* W.P. Compl. ¶ 315, C.S. Compl. ¶ 316, S.O. Compl. ¶ 317, X.N. Compl. ¶ 318, and L.S. Compl. ¶ 319.

Redwood is not alleged to have had contact with any Non-U.S. Plaintiffs or their abusers. Nor is Redwood alleged to have known of this abuse.

## D.    Redwood

All New Plaintiffs name Redwood among many other defendants,[6] but none allege any contact or connection between Redwood and New Plaintiffs. Nor do any

---

[5] Plaintiffs W.P., C.S., and N.Y. do not allege the year in which their CSAM was filmed and/or photographed.
[6] While most New Plaintiffs name the same group of defendants, Plaintiff J.L. names approximately 20 defendants.

DEFENDANT REDWOOD CAPITAL MANAGEMENT, LLC'S
MEM. OF P. & A. ISO MOT. TO DISMISS COMPLS. IN RELATED CASES

New Plaintiffs allege any connection or contact between Redwood and any of the individuals who trafficked New Plaintiffs and/or the individuals who allegedly uploaded any of New Plaintiffs' CSAM images or videos without their consent.

The allegations in the Related Cases against Redwood are based only on Redwood's alleged "three separate" financing agreements with MindGeek. *See, e.g.*, K.A. Compl., W.L. Compl., and W.P. Compl. ¶¶ 7, 247, 252. Redwood was one of *many* lenders who participated in routine financing agreements with MindGeek between 2011 and 2021. It has been publicly reported that MindGeek had more than 125 lenders during this time (*see* Request for Judicial Notice ("RJN"), filed herewith, at Exs. A, B), and the financing agreements produced in *Fleites* show lending commitments from ███████████████, *see Fleites* Dkt. 450-2 (2013 Financing Agreement) (███████████████████████████████ ████); *id.* 450-3 (2018 Financing Agreement) (███████████████████████████ ███████████████████). New Plaintiffs, however, do not—and cannot—allege that Redwood has any current financing agreements or any current relationship with MindGeek.

### E.    New Plaintiffs' Allegations Regarding Redwood

In total, the Complaints in the Related Cases plead five claims against Redwood: (i) violation of 18 U.S.C. §§ 1591, 1595; (ii) violation of 18 U.S.C. §§ 1594(c), 1595; (iii) violation of Cal. Bus. & Prof. Code §§ 17200 and 17500; (iv) IIED; and (v) civil conspiracy. New Plaintiffs' claims against Redwood are premised on allegations that can be broken down into four categories: (i) Redwood's loans to MindGeek; (ii) due diligence performed by Redwood before agreeing to loan money to MindGeek; (iii) MindGeek's relationship to Redwood due to the loan agreements; and (iv) Redwood's alleged failure to stop tortious conduct by MindGeek.

### 1.    Key Allegations Regarding Redwood's Loans to MindGeek

- 12 -

At their core, New Plaintiffs allege that because MindGeek permitted underage videos and/or photographs of them to be displayed on its websites, Redwood, as a lender, should be held liable for financing an "illicit" business. *See, e.g.,* K.A. Compl. ¶¶ 247, 311-18; W.L. Compl. ¶¶ 247, 311-21; and W.P. Compl. ¶¶ 247, 311-17. New Plaintiffs allege that Redwood financed a trafficking venture and/or participated in the alleged MindGeek sex trafficking venture by virtue of its participation in loan agreements. *See* K.A Compl. ¶¶ 7, 347, 351, 454(r); W.L. Compl. ¶¶ 7, 349, 353, 457(r); and W.P. Compl. ¶¶ 7, 349, 353, 453(r). Yet, their Complaints do not allege any specific facts showing Redwood knew about any actions involving New Plaintiffs.

New Plaintiffs also allege that Redwood (and Colbeck, another lender) provided and arranged for loans that "the Individual Defendants needed to acquire and build the MindGeek Empire," as MindGeek did not have access to any "alternative [funding sources][,]" (*see, e.g.,* K.A. Compl. ¶¶ 7, 351; W.L. Compl., and W.P. Compl. ¶¶ 7, 353), but their Complaints fail to allege that any of the myriad other lenders to MindGeek could not or would not have, provided the same financing as Redwood, or that any other lender would not have done so. New Plaintiffs further allege that Redwood "worked closely with the MindGeek Defendants and advised and assisted them in implementing the plan to dominate online porn via the unrestricted content model." *Id*. ¶ 349. Yet, their Complaints do not provide any non-conclusory allegations as to Redwood's involvement in this purported "plan," or of any specific aspect of the "plan" for which Redwood was allegedly involved in advising. New Plaintiffs do not allege that Redwood had any role in moderation, selection of tags for videos, or any operational decisions for which New Plaintiffs seek to hold MindGeek liable. Nor do they allege that Redwood or any other lender did anything other than perform ordinary lending functions or that they had any operational participation whatsoever, much less control. To the contrary, New

- 13 -

Plaintiffs allege that Redwood conducted due diligence before investing in MindGeek (although they mischaracterize the results of the alleged diligence and impute knowledge to Redwood as a result of those mischaracterizations), provided financing to MindGeek, and "received detailed reports" as a result of its financing. *See, e.g.,* K.A. Compl., W.L. Compl., and W.P. Compl. ¶¶ 247-271.

### 2. The Pre-Financing Diligence Allegations

New Plaintiffs' Complaints also contain numerous allegations regarding and references to third party due diligence reports allegedly considered by Redwood before it participated in financing to MindGeek (*see, e.g.*, K.A. Compl., W.L. Compl., and W.P. Compl. ¶¶ 247, 259-65). Yet, these Complaints omit and fail to accurately describe those referenced reports. The independent audit reports that Redwood received from reputable third parties, including ███████████, which is quoted in each of the New Plaintiffs' Complaints at paragraph 261,[7,8] stated that ███████████████████████████████████████████████████████ ███████████████████. *See Fleites* Dkt. 450-1. Indeed, the ████████████ ████ specifically reports that:

███████████████████████████████████████████████

███████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████

---

[7] The J.L. Complaint contains this quotation at paragraph 259.

[8] This quotation is from a confidential document which was produced pursuant to the Stipulated Protective Order entered in *Fleites*. New Plaintiffs' quotation of this document in a public filing raises serious concerns about their counsel's adherence to the terms of that Stipulated Protective Order in *Fleites*.



### 3.    The Effective Control Allegations

New Plaintiffs attempt to allege that lenders to MindGeek, including Redwood, had the ability to and did control MindGeek's management and operations as a result of their providing loans to MindGeek.  *See, e.g.*, K.A. Compl., W.L. Compl., and W.P. Compl.  ¶¶ 268, 270.  But their Complaints include no supportive non-conclusory allegations.  New Plaintiffs' Complaints also contain no non-conclusory allegations that Redwood, or any other lender, had any involvement in the day-to-day operations and/or control of MindGeek, or did anything more than loan money pursuant to standard loan agreements.  And New Plaintiffs do not, because they cannot, point to a specific provision in any financing agreement that granted Redwood or any other lenders rights to control MindGeek's day-to-day operations.  There are also no allegations that Redwood could or did exercise any control over MindGeek's moderation, editorial decisions or any other aspect of the

DEFENDANT REDWOOD CAPITAL MANAGEMENT, LLC'S
MEM. OF P. & A. ISO MOT. TO DISMISS COMPLS. IN RELATED CASES

running of the websites.  Nor are there any allegations that any of Redwood's actions (purportedly reflecting control) had any impact on the actual Plaintiffs themselves.[9]

### 4.    The Failure to Act Allegations

New Plaintiffs' Complaints also suggest without any legal or factual basis that lenders have duties extending beyond contracts.  New Plaintiffs allege that Redwood (and Colbeck) should be liable for not acting to stop MindGeek's allegedly illegal activities.  In support of this theory, New Plaintiffs only allege, in a conclusory fashion, that MindGeek's lenders knew that MindGeek intentionally operated without meaningful moderation, and that the lenders knew that "more mainstream websites and social media companies . . . deployed substantial investment and effort into moderating CSAM and other illegal content as such content is ubiquitous in an unrestricted online environment."  *See, e.g.,* K.A. Compl., W.L. Compl., and W.P. Compl. ¶¶ 263, 265-66, 269, 271.  New Plaintiffs' Complaints fail to allege any specific facts to support their conclusory allegations that Redwood actually knew or should have known of alleged illegal conduct by MindGeek and ignored it.

New Plaintiffs also allege that Redwood and other lenders did nothing to address trafficking issues or materially alter practices at MindGeek in response to "public reports of CSAM and other non-consensual content on MindGeek's websites throughout this period."  *Id*. ¶ 271.  But their Complaints do not contain any specificity regarding the existence or content of the "public reports" of which Redwood was allegedly aware, how Redwood allegedly became aware of them, or any support for the assertion that Redwood failed to "take any steps to stop" CSAM or other non-consensual content on MindGeek's websites.  *See id.*

[9] New Plaintiffs' Complaints also allege in conclusory fashion that the loans had "exorbitant effective interest rates" (*see, e.g.*, K.A. Compl., W.L. Compl., and W.P. Compl. ¶ 267) and suggest that these rates proved some form of control (*id*. ¶¶ 267-68).  A loan interest rate merely sets the periodic returns owed to the lender and does not give rise to such lender having control over a borrower.

DEFENDANT REDWOOD CAPITAL MANAGEMENT, LLC'S
MEM. OF P. & A. ISO MOT. TO DISMISS COMPLS. IN RELATED CASES

1    Additionally, the New Complaints conspicuously omit that the ███████

2    ████████████████████████, sent a ████████████████████ a mere five

3    business days after the publication of a December 2020 article alleging non-

4    consensual material on MindGeek's websites.  The ███████████████████

5    █████████████████████████████████████████████████████

6    *inter alia*, ███████████████████████████████████████████

7    █████████████████████████████████████████████████████

8    ██████████████████████████████. *See Fleites* Dkt. 450-4.

9    **III.    NEW PLAINTIFFS' COMPLAINTS SHOULD BE DISMISSED FOR**

10         **LACK OF SUBJECT MATTER JURISDICTION**

11    Redwood fully adopts the arguments made in its Memorandum of Points and

12    Authorities in Support of Motion to Dismiss Plaintiff Serena Fleites' Second

13    Amended Complaint ("Motion to Dismiss Fleites' SAC"), *Fleites* Dkt. 447-1, which

14    are equally applicable to New Plaintiffs.  Specifically, for the reasons set forth in

15    Section III of Redwood's Motion to Dismiss Fleites' SAC, the Related Cases should

16    be dismissed under Rule 12(b)(1) because none of New Plaintiffs' Complaints

17    establish that they have Article III standing to sue Redwood.  *See* Dkt. 447-1 at 22-

18    26.  Like the Fleites FAC, the Related Cases contain no allegations establishing any

19    connection whatsoever between Redwood and any New Plaintiff, or even between

20    Redwood and the individuals who allegedly caused New Plaintiffs' sexually explicit

21    videos and/or images to be uploaded to the internet.  *See id.* at 24-25.  And, like the

22    Fleites FAC, New Plaintiffs' conclusory allegations that Redwood had effective

23    control of MindGeek by virtue of its loan fall well short of their pleading burden to

24    establish the requisite causal element for Article III standing.  *See id.* at 25-26.  As

25    New Plaintiffs do not "fairly trace" any of their alleged injuries to Redwood, their

26    claims against Redwood should be dismissed for insufficient standing.

27    **IV.    NEW PLAINTIFFS' COMPLAINTS SHOULD BE DISMISSED**

28

- 17 -

### A.    <u>Legal Standard</u>

To survive Rule 12(b)(6) dismissal for failure to state a claim, a complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  However, courts are not bound to accept the following as true: conclusory statements; "threadbare recitals of the elements of a cause of action;" or "a legal conclusion couched as a factual allegation."  *Id.*  "[N]or does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement."  *Id.*  (internal quotation marks omitted).  When resolving a motion under Rule 12(b)(6), courts may also consider extrinsic "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached" to the pleading, without converting a Rule 12(b)(6) motion into one for summary judgment. *See Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012).

### B.    <u>New Plaintiffs have not Stated a TVPRA Claim Against Redwood.</u>

New Plaintiffs attempt to hold Redwood vicariously liable under the TVPRA for alleged conduct by MindGeek.  If the TVPRA claims against MindGeek fail, so do the vicarious claims against Redwood.  But even if the claims against MindGeek can go forward, both the beneficiary liability and conspiracy TVPRA claims against Redwood still fail for multiple reasons.

*First*, similar to Article III, New Plaintiffs also lack statutory standing to pursue their TVPRA claims against Redwood because they all fail to adequately allege that their injuries were proximately caused by Redwood's alleged conduct.

*Second*, New Plaintiffs' Complaints fail to sufficiently plead each of the elements of a beneficiary liability claim.[10]  This Court previously held in *Fleites* that

---

[10] If the Court finds (1) New Plaintiffs failed to establish an underlying violation of the TVPRA, or (2) MindGeek did not violate the TVPRA, Redwood cannot be liable under a beneficiary theory of liability.  *See* 18 U.S.C. § 1595(a) ("An individual *who is a victim of a violation of this chapter* may bring a civil action against . . . whoever knowingly benefits . . . from *participation in a venture which* that person knew or

DEFENDANT REDWOOD CAPITAL MANAGEMENT, LLC'S
MEM. OF P. & A. ISO MOT. TO DISMISS COMPLS. IN RELATED CASES

the plaintiff there failed to allege § 1595 beneficiary liability against Visa, and this ruling applies with even greater force to Redwood in the Related Cases and should not be disturbed.  Specifically, the Complaints here do not establish that Redwood "participated in a venture" that harmed any New Plaintiff because they do not allege a direct association or continuous business relationship *between Redwood and any New Plaintiff's trafficker*.  Nor do New Plaintiffs plausibly allege that Redwood "knew or should have known" of *any New Plaintiff's sex trafficking*.

  *Third*, New Plaintiffs' TVPRA conspiracy claims are not legally cognizable because the challenged conduct preceded the TVPRA amendment providing for civil conspiracy liability, and the Ninth Circuit confirmed this amendment is not retroactive.  *Ratha*, 111 F.4th at 967-69.  New Plaintiffs also cannot show that Redwood "conspire[d] to benefit" from MindGeek's alleged sex trafficking venture because they do not allege that Redwood agreed or intended to violate the TVPRA.

### 1. <u>Relevant Aspects of the TVPRA</u>

  The TVPRA provides a civil right of action based upon violations of the criminal offenses set forth therein, including sex trafficking.  *See* 18 U.S.C. § 1595. Specifically, victims may assert a civil cause of action against those who: (1) directly trafficked the victim, and (2) did not "directly traffic the victim, but benefitted from what the facilitator should have known was a trafficking venture."  *J.C. v. Choice Hotels Int'l, Inc*., No. 20-CV-00155-WHO, 2020 WL 6318707, at *3 (N.D. Cal. Oct. 28, 2020) (citation omitted).  In 2008, Congress amended the TVPRA to add § 1596, which authorizes extraterritorial application for specific *criminal* sections of the

---

should have known *has engaged in an act in violation of this chapter*") (emphases added).  *See also J.B. v. G6 Hosp., LLC,* No. 19-cv-07848-HSG, 2021 WL 4079207, at *7 (N.D. Cal. Sept. 8, 2021), *aff'd sub nom. J.B. v. Craigslist, Inc.*, No. 22-15290, 2023 WL 3220913 (9th Cir. May 3, 2023) ("The Court . . . finds that the cited language does not suggest that Congress intended to make [defendants] civilly liable [under Section 1595] when their conduct does not violate Section 1591").

DEFENDANT REDWOOD CAPITAL MANAGEMENT, LLC'S
MEM. OF P. & A. ISO MOT. TO DISMISS COMPLS. IN RELATED CASES

TVPRA.[11]  *See* 18 U.S.C. § 1596(a); Pub. L. No. 110-457, § 223(a), 122 Stat. 5044 (2008).  No such amendment was ever enacted to permit extraterritorial application for civil liability.  In January 2023, the TVPRA was amended to include liability for anyone who "attempts or conspires to benefit" from a TVPRA violation, but that amendment does not apply retroactively.  *See* Abolish Trafficking Reauthorization Act of 2022, Pub. L. No. 117-347, § 102, 136 Stat., 6199 (2023) (the "ATRA"); *Ratha*, 111 F.4th at 969 ("ATRA does not apply to pre-enactment conduct.").

Section 230, 47 U.S.C. § 230, of the Communications Decency Act ("CDA") affords Interactive Computer Service Providers ("ICSPs") broad immunity from liability for content posted to their websites by third parties.  *Carafano v. Metrosplash.com, Inc*., 339 F.3d 1119, 1123 (9th Cir. 2003).  The statute immunizes ICSPs when plaintiffs seek to treat them as the publisher or speaker of any information provided by another information content provider. 47 U.S.C. § 230(c)(1). The Allow States and Victims to Fight Online Sex Trafficking Act of 2017 ("FOSTA") provides an exception that subjects ICSPs facilitating prostitution to liability for third-party content they publish that violates the TVPRA, denying them the CDA's broad immunity.  Under the Ninth Circuit's decision in *Does 1-6 v. Reddit, Inc*., 51 F.4th 1137 (9th Cir. 2022), however, allegations of *association* with sex traffickers do not support a TVPRA claim.  *Id.* at 1145.  In other words, for the FOSTA exception to the CDA's broad immunity to apply, New Plaintiffs would have to establish Redwood's knowing "participation" in the form of assistance, support, or facilitation.  *C.f. Woodhull Freedom Found. v. United States*, 72 F.4th 1286, 1304

---

[11] This provision provides: "In addition to any domestic or extra-territorial jurisdiction otherwise provided by law, the courts of the United States have extra-territorial jurisdiction over any offense (or any attempt or conspiracy to commit an offense) under section 1581, 1583, 1584, 1589, 1590, or 1591 if—(1) an alleged offender is a national of the United States or an alien lawfully admitted for permanent residence . . .; or (2) an alleged offender is present in the United States, irrespective of the nationality of the alleged offender." 18 U.S.C. § 1596(a).

DEFENDANT REDWOOD CAPITAL MANAGEMENT, LLC'S
MEM. OF P. & A. ISO MOT. TO DISMISS COMPLS. IN RELATED CASES

& n.6 (D.C. Cir. 2023) (indicating that despite initial inconsistent rulings, including *Doe v. Mindgeek USA Inc.*, 558 F. Supp. 3d 828, 836 (C.D. Cal. Sept. 3, 2021), post-*Reddit*, courts are clear that both Section 1591 and "Section 1595 require[] an actual knowledge *mens rea* for participation in a venture"). They have not done so.

## 2.    New Plaintiffs Fail to Establish Proximate Cause.

New Plaintiffs' Complaints fail to establish proximate cause in asserting TVPRA claims against Redwood. As the U.S. Supreme Court has explained, a federal cause of action is presumptively limited to plaintiffs whose injuries are proximately caused by the defendant's conduct. *Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 572 U.S. 118, 132 (2014). The Supreme Court has applied that principle to read numerous facially unqualified causes of action to incorporate a proximate-cause requirement. *E.g.*, *id.* (Lanham Act); *Bank of Am. Corp. v. City of Miami*, 581 U.S. 189, 201 (2017) (Fair Housing Act); *Holmes v. SIPC*, 503 U.S. 258, 265-66 (1992) (RICO); *Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 529-30, 535-36 (1983) (Clayton Act). As in these other statutes, nothing in the TVPRA rebuts the presumption that the federal cause of action is limited to those whose injuries are proximately caused by the defendants' conduct. The Supreme Court has also made clear that proximate cause requires "some direct relation between the injury asserted and the injurious conduct alleged," which generally bars damages claims that go beyond the "first step" in the causal chain. *Bank of Am.*, 581 U.S. at 202-03 (quoting *Holmes*, 503 U.S. at 268). The Ninth Circuit recently reaffirmed these principles, holding that the plaintiff did not sufficiently plead proximate cause for its reduced tax revenue claim against Wells Fargo because its theory of harm went beyond the first step of the causal chain. *City of Oakland v. Wells Fargo & Co.*, 14 F.4th 1030, 1037 (2021) (en banc). The court described "Oakland's long and winding causal chain" beginning with the allegation that "Wells Fargo initiated predatory loans to minority borrowers. Then, those

borrowers were more likely to default on the loans." *Id.* at 1039.  But that default required the borrower to "quit making loan payments or violate some other term of the loan," which could be attributable to a number of events or circumstances.  *Id.* at 1039-40.  Then, there must have been an act of foreclosure.  *Id.* at 1040.  But the court noted further that "whether to initiate foreclosure, renegotiate the loan, sell the loan, or even let it ride, is a decision that extends beyond Wells Fargo.  (And even if Wells Fargo retained the loan, the same foreclosure decisions would inure.)."  *Id.*

Ultimately, Oakland's theory of liability rested "not just on separate actions, but separate actions carried out by separate parties, in some cases third, fourth, or fifth parties."  *Id.; see also Lexmark Int'l,* 572 U.S. at 132-33 (based on a "well established" principle of common law, which favors a proximate causal connection in cases of loss, "the reality [is] that 'the judicial remedy cannot encompass every conceivable harm that can be traced to alleged wrongdoing' . . . . Put differently, the proximate-cause requirement generally bars suits for alleged harm that is 'too remote' from the defendant's unlawful conduct.").

That is precisely the case in the Related Cases.  According to the Complaints in each of these cases, Redwood participated in three financing agreements with MindGeek.  *See, e.g.*, K.A. Compl., W.L. Compl., and W.P. Compl. ¶ 247.  New Plaintiffs do not allege, because they cannot, that Redwood entered into any agreements with any New Plaintiff, knew of any New Plaintiff or her purported traffickers, or knew of any New Plaintiff and her alleged injuries when it entered into or negotiated any of its financing agreements.  Redwood's ordinary course lending to borrowers who are not New Plaintiffs or their traffickers could not have proximately caused harm to any New Plaintiff.  Because New Plaintiffs do not sufficiently allege that their injuries "flow[ed] directly" from Redwood's participation in financing agreements—or even that New Plaintiffs' injuries were foreseeable based on Redwood's participation in financing agreements—New

- 22 -

Plaintiffs' dependent TVPRA claims fail for lack of proximate cause. *Lexmark Int'l,* 572 U.S. at 133.

New Plaintiffs may argue, citing Judge Carney's decision partially declining to dismiss the TVPRA claims against Visa in *Fleites*, that their Complaints sufficiently allege proximate cause because they allege that the loans facilitated MindGeek's operations and thus helped *MindGeek* benefit financially from sex trafficking violations (*see, e.g.*, K.A. Compl., W.L. Compl., and W.P. Compl. ¶ 268). Even if Judge Carney's decision in *Fleites* against Visa were correct, the allegations against Redwood are far more attenuated than Fleites' allegations against Visa.

Unlike Visa, Redwood's only relationship with MindGeek was a lender-borrower relationship.    Redwood never had its name appear anywhere on MindGeek's sites, did not enable any payments to MindGeek, on its sites or otherwise, and has no current connection to MindGeek or its sites, having completely divested itself of any connection to MindGeek in 2021.  Moreover, the allegations against Visa that Judge Carney previously found sufficient for standing in *Fleites*—*i.e.*, "that advertisements were placed alongside her videos and that Visa continues to process advertisement payments for MindGeek's porn sites"—are not pleaded against Redwood, nor could they ever be.  *See Fleites,* 617 F. Supp. 3d at 1165.

### 3.    The Beneficiary Liability Claims are Inadequately Pled.

Count III of each New Plaintiff's Complaint should also be dismissed under Rule 12(b)(6) because New Plaintiffs fail to plausibly allege the elements of a beneficiary liability claim.  To state a claim for beneficiary liability under Section 1595, New Plaintiffs must allege facts showing Redwood: (1) "[K]nowingly participated in a venture;" (2) "received a benefit from its participation;" and (3) "knew or should have known that [New P]laintiff[] w[as] [a] victim[] of sex trafficking." *Doe v. Mindgeek USA Inc.*, 558 F. Supp. 3d 828, 837 (C.D. Cal. 2021) (Carney, J.) (quoting *Doe v. Twitter, Inc.*, No. 21-cv-00485-JCS, 2021 WL 3675207,

at *25 (N.D. Cal. Aug. 19, 2021)). New Plaintiffs' Complaints do not satisfy this pleading burden. Additionally, the TVPRA does not provide for extraterritorial application of the civil provision, thus barring the Non-U.S. Plaintiffs' claims.

### a.    Redwood did not "Participate in a Venture."

None of the New Plaintiffs' Complaints show that Redwood "participated in a venture" that harmed them. This Court has already ruled, in *Fleites*, that Visa did not participate in a venture with MindGeek. The same exact reasoning applies to Redwood in the Related Cases. This Court should follow Judge Carney's decision in *Fleites*, which is in accord with relevant Ninth Circuit case law.

In *Fleites*, Judge Carney dismissed the beneficiary liability claim against Visa for plaintiff's failure to adequately allege participation in a sex trafficking venture that harmed Plaintiff. In discussing the "participation" element of beneficiary liability, the Court stated that "one of the main focuses [in relevant case law] . . . was the plaintiffs' allegations regarding how the defendants[] interacted with her videos specifically." *Fleites*, 617 F. Supp. 3d at 1161. Judge Carney noted that allegations in cases that successfully established participation "supported the conclusion that [the defendant] formed a relationship with the direct traffickers who harmed the plaintiffs[.]" *Id.* With that key fact in mind, the Court dismissed the Section 1591(a)(2) claim against Visa because it was "not alleged to have had any direct interaction with Plaintiff, her direct traffickers, or her videos, and therefore cannot bear beneficiary liability for knowingly *participating* in the sex trafficking venture that harmed Plaintiff." *Id.* at 1161-62. Count III against Redwood should be dismissed for the same reason in the Related Cases. New Plaintiffs do not allege that Redwood had *any* "direct interaction with [them], her direct traffickers, or her videos," and so Redwood cannot be liable for participating in the alleged sex trafficking venture that harmed New Plaintiffs. *See Fleites,* 617 F. Supp. 3d at 1161-62.

This Court's decision in *Fleites* is consistent with relevant case law. The

"participation" element of beneficiary liability requires New Plaintiffs to, at the very least, "connect the dots between [their] alleged sex trafficking and the[] Defendants" alleged to have participated in a venture. *See B.M. v. Wyndham Hotels & Resorts, Inc.*, No. 20-CV-00656-BLF, 2020 WL 4368214, at *5 (N.D. Cal. July 30, 2020). When there is no "direct association" between a trafficker and the defendant, a plaintiff must "allege at least a showing of a *continuous business relationship between the trafficker and the [defendant]* such that it would appear that the trafficker and the [defendant] have established a pattern of conduct or could be said to have a tacit agreement." *J.B. v. G6 Hosp., LLC*, No. 19-CV-07848-HSG, 2020 WL 4901196, at *9 (N.D. Cal. Aug. 20, 2020) (emphasis added); *see also B.J. v. G6 Hosp., LLC*, No. 22-CV-03765-MMC, 2023 WL 3569979, at *5 (N.D. Cal. May 19, 2023) (dismissing TVPRA claim for failure to show "any kind of 'tacit agreement'" between defendant and the plaintiff's trafficker in the alleged sex trafficking venture). Nothing even close to a continuing business relationship is alleged here, as Redwood did not engage in any type of profit and loss sharing or any other conduct that could evince a "tacit agreement" with MindGeek, let alone with Plaintiffs' traffickers.

*B.M. v. Wyndham Hotels & Resorts, Inc.* is instructive. There, the court held that the plaintiff failed to allege "participation in a venture" because she "fail[ed] to connect the dots" between the plaintiff's alleged trafficking and the defendant franchisors. 2020 WL 4368214, at *5. The court reached this conclusion even accepting as true that defendants' hotels "rented rooms to people they knew or should have known were engaged in sex trafficking," hotel employees threatened to eject the plaintiff and her traffickers but never took further action, and the defendants were "generally aware that acts of sex trafficking take place in their franchisee hotels around the United States." *Id.* The court dismissed the complaint because it was simply "devoid of any facts linking *these [franchisor] Defendants (Wyndham and Choice)* to the sex trafficking of *this Plaintiff (B.M.)*[.]" *Id.*

DEFENDANT REDWOOD CAPITAL MANAGEMENT, LLC'S
MEM. OF P. & A. ISO MOT. TO DISMISS COMPLS. IN RELATED CASES

1    New Plaintiffs do not include any allegations in their Complaints linking

2    Redwood to their traffickers. These alleged traffickers include ex-boyfriends, now-

3    convicted sex-trafficking felons, and sex-trafficking enterprises, with whom

4    Redwood does not have, and is not alleged to have, any connection. New Plaintiffs'

5    Complaints simply do not link *Redwood* to the sex trafficking of *New Plaintiffs*,

6    whether through a "direct association," "continuous business relationship," or

7    otherwise. *See, e.g., J.B*, 2020 WL 4901196, at *9; *B.J.*, 2023 WL 3569979, at *4.

8    The beneficiary liability claim against Redwood must therefore be dismissed.

9          **b.    New Plaintiffs Fail to Allege that Redwood Knew or**

10         **Should Have Known of Plaintiffs' Sex Trafficking.**

11    New Plaintiffs also fail to plausibly allege that Redwood "knew or should have

12    known" of their sex trafficking, as required by the TVPRA. Judge Carney's prior

13    decision in *Fleites* that the plaintiff failed to allege that Visa "knew or should have

14    known" of her sex trafficking was correct and applies equally (if not more clearly) to

15    Redwood in the Related Cases.

16    In *Fleites*, Judge Carney ruled that the plaintiff's beneficiary liability claim

17    against Visa failed on the additional ground that she did not adequately allege the

18    "knowledge" element. Specifically, he wrote that "section 1591(a)(2) is an awkward

19    fit" for beneficiary liability against a defendant "having not had any interaction with

20    Plaintiff and her videos," because it cannot "be said that [the defendant] knew or

21    should have known that Plaintiff was a victim of sex trafficking[.]" *Fleites*, 617 F.

22    Supp. 3d at 1162 (dismissing beneficiary liability claim against Visa). Judge Carney

23    held that, "[u]nlike the allegations concerning MindGeek, the allegations concerning

24    Visa in the FAC do not reflect that Visa had any knowledge – constructive or

25    otherwise – of Plaintiff, her videos, or her age in the videos." *Id.* As with the

26    allegations against Visa in *Fleites*, New Plaintiffs' allegations concerning Redwood

27    in the Related Cases reflect absolutely no knowledge of any "[New] Plaintiff, her

28

videos, or her age in the videos" on the part of Redwood; hence, they are insufficient to show that Redwood "knew or should have known" of New Plaintiffs' trafficking, and dismissal is therefore appropriate. *Id.*

Judge Carney's ruling in *Fleites* is consistent with relevant case law. To establish beneficiary liability, New Plaintiffs must allege "facts sufficient to establish that the defendant knew or should have known about *the [sex] trafficking of the plaintiff in particular*[.]" *See Doe #9 v. Wyndham Hotels & Resorts, Inc.*, No. 4:19-CV-5016, 2021 WL 1186333, at *1 (S.D. Tex. Mar. 30, 2021) (emphasis added). *See also E.S. v. Best W. Int'l, Inc.*, 510 F. Supp. 3d 420, 429 (N.D. Tex. 2021) ("Plaintiff has failed to allege a reasonable inference connecting [] Defendants specifically to Plaintiff's trafficking"). "[G]eneral allegations about sex trafficking problems throughout [a particular] industry is not enough to put [defendants] on notice about the sex trafficking" of a specific plaintiff. *See J.C.,* 2020 WL 6318707, at *6; *B.M.*, 2020 WL 4368214, at *6. Thus, to move past the pleading stage, the Complaints must "provide[] plausible allegations to show that [Redwood] had actual and/or constructive knowledge about [Plaintiff's] sex trafficking" as opposed to general sex trafficking problems in online pornography. *J.C.*, 2020 WL 6318707, at *6.

In *B.M. v. Wyndham Hotels & Resorts, Inc.*, the court found that plaintiff also failed to allege that the defendant hotel franchisors "knew or should have known" of plaintiff's sex trafficking. 2020 WL 4368214 at *5-6. While plaintiff alleged that the defendant franchisors should have known of her sex trafficking due to red flags including "payments for the rooms in cash," "plaintiff's physical appearance (malnourished, bruised, beaten)," and "the personal relationship between the front desk employees and Plaintiff's traffickers," the court held that such allegations "support[ed] a theory *that the staff at the franchisee hotels where Plaintiff was trafficked* knew or should have known about her trafficking." *Id.* (emphasis added). Plaintiff was required to, but did not, allege facts showing that the *franchisor*

DEFENDANT REDWOOD CAPITAL MANAGEMENT, LLC'S
MEM. OF P. & A. ISO MOT. TO DISMISS COMPLS. IN RELATED CASES

1    defendants knew or should have known of her trafficking.  *Id.* at *6.

2         Similarly here, New Plaintiffs fail to allege that Redwood knew or should have

3    known of their trafficking specifically.  Indeed, the Complaint contains absolutely no

4    allegations establishing that Redwood had *any* knowledge of any New Plaintiff

5    whatsoever.  New Plaintiffs allege that Redwood conducted "extensive due diligence"

6    on MindGeek's business before extending debt, and generally "close[ly] monitor[ed]

7    the business," but these allegations come nowhere close to suggesting that Redwood

8    knew or should have known that any New Plaintiff was being trafficked.  *See e.g.,*

9    K.A. Compl. ¶ 351; W.L. Compl., and W.P. Compl.  ¶ 353.  Additionally, the

10   Complaints' citations to media reports concerning nonconsensual content on

11   MindGeek's platforms (and alleged "illegality in the industry") are insufficient to put

12   Redwood on notice of Plaintiff's trafficking.  *See* K.A. Compl., W.L. Compl., and

13   W.P. Compl. ¶¶ 263, 271; *see, e.g., J.C.*, 2020 WL 6318707, at *6; *B.M.*, 2020 WL

14   4368214, at *6.  New Plaintiffs' TVPRA claims against Redwood must be dismissed.

15                **c.    The TVPRA Beneficiary Liability Claim Cannot**

16                      **Apply Extraterritorially to Non-U.S. Plaintiffs.**

17        The Non-U.S. Plaintiffs' civil TVPRA claims suffer from yet another flaw:

18   Section 1595 does not apply extraterritorially.[12]  The 2008 Amendment to the

19   TVPRA explicitly granted extraterritorial application to many criminal TVPRA

20   statutes, but "does not mention their civil analogue, § 1595."  *Doe I v. Apple Inc.*,

21   No. 1:19-CV-03737 (CJN), 2021 WL 5774224, at *15 (D.D.C. Nov. 2, 2021), *aff'd*,

22

23   [12]  The Ninth Circuit has not decided whether Section 1595 may apply
     extraterritorially following the 2008 Amendment.  *See Ratha v. Phatthana Seafood*
24   *Co.*, 35 F.4th 1159, 1168 (9th Cir.), *cert. denied,* 143 S. Ct. 491 (2022) ("We will
     assume in this case that § 1595 applies extraterritorially and leave for another day the
25   question of whether that assumption is correct.").  *See Doe v. WebGroup Czech*
     *Republic, a.s.*, No. 2:21-cv-02428 SPG (SRX), 2024 WL 3533426, at *10 n.4 (C.D.
26   Cal. July 24, 2024) (because the complaint did not meet the requirements of Section
     1596, "the Court can put aside for the time being the antecedent question of whether
27   Section 1595 does have extra-territorial reach").

28

DEFENDANT REDWOOD CAPITAL MANAGEMENT, LLC'S
MEM. OF P. & A. ISO MOT. TO DISMISS COMPLS. IN RELATED CASES

96 F.4th 403 (D.C. Cir. 2024). Congress could have, but did not, grant extraterritorial jurisdiction over Section 1595 offenses. *See id.* at *16 (holding that Congress did not authorize the extraterritorial application of § 1595). "[W]hen a statute provides for some extraterritorial application, the presumption against extraterritoriality operates to limit that provision to its terms." *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 265 (2010) (citation omitted). The Non-U.S. Plaintiffs' civil TVPRA claims against Redwood should thus be barred as an impermissible extraterritorial application of Section 1595 because their "injuries, along with the underlying TVPRA violations that [these New Plaintiffs] allege, occurred" outside of the United States. *See id.*

## 4. The TVPRA Conspiracy Claims Against Redwood are Barred by Ninth Circuit Law

Count III of the Complaints must be dismissed because Redwood's alleged TVPRA violations predate the 2023 amendment to the TVPRA allowing for civil TVPRA conspiracy liability against a beneficiary.

The Ninth Circuit's recent opinion in *Ratha v. Rubicon Res.,* LLC, 111 F.4th 946 (9th Cir. 2024) is controlling. In *Ratha,* victims of forced labor and other alleged TVPRA violations sued Rubicon—a Delaware company that sought to import shrimp from a Thai company that allegedly violated the TVPRA (Phatthana Seafood Co.)— alleging that Rubicon "knowingly benefitted from Phatthana's alleged human trafficking and forced labor abuses, financially and by accessing a steady stream of imported seafood." *See Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1175 (9th Cir.), *cert. denied,* 143 S. Ct. 491 (2022). After the plaintiffs lost on summary judgment on their benefit theory, the TVPRA was amended to provide for civil liability against "whoever knowingly benefits, or attempts or conspires to benefit" from a TVPRA violation. *See* ATRA, Pub. L. No. 117-347, § 102, 136 Stat., 6199 (2023). Plaintiffs then filed a Rule 60 motion for relief from judgment, arguing that the newly passed ATRA "retroactively clarifie[d] that 18 U.S.C. § 1595(a) authorizes

suit against those who attempt to benefit from participation in a venture that engages in forced labor and that clarification abrogates the Ninth Circuit's opinion affirming summary judgment" for defendants and therefore "calls into question [the Ninth Circuit's] Judgement."  *See Ratha v. Phatthana Seafood Co.,* No. CV 16-4271-JFW (ASX), 2023 WL 2762044, at *3 (C.D. Cal. Mar. 3, 2023), *aff'd sub nom. Ratha v. Rubicon Res., LLC.* 111 F.4th 946 (9th Cir. 2024).

The Ninth Circuit affirmed the district court's denial of the plaintiffs' motion, holding that "*ATRA does not apply to pre-enactment conduct, including the conduct that [was] the basis of plaintiffs' claims.*"  *Ratha*, 111 F.4th at 969.  Thus, *Ratha* bars Plaintiffs' TVPRA conspiracy liability claims against Redwood because it clearly holds that the ATRA cannot apply to alleged conduct that occurred before its enactment.  All of the allegations in the Related Cases pertaining to Redwood indisputably occurred prior to January 2023.  *See, e.g.,* K.A. Compl., W.L. Compl., and W.P. Compl. ¶¶ 246-71 (describing Redwood's alleged conduct from 2011-2021).  Because the ATRA cannot apply retroactively to pre-enactment conduct, and the pre-ATRA version of Section 1595 did not authorize civil liability against those who conspired to benefit from another's TVPRA violation, New Plaintiffs' TVPRA conspiracy claim against Redwood must be dismissed.[13]

## 5.    The Complaints do not Establish a Conspiracy by Redwood.

The Ninth Circuit's recent decision in *Ratha* is dispositive, but, *Ratha* aside, New Plaintiffs' TVPRA conspiracy claim would also fail because the Complaints do not plead "an agreement to violate a substantive . . . provision" of the TVPRA. *Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993) ("In a RICO conspiracy, *as in all conspiracies*, agreement is essential.") (emphasis added); *see also Stein v. World-*

---

[13] Judge Carney did not address this argument in *Fleites*, apparently assuming (pre-*Ratha*) that Section 1595 could authorize a TVPRA civil conspiracy liability claim against alleged beneficiaries before the ATRA.  This assumption no longer holds following the Ninth Circuit's decision in *Ratha.  See Ratha*, 111 F.4th 946 at 969.

*Wide Plumbing Supply Inc*., 71 F. Supp. 3d 320, 330 (E.D.N.Y. 2014) ("For there to have been a conspiracy, there must have been an agreement to violate the [TVPRA]."). An agreement to violate the TVPRA requires "alleg[ing] facts that plausibly show [Redwood] 'and other alleged coconspirators [] entered into a joint enterprise with consciousness of its general nature and extent.'" *Stein*, 71 F. Supp. 3d at 330 (citation omitted). The Complaint do not include such allegations.

The Complaints are bereft of plausible allegations of any "agreement" by Redwood *to violate the TVPRA's prohibition against sex trafficking*. New Plaintiffs' allegations that Redwood provided financing to MindGeek does not satisfy their pleading burden.[14] Even crediting the conclusory allegations that MindGeek needed Redwood's financing to grow and operate an exploitative business (K.A. Compl. ¶¶ 246-47, 357, 360; W.L. Compl. ¶¶ 246-47, 360, 363; W.P. Compl. ¶¶ 246-47, 356, 359), and MindGeek's lenders "understood that MindGeek was intentionally operating without any [] meaningful moderation and compliance," which was "essential to MindGeek's ability to . . . pay back" to the loan (K.A. Compl. ¶¶ 247, 266-268, 347; W.L. Compl. and W.P. Compl. ¶¶ 247, 266-268, 349), none of these allegations adequately plead conspiratorial intent by Redwood to violate the TVPRA. *See Doe 1 v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387, 412 (S.D.N.Y. 2023) ("If the allegations in the complaints are taken as true, the defendants did indeed agree to provide banking services for Epstein and his affiliated entities [] that they knew, or recklessly disregarded, would assist his sex-trafficking venture. But that agreement is different from an actual agreement to participate in a sex-trafficking venture.").

---

[14] As explained in Redwood's *Fleites* Motion to Dismiss, it is also well-established that a lender does not face liability for obligations "beyond those expressed in the loan agreement," except where a "special relationship"—such as the ability to "control" a borrower through a loan agreement—exists. *See Fleites* Dkt. 447-1. New Plaintiffs' Complaints do not allege any non-conclusory allegations to support any suggestion that Redwood actually controlled MindGeek's operations or governance.

New Plaintiffs fail to plead, as they must, that Redwood intended to aid MindGeek in a conspiratorial objective. *Craigslist Inc. v. 3Taps Inc*., 942 F. Supp. 2d 962 (N.D. Cal. 2013) in instructive.  Craigslist, in that case, asserted that defendants Padmapper and 3Taps conspired to commit torts by "unlawfully scraping ads from Craigslist and displaying the misappropriated ads on Padmapper's site." The plaintiff conclusorily alleged that Padmapper: (i) knew the scraping was unlawful; (ii) knowingly populated its site with misappropriated Craigslist content obtained from 3Taps; and (iii) intended to aid in the commission of the wrongful conduct by displaying the misappropriated data on its website. *Id*. at 981.  The court dismissed the conspiracy claim because these allegations did not establish intent by the defendants to aid in the conspiracy. *Id.* at 982.

The allegations of the Related Cases are similar to the deficient allegations in *Craigslist*, and thus the result (dismissal) should be the same.  New Plaintiffs' allegations that Redwood had a financial incentive to participate in the loan agreement with MindGeek is of no import, as the financial incentive to accept interest on debt provided to a borrower does *not* establish an intent to aid in sex trafficking. *See Craiglist*, 942 F. Supp. 2d at 982 (holding that Padmapper's alleged incentive to use the misappropriated information "does not plausibly suggest that [it] ever intended to assist 3Taps in the alleged wrongful conduct required to obtain the information in the first place").

While Judge Carney found Visa potentially liable for TVPRA conspiracy liability in *Fleites* under the theory that its conduct was "intertwined with MindGeek's criminal act" (*see Fleites,* 617 F. Supp. 3d at 1164), that holding is inapplicable to Redwood because its alleged conduct is far more removed from MindGeek's day-to-day operations than was Visa's conduct.  In *Fleites,* Judge Carney found Visa could be potentially liable as a conspirator because Visa allegedly "provide[d] the means through which MindGeek could monetize child porn videos"

by processing financial transactions on MindGeek's websites and was alleged to have "provided the tool used to complete [MindGeek's criminal act]." *Fleites,* 617 F. Supp. 3d at 1163-64.  The same is not true of Redwood.  Although Redwood provided financing to MindGeek, it was one of many lenders that did so as part of syndicated loans.  Redwood is not alleged to have been involved in any of MindGeek's daily business, moderation decisions, or any website operations.  Simply put, Redwood is not alleged to have provided a "tool used to complete" criminal sex trafficking violations.  The TVPRA conspiracy claims against Redwood should be dismissed.

### C.    New Plaintiffs' Hybrid UCL/FAL Claim is not Legally Viable.

Each New Plaintiff attempts—but fails—to assert a violation of Cal. Bus. & Prof. Code §§ 17200 (the "Unfair Competition Law" or "UCL") and 17500 (the "False Advertising Law" or "FAL") against Redwood.  To state a claim under the UCL, each New Plaintiff must sufficiently allege that and how Redwood engaged in an "unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  To state a claim under the FAL, each New Plaintiff must allege that Redwood made a "false or misleading statement" and plead sufficient facts to show "members of the public are likely to be deceived" by Redwood's alleged practices. *Chern v. Bank of Am.*, 15 Cal. 3d 866, 875 (1976); *Nationwide Biweekly Admin., Inc. v. Super. Ct.* (the People), 9 Cal. 5th 279, 309 (2020).  New Plaintiffs also must satisfy Rule 9(b)'s heightened pleading requirement to state a claim under the FAL.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003).

New Plaintiffs' hybrid UCL/FAL claim must be dismissed because: (1) New Plaintiffs lack standing under California's consumer protection statutes, as they cannot show an economic injury caused by any alleged unfair business practice or false advertising on the part of Redwood; (2) the Non-California Plaintiffs and the Non-U.S. Plaintiffs cannot invoke California's consumer protection statutes, as they have not alleged that their injuries, or Redwood's allegedly unlawful conduct,

occurred in California; and (3) the hybrid claims suffer from myriad legal deficiencies, including failing to differentiate the Defendants for purposes of the UCL and FAL claims, failing to allege any public representations made by Redwood (let alone with the requisite specificity), and failing to establish a violation of any underlying law.[15]  Those New Plaintiffs asserting claims under "analogous [state law] statutes" fare no better, as those Plaintiffs still must—but cannot—show a deceptive or unfair practice on the part of Redwood and a causal connection between an allegedly unlawful or deceptive act on the part of Redwood and Plaintiffs' harm.

### 1.    All New Plaintiffs Lack Standing for UCL and FAL Claims.

Standing under both the UCL and FAL is "substantially narrower" than federal standing under Article III (which is also lacking, *see supra* Section III.B), and extends only to those who "lost money or property" as a result of the unfair competition or false advertising violation.  *Fitbug Ltd. v. Fitbit, Inc*., 78 F. Supp. 3d 1180, 1196 (N.D. Cal. 2015); Cal. Bus. & Prof. Code §§ 17204, 17535.  Specifically, in order to satisfy standing under the UCL and FAL, each New Plaintiff must allege facts showing that she suffered "economic injury . . . *caused by [] the unfair business practice or false advertising* that is the gravamen of the claim."  *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011) (emphasis added).

New Plaintiffs fail to satisfy this test.  They conclusorily allege that, "[a]s a result of *defendants' use of [their] video, images, and likeness without [their] consent*," they have "lost money to which [they are] rightfully entitled" and have

---

[15] New Plaintiffs' claims under the UCL and/or FAL are also barred by the applicable statutes of limitations (four years and three years, respectively (*see* Cal. Bus. & Prof. Code § 17208 (UCL)); *Yumul v. Smart Balance, Inc.,* 733 F. Supp. 2d 1117, 1130 (C.D. Cal. 2010) (applying the three-year statute of limitations in Section 338(a) of the California Code of Civil Procedure to a claim under the FAL)).  Redwood made no representations that could trigger the applicable statute of limitations for the FAL or first two prongs of the UCL.  As for the "unlawful" prong of the UCL, New Plaintiffs do not plead unlawful Redwood conduct within four years from the dates on which they filed their complaints in June through August 2024 (although, as explained above in *supra* Section IV.B, such allegations are patently insufficient to establish a violation of the TVPRA).

- 34 -

"suffered financial harm in the form of costs for therapy," substantial time away from work, and substantial expense in "hiring a company to assist . . . with . . . efforts to investigate the *continued dissemination of [their] videos on Pornhub and facilitate the take downs of [their] CSAM." See, e.g.,* K.A. Compl. ¶¶ 437-38; W.L. Compl. ¶¶ 440-41; and W.P. Compl. ¶¶ 436-37 (emphases added). But New Plaintiffs do not—and cannot—allege that *Redwood* used any "video, image[], or likeness," which New Plaintiffs themselves state as the alleged cause of their "financial harm." *See id.* Nor can New Plaintiffs seriously contend that any of the conduct Redwood is alleged to have taken (let alone conduct that constitutes "the gravamen of [Plaintiffs' UCL/FAL] claim[s]") was the "cause" of their financial harm. As discussed in-depth above, New Plaintiffs allege only that Redwood provided financing to MindGeek pursuant to routine financing agreements. *See supra* Sections II.D-E. Because no New Plaintiff alleges facts showing that they suffered economic injury *caused by* an alleged unfair business practice or false advertising committed *by Redwood*, they lack standing to pursue their claims under the UCL and FAL.

**2.    The Non-California and Non-U.S. Plaintiffs cannot invoke the UCL and/or FAL for extraterritorial application.**

The Non-California and Non-U.S. Plaintiffs cannot assert violations of the UCL and FAL for the additional reason that they have not alleged that their injuries, or Redwood's allegedly unlawful conduct, occurred in California. California's Supreme Court has made clear that there is a strong presumption against the extraterritorial application of California law. *See, e.g., Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191 (2011). Non-California residents are foreclosed from bringing claims under the UCL and FAL, "where none of the alleged misconduct or injuries occurred in California." *Churchill Vill., LLC v. Gen. Elec. Co.*, 169 F. Supp. 2d 1119, 1126 (N.D. Cal. 2000) (citing *Nw. Mortg. Inc. v. Superior Court*, 72 Cal. App. 4th 214, 222 (1999)), *aff'd*, 361 F.3d 566 (9th Cir. 2004); *see also Tidenberg v. Bidz.com, Inc.*,

No. 08-cv-5553, PSG (FMOx), 2009 WL 605249, at *4 (C.D. Cal. Mar. 4, 2009) ("by its own terms, California's FAL applies only when the conduct complained of occurred in California"). In considering whether non-residents of California may invoke the UCL or FAL, the "critical issues . . . are whether the injury occurred in California and whether the [allegedly unlawful] conduct of Defendants occurred in California. If neither of these questions can be answered in the affirmative, then Plaintiff[s] will be unable to avail [themselves] of these laws." *Tidenberg,* 2009 WL 605249, at *4.

Here, neither the Non-California or Non-U.S. Plaintiffs' injuries, nor Redwood's alleged conduct, occurred in California. These New Plaintiffs' injuries indisputably occurred in places other than California, as they were residents of other states and/or countries at all relevant times. *See, e.g.*, K.A. Compl. and W.L. Compl. ¶¶ 10, 311; *see also Tidenberg,* 2009 WL 605249, at *4 (the most "reasonable inference is that Plaintiff accessed this website from a computer in Texas, the state where she resides," and so she was not injured in California). The Non-California and Non-U.S. Plaintiffs have not come anywhere near alleging that Redwood's allegedly unlawful conduct occurred in California. Their Complaints indeed do not show that Redwood made any false or misleading statements *at all*, let alone that they made any such statements in California. Nor do their Complaints allege that Redwood engaged in any activity in California (or anywhere) related to the creation or modification of content on MindGeek's platforms or the dissemination of New Plaintiffs' CSAM. The Non-California and Non-U.S. Plaintiffs do not even allege that Redwood entered into the loan agreements in California (nor could they). These New Plaintiffs are therefore unable to assert UCL/FAL claims against Redwood. *See Tidenberg,* 2009 WL 605249, at *4 (concluding that plaintiff lacked standing to assert claims under the UCL and the FAL where she did "not allege any specific facts

DEFENDANT REDWOOD CAPITAL MANAGEMENT, LLC'S
MEM. OF P. & A. ISO MOT. TO DISMISS COMPLS. IN RELATED CASES

linking Defendants' contacts with California to the claims Plaintiff asserts against them").

### 3.    New Plaintiffs Fail to State a UCL or FAL Claim.

Even if New Plaintiffs could somehow avail themselves of the UCL and FAL, they fail to state a claim under each statute for myriad reasons.

*First*, the UCL/FAL claims are deficiently pled against Redwood because they rest exclusively on allegations of misconduct by the MindGeek Defendants *that do not apply to Redwood*.  Although New Plaintiffs nominally purport to assert their "claim[s]" against "all defendants," they actually do not allege any supportive facts relating to their claim against Redwood.  Rather, New Plaintiffs allege generally that "*Defendants* fraudulently deceived its users that they were monetizing, distributing, and advertising legitimate, legal content" (K.A. Compl. ¶ 432; W.L. Compl. ¶ 435; W.P. Compl. ¶ 431), "*Defendants* profited by selling advertising space to display advertisements alongside Plaintiff's videos, images, and likenesses without her consent" (K.A. Compl. ¶ 433; W.L. Compl. ¶ 436; W.P. Compl. ¶ 432), and "*Defendants* knowingly had inadequate age and consent verification systems in place that allowed for uploading of child pornography" (K.A. Compl. ¶ 432; W.L. Compl. ¶ 435; W.P. Compl. ¶ 431).  These collective allegations do not apply to Redwood (as a lender), and fatally fail to differentiate each Defendants' conduct.  *See, e.g., Okada v. Bank of Am., N.A.*, No. SACV 15 00981CJC(Ex), 2015 WL 5556937, at *5 (C.D. Cal. Sept. 16, 2015) (holding that a UCL claim "cannot survive a motion to dismiss" where it "makes no effort to differentiate the Defendants' conduct, instead merely lumping all of the Defendants together and treating them as one for the purposes of the UCL claim").  While New Plaintiffs also purport to incorporate by reference preceding allegations in support of their UCL/FAL claim (K.A. Compl. ¶ 430; W.L. Compl. ¶ 433; W.P. Compl. ¶ 429), they do not allege sufficient facts to connect these general allegations to Redwood (*e.g.*, they do not allege that Redwood

1  interacted with MindGeek's website users, had any control over age and consent

2  verification policies on the MindGeek websites, or distributed or advertised content

3  on those sites).

4      *Second,* New Plaintiffs do not come close to meeting their pleading burden

5  under the FAL because they do not allege that Redwood made any representations to

6  the public. *See Nationwide*, 9 Cal. 5th at 309 (in order to sufficiently allege an FAL

7  claim, the pleading must allege sufficient facts to establish that "members of the

8  public are likely to be deceived."). Insofar as their FAL claims are grounded in

9  allegations of fraud—*see* K.A. Compl. ¶ 432; W.L. Compl. ¶ 435; W.P. Compl. ¶

10  431 ("Defendants fraudulently deceived its users . . ."); K.A. Compl. ¶ 431; W.L.

11  Compl. ¶ 434; W.P. Compl. ¶ 430 ("Defendants have engaged in . . . fraudulent

12  business acts and practices . . ."); K.A. Compl. ¶ 435; W.L. Compl. ¶ 438; and W.P.

13  Compl. ¶ 434 ("This conduct constitutes . . . fraudulent business act and practice")—

14  New Plaintiffs also fail to satisfy the fraud pleading standard. *See Kearns v. Ford

15  Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (Allegations of fraud must be

16  accompanied by "the who, what, when, where, and how" of the misconduct charged).

17      Finally, New Plaintiffs fail to adequately plead a claim under any of the three

18  prongs of the UCL. They do not adequately plead a claim under the fraudulent

19  business practices prong because they do not show that members of the public are

20  likely to be deceived by Redwood's providing financing unconnected to New

21  Plaintiffs or satisfy the heightened pleading standard of Rule 9(b). *See Freeman v.

22  Time, Inc.*, 68 F.3d 285, 289-90 (9th Cir. 1995) (holding that a fraudulent practices-

23  based UCL claim may be dismissed where the pleading fails to show that "members

24  of the public are likely to be deceived") (citation omitted); *Vess,* 317 F.3d at 1103-

25  04 (where a "claim is said to be 'grounded in fraud' or to 'sound in fraud' . . . the

26  pleading of that claim as a whole must satisfy the particularity requirement of Rule

27  9(b)"). New Plaintiffs similarly fail to adequately plead a claim under the unfair

28

business practices prong because the universal test to determine if conduct violates the "unfair" prong of Section 17200 is whether "members of the public are likely to be deceived," and New Plaintiffs fail to show this. *Freeman*, 68 F.3d at 289; *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1151 (2003). Lastly, New Plaintiffs fail to adequately plead a UCL claim under the unlawful business practices prong because their Complaints have failed to establish a viable claim against Redwood for violation of the FAL or TVPRA (*see supra* Sections IV.B-C), and those are the only statutes that New Plaintiffs assert Redwood violated. *See, e.g., Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 374-75 (2001) (plaintiff's failure to establish each of the elements of a Cartwright Act claim disposed of UCL "unlawful" claim).

### 4.    The "Analogous" State Statutes Claims Are Also Deficient

Several of the Non-California and Non-U.S. Plaintiffs also attempt to assert claims under "analogous [state law] statutes" in the alternative, to circumvent the standing requirements of California's consumer protection laws. The additional state statutes generally require a showing of similar elements to the UCL and FAL: (1) a deceptive or unfair practice, (2) a causal connection between the allegedly unlawful or deceptive act and plaintiff's harm, and (3) actual damages or ascertainable loss.

- A.K. asserts claims under Florida's Deceptive and Unfair Trade Practices Act (the "FDUTPA") and Florida's Misleading Advertising statute. *See* Fla. Stat. §§ 501.204, 817.41. A FDUTPA claim requires: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. A deceptive practice is one that is likely to mislead consumers, and an unfair practice is one that offends established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Bookworld Trade, Inc. v. Daughters of St. Paul, Inc.*, 532 F. Supp. 2d 1350, 1364 (M.D. Fla.

2007) (internal quotation marks omitted) (internal footnote omitted) (citations omitted).   To state a claim under Florida's Misleading Advertising statute, Plaintiff A.K. must show she "relied on some identifiable alleged misleading advertising plus, where appropriate, all of the other elements of the common law tort of fraud in the inducement, as follows: (a) the representor made a misrepresentation of material fact; (b) the representor knew or should have known of the falsity of the statement; (c) the representor intended that the representation would induce another to rely and act on it; and (d) the plaintiff suffered injury in justifiable reliance on the representation." *Millenium Labs., Inc. v. Universal Oral Fluid Labs., LLC*, No. 8:11-CV-1757-MSS-TBM, 2012 WL 12906334, at *4 (M.D. Fla. Aug. 2, 2012) (citation omitted).

- N.L.[16] asserts a claim under Colorado's Unfair or Deceptive Trade Practices statute, Colo. Rev. Stat. § 6-1-105, which provides: "To state an unfair and deceptive trade practice claim, a plaintiff must show: (1) the defendant engaged in an unfair or deceptive trade practice; (2) the challenged practice occurred in the course of the defendant's business; (3) the challenged practice significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) the plaintiff suffered injury in fact to a legally protected interest; and (5) the challenged practice caused plaintiff's injury." *Otter Prods., LLC v.*

---

[16] Plaintiff N.L. also brings a claim under Colorado's Discriminatory Sales statute, Colo. Rev. Stat. § 6-2-103(1), which prohibits sales "with the intent to destroy the competition" of other sellers or to discriminate between different cities or communities by selling such commodity "at a lower rate" in another city or community.  While the elements and conduct prohibited under section 103 differ from that of the other consumer protection statutes that New Plaintiffs have cited, N.L.'s claim fails where her Complaint does not include any factual support for instances of discriminatory pricing or unfair competition by Redwood.

*Wang*, No. 18-cv-03198-CMA-SKC, 2019 WL 1403022, at *6 (D. Colo. Mar. 28, 2019) (citation omitted).

- L.T. asserts a claim under New Hampshire's Consumer Protection Act, N.H. Rev. Stat. Ann. § 358-A:2, which requires a showing that "the defendant 'made a representation, with actual knowledge of its falsity or reckless disregard for its truth, with the intent to induce consumers to enter a transaction.'" *Cohen v. Bos. Sci. Corp.*, No. 1:20-CV-00943-PB, 2024 WL 1286904, at *6 (D.N.H. Mar. 26, 2024) (citation omitted).

- T.C. asserts a claim under the Rhode Island Deceptive Trade Practices Act, R.I. Gen. Laws § 6-13.1-2, which requires a showing of: "[1] a representation, omission, or practice, that [2] is likely to mislead consumers acting reasonably under the circumstances, and [3], the representation, omission, or practice is material." *Long v. Dell, Inc.,* 93 A.3d 988, 1003 (R.I. 2014).  (footnote omitted) (citation omitted).

- N.Y. asserts a claim under United Kingdom law.  *See* Regulation of the European Parliament and of the Council of 11 July 2007, No. 864/2007, c. II, art. 6.[17]

Even if this Court could apply another state's laws,[18] these New Plaintiffs' allegations are insufficient.  As discussed above, New Plaintiffs cannot show a

---

[17] Article 6 of Regulation (EC) No. 864/2007 of the European Parliament and of the Council does not set forth elements of a claim for unfair competition but provides that the law applicable to "a non-contractual obligation arising out of an act of unfair competition shall be the law of the country where competitive relations or the collective interests of consumers are, or are likely to be, affected."  Regardless of N.Y.'s failure to identify the United Kingdom law pursuant to which her claim is brought, the Court should decline to apply United Kingdom law.

[18] Federal courts exercising supplemental jurisdiction over state law claims apply the choice-of-law rules of the forum state.  *Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.,* 96 F.3d 1151, 1164 (9th Cir. 1996).  "Under this approach, California law will be applied unless the foreign law conflicts with California law and California and the

deceptive or unfair practice on the part of Redwood.  *See supra* Section IV.C.3.  Nor
can they show any causal connection between an allegedly unlawful or deceptive act
on the part of Redwood and any New Plaintiffs' harm.  *See id.*  New Plaintiff A.K.'s,
L.T.'s, N.L.'s, T.C.'s, and N.Y.'s alternative claims under Florida, New Hampshire,
Colorado, Rhode Island, and United Kingdom law, respectively, must therefore be
dismissed.

### D. New Plaintiffs Fail to State a Claim for Intentional Infliction of Emotional Distress

New Plaintiffs' Intentional Infliction of Emotional Distress ("IIED") claims
against Redwood must also be dismissed because lending has never been and could
not be a predicate for an IIED claim.  To state a claim for IIED under California
law,[19] a plaintiff must show: "(1) extreme and outrageous conduct by the defendant
with the intention of causing, or reckless disregard of the probability of causing,
emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress;
and (3) actual and proximate causation of the emotional distress by the defendant's
outrageous conduct." *Melorich Builders, Inc. v. Superior Court*, 160 Cal. App. 3d
931, 935 (1984).  Additionally, California applies a two-year statute of limitations

---

foreign jurisdiction have significant interests in having their law applied." *S. A.
Empresa, Etc. v. Boeing Co.*, 641 F.2d 746, 749 (9th Cir. 1981) (citations omitted).

[19] As mentioned in *supra* note 18, California law will be applied to Plaintiffs' IIED
claim unless "foreign law conflicts with California law and California and the foreign
jurisdiction have significant interests in having their law applied." Regardless, the
states where Non-California Plaintiffs resided at all times relevant maintain similar
requirements for IIED claims.  *See, e.g., Frank v. Fine*, No. 6:23-CV-2043-PGB-
RMN, 2024 WL 473718, at *4 (M.D. Fla. Jan. 5, 2024), *report and recommendation
adopted*, No. 6:23-CV-2043-PGB-RMN, 2024 WL 473720 (M.D. Fla. Jan. 19, 2024)
(Florida law); *Doe v. W. Alton Marina, LLC*, 646 F. Supp. 3d 315, 321–22 (D.N.H.
2022) (New Hampshire law); *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999)
(New York law); *Gillis v. Principia Corp.*, 832 F.3d 865, 874–75 (8th Cir. 2016)
(Missouri law); *Green v. Qwest Servs. Corp.*, 155 P.3d 383, 385 (Colo. App. 2006)
(Colorado law); *Norton v. Hoyt*, 278 F. Supp. 2d 214, 220 (D.R.I. 2003), *aff'd sub
nom. Norton v. McOsker*, 407 F.3d 501 (1st Cir. 2005) (Rhode Island law).

for IIED claims, which runs once the plaintiff suffers severe emotional distress due to outrageous conduct by the defendant. *See* Cal. Civ. Proc. Code § 335.1; *see also Wassmann v. S. Orange Cnty. Cmty. Coll. Dist.*, 24 Cal. App. 5th 825, 853 (2018).

As an initial matter, the IIED claims brought by Plaintiffs K.A., L.T., N.L., N.Y., X.N., C.S., S.O., W.L., L.S., A.K., and J.L are barred by the applicable two-year limitation period, because more than two years have passed since the later of the time these New Plaintiffs allege the discovery of their CSAM online (or when these Plaintiffs turned 18 years old, should the statute of limitations be tolled until Plaintiffs turned the age of majority)—i.e., when the alleged emotional distress started—and the dates on which these New Plaintiffs filed their complaints in June through August 2024. *See* K.A. Compl. ¶ 315; L.T. Compl. ¶ 311; N.L. Compl. ¶ 312; N.Y. Compl. ¶ 313; X.N. Compl. ¶¶ 311-312; C.S. Compl. ¶¶ 311-312; S.O. Compl. ¶ 312; W.L. Compl. ¶ 311; L.S. Compl. ¶ 313; A.K. Compl. ¶¶ 311, 313-314; J.L. Compl. ¶¶ 311, 315.

Regardless, New Plaintiffs come nowhere close to satisfying their pleading burden. *First,* New Plaintiffs' allegations are too conclusory and do not separate out the alleged role of each Defendant. New Plaintiffs allege that "*Defendants'* conduct toward Plaintiff[s], as described herein, was outrageous and extreme" (*see, e.g.,* K.A. Compl. ¶ 448; W.L. Compl. ¶ 451; and W.P. Compl. ¶ 447 (emphasis added)), but they provide no supportive facts. New Plaintiffs must do more than "recit[e] . . . elements for [the] cause of action." *See Iqbal*, 556 U.S. at 678. *See also Anderson v. Louden, LLC*, No. C 13-04159 WHA, 2013 WL 6405825, at *4 (N.D. Cal. Dec. 6, 2013) (dismissing plaintiff's IIED claim where "plaintiff's allegations are too conclusory to constitute a sufficient claim for relief."). New Plaintiffs also impermissibly lump together multiple defendants and include no allegations as to Redwood specifically. *See Nesbit v. Speedway LLC.,* No. 2:23-cv-00912, 2023 WL 2634731, at *4 (C.D. Cal. Mar. 10) (dismissing IIED claim where "the TAC does not

allege any specific conduct by any of the Arresting Officers individually, but rather improperly groups them together without individualized allegations[]"), *R & R. adopted*, 2023 WL 2634287 (Mar. 23, 2023).

*Second*, New Plaintiffs fail to meet the first prong of an IIED claim because they cannot possibly show that Redwood engaged in "atrocious" conduct that was *intended* to cause emotional distress to Plaintiffs. Liability for IIED extends only "to conduct so extreme and outrageous as to go beyond all possible bonds [sic] of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Coleman v. Republic Indem. Ins. Co. of Cal.*, 132 Cal. App. 4th 403, 416 (2005) (internal quotation marks omitted) (citations omitted). But New Plaintiffs have failed to allege (because they cannot) that Redwood engaged in any such conduct. *See Chang v. Wachovia Mortg., FSB*, No. C-11-1951 SC, 2011 WL 5552899, at *3 (N.D. Cal. Nov. 15, 2011) ("as to Plaintiff's IIED claim, Plaintiff failed to state what about Defendants' conduct rendered it so extreme as to 'exceed all bounds of that usually tolerated in a civilized community.'"). If the alleged conduct is not sufficiently outrageous, "it is not [even] enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 852 (9th Cir. 2004). New Plaintiffs have not only failed to allege outrageous conduct but have also failed to include any allegations supporting the idea that Redwood acted with an intent of causing, or reckless disregard of the probability of causing, emotional distress to Plaintiffs (with whom Redwood has had no knowledge of or interaction with) by virtue of Redwood's participation in an arms-length financing agreement with MindGeek.

DEFENDANT REDWOOD CAPITAL MANAGEMENT, LLC'S
MEM. OF P. & A. ISO MOT. TO DISMISS COMPLS. IN RELATED CASES

*Third,* New Plaintiffs fail to allege facts suggesting that Redwood's conduct—providing financing to MindGeek—was directed towards them. "The law limits claims of intentional infliction of emotional distress to egregious conduct *toward* plaintiff proximately caused by defendant." *Christensen v. Superior Court*, 54 Cal.3d 868, 905 (1991) (citation omitted). "Where reckless disregard of the plaintiff's interests is the theory of recovery," plaintiffs must allege "the presence of the plaintiff at the time the outrageous conduct occurs[.]" *Id.* at 906; *see also Cooper v. Tokyo Elec. Power Co.,* 166 F. Supp. 3d 1103, 1129 (S.D. Cal. 2015), *aff'd*, 860 F.3d 1193 (9th Cir. 2017) ("Because IIED imposes liability for ambiguous injuries that are easily feigned, Plaintiffs may not recover in the absence of facts indicating that the defendant's conduct specifically targeted them and sought to cause them harm."). New Plaintiffs do not, and cannot, allege their presence at the time Redwood provided financing to MindGeek, or that the financing was directed towards them.

*Finally,* New Plaintiffs fail to sufficiently allege that each of their severe emotional distress was actually and proximately caused by Redwood's alleged conduct. *See Miletak v. Wingz, Inc.,* No. 5:24-cv-01063, 2024 WL 3304801, at *4 (N.D. Cal. July 3, 2024) (dismissing the IIED claim, in part because "[a]ccording to Miletak's complaint, it was Wingz's conduct in declining to reactivate his account rather than seek out an alternative screening company that caused the alleged harm"). *See also supra* Sections IV.B.2, IV.C.3. Hence, Count XVI must be dismissed.

### E. The Civil Conspiracy Claim is Inadequately Pled.

The Court should also dismiss New Plaintiffs' civil conspiracy claims against Redwood (Count XVII) because (i) the Complaints do not adequately allege the elements of a civil conspiracy and (ii) the Complaints have not adequately pled any underlying tort because Redwood, as a lender, owes no duty to New Plaintiffs.

#### 1. New Plaintiffs Fail to Allege a Civil Conspiracy.

As an initial matter, the Complaints do not adequately allege the elements of a civil conspiracy claim against Redwood.  Civil conspiracy has three elements: "(1) formation and operation of the conspiracy; and (2) damage resulting to the plaintiff; (3) from a wrongful act done in furtherance of a common design." *Lingad v. Indymac Fed. Bank*, 682 F. Supp. 2d 1142, 1150 (E.D. Cal. 2010) (quoting *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1062 (2006)).  To establish the first element, "formation and operation of the conspiracy," three additional sub-elements must be shown: "(i) knowledge of wrongful activity, (ii) agreement to join in the wrongful activity, and (iii) intent to aid in the wrongful activity." *Craigslist,* 942 F. Supp. 2d at 981.

Critically, "actual knowledge of the planned tort, without more, is insufficient to serve as the basis for a conspiracy claim.  Knowledge of the planned tort must be combined with intent to aid in its commission.  'The sine qua non of a conspiratorial agreement is the knowledge on the part of the alleged conspirators of its unlawful objective and their intent to aid in achieving that objective.'  'This rule derives from the principle that a person is generally under no duty to take affirmative action to aid or protect others.'" *Kidron v. Movie Acquisition Corp.*, 40 Cal. App. 4th 1571, 1582 (1995) (citations omitted).

This principle was applied in *Thinking Liberally Media Inc. v. Orange Juice Blog*, No. SACV 10-00139 DOC (RNBx), 2010 WL 11596144, at *5-6 (C.D. Cal. Nov. 19, 2010).  The plaintiffs brought numerous claims against defendant Pedroza, as well as the blog he owned, Orange Juice Blog, for trademark infringement, cybersquatting, unfair business practice, conversion, and civil conspiracy.  *Id.* at *2.  The dispute centered on Pedroza's "childish" battle with the plaintiffs over ownership of a website domain name, which then spiraled into Pedroza buying up *plaintiffs'* domain names, and then redirecting website traffic to Orange Juice Blog.  *Id.*  The plaintiffs alleged that this evidenced Orange Juice Blog's knowledge of its role in perpetuating the various wrongs.  *Id.*  But, the court held, "Plaintiffs' speculation that

[Defendant] Orange Juice blog *knew* of [Defendant] Pedroza's planned conduct is insufficient to allege a civil conspiracy claim; Plaintiffs must allege, with the support of evidence, that Orange Juice blog *intended* the conduct.  Plaintiffs' Complaint falls woefully short in this way, and relies solely on speculation and evidence of Orange Juice's knowledge, but not the intent of Pedroza's actions." *Id.* at *6.

New Plaintiffs merely allege that Redwood *understood* MindGeek was "intentionally embracing child pornography and other nonconsensual content." *See, e.g.,* K.A. Compl., W.L. Compl., and W.P. Compl. ¶ 247.   While Redwood strenuously disputes that allegation, even taken as true, that alleged knowledge is not enough to meet the pleading standard for civil conspiracy.  Just as the court rejected a civil conspiracy claim against Orange Juice Blog, even though it received redirected website traffic and allegedly had knowledge of Pedroza's planned conduct, Redwood's alleged knowledge of MindGeek's actions and participation in financing of the entity is not enough to suggest actual intent for the wrongful conduct to occur.  Indeed, as courts have made clear, there must be *more than mere speculation* (which is all that New Plaintiffs have offered) that Redwood *intended* for the underlying violations to take place.  Nothing of the sort is, or can be, alleged in the Complaints.[20]

In the case of all elements and sub-elements of civil conspiracy, New Plaintiffs must also plead conspiracy with specificity.  "'[B]are legal conclusions, inferences, generalities, presumptions, and conclusions are insufficient.'" *Gifford v. Hornbrook Fire Prot. Dist.*, No. 2:16-CV-0596-JAM-DMC, 2021 WL 4168532, at *21 (E.D. Cal. Sept. 14, 2021) (citing, *inter alia*, *State of Cal. ex rel Metz v. CCC Info. Servs., Inc.*, 149 Cal. App. 4th 402, 419 (2007)).

New Plaintiffs also fail to plausibly allege that Redwood agreed to join or had the intent to aid *any* wrongful activity.  *See supra* Section IV.B.5.  The Complaints instead indiscriminately assert the claim against all "Defendants."  *See, e.g.,* K.A.

---

[20] To the contrary, Redwood's financing agreements specifically required that MindGeek *not* violate the law.  *See Fleites* Dkts. 450-2 and 450-3.

DEFENDANT REDWOOD CAPITAL MANAGEMENT, LLC'S
MEM. OF P. & A. ISO MOT. TO DISMISS COMPLS. IN RELATED CASES

Compl. ¶¶ 453-55; W.L. Compl. ¶¶ 456-58; and W.P. Compl. ¶¶ 452-54.  The Complaints, for instance, ground the civil conspiracy claim in other counts not asserted against Redwood and without any specifically alleged ties to Redwood. K.A. Compl. ¶ 453; W.L. Compl. ¶ 456; and W.P. Compl. ¶¶ 452.  The Complaints also state a laundry list of 18 allegedly "wrongful and overt acts," but none are tied to Redwood (K.A. Compl. ¶ 454; W.L. Compl. ¶ 457; W.P. Compl. ¶ 453), except for one allegation regarding "financing" which could be (but is not outright) directed at lenders like Redwood.  *See* K.A. Compl. ¶¶ 454(r); W.L. Compl. ¶ 457(r); and W.P. Compl. ¶ 453(r).  The Complaints then, in a conclusory fashion, parrot the remaining elements of a civil conspiracy claim.  K.A. Compl. ¶¶ 455-56; W.L. Compl. ¶¶ 458-59; W.P. Compl. ¶¶ 454-55.  A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *See Iqbal*, 556 U.S. at 678; *Gifford*, 2021 WL 4168532, at *21 (holding that civil conspiracy claims must be pled with specificity); *Bassam v. Bank of Am.*, No. CV 15-00587 MMM (FFMx), 2015 WL 4127745, at *7 (C.D. Cal. July 8, 2015) (holding that where defendants are not similarly situated, collective pleading violates Rule 8, and dismissing complaint).

### 2.     New Plaintiffs Fail to Allege a Civil Conspiracy.

New Plaintiffs' civil conspiracy claim additionally fails because they have not pled any underlying tort against Redwood (nor can they).  As the California Supreme Court explained in *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503 (1994), the "invocation of conspiracy does not alter th[e] fundamental allocation of duty.  Conspiracy is not an independent tort; it cannot create a duty or abrogate an immunity.  It allows tort recovery only against a party who already owes the duty and is not immune from liability based on applicable substantive tort law principles." *Id.* at 514.  But Redwood, as a prior lender to MindGeek, did not, and does not, owe any duty to any New Plaintiff.

California law is clear that "[a] lender does not owe a borrower or third party any duties 'beyond those expressed in the loan agreement, excepting those imposed due to special circumstance or a finding that a joint venture exists.'" *See River Colony Ests. Gen. P'ship v. Bayview Fin. Trading Grp., Inc.*, 287 F. Supp. 2d 1213, 1224 (S.D. Cal. 2003); *RTC v. BVS Dev., Inc.,* 42 F.3d 1206, 1214 (9th Cir. 1994) ("Only under extraordinary circumstances in which a lender plays an instigating or active role in a development project will a duty to subordinated sellers be imposed.").  A special relationship might exist where a bank, through a loan agreement, can control a borrower, *see, e.g., Kim,* 17 Cal. App. 4th at 979–80, or if a bank offers any provision of trust or fiduciary services, or otherwise agrees to serve as a financial advisor, *see, e.g.*, *Peterson Dev. Co. v. Torrey Pines Bank*, 233 Cal. App. 3d 103, 119 (1991).  None of those circumstances are present here.

The financing agreements between Redwood and MindGeek, among others, were typical of a standard lender-borrower relationship, and the Complaints do not allege (because they cannot) that they created a special circumstance whereby Redwood could owe a duty to New Plaintiffs.  Nor do the Complaints allege that Redwood formed a joint venture or special relationship with MindGeek.  While the Complaints conclusorily allege that the financing agreements gave Redwood "the ability to effectively control the company" (K.A. Compl., W.L. Compl., and W.P. Compl. ¶ 268), this does not establish any "special relationship" necessary for Redwood to owe New Plaintiffs a duty.  *See Kim*, 17 Cal. App. 4th at 979–80 (declining to find a "special relationship" between lender and borrower absent allegations that the lender was "*so involved in the borrower's daily operations that the bank has, in effect, dominated the borrower to the extent that the borrower has lost its separate identity*").

Furthermore, while the Complaints baselessly assert that the financing agreements contained "draconian control rights," *see* K.A. Compl. ¶¶ 258, 268, 347;

- 49 -

W.L. Compl. and W.P. Compl. ¶¶ 258, 268, 349, they do not allege sufficient facts to show "how [any specific provisions] of the [financing] agreement[s] . . . gave [Redwood] authority over" aspects of MindGeek's daily business operations implicating New Plaintiffs. *See Kim,* 17 Cal. App. 4th at 980. This is unsurprising, given that the financing agreements did not actually provide Redwood with any "draconian control rights," but affirmatively required that MindGeek ███████

████████████████████████████████████████████████████████████

███████████████████████████████████████████. *See supra* Section II.B. The Complaints contain no contrary allegations of Redwood specifically exercising any such control. There are no allegations that Redwood participated in any day-to-day management of MindGeek's content, its operations, its choice of content, its moderation, or any of the decisions that led to Plaintiffs' videos being posted or taken down.

This is because Redwood is "merely a lender whose [former] interest in [MindGeek's] business extend[ed] only as far as its interest in timely repayment and the value of its security." *RTC*, 42 F.3d at 1214. Plaintiffs do not and cannot establish that Redwood owed Plaintiffs any duty, which it could have violated and caused their injuries. Finally, Redwood cannot be held liable for the actions of other defendants that may or may not owe a duty to New Plaintiffs. *Everest Invs. 8 v. Whitehall Real Est. Ltd. P'shp XI*, 100 Cal. App. 4th 1102, 1107-08 (2002) (holding that a non-fiduciary defendant cannot be held liable for conspiring with a fiduciary defendant to breach the fiduciary's duty to the plaintiff).

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Redwood respectfully requests that the Court dismiss the Related Cases against Redwood with prejudice.

1

2    DATED:  October 30, 2024                    **PAUL HASTINGS LLP**

3

4                                                By: */s/James M. Pearl*

5                                                     JAMES M. PEARL

6                                                *Attorneys for Defendant Redwood*
                                                 *Capital Management, LLC*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Redwood Capital Management, LLC, certifies that this brief contains 50 pages, which complies with the 50-page limit set in the Court's Order Granting Joint Stipulation to Request Limited Coordination for Purposes of Responding to Complaints in Related Cases dated October 8, 2024 in Case No. 2:24-cv-05190-WLH-ADS at ECF No. 46.


DATED:  October 30, 2024              **PAUL HASTINGS LLP**


                                      By  */s/James M. Pearl*
                                          JAMES M. PEARL

- 52 -