1  David G. Hille (*pro hac vice*)
   dhille@whitecase.com
2  Kevin C. Adam (*pro hac vice*)
   kevin.adam@whitecase.com
3  WHITE & CASE LLP
4  1221 Avenue of the Americas
   New York, NY  10020-1095
5  Telephone:   (212) 819-8357
   Facsimile:    (212) 354-8113
6

7  Russell J. Gould (SBN 313352)
   russell.gould@whitecase.com
8  WHITE & CASE LLP
   555 S. Flower Street, Suite 2700
9  Los Angeles, CA  90071-2433
   Telephone:  (213) 620-7700
10 Facsimile:   (213) 452-2329

11
   Attorneys for Defendants
12
                    UNITED STATES DISTRICT COURT
13
                  CENTRAL DISTRICT OF CALIFORNIA
14
                         WESTERN DIVISION
15

| | |
|---|---|
| K.A.,<br><br>                    Plaintiff,<br><br>        v.<br><br>MINDGEEK S.A.R.L., et al.,<br><br>                    Defendants. | Case No. 2:24-cv-04786-WLH-ADS<br><br>Hon. Wesley L. Hsu<br><br>**DEFENDANTS COLBECK CAPITAL MANAGEMENT, LLC; CB MEDIA VENTURES DD, LLC; CB AGENCY SERVICES, LLC; AND CB PARTICIPATIONS SPV, LLC'S OMNIBUS:**<br><br>**(1)  NOTICE OF MOTION AND MOTION TO DISMISS; AND**<br><br>**(2)  MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>*Concurrently filed with Declaration of David G. Hille and [Proposed] Order*<br><br>Hearing:     January 31, 2025<br>Time:         1:30 p.m.<br>Courtroom: 9B |

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, on January 31, 2025, at 1:30 p.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Wesley L. Hsu, United States District Court, Courtroom 9B, 350 W. First Street, Los Angeles, California, 90012, under Rules 8(a), 9(b), 12(b)(1), 12(b)(6), and 15(a)(2) of the Federal Rules of Civil Procedure, Defendants Colbeck Capital Management, LLC; CB Media Ventures DD, LLC; CB Agency Services, LLC; and CB Participations SPV, LLC (collectively, "CB Defendants") will and hereby do move for an order to dismiss with prejudice the following fourteen actions currently before the Court ("Actions"):

    a. *K.A. v. MindGeek S.à.r.l., et al.*, No. 2:24-cv-04786-WLH-ADS (C.D. Cal. June 7, 2024);

    b. *N.L. v. MindGeek S.à.r.l., et al.*, No. 2:24-cv-04788-WLH-ADS (C.D. Cal. June 7, 2024);

    c. *L.T. v. MindGeek S.à.r.l., et al.*, No. 2:24-cv-04791-WLH-ADS (C.D. Cal. June 7, 2024);

    d. *T.C. v. MindGeek S.à.r.l.., et al.*, No. 2:24-cv-04795-WLH-ADS (C.D. Cal. June 7, 2024);

    e. *X.N. v. MindGeek S.à.r.l., et al.*, No. 2:24-cv-04800-WLH-ADS (C.D. Cal. June 7, 2024);

    f. *N.Y. v. MindGeek S.à.r.l., et al.*, No. 2:24-cv-04801-WLH-ADS (C.D. Cal. June 7, 2024);

    g. *J.C. v. MindGeek S.à.r.l., et al.*, No. 2:24-cv-04971-WLH-ADS (C.D. Cal. June 12, 2024);

    h. *W.L. v. MindGeek S.à.r.l., et al.*, No. 2:24-cv-04977-WLH-ADS (C.D. Cal. June 13, 2024);

    i. *C.S. v. MindGeek S.à.r.l., et al.*, No. 2:24-cv-04992-WLH-ADS (C.D. Cal. June 13, 2024);

j.  *S.O. v. MindGeek S.à.r.l., et al.*, No. 2:24-cv-04998-WLH-ADS (C.D. Cal. June 13, 2024);

k.  *L.S. v. MindGeek S.à.r.l., et al.*, No. 2:24-cv-05026-WLH-ADS (C.D. Cal. June 14, 2024);

l.  *W.P. v. MindGeek S.à.r.l., et al.*, No. 2:24-cv-05185-WLH-ADS (C.D. Cal. June 20, 2024);

m. *A.K. v. MindGeek S.à.r.l., et al.*, No. 2:24-cv-05190-WLH-ADS (C.D. Cal. June 20, 2024); and

n.  *J.L. v. MindGeek S.à.r.l., et al.*, No. 2:24-cv-07046-WLH-ADS (C.D. Cal. June 20, 2024).[1]

The CB Defendants submit this Omnibus Notice of Motion and Motion, including the appended Memorandum of Points of Authorities, pursuant to the Court's October 9, 2024 Order Granting Joint Stipulation to Request Limited Coordination For Purposes of Responding to Complaints in Related Cases, ECF No. 54, and October 28, 2024 Order Granting Joint Stipulation to Request Extension of Remaining Briefing Schedule and Limited Coordination For Purposes of Responding to Complaints in Related Cases, ECF No. 58.

The CB Defendants make this Motion on the grounds that Plaintiffs lack standing to assert a claim against the CB Defendants under Article III, Section 2, Clause 1 of the U.S. Constitution and that Plaintiffs fail to state a claim for relief against the CB Defendants.  The CB Defendants request that the Court dismiss all claims against them in the Complaints without leave to amend:  (1) Count III—violation of 18 U.S. Code Sections 1591 and 1595 of the Trafficking Victims Protection Reauthorization Act ("TVPRA"); (2) Count IV—violation of 18 U.S.

---

[1]  Specifically, Colbeck Capital Management, LLC moves to dismiss the thirteen Complaints filed by Plaintiffs K.A., N.L, L.T., T.C., X.N., N.Y., J.C., W.L., C.S., S.O., L.S., W.P., and A.K.; and the CB Defendants move to dismiss the Complaint filed by Plaintiff J.L. (the only action of the fourteen Actions that names all four CB Defendants as defendants).

Code Sections 1594(c) and 1595 of the TVPRA; (3) Count XIV—violation of California's Unfair Competition Law ("UCL") and False Advertising Law ("FAL") under Sections 17200 and 17500 of the California Business and Professions Code; (4) Count XVI—intentional infliction of emotional distress; and (5) Count XVII—civil conspiracy.

The CB Defendants base their Motion on this Notice of Motion and Motion; the Memorandum of Points and Authorities; the Declaration of David G. Hille, with Exhibits A-B; all pleadings and other papers filed in this action; and all other matters of which the Court may take judicial notice.

Pursuant to Local Civil Rule 7-3, this Motion is made following the conference of counsel, which took place on October 14, 2024.

Dated:  October 30, 2024                    WHITE & CASE LLP

By: _David G. Hille_____
       David G. Hille

Attorneys for Defendants
COLBECK CAPITAL
MANAGEMENT, LLC; CB MEDIA
VENTURES DD, LLC; CB AGENCY
SERVICES, LLC; and CB
PARTICIPATIONS SPV, LLC

- 4 -

## MEMORANDUM OF POINTS AND AUTHORITIES

### TABLE OF CONTENTS

**Page(s)**

I.    PRELIMINARY STATEMENT ............................................................ 1

II.   BACKGROUND ................................................................................ 3

    A.    Plaintiffs Allege Third Parties Posted Sexually Explicit Videos of Plaintiffs as Minors That Appeared on MindGeek Websites ........... 3

    B.    Plaintiffs Allege, Through Group-Pleading, That the CB Defendants—Along With Many Other Third-Party Lenders—Issued Loans to MindGeek in 2011 and 2013 ...................................... 4

    C.    Plaintiffs File Fourteen Complaints Against the CB Defendants and Sixteen Other Defendants .................................................. 7

    D.    Plaintiffs' Allegations Against the CB Defendants Are Conclusory, Implausible, and Contradicted by Other Allegations and the Loan Agreements .................................... 8

III.  PLAINTIFFS LACK STANDING BECAUSE THEIR ALLEGED INJURIES ARE NOT FAIRLY TRACEABLE TO ANY CB DEFENDANT ................................................................................. 11

IV.   PLAINTIFFS FAIL TO STATE A CLAIM AGAINST THE CB DEFENDANTS UNDER RULE 12(B)(6) ...................................... 15

    A.    Plaintiffs Fail to Plead a Claim Under the TVPRA Against the CB Defendants ..................................................................... 16

        1.    There Is No Beneficiary Claim Because the CB Defendants Did Not Knowingly Participate In, or Benefit from, a Sex-Trafficking Venture—Nor Should They Have Known of Plaintiffs' Alleged Trafficking ....................... 17

        2.    Plaintiffs' Conspiracy Claims Must Be Dismissed Because the Challenged Conduct Predates the Enactment of the ATRA, and Plaintiffs Nevertheless Fail to Plausibly Plead Conspiracy ............................................... 21

    B.    Plaintiffs Fail to Plead Claims Under California Law Against the CB Defendants ................................................................. 25

        1.    Plaintiffs, Alleged Victims of *Sex-Trafficking*, Do Not

Allege Plausible Facts to Assert *Consumer-Protection* Claims for Unfair Competition or False Advertising................25

    2.    The Complaints Lack Any Plausible Allegations to Support a Claim for Civil Conspiracy.......................................28

    3.    The Complaints Fail to State Claims for IIED.........................33

    4.    The California Claims Are Also Barred by Statutes of Limitations.................................................................................35

C.    All of Plaintiffs' Claims Fail Because the CB Defendants—as Participants in Loans to "MindGeek" in 2011 and 2013—Did Not *Cause* Plaintiffs' Alleged Injuries..................................37

D.    Section 230 Also Bars Plaintiffs' Claims Against the CB Defendants..............................................................................40

E.    The Court Should Dismiss Plaintiffs' Claims Against the CB Defendants with Prejudice ..................................................41

V.    CONCLUSION ...........................................................................43

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*117 Sales Corp. v. Olsen*,
 80 Cal. App. 3d 645 (1978) ................................................................. 31

*A. B. v. Salesforce.com, Inc.*,
 No. 4:20-cv-1254, 2021 WL 3616097
 (S.D. Tex. Mar. 22, 2021) ............................................................. 30, 31

*Ajzenman v. Off. of Comm'r of Baseball*,
 487 F. Supp. 3d 861 (C.D. Cal. 2020).......................................... 30, 37

*Al-Ahmed v. Twitter, Inc.*,
 648 F. Supp. 3d 1140 (N.D. Cal. 2023)............................................... 35

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
 7 Cal. 4th 503 (1994)........................................................................... 29

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ............................................................... 15, 16, 30

*Atkinson v. Meta Platforms, Inc.*,
 No. 20-17489, 2021 WL 5447022 (9th Cir. Nov. 22, 2021)................ 42

*Barnes v. Yahoo!, Inc.*,
 570 F.3d 1096 (9th Cir. 2009) ............................................................. 40

*Batzel v. Smith*,
 333 F.3d 1018 (9th Cir. 2003) ............................................................. 40

*Beatport LLC v. SoundCloud Ltd.*,
 No. 2:19-cv-847-MRW, 2020 WL 3977602 (C.D. Cal. July 13, 2020) ............. 15

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ............................................................................. 15

*Benson v. JPMorgan Chase Bank, N.A.*,
 No. 3:09-cv-5272-EMC, 2010 WL 1526394
 (N.D. Cal. Apr. 15, 2010) .............................................................. 31, 32

- iii -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Boschma v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,
    No. 2:18-cv-2623-VAP-KK, 2018 WL 2251629
    (C.D. Cal. May 16, 2018) ................................................................. 13

*Buick v. World Sav. Bank*,
    637 F. Supp. 2d 765 (E.D. Cal. 2008) ................................................ 31

*Cabrera v. Residential Credit Sol. Inc.*,
    No. 2:14-cv-09212-DMG-AWJ, 2015 WL 13916231
    (C.D. Cal. Sept. 10, 2015) ................................................................ 42

*Caraccioli v. Facebook, Inc.*,
    167 F. Supp. 3d 1056 (N.D. Cal. 2016) ............................................. 34

*Carroll v. Lee*,
    No. 2:08-cv-975-RSL, 2009 WL 2855727
    (W.D. Wash. Aug. 31, 2009) ............................................................. 36

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
    20 Cal. 4th 163 (1999) ...................................................................... 27

*Chern v. Bank of Am.*,
    15 Cal. 3d 866 (1976) ....................................................................... 28

*Christensen v. Super. Ct.*,
    54 Cal. 3d 868 (1991) ................................................................... 33, 34

*City of Oakland v. Wells Fargo & Co.*,
    14 F.4th 1030 (9th Cir. 2021) ........................................................... 38

*Coon v. Joseph*,
    192 Cal. App. 3d 1269 (1987) .......................................................... 33

*Craigslist Inc. v. 3Taps Inc.*,
    942 F. Supp. 2d 962 (2013) .............................................................. 31

*Daro v. Super. Ct.*,
    151 Cal. App. 4th 1079 (2007) .................................................... 26, 38

*Davis v. Powell*,
    901 F. Supp. 2d 1196 (S.D. Cal. 2012) ............................................ 41

*Doe #1 v. Red Roof Inns, Inc.*,
    21 F.4th 714 (11th Cir. 2021) ........................................................... 21

*Doe #1 v. Twitter, Inc.*,
  No. 22-15103, 2023 WL 3220912 (9th Cir. May 3, 2023) ................................ 40

*Doe 1 v. Deutsche Bank Aktiengesellschaft*,
  671 F. Supp. 3d 387 (S.D.N.Y. 2023) ........................................................ 24, 30

*Doe I v. Apple Inc.*,
  No. 1:19-cv-3737-CJN, 2021 WL 5774224
  (D.D.C. Nov. 2, 2021) ............................................................................... 14

*Doe v. Cal. Inst. of Tech.*,
  No. 2:19-cv-01005-AB-KS, 2020 WL 8463631
  (C.D. Cal. Feb. 4, 2020) .................................................................. 33, 35, 38

*Doe v. Wyndham Hotels & Resorts*,
  No. 8:23-cv-1554-JVS-JDE, 2024 WL 2104596
  (C.D. Cal. Feb. 28, 2024) ............................................................................ 37

*Does 1-6 v. Reddit, Inc.*,
  51 F.4th 1137 (9th Cir. 2022) ...................................................................... 20

*Douglas v. Hirshon*,
  63 F.4th 49 (1st Cir. 2023) ..................................................................... 31, 39

*Dyroff v. Ultimate Software Grp., Inc.*,
  934 F.3d 1093 (9th Cir. 2019) ..................................................................... 40

*Emery v. Visa Int'l Serv. Ass'n*,
  95 Cal. App. 4th 952 (2002) ........................................................................ 25

*Fitbug Ltd. v. Fitbit, Inc.*,
  78 F. Supp. 3d 1180 (N.D. Cal. 2015) ......................................................... 26

*Fleites v. MindGeek S.à.r.l.*,
  617 F. Supp. 3d 1146 (C.D. Cal. 2022) .................................................. passim

*Fleites v. MindGeek S.à.r.l.*,
  No. 2:21-cv-04920-CJC-ADS, 2022 WL 4455558
  (C.D. Cal. July 29, 2022) ............................................................................ 15

*Foman v. Davis*,
  371 U.S. 178 (1962) .................................................................................... 41

*Food & Drug Admin. v. All. For Hippocratic Med.*,
  602 U.S. 367 (2024) .................................................................................... 12

*Foster Poultry Farms v. Alkar-Rapidpak-MP Equip., Inc.*,
   No. 1:11-cv-00030-AWI-SMS, 2013 WL 398664
   (E.D. Cal. Jan. 31, 2013) ............................................................................. 42

*Geiss v. Weinstein Co. Holdings LLC*,
   383 F. Supp. 3d 156 (S.D.N.Y 2019) ......................................................... 20

*Gifford v. Hornbrook Fire Prot. Dist.*,
   No. 2:16-cv-596-JAM-DMC, 2021 WL 4168532
   (E.D. Cal. Sept. 14, 2021) ........................................................................... 29

*Hodsdon v. Mars, Inc.*,
   162 F. Supp. 3d 1016 (N.D. Cal. 2016) ...................................................... 27

*Hughes v. Pair*,
   46 Cal. 4th 1035 (2009) .............................................................................. 34

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009) ................................................................................ 26

*J.B. v. G6 Hosp., LLC*,
   No. 4:19-cv-7848-HSG, 2020 WL 4901196
   (N.D. Cal. Aug. 20, 2020) ..................................................................... 18, 20

*J.B. v. G6 Hosp., LLC*,
   No. 4:19-cv-7848-HSG, 2021 WL 4079207
   (N.D. Cal. Sept. 8, 2021) ............................................................................ 17

*Jackson v. Kaiser Permanente*,
   No. 2:18-cv-8176-DSF-PLA, 2019 WL 10893916
   (C.D. Cal. Jan. 8, 2019) .............................................................................. 16

*Johnson v. Ocwen Loan Servicing, LLC*,
   No. 5:17-cv-1373-JGB-SP, 2017 WL 10581088
   (C.D. Cal. Dec. 11, 2017) ........................................................................... 28

*Jones v. Hollywood Unlocked*,
   *No.* 2:21-cv-7929-MEMF-PVC, 2022 WL 18674460
   (C.D. Cal. Nov. 22, 2022) ............................................................. 28, 29, 31

*Justo v. Indymac Bancorp*,
   No. 8:09-cv-1116-JVS-AGR, 2010 WL 623715
   (C.D. Cal. Feb. 19, 2010) ........................................................................... 38

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Kader v. S. Cal. Med. Ctr., Inc.*,
    99 Cal. App. 5th 214 (2024)................................................................. 35, 37

*Krivo Indus. Supply Co. v. Nat'l Distillers & Chem. Corp.*,
    483 F.2d 1098 (5th Cir. 1973) ................................................................. 39

*Kwikset Corp. v. Super. Ct.*,
    51 Cal. 4th 310 (2011)......................................................................... 26, 38

*Lauter v. Anoufrieva*,
    642 F. Supp. 2d 1060 (C.D. Cal. 2009)................................................. 36

*Lavie v. Procter & Gamble Co.*,
    105 Cal. App. 4th 496 (2003).................................................................. 26

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014) ............................................................................ 37, 38

*Life Savers Concepts Ass'n of California v. Wynar*,
    387 F. Supp. 3d 989 (N.D. Cal. 2019)................................................... 42

*Lujan v. Defs. Of Wildlife*,
    504 U.S. 555 (1992) ............................................................................... 12

*Marder v. Lopez*,
    450 F.3d 445 (9th Cir. 2006) ................................................................... 6

*Moss v. United States Secret Serv.*,
    572 F.3d 962 (9th Cir. 2009)................................................................... 16

*Murphy v. Am. Gen. Life Ins. Co.*,
    74 F. Supp. 3d 1267 (C.D. Cal. 2015)................................................... 30

*Myvett v. Litton Loan Servicing, LP*,
    No. 3:08-cv-05797-MMC, 2010 WL 761317
    (N.D. Cal. Mar. 3, 2010) ....................................................................... 37

*Nationwide Biweekly Admin., Inc. v. Super. Ct. of Alameda Cnty.*,
    9 Cal. 5th 279 (2020).............................................................................. 28

*Newsome v. United States*,
    No. 1:04-cv-05335-NEW, 2006 WL 1153609
    (E.D. Cal. Apr. 28, 2006) ....................................................................... 34

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Nymark v. Heart Fed. Sav. & Loan Ass'n*,
    231 Cal. App. 3d 1089 (1991) ................................................................ 29

*Ogden v. Wells Fargo Bank, N.A.*,
    No. 2:15-cv-3410-DMG-AS, 2019 WL 6721583
    (C.D. Cal. July 22, 2019) ...................................................................... 35

*People v. McKale*,
    25 Cal. 3d 626 (1979) ............................................................................ 27

*People v. Zamora*,
    18 Cal. 3d 538 (1976) ............................................................................ 36

*Plutos Sama Holdings, Inc. v. Jagex Ltd.*,
    No. 8:21-cv-133-JVS-JDE, 2022 WL 1536590
    (C.D. Cal. Jan. 12, 2022) ...................................................................... 39

*Ratha v. Phatthana Seafood Co.*,
    35 F.4th 1159 (9th Cir. 2022) ................................................ 18, 20, 21, 22

*Ratha v. Phatthana Seafood Co.*,
    No. 2:16-cv-4271-JFW-AS, 2017 WL 8293174
    (C.D. Cal. Dec. 21, 2017) ................................................................ 18, 20

*Ratha v. Rubicon Res., LLC*,
    No. 23-55299, 2024 WL 3589751 (9th Cir. July 31, 2024) ................ 23

*Reaud v. Facebook Inc.*,
    No. 3:23-cv-06329-AMO, 2024 WL 4126066
    (N.D. Cal. Sept. 9, 2024) ...................................................................... 33

*Resolution Tr. Corp. v. BVS Dev., Inc.*,
    42 F.3d 1206 (9th Cir. 1994) ................................................................ 29

*River Colony Ests. Gen. P'ship v. Bayview Fin. Trading Grp., Inc.*,
    287 F. Supp. 2d 1213 (S.D. Cal. 2003) ............................................... 29

*Rozario v. Richards*,
    No. 2:14-cv-9540-AB-JPR, 2015 WL 13357613
    (C.D. Cal. Apr. 22, 2015) ...................................................................... 40

*Shaeffer v. Califia Farms, LLC*,
    44 Cal. App. 5th 1125 (2020) ............................................................... 26

*S.J. v. Choice Hotels Int'l, Inc.*,
        473 F. Supp. 3d 147 (E.D.N.Y. 2020)...................................................21

*Sloatman v. Housewright*,
        No. 2:21-cv-8235-DOC-MAA, 2022 WL 4390458
        (C.D. Cal. Sept. 6, 2022) ...................................................................30

*Soliman v. CVS RX Servs., Inc.*,
        570 F. App'x 710 (9th Cir. 2014).......................................................35

*Spokeo, Inc. v. Robins*,
        578 U.S. 330 (2016) ...........................................................................12

*State ex rel. Metz v. CCC Info. Servs., Inc.*,
        149 Cal. App. 4th 402 (2007)..............................................................32

*Stein v. World-Wide Plumbing Supply Inc.*,
        71 F. Supp. 3d 320 (E.D.N.Y. 2014)...................................................24

*Summers v. Earth Island Inst.*,
        555 U.S. 488 (2009) ...........................................................................12

*Transgo, Inc. v. Ajac Transmission Parts Corp.*,
        768 F.2d 1001 (9th Cir. 1985).............................................................24

*Twitter, Inc. v. Taamneh*,
        598 U.S. 471 (2023) ...........................................................................24

*United States v. Anthony*,
        942 F.3d 955 (10th Cir. 2019).............................................................24

*United States v. Bazar*,
        747 F. App'x 454 (9th Cir. 2018)........................................................17

*United States v. Svoboda*,
        347 F.3d 471 (2d Cir. 2003)................................................................24

*Warth v. Seldin*,
        422 U.S. 490 (1975) ...........................................................................12

*Wasco Prods., Inc. v. Southwall Techs. Inc.*,
        435 F.3d 989 (2006) ...........................................................................31

*Washington Env't Council v. Bellon*,
        732 F.3d 1131 (9th Cir. 2013).......................................................12, 13

*Wassmann v. S. Orange Cnty. Cmty. Coll. Dist.*,
    24 Cal. App. 5th 825 (2018) ......................................................... 24

*Williams v. Sisolak*,
    No. 22-16859, 2024 WL 194180 (9th Cir. Jan. 18, 2024) .................................. 13

*Winsor v. Sequoia Benefits & Ins. Servs., LLC*,
    62 F.4th 517 (9th Cir. 2023) ....................................................... 12, 14

*Yumul v. Smart Balance, Inc.*,
    733 F. Supp. 2d 1117 (C.D. Cal. 2010) ...................................... 27, 28, 35

*Z & Z Leasing, Inc. v. Graying Reel, Inc.*,
    873 F. Supp. 51 (E.D. Mich. 1995) ........................................... 39

## FEDERAL STATUTES

18 U.S.C. § 1591(a)(2) ....................................................... 16

18 U.S.C. § 1594(c) ........................................................... 16

18 U.S.C. § 1595(a) ........................................................... 17

18 U.S.C. § 2257 ................................................................ 9

42 U.S.C. § 9601(20) ........................................................ 39

47 U.S.C. § 230(c)(1) ........................................................ 40

Pub. L. No. 117-347, 136 Stat. 6199 (2023) ........................ 22

## FEDERAL RULES

Fed. R. Civ. P. 8(a) ...................................................... 30, 31

Fed. R. Civ. P. 9(b) ...................................................... 27, 28

Fed. R. Civ. P. 12(b) ................................................... passim

Fed. R. Civ. P. 15(a)(2) ....................................................... 41

## STATE STATUTES

Cal. Bus. & Prof'l Code § 17200 .................................... 25, 26

Cal. Bus. & Prof'l Code § 17208 ........................................ 35

- x -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Cal. Bus. & Prof'l Code § 17500 ................................................................. 28

Cal. Civ. Proc. Code § 338(a) .................................................................... 35

MEMORANDUM IN SUPPORT OF CB DEFENDANTS'
OMNIBUS MOTION TO DISMISS

## I.    **PRELIMINARY STATEMENT**

The CB Defendants do not belong in any of the fourteen actions currently before the Court.  Plaintiffs allege that sexually explicit videos of them as minors were uploaded to MindGeek's websites without their consent.  Yet not one of the Plaintiffs contends that the CB Defendants were involved in any way in this alleged conduct.  Plaintiffs instead allege that the CB Defendants—lenders regulated by the U.S. Securities and Exchange Commission—are liable because they issued loans in 2011 and 2013 to certain MindGeek entities, including the entity that operated Pornhub.

Absent from the Complaints are any allegations that the CB Defendants knew of any videos of Plaintiffs, let alone that the CB Defendants played any role as to any such videos.  Plaintiffs do not allege that any CB Defendant had contact with, or knowledge of, any Plaintiff or the people who allegedly recorded or uploaded the videos.  Nor do Plaintiffs allege that the CB Defendants were involved in MindGeek's alleged decisions to review or label the videos or to remove the videos from MindGeek's websites.  Plaintiffs also fail to allege that the CB Defendants received any specific financial benefit from the videos, including from advertising or other revenue.  And Plaintiffs do not allege that the CB Defendants agreed with any MindGeek entity, or anyone else, about Plaintiffs, videos of Plaintiffs, or child sexual abuse material ("CSAM").  In fact, the CB Defendants' loan agreements required MindGeek to comply with U.S. law on CSAM and prohibited MindGeek's websites from containing CSAM.

Courts, including the U.S. Court of Appeals for the Ninth Circuit, have rejected sex-trafficking and other claims based on attenuated liability theories like those advanced by Plaintiffs against the CB Defendants here.  Indeed, the law does not and should not impose vicarious liability on lenders, like the CB Defendants, for the actions of their borrowers.  Nor does a lender become responsible for a borrower's actions simply by issuing a loan.  Allowing Plaintiffs to proceed past the Rule 12

1    stage with such a theory invites an onslaught of baseless lawsuits against lenders for

2    the acts of borrowers, for any and all types of alleged borrower misconduct.

3        The 2011 and 2013 loans to MindGeek, in which the CB Defendants

4    participated along with many other lenders, concluded in 2018—before alleged

5    CSAM on Pornhub and similar websites gained significant attention in 2019 through

6    2023.  This fact compounds the many deficiencies in the Complaints' limited

7    allegations about the CB Defendants.  Those implausible allegations—such as the

8    CB Defendants (as loan participants with many other third-party lenders) purportedly

9    owned MindGeek or wanted MindGeek websites to have CSAM—are group-

10   pleaded, conclusory, and contradicted by many other allegations in each Complaint.

11       Plaintiffs' claims against the CB Defendants fail for several independent

12   reasons.  As an initial matter, Plaintiffs lack standing.  The CB Defendants never

13   interacted with Plaintiffs or their alleged traffickers who participated in, recorded, or

14   uploaded the videos.  Nor did the CB Defendants operate the websites to which the

15   videos were uploaded.  The CB Defendants' role as a lender is not fairly traceable to

16   any Plaintiffs' alleged injury.

17       Plaintiffs also fail to state a claim under Rule 12(b)(6).  The Ninth Circuit—

18   including in an opinion issued in July 2024—has made clear that Plaintiffs' theories

19   of beneficiary liability and conspiracy liability under the TVPRA against the CB

20   Defendants fail as a matter of law.  Plaintiffs also fail to allege plausible facts about

21   the CB Defendants to support their consumer-protection claims under the UCL or the

22   FAL.  Plaintiffs do not even allege the most basic element of their civil conspiracy

23   claim—an *agreement* to commit a tort (by perpetuating CSAM) that harmed

24   Plaintiffs.  Plaintiffs also do not, and indeed could not plausibly, allege that the CB

25   Defendants intended to cause Plaintiffs severe emotional distress.  Lack of causation

26   and Section 230 of the Communications Decency Act provide additional grounds to

27   dismiss all claims, and the statutes of limitations also bar Plaintiffs' California-law

28   claims.

1       There are currently fifteen total actions before the Court, including the fourteen

2  Complaints and *Fleites v. MindGeek S.à.r.l., et al.*, No. 2:21-cv-04920-WLH-ADS

3  (C.D. Cal. Jun 17, 2021).  Plaintiffs' counsel has stated they intend to file more cases.

4  Despite fifteen opportunities, however, no Plaintiff has alleged—nor can any

5  Plaintiff allege—plausible facts to support any theory of liability against the CB

6  Defendants.  Plaintiffs' individual and collective failures to provide any such

7  allegations confirm that the CB Defendants do not belong in these cases.

8       For these and other reasons explained in this Motion, the Court should dismiss

9  all claims against the CB Defendants with prejudice.  The false allegations against

10  the CB Defendants in the Complaints continue to cause reputational damage.  The

11  defects rooted in each Plaintiff's allegations, claims, and liability theory against the

12  CB Defendants cannot be cured by amendment.  With sympathy for the difficult and

13  painful circumstances alleged in the Complaints, there is no basis for the CB

14  Defendants to remain in these actions.

15  **II.**    **BACKGROUND**

16      **A.**    **Plaintiffs Allege Third Parties Posted Sexually Explicit Videos of**

17              **Plaintiffs as Minors That Appeared on MindGeek Websites**

18       Each Plaintiff alleges that third parties unaffiliated with the CB Defendants

19  recorded or coerced the Plaintiff into recording sexually explicit videos[2] of the

20  Plaintiff as a minor, which videos were uploaded to Pornhub or similar websites

21  operated by certain MindGeek Entity Defendants.[3]  *See* K.A. Compl. ¶ 311; N.L

---

22  [2]  Plaintiffs L.T. and N.Y. also allege that still images of Plaintiffs as minors were

23  uploaded to MindGeek's websites.  *See* L.T. Compl. ¶ 312; N.Y. Compl. ¶ 311.  In this Motion, the CB Defendants refer to videos and images collectively as "videos."

24  [3]  In this Motion, the CB Defendants refer to (i) defendants MindGeek S.à.r.l., MG Freesites, Ltd., MindGeek USA Incorporated, MG Premium Ltd., MG Global

25  Entertainment, Inc., and 9219-1568 Quebec, Inc. collectively as "MindGeek Entity

26  Defendants" or "MindGeek"; (ii) defendants Bernd Bergmair, Feras Antoon, and David Tassillo as "Individual Defendants"; (iii) the MindGeek Entity Defendants and

27  the Individual Defendants collectively as "MindGeek Defendants"; (iv) defendant Visa, Inc. as "Visa"; and (v) defendants Redwood Capital Management, LLC,

28  Redwood Master Fund, LTD, Redwood Opportunity Master Fund, Ltd., Manuel 018,

Compl. ¶ 311; L.T. Compl. ¶ 311; X.N. Compl. ¶¶ 311-15; N.Y. Compl. ¶¶ 311-12; W.L. Compl. ¶¶ 311-12; C.S. Compl. ¶¶ 311-12; S.O. Compl. ¶¶311-12; L.S. Compl. ¶¶ 311-13; A.K. Compl. ¶ 311; J.C. Compl. ¶ 311; T.C. ¶¶ 311-12; W.P. Compl. ¶¶ 311-12; J.L. Compl. ¶¶ 311-18.  Most of the Complaints allege that the videos of Plaintiffs were recorded and uploaded to MindGeek's websites between 2017 and 2020.  *See* K.A. Compl. ¶ 311; N.L Compl. ¶ 311; L.T. Compl. ¶ 311; X.N. Compl. ¶¶ 311-12; N.Y. Compl. ¶¶ 312-13; C.S. Compl. ¶¶ 311-12; S.O. Compl. ¶¶ 311-12; L.S. Compl. ¶¶ 311-13.  Three Plaintiffs (J.C., T.C., and W.P.) do not allege when the videos of them were recorded or uploaded.  *See generally,* J.C. Compl. ¶¶ 311-19; T.C. ¶¶ 311-18; W.P. Compl. ¶¶ 311-17.  Plaintiff J.L. alleges a video of Plaintiff was recorded by individuals associated with the adult-content website GirlsDoPorn in 2007 and uploaded to GirlsDoPorn's website sometime between 2007 and 2009. J.L. Compl. ¶¶ 309-15.

Some Plaintiffs secured the removal of the videos from MindGeek's websites. *See* K.A. Compl. ¶ 316; L.T. Compl. ¶ 316; A.K. Compl. ¶ 316; J.L. Compl. ¶ 323. Certain Plaintiffs allege that videos were taken down but uploaded again.  *See* N.L Compl. ¶¶ 317-18; X.N. Compl. ¶¶ 315-16; N.Y. Compl. ¶¶ 316-22; W.L. Compl. ¶¶ 313-16; C.S. Compl. ¶¶ 312, 315; S.O. Compl. ¶¶ 315-16; L.S. Compl. ¶¶ 316-17; J.C. Compl. ¶ 315; T.C. ¶¶ 315-16.

**B.** **Plaintiffs Allege, Through Group-Pleading, That the CB Defendants—Along With Many Other Third-Party Lenders— Issued Loans to MindGeek in 2011 and 2013**

The Complaints mostly consist of allegations related to "MindGeek" generally.  Plaintiffs allege facts describing MindGeek's business model; the pornography industry as a whole; MindGeek's content moderation processes and policies; the Individual Defendants, who were alleged former owners and officers of

LLC, Ginogerum, LLC, and White-Hathaway Opportunity Fund, LLC collectively as "Redwood Defendants."

1   MindGeek; and supposed alter-ego allegations related to MindGeek.  *See, e.g.*, K.A.

2   Compl. ¶¶ 41-61, 70-107, 150-245, 300-10.[4]

3     The allegations against the CB Defendants, however, are limited.  Plaintiffs do

4   not allege that the CB Defendants had any knowledge of or contact with Plaintiffs,

5   the persons who recorded any videos, or the persons who uploaded or downloaded

6   videos.  Nor does any Plaintiff allege that a CB Defendant had any involvement with

7   MindGeek's alleged review of videos or decisions to remove them from MindGeek's

8   websites.  Rather, Plaintiffs allege that the CB Defendants provided and arranged for

9   loans to MindGeek in 2011 and 2013.  *See, e.g.*, *id.* ¶¶ 7, 246.

10    Plaintiffs allege that Colbeck Capital Management is the hedge fund manager

11  for three other hedge funds, through which Colbeck Capital Management provided

12  loans.  *See, e.g.*, *id.* ¶ 25; *see also* J.L. Compl. ¶ 25.  The Complaints individually

13  identify the CB Defendants only once.  *See, e.g.*, K.A. Compl. ¶¶ 25-26 (identifying

14  Colbeck Capital Management and "Colbeck Doe Funds 1-3" without referencing any

15  other CB Defendant); J.L. Compl. ¶ 25 (identifying each of the four CB Defendants).[5]

16    The Complaints purport to refer to the CB Defendants in four ways:   (i)

17  "Colbeck" (all four CB Defendants; or Colbeck Capital Management and "Colbeck

18  Doe Funds 1-3"); (ii) "Colbeck and Redwood" (all four CB Defendants and all six

19  Redwood Defendants; or Colbeck Capital Management, "Colbeck Doe Funds 1-3,"

20  Redwood Capital Management, and "Redwood Doe Funds 1-7"); (iii) the "Colbeck

21  Syndicate" (an undefined syndicate with unidentified members purportedly

22  comprising the ***dozens of lenders*** that also contributed funds); or (iv) as part of the

23

24

---

25  [4]  In this Motion, the CB Defendants cite to the K.A. Complaint when referring to
    allegations that are in each of the fourteen Complaints.

26

27  [5]  Only Plaintiff J.L. names as defendants CB Media Ventures, CB Agency Services,
    and CB Participations SPV.  *See* J.L. Compl. ¶ 25.  The remaining thirteen
    Complaints name only Colbeck Capital Management.  *See, e.g.*, K.A. Compl. ¶¶ 25-
    26.

28

1  "defendants" (purporting to refer to all twelve or twenty Defendants).[6] *See, e.g.*, K.A.

2  Compl. ¶¶ 1, 26, 246; J.L. Compl. ¶¶ 1, 25, 243; *see also generally* K.A. Compl. ¶¶

3  246-71, 347-54, 356-63, 431-40, 448-51, 453-56.

4      Plaintiffs allege that the "Colbeck Syndicate" led the initial rounds of loans to

5  MindGeek.  K.A. Compl. ¶¶ 246, 251, 257.  The first loan occurred in 2011, and the

6  second loan occurred in 2013.  *See id.* ¶¶ 250-51, 256.  Each loan was reflected in a

7  Loan Agreement.    *See id.* ¶ 247.    Those two agreements are attached to the

8  Declaration of David G. Hille as Exhibit A (April 28, 2011 Loan Agreement) and

9  Exhibit B (October 18, 2013 Amended and Restated Loan Agreement) (collectively,

10  "Loan Agreements").[7]

11      By 2018, all loans involving any CB Defendant had concluded.  *See, e.g.*, 2013

12  Loan Agreement, Ex. B at 185.  Plaintiffs also allege that the issue of CSAM on

13  MindGeek's websites emerged significantly after the CB Defendants' exit in 2018.

14  According to Plaintiffs, these issues "exploded in 2019-2023."  K.A. Compl. ¶ 113.

15  There was a "tsunami of criticism that MindGeek received in 2019-2020."  *Id.* ¶ 114.

16  This included a "viral internet campaign in 2019-20" and a "late 2020 bombshell

17  New York Times expose."  *Id.* ¶ 208.  In 2019, PayPal terminated its relationship

18  with MindGeek because of the presence of illegal content.  *Id.* ¶ 195.

19

20  _____

21  [6]  The J.L. Complaint identifies twenty defendants; the other thirteen Complaints identify twelve defendants.  *See* J.L. Compl. at 1; *see, e.g.*, K.A. Compl. at 1.

22  [7]  Plaintiffs incorporate the two Loan Agreements by reference in the Complaints.

23  *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) ("A court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to

24  the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion.").  Plaintiffs

25  refer to the Loan Agreements throughout the allegations against the CB Defendants, Plaintiffs' theory of liability depends on the CB Defendants providing loans (through

26  these agreements), and Plaintiffs purport to describe terms in the agreements to allege (erroneously) that those terms provided the CB Defendants (or the purported Colbeck

27  Syndicate) control over MindGeek's business, the ability to foreclose on the business, and the right to receive "virtually all" its earnings.  *See, e.g.*, K.A. Compl. ¶¶ 246-47,

28  250-52, 256-59, 268-71.

1   **C.**   **Plaintiffs File Fourteen Complaints Against the CB Defendants and**

2       **Sixteen Other Defendants**

3       On February 19, 2021, a plaintiff represented by another law firm filed a

4   putative class action against several of the MindGeek Entity Defendants.  *See Doe v.*

5   *MindGeek USA Inc.*, No. 8:21-cv-338 (C.D. Cal. Feb. 19, 2021) (Hsu, J.), ECF No.

6   1.  On June 17, 2021, Plaintiffs' counsel, on behalf of another plaintiff and thirty-

7   three Doe plaintiffs, filed an action against several of the MindGeek Entity

8   Defendants, the Individual Defendants, Visa, and "Colbeck Capital Does 1-10."

9   Compl., *Fleites v. MindGeek S.à.r.l., et al.*, No. 2:21-cv-04920 (C.D. Cal. June 17,

10  2021) (Hsu, J.), ECF No. 1.  None of the CB Defendants was served with that

11  complaint.  On July 29, 2022, Judge Carney issued orders in the *Fleites* action

12  concerning the motions to dismiss filed by the MindGeek Entity Defendants, the

13  Individual Defendants, and Visa.  After conducting jurisdictional discovery, on May

14  23, 2024, Plaintiffs' counsel filed a second amended complaint in the *Fleites* action.

15  Shortly after, Plaintiffs' counsel filed the fourteen Complaints.

16      In each of the fourteen Complaints, Plaintiffs assert seventeen claims.  *See,*

17  *e.g.*, K.A. Compl. ¶¶ 319-456.  Only five claims in each Complaint are asserted

18  against the CB Defendants:  (1) beneficiary liability under Sections 1591 and 1595

19  of the TVPRA—against the CB Defendants and the Redwood Defendants (Count

20  III); (2) conspiracy liability under Sections 1594(c) and 1595 of the TVPRA—against

21  all Defendants (Count IV); (3) unfair competition (UCL) and false advertising (FAL)

22  under Sections 17200 and 17500 of the California Business and Professions Code—

23  against all Defendants (Count XIV); (4) intentional infliction of emotional distress

24  ("IIED")—against all Defendants (Count XVI); and (5) civil conspiracy—against all

25  Defendants (Count XVII).  *See, e.g.*, *id.* ¶¶ 345-63, 430-40, 447-56.

26      The plaintiff in *Fleites* asserted the same claims against the CB Defendants,

27  except for the IIED claim.  The fourteen Complaints omit the allegations that were

28  redacted in the second amended complaint in *Fleites*.

**D.** **Plaintiffs' Allegations Against the CB Defendants Are Conclusory, Implausible, and Contradicted by Other Allegations and the Loan Agreements**

*First*, Plaintiffs allege throughout the Complaints that the supposed "Colbeck Syndicate" provided loans to "MindGeek," referring to all six MindGeek Entity Defendants. *See, e.g.*, K.A. Compl. ¶¶ 7, 246. This is inaccurate. ███████████

████████████████████████████████████████████████

████████████████████████████; MG Freesites Ltd.; MG Premium Ltd.; █████

████████████████████████████████; and 9219-1568 Quebec Inc. (collectively, "MindGeek Borrowers"). *See* 2011 Loan Agreement, Ex. A at 148-50; 2013 Loan Agreement, Ex. B at 317-19.[8] Only three of these borrowers are defendants in the Complaints: MG Freesites Ltd., MG Premium Ltd., and 9219-1568 Quebec Inc. *See, e.g.*, K.A. Compl. ¶¶ 12, 14, 16.

*Second*, Plaintiffs allege vaguely that the "Colbeck Syndicate" received information before and during the terms of the loans that suggested MindGeek operated an unrestricted content model that "embraced" CSAM. *See, e.g.*, *id.* ¶¶ 247, 259, 261, 263, 265, 268-71. These allegations—besides being wholly unspecific and conclusory—are also inconsistent with the explicit provisions in the Loan Agreements and Plaintiffs' other allegations in the Complaints. Under the terms of the Loan Agreements, █████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████ *See* Loan Agreements §§ 6.01(h), 6.01(mm), 6.01(nn), 6.01(ss). In addition, ████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

---

[8] Most borrowers changed their names following the 2013 Loan Agreement.

- 8 -

█████████████████████████████████████████████████████████████

████████████████████████████████████████████████████ *See*

*id.* §§ 7.01(a), 7.01(c), 7.01(v), 7.01(z).  In addition, Plaintiffs allege that the issue of CSAM did not become a widespread issue publicly until 2019, at which point the problem got worse. *See, e.g.*, K.A. Compl. ¶¶ 113-14, 208.

      ***Third***, Plaintiffs allege, without any basis, that the CB Defendants (and the Redwood Defendants) ***wanted*** MindGeek's websites to have more CSAM so that MindGeek could pay back the loans. *See, e.g.*, K.A. Compl. ¶¶ 247, 262, 265-66. This is, again, without any supporting basis.  It is also inconsistent with the terms of the Loan Agreements. ███████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████

Loan Agreements § 6.01(h). ████████████████████████████████

██████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

---

[9] The term "2257 Laws" refers to 18 U.S.C. § 2257 and its accompanying regulations, which require producers of sexually explicit materials to verify ages of performers, maintain detailed records, and label their materials to prevent the exploitation of minors.

- 9 -

1  ██████████████████████████████████████████

2  ██████████████████████████████████████████

3  ██████████████████████████████████████████

4  ██████████████████████████████████████████

5  ██████████████████████████████████████████

6  ██████████████████████████████████████████

7  ████████████████████████████

8  *Id.* § 7.01(z). ███████████████████████████████████

9  ██████████████████████████████████████████████

10 ███████████████████████ *Id.* §§ 7.01(a), 7.01(c), 7.01(v), 7.01(z). ████████

11 █████████████████████████████████████ *Id.* §§ 9.01(c),

12 9.01(s).

13    ***Fourth***, Plaintiffs speculate that the "Colbeck Syndicate" "effectively owned

14 the company" and ***could*** control its business, foreclose on the business, and receive

15 all its earnings.  K.A. Compl. ¶¶ 252, 258, 267, 270.  The purported basis for these

16 conclusions is Plaintiffs' speculation on interest rates and unspecified terms in the

17 Loan Agreements.  *See id.* ¶¶ 252, 270.  These allegations, however, contradict

18 Plaintiffs' admissions that the CB Defendants only ***loaned*** money to the MindGeek

19 Borrowers.  *See id.* ¶¶ 251-52.  Plaintiffs do not allege that the CB Defendants, for

20 example, owned shares in; appointed a board member or officer of; managed; or, at

21 a minimum, were otherwise granted any operational control of a MindGeek entity.

22 To the contrary, Plaintiffs allege that the ownership of MindGeek was centralized

23 and controlled by the Individual Defendants.  *See id.* ¶¶ 113-14, 150-58, 302.

24    Despite Plaintiffs' strategic use of the term "Colbeck Syndicate," Plaintiffs'

25 allegations of ownership are also implausible because the CB Defendants were

26 among an extensive number of third-party lenders that participated in the loans to the

27 MindGeek Borrowers in 2011 and 2013.  *See* K.A. Compl. ¶ 246; *see also* 2011 Loan

28 Agreement, Ex. A at 157-63 (██████████████); 2013 Loan Agreement, Ex. B at

- 10 -

337-78 (█████████████).  The fact that many third-party lenders participated in the loans also contradicts and renders implausible Plaintiffs' erroneous allegations that the terms of the loans were so beneficial because few in the finance community would loan to the MindGeek Borrowers.  *See* K.A. Compl. ¶ 267.

The Complaints allege, on the one hand, that the "Colbeck Syndicate" was taking all of MindGeek's profits; and yet, on the other hand, that the MindGeek Entity Defendants and the Individual Defendants were making so much profit because of illegal content, including CSAM, that they wanted to keep that illegal content and solicit more of it.  *See, e.g.*, *id.* ¶¶ 37, 151, 251, 259.  Plaintiffs also allege that all Defendants were already making, and would continue to make, "enormous amounts of money" irrespective of CSAM (*id.* ¶ 9), thus refuting Plaintiffs' implausible allegations that Defendants purportedly needed to encourage CSAM on Pornhub to profit.

*Fifth*, Plaintiffs allege that the CB Defendants did not stop CSAM on MindGeek's websites following "public reporting from *2019-2021*."  *Id.* ¶ 271 (emphasis added).  But the CB Defendants had no involvement with MindGeek since the conclusion of the two loans in *2018*.  *See* 2013 Loan Agreement, Ex. B at 185.

These contradictions highlight that the allegations against the CB Defendants are not properly pleaded and that there is no plausible claim against them.  The failure of fourteen different Plaintiffs to plead plausible, non-conclusory allegations to support any theory of liability against the CB Defendants confirms that the CB Defendants should be dismissed.

## III.   PLAINTIFFS LACK STANDING BECAUSE THEIR ALLEGED INJURIES ARE NOT FAIRLY TRACEABLE TO ANY CB DEFENDANT

Plaintiffs do not meet their burden to show that they have standing to assert claims against the CB Defendants.  *See* Fed. R. Civ. P. 12(b)(1).[10]  Article III standing

---

[10]  Plaintiffs also fail to meet their burden to show that the CB Defendants are subject

1    "is an essential and unchanging" prerequisite to subject-matter jurisdiction. *Lujan v.*

2    *Defs. Of Wildlife*, 504 U.S. 555, 560 (1992). The plaintiff must show that he or she

3    has suffered or likely will suffer an injury in fact, that the injury likely was caused

4    by the defendant, and that the injury likely would be redressed by the requested

5    judicial relief. *Food & Drug Admin. v. All. For Hippocratic Med.*, 602 U.S. 367, 380

6    (2024) (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009); *Lujan*, 504

7    U.S. at 560-61). There must be "a causal connection between the injury and the

8    conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged

9    action of the defendant.'" *Lujan*, 504 U.S. at 560 (citation omitted). The plaintiff

10   has the burden to "clearly . . . allege facts demonstrating" standing. *Spokeo, Inc. v.*

11   *Robins*, 578 U.S. 330, 338 (2016) (citation omitted).

12       To meet this burden, the plaintiff must allege a "line of causation between

13   defendant's action and the plaintiff's harm [that] must be more than attenuated."

14   *Washington Env't Council v. Bellon*, 732 F.3d 1131, 1141 (9th Cir. 2013) (citation

15   omitted). This burden is "substantially more difficult to meet" where—as in this

16   case—the plaintiff alleges that the defendant did not directly cause his or her injuries.

17   *Warth v. Seldin*, 422 U.S. 490, 505 (1975). To show causation for Article III

18   standing, the plaintiff must allege that (i) the injuries are "not the result of the

19   independent action of some third party not before the court" and (ii) there is a

20   "substantial probability" that the defendant caused the alleged injuries. *Winsor v.*

21   *Sequoia Benefits & Ins. Servs., LLC*, 62 F.4th 517, 525 (9th Cir. 2023) (citations

22   omitted). Plaintiffs here have done neither.

23       Rather than meet their burden, Plaintiffs do the opposite. Plaintiffs' allegations

24   reveal that, contrary to Article III, Plaintiffs' alleged injuries have no connection to

25   ——————————

26   to personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). Plaintiffs admit that the CB
     Defendants are incorporated in Delaware and headquartered in New York (*see, e.g.*,

27   K.A. Compl. ¶ 25; J.L. Compl. ¶ 25), and Plaintiffs do not allege that any CB
     Defendant purposefully directed activity toward California. The CB Defendants,

28   however, do not contest personal jurisdiction in this case because Plaintiffs' claims
     clearly fail for several independent reasons and should be dismissed with prejudice.

any alleged action by a CB Defendant.  Indeed, Plaintiffs' alleged injuries—caused by the uploading of videos to Pornhub and similar websites—depend *entirely* on the independent actions of several layers of parties other than the CB Defendants, including the persons who Plaintiffs allege coerced them into recording the videos, the persons who participated in the acts depicted in the at-issue videos, the persons who recorded the videos, and the persons who uploaded the videos to Pornhub and similar websites.  *See* K.A. Compl. ¶¶ 311, 314; N.L. Compl. ¶¶ 311-12; L.T. Compl. ¶¶ 311-12; T.C. Compl. ¶ 311; X.N. Compl. ¶¶ 311-12; N.Y. Compl. ¶¶ 311-13; J.C. Compl. ¶¶ 311-14; W.L. Compl. ¶¶ 311, 318; C.S. Compl. ¶¶ 311-12; S.O. Compl. ¶¶ 311-12; L.S. Compl. ¶¶ 311-12; W.P. Compl. ¶¶ 311-12; A.K. Compl. ¶ 311; J.L. Compl. ¶¶ 310-14.  And even after those persons responsible for the alleged wrongful conduct, based on the Complaints, are the MindGeek entity or entities that operate such websites.  *See, e.g.*, K.A. Compl. ¶¶ 313; *see also* J.L. Compl. ¶¶ 314-15.

By contrast, the CB Defendants' role is a *lender*.  The CB Defendants are never alleged to have interacted with Plaintiffs or their alleged traffickers in any way.  The CB Defendants did not induce Plaintiffs to engage in any act; they did not take or upload any videos; they did not maintain the websites onto which the videos were uploaded; they were not responsible for the moderation of those websites; and they did not host, share, or promote the videos.  *See, e.g.*, K.A. Compl. ¶¶ 313, 316, 318.  Where, as here, "the causal chain involves numerous third parties whose independent decisions collectively have a significant effect on plaintiffs' injuries, . . . the causal chain is too weak to support standing."  *Washington Env't Council*, 732 F.3d at 1142 (citation omitted); *see also Williams v. Sisolak*, No. 22-16859, 2024 WL 194180, at *2 (9th Cir. Jan. 18, 2024) ("plaintiffs lack Article III standing . . . because plaintiffs' injuries are the result of allegedly illegal third-party conduct in [the] commercial sex industry"), *cert. denied sub nom. Williams v. Lombardo*, No. 23-1138, 2024 WL 3014535 (U.S. June 17, 2024).[11]

---

[11] *See also, Boschma v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No.

Under Plaintiffs' theory, any third-party service provider that Plaintiffs allege was connected to MindGeek's business could be sued for Plaintiffs' injuries—for example, MindGeek's cloud service provider, its data center, or even the company that owned the building in which its employees worked. *See, e.g.*, *Fleites*, 617 F. Supp. 3d at 1168 ("Even if Google knows that its search engine is being used to drive traffic to a website allegedly teeming with child porn, and thereby indirectly helps that website financially benefit from its illicit content, it would not have provided a tool through which the crime is completed . . . ."). Article III's standing requirements prevent this from happening.

Moreover, even accepting the Complaints' allegations as true, Plaintiffs' injuries would have occurred whether or not the CB Defendants participated in the loans. No Plaintiff alleges that MindGeek would have stopped operating or operated any differently—or that Plaintiffs would not have been allegedly harmed—had the CB Defendants not participated as one of many lenders to the MindGeek Borrowers in 2011 and 2013. In addition, the CB Defendants' loan terms ended in 2018. *See, e.g.*, 2013 Loan Agreement, Ex. B at 185. Indeed, most Plaintiffs allege that videos of them remained on MindGeek's websites after 2018. *See* K.A. Compl. ¶ 311; N.L. Compl. ¶ 312; L.T. Compl. ¶ 311; X.N. Compl. ¶ 315; N.Y. Compl. ¶ 319; W.L. Compl. ¶ 311; C.S. Compl. ¶ 312; S.O. Compl. ¶ 312; L.S. Compl. ¶ 313; J.L. Compl. ¶ 323. There is thus no "substantial probability" that a CB Defendant caused Plaintiffs' alleged injuries. *Winsor*, 62 F.4th at 525.

---

2:18-cv-2623-VAP-KK, 2018 WL 2251629, at *3 (C.D. Cal. May 16, 2018) (finding that allegations of an unsafe neighborhood were not fairly traceable to defendant government agency because "causal chain" included numerous third parties, including individuals who committed acts of violence); *cf. Fleites v. MindGeek S.à.r.l.*, 617 F. Supp. 3d 1146, 1157 (C.D. Cal. 2022) (contrasting *Boschma* and other cases with the complaint's allegations that Visa allegedly directly **monetized CSAM**—which are different than the allegations in the Complaints here that the CB Defendants **provided loans**); *Doe I v. Apple Inc.*, No. 1:19-cv-3737-CJN, 2021 WL 5774224, at *7 (D.D.C. Nov. 2, 2021) (holding that plaintiffs lacked Article III standing to sue electronics manufacturers for labor trafficking violations in cobalt mines on theory that manufacturers purchased and drove demand for cobalt).

1       Judge Carney's order ruling on Visa's motion to dismiss in *Fleites* also

2    supports dismissal of Plaintiffs' claims against the CB Defendants. *Fleites*, 617 F.

3    Supp. 3d at 1156. Unlike the CB Defendants' remote role as lenders and the absence

4    of any allegations connecting the CB Defendants to Plaintiffs or the videos, Judge

5    Carney concluded that the plaintiff in *Fleites* had alleged that Visa provided the

6    mechanism for processing transactions on MindGeek's websites, thus purportedly

7    providing the means for MindGeek to profit from CSAM, including the videos of the

8    plaintiff. *Id.* Judge Carney also based his ruling on the fact that Visa suspended

9    MindGeek's merchant privileges in December 2020, which resulted in MindGeek

10   removing millions of videos, but then reinstated those privileges despite the issues of

11   CSAM continuing. *Id.* at 1157, n.8. No such specific basis for knowledge of CSAM

12   issues, or control and influence in decision-making over MindGeek, exists in any of

13   the Complaints against the CB Defendants. Plaintiffs lack standing to assert claims

14   against the CB Defendants.

15   **IV.   PLAINTIFFS FAIL TO STATE A CLAIM AGAINST THE CB**

16         **DEFENDANTS UNDER RULE 12(B)(6)**

17       A motion to dismiss for failure to state a claim under Rule 12(b)(6) should be

18   granted where the complaint fails to allege "sufficient factual matter, accepted as

19   true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

20   U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007)).

21   "Factual allegations must be enough to raise a right to relief above the speculative

22   level" and be "more than labels and conclusions." *Twombly*, 550 U.S. at 555.

23       As explained above in Section II.D, there are many deficiencies in the

24   allegations against the CB Defendants in all Complaints. As an initial matter,

25   Plaintiffs cannot group-plead allegations. *Beatport LLC v. SoundCloud Ltd.,* No.

26   2:19-cv-847-MRW, 2020 WL 3977602, at *5 (C.D. Cal. July 13, 2020) ("[I]t is a

27   basic pleading defect for a complaint to 'lump' parties together and to fail to

28   distinguish between named defendants."); *see also Fleites v. MindGeek S.à.r.l.*, No.

1   2:21-cv-04920-CJC-ADS, 2022 WL 4455558, at *3 (C.D. Cal. July 29, 2022) (Order

2   on MindGeek Defs.' Mots. Dismiss) (noting that the plaintiff's first amended

3   complaint suffered from a "group-pleading problem").  Nor can Plaintiffs rely on

4   their conclusory, implausible, or contradictory allegations. *See Moss v. United States

5   Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a

6   motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences

7   from that content, must be plausibly suggestive of a claim entitling the plaintiff to

8   relief." (citing *Iqbal*, 556 U.S. at 678)); *Jackson v. Kaiser Permanente*, No. 2:18-cv-

9   8176-DSF-PLA, 2019 WL 10893916, at *5 (C.D. Cal. Jan. 8, 2019) (dismissing

10  complaint because "Plaintiff cannot plead contradictory facts that render Plaintiff's

11  claims implausible.").

12        Even if one were to ignore these overarching defects, Plaintiffs' claims against

13  the CB Defendants fail as a matter of law under Rule 12(b)(6).  The Court should

14  dismiss with prejudice Plaintiffs' claims against the CB Defendants for violation of

15  the TVPRA, violation of the UCL and FAL, civil conspiracy, and IIED.

16   **A.    Plaintiffs Fail to Plead a Claim Under the TVPRA Against the CB**

17          **Defendants**

18        Plaintiffs assert claims against the CB Defendants for allegedly "knowingly

19  benefit[ing]" and "conspir[ing] to benefit" from participation with the MindGeek

20  Entity Defendants in a sex-trafficking venture that trafficked Plaintiffs.  *See, e.g.*,

21  K.A. Compl. ¶¶ 345-63; *see also* 18 U.S.C. §§ 1591(a)(2) (beneficiary),[12] 1594(c)

22

_____

23  [12]  Plaintiffs cite Section 1591 generally.  *See, e.g.*, K.A. Compl. ¶¶ 351-53.  Section

24  1591(a)(2) relates to knowingly benefitting from participation in a sex-trafficking
    venture.   Section 1591(a)(1), on the other hand, relates to knowingly recruiting,

25  enticing, harboring, transporting, providing, obtaining, advertising, maintaining,
    patronizing, or soliciting a person (i.e., direct trafficking).  Plaintiffs do not allege

26  that the CB Defendants are direct traffickers.  Nor could Plaintiffs try.  In *Fleites*,
    Judge Carney held that even MindGeek was not a direct trafficker of the plaintiff.

27  *See Fleites*, 617 F. Supp. 3d at 1160.  Judge Carney limited the plaintiff's "direct
    traffickers" to the plaintiff's ex-boyfriend and the unnamed older man who "solicited

28  or enticed Plaintiff to commit a sex act knowing she was underage."  *Id.*

- 16 -

1    (conspiracy), 1595(a) (civil remedy).    Because Plaintiffs' claims rely on the

2    MindGeek Defendants' alleged sex-trafficking venture that trafficked Plaintiffs, the

3    claims necessarily fail if the Court finds, in response to the MindGeek Entity

4    Defendants' or other Defendants' motions to dismiss, that there was no such venture.

5    *See J.B. v. G6 Hosp., LLC*, No. 4:19-cv-7848-HSG, 2021 WL 4079207, at *7 (N.D.

6    Cal. Sept. 8, 2021), *aff'd sub nom. J.B. v. Craigslist, Inc.*, No. 22-15290, 2023 WL

7    3220913 (9th Cir. May 3, 2023) ("The Court . . . finds that the cited language does

8    not suggest that Congress intended to make [defendants] civilly liable [under Section

9    1595] when their conduct does not violate Section 1591."). The TVPRA claims

10   against the CB Defendants would also fail if the Court finds that Plaintiffs failed to

11   allege that a sex-trafficking venture caused Plaintiffs to "engage in a commercial sex

12   act" under Section 1591(a) because, for example, uploading or hosting content to

13   MindGeek's websites is not a commercial sex act. *See United States v. Bazar*, 747

14   F. App'x 454, 456 (9th Cir. 2018) (defining commercial sex act as "an act performed

15   with another for sexual gratification"). Moreover, if the MindGeek Entity

16   Defendants are shielded from liability under Section 230, Plaintiffs' claims against

17   the CB Defendants necessarily fail. The CB Defendants incorporate those arguments

18   as made by other Defendants into this Motion. Independent of those reasons,

19   however, both claims against the CB Defendants fail for the following additional

20   reasons.

21          **1.    There Is No Beneficiary Claim Because the CB Defendants**

22                 **Did Not Knowingly Participate In, or Benefit from, a Sex-**

23                 **Trafficking Venture—Nor Should They Have Known of**

24                 **Plaintiffs' Alleged Trafficking**

25          For a beneficiary-liability claim under Sections 1595(a) and 1591(a)(2), the

26   plaintiff must show that the defendant "(1) knowingly participated in a sex-

27   trafficking venture, (2) knowingly received a benefit from its participation, and (3)

28   knew or should have known that the plaintiff was a victim of sex trafficking." *Fleites*,

617 F. Supp. 3d at 1160; *see also Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1175 (9th Cir. 2022) ("*Ratha I*") (listing elements). The Complaints meet none of these required elements with respect to the CB Defendants. Plaintiffs merely allege that the CB Defendants "knowingly benefited" from participation in MindGeek's sex-trafficking venture because they provided loans to, and allegedly had insight into and some "control" over, MindGeek. K.A. Compl. ¶¶ 252, 270, 350-54.

In *Fleites*, Judge Carney dismissed the plaintiff's beneficiary-liability claim against Visa for the same flaws that exist in Plaintiffs' claims against the CB Defendants here. 617 F. Supp. 3d at 1161. Like Visa, the CB Defendants are not alleged "to have had any direct interaction with Plaintiff[s], [their] direct traffickers, or [their] videos, and therefore cannot bear beneficiary liability for knowingly participating in the sex trafficking venture that harmed Plaintiff[s]." *Id.* (holding that Visa, having not had any interaction with the plaintiff or videos of the plaintiff, (1) did not form a continuous relationship with the plaintiff's alleged traffickers; and (2) could not have had actual or constructive knowledge that the plaintiff was a victim of sex-trafficking). Those deficiencies—along with others— warrant dismissal here.

***No knowing participation in a sex-trafficking venture.*** Beneficiary liability "requires more than receipt of a passive benefit to satisfy the TVPRA's participation in a venture element." *Ratha v. Phatthana Seafood Co.,* No. 2:16-cv-4271-JFW-AS, 2017 WL 8293174, at *4 (C.D. Cal. Dec. 21, 2017), *aff'd*, 26 F.4th 1029 (9th Cir. 2022). The plaintiff must plausibly allege that the defendant "direct[ed] or participat[ed]" in the alleged venture that trafficked ***the plaintiff*** by taking "some action to operate or manage the venture." *Id.* There must also be "a showing of a continuous business relationship between the trafficker and [Defendants] such that it would appear that the trafficker and [Defendants] have established a pattern of conduct or could be said to have a tacit agreement." *J.B. v. G6 Hosp., LLC,* No. 4:19-cv-7848-HSG, 2020 WL 4901196, at *9 (N.D. Cal. Aug. 20, 2020). Plaintiffs do not

1    allege any of these requirements as to the CB Defendants.

2         The alleged traffickers are the persons who participated in, recorded, or
3    uploaded the videos of Plaintiffs. *See* K.A. Compl. ¶¶ 311, 314; N.L. Compl. ¶¶311-
4    12; L.T. Compl. ¶¶ 311-12; T.C. Compl. ¶ 311; X.N. Compl. ¶¶ 311-12; N.Y. Compl.
5    ¶¶ 311-13; J.C. Compl. ¶¶ 311-14; W.L. Compl. ¶¶ 311, 318; C.S. Compl. ¶¶ 311-
6    12; S.O. Compl. ¶¶ 311-12; L.S. Compl. ¶¶ 311-12; W.P. Compl. ¶¶ 311-12; A.K.
7    Compl. ¶ 311; J.L. Compl. ¶¶ 310-14; *see also Fleites,* 617 F. Supp. 3d at 1160. Like
8    Visa in *Fleites*, the CB Defendants never had any direct interaction with any of the
9    Plaintiffs, Plaintiffs' alleged traffickers, or the videos of Plaintiffs, and therefore
10   could not have "knowingly participat[ed] in the sex trafficking venture that harmed
11   Plaintiff[s]." *Fleites,* 617 F. Supp. 3d at 1162; *see also id.* at 1161 (explaining that
12   "one of the main focuses" to find liability is "allegations regarding [] the defendants'
13   interact[ions] with their videos specifically"). Plaintiffs do not allege that the CB
14   Defendants interacted with Plaintiffs' alleged traffickers, made payments to the
15   traffickers, or financially benefitted from the videos of Plaintiffs that the traffickers
16   posted. Thus, the CB Defendants never "form[ed] any sort of continuous relationship
17   with or tacit agreement with Plaintiff[s'] primary traffickers," and therefore did not
18   "knowingly participate" in the sex-trafficking venture that allegedly harmed
19   Plaintiffs. *Id.* Indeed, the case is even clearer against the CB Defendants in this
20   action than it was against Visa in *Fleites* because Judge Carney found that Visa's
21   payment system would have been used in payments relating to the videos of the
22   plaintiff. *Id.* at 1163. No such connection is alleged or exists between the CB
23   Defendants and the videos of Plaintiffs here.

24        Nor can Plaintiffs overcome this flaw in the claims by alleging that the CB
25   Defendants "effectively owned" the MindGeek Entity Defendants. *See, e.g.*, K.A.
26   Compl. ¶ 258. Besides being conclusory, implausible, and contradicted by other
27   allegations (*see* Section II.D above), Plaintiffs do not allege that the CB Defendants
28   in fact exercised control or actually operated or managed the MindGeek Entity

1  Defendants in any way, let alone in a way that is connected to a sex-trafficking

2  venture or to Plaintiffs. *See, e.g.*, K.A. Compl. ¶ 270 (alleging only that the CB

3  Defendants failed to "direct[] MindGeek").

4        Even if Plaintiffs had alleged such control, operation, or management, which

5  Plaintiffs have not, Plaintiffs' claims would still fail. As the Ninth Circuit held in

6  *Does 1-6 v. Reddit, Inc.*, Reddit—which, based on the Complaints, is analogous to

7  the MindGeek Entity Defendants here—did not knowingly participate in or benefit

8  from an alleged sex-trafficking venture despite allegations that it "highlight[ed]

9  subreddits that feature[d] child pornography to sell advertising . . . allow[ed] users

10  who share[d] child pornography to serve as subreddit moderators, and fail[ed] to

11  remove child pornography even when users report[ed] it." 51 F.4th 1137, 1145 (9th

12  Cir. 2022). The allegations against the CB Defendants—as merely lenders—do not

13  approach the level of participation required by the statute. *See Ratha*, 2017 WL

14  8293174, at *4 (C.D. Cal. Dec. 21, 2017); *G6 Hosp., LLC*, 2020 WL 4901196, at *9.

15  Plaintiffs' beneficiary-liability claims end right here.

16        ***No knowing benefit from participation in a sex-trafficking venture of***

17  ***Plaintiffs.*** Plaintiffs must also show that the CB Defendants "knowingly" derived a

18  financial benefit from their alleged participation in a sex-trafficking venture

19  involving Plaintiffs. *See Ratha I,* 35 F.4th at 1175. Plaintiffs allege that ***MindGeek***

20  knowingly benefitted from the videos of Plaintiffs through the traffic generated by

21  the videos and the advertisements placed alongside them. *See, e.g.*, K.A. Compl. ¶

22  313. These allegations do not show that the ***CB Defendants*** knowingly benefitted

23  under the TVPRA, as there is no "causal relationship between [the CB Defendants'

24  alleged] affirmative conduct furthering the sex-trafficking venture and receipt of a

25  benefit." *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169 (S.D.N.Y

26  2019). But even more, the Complaints contain no allegation of purported knowledge,

27  or constructive knowledge, of videos of the Plaintiffs attributed to the CB

28  Defendants. Indeed, Plaintiffs could not plausibly allege that the CB Defendants

1    financially benefitted from sex trafficking even if Plaintiffs had tried to do so.

2            ***No knowledge of the alleged sex-trafficking of Plaintiffs through the posting***

3    ***of Plaintiffs' videos.***  The defendant must have "actual or constructive knowledge

4    that the venture . . . violated [Section 1591] as ***to the plaintiff***."  *Doe #1 v. Red Roof*

5    *Inns, Inc.*, 21 F.4th 714, 725 (11th Cir. 2021) (emphasis added); *see also Fleites*, 617

6    F. Supp. 3d at 1161-62.  Plaintiffs allege that the CB Defendants were generally

7    aware of CSAM issues on MindGeek's websites.  *See* K.A. Compl. ¶¶ 260-65, 269,

8    351.  Even if this were not a conclusory and group-pleaded allegation, it would not

9    support a claim against the CB Defendants here.  "[K]nowledge or willful blindness

10   of a general sex trafficking problem" in an industry cannot establish liability under

11   the TVPRA.  *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y.

12   2020) ("Knowledge or willful blindness of [] general sex trafficking . . . does not

13   satisfy the *mens rea* requirement[].");  *see also Ratha I*, 35 F.4th at 1179 (notice that

14   "the seafood industry in Thailand was considered a 'hot spot' for human trafficking

15   in all its forms" was insufficient to support "the specific allegations that [the

16   defendant] knew or should have known of the alleged labor abuses at [the factory]").

17           Indeed, the Complaints provide no basis to support that the CB Defendants

18   should have known about the specific trafficking that led to Plaintiffs' alleged injuries

19   given they had no "interaction with Plaintiff[s] and [their] videos."  *Fleites*, 617 F.

20   Supp. 3d at 1162.  "Unlike the allegations concerning MindGeek," the allegations

21   concerning the CB Defendants fail to show that they "had any knowledge—

22   constructive or otherwise—of Plaintiff[s], [their] videos, or [their] age in the videos."

23   *Id.*

24           **2.    Plaintiffs' Conspiracy Claims Must Be Dismissed Because the**

25                   **Challenged Conduct Predates the Enactment of the ATRA,**

26                   **and Plaintiffs Nevertheless Fail to Plausibly Plead Conspiracy**

27           Plaintiffs' conspiracy claims under Sections 1594(c) and 1595(a) of the

28   TVPRA rely on bare assertions that all twenty Defendants conspired to financially

1    benefit from CSAM and that the CB Defendants (and the Redwood Defendants)
2    provided loans to further this goal.  *See* K.A. Compl. ¶¶ 359-62.  These claims must
3    be dismissed because Plaintiffs' allegations are based on conduct that occurred before
4    the enactment of the Abolish Trafficking Reauthorization Act ("ATRA"), which
5    amended Section 1595(a) in January 2023.  Plaintiffs also nevertheless fail to
6    plausibly allege a conspiracy involving the CB Defendants to commit or benefit from
7    sex trafficking.

8         Section 1595(a) provides a civil remedy for violations of the TVPRA.  Until
9    January 5, 2023, Section 1595(a) stated that "[a]n individual who is a victim of a
10   violation of this chapter may bring a civil action against the perpetrator (or whoever
11   knowingly benefits, financially or by receiving anything of value, from participation
12   in a venture which that person knew or should have known has engaged in an act in
13   violation of this chapter) . . . ."  *See Ratha I*, 35 F.4th at 1164-65, 1176 (finding that
14   the plaintiffs failed to show that the defendant knowingly benefitted from
15   participating in a venture that it knew or should have known was violating the
16   TVPRA; holding that liability under Section 1594(a) could not be based on an
17   attempt to violate the TVPRA).  On January 5, 2023, however, Congress enacted the
18   ATRA, which amended Section 1595(a) to add the phrase "or attempts or conspires
19   to benefit," after "whoever knowingly benefits."  Pub. L. No. 117-347, 136 Stat. 6199
20   (2023).  In other words, Congress expanded the civil cause of action section of the
21   TVPRA to include attempted violations and conspiracies under Section 1594, where
22   the Ninth Circuit had held in *Ratha I* that Section 1595(a) could not extend to such
23   claims.

24        This summer, the Ninth Circuit weighed in on the scope and application of the
25   amendments to Section 1595(a).  Following the passage of the ATRA, the plaintiffs
26   in *Ratha I* sought to reopen the final judgment in light of the new language in the
27   ATRA.  On July 31, 2024, the Ninth Circuit rejected the plaintiffs' request, holding
28   that the "attempts or conspires to benefit" language added to Section 1595(a) ***does***

1   ***not apply to pre-enactment conduct***.  *See Ratha v. Rubicon Res., LLC*, No. 23-55299,

2   2024 WL 3589751, at \*17 (9th Cir. July 31, 2024) (*Ratha II*) (emphasis added)

3   ("Because we reject the argument that ATRA merely clarifies what [Section 1595(a)]

4   was originally intended to mean . . . and plaintiffs raise no other basis for ATRA to

5   apply retroactively, we conclude that ATRA does not apply to pre-enactment

6   conduct, including the conduct that is the basis of plaintiffs' claims.").

7        Following *Ratha II*, the law is clear that there can be no civil liability for either

8   attempted violations or conspiracies under Section 1594 if the alleged conduct

9   occurred prior to the enactment of the ATRA on January 5, 2023.  *Id.*  The Ninth

10  Circuit's holding is fatal to Plaintiffs' Section 1594(c) conspiracy claims.  As detailed

11  above, the CB Defendants' Loan Agreements with the MindGeek Borrowers ended

12  in 2018, more than four years before Congress enacted the ATRA.  Moreover, no

13  Plaintiff pleads that alleged trafficking conduct by a CB Defendant took place after

14  January 5, 2023.  The Ninth Circuit's decision in *Ratha II* requires dismissal of

15  Plaintiffs' conspiracy claims against the CB Defendants.

16       Judge Carney's order on Visa's motion to dismiss in *Fleites* also separately

17  supports dismissal of Plaintiffs' conspiracy claims against the CB Defendants.  In

18  *Fleites*, the plaintiff's TVPRA conspiracy claim against Visa survived dismissal

19  because the plaintiff had alleged that "following highly publicized events in 2019 and

20  2020," Visa knew that MindGeek was "regularly committing violations of section

21  1592(a)" and yet "continued to grant MindGeek the means to financially benefit from

22  its participation in sex trafficking ventures:  the Visa payment network."  617 F.

23  Supp. 3d at 1163.  The CB Defendants, however, made their loans in 2011 and 2013.

24  The loans concluded in 2018—before the highly publicized events in 2019 and

25  thereafter.  More fundamentally, Plaintiffs do not allege that the CB Defendants

26  monetized CSAM or provided "the means through which MindGeek completed its

27  criminal act."  *Id.*  The CB Defendants are not alleged to have provided a payment

28  network that was used as an integrated part of a sex-trafficking venture.  Indeed, the

CB Defendants are not alleged to have done **anything** in furtherance or support of the alleged conspiracy. Without these allegations, the Court cannot "infer" that the CB Defendants "intended to help MindGeek monetize child porn," as Judge Carney did with Visa in *Fleites*, rendering Plaintiffs' conspiracy claims against the CB Defendants implausible and ripe for dismissal. *Id.* at 1164.

Moreover, as explained below in Section IV.B.2, Plaintiffs fail to plausibly allege any conspiracy involving the CB Defendants. As Plaintiffs' civil conspiracy claims fail for the reasons outlined at pages 28-33 below, so too do their TVPRA conspiracy claims.[13] Among other deficiencies, Plaintiffs do not allege an agreement involving the CB Defendants to further any alleged sex-trafficking operation or that the CB Defendants acted in furtherance of any such non-existent agreement. Simply agreeing to participate in loans of money to certain MindGeek entities (*see, e.g.*, K.A. Compl. ¶¶ 251-52) is not enough. *See Doe 1 v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387, 412 (S.D.N.Y. 2023) ("If the allegations in the complaints are taken as true, the defendants did indeed agree to provide banking services for Epstein and his affiliated entities and that they knew, or recklessly disregarded, would assist his sex-trafficking venture. But that agreement is different from an actual agreement

---

[13] The basic elements of a TVPRA conspiracy claim and a civil conspiracy claim are similar, and the Supreme Court has held that courts should look to the common law where the "critical terms" of secondary liability are not defined in a federal statute, as in the TVPRA. *See Twitter, Inc. v. Taamneh*, 598 U.S. 471, 484-85 (2023) (applying the common law meaning of "aids and abets" to the Justice Against Sponsors of Terrorism Act after finding that the statute does not define the terms); *see also Fleites*, 617 F. Supp. 3d at 1161 (quoting *Transgo, Inc. v. Ajac Transmission Parts Corp.,* 768 F.2d 1001, 1020 (9th Cir. 1985)) (stating requirements to plead conspiracy); *United States v. Anthony*, 942 F.3d 955, 971 (10th Cir. 2019) (citation omitted) (requiring the plaintiff to show "(i) that 'two or more persons agreed to violate' [the TVPRA]; (ii) that [the defendant] 'knew at least the essential objectives of the conspiracy;' (iii) that [the defendant] 'knowingly and voluntarily became part of it'; and (iv) that the 'alleged coconspirators were interdependent'") ; *Stein v. World-Wide Plumbing Supply Inc.*, 71 F. Supp. 3d 320, 330 (E.D.N.Y. 2014) (The plaintiff must "allege facts that plausibly show [the defendant] 'and other alleged coconspirators entered into a joint enterprise with consciousness of its general nature and extent.'" (quoting *United States v. Svoboda*, 347 F.3d 471, 476-77 (2d Cir. 2003))).

1    to participate in a sex-trafficking venture."). Thus, even if *Ratha II* did not foreclose

2    Plaintiffs from seeking a civil remedy for conspiracy under the TVPRA—which

3    *Ratha II* does foreclose—Plaintiffs' conspiracy claim still fails.

    **B.**    **Plaintiffs Fail to Plead Claims Under California Law Against the**
               **CB Defendants**

6    The remaining three claims against the CB Defendants, for (i) violation of

7    California's UCL and FAL, (ii) civil conspiracy, and (iii) IIED, similarly fail under

8    Rule 12(b)(6).

    **1.**    **Plaintiffs, Alleged Victims of *Sex-Trafficking*, Do Not Allege**
               **Plausible Facts to Assert *Consumer-Protection* Claims for**
               **Unfair Competition or False Advertising**

12    Each Plaintiff purports to assert one claim against all Defendants under

13    California's consumer-protection laws on unfair competition and false advertising.

14    *See* K.A. Compl. ¶¶ 430-40 (citing Cal. Bus. Prof'l Code §§ 17200 (UCL), 17500

15    (FAL)). Plaintiffs allege that "Defendants" participated in a sex-trafficking venture,

16    fraudulently deceived "its users," profited by selling advertising, and profited by

17    featuring Plaintiffs' videos. K.A. Compl. ¶¶ 431-32. Plaintiffs, however, lack

18    statutory standing and do not allege any facts specific to the CB Defendants to assert

19    a claim.

20    ***First***, none of the purported conduct that Plaintiffs allege to support their

21    claims under either statute is by a ***CB Defendant***. The CB Defendants can only be

22    liable "based on [their] ***personal*** participation in the unlawful practices and ***unbridled***

23    ***control*** over the practices that are found to violate section 17200 or 17500." *Emery*

24    *v. Visa Int'l Serv. Ass'n*, 95 Cal. App. 4th 952, 960 (2002) (emphases added) (citation

25    omitted). Plaintiffs do not allege that the CB Defendants fraudulently deceived users,

26    sold advertising, displayed the videos of Plaintiffs, or profited directly from that

27    alleged advertising or displaying. *Contra* K.A. Compl. ¶¶ 431-34 (describing alleged

28    actions by the MindGeek Defendants); *see supra* Section IV.A.1 (showing that the

- 25 -

1  CB Defendants did not ***participate*** in a sex-trafficking venture with direct
2  traffickers). This alone is fatal to the UCL and FAL claims asserted by all Plaintiffs.
3      ***Second***, even if Plaintiffs had attempted to identify conduct by a CB
4  Defendant, Plaintiffs would lack standing under the UCL and the FAL. Standing
5  under both statutes is "substantially narrower" than federal standing under Article III
6  (which is also lacking). *Fitbug Ltd. v. Fitbit, Inc.*, 78 F. Supp. 3d 1180, 1196 (N.D.
7  Cal. 2015). The plaintiff must have "suffered injury in fact and [] lost money or
8  property as a result" of the unfair competition or false advertising. Cal. Bus. Prof'l
9  Code §§ 17204, 17535. The plaintiff must allege facts showing that he or she
10 suffered "economic injury . . . ***caused by***[] the unfair business practice or false
11 advertising that is the gravamen of the claim." *Kwikset Corp. v. Super. Ct.*, 51 Cal.
12 4th 310, 322 (2011) (emphasis added).[14]
13     As shown above in Section III, all fourteen Plaintiffs fail to show that the CB
14 Defendants caused Plaintiffs' injuries at all, let alone through unfair business
15 practices or false advertising. This failure is even more damning under the UCL and
16 FAL's stricter standing requirement. *See id.*; *see also Daro v. Super. Ct.*, 151 Cal.
17 App. 4th 1079, 1099 (2007) (holding the "causal connection is broken when a
18 complaining party would suffer the same harm whether or not a defendant complied
19 with the law").
20     ***Third***, the UCL forbids "any unlawful, unfair or fraudulent business act or
21 practice." Cal. Bus. Prof'l Code § 17200. The Complaints contain no allegation of
22
23 [14] Standing under the fraudulent prong of the UCL and the FAL requires an even
24 stronger causal connection by "demonstrat[ing] actual reliance on the allegedly
   deceptive or misleading statements" made by the defendant and that the
25 misrepresentations were the "***immediate*** cause of the injury-producing conduct." *In
   re Tobacco II Cases*, 46 Cal. 4th 298, 306, 326 (2009) (emphasis added); *Lavie v.
26 Procter & Gamble Co.*, 105 Cal. App. 4th 496, 504 (2003) (holding that a plaintiff
   must plausibly allege that "members of the public are likely to be deceived" by the
27 false advertisement or misrepresentation); *see also Shaeffer v. Califia Farms, LLC*,
   44 Cal. App. 5th 1125, 1336 (2020) (noting that the plaintiff's burden under the FAL
28 and the fraudulent prong of the UCL is the same).

- 26 -

1    any such act or practice by a CB Defendant.  As to the fraudulent prong, Plaintiffs

2    must plead with particularity under Rule 9(b).  *See Yumul v. Smart Balance, Inc.*, 733

3    F. Supp. 2d 1117, 1122 (C.D. Cal. 2010) (holding UCL claims based in fraud and

4    FAL claims must be pled with particularity under Rule 9(b)).  Plaintiffs fail to

5    identify any misrepresentation by a CB Defendant, let alone one by which members

6    of the public are likely to be deceived.  *See* K.A. Compl. ¶¶ 431-32.  As to the unfair

7    prong, Plaintiffs do not allege any conduct by a CB Defendant that is unfair to

8    competitors or consumers, or to anyone else.  *See Cel-Tech Commc'ns, Inc. v. Los

9    Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999) (under one of two approaches

10   to analyze unfairness, the court examines whether a business practice violates

11   "antitrust law or . . . policy . . . or otherwise significantly threatens or harms

12   competition"); *Hodsdon v. Mars, Inc.*, 162 F. Supp. 3d 1016, 1026 (N.D. Cal. 2016)

13   (under the second approach, the court balances the utility of the defendant's conduct

14   against the gravity of the harm to the alleged consumer victim, which tilts in the

15   consumer's favor if the business practice "is immoral, unethical, oppressive,

16   unscrupulous or substantially injurious to consumers"), *aff'd*, 891 F.3d 857 (9th Cir.

17   2018).  Plaintiffs' claims here simply do not deal with issues of competition or with

18   harm that Plaintiffs experienced as consumers due to some "unfair" practice.

19       Plaintiffs similarly have no claim under the unlawful prong.  "An 'unlawful

20   business activity' includes 'anything that can properly be called a business practice

21   and that at the same time is forbidden by law.'"  *People v. McKale*, 25 Cal. 3d 626,

22   632 (1979) (citation omitted).  As explained above in Section III and below in Section

23   IV.C, the CB Defendants are not alleged to have engaged in any unlawful business

24   practices—they simply participated in two loans to the MindGeek Borrowers.  In

25   *Fleites*, Judge Carney allowed the plaintiff's UCL claim against Visa to proceed

26   because he found that the plaintiff had stated a claim for conspiracy liability under

27   the TVPRA.  617 F. Supp. 3d at 1166.  For the reasons described above, including

28   the intervening Ninth Circuit decision in *Ratha II*, the conspiracy claim is not a basis

1    to maintain a UCL claim against the CB Defendants.  In addition, Plaintiffs fail to
2    plead any similarly specific allegation of knowledge or conduct against the CB
3    Defendants.  Like Plaintiffs' TVPRA claims, Plaintiffs' claims under the unlawful
4    prong of the UCL should be dismissed.  *See Johnson v. Ocwen Loan Servicing, LLC*,
5    No. 5:17-cv-1373-JGB-SP, 2017 WL 10581088, at *7 (C.D. Cal. Dec. 11, 2017)
6    (holding that, because the plaintiff's other claims fail, "so too does her UCL claim
7    under the unlawful prong").

8        **Fourth**, the FAL "prohibit[s] false or misleading advertising . . . which is
9    known, or which by the exercise of reasonable care should be known, to be untrue or
10   misleading."  *Nationwide Biweekly Admin., Inc. v. Super. Ct. of Alameda Cnty*., 9
11   Cal. 5th 279, 306 (2020) (quoting Cal. Bus. Prof'l Code § 17500).  The FAL requires
12   a defendant to make a "false or misleading statement."  *Chern v. Bank of Am.*, 15
13   Cal. 3d 866, 875 (1976).  None of the fourteen Complaints includes any alleged
14   statement by a CB Defendant, much less an advertisement that is false or misleading
15   and pleaded with particularity under Rule 9(b).  *See Yumul*, 733 F. Supp. 2d at 1122.
16   In dismissing the plaintiff's FAL claim against Visa in *Fleites*, Judge Carney held
17   that the plaintiff had not even "attempt[ed] to spell out her theory of FAL liability."
18   617 F. Supp. 3d at 1166.  The Complaints, which rely on similarly deficient
19   allegations, do no better as to the CB Defendants here.

20           **2.      The Complaints Lack Any Plausible Allegations to Support a**
21                     **Claim for Civil Conspiracy**

22       Plaintiffs also purport to assert a claim for civil conspiracy against all
23   Defendants.  *See, e.g.*, K.A. Compl. ¶¶ 452-56.  Like Plaintiffs' conspiracy claims
24   under the TVPRA, Plaintiffs' civil conspiracy claims fail.

25       "Conspiracy is not a cause of action, but a legal doctrine that imposes liability
26   on persons who, although not actually committing a tort themselves, share with the
27   immediate tortfeasors a common plan or design in its perpetration."  *Jones v.*
28   *Hollywood Unlocked, No.* 2:21-cv-7929-MEMF-PVC, 2022 WL 18674460, at *12

1    (C.D. Cal. Nov. 22, 2022) (quoting *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,

2    7 Cal. 4th 503, 510-11 (1994)).  "[T]he conspiracy **must** be accompanied 'by the

3    commission of an actual tort.'"  *Id.* (dismissing conspiracy claim because underlying

4    tort was insufficiently pleaded).  Plaintiffs only vaguely identify the torts that all

5    twenty Defendants—including the CB Defendants—purportedly conspired to

6    commit.  *See, e.g.*, K.A. Compl.  ¶ 454; *cf. Fleites*, 617 F. Supp. 3d at 1167 (finding

7    that the plaintiff's claim against Visa did not "make clear what torts Visa allegedly

8    conspired to commit").  Plaintiffs allege that all twenty Defendants conspired to

9    distribute sexually explicit materials, violate the UCL and the FAL, and violate

10   California's trafficking act.  *See* K.A. Compl.  ¶ 453 (alleging Defendants conspired

11   to commit unlawful acts under California statutes).  These conclusory allegations and

12   generalities are not sufficient to state a claim for civil conspiracy.  *Gifford v.

13   Hornbrook Fire Prot. Dist.*, No. 2:16-cv-596-JAM-DMC, 2021 WL 4168532, at 21

14   (E.D. Cal. Sept. 14, 2021) ("Plaintiffs must plead conspiracy with specificity.").

15        Furthermore, a civil conspiracy claim "allows tort recovery only against a

16   party who already owes [a] duty [to the plaintiff] and is not immune from liability

17   based on applicable substantive tort law principles."  *Applied Equip. Corp.*, 7 Cal.

18   4th at 514.  Here, the only alleged conduct linking the CB Defendants to the rest of

19   the alleged conspiracy is the two loans in 2011 and 2013.  "A lender does not owe a

20   borrower or third party any duties 'beyond those expressed in the loan agreement,

21   excepting those imposed due to special circumstance or a finding that a joint venture

22   exists.'"  *River Colony Ests. Gen. P'ship v. Bayview Fin. Trading Grp., Inc.*, 287 F.

23   Supp. 2d 1213, 1224 (S.D. Cal. 2003); *see also Resolution Tr. Corp. v. BVS Dev.,

24   Inc.*, 42 F.3d 1206, 1214 (9th Cir. 1994) (citing *Nymark v. Heart Fed. Sav. & Loan

25   Ass'n*, 231 Cal. App. 3d 1089, 1096 (1991)).  As explained in Section IV.C below,

26   participation in loans is insufficient to create in the CB Defendants a duty to

27   Plaintiffs.  Therefore, the CB Defendants cannot be liable to Plaintiffs for conspiracy

28   to commit those torts.

1       Separate from the failure to plead an underlying tort, Plaintiffs also do not

2  plead a civil conspiracy.  A claim for civil conspiracy requires the plaintiff to show

3  "(1) the formation and operation of the conspiracy, (2) wrongful conduct in

4  furtherance of the conspiracy, and (3) damages arising from the wrongful conduct."

5  *Ajzenman v. Off. of Comm'r of Baseball*, 487 F. Supp. 3d 861, 867 (C.D. Cal. 2020)

6  (citation omitted).  None of those elements exists here.

7       ***No formation or operation of conspiracy.***  Plaintiffs must show that the CB

8  Defendants had "(i) knowledge of wrongful activity, (ii) agree[d]to join in the

9  wrongful activity, and (iii) inten[ded] to aid in the wrongful activity."  *Id.* (citation

10  omitted).  Plaintiffs' allegations, however, contain a fundamental defect that negates

11  their attempt to assert a civil conspiracy claim:  They do not allege that the CB

12  Defendants ***agreed*** with a MindGeek defendant or anyone else to perpetuate CSAM

13  on MindGeek's websites or "deceive the public."  *Contra* K.A. Compl. ¶ 453-54; *see*

14  *Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d at 412 (finding an agreement to

15  provide banking services that allegedly assisted the borrower's sex-trafficking

16  venture was insufficient to show an actual agreement to participate in the venture);

17  *Murphy v. Am. Gen. Life Ins. Co.*, 74 F. Supp. 3d 1267, 1288 (C.D. Cal. 2015)

18  (dismissing conspiracy claim because there were "no allegations concerning when or

19  where such a conspiracy was conceived . . . [or] who—as [] representative[s] for [the

20  defendants]—conceived of, entered into or carried out the conspiracy"); *A.B. v.*

21  *Salesforce.com, Inc.*, No. 4:20-cv-1254, 2021 WL 3616097, at *6 (S.D. Tex. Mar.

22  22, 2021) (holding that the plaintiff must sufficiently allege an agreement to commit

23  the trafficking violation).  Conclusory allegations, such as Plaintiffs' allegation that

24  "Defendants conspired," do not survive dismissal.  K.A. Compl. ¶ 453; *See Iqbal*,

25  556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported

26  by mere conclusory statements, do not suffice [under Rule 8(a)(2)].");  *Sloatman v.*

27  *Housewright*, No. 2:21-cv-8235-DOC-MAA, 2022 WL 4390458, at *5 (C.D. Cal.

28  Sept. 6, 2022), *report and recommendation adopted*, No. 2:21-cv-8235-DOC-MAA,

2022 WL 4389514 (C.D. Cal. Sept. 22, 2022) (citation omitted) (lumping multiple defendants together "in one broad allegation fails to satisfy [the] notice requirement of Rule 8(a)(2)").

Nor have Plaintiffs alleged plausible facts to support an inference of conspiracy. Plaintiffs contend—through conclusory and implausible allegations—that the CB Defendants profited from CSAM by providing loans to the MindGeek Borrowers. *See* K.A. Compl. ¶ 247. But this does not establish that the CB Defendants ***agreed to participate*** in perpetuating CSAM or any other allegedly wrongful conduct. *117 Sales Corp. v. Olsen*, 80 Cal. App. 3d 645, 650 (1978) ("bare legal conclusions . . . [i]nferences, generalities, [and] presumptions, are insufficient"); *Buick v. World Sav. Bank*, 637 F. Supp. 2d 765 (E.D. Cal. 2008) (finding a defendant's letter hiring the alleged tortfeasor insufficient to show the defendant conspired with the alleged tortfeasor); *Hollywood Unlocked*, 2022 WL 18674460, at *12-13 (citing *Wasco Prods., Inc. v. Southwall Tech., Inc.*, 435 F.3d 989, 991-92 (9th Cir. 2006)) (finding the defendant's alleged conduct insufficient to infer a conspiracy).

Plaintiffs also do not allege plausible facts to support that the CB Defendants knew of or intended to aid an alleged conspiracy. *See, e.g.*, *Salesforce*, 2021 WL 3616097, at *6 (holding that executing an agreement did not establish that the defendant "had sex trafficking as an 'object to be accomplished'"). A civil conspiracy claim requires more than just alleging that a lender financially benefitted from the alleged tortfeasor's wrongful conduct. *See Douglas v. Hirshon*, 63 F.4th 49, 56-57 (1st Cir. 2023) (dismissing conspiracy claim against lenders because the allegations did not show that the lenders had conspired to commit a wrongful act); *Benson v. JPMorgan Chase Bank, N.A.*, No. 3:09-cv-5272-EMC, 2010 WL 1526394, at *6 (N.D. Cal. Apr. 15, 2010) (holding that a bank's financial incentive to accept deposits from Ponzi-scheme promoters did not establish intent to enter a conspiracy agreement); *Craigslist Inc. v. 3Taps Inc.*, 942 F. Supp. 2d 962, 982 (N.D. Cal. 2013)

1    (holding that a defendant's incentive to use information obtained through alleged

2    misconduct, or the existence of a market for such information, does not plausibly

3    suggest intent to assist in the wrongful conduct required to obtain the information

4    (citing *Benson*, 2010 WL 1526394, at *6)).  Plaintiffs do not allege that the CB

5    Defendants had any involvement with Plaintiffs' alleged traffickers (or any alleged

6    traffickers) or videos of Plaintiffs (or any CSAM content).  The bare conclusions and

7    presumptions in the Complaints do not show an agreement for a conspiracy claim.

8    *See State ex rel. Metz v. CCC Info. Servs., Inc.*, 149 Cal. App. 4th 402, 419 (2007).

9    ***No wrongful conduct in support of alleged conspiracy.***  For the civil

10   conspiracy claim against all twenty Defendants, each Complaint lists eighteen

11   purportedly wrongful and overt acts.  *See, e.g.*, K.A. Compl. ¶ 454.  But only one of

12   those alleged acts could even remotely be related to the CB Defendants—providing

13   loans to the MindGeek Borrowers and profiting from payments of the debt.  *Id.* ¶

14   454(r).  This conduct is not wrongful.  Nor does the conduct indicate that the CB

15   Defendants provided the loans for furthering the alleged conspiracy to perpetuate

16   CSAM on MindGeek's websites or deceive the public or in any way that related to

17   Plaintiffs.  *Contra id.* ¶ 453.

18   ***No damages arising from alleged wrongful conduct.***  For the same reasons

19   explained in Section III above and Section IV.C below that show that Plaintiffs lack

20   standing and that the CB Defendants did not cause Plaintiffs' injuries, Plaintiffs

21   similarly do not plausibly allege that their injuries (damages) arose from allegedly

22   wrongful conduct of a CB Defendant.  Plaintiffs in fact allege the opposite—CSAM

23   exploded on MindGeek websites, and videos of most of the Plaintiffs were on

24   MindGeek's websites, after the CB Defendants exited any loans to the MindGeek

25   Borrowers.  *See* K.A. Compl. ¶ 311; N.L. Compl. ¶ 312; L.T. Compl. ¶ 311; X.N.

26   Compl. ¶¶ 311-12; N.Y. Compl. ¶ 319; W.L. Compl. ¶ 311; C.S. Compl. ¶ 312; S.O.

27   Compl. ¶ 312, L.S. Compl. ¶ 313; J.L. Compl. ¶ 323.  Plaintiffs' implausible and

28   conclusory allegations are insufficient to survive dismissal of Plaintiffs' civil

1    conspiracy claims under Rule 12(b)(6).

2    ### 3.    The Complaints Fail to State Claims for IIED

3    The fourteen Complaints vaguely allege that all "Defendants" acted with

4    reckless disregard of the likelihood that Plaintiffs would suffer emotional distress and

5    that each Plaintiff's emotional distress was caused by "Defendants" failing to help

6    Plaintiffs from being harmed by CSAM on "defendants' websites."  *See* K.A. Compl.

7    ¶¶ 449-50.   To state a claim for IIED under California law, the plaintiff must allege

8    "(1) the defendant engaged in extreme and outrageous conduct with the intention of

9    causing, or reckless disregard of the probability of causing, severe emotion distress

10    to plaintiff; (2) the plaintiff actually suffered severe or extreme emotional distress;

11    and (3) the outrageous conduct was the actual and proximate cause of the emotional

12    distress." *Doe v. Cal. Inst. of Tech.*, No. 2:19-cv-01005-AB-KS, 2020 WL 8463631,

13    at *6 (C.D. Cal. Feb. 4, 2020).  The CB Defendants did not engage in any "extreme

14    or outrageous" conduct that was directed at or intended to inflict injury on Plaintiffs,

15    nor was their conduct—limited to participating in two rounds of loans—the "actual

16    and proximate caus[e]" of Plaintiffs' emotional distress.  *Id.*

17    ***No extreme or outrageous conduct***.  Plaintiffs must plead that the CB

18    Defendants engaged in extreme and outrageous conduct that was "directed at . . . or

19    occur[ed] in the presence of [] plaintiff[s] [of] whom the [CB Defendants] were

20    aware." *Christensen v. Super. Ct.*, 54 Cal. 3d 868, 903 (1991).  Plaintiffs do not

21    allege that the CB Defendants knew of any Plaintiffs, their traffickers, or any videos

22    of Plaintiffs.  The CB Defendants' conduct thus could not have been "directed at"

23    Plaintiffs or "calculated to cause" Plaintiffs emotional distress. *Coon v. Joseph,* 192

24    Cal. App. 3d 1269, 1273 (1987) ("The fact that defendants' conduct had not been

25    especially calculated to cause plaintiffs' distress was fatal to their claim."); *see also*

26    *Reaud v. Facebook Inc.*, No. 3:23-cv-06329-AMO, 2024 WL 4126066, at *3 (N.D.

27    Cal. Sept. 9, 2024) (dismissing IIED claim against Facebook based on posting of

28    "pornographic advertisements," which constitutes "passive conduct" rather than

1    conduct "directed [] at" the plaintiff.  As the CB Defendants did not intend to "inflict

2    injury" on Plaintiffs, their IIED claims necessarily fail.  *See Hughes v. Pair*, 46 Cal.

3    4th 1035, 1051 (2009) ("[T]he defendant's conduct must be intended to inflict injury

4    or engaged in with the realization that injury will result."); *Caraccioli v. Facebook,*

5    *Inc.*, 167 F. Supp. 3d 1056, 1063 (N.D. Cal. 2016), *aff'd*, 700 F. App'x 588 (9th Cir.

6    2017) (dismissing IIED claim based on the defendant's alleged failure to remove

7    sexually explicit content of the plaintiff in a timely manner).

8         In addition, because the CB Defendants had no knowledge of Plaintiffs or the

9    videos, CB Defendants could not have acted with reckless disregard of the likelihood

10   that Plaintiffs would suffer emotional distress or that Plaintiffs would be harmed by

11   CSAM on MindGeek's websites.  *Christensen*, 54 Cal. 3d at 905 (dismissing IIED

12   claim based on reckless conduct where the plaintiff failed to adequately plead "the

13   defendant [was] aware of, but act[ed] with reckless disregard of the plaintiff"); *see*

14   *also Newsome v. United States*, No. 1:04-cv-05335-NEW, 2006 WL 1153609, at *8

15   (E.D. Cal. Apr. 28, 2006) (dismissing IIED claim in part because the plaintiff failed

16   to show "reckless conduct calculated to cause [the plaintiff] serious mental distress").

17   Far from acting with such reckless disregard, the CB Defendants in fact ensured that

18   the Loan Agreements required MindGeek to comply with U.S. laws prohibiting

19   CSAM and other illegal content on MindGeek's websites.  *See supra* § II.D.

20        Plaintiffs' IIED claims also fail because Plaintiffs do not allege any extreme

21   or outrageous conduct by the CB Defendants.  Extreme and outrageous conduct is

22   conduct "so extreme as to exceed all bounds of that usually tolerated in a civilized

23   community." *Hughes*, 46 Cal. 4th at 1050-51 (citation omitted).  The CB Defendants

24   providing loans to MindGeek does not come close to this high bar.  Any "extreme"

25   or "outrageous" conduct identified in the Complaints—Plaintiffs' trafficking and the

26   recording and uploading of videos—was perpetrated by third parties that had no

27   affiliation with the CB Defendants.  Even if Plaintiffs could plausibly allege that the

28   CB Defendants failed to stop CSAM on MindGeek's websites, which Plaintiffs

- 34 -

1    cannot, such allegations would not rise to the level of "outrageous" conduct required

2    for an IIED claim.  *See, e.g.*, *Cal. Inst. of Tech.*, 2020 WL 8463631, at \*6 (finding

3    allegations that the defendant failed to prevent the plaintiff's sexual assault or take

4    sufficient remedial steps to separate her from her attacker did not amount to

5    "outrageous" conduct).  The Complaints fail to allege any extreme or outrageous

6    conduct by the CB Defendants that could give rise to a plausible IIED claim.

7    **No actual or proximate causation.**  Plaintiffs also fail to plausibly allege that

8    the CB Defendants actually or proximately caused each Plaintiff emotional distress.

9    As explained in Sections III and IV.C, no Plaintiff's alleged injury is fairly traceable

10   to or caused by a CB Defendant.  *See also Ogden v. Wells Fargo Bank, N.A.*, No.

11   2:15-cv-3410-DMG-AS, 2019 WL 6721583, at \*2 (C.D. Cal. July 22, 2019)

12   (dismissing IIED claim for failure to plausibly allege a sufficient causal connection

13   between the plaintiff's injuries and the defendant).  No adequately pleaded allegation

14   exists in any Complaint to support an IIED claim against the CB Defendants.

15   **4.    The California Claims Are Also Barred by Statutes of**

16   **Limitations**

17   The statute of limitations for a UCL claim is four years, for a FAL claim is

18   three years, and for a IIED claim is two years.  Cal. Bus. & Prof. Code § 17208

19   (UCL); *Yumul*, 733 F. Supp. 2d at 1130 (applying the three-year statute of limitations

20   in Section 338(a) of the California Code of Civil Procedure to a claim under the

21   FAL); *Soliman v. CVS RX Servs., Inc.*, 570 F. App'x 710, 711 (9th Cir. 2014) (IIED).

22   The statutes begin to run "when the last element essential to the cause of action occurs

23   and the plaintiff is entitled to maintain an action."  *Kader v. S. Cal. Med. Ctr., Inc.*,

24   99 Cal. App. 5th 214, 223 (2024); *see also Soliman*, 570 F. App'x at 711 (IIED

25   limitations period begins when the plaintiff suffers severe emotional distress).  The

26   statute of limitations for a civil conspiracy claim is based on the underlying wrong.

27   *Al-Ahmed v. Twitter, Inc.*, 648 F. Supp. 3d 1140, 1157, n.2 (N.D. Cal. 2023).  The

28   statute "begins to run from the time of the last overt act committed in furtherance of

1    the conspiracy." *Lauter v. Anoufrieva*, 642 F. Supp. 2d 1060, 1099 (C.D. Cal. 2009)

2    (citing *People v. Zamora*, 18 Cal. 3d 538, 548 (1976)).

3        As explained above, for Plaintiffs' UCL and FAL claims, Plaintiffs allege that

4    "Defendants" participated in a sex-trafficking venture, fraudulently deceived "its

5    users," profited by selling advertising, and profited by featuring the videos of

6    Plaintiffs. *See* K.A. Compl. ¶¶ 434-37. Plaintiffs' conspiracy claims vaguely allege

7    that all Defendants conspired to commit unlawful acts under California statutes by

8    distributing sexually explicit materials, violating the UCL and the FAL, and violating

9    California's trafficking act. *See id.* ¶ 453. Plaintiffs' IIED claims allege that all

10   Defendants knew, or recklessly disregarded, the risk of harm to Plaintiffs from

11   CSAM featuring them. *See, e.g.*, *id.* ¶ 449.

12       Plaintiffs base their theory of liability against the CB Defendants on loans

13   made to the MindGeek Borrowers, which ceased in 2018. *See, e.g.*, *id.* ¶¶ 246, 350-

14   51, 454(r); *see also* 2013 Loan Agreement, Ex. B at 185. Plaintiffs filed their

15   Complaints between June 7, 2024 and August 20, 2024—over five years after the CB

16   Defendants exited all loans, which is the last possible element essential to Plaintiffs'

17   causes of action against the CB Defendants (UCL, FAL, and IIED), and necessarily

18   the time of the last alleged overt act by a CB Defendant (conspiracy). *See, e.g.*,

19   *Carroll v. Lee*, No. 2:08-cv-975-RSL, 2009 WL 2855727, at *2 (W.D. Wash. Aug.

20   31, 2009) ("A defendant's withdrawal from the conspiracy starts the running of the

21   statute of limitations as to him."). The statutes of limitations of two, three, and four

22   years thus bar Plaintiffs' claims under California law.

23       Besides the CB Defendants ceasing loans to MindGeek in 2018, which alone

24   makes Plaintiffs' claims untimely, the statutes of limitations bar Plaintiffs' claims for

25   additional reasons. Nine Plaintiffs admit they discovered videos of them had been

26   uploaded to MindGeek's websites more than four years before filing their

27   complaints. *See Kader*, 99 Cal. App. 5th at 223; *Wassmann v. S. Orange Cnty. Cmty.*

28   *Coll. Dist.*, 24 Cal. App. 5th 825, 853 (2018); *see also* K.A. Compl. ¶ 315; N.L.

1   Compl. ¶ 312; L.T. Compl. ¶ 311; N.Y. Compl. ¶ 313; W.L. Compl. ¶ 311; C.S.

2   Compl. ¶ 312; S.O. Compl. ¶ 312; A.K. Compl. ¶ 311; J.L. Compl. ¶ 315.  The

3   applicable statutes of limitations, each of which is four or fewer years, thus bar those

4   nine Plaintiffs' California claims.  Plaintiffs X.N. and L.S. admit they discovered that

5   videos of them were uploaded to Pornhub in or around October 2020 and November

6   2020.  *See* X.N. Compl. ¶ 312; L.S. Compl. ¶ 313.  The applicable statutes of

7   limitations for IIED and FAL claims (two and three years) thus bar these two

8   Plaintiffs' IIED and FAL claims.  Finally, three Plaintiffs (J.C., T.C., and W.P.) do

9   not allege any dates for the conduct purportedly giving rise to their claims.  *See*

10  *generally,* J.C. Compl. ¶¶ 311-19; T.C. Compl. ¶¶ 311-18; W.P. Compl. ¶¶ 311-17.

11  Plaintiffs "cannot avoid the statute of limitations by omitting the date[s] of the alleged

12  violation[s] from their complaint[s]." *Myvett v. Litton Loan Servicing, LP*, No. 3:08-

13  cv-05797-MMC, 2010 WL 761317, at *4 (N.D. Cal. Mar. 3, 2010).  Thus, to the

14  extent the alleged conduct occurred more than four years from the dates of their

15  Complaints, their California claims are also barred by the statutes of limitations.

16      **C.    All of Plaintiffs' Claims Fail Because the CB Defendants—as**

17          **Participants in Loans to "MindGeek" in 2011 and 2013—Did Not**

18          ***Cause* Plaintiffs' Alleged Injuries**

19      Plaintiffs must show causation for each of their claims against the CB

20  Defendants.  *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S.

21  118, 132 (2014) (statutory claims are presumptively limited to a plaintiff whose

22  injuries are "proximately caused by violations of the statute"); *Doe v. Wyndham*

23  *Hotels & Resorts*, No. 8:23-cv-1554-JVS-JDE, 2024 WL 2104596, at *3 (C.D. Cal.

24  Feb. 28, 2024) (TVPRA claims "must connect the dots between Plaintiff's alleged

25  sex trafficking and the [defendant]"); *Kwikset Corp.*, 51 Cal. 4th at 326  (UCL and

26  FAL claims); *Ajzenman,* 487 F. Supp. 3d  at 867 (civil conspiracy claim);  *Cal. Inst.*

27  *of Tech.*, 2020 WL 8463631, at *6 (IIED claim).  Plaintiffs fail to plausibly allege

28  that any CB Defendant caused Plaintiffs' injuries.

1    As explained above in Section III, Plaintiffs' injuries are neither fairly

2    traceable to nor caused by the CB Defendants.    Those same reasons show that

3    Plaintiffs have failed to plead causation for their claims.  *See, e.g.*, *Lexmark*, 572 U.S.

4    at 133-34 (noting that the "injury [must] flow[ ] directly from" the conduct of the

5    defendant); *Justo v. Indymac Bancorp*, No. 8:09-cv-1116-JVS-AGR, 2010 WL

6    623715, at *4-5 (C.D. Cal. Feb. 19, 2010) (A plaintiff fails to satisfy the causation

7    requirement for UCL and FAL claims if he or she "would [have] suffer[ed] the same

8    harm whether or not a defendant complied with the law." (quoting *Daro*, 151 Cal.

9    App. 4th at 1099)).  The Ninth Circuit has reiterated that a determination of proximate

10   cause may not be extended "'beyond the first step' of the causal chain."  *City of*

11   *Oakland v. Wells Fargo & Co.*, 14 F.4th 1030, 1035 (9th Cir. 2021) (finding that the

12   plaintiff failed to plead proximate cause because the plaintiff's theory of liability

13   extended beyond the first step of the causal chain and "rest[ed] on . . . separate actions

14   carried out by separate **parties**"); *see also Lexmark,* 572 U.S. at 133 ("proximate-

15   cause requirement generally bars suits for alleged harm that is 'too remote' from the

16   defendant's unlawful conduct").  Judge Carney in *Fleites* held that Visa's conduct

17   was a proximate cause of the plaintiff's alleged injuries because they allegedly "flow

18   from the monetization of her videos and the acts taken to effectuate and maximize

19   that monetization." 617 F. Supp. 3d at 1164.  The same cannot be said about the CB

20   Defendants here.

21   Indeed, a lender-borrower relationship—unlike direct participation in

22   allegedly wrongful conduct—is insufficient to render the lender liable for alleged

23   misconduct of the borrower.

24   The general rule is that the mere loan of money by one corporation to

25   another does not automatically make the lender liable for the acts and

26   omissions of the borrower.  The logic of this rule is apparent, for

27   otherwise no lender would be willing to extend credit.  The risks and

28   liabilities would simply be too great.

1    *Krivo Indus. Supply Co. v. Nat'l Distillers & Chem. Corp.*, 483 F.2d 1098, 1104 (5th

2    Cir. 1973).  Courts are reluctant to hold a lender liable for the acts of a borrower that

3    allegedly violated a federal statute.  *See, e.g.*, *Hirson*, 63 F.4th at 56-57 (refusing to

4    impose liability on lenders under RICO); *Z & Z Leasing, Inc. v. Graying Reel, Inc.*,

5    873 F. Supp. 51, 55 (E.D. Mich. 1995) (refusing to impose liability on bank); *cf.* 42

6    U.S.C. § 9601(20) (providing that, under federal environmental statute, the term

7    "owner or operator" does not include a person who holds "indicia of ownership

8    primarily to protect his security interest," and that a lender does not "participate in

9    management" simply by "having the capacity to influence, or the unexercised right

10   to control, vessel or facility operations").  Indeed, "[s]ecured lenders frequently have

11   some routine involvement in the financial affairs of their debtors in order to insure

12   that their interests are being adequately protected," but imposing liability on this basis

13   would be punishing the lender for "engaging in its normal course of business." *Z &*

14   *Z Leasing*, 873 F. Supp. at 55.

15        Plaintiffs do not overcome this presumption against lender liability by alleging

16   that the "Colbeck Syndicate" practically or effectively owned MindGeek.  *See* K.A.

17   Compl. ¶¶ 252, 258.  As explained above in Section II.D, these allegations lack

18   plausibility or support—and in fact Plaintiffs contradict them.  But they also cannot

19   allege causation because there must be an alter ego or agency relationship for the

20   actions of one entity (the MindGeek Borrowers) to be imputed to another (the CB

21   Defendants).  *See Plutos Sama Holdings, Inc. v. Jagex Ltd.*, No. 8:21-cv-133-JVS-

22   JDE, 2022 WL 1536590, at *7 (C.D. Cal. Jan. 12, 2022) (refusing to impute

23   knowledge and actions of one defendant to another without plausible facts alleging

24   agency relationship); *Rozario v. Richards,* No. 2:14-cv-9540-AB-JPR, 2015 WL

25   13357613, at *6 (C.D. Cal. Apr. 22, 2015) (same; holding that courts will not assume

26   agency relationships).  Plaintiffs do not allege, nor could Plaintiffs plausibly allege,

27   that any MindGeek entity was the alter ego or the agent of the CB Defendants.

28   Plaintiffs' claims fail because the CB Defendants did not cause Plaintiffs' alleged

1   injuries.

2   **D.     Section 230 Also Bars Plaintiffs' Claims Against the CB Defendants**

3   Section 230 states that "[n]o provider or user of an interactive computer service

4   shall be treated as the publisher or speaker of any information provided by another

5   information content provider."  47 U.S.C. § 230(c)(1).  That immunity applies if (1)

6   the defendant is a "provider . . . of an interactive computer service," and (2) the claim

7   seeks to hold the defendant liable as a "publisher or speaker" of (3) content provided

8   by someone else.  *Id.*; *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1096

9   (9th Cir. 2019).

10   Plaintiffs' claims arise out of content (videos of Plaintiffs) provided by third

11   parties (the persons who posted the videos).  *See, e.g.*, K.A. Compl. ¶¶ 311, 316-17.

12   Plaintiffs allege that the MindGeek Entity Defendants are liable for that content (as

13   publishers or speakers).  *See, e.g.*, *id.* ¶¶ 313, 318, 321, 324.  Plaintiffs' theory against

14   the CB Defendants is ultimately that they are liable for that content as lenders to the

15   MindGeek Borrowers, the entities that operated and provided (or were affiliated with

16   the entities that operated and provided) the websites to which that content was

17   uploaded.  *See, e.g.*, *id.* ¶¶ 313, 318, 321, 347-54, 359, 431, 449, 453-54.

18   The MindGeek Defendants assert that they are entitled to immunity under

19   Section 230 for Plaintiffs' claims against them.  *See* MindGeek Defs.' Mot. to

20   Dismiss Second Am. Compl. at 13-19, *Fleites v. MindGeek S.à.r.l., et al.*, No. 2:21-

21   cv-04920 (C.D. Cal. June 17, 2021) (Hsu, J.), ECF No. 440-1.  Congress enacted

22   Section 230 "to promote the free exchange of information and ideas over the

23   Internet."  *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1099 (9th Cir. 2009); *see also*

24   *Batzel v. Smith*, 333 F.3d 1018, 1027 (9th Cir. 2003) ("Congress wanted to encourage

25   the unfettered and unregulated development of free speech on the Internet, and to

26   promote the development of e-commerce.").  To hold a lender liable for claims when

27   the interactive computer service provider to which the loan was made is immune

28   defies the purpose of Section 230.  In addition to being wholly illogical, that result

- 40 -

1    would discourage loans to providers of interactive computer services for fear of being

2    held liable for conduct from which the service provider itself is immune.  If the Court

3    dismisses claims against the MindGeek Entity Defendants under Section 230, the

4    Court should also dismiss the claims against the CB Defendants.

5    **E.    The Court Should Dismiss Plaintiffs' Claims Against the CB**

6    **Defendants with Prejudice**

7    Plaintiffs cannot remedy the legal deficiencies in their claims against the CB

8    Defendants through amendment.  All four *Foman* factors favor the Court dismissing

9    Plaintiffs' claims with prejudice under Rule 15(a)(2).  *Foman v. Davis*, 371 U.S. 178,

10    182 (1962).

11    ***Undue delay.***  "Undue delay is delay that prejudices the nonmoving party."

12    *Davis v. Powell*, 901 F. Supp. 2d 1196, 1212 (S.D. Cal. 2012).  Most Plaintiffs admit

13    they discovered videos featuring them had been uploaded to MindGeek's websites in

14    or prior to 2020.  *See* K.A. Compl. ¶ 315; N.L Compl. ¶ 312; L.T. Compl. ¶ 311;

15    X.N. Compl. ¶ 312; N.Y. Compl. ¶ 313; W.L. Compl. ¶ 311; C.S. Compl. ¶ 312; S.O.

16    Compl. ¶¶ 311-12; L.S. Compl. ¶¶ 311-13; A.K. Compl. ¶ 311; J.L. Compl. ¶ 315.

17    Yet Plaintiffs delayed in bringing their claims against Defendants.  Further, the CB

18    Defendants participated in loans in 2011 and 2013 to the MindGeek Borrowers,

19    which concluded in 2018.  *See* K.A. Compl. ¶¶ 251, 256-57; *see also* 2011 Loan

20    Agreement, Ex. A; 2013 Loan Agreement, Ex. B.  Plaintiffs' delay in filing meritless

21    claims based on alleged conduct from up to thirteen years ago has prejudiced the CB

22    Defendants and will continue to prejudice them.

23    ***Futility and bad faith.***  As explained in this Motion, Plaintiffs base all claims

24    against the CB Defendants not only on implausible, conclusory, unsupported, and

25    contradicted allegations—but also on unsupportable legal theories, including, as to

26    Plaintiffs' TVPRA claims, theories rejected by the Ninth Circuit.  Many fatal defects

27    exist in all of Plaintiffs' claims, and any amendment to attempt to cure them would

28    be futile.  *Atkinson v. Meta Platforms, Inc.*, No. 20-17489, 2021 WL 5447022, at *3

1    (9th Cir. Nov. 22, 2021) ("Dismissal with prejudice and without leave to amend is
2    appropriate when any amendment would be futile."); *Cabrera v. Residential Credit*
3    *Sol. Inc.*, No. 2:14-cv-09212-DMG-AWJ, 2015 WL 13916231, at *7 (C.D. Cal. Sept.
4    10, 2015) ("Bad faith exists where . . . proposed amendment will not save the
5    complaint.")

6         ***Undue prejudice***.  As explained above as to undue delay, allowing Plaintiffs
7    to continue to assert claims against the CB Defendants through amendment would be
8    unduly prejudicial.  *Foster Poultry Farms v. Alkar-Rapidpak-MP Equip., Inc.*, No.
9    1:11-cv-00030-AWI-SMS, 2013 WL 398664, at *6 (E.D. Cal. Jan. 31, 2013) (finding
10   prejudice because two years elapsed since the plaintiff knew but chose not to allege
11   the facts).  This is especially true given the futility of such claims.  *See, e.g.*, *Life*
12   *Savers Concepts Ass'n of California v. Wynar*, 387 F. Supp. 3d 989, 996 (N.D. Cal.
13   2019) (finding amendment would be unduly prejudicial to the defendant because it
14   would have been futile based on controlling law).

15        A decision denying this Motion, even in part, or allowing Plaintiffs to replead
16   allegations against the CB Defendants will likely result in substantial negative
17   publicity.  Indeed, there was significant attention related to Judge Carney's ruling on
18   Visa's motion to dismiss in *Fleites*.  Plaintiffs' law firm also issued a press release
19   titled "Brown Rudnick Secure[d] [a] Landmark Ruling Against Visa in MindGeek
20   Child Porn and Sex Trafficking Case."    Brown Rudnick (Aug. 1, 2022),
21   https://brownrudnick.com/press_release/brown-rudnick-secures-landmark-ruling-
22   against-visa-in-mindgeek-child-porn-and-sex-trafficking-case/.  With sympathy for
23   the difficult and painful alleged circumstances of the Plaintiffs, the Court should
24   dismiss the Complaints with prejudice and thus prevent false allegations and flawed
25   legal theories from disparaging the CB Defendants—independent SEC-regulated
26   lenders with no involvement in the alleged wrongful conduct—any more than the
27   Complaints already have.

28

1    **V.    <u>CONCLUSION</u>**

2          For these reasons, the Court should grant the Motion and dismiss all fourteen

3    Complaints against the CB Defendants with prejudice.

4

5    Dated:   October 30, 2024                    WHITE & CASE LLP

6

7                                                  By: _____

8                                                       David G. Hille

9                                                  Attorneys for Defendants
10                                                 COLBECK CAPITAL
                                                   MANAGEMENT, LLC; CB MEDIA
11                                                 VENTURES DD, LLC; CB AGENCY
                                                   SERVICES, LLC; and CB
12                                                 PARTICIPATIONS SPV, LLC

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 43 -

1

**<u>CERTIFICATE OF COMPLIANCE</u>**

2             The undersigned, counsel of record for the CB Defendants, certifies that the

3    Memorandum of Points and Authorities in Support of the Omnibus Motion to

4    Dismiss consists of 43 pages, which complies with the 50-page limit set forth in the

5    Court's October 9, 2024 Order Granting Joint Stipulation to Request Limited

6    Coordination For Purposes of Responding to Complaints in Related Cases, ECF

7    No. 54.

8

9    Dated:  October 30, 2024                   WHITE & CASE LLP

10

11                                  By: _____
                                      David G. Hille

12

13                                  Attorneys for Defendants
                                  COLBECK CAPITAL

14                                  MANAGEMENT, LLC; CB MEDIA
                                  VENTURES DD, LLC; CB AGENCY

15                                  SERVICES, LLC; and CB
                                  PARTICIPATIONS SPV, LLC

16

17

18

19

20

21

22

23

24

25

26

27

28

- 44 -
