Arameh Z. O'Boyle (SBN 239495)
azoboyle@mintz.com
Esteban Morales Fabila (SBN 273948)
emorales@mintz.com
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
2049 Century Park East, Suite 300
Los Angeles, CA 90067
Telephone: (310) 586-3200
Facsimile: (310) 586-3202

[*Additional Defendants' Counsel continued on next page*]

*Attorneys for Defendants MindGeek, S.à r.l., MG Freesites Ltd, MG Premium Ltd, MindGeek USA Incorporated, MG Global Entertainment Inc., and 9219-1568 Quebec Inc.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| K.A.<br><br>                    Plaintiffs,<br><br>        v.<br><br>MINDGEEK S.À.R.L., et al.,<br><br>                    Defendants. | Case Nos. 2:24-cv-04786-WLH-ADS<br><br>**OMNIBUS MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS OF DEFENDANTS MINDGEEK S.À R.L., MG FREESITES LTD, MG PREMIUM LTD, MINDGEEK USA INCORPORATED, MG GLOBAL ENTERTAINMENT INC., AND 9219-1568 QUEBEC INC.**<br><br>**[REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL]**<br><br>Hearing Date:    January 31, 2024<br>Hearing Time:    1:30 p.m.<br>Courtroom:    9B<br>Judge:    Hon. Wesley L. Hsu<br><br>Complaint Filed: June 7, 2024<br><br>Trial Date:    None Set |

Seth R. Goldman (*pro hac vice app. forthcoming*)
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
919 Third Avenue
New York, NY 10022
Telephone: (212) 692-6845
Facsimile: (212) 983-3115

Peter A. Biagetti (*admitted pro hac vice*)
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
One Financial Center
Boston, MA 02111
Telephone: (617) 542-6000
Facsimile: (617) 542-2241

# **TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................ iii

SUMMARY OF THE ARGUMENT ............................................................................ 1

ARGUMENT ................................................................................................................ 2

I.    PLAINTIFFS' CLAIMS ARE BARRED BY SECTION 230 ....................... 2

    A.    MindGeek Is Not a Content Creator ................................................... 2

    B.    On the Facts Alleged, FOSTA's Exception Does Not Apply .............. 7

        1.    Plaintiffs Have Not Alleged That MindGeek Violated Section 1591(a)(1) ........................................................... 8

        2.    Plaintiffs Have Not Alleged That MindGeek Violated Section 1591(a)(2) ......................................................... 10

II.   EVEN IF NOT BARRED BY SECTION 230, PLAINTIFFS' CLAIMS INDEPENDENTLY FAIL ......................................................................... 12

    A.    As in Fleites, Plaintiffs' Counts I, IV, and XV Fail to State Claims for Violation of Either Federal or State Sex-Trafficking Laws ................ 12

        1.    Plaintiffs Have Not Sufficiently Alleged a Violation by MindGeek of the Federal Sex-Trafficking Laws (18 U.S.C. §§ 1591, 1594, 1595) ...................................... 12

        2.    Plaintiffs' Count XV Equally Fails to State a Claim under Cal. Civ. Code § 52.5 ...................................................... 13

    B.    Plaintiffs' Counts V and VI Fail to State a Claim for Receipt, Transport, or Distribution of Child Pornography (18 U.S.C. §§ 2252, 2252A, 2255) .......................................................................... 14

    C.    Plaintiffs' Remaining Claims Do Not Meet the Applicable Pleading Requirements. ................................................................................... 15

        1.    Because MindGeek Is Not the Publisher of the Videos, Plaintiffs' Intentional-Tort Claims Fail. .................................. 15

        2.    Plaintiffs' Misappropriation-of-Likeness Claims (Cal. Civ. Code § 3344) Fail for Additional Reasons. ...................... 18

        3.    Plaintiffs' Count XIII Fails to State a Claim for Negligence. ........................................................................... 19

i

4.    Plaintiffs' Count XIV Fails to State a Claim for Unfair Competition (Cal. Bus. & Prof. Code §§ 17200 and 17500). ...................................................................... 20

5.    Plaintiffs' Count XVII Cannot State a Claim for Civil Conspiracy. ..................................................................... 21

6.    Plaintiffs' Count XVI Fails to State a Claim for Intentional Infliction of Emotional Distress ............................ 22

III.   THE COURT LACKS PERSONAL JURISDICTION OVER MINDGEEK S.A R.L., MindGeek USA Incorporated, MG Global ENTERTAINMENT, and All Defendants as to the Non-U.S. Plaintiffs' Claims ............................ 25

A.    Plaintiffs Must Come Forward with Evidence Sufficient to Establish Their Disputed Jurisdictional Allegations. ........................................... 26

B.    Plaintiffs' Jurisdictional Allegations as to MindGeek S.à r.l. Do Not Meet Their Burden. .................................................................. 26

1.    MindGeek S.à r.l. Has No Contacts with the United States. ............................................................................ 26

2.    Plaintiffs Cannot Impute Other Entities' Contacts to Establish Jurisdiction over MindGeek S.à r.l. ........................... 28

i.    Plaintiffs Cannot Establish Any Facts to Overcome the Presumption of Separateness. ................................... 30

ii.    Plaintiffs Cannot Establish That Failing to Disregard the Separateness Would Result in Fraud or Injustice. ....................................................... 35

3.    MindGeek S.à r.l. Is Also Beyond the Territorial Reach of 18 U.S.C. § 1595 .................................................. 36

C.    This Court Lacks Personal Jurisdiction over MindGeek USA Incorporated and MG Global Entertainment. ....................................... 37

D.    The Non-U.S. Plaintiffs' Claims Do Not Arise out of Any United States-Based Conduct. ................................................................. 38

CONCLUSION .................................................................................................. 43

MEMO IN SUPPORT OF MOTION TO DISMISS

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4

*Allen v. Shutterfly, Inc.*,
   2020 WL 5517170 (N.D. Cal. Sept. 14, 2020)...................................................28

*AMA Multimedia, LLC v. Wanat*,
   970 F.3d 1201 (9th Cir. 2020)............................................................*passim*

*B.M. v. Wyndham Hotels & Resorts, Inc.*,
   2020 WL 4368214 (N.D. Cal. July 30, 2020) ....................................................11

*Baton v. Ledger SAS*,
   2021 WL 5226315 (N.D. Cal. Nov. 8, 2021) .....................................................37

*Bauman v. DaimlerChrysler Corp.*,
   644 F.3d 909 (9th Cir. 2011) ...........................................................................37

*Bristol-Myers Squibb Co. v. Super. Ct.* (*BMS*),
   582 U.S. 255 (2017) .........................................................................39, 40, 43

*Calder v. Jones*,
   465 U.S. 783 (1984) .......................................................................................28

*Callahan v. Ancestry.com Inc.*,
   2021 WL 783524 (N.D. Cal. Mar. 1, 2021) .......................................................7

*Caraccioli v. Facebook, Inc.*,
   167 F. Supp. 3d 1056 (N.D. Cal. 2016)............................................................23

*Caraccioli v. Facebook, Inc.*,
   700 F. App'x 588 (9th Cir. 2017)......................................................................7

*Carafano v. Metrosplash.com, Inc.*,
   339 F.3d 1119 (9th Cir. 2003)......................................................................5, 7

*Castillo v. CleanNet USA, Inc.*,
   358 F. Supp. 3d 912 (N.D. Cal. 2018)...................................................13, 14, 22

*Chan v. Soc'y Expeditions, Inc.*,
   123 F.3d 1287 (9th Cir. 1997).........................................................................29

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Corcoran v. CVS Health Corp.*,
    169 F. Supp. 3d 970 (N.D. Cal. 2016)..................................................30

*Davis v. Cranfield Aero. Sols., Ltd.*,
    71 F.4th 1154 (9th Cir. 2023)........................................................40

*Doe #1 v. Twitter, Inc.*,
    2023 WL 3220912 (9th Cir. May 3, 2023)...............................7, 10

*Doe v. Aylo Glob. Ent. Inc.*,
    2024 WL 4599539 (C.D. Cal. June 24, 2024).............................28

*Doe v. Bates*,
    2006 WL 3813758 (E.D. Tex. Dec. 27, 2006).............................7

*Doe v. Reddit*,
    2021 WL 5860904 (C.D. Cal. Oct. 7, 2021)................................7

*Doe v. Unocal Corp.*,
    248 F.3d 915 (9th Cir. 2001).......................................................29

*Does 1-6 v. Reddit, Inc.*,
    51 F.4th 1137 (9th Cir. 2022)..................................8, 10, 11, 13

*Fair Hous. Council v. Roommates.com, LLC*,
    521 F.3d 1157 (9th Cir. 2008).......................................................6

*Fleites v. MindGeek S.A.R.L.*,
    2022 WL 4455558 (C.D. Cal. July 29, 2022).........................27, 28

*Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*,
    592 U.S. 351 (2021).......................................................................41

*Fyk v. Facebook, Inc.*,
    808 F. App'x 597 (9th Cir. 2020)................................................5

*Glob.-Tech Appliances, Inc. v. SEB S.A.*,
    563 U.S. 754 (2011).......................................................................15

*Hernandez v. LG Elecs. U.S.A., Inc.*,
    2023 WL 9375095 (C.D. Cal. Dec. 26, 2023)............................43

*Iconlab, Inc. v. Bausch Health Cos.*,
    828 F. App'x 363 (9th Cir. 2020)................................................35

iv

*In re Hydroxycut Marketing and Sales Practices Litig.*,
   810 F. Supp. 2d 1100 (S.D. Cal. 2011) ...................................................36

*Indus. Bank of Korea v. ASI Corp.*,
   2018 WL 6164315 (C.D. Cal. Apr. 26, 2018)...................................34

*J.B. v. G6 Hosp., LLC*,
   2020 WL 4901196 (N.D. Cal. Aug. 20, 2020) ....................................7

*J.M. v. Choice Hotels Int'l, Inc.*,
   2022 WL 10626493 (E.D. Cal. Oct. 18, 2022) ..................................13

*Jeong v. Nexo Fin. LLC*,
   2022 WL 174236 (N.D. Cal. Jan. 19, 2022) ......................................30

*Johnston v. Irontown Hous. Co., Inc.*,
   2014 WL 12531189 (S.D. Cal. Dec. 9, 2014).....................................30

*Joude v. WordPress Found.*,
   2014 WL 3107441 (N.D. Cal. July 3, 2014) ........................................7

*Kimzey v. Yelp! Inc.*,
   836 F.3d 1263 (9th Cir. 2016) .............................................................5

*Kingsburg Apple Packers, Inc. v. Ballantine Produce Co.*,
   2010 WL 2817056 (E.D. Cal. July 16, 2010) ....................................31

*Kramer Motors, Inc. v. British Leyland, Ltd.*,
   628 F.2d 1175 (9th Cir. 1980)............................................................34

*Liberty City Movie, LLC v. U.S. Bank, N.A.*,
   824 F. App'x 505 (9th Cir. 2020).......................................................21

*LNS Enters. LLC v. Cont'l Motors, Inc.*,
   22 F.4th 852 (9th Cir. 2022)...............................................................41

*Lugo v. Performance Transp., LLC*,
   2020 WL 7034336 (C.D. Cal. Oct. 5, 2020) ......................................31

*Morton v. Aylo Holdings, S.A.R.L.*,
   2024 WL 4599343 (C.D. Cal. Oct. 3, 2024) ......................................28

*Nabeel v. Taylor Swift Prods., Inc.*,
   2024 WL 4444483 (C.D. Cal. July 31, 2024) ..............................16, 17

MEMO IN SUPPORT OF MOTION TO DISMISS

*O.T. v. Babybjörn Ab*,
  2021 WL 4861447 (C.D. Cal. Sep. 8, 2021) ...................................................... 30

*Pennie v. Twitter, Inc.*,
  281 F. Supp. 3d 874 (N.D. Cal. 2017) ............................................................ 6

*Perfect 10, Inc. v. Giganews, Inc.*,
  847 F.3d 657 (9th Cir. 2017) ............................................................. 35, 36

*Planet Green Cartridges, Inc. v. Amazon.com, Inc.*,
  2023 WL 8943219 (C.D. Cal. Dec. 5, 2023) ...................................................... 5

*Broidy Cap. Mgmt., LLC v. Qatar*,
  2018 WL 9943551 (C.D. Cal. Aug. 22, 2018) ..................................................... 28

*Ra Med. Sys. v. PhotoMedex, Inc.*,
  373 F. App'x 784 (9th Cir. 2010) ................................................................ 20

*Ranza v. Nike, Inc.*,
  793 F.3d 1059 (9th Cir. 2015) .......................................................... *passim*

*Reaud v. Facebook, Inc.*,
  2024 WL 4126066 (N.D. Cal. Sept. 9, 2024) ...................................................... 24

*Sabre Int'l Sec. v. Torres Advanced Enter. Sols.*,
  60 F. Supp. 3d 21 (D.D.C. 2014) ................................................................ 38

*Sandoval v. Ali*,
  34 F. Supp. 3d 1031 (N.D. Cal. 2014) ............................................................ 31

*Shimmick Constr. Co./Obayashi Corp. v. Officine Meccaniche*
  *Galletti-O.M.G. S.R.L.*,
  2014 WL 5847440 (S.D. Cal. Nov. 12, 2014) ...................................................... 35

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007) ................................................................... 26

*Tamraz v. Bakotic Pathology Assocs.*,
  2022 WL 16985001 (S.D. Cal. Nov. 16, 2022) ..................................................... 32

*United States v. X-Citement Video, Inc.*,
  513 U.S. 64 (1994) ............................................................................ 14

*Vacless Sys. v. Vac-Alert Ip Holdings, LLC*,
    2011 WL 13217924 (C.D. Cal. June 24, 2011)...............................................29

*Y.Y.G.M. SA v. Redbubble, Inc.*,
    75 F.4th 995 (9th Cir. 2023) ..................................................................15

*Yamashita v. LG Chem, Ltd.*,
    62 F.4th 496 (9th Cir. 2023)...........................................................*passim*

*Yeager v. Bowlin*,
    693 F.3d 1076 (9th Cir. 2012) ..............................................................16

*Youngevity Int'l, Inc. v. Innov8tive Nutrition, Inc.*,
    2024 WL 838707 (9th Cir. Feb. 28, 2024)................................................33

**State Cases**

*Delfino v. Agilent Techs., Inc.*,
    145 Cal. App. 4th 790 (2006) ..................................................................7

*Garza v. Balatico*,
    2021 Cal. Super. LEXIS 110544 (Cal. Super. May 26, 2021)...................22, 23

*Landwehrle v. Bianchi*,
    2022 WL 2797787 (N.Y. Super. June 24, 2022)........................................16

*McKenna Motors Torrance v. Vecchio*,
    2021 WL 6502339 (Cal. Super. Nov. 15, 2021) ........................................19

*Mireskandari v. Associated Newspapers Ltd.*,
    2016 WL 4506087 (Cal. Ct. App. Aug. 29, 2016).......................................16

*Okorie v. L.A. Unified Sch. Dist.*,
    14 Cal. App. 5th 574 (2017)..................................................................23

*Wassmann v. S. Orange Cnty. Cmty. Coll. Dist.*,
    24 Cal. App. 5th 825 (June 12, 2018) .....................................................24

**Federal Statutes**

18 U.S.C.
    § 1591 ...................................................................................*passim*
    § 1595 .......................................................................7, 12, 13, 36
    § 1596 ...............................................................................................36

§ 2252 ............................................................................................... 14
§ 2252A ......................................................................................... 7, 14
§ 2255 ........................................................................................ *passim*

47 U.S.C.
§ 230 ........................................................................................... *passim*

**State Statutes**

Cal. Bus. & Prof. Code
§ 17200 ........................................................................................ 19, 20
§ 17208 .............................................................................................. 20
§ 17500 ........................................................................................ 19, 20

Cal. Civ. Code
§ 52.5 ......................................................................................... *passim*
§ 3344 ...................................................................................... 7, 16, 18

Cal. Civ. Proc. Code
§ 335.1 .................................................................................... 16, 19, 24
§ 340 .................................................................................................. 17
§ 352 ...................................................................................... 17, 19, 24

Cal. Pen. Code
§ 236.1 ............................................................................................... 13

**Rules**

Fed. R. Civ. P.
4(k)(2)(A) .......................................................................................... 37

MEMO IN SUPPORT OF MOTION TO DISMISS

## SUMMARY OF THE ARGUMENT

This action is one of 14 related lawsuits (the "Related Cases")[1] filed in this Court by the same plaintiffs' counsel against the same set of defendants asserting the same claims and arising out of the same allegations that pornographic videos and images of underage individuals were procured and uploaded by third parties to websites allegedly owned or operated by Defendants MindGeek S.à r.l., MG Freesites Ltd, MG Premium Ltd, MindGeek USA Incorporated, MG Global Entertainment Inc., and 9219-1568 Quebec Inc. (collectively, "MindGeek" or the "MindGeek Defendants"[2]).  The only substantive distinctions between the Related Cases are confined to a handful of allegations concerning each plaintiff's individual circumstances, none of which is material to any of the challenges set forth in this Memorandum.

Importantly, the vast majority of the allegations and causes of actions asserted against MindGeek in the Related Cases are identical to those asserted by the plaintiff

---

[1]    The other actions in the Related Cases are captioned as follows:  *L.T. v. MindGeek S.à.r.l,, et al.*, No. 2:24-CV-04791-WLH-ADS (C.D. Cal. June 7, 2024); *N.L. v. MindGeek S.à.r.l,, et al.*, No. 2:24-cv-04788-WLH-ADS (C.D. Cal. June 7, 2024); *N.Y. v. MindGeek S.à.r.l,, et al.*, No. 2:24-cv-04801-WLH-ADS (C.D. Cal. June 7, 2024); *T.C. v. MindGeek S.à.r.l,, et al.*, No. 2:24-cv-04795-WLH-ADS (C.D. Cal. June 7, 2024); *X.N. v. MindGeek S.à.r.l,, et al.*, No. 2:24-cv-04800-WLH-ADS (C.D. Cal. June 7, 2024); *J.C. v. MindGeek S.à.r.l,, et al.*, No. 2:24-cv-04971-WLH-ADS (C.D. Cal. June 12, 2024); *C.S. v. MindGeek S.à.r.l,, et al.*, No. 2:24-cv-04992-WLH-ADS (C.D. Cal. June 13, 2024); *S.O. v. MindGeek S.à.r.l,, et al.*, No. 2:24-cv-04998-WLH-ADS (C.D. Cal. June 13, 2024); *W.L. v. MindGeek S.à.r.l,, et al.*, No. 2:24-cv-04977-WLH-ADS (C.D. Cal. June 13, 2024); *L.S. v. MindGeek S.à.r.l,, et al.*, No. 2:24-cv-05026-WLH-ADS (C.D. Cal. June 14, 2024); *A.K. v. MindGeek S.à.r.l,, et al.*, No. 2:24-cv-05190-WLH-ADS (C.D. Cal. June 20, 2024); *W.P. v. MindGeek S.à.r.l,, et al.*, No. 2:24-cv-05185-WLH-ADS (C.D. Cal. June 20, 2024); *L.T. v. MindGeek S.à.r.l,, et al.*, No. 2:24-cv-07046-WLH-ADS (C.D. Cal. Aug. 20, 2024) (plaintiffs in each of these cases collectively will be referred to as the "Plaintiffs"). On October 9, 2024, the Court entered an Order directing each defense counsel to file one omnibus motion to dismiss in the Related Cases on behalf of the parties that they represent.  ECF No. 54 ("Coordination Order"), at 2.

[2]    Defendants MindGeek S.à r.l., MG Freesites Ltd ("Freesites"), MindGeek USA Incorporated, MG Premium Ltd, MG Global Entertainment Inc., and 9219-5618 Quebec Inc. ("9219") dispute Plaintiffs' allegations that they all own or operate websites, or that they collectively have acted as impermissibly alleged in the complaint. Solely for the purpose of economy, however, Defendants will refer to these entities in this Memorandum as "MindGeek."

MEMO IN SUPPORT OF MOTION TO DISMISS

in *Fleites v. MindGeek, S.à.r.l, et al.*, Case No. 2:21-cv-04920-WLH-ADS (C.D. Cal. June 17, 2021) ("*Fleites*"). Specifically, of the 456 paragraphs constituting the complaint in each of the Related Cases, *444 paragraphs are substantively the same as*—and the majority are verbatim iterations of—the allegations in the *Fleites* Second Amended Complaint ("SAC").[3]  *Compare Fleites* SAC¶¶ 1–447, 463–594, ECF No. 387, *with* K.A. Compl. ¶¶ 1–310, 313–314, 317–446, 452–456.[4]  Therefore, in addition to their individual deficiencies, the Related Cases suffer from the same factual and legal infirmities contained in the *Fleites* SAC, as outlined in the MindGeek Defendants' motion-to-dismiss briefing in that case.[5]  *Fleites*, ECF No. 448.  For all the reasons set forth in the *Fleites* motion to dismiss and the additional reasons stated herein, the Related Cases should be dismissed in their entirety.

<u>**ARGUMENT**</u>

## I.    PLAINTIFFS' CLAIMS ARE BARRED BY SECTION 230

### A.    MindGeek Is Not a Content Creator

Like those alleged in the SAC in *Fleites*, Plaintiffs' claims are barred by section 230 of the Communications Decency Act (CDA), 47 U.S.C. § 230(c), because they fail to establish that MindGeek was a content creator such that section 230 would not apply.  Indeed, the very same allegations central to the section 230 inquiry in

---

[3]  The factual variations in these 444 paragraphs are limited to the substitution of plaintiff's initials for Fleites's name, the striking of certain allegations as to defendants other than MindGeek, and certain less detailed alter ego allegations.

[4]  The same scope of overlap exists with the other 13 complaints.  *See* L.T. Comp. ¶¶ 1–310, 314-315, 318-319, 321-448, 454-458; N.L. Compl. ¶¶ 1–310, 313, 318, 320-449, 455-459; N.Y. Compl. ¶¶ 1-310, 314, 322, 326-455, 461-465; T.C. Compl. ¶¶ 1–310, 314, 318-446, 452-456; X.N. Compl. ¶¶ 1-310, 313, 316-317, 320-447, 453-457; J.C. Compl. ¶¶ 1-310, 313-314, 318-319 [Causes of Action paragraphs] 1-138, 134-138; C.S. Compl. ¶¶ 1-310, 314, 317-446, 452-456; S.O. Compl. ¶ 1-310, 313, 318-447, 453-457; W.L. Compl. ¶¶ 1-310, 312, 320-449, 455-459; L.S. Compl. ¶¶ 1-310, 314, 317-318, 321-448, 454-458; A.K. Compl. ¶¶ 1-310, 312, 319-448, 454-458; W.P. Compl. ¶¶ 1-310, 313, 316-445, 451-455; J.L. Compl. ¶¶ 1-310, 318, 320, 326-455, 461-465.

[5]  In the Coordination Order, the Court specified that Defendants' omnibus motions shall include any case-specific issues raised in any of complaints in the Related Cases and may incorporate by reference the arguments made by the parties in the motion to dismiss briefing in *Fleites*.  ECF No. 54, at 2.

*Fleites* (*Fleites* SAC ¶¶ 448–462) are echoed in the Related Cases. Specifically, just as in *Fleites*:

1.  Plaintiffs allegedly were induced or coerced into engaging in sexual conduct by a third party. *See* K.A. Compl. ¶ 311; L.T. Compl. ¶ 311; N.L. Compl. ¶ 311; N.Y. Compl. ¶¶ 311–312; T.C. Compl. ¶ 311; X.N. Compl. ¶ 311; J.C. Compl. ¶ 311; C.S. Compl. ¶ 311; S.O. Compl. ¶ 311; W.L. Compl. ¶ 311; L.S. Compl. ¶¶ 311–312; A.K. Compl. ¶¶ 311, 314; W.P. Compl. ¶ 311; J.L. Compl. ¶¶ 309–314.

2.  Plaintiffs allegedly were filmed and/or photographed engaging in sexual conduct by third parties. *See* K.A. Compl. ¶ 311; L.T. Compl. ¶¶ 311–313; T.C. Compl. ¶ 311; X.N. Compl. ¶ 311; J.C. Compl. ¶ 311;W.L. Compl. ¶ 311; L.S. Compl. ¶¶ 311–312; A.K. Compl. ¶¶ 311, 314; W.P. Compl. ¶ 311; J.L. Compl. ¶¶ 309–314; *but see* N.Y. Compl. ¶¶ 311–312 (alleging that third party coerced plaintiff into making a sexually explicit video and taking photographs of herself and then sending them to third party); N.L. Compl. ¶ 311; J.C. Compl. ¶ 311 (same); C.S. Compl. ¶ 311 (same); S.O. Compl. ¶ 311.

3.  The video(s) or photograph(s) taken of the Plaintiffs engaging in that sexual conduct were allegedly posted by third parties on a MindGeek website, most notably Pornhub. *See* K.A. Compl. ¶¶ 311, 314; L.T. Compl. ¶¶ 312–313; N.L. Compl. ¶¶ 311–312; N.Y. Compl. ¶ 313; T.C. Compl. ¶ 311; X.N. Compl. ¶¶ 311–312, 314; J.C. Compl. ¶¶ 311–312, 314; C.S. Compl. ¶¶ 311–313; S.O. Compl. ¶¶ 311–312, 314; W.L. Compl. ¶¶ 311, 313; L.S. Compl. ¶¶ 311–313, 315; A.K. Compl. ¶¶ 311, 314; W.P. Compl. ¶¶ 311–312, 314; J.L. Compl. ¶¶ 315–316.

4.  At least some, if not all, of the video(s) or photograph(s) posted by those third parties allegedly involved CSAM. *See* K.A. Compl. ¶¶ 311, 315; L.T. Compl. ¶ 313; N.L. Compl. ¶¶ 311–312; N.Y. Compl. ¶¶ 311–312; T.C. Compl. ¶ 311; X.N. Compl. ¶ 311; J.C. Compl. ¶ 311; C.S. Compl. ¶ 311; S.O. Compl. ¶ 311; W.L.

1  Compl. ¶ 311; L.S. Compl. ¶¶ 311–312; A.K. Compl. ¶¶ 311, 314; W.P. Compl.

2  ¶ 311; J.L. Compl. ¶¶ 309–314**.**

3        5.      Either Plaintiffs or third parties requested that the video(s) or

4  photograph(s) be removed from the MindGeek website, and the video(s) or

5  photograph(s) were in fact removed.  K.A. Compl. ¶¶ 315–316; L.T. Compl. ¶¶ 316,

6  318; N.L. Compl. ¶¶ 316–317; N.Y. Compl. ¶ 316; T.C. Compl. ¶ 315; X.N. Compl.

7  ¶ 315; J.C. Compl. ¶ 315; J.C. Compl. ¶ 312; S.O. Compl. ¶ 315; W.L. Compl.

8  ¶¶ 313, 316; L.S. Compl. ¶ 316; A.K. Compl. ¶¶ 315–316; W.P. Compl. ¶ 316; J.L.

9  Compl. ¶¶ 323, 326**.**

10        Given this extensive overlap with the material elements of the claims alleged

11  in *Fleites*, Plaintiffs again have failed to establish that MindGeek is the "creator" of

12  the videos and images at issue for all the same reasons demonstrated in the MindGeek

13  Defendants' motion to dismiss in *Fleites*. *See Fleites* Mem. ("*Fleites* MTD"), ECF

14  No. 448-1 at 3–14. Plaintiffs' claims therefore are barred by section 230(c)(1).

15        As important, none of the factual allegations in the Related Cases which fall

16  outside of the five above-listed elements impacts the section 230 analysis for four

17  primary reasons.  First, assertions that the videos or images of Plaintiffs allegedly

18  continue to exist or to be disseminated are immaterial.  *See* C.S. Compl. ¶ 312,

19  ("Although Pornhub removed six separate links to the video and photographs"

20  depicting her, "screenshots of [her] underage body and genitalia remain on the site to

21  this day."); W.L. Compl. ¶¶ 315–316 (alleging that although Pornhub disabled

22  content, Pornhub maintained the "webpage with its title, description, tags, and

23  comments" and the video of her "continued to proliferate" and "[t]o this day, [she]

24  has been unable to secure the takedown of the hundreds of re-uploads generated by

25  the initial Pornhub video.").  Even if such allegations are true, they do not illustrate

26  any conduct committed by MindGeek that would transform it into a content-producer

27  such that section 230 immunity would not apply.  As explained in the *Fleites* motion

28

to dismiss, "disseminating third party content in essentially the same format does not equal creation or development of content," *Fyk v. Facebook, Inc.*, 808 F. App'x 597, 598 (9th Cir. 2020) (internal quotation marks omitted), and such "neutral and generic actions, even if they spread the reach of some of the offending material, do not defeat Section 230 immunity," *Planet Green Cartridges, Inc. v. Amazon.com, Inc.*, 2023 WL 8943219, at *6 (C.D. Cal. Dec. 5, 2023).

Second, the alleged use of "deepfake videos" depicting any plaintiff is immaterial to the section 230 analysis. In *W.L.*, Plaintiff alleges that "[t]he initial Pornhub video of [her] was used to create dozens of deepfake videos of W.L. engaged in sex acts." W.L. Compl. ¶ 317. W.L. does not, however, allege that MindGeek is responsible for creating, generating, or having *anything* to do with those deepfake videos. The absence of any alleged role of MindGeek in the creation or generation of these purported "deepfake videos" thus renders them irrelevant to the section 230 analysis. *See Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1268 (9th Cir. 2016) (finding absence of allegations that defendant specifically authored or created content insufficient to overcome section 230 immunity).

Third, unsupported allegations of MindGeek as a "content partner" of GirlsDoPorn, *see* J.L. Compl. ¶¶ 309, 317–322, are irrelevant to the section 230 analysis because they do not tie any specific conduct by MindGeek to the "creat[ion] or develop[ment] [of] the particular [content] at issue." *See Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1125 (9th Cir. 2003).[6] Neither is MindGeek's alleged involvement in the creation of a "trailer" of J.L.'s video relevant to the application of section 230 immunity. J.L. admits that the original content and updated content were taken and posted by at least two men with no alleged connection to MindGeek. J.L. Compl. ¶¶ 311–312, 316. The subsequent creation of

---

[6]   Most of J.L.'s claims also fail for the independent reason that they are barred by the applicable statutes of limitations. *See infra* at 13, 17–22, 24.

a trailer, however, is of no more consequence than the "naming, editing, and tagging" of videos that are "neutral tools" which may help "carry out what may be unlawful or illicit searches" but still "d[o] not amount to 'development' for purposes of the immunity exception." *Fair Hous. Council v. Roommates.com, LLC*, 521 F.3d 1157, 1169 (9th Cir. 2008) ("A website operator who edits user-created content—such as by . . . *trimming for length*—retains his immunity for any illegality in the user-created content, provided that the edits are unrelated to the illegality." (emphasis added)). Similarly, J.L.'s allegation that MindGeek created "search engine optimization campaigns" fails to suggest in any way that such optimization was achieved through something other than neutral tools and therefore not protected. *See id.* at 1167 (explaining that search engines that "do not use unlawful criteria to limit the scope of searches conducted on them" and "are [not] designed to achieve illegal ends" "play no part in the 'development' of any unlawful searches").

Finally, J.L.'s allegations that MindGeek paid "GirlsDoPorn's share of the revenues generated by the sale of the illegal videos on MindGeek's sites" (J.L. Compl. ¶ 317) also fail to materially shift the section 230 analysis. J.L., like Fleites, acknowledges that MindGeek generates revenue on its tubesites through advertisements, and that it displays advertisements based on algorithms which analyze data generated solely by users. J.L. Compl. ¶¶ 89, 91 119, 321. Any claim premised on this user-generated placement of advertising is therefore barred by section 230. *See Pennie v. Twitter, Inc.*, 281 F. Supp. 3d 874, 890 (N.D. Cal. 2017) (section 230 barred claim premised on Twitter's use of targeted ads that were allegedly "based on what is known about the viewer and what the viewer is looking"). J.L. ultimately alleges only that MindGeek "as a matter of course[] transferred [the] video to its other tubesites" and "did nothing to police and report such content to the authorities" (J.L. Compl. ¶ 327)—conduct that, even if true, does not defeat immunity.

In sum, Plaintiffs' complaints suffer from the same fatal flaws as the *Fleites* SAC, and none of the additional facts alleged by Plaintiffs in the Related Cases overcomes the bar to liability afforded by section 230 immunity. Plaintiffs' claims are therefore barred by section 230(c)(1). *See Carafano*, 339 F.3d at 1125 (section 230 barred invasion-of-privacy claim); *Caraccioli v. Facebook, Inc.*, 700 F. App'x 588, 590 (9th Cir. 2017) (section 230 barred claims for public disclosure of private facts, intrusion upon seclusion, and false light); *Joude v. WordPress Found.*, 2014 WL 3107441, at *6 (N.D. Cal. July 3, 2014) (section 230 barred claim for misappropriation of likeness); *Callahan v. Ancestry.com Inc.*, 2021 WL 783524, at *1 (N.D. Cal. Mar. 1, 2021) (section 230 barred claim under Cal. Civ. Code § 3344 for misappropriation of likeness); *Doe v. Reddit*, 2021 WL 5860904, at *9 (C.D. Cal. Oct. 7, 2021) (section 230 barred claims for violation of Cal. Civ. Code § 1708.85, 18 U.S.C. §§ 1591, 1595, and 18 U.S.C. §§ 2252A, 2255); *Doe #1 v. Twitter, Inc.*, 2023 WL 3220912, at *2 (9th Cir. May 3, 2023) (similar); *J.B. v. G6 Hosp., LLC*, 2020 WL 4901196, at *7 (N.D. Cal. Aug. 20, 2020) (similar); *Doe v. Bates*, 2006 WL 3813758, at *18-20 (E.D. Tex. Dec. 27, 2006) (similar); *Delfino v. Agilent Techs., Inc.*, 145 Cal. App. 4th 790, 808 (2006) (section 230 barred intentional infliction of emotional distress claim).

## B.    On the Facts Alleged, FOSTA's Exception Does Not Apply

None of the individual circumstances alleged by Plaintiffs brings their claims within the narrow exception to section 230 immunity articulated in the Fight Online Sex Trafficking Act ("FOSTA"). As explained in the briefing on the *Fleites* motion to dismiss, that Act provides that "[n]othing in [section 230] . . . shall be construed to impair or limit . . . any claim in a civil action brought under section 1595 of title 18 . . . *if the conduct underlying the claim constitutes a violation of section 1591 of that title*." 47 U.S.C. § 230(e)(5)(A) (emphasis added). But like the *Fleites* SAC, none of the Plaintiffs' complaints specifies facts sufficient to invoke FOSTA's

exception and save their claims for alleged violation of the federal criminal sex trafficking statute, 18 U.S.C. §§ 1591, 1595 (Count I in all Plaintiffs' Complaints). As set forth fully in the *Fleites* papers, "a website's *own conduct* must violate 18 U.S.C. § 1591 for the immunity exception to apply," *Does 1-6 v. Reddit, Inc.*, 51 F.4th 1137, 1143 (9th Cir. 2022) (emphasis added),[7] and just as with *Fleites*, Plaintiffs here have failed to allege that MindGeek, through its own conduct, has violated either of the two relevant provisions of section 1591. *See Fleites* MTD, at 9–14.

### 1.    Plaintiffs Have Not Alleged That MindGeek Violated Section 1591(a)(1)

The same fatal flaw that precludes Fleites from invoking the FOSTA exception to rescue her claims is present in the Related Cases:  Section 1591(a)(1) ("direct liability") imposes criminal liability on anyone who "knowingly . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person . . . knowing . . . that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act." 18 U.S.C. § 1591(a)(1). But not a single plaintiff has alleged any facts that suggest that *MindGeek itself* "recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized, or solicited" her, or in any other way "caused" her "to engage in a commercial sex act." *See id.*  Indeed, and as in the case with *Fleites*, each plaintiff concedes that someone *other than MindGeek* coerced, induced, or manipulated her into making pornographic videos. K.A. Compl. ¶ 311 ("K.A.'s adult boyfriend coerced her into oral sex and recorded the encounter."); L.T. Compl. ¶¶ 311, 313, 315 ("L.T.'s ex-boyfriend . . . secretly recorded and uploaded these explicit

---

[7]    The Ninth Circuit also acknowledged that the limitations of FOSTA allow "only a limited capacity to accomplish its original goal of allowing trafficking victims to hold websites accountable."  *Id.* at 1145.  "However, this is a flaw, or perhaps a feature, that Congress wrote into the statute, and is not one we can rewrite by judicial fiat."  *Id.*

videos and images . . . ."); N.L. Compl. ¶ 311 ("N.L.'s boyfriend coerced her into filming a nude video of herself . . . ."); N.Y. Compl. ¶ 311 ("N.Y. was blackmailed by now convicted child sex offender, Abdul Hasib Elahi, into sending him sexually explicit photographs and videos."); T.C. Compl. ¶ 311 ("T.C.'s . . . boyfriend videotaped the two engaged in a sex act . . . ."); X.N. Compl. ¶ 311 ("X.N. was trafficked, abused, and exploited by a sex tourism enterprise perpetuated by now convicted sex-offenders, Victor Galarza and Herbert Fletcher . . . During one encounter, X.N. was paid approximately one million Colombian pesos to have sex with U.S.-citizen, Victor Galarza, while convicted sex-offender, Herbert Fletcher, recorded the sex acts."); J.C. Compl. ¶ 311 ("J.C. was secretly recorded performing oral sex on her then-boyfriend."); C.S. Compl. ¶ 311 ("C.S. received an unsolicited message through Facebook, from now-convicted sex trafficking felon, Kamonsak Chanthasing, who posed as a female, and demanded that C.S. send video clips and photographs of herself masturbating wearing her middle school uniform. Although C.S. initially refused, she ultimately relented . . . ."); S.O. Compl. ¶ 311 ("S.O. was trafficked, abused, and exploited by a sex trafficking enterprise and coerced into making a ten minute sexually explicit video of herself . . . directed by an individual through a BIGO livestream."); W.L. Compl. ¶¶ 311, 313 (making reference to a non-consensual video recorded by W.L.'s sexual abuser); L.S. Compl. ¶¶ 311–312 ("L.S. was trafficked, abused, and exploited by a sex tourism enterprise perpetuated by now convicted sex-offenders, Victor Galarza and Herbert Fletcher. . . . L.S. was recruited by Galarza, a U.S. citizen, through social media and coerced to have recorded sex for money."); A.K. Compl. ¶ 311 ("A.K. was coerced by two boys from a neighboring high school . . . to have sex with each of them separately [and a]pproximately nine months later, A.K. learned that the boys had recorded the sex acts without her knowledge and consent and uploaded the two videos to MindGeek's tubesites, including Pornhub, through an unverified account."); W.P. Compl. ¶ 311 ("W.P. was

trafficked, exploited, and abused by now-convicted human trafficker, Thanawut Pawalee, and coerced to engage in recorded sex for compensation."); J.L. Compl. ¶ 309 ("J.L. was solicited, recruited, enticed, and coerced by GirlsDoPorn through fraud, force, and coercion to engage in recorded sex acts."). None of these other parties' allegedly unlawful conduct can be imputed to MindGeek. *See Reddit*, 51 F.4th at 1143.

Further, as explained in the *Fleites* MTD, MindGeek's alleged conduct related only to previously created and uploaded images and videos of Plaintiffs. Plaintiffs do not allege—and cannot prove—that MindGeek took any actions *upon Plaintiffs themselves*. *Id.* at 9–10. Indeed, as in the *Fleites* SAC, Plaintiffs' own allegations concede that pivotal point. *See, e.g.*, W.P. Compl. ¶ 322 (alleging that MindGeek "recruit[ed], entice[d], harbor[ed], transport[ed], provide[d], obtain[ed], advertise[d], maintain[ed], patronize[d], or solicit[ed] *videos and images depicting* CSAM") (emphasis added); J.L. Compl. ¶ 332 (same); A.K. Compl. ¶ 325 (same); L.S. Compl. ¶ 325 (same); W.L. Compl. ¶ 326 (same); S.O. Compl. ¶ 324 (same); C.S. Compl. ¶ 323 (same); J.C. Compl. Ct. I, at ¶ 5 (same); X.N. Compl. ¶ 324 (same); T.C. Compl. ¶ 323 (same); N.Y. Compl. ¶ 332 (same); N.L. Compl. ¶ 326 (same); L.T. Compl. ¶ 325 (same); K.A. Compl. ¶ 323 (same). This is precisely the "depicting" that Fleites has alleged, and it no more constitutes actionable sex-trafficking in these 14 cases than it does in *Fleites*. *See, e.g.*, *Doe #1 v. Twitter*, 2023 WL 3220912, at *2 (9th Cir. May 3, 2023) ("[T]he district court correctly concluded that Twitter's alleged conduct relates only to CSAM depicting Plaintiffs, not to their persons (as required to implicate a direct violation of the TVPRA)."). Plaintiffs simply have not alleged that MindGeek violated section 1591(a)(1).

## 2. Plaintiffs Have Not Alleged That MindGeek Violated Section 1591(a)(2)

Just as none of Plaintiffs' allegations alters the section 1591(a)(1) arguments articulated in the *Fleites* motion to dismiss, so too do their section 1591(a)(2)

deficiencies remain irreparable.  As explained in the *Fleites* papers, section 1591(a)(2) imposes criminal "beneficiary liability" on anyone who "knowingly . . . benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of [section 1591(a)(1)]."  18 U.S.C. § 1591(a)(2).  But significantly, "'[p]articipation in a venture' means knowingly assisting, supporting, or facilitating a violation of [section 1591(a)(1)]," *id.* § 1591(e)(4), and requires knowing participation in a trafficking venture involving a *particular victim*.  *See, e.g.*, *B.M. v. Wyndham Hotels & Resorts, Inc.*, 2020 WL 4368214, at *5 (N.D. Cal. July 30, 2020).  It also requires that "*the defendant* must have actually '*engaged in some aspect of the sex trafficking*.'"  *Reddit*, 51 F.4th at 1145 (emphasis added).  "In a sex trafficking beneficiary suit *against a defendant-website*, the most important component is the *defendant-website's* own conduct—its 'participation in the venture.'"  *Id.* at 1142 (emphasis added).  "A complaint against a website that merely alleges trafficking by the website's users—without the participation of the website—would not survive."  *Id.*

Plaintiffs have not alleged a single new fact in any of the Related Cases that brings MindGeek's alleged conduct within the ambit of Section 1591(a)(2).  Instead, the only material allegations offered in these cases *exactly match* the flawed allegations offered in the Fleites SAC.  *Compare* Fleites SAC ¶ 468, *with* K.A. Compl. ¶ 324, L.T. Compl. ¶ 326, N.L. Compl. ¶ 327, N.Y. Compl. ¶ 333, T.C. Compl. ¶ 324, X.N. Compl. ¶ 325, J.C. Compl. Ct. I ¶ 6, C.S. Compl. ¶ 324, S.O. Compl. ¶ 325, W.L. Compl. ¶ 327, L.S. Compl. ¶ 326, A.K. Compl. ¶ 326, W.P. Compl. ¶ 323, *and* J.L. Compl. ¶ 333; *compare* Fleites SAC ¶ 79, *with* K.A. Compl. ¶ 82, L.T. Compl. ¶ 82, N.L. Compl. ¶ 82, N.Y. Compl. ¶ 82, T.C. Compl. ¶ 82, X.N. Compl. ¶ 82, J.C. Compl. ¶ 82, C.S. Compl. ¶ 82, S.O. Compl. ¶ 82, W.L. Compl. ¶ 82, L.S. Compl. ¶ 82, A.K. Compl. ¶ 82, W.P. Compl. ¶ 82, *and* J.L. Compl. ¶ 80. This same redundancy is found in each of the other allegations relevant to section

1591(a)(2) and established as deficient in *Fleites*. *Compare* Fleites SAC ¶¶ 451, 453, 462, 468, 470, 471, 515. Because Plaintiffs have alleged nothing more to show that MindGeek engaged in sex trafficking for purposes of section 1591(a)(2) in these 14 complaints, the *Fleites* MTD arguments apply with equal weight in favor of dismissing all claims premised on those deficient allegations. *See Fleites* MTD, at 10–14.

## II. EVEN IF NOT BARRED BY SECTION 230, PLAINTIFFS' CLAIMS INDEPENDENTLY FAIL

### A. As in *Fleites*, Plaintiffs' Counts I, IV, and XV Fail to State Claims for Violation of Either Federal or State Sex-Trafficking Laws

18 U.S.C. § 1595(a) and Cal. Civ. Code § 52.5 create federal and state civil causes of action, respectively, for victims of sex trafficking. The 14 Plaintiffs here have alleged nothing different than what was alleged in *Fleites* in a futile effort to state a claim under either provision. As in *Fleites*, then, Counts I, IV, and XV of all 14 Complaints must be dismissed.

#### 1. Plaintiffs Have Not Sufficiently Alleged a Violation by MindGeek of the Federal Sex-Trafficking Laws (18 U.S.C. §§ 1591, 1594, 1595)

Section 1591 establishes criminal liability for anyone who "knowingly . . . in or affecting interstate or foreign commerce . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person . . . knowing . . . that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act." 18 U.S.C. § 1591(a). But as established *supra* and at length in the *Fleites* MTD, Plaintiffs have failed to plead any facts showing that MindGeek committed any acts in violation of Section 1591, particularly facts sufficient to establish that any Plaintiffs were "forced," "lured," "controlled," or otherwise trafficked *by MindGeek*, or that *MindGeek* "cause[d]" them "to engage in a commercial sex act,"  18 U.S.C. § 1591(a)(1)–(2), or in any way "knowingly"

benefitted from participating in a venture with the *non*-MindGeek actors (i.e., the alleged abusers, convicted sex traffickers, or ex-boyfriends) who coerced or manipulated Plaintiffs into creating the relevant content. *See Fleites* MTD, at 15–16. Instead, these 14 Plaintiffs' allegations, as in *Fleites*, amount to no more than, at best, MindGeek's turning of a blind eye, which is insufficient to plead a violation of section 1591. *See Reddit*, 51 F.4th at 1145.

Plaintiff J.L.'s federal sex-trafficking claims fail for the additional reason that they are barred by the applicable 10-year limitations period. *See* 18 U.S.C. 1595(c); *Castillo v. CleanNet USA, Inc.*, 358 F. Supp. 3d 912, 941 (N.D. Cal. 2018) ("the federal trafficking claim has a 10-year statute of limitations"); *J.M. v. Choice Hotels Int'l, Inc.*, 2022 WL 10626493, at *6 (E.D. Cal. Oct. 18, 2022) ("No action may be maintained under [§ 1595] unless it is commenced not later than ... 10 years after the cause of action arose." (citing 18 U.S.C. § 1595(c)(1)). Viewed in the light most favorable to her, J.L.'s allegations concede that more than 10 years have passed between 2008, when she turned 18 years old, and August 20, 2024, the date on which she filed her complaint. *See* J.L. Compl. ¶¶ 309–310 (alleging that she was 17 years old in 2007; she therefore turned 18 years old in 2008). Counts I and IV of Plaintiff J.L.'s complaint therefore must be dismissed as time-barred.

### 2.    Plaintiffs' Count XV Equally Fails to State a Claim under Cal. Civ. Code § 52.5

Likewise, California law provides that, "[a] person who *causes, induces, or persuades, or attempts to* cause, induce or persuade, a person who is a minor at the time of commission of the offense to engage in a commercial sex act, with the intent to effect or maintain a violation of Section . . . 311.1 . . . is guilty of human trafficking." Cal. Pen. Code § 236.1(c) (emphasis added). Here, too, Plaintiffs have not alleged any materially different facts than those alleged by Fleites in her unavailing attempt to establish that *MindGeek* ever violated section 236.1(c). Instead, as shown *supra*, the facts alleged by each of the 14 Plaintiffs concede that other individuals, unaffiliated

13

with MindGeek, were responsible for inducing, coercing, causing, or persuading Plaintiffs to create the images and videos at issue. As in *Fleites*, none of the 14 Plaintiffs had any contact whatsoever with MindGeek until they, or someone on their behalf, allegedly sought to have the third-party-created content removed. *See Fleites* MTD, at 16–17; K.A. Compl. ¶¶ 312, 315; L.T. Compl. ¶¶ 311-313, 316; N.L. Compl. ¶¶ 312, 316; N.Y. Compl. ¶¶ 313, 316; T.C. Compl. ¶¶ 312, 315; X.N. Compl. ¶¶ 312, 315; J.C. Compl. ¶¶ 311, 315; C.S. Compl. ¶ 312; S.O. Compl. ¶¶ 312, 315; W.L. Compl. ¶¶ 311, 313, 315; L.S. Compl. ¶¶ 313, 316; A.K. Compl. ¶¶ 314-316; W.P. Compl. ¶¶ 311, 316; J.L. Compl. ¶¶ 315-316. Their state trafficking claims therefore fail on this additional ground.

As with her federal claims, plaintiff J.L.'s California sex-trafficking claim is barred by the applicable 10-year limitations period because more than 10 years has passed between when she turned 18 years old and the date on which she filed her complaint. *See* Cal. Code Civ. P. 52.5(c) ("An action brought pursuant to this section shall be commenced . . . within 10 years after the date the plaintiff attains the age of majority); *Castillo*, 358 F. Supp. 3d at 941. Count XV of plaintiff J.L.'s complaint therefore must also be dismissed as time-barred.

## B. Plaintiffs' Counts V and VI Fail to State a Claim for Receipt, Transport, or Distribution of Child Pornography (18 U.S.C. §§ 2252, 2252A, 2255)

Plaintiffs' claims under 18 U.S.C. § 2252A suffer from the same substantive deficiencies established in *Fleites*, so they too must be dismissed. As explained in the *Fleites* MTD, liability under section 2252A requires proof that a defendant "knowingly" received or distributed child pornography, including that the defendant had actual knowledge of the "age of the performers." 18 U.S.C. § 2252A; *Fleites* MTD, at 17–19; *see also United States v. X-Citement Video, Inc.*, 513 U.S. 64, 78 (1994). While willful blindness can in certain instances be sufficient to establish actual knowledge, courts have consistently held that this requires deliberate action on the part of the

14

defendant; recklessness or negligence, including a "general awareness" of illegal activity on a website, is not enough. *See Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769–70 (2011); *cf. Y.Y.G.M. SA v. Redbubble, Inc.*, 75 F.4th 995, 1002 (9th Cir. 2023).

As a consequence, Plaintiffs here must allege facts establishing MindGeek's actual knowledge or willful blindness as to *Plaintiffs' ages* in the relevant videos. They have not done so. Just as in *Fleites*, Plaintiffs have offered only unsupported conclusions that "MindGeek personnel . . . were aware that the video [of Plaintiff] constituted CSAM," including, apparently, because of the "title, categories, tags, and comments." L.S. Compl. ¶ 314; *see also* W.P. Compl. ¶ 313; J.L. Compl. ¶ 318; A.K. Compl. ¶ 312; W.L. Compl. ¶ 312; S.O. Compl. ¶ 313; C.S. Compl. ¶ 314; J.C. Compl. ¶ 313; X.N. Compl. ¶ 313; T.C. Compl. ¶ 314; N.Y. Compl. ¶ 314; N.L. Compl. ¶ 313; L.T. Compl. ¶ 314; K.A. Compl. ¶ 313 (all making the same allegation).[8] None of these Plaintiffs, like Fleites before them, has offered any facts to show that MindGeek took any "deliberate action" to evade knowledge of Plaintiffs' ages in their respective videos. Each of their claims therefore must be dismissed on the same grounds established in *Fleites*.

## C. Plaintiffs' Remaining Claims Do Not Meet the Applicable Pleading Requirements.[9]

### 1. Because MindGeek Is Not the Publisher of the Videos, Plaintiffs' Intentional-Tort Claims Fail.

Plaintiffs' claims for public disclosure of private facts, intrusion into private affairs, false light, common-law and statutory misappropriation of likeliness, and Cal.

---

[8]   Importantly, plaintiff J.L. admits that the men who took the videos of her "falsified the date on her signed contract with a date after her eighteenth birthday," and had "instructed her to say she was 18-years old" in a video interview. J.L. Compl. ¶¶ 312-313.

[9]   Twelve of the fourteen Plaintiffs are not residents of California. K.A. Compl. ¶ 10 (Missouri resident); L.T. Compl. ¶ 10 (New Hampshire resident); N.L. Compl. ¶ 10 (Colorado resident); N.Y. Compl. ¶ 10 (United Kingdom resident); T.C. Compl. ¶ 10 (Rhode Island resident); X.N. Compl. ¶ 10 (Colombia resident); J.C. Compl. ¶ 10 (New York resident); C.S. Compl. ¶ 10 (Thailand resident); S.O. Compl. ¶ 10 (footnote continued)

Civ. Code § 1708.85 fail, just as the substantively identical claims alleged in *Fleites* do, because (1) MindGeek was not the publisher of the videos depicting the Plaintiffs, and (2) each of the Plaintiffs asserts that a then-boyfriend or unidentified third party published the videos in the first instance, *not MindGeek.  See supra* Section I.  For the same reasons established in the *Fleites* MTD, therefore, Plaintiffs' claims (Counts VII, VIII, IX, X, XI, XII) should also be dismissed.  *Id.* at 19–20.

Plaintiffs K.A., L.T., N.L., N.Y., X.N., C.S., S.O., W.L., L.S., A.K., and J.L.'s claims for public disclosure of private facts, intrusion into private affairs, false light, common-law and statutory misappropriation of likeliness, and Cal. Civ. Code § 1708.85 also fail because they are barred by the limitations period applicable to each cause of action.

Under California law, the statute of limitations for public disclosure of private facts, intrusion into private affairs, and distribution of private sexually explicit materials in violation of Cal. Civ. Code § 1708.85 is two years, accruing from the date of injury.  *See* Cal. Civ. Proc. Code, § 335.1; *Nabeel v. Taylor Swift Prods., Inc.*, 2024 WL 4444483, at *2 (C.D. Cal. July 31, 2024) (applying two-year statute of limitations to public disclosure of private facts claim); *Mireskandari v. Associated Newspapers Ltd.*, 2016 WL 4506087, at *14  (Cal. Ct. App. Aug. 29, 2016) (applying two-year statute of limitations to intrusion into private affairs claim); *Landwehrle v. Bianchi*, 2022 WL 2797787, at *3 (N.Y. Super. June 24, 2022) (finding claim brought under Cal. Civ. Code § 1708.85 subject to two-year statute of limitations pursuant to Cal. Civ. Proc. Code § 335.1).  The statute of limitations for both common-law and statutory claims of misappropriation of name and likeness is also two years, accruing from the date of first publication of the content at issue.  *See* Cal. Civ. Proc. Code §

---

(Thailand resident); L.S. Compl. ¶ 10 (Colombia resident); A.K. Compl. ¶ 10 (Florida resident); W.P. Compl. ¶ 10 (Thailand resident).  Although all of the Plaintiffs bring state claims under California common and statutory law, to the extent the Court finds that another state's law should apply to any of the Plaintiffs' asserted causes of action, MindGeek reserves its right to argue that the Plaintiffs' complaints fail to state claims under analogous non-California laws.

335.1; *Yeager v. Bowlin*, 693 F.3d 1076, 1081 (9th Cir. 2012)) ("Both [common-law and statutory section 3344] claims are subject to a two-year statute of limitations."). And the statute of limitations for a false light claim is just one year, accruing from the date of injury. *See* Cal. Civ. Proc. Code § 340(c); *Nabeel*, 2024 WL 4444483, at *2 (citing *Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1166 (9th Cir. 2011)).

Viewed in the light most favorable to Plaintiffs K.A., L.T., N.L., N.Y., X.N., C.S., S.O., W.L., L.S., A.K., and J.L., their allegations concede that more than two years have passed between, on the one hand, the later of the time these Plaintiffs learned that the alleged content had been posted or when each of them turned 18 years old, and, on the other hand, the dates on which these Plaintiffs filed their complaints in June through August 2024.[10]  *See* K.A. Compl. ¶ 315 (demanding in November 2019 that video of her be taken down; complaint filed on June 7, 2024); L.T. Compl. ¶ 311 (learning in February 2019 that video of sexual assault had been posted; complaint filed on June 7, 2024); N.L. Compl. ¶ 312 (learning in May 2020 that video of her had been posted on Pornhub; complaint filed on June 7, 2024); N.Y. Compl. ¶ 312 (alleging that N.Y. was 15 years old in 2017; therefore, N.Y. turned 18 years old in 2020; complaint filed on June 7, 2024); X.N. Compl. ¶¶ 311–312 (alleging that X.N. was 15 years old in 2018; therefore, X.N. turned 18 years old in 2021; complaint filed on June 7, 2024); C.S. Compl. ¶ 311 (alleging that C.S. was 15 years old in 2017; therefore, C.S. turned 18 years old in 2020; complaint filed on June 13, 2024); S.O. Compl. ¶ 312 (alleging that S.O. learned in February 2020 that her video had been posted on Pornhub; complaint filed on June 13, 2024); W.L. Compl. ¶ 311 (alleging that W.L. learned in April 2020 that her video had been posted on Pornhub; complaint filed on June 13, 2024); L.S. Compl. ¶ 313 (alleging that L.S. learned in November 2020 that her video had been posted on Pornhub; complaint

---

[10]  MindGeek assumes for the purposes of this motion only that Cal. Civ. Proc. Code § 352(a) would apply to toll the applicable statute of limitations until these Plaintiffs reached the age of majority.  MindGeek, however, reserves its right to assert otherwise should the Court deny MindGeek's motion to dismiss.

filed on June 14, 2024); A.K. Compl. ¶ 311 (alleging that A.K. was 16 years old in 2014; therefore, A.K. turned 18 years old at least by end of 2016; complaint filed on June 20, 2024); J.L. Compl. ¶¶ 309, 315 (alleging that J.L. learned in 2009 that her videos had been posted by GirlsDoPorn; complaint filed on August 20, 2024). Counts VII, VIII, IX, X, XI, and XII of these Plaintiffs' complaints must therefore be dismissed as time-barred.

### 2. Plaintiffs' Misappropriation-of-Likeness Claims (Cal. Civ. Code § 3344) Fail for Additional Reasons.

As in the *Fleites* SAC, the Plaintiffs' misappropriation-of-likeness claims also fail because they allege only that Plaintiffs' images in videos were placed adjacent to ads… allegations *identical* to those made by Fleites. *Compare Fleites* SAC ¶ 450 (alleging that Plaintiff's video "appeared alongside advertisements that MindGeek had placed and on which it earned revenues with every page visit, impression, engagement, and conversion"), *with* K.A. Compl. ¶ 313 (same), L.T. Compl. ¶ 314 (same), N.L. Compl. ¶ 313 (same), N.Y. Compl. ¶ 314 (same), T.C. Compl. ¶ 314 (same), X.N. Compl. ¶ 313 (same), J.C. Compl. ¶ 313 (same), C.S. Compl. ¶ 314 (same), S.O. Compl. ¶ 313 (same), W.L. Compl. ¶ 312 (same), L.S. Compl. ¶ 314 (same), A.K. Compl. ¶ 312 (same), W.P. Compl. ¶ 313 (same), *and* J.L. Compl. ¶ 321 (same). Significantly, none of the Plaintiffs alleges that they appeared in the ads, or that they were made to appear to endorse the products advertised, or that MindGeek capitalized on their unique identity or that the ads were tailored in any way to do so. *See* K.A. Compl. ¶¶ 311–318; L.T. Compl. ¶¶ 311–320; N.L. Compl. ¶¶ 311–321; N.Y. Compl. ¶¶ 311–327; T.C. ¶¶ 311–318; X.N. Compl. ¶¶ 311–319; J.C. Compl. ¶¶ 311–319; C.S. Compl. ¶¶ 311–318; S.O. Compl. ¶¶311–319; W.L. Compl. ¶¶ 311–321; L.S. Compl. ¶¶ 311–320; A.K. Compl. ¶¶ 311–320; W.P. Compl. ¶¶ 311–317; J.L. Compl. ¶¶ 309–327). For the same reasons established in the *Fleites* MTD, Plaintiffs' common-law and statutory misappropriation claims (Counts X, XI) must also be dismissed. *Id.* at 20–21.

### 3. Plaintiffs' Count XIII Fails to State a Claim for Negligence.

Plaintiffs' negligence claims fail on the same grounds set out in the *Fleites* MTD. *Id.* at 21. Plaintiffs, like Fleites, fail to allege that MindGeek owes the Plaintiffs' any legal duty. Indeed, Plaintiffs' seminal allegations of negligence are *identical* to those alleged in the *Fleites* SAC. *Compare Fleites* SAC ¶ 568–572, *with, e.g.*, K.A. Compl. ¶ 425–429. Because this fatal flaw persists in the Plaintiffs' complaints, their negligence claims (Count XIII) must also be dismissed.

Plaintiffs K.A., L.T., N.L., N.Y., X.N., C.S., S.O., W.L., L.S., A.K., and J.L.'s claims for negligence fail for the additional reason that they are barred by the applicable limitations period. The statute of limitations for a negligence claim in California is two years, accruing from the date of injury. *See* Cal. Civ. Proc. Code § 335.1; *see also McKenna Motors Torrance v. Vecchio*, 2021 WL 6502339, at *2 (Cal. Super. Nov. 15, 2021) (citing Cal. Civ. Proc. Code, § 335.1). Viewed in the light most favorable to plaintiffs K.A., L.T., N.L., N.Y., X.N., C.S., S.O., W.L., L.S., A.K., and J.L., their allegations concede that more than two years have passed between, on the one hand, the later of the time these Plaintiffs learned that the alleged content had been posted or when the these Plaintiffs turned 18 years old, and, on the other hand, the dates on which these Plaintiffs filed their complaints in June through August 2024.[11] *See* K.A. Compl. ¶ 315; L.T. Compl. ¶ 311; N.L. Compl. ¶ 312; N.Y. Compl. ¶ 312; X.N. Compl. ¶¶ 311–312; C.S. Compl. ¶¶ 311–312; S.O. Compl. ¶ 312; W.L. Compl. ¶ 311; L.S. Compl. ¶ 313; A.K. Compl. ¶ 311; J.L. Compl. ¶¶ 309–310, 315. Count XIII of these Plaintiffs' complaints must therefore be dismissed as time-barred.

---

[11] MindGeek assumes for the purposes of this motion only that Cal. Civ. Proc. Code § 352(a) would apply to toll the applicable statute of limitations until these Plaintiffs reached the age of majority. MindGeek, however, reserves its right to assert otherwise should the Court deny MindGeek's motion to dismiss.

**4.    Plaintiffs' Count XIV Fails to State a Claim for Unfair Competition (Cal. Bus. & Prof. Code §§ 17200 and 17500).**

Plaintiffs' complaints fail to sufficiently plead a claim for unfair competition because they do not—and cannot—allege that Plaintiffs were fraudulently deceived or otherwise suffered an economic injury caused by MindGeek's allegedly unfair business practices. *See Fleites* MTD, at 22. Here again, Plaintiffs' allegations of unfair competition are *identical* to those alleged in the *Fleites* SAC. *Compare Fleites* SAC ¶¶ 573–583 (alleging that MindGeek "fraudulently deceived its users" into believing that it was "monetizing, distributing, and advertising legitimate, legal content"; and Fleites "lost money" and suffered "financial harm in the form of costs for therapy," "time away from her work," and "hiring a company to assist her with her efforts investigate [sic] the continued dissemination of her videos on Pornhub"), *with* K.A. Compl. ¶¶ 430–440 (same). Because Plaintiffs' complaints suffer from the same irreparable deficiency as the *Fleites* SAC, their claims for unfair competition (Count XIV) must also be dismissed.

Plaintiffs K.A., L.T., N.L., N.Y., C.S., S.O., W.L., A.K., and J.L.'s claims for unfair competition also fail because they are barred by the applicable limitations period. The statute of limitations for an unfair competition claim under Cal. Bus. & Prof. Code §§ 17200 and 17500 is four years from the discovery date of the injury. Cal. Bus. & Prof. Code § 17208; *see also Ra Med. Sys. v. PhotoMedex, Inc.*, 373 F. App'x 784, 786 (9th Cir. 2010) (citing *Blanks v. Shaw*, 171 Cal. App. 4th 336, 89 Cal. Rptr. 3d 710, 731 (Cal. App. 2009)). Viewed in the light most favorable to plaintiffs K.A., L.T., N.L., N.Y., C.S., S.O., W.L., A.K., and J.L., their allegations concede that more than four years have passed between, on the one hand, the later of the time these Plaintiffs learned that the alleged content had been posted and, on the other hand, the dates on which these Plaintiffs filed their complaints in June through August 2024. *See* K.A. Compl. ¶ 315 (demanding in November 2019 that video of her be taken down); L.T. Compl. ¶ 311 (learning in February 2019 that video of

sexual assault had been posted); N.L. Compl. ¶ 312 (learning in May 2020 that video of her had been posted on Pornhub); N.Y. Compl. ¶ 313 (learning in September 2018 that videos and photographs had been posted on Pornhub); C.S. Compl. ¶¶ 311–312 (learning in 2018 that the photographs and video of her had been posted on Pornhub); S.O. Compl. ¶ 312 (learning in February 2020 that video of her had been posted on Pornhub); W.L. Compl. ¶ 311 (learning in April 2020 that video of her had been posted on Pornhub); A.K. Compl. ¶¶ 311, 313–314 (learning in 2015 that the videos of her had been posted to MindGeek's tubesites); J.L. Compl. ¶¶ 309, 315 (learning in 2009 that videos of her had been posted by GirlsDoPorn).  Count XIV of these Plaintiffs' complaints must therefore be dismissed as time-barred.

### 5.    Plaintiffs' Count XVII Cannot State a Claim for Civil Conspiracy.

Plaintiffs' allegations in their claims for civil conspiracy are *identical* to those alleged in *Fleites.  Compare Fleites* SAC ¶¶ 590–594, *with* K.A. Compl. ¶¶ 452–456, L.T. Comp. ¶¶ 454–458, N.L. Compl. ¶¶ 455–459, N.Y. Compl. ¶¶ 461–465, T.C. Compl. ¶¶ 452–456, X.N. Compl. ¶¶ 453–457, J.C. Compl. Ct. XVII, at ¶¶ 134–138, C.S. Compl. ¶¶ 452–456, S.O. Compl. ¶ 453–457, W.L. Compl. ¶¶ 455–459, L.S. Compl. ¶¶ 454–458, A.K. Compl. ¶¶ 454–458, W.P. Compl. ¶¶ 451–455, *and* J.L. Compl. ¶¶ 461–465.  They therefore fail to state claims for civil conspiracy because the allegations are conclusory, do not specify each Defendant's purported role in the alleged conspiracy, and are based upon underlying claims that are just as infirm.  *See Fleites* MTD, at 23. Plaintiffs' claims for civil conspiracy (Count XVII) therefore must also be dismissed.

Plaintiff J.L.'s claim for civil conspiracy also fails because it is barred by the applicable limitations period.   The statute of limitations for civil conspiracy is commensurate with the underlying cause of action on which the civil conspiracy claim is based.  *See Liberty City Movie, LLC v. U.S. Bank, N.A.*, 824 F. App'x 505, 508 (9th Cir. 2020) (holding that because plaintiffs' underlying claims were time-

barred the "civil conspiracy claim also must fail").  Here, Plaintiff J.L. alleges civil conspiracy based on her claims of distribution of private sexually explicit materials in violation of Cal. Civ. Code § 1708.85, unfair competition, and California Trafficking Victims Protection Act, Cal. Civ. Code § 52.5.  *See, e.g.*, J.L. Compl. ¶ 462. As explained above, the statute of limitations for a § 1708.85 claim is two years, and it is four years for an unfair-competition claim.  The statute of limitations for a claim under Cal. Civ. Code § 52.5 is 10 years, accruing from the date of majority. *See* Cal. Code Civ. P. 52.5(c); *Castillo*, 358 F. Supp. 3d at 941.  The timeliness of plaintiff J.L.'s civil-conspiracy claim will therefore depend on the timeliness of her Cal. Civ. Code § 52.5 claim. Viewed in the light most favorable to Plaintiff J.L., her allegations concede that more than 10 years have passed between when she turned 18 years old, which was in 2008, and the date on which she filed her complaint, which was August 20, 2024.  *See* J.L. Compl. ¶¶ 309–310 (alleging that she was 17 years old in 2007; therefore, she turned 18 years old in 2008).  Count XVII of Plaintiff J.L.'s complaint must therefore be dismissed as time-barred.

### 6.    Plaintiffs' Count XVI Fails to State a Claim for Intentional Infliction of Emotional Distress

To state claims for intentional infliction of emotional distress ("IIED"), Plaintiffs must respectively show: "(1) outrageous conduct by [MindGeek]; (2) [MindGeek's] intention of causing or reckless disregard of the probability of causing emotional distress; (3) the [Plaintiffs'] suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by [MindGeek's] outrageous conduct." *See Garza v. Balatico*, 2021 Cal. Super. LEXIS 110544, at *10 (Cal. Super. May 26, 2021) (quoting *Huntingdon Life Scis., Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.*, 120 Cal. App. 4th 1228, 1259 (2005)). "Conduct, to be considered outrageous, must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.* (quoting *Huntingdon*, 120 Cal. App. 4th at 1259) (internal quotation marks omitted).  The requirements for

22

stating a viable IIED claim "are rigorous[] and difficult to satisfy." *Okorie v. L.A. Unified Sch. Dist.*, 14 Cal. App. 5th 574, 597 (2017), *overruled in part on other grounds*, *Bonni v. St. Joseph Health Sys.*, 11 Cal. 5th 995 (2021) (internal quotation marks omitted).

Plaintiffs have identically pleaded their 5-paragraph IIED counts in all of the Related Cases, including that: "Defendants acted with reckless disregard of the likelihood that Plaintiff would suffer emotional distress, including humiliation and anxiety;" and "Defendants knew, or recklessly disregarded, that Plaintiff was harmed by the illegal CSAM featuring her on defendants' websites, but did nothing to help her, and instead directed and encouraged the proliferation of CSAM on its websites." *See, e.g.*, J.L. Compl. ¶ 458. As these conclusory allegations concede, Plaintiffs' IIED claims are premised on conduct inflicted upon each Plaintiff by third parties who filmed or photographed the Plaintiffs and posted the respective videos and photographs on MindGeek's websites. The Plaintiffs therefore have not alleged any facts establishing that *MindGeek* engaged in any outrageous conduct with an intention of causing, or with the reckless disregard for causing, Plaintiffs' emotional distress. *See Garza*, 2021 Cal. Super. LEXIS 110544, at *10 (dismissing IIED claim against defendant employer where plaintiff's claim was based on employee's filming of the plaintiff in the women's locker room and posting that video on his social media, and not on any actions by defendants). Even taken as true, then, Plaintiffs' allegations "describe, at best, passive conduct on the part" of MindGeek by hosting content posted by third parties and allegedly failing to do more to take the content down—which is not enough to meet the rigorous IIED standard. *See Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1063 (N.D. Cal. 2016), *aff'd*, 700 F. App'x 588 (9th Cir. 2017) (dismissing IIED claim where plaintiff requested that Facebook delete a third-party account distributing sexually explicit videos without the plaintiff's consent and Facebook only did so after being threatened with legal action,

23

and concluding that plaintiff failed to show that Facebook acted intentionally in declining initially to remove the content); *Reaud v. Facebook, Inc.*, 2024 WL 4126066, at *3 (N.D. Cal. Sept. 9, 2024) (dismissing IIED claim based on "passive conduct of Facebook by posting [pornographic] third-party advertisements," and not on conduct directed to plaintiff).  The Plaintiffs' IIED claims (Count XVI) therefore must be dismissed.

Plaintiffs K.A., L.T., N.L., N.Y., X.N., C.S., S.O., W.L., L.S., A.K., and J.L.'s IIED claims also fail because they are barred by the applicable limitations period. The statute of limitations for an IIED claim is two years, accruing from the date the plaintiff suffered the alleged emotional distress.   *See* Cal. Civ. Proc. Code § 335.1; *Wassmann v. S. Orange Cnty. Cmty. Coll. Dist.*, 24 Cal. App. 5th 825, 851 (June 12, 2018) (barring claim for intentional infliction of emotional distress because complaint filed more than two years after the plaintiff suffered the alleged emotional distress).  Viewed in the light most favorable to Plaintiffs K.A., L.T., N.L., N.Y., X.N., C.S., S.O., W.L., L.S., A.K., and J.L., their allegations concede that more than two years have passed between, on the one hand, the later of the time these Plaintiffs allege that they discovered the relevant content had been posted or when they turned 18 years old (*i.e.*, when  the alleged emotional distress began) and, on the other hand, the dates on which these Plaintiffs filed their complaints in June through August 2024.[12]  *See* K.A. Compl. ¶ 315; L.T. Compl. ¶ 311; N.L. Compl. ¶ 312; N.Y. Compl. ¶ 313; X.N. Compl. ¶¶ 311–312; C.S. Compl. ¶¶ 311–312; S.O. Compl. ¶ 312; W.L. Compl. ¶ 311; L.S. Compl. ¶ 313; A.K. Compl. ¶¶ 311, 313–314; J.L. Compl. ¶¶ 309, 315.  Count XIV of these Plaintiffs' complaints must therefore be dismissed as time-barred.

---

[12]   MindGeek assumes for the purposes of this motion only that Cal. Civ. Proc. Code § 352(a) would apply to toll the applicable statute of limitations until these plaintiffs reached the age of majority.  MindGeek, however, reserves its right to assert otherwise should the Court deny MindGeek's motion to dismiss.

### III. THE COURT LACKS PERSONAL JURISDICTION OVER MINDGEEK S.À R.L., MINDGEEK USA INCORPORATED, MG GLOBAL ENTERTAINMENT, AND ALL DEFENDANTS AS TO THE NON-U.S. PLAINTIFFS' CLAIMS.

Plaintiffs' Complaints suffer from another irreparable defect, just as the SAC in *Fleites* does: they do not adequately allege facts supporting this Court's personal jurisdiction. But unlike in *Fleites*, this Court lacks personal jurisdiction not just over MindGeek S.à r.l., but over other defendants as well.

First, Plaintiffs cannot establish personal jurisdiction over MindGeek S.à r.l. As demonstrated in *Fleites*, MindGeek S.à r.l. has no contacts with the United States. And the *Fleites* SAC, though not lacking in detail, still fails to establish personal jurisdiction over MindGeek S.à r.l. based on an alter ego theory. Plaintiffs' allegations here are far less specific or supported, recycling the same conclusory allegations that this Court has rejected in the past and resorting to formulaic recitations of the factors supporting an alter ego determination. Plaintiffs thus fail not only to establish personal jurisdiction over MindGeek S.à r.l., but also to demonstrate that MindGeek S.à r.l. falls within the extraterritorial reach of 18 U.S.C. § 2255.

Second, Plaintiffs' Complaints suffer from a new, independent jurisdictional defect: because Plaintiffs' claims under 18 U.S.C. §§ 1591 and 2255A fail, they cannot establish general personal jurisdiction over MindGeek USA Incorporated or MG Global Entertainment, both of which are headquartered in Texas, not California. Moreover, Plaintiffs' unsubstantiated (and incorrect) allegations of these entities' California contacts do not give rise to any specific personal jurisdiction either.

Third, six of the Plaintiffs—N.Y., X.N., C.S., S.O., L.S., and W.P.—are not U.S. residents and thus cannot demonstrate personal jurisdiction over *any* entity in the United States or California. None of these Plaintiffs alleges any injury in the

forum, and none alleges any U.S.- or California-based activities that give rise to or relate to their claims.

### A. Plaintiffs Must Come Forward with Evidence Sufficient to Establish Their Disputed Jurisdictional Allegations.

Plaintiffs bear the burden of demonstrating that the court has jurisdiction. *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1207 (9th Cir. 2020). They cannot do so with only "'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations." *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007). And most importantly, where defendants proffer evidence contradicting the pleadings, as MindGeek does here, the typical presumption flips: "[D]isputed allegations in the complaint that are not *supported with evidence or affidavits* cannot establish jurisdiction." *AMA Multimedia*, 970 F.3d at 1207 (emphasis added).

Yet, as with the *Fleites* SAC, that is all Plaintiffs have offered here: conclusory—and unsupportable—allegations. None meets Plaintiffs' burden.

### B. Plaintiffs' Jurisdictional Allegations as to MindGeek S.à r.l. Do Not Meet Their Burden.

#### 1. MindGeek S.à r.l. Has No Contacts with the United States.

Plaintiffs' allegations of MindGeek S.à r.l.'s contacts with California or the United States are just as sparse and conclusory as those in *Fleites*. None changes the fact that, as MindGeek has documented time and again, MindGeek S.à r.l. is merely a Luxembourg-based holding company and thus has no contact with the United States. Declaration of Andreas Alkiviades Andreou ("Andreou Decl.") ¶¶ 26, 28.

Plaintiffs continue to allege, even in the face of specific denials, that MindGeek S.à r.l. has "satellite offices in . . . Los Angeles, San Diego, and San Francisco." K.A. Compl. ¶ 11; L.T. Compl. ¶ 11; N.L. Compl. ¶ 11; N.Y. Compl. ¶ 11; T.C. Compl. ¶ 11; X.N. Compl. ¶ 11; J.C. Compl. ¶ 11; C.S. Compl. ¶ 11; S.O. Compl. ¶ 11; W.L. Compl. ¶ 11; L.S. Compl. ¶ 11; A.K. Compl. ¶ 11; W.P. Compl.

¶ 11; J.L. Compl. ¶ 11.  Plaintiffs also again allege that MindGeek S.à r.l. entered into a deferred prosecution agreement with the U.S. Attorney for the Eastern District of New York for unlawful monetary transactions unconnected to the Plaintiffs.  K.A. Compl. ¶ 66; L.T. Compl. ¶ 66; N.L. Compl. ¶ 66; N.Y. Compl. ¶ 66; T.C. Compl. ¶ 66; X.N. Compl. ¶ 66; J.C. Compl. ¶ 66; C.S. Compl. ¶ 66; S.O. Compl. ¶ 66; W.L. Compl. ¶ 66; L.S. Compl. ¶ 66; A.K. Compl. ¶ 66; W.P. Compl. ¶ 66; J.L. Compl. ¶ 64.  Yet, even taking these allegations as true—*but see AMA Multimedia*, 970 F.3d at 1207 (plaintiff must support "disputed allegations in the complaint . . . with evidence or affidavits")—Plaintiffs still nowhere allege how those United States-based contacts somehow relate to their claims. *See Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 506 (9th Cir. 2023) (affirming dismissal of defendant with forum-based contacts because the contacts were not related to the dispute).

Plaintiffs' only remaining specific allegation of MindGeek S.à r.l.'s role is the same one that this Court has already said is insufficient to establish personal jurisdiction: that MindGeek S.à r.l. "directly and indirectly owns and operates over 100 pornographic websites . . . including Pornhub."  K.A. Compl. ¶ 11; L.T. Compl. ¶ 11; N.L. Compl. ¶ 11; N.Y. Compl. ¶ 11; T.C. Compl. ¶ 11; X.N. Compl. ¶ 11; J.C. Compl. ¶ 11; C.S. Compl. ¶ 11; S.O. Compl. ¶ 11; W.L. Compl. ¶ 11; L.S. Compl. ¶ 11; A.K. Compl. ¶ 11; W.P. Compl. ¶ 11; J.L. Compl. ¶ 11.  This Court warned the plaintiff in *Fleites* that she had to "firmly commit" to whether MindGeek S.à r.l. directly or indirectly owned these pornographic websites, since that fact "is crucially important to the Court's jurisdictional analysis."  *Fleites v. MindGeek S.A.R.L.*, 2022 WL 4455558, at *2 (C.D. Cal. July 29, 2022).  But Plaintiffs, represented by the same counsel as the plaintiff in *Fleites*, still cannot do so.  The fact is that MindGeek S.à r.l. does not "directly . . . own[] and operate[]" any of the pornographic websites at issue in these cases.  Andreou Decl. ¶ 28.  And the mere fact that MindGeek S.à r.l. is the indirect parent corporation of the entity that operates these websites cannot alone

bring MindGeek S.à r.l. within this Court's jurisdiction. *See, e.g.*, *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015) ("The existence of a parent-subsidiary relationship is insufficient, on its own, to justify imputing one entity's contacts with a forum state to another for the purpose of establishing personal jurisdiction."); *see also Morton v. Aylo Holdings, S.A.R.L.*, 2024 WL 4599343, at *4 (C.D. Cal. Oct. 3, 2024) (dismissing Aylo Holdings S.à r.l. (f/k/a MindGeek S.à r.l.) for lack of personal jurisdiction); *Doe v. Aylo Glob. Ent. Inc.*, 2024 WL 4599539, at *10 (C.D. Cal. June 24, 2024) (same).

Plaintiffs' other allegations suffer from the same group-pleading defect that has plagued every iteration of the *Fleites* complaint. As this Court has made clear, Plaintiffs cannot impute the actions of one defendant to another to establish personal jurisdiction. *Fleites*, 2022 WL 4455558, at *2 n.3; *see also Allen v. Shutterfly, Inc.*, 2020 WL 5517170, at *4 (N.D. Cal. Sept. 14, 2020). Plaintiffs instead must establish the Court's personal jurisdiction over each defendant individually. *See Calder v. Jones*, 465 U.S. 783, 790 (1984). Plaintiffs' "shotgun" pleading, which simply lumps all Defendants together and claims that they collectively took actions in or aimed at California and the United States, does not meet Plaintiffs' burden of demonstrating personal jurisdiction over *MindGeek S.à r.l. Broidy Cap. Mgmt., LLC v. Qatar*, 2018 WL 9943551, at *5, 7 (C.D. Cal. Aug. 22, 2018).

### 2. Plaintiffs Cannot Impute Other Entities' Contacts to Establish Jurisdiction over MindGeek S.à r.l.

As in *Fleites*, Plaintiffs attempt to circumvent their inability to identify any specific contacts between MindGeek S.à r.l. and the United States (because there are none) by trying to impute to MindGeek the jurisdictional contacts of other entities. S.à r.l. Yet, as in *Fleites*, Plaintiffs have not alleged any facts supporting their claim that all the MindGeek entities are "alter egos of one another." *See* K.A. Compl. ¶¶ 20, 33–35; L.T. Compl. ¶¶ 20, 33–35; N.L. Compl. ¶¶ 20, 33–35; N.Y. Compl. ¶¶ 20, 33–35; T.C. Compl. ¶¶ 20, 33–35; X.N. Compl. ¶¶ 20, 33–35; J.C. Compl. ¶¶ 20, 33–

35; C.S. Compl. ¶¶ 20, 33–35; S.O. Compl. ¶¶ 20, 33–35; W.L. Compl. ¶¶ 20, 33–35; L.S. Compl. ¶¶ 20, 33–35; A.K. Compl. ¶¶ 20, 33–35; W.P. Compl. ¶¶ 20, 33–35; J.L. Compl. ¶¶ 20, 31–33. But even accepting Plaintiffs' conclusory allegations as well-pled, they do not support finding an alter ego relationship between MindGeek S.à r.l. and any other entity.

As Plaintiffs' counsel and this Court well know, a parent-subsidiary relationship, standing alone, is not enough to impute one entity's jurisdictional contacts to another. *See Doe v. Unocal Corp.*, 248 F.3d 915, 925 (9th Cir. 2001). To pierce the corporate veil, a plaintiff must show much more than ordinary control of the subsidiary by the parent. This "drastic remedy" should be applied only "reluctantly and cautiously." *Vacless Sys. v. Vac-Alert Ip Holdings, LLC*, 2011 WL 13217924, at *4 (C.D. Cal. June 24, 2011) (citation omitted). "[D]isregard of corporate separateness requires that the controlling corporate entity exercise *total domination* of the subservient corporation, to the extent that the *subservient corporation manifests no separate corporate interests* of its own." *Chan v. Soc'y Expeditions, Inc.*, 123 F.3d 1287, 1294 (9th Cir. 1997) (internal quotation marks omitted) (emphasis added). The test instead "envisions *pervasive control* over the subsidiary, such as when a parent corporation dictates *every facet* of the subsidiary's business—from broad policy decisions to routine matters of day-to-day operation." *Ranza*, 793 F.3d at 1073 (internal quotation marks omitted) (emphasis added).

As in *Fleites*, Plaintiffs' allegations here fail for two independent reasons: their conclusory allegations cannot show anything beyond an ordinary parent-subsidiary relationship; and they do not allege, as they must, that failure to disregard the entities' separate identities would result in fraud or injustice.

29

### i.    Plaintiffs Cannot Establish Any Facts to Overcome the Presumption of Separateness.

The plaintiff in *Fleites*, even after the benefit of nearly two years of jurisdictional discovery, has been unable to marshal any specific facts demonstrating the multiple factors necessary to show pervasive control of any other defendant by MindGeek S.à r.l. *See Johnston v. Irontown Hous. Co., Inc.*, 2014 WL 12531189, at *7 (S.D. Cal. Dec. 9, 2014) (presence of lone factor insufficient); *Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 983–84 (N.D. Cal. 2016) (presence of even three factors insufficient).

Plaintiffs here, represented by the same counsel, fare no better.  Indeed, Plaintiffs' allegations here are far more conclusory than those in *Fleites*, where the plaintiff alleged specific facts attempting—without success—to establish personal jurisdiction over MindGeek S.à r.l.  But that of course does not help Plaintiffs. Plaintiffs' conclusory allegations of control or a single enterprise do not meet their burden.[13]  *See, e.g.*, *Jeong v. Nexo Fin. LLC*, 2022 WL 174236, at *10 (N.D. Cal. Jan. 19, 2022) (rejecting "conclusory allegations" "that Defendants 'collectively operat[e] and maintain[]'" a website in the face of specific denials); *O.T. v. Babybjörn Ab*, 2021 WL 4861447, at *5 (C.D. Cal. Sep. 8, 2021) (rejecting "conclusory allegations" that "defendant[s] 'expressly or impliedly agreed to work with and assist each other' with all aspects of creating and selling" a product).

Rather than offer any specific allegations of fact, Plaintiffs resort to formulaic recitations of various factors that might support an alter ego finding.  *See* K.A. Compl. ¶¶ 22, 300; L.T. Compl. ¶¶ 22, 300; N.L. Compl. ¶¶ 22, 300; N.Y. Compl. ¶¶ 22, 300; T.C. Compl. ¶¶ 22, 300; X.N. Compl. ¶¶ 22, 300; J.C. Compl. ¶¶ 22, 300;

---

[13] *See* K.A. Compl. ¶¶ 11, 20 (alleging that "MindGeek S.a.r.l, and all other MindGeek entities operate as a single business enterprise"); L.T. Compl. ¶¶ 11, 20; N.L. Compl. ¶¶ 11, 20; N.Y. Compl. ¶¶ 11, 20; T.C. Compl. ¶¶ 11, 20; X.N. Compl. ¶¶ 11, 20; J.C. Compl. ¶¶ 11, 20; C.S. Compl. ¶¶ 11, 20; S.O. Compl. ¶¶ 11, 20; W.L. Compl. ¶¶ 11, 20; L.S. Compl. ¶¶ 11, 20; A.K. Compl. ¶¶ 11, 20; W.P. Compl. ¶¶ 11, 20; J.L. Compl. ¶¶ 11, 20.

C.S. Compl. ¶¶ 22, 300; S.O. Compl. ¶¶ 22, 300; W.L. Compl. ¶¶ 22, 300; L.S. Compl. ¶¶ 22, 300; A.K. Compl. ¶¶ 22, 300; W.P. Compl. ¶¶ 22, 300; J.L. Compl. ¶¶ 22, 298.  Yet those formulaic recitations do not meet their burden of demonstrating personal jurisdiction, as courts in this Circuit have repeatedly concluded.  *See, e.g., Lugo v. Performance Transp., LLC*, 2020 WL 7034336, at *5 (C.D. Cal. Oct. 5, 2020) (dismissing as conclusory allegations that merely recited the various alter ego factors); *Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1040 (N.D. Cal. 2014) (same); *Kingsburg Apple Packers, Inc. v. Ballantine Produce Co.*, 2010 WL 2817056, at *4–5 (E.D. Cal. July 16, 2010) (same).

Further, even if those allegations were not too conclusory to meet Plaintiffs' burden (they are), they *still* do not support personal jurisdiction over MindGeek S.à r.l. here.  Each is either irrelevant to the Court's alter ego analysis or directly contradicted by MindGeek's evidence (and thus not to be credited, *see Yamashita*, 62 F.4th at 502; *AMA Multimedia*, 970 F.3d at 1207).  Specifically:

- Plaintiffs allege that the corporate structure, including the Luxembourg-based holding company, "lacked economic substance" and is "a sham created to evade pornography, tax, and monetary transaction laws."  K.A. Compl. ¶¶ 300–301; L.T. Compl. ¶¶ 300–301; N.L. Compl. ¶¶ 300–01; N.Y. Compl. ¶¶ 300–301; T.C. Compl. ¶ 300–301; X.N. Compl. ¶¶ 300–301; J.C. Compl. ¶¶ 300–301; C.S. Compl. ¶¶ 300–301; S.O. Compl. ¶¶ 300–301; W.L. Compl. ¶¶ 300–301; L.S. Compl. ¶¶ 300–301; A.K. Compl. ¶¶ 300–301; W.P. Compl. ¶¶ 300–301; J.L. Compl. ¶ 298–299. But each of the entities was "created for a legitimate business and economic purpose," such as acquiring another business or to operate within the multiple jurisdictions in which MindGeek does business.  Andreou Decl. ¶¶ 5–9.

- Plaintiffs allege that the MindGeek defendants ran "all the organizations . . . as one, . . . comingled monies, failed to segregate funds, paid each others' fees, expenses and distributions, . . . [and] failed to keep *bona fide*, accurate, and complete corporate and financial records." K.A. Compl. ¶ 300; L.T. Compl. ¶ 300; N.L. Compl. ¶ 300; N.Y. Compl. ¶ 300; T.C. Compl. ¶ 300; X.N. Compl. ¶ 300; J.C. Compl. ¶ 300; C.S. Compl. ¶ 300; S.O. Compl. ¶ 300; W.L. Compl. ¶ 300; L.S. Compl. ¶ 300; A.K. Compl. ¶ 300; W.P. Compl. ¶ 300; J.L. Compl. ¶ 298. Yet the undisputed evidence establishes that each entity has its own bank accounts, files separate tax returns, properly recorded all transactions within the MindGeek entities, and had its own board of directors or the foreign equivalent, which observed corporate formalities. Andreou Decl. ¶¶ 17–18, 29–30, 34–35, 38, 42–43, 46–47, 50–51.

- Plaintiffs allege that MindGeek "used the same business locations employing the same employees." K.A. Compl. ¶ 300; L.T. Compl. ¶ 300; N.L. Compl. ¶ 300; N.Y. Compl. ¶ 300; T.C. Compl. ¶ 300; X.N. Compl. ¶ 300; J.C. Compl. ¶ 300; C.S. Compl. ¶ 300; S.O. Compl. ¶ 300; W.L. Compl. ¶ 300; L.S. Compl. ¶ 300; A.K. Compl. ¶ 300; W.P. Compl. ¶ 300; J.L. Compl. ¶ 298. But that does not "undermine the entities' formal separation." *Ranza*, 793 F.3d at 1074 ("Some employees and management personnel move between the entities, but that does not undermine the entities' formal separation."); *Tamraz v. Bakotic Pathology Assocs.*, 2022 WL 16985001, at *4 (S.D. Cal. Nov. 16, 2022) (shared office space not sufficient).

- Plaintiffs allege that the MindGeek defendants are not adequately capitalized. K.A. Compl. ¶ 300; L.T. Compl. ¶ 300; N.L. Compl. ¶ 300; N.Y. Compl. ¶ 300; T.C. Compl. ¶ 300; X.N. Compl. ¶ 300; J.C. Compl.

¶ 300; C.S. Compl. ¶ 300; S.O. Compl. ¶ 300; W.L. Compl. ¶ 300; L.S. Compl. ¶ 300; A.K. Compl. ¶ 300; W.P. Compl. ¶ 300; J.L. Compl. ¶ 298. But each is adequately capitalized, ███████████████████████ ███████████████████████████████████. Andreou Decl. ¶¶ 29, 34, 38, 42, 47, 50.

- Plaintiffs claim that the MindGeek defendants "failed to maintain arm's length relationships among themselves." K.A. Compl. ¶ 300; L.T. Compl. ¶ 300; N.L. Compl. ¶ 300; N.Y. Compl. ¶ 300; T.C. Compl. ¶ 300; X.N. Compl. ¶ 300; J.C. Compl. ¶ 300; C.S. Compl. ¶ 300; S.O. Compl. ¶ 300; W.L. Compl. ¶ 300; L.S. Compl. ¶ 300; A.K. Compl. ¶ 300; W.P. Compl. ¶ 300; J.L. Compl. ¶ 298. Yet as MindGeek documented in its motion to dismiss in *Fleites*, when the entities provide services to one another, they do so under written service agreements which are priced based on a cost-plus model, with the mark-up determined by annual transfer-pricing studies conducted by MindGeek's auditors. Andreou Decl. ¶¶ 14–15. Providing those services across the enterprise under formal agreements is not evidence of an alter ego relationship. *See Youngevity Int'l, Inc. v. Innov8tive Nutrition, Inc.*, 2024 WL 838707, at *2 (9th Cir. Feb. 28, 2024) (finding no alter ego relationship where the entities had "a services agreement whereby [one] provides management, consulting, accounting, and administrative services" to the other).

- Plaintiffs claim that the MindGeek defendants "held themselves out as being personally liable for the debts of each other." K.A. Compl. ¶ 300; L.T. Compl. ¶ 300; N.L. Compl. ¶ 300; N.Y. Compl. ¶ 300; T.C. Compl. ¶ 300; X.N. Compl. ¶ 300; J.C. Compl. ¶ 300; C.S. Compl. ¶ 300; S.O. Compl. ¶ 300; W.L. Compl. ¶ 300; L.S. Compl. ¶ 300; A.K. Compl. ¶ 300; W.P. Compl. ¶ 300; J.L. Compl. ¶ 298. But, as MindGeek has explained,

it is routine for entities under the same corporate umbrella to guaranty loans for each other. *See, e.g.*, *Kramer Motors, Inc. v. British Leyland, Ltd.*, 628 F.2d 1175, 1177 (9th Cir. 1980) (no alter ego relationship even where parent guaranteed the loan of its subsidiary); *Indus. Bank of Korea v. ASI Corp.*, 2018 WL 6164315, at *10 (C.D. Cal. Apr. 26, 2018) ("corporate parents may—and routinely do—guaranty debts of their subsidiaries while still maintaining corporate separateness").

Finally, the very few specific factual allegations Plaintiffs offer have nothing to do with establishing jurisdiction over MindGeek S.à r.l. Plaintiffs lodge serial accusations that certain individual officers of one of the MindGeek entities were the alter egos of MindGeek. *See* K.A. Compl. ¶¶ 302–310; L.T. Compl. ¶¶ 302–310; N.L. Compl. ¶¶ 302–310; N.Y. Compl. ¶¶ 302–310; T.C. Compl. ¶¶ 302–310; X.N. Compl. ¶¶ 302–310; J.C. Compl. ¶¶ 302–310; C.S. Compl. ¶¶ 302–310; S.O. Compl. ¶¶ 302–310; W.L. Compl. ¶¶ 302–310; L.S. Compl. ¶¶ 302–310; A.K. Compl. ¶¶ 302–310; W.P. Compl. ¶¶ 302–310; J.L. Compl. ¶¶ 298–308. As explained in the Individual Defendants' concurrently filed motions to dismiss, however, these allegations have no merit. And even if they did, they still would not demonstrate this Court's personal jurisdiction over MindGeek S.à r.l. The alter ego doctrine allows a court to pierce the corporate veil in order to "impute" the jurisdictional contacts of one party to another. *See Ranza*, 793 F.3d at 1070–71. But, as the Individual Defendants explain, this Court has no personal jurisdiction over those non-U.S. residents. Plaintiffs' allegations are thus irrelevant to the alter ego analysis for MindGeek S.à r.l.

In short, Plaintiffs' allegations all suffer from the same defects that plague those in *Fleites*—and more. They are conclusory. They are not true. They are not relevant. And they show nothing more than an ordinary parent-subsidiary

1    relationship.  Plaintiffs thus have not met their burden of demonstrating personal

2    jurisdiction over MindGeek S.à r.l.

3              ii.        **Plaintiffs Cannot Establish That Failing to Disregard
               the Separateness Would Result in Fraud or Injustice.**

4

5          Plaintiffs' alter ego theory fails for a separate and independently dispositive

6    reason: they cannot show that "'failure to disregard' the separate entities 'would

7    result in fraud or injustice.'"  *Iconlab, Inc. v. Bausch Health Cos.*, 828 F. App'x 363,

8    364 (9th Cir. 2020) (quoting *Ranza*, 793 F.3d at 1073).  The alter ego doctrine

9    "affords protection where some conduct *amounting to bad faith* makes it inequitable

10   for the corporate owner to hide behind the corporate form."  *Perfect 10, Inc. v.*

11   *Giganews, Inc.*, 847 F.3d 657, 677 (9th Cir. 2017) (internal quotations and citations

12   omitted) (emphasis in original).  Here, Plaintiffs merely allege that the "sham

13   corporate structure was established and maintained for illegal purposes and to

14   insulate the Individual Defendants from liability."  K.A. Compl. ¶ 23; L.T. Compl.

15   ¶ 23; N.L. Compl. ¶ 23; N.Y. Compl. ¶ 23; T.C. Compl. ¶ 23; X.N. Compl. ¶ 23; J.C.

16   Compl. ¶ 23; C.S. Compl. ¶ 23; S.O. Compl. ¶ 23; W.L. Compl. ¶ 23; L.S. Compl.

17   ¶ 23; A.K. Compl. ¶ 23; W.P. Compl. ¶ 23; J.L. Compl. ¶ 23.  Yet, just as in *Fleites*,

18   Plaintiffs do not allege what fraud or injustice would result from failing to disregard

19   the corporate separateness of the MindGeek entities.

20         Nor could they.  This is *not* a situation where the only proper defendant is

21   absent.  Plaintiffs have sued the operator of the websites at issue in this lawsuit, MG

22   Freesites Ltd, and MindGeek does not challenge the Court's jurisdiction over that

23   entity or over 9219, which acts as a service provider to MG Freesites.  And "[t]here

24   are no facts before the Court that suggest Plaintiff[s] cannot be made whole through

25   a lawsuit against [Freesites and 9219]."  *Shimmick Constr. Co./Obayashi Corp. v.*

26   *Officine Meccaniche Galletti-O.M.G. S.R.L.*, 2014 WL 5847440, at *7 (S.D. Cal.

27   Nov. 12, 2014).  Insolvency or inadequate capitalization *could* "satisfy this standard

28

MEMO IN SUPPORT OF MOTION TO DISMISS

'when a corporation is so undercapitalized that it is unable to meet debts that may reasonably be expected to arise in the normal course of business.'" *Perfect 10, Inc.*, 847 F.3d at 677 (citation omitted). But, for one, "multimillion dollar judgments" are *not* within a company's "ordinary course of business." *In re Hydroxycut Marketing and Sales Practices Litig.*, 810 F. Supp. 2d 1100, 1123 (S.D. Cal. 2011). And, for another, MG Freesites and 9219 have enough capital to "meet debts that may reasonably be expected to arise in the normal course of business.'" *Perfect 10*, 847 F.3d at 677. ████████████████████████████████, Andreou Decl. ¶¶ 29, 34, 42, and Plaintiffs do not even allege that these entities' assets are insufficient to satisfy any potential judgments they may obtain.

In sum, because Plaintiffs fail to establish that MindGeek S.à r.l. is the alter ego of any other Defendant, and because failure to disregard its separateness would not result in fraud or injustice, personal jurisdiction may not be extended over MindGeek S.à r.l. under an alter ego theory.

### 3.    MindGeek S.à r.l. Is Also Beyond the Territorial Reach of 18 U.S.C. § 1595.

For the same reasons demonstrated in *Fleites*, *see Fleites* MTD at 27–29, Plaintiff's section 1595 claim should be dismissed as to MindGeek S.à r.l. because it is beyond the territorial reach of section 1595. None of Plaintiffs' allegations cures the fundamental defects in these claims. First, MindGeek S.à r.l., a private holding company incorporated under the laws of Luxembourg,[14] is still not a national of the U.S., an alien lawfully admitted for permanent residence, or "present in" the U.S. 18 U.S.C. § 1596(a); Andreou Decl. ¶ 28. Second, even if section 1591 could apply extraterritorially, there is no legal basis for asserting a claim arising out of its civil analogue here.

---

[14]    *See* K.A. Compl. ¶ 11; L.T. Compl. ¶ 11; N.L. Compl. ¶ 11; N.Y. Compl. ¶ 11; T.C. Compl. ¶ 11; X.N. Compl. ¶ 11; J.C. Compl. ¶ 11; C.S. Compl. ¶ 11; S.O. Compl. ¶ 11; W.L. Compl. ¶ 11; L.S. Compl. ¶ 11; A.K. Compl. ¶ 11; W.P. Compl. ¶ 11; J.L. Compl. ¶ 11.

### C.  This Court Lacks Personal Jurisdiction over MindGeek USA Incorporated and MG Global Entertainment.

None of the Plaintiffs has met her burden of demonstrating personal jurisdiction over MindGeek USA Incorporated and MG Global Entertainment in these actions.  Plaintiffs invoke 18 U.S.C. § 2255(c)'s nationwide-service-of-process provision to establish jurisdiction over these (and other) entities.[15]  But, as demonstrated above, Plaintiffs' federal-law claims fail, and thus they cannot invoke the nationwide-service-of-process provision applicable to those claims.

Without that provision, Plaintiffs cannot establish personal jurisdiction—general or specific—over MindGeek USA Incorporated and MG Global Entertainment.  Although Plaintiffs allege that these entities have their principal places of business in California, that was not true at the time any of the Plaintiffs filed their complaints.  Andreou Decl. ¶¶ 36, 44; *see Yamashita*, 62 F.4th at 502 ("Uncontroverted allegations in the complaint are taken as true, but in the face of a contradictory affidavit, the 'plaintiff cannot simply rest on the bare allegations of its complaint.'").  By the time the first of the complaints was filed in June 2024, MindGeek USA Incorporated and MG Global Entertainment were both companies organized under the laws of Delaware with their principal places of business in Texas.[16]  Andreou Decl. ¶¶ 36, 44.  They are thus not subject to personal jurisdiction in California based on having a principal place of business here.[17]  *See Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909, 913–14 n.7 (9th Cir. 2011) (general personal jurisdiction "is determined at the time the suit was filed"), *overruled on other grounds*, 571 U.S. 117 (2014); *Baton v. Ledger SAS*, 2021 WL 5226315, at *4 (N.D.

---

[15]  That provision applies to Plaintiffs' claims under 18 U.S.C. §§ 1591 and 2255A. 18 U.S.C. § 2255(a).

[16]  Because these entities had their principal places of business in California at the time the complaint in *Fleites* was filed, MindGeek did not challenge this Court's personal jurisdiction over them in that action.

[17]  Rule 4(k)(2), which Plaintiffs invoke, does not apply to MindGeek USA Incorporated and MG Global Entertainment, since they are Delaware corporations with principal places of business in Texas.  *See* Fed. R. Civ. P. 4(k)(2)(A).

Cal. Nov. 8, 2021) ("Courts have uniformly held that *general* jurisdiction is to be determined no earlier than the time of filing of the complaint."), *overruled in part on other grounds*, 2022 WL 17352192 (9th Cir. Dec. 1, 2022); *see also Sabre Int'l Sec. v. Torres Advanced Enter. Sols.*, 60 F. Supp. 3d 21, 30 (D.D.C. 2014) (collecting cases).

Nor do Plaintiffs allege any accurate California-based contacts for these entities. *See AMA Multimedia*, 970 F.3d at 1207 ("[D]isputed allegations in the complaint that are not *supported with evidence or affidavits* cannot establish jurisdiction." (emphasis added)). MindGeek USA Incorporated distributes DVD-based content and operates e-commerce merchandise stores. Andreou Decl. ¶ 37. MG Global Entertainment primarily provides services for television-based businesses. *Id.* ¶ 44. And although two MG Global Entertainment employees have responsibilities concerning the content on MindGeek sites, neither employee resides or works in California. *Id.* ¶ 46. There is simply no connection between those activities and Plaintiffs' claims. *See Yamashita*, 62 F.4th at 506 (a defendant's contacts with the forum must be related to the plaintiff's alleged injury to support personal jurisdiction).

Plaintiffs thus cannot establish either general or specific personal jurisdiction over MindGeek USA Incorporated or MG Global Entertainment. *See Ranza*, 793 F.3d at 1069; *AMA Multimedia, LLC*, 970 F.3d at 1208.

**D.    The Non-U.S. Plaintiffs' Claims Do Not Arise out of Any United States-Based Conduct.**

Unlike in *Fleites*, where a California resident brought suit for alleged injuries she experienced in California, only one of the fourteen Plaintiffs here is a California resident. Six of them are not even U.S. residents; they are residents of Thailand,

Colombia, and the United Kingdom.[18]   For those non-U.S. Plaintiffs, their Complaints suffer from yet another independent jurisdictional defect: they cannot establish personal jurisdiction over *any* entity in the United States, because they have not suffered any harm in the United States, and their claims are not related to any U.S.-based contacts.

The Non-U.S. Plaintiffs cannot establish general personal jurisdiction over any defendant entity.  They do not allege contacts so constant and pervasive as to render any entity "essentially at home" in the forum.  *Bristol-Myers Squibb Co. v. Super. Ct.* (*BMS*), 582 U.S. 255, 271 (2017).  None of the entities is incorporated in California, nor does any have its principal place of business here.  *Ranza*, 793 F.3d at 1069 (describing the "paradigmatic locations" where a corporation is at home).  And Plaintiffs do not allege facts sufficient to establish that this is one of the "exceptional case[s]" where general jurisdiction will be found "anywhere else."  *Id.*

Nor can the Non-U.S. Plaintiffs establish specific personal jurisdiction over any defendant entity either.  Specific personal jurisdiction empowers the Court to adjudicate only disputes that "arise out of or relate to" the defendant's forum-based contacts.  *BMS*, 582 U.S. at 272.  To avail themselves of this "case-linked" jurisdiction, the Non-U.S. Plaintiffs must satisfy the Ninth Circuit's three-part test:

> (1) the defendant must either purposefully direct his activities toward the forum or purposefully avail himself of the privileges of conducting activities in the forum; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

*AMA Multimedia*, 970 F.3d at 1208.  Due process requires a *direct* connection between the harm alleged and Defendants' contacts with the forum state.  As the Supreme Court has made clear, the number of jurisdictional facts a plaintiff can rattle

---

[18]  C.S., S.O., and W.P. allege they are residents of Thailand.  C.S. Compl. ¶ 10; S.O. Compl. ¶ 10; W.P. Compl. ¶ 10.  X.N. and L.S. allege they are residents of Colombia. X.N. Compl. ¶ 10; L.S. Compl. ¶ 10.  N.Y. alleges she is a U.K. resident.  N.Y. Compl. ¶ 10.

off is not relevant: when there is no direct connection between the harm alleged and those contacts, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *BMS*, 582 U.S. at 272; *see also Yamashita*, 62 F.4th at 506 (even if a company has sufficient contacts with the forum state, those contacts must be related to the plaintiff's alleged injury).

The Non-U.S. Plaintiffs also cannot show the requisite purposeful direction, or that their claims arise out of or relate to any Defendant's U.S.- or California-based activities.

**No purposeful direction.** To show purposeful direction, Plaintiffs must allege that the MindGeek defendants "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Davis v. Cranfield Aero. Sols., Ltd.*, 71 F.4th 1154, 1162–63 (9th Cir. 2023) (quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1206 (9th Cir. 2006)). A "necessary element in establishing purposeful direction" is "[h]arm suffered in the forum state." *Id.* at 1163 (quoting *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1144 (9th Cir. 2017)).

Even invoking 18 U.S.C. § 2255(c)'s nationwide-service-of-process provision and Rule 4(k)(2), the Non-U.S. Plaintiffs have not alleged that they suffered any harm *in the United States*. Rather, Plaintiffs are residents of Thailand (C.S. Compl. ¶ 10; S.O. Compl. ¶ 10; W.P. Compl. ¶ 10), Colombia (X.N. Compl. ¶ 10; L.S. Compl. ¶ 10), and the U.K. (N.Y. Compl. ¶ 10). They allege no injury in the United States, and thus cannot establish any Defendant's purposeful direction at the United States. *See Davis*, 71 F.4th at 1162–63 (plaintiffs were not injured in Idaho, and thus could not show purposeful direction by the U.K. defendant in Idaho).

**No relation to the claims.** Even if the MindGeek Defendants have contacts with California or the United States, the Non-U.S. Plaintiffs' allegations fail for another independent reason: none of the contacts they allege gives rise to, or has any

40

relation to, their claims.  *See* C.S. Compl. ¶¶ 35–39; S.O. Compl. ¶¶ 35–39; W.P. Compl. ¶¶ 35–39; X.N. Compl. ¶¶ 35–39; L.S. Compl. ¶¶ 35–39; N.Y. Compl. ¶¶ 35–39.

This prong of the jurisdictional analysis has two components.  The arise-out-of component "asks about causation," while the relate-to component "contemplates that some relationships will support jurisdiction without a causal showing." *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 592 U.S. 351, 362 (2021); *accord LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 861 (9th Cir. 2022).  For a claim to arise out of the forum contacts, those contacts must be a "but for" cause of those claims. *Yamashita*, 62 F.4th at 504.  That requires that "'a direct nexus exists between [a defendant's] contacts [with the forum state] and the cause of action.'" *Id.* And although a claim can relate to the forum contacts without but-for causation, "relatedness requires a close connection between contacts and injury." *Id*.  Neither component is met here.

The Non-U.S. Plaintiffs do not allege any connection between the MindGeek Defendants' U.S.-based contacts and their claims.  The crux of the Non-U.S. Plaintiffs' allegations is that MindGeek adopted "an unrestricted content business model," and "embraced the [posting of child pornography] and proactively assisted such users in maximizing the attention their content received" through a "faux moderation process" and search-engine optimization, which resulted in MindGeek posting CSAM depicting Plaintiffs. *See* C.S. Compl. ¶¶ 2–5, 57–149, 314, 324; S.O. Compl. ¶¶ 2–5, 57–149, 313, 325; W.P. Compl. ¶¶ 2–5, 57–149, 313, 323; X.N. Compl. ¶¶ 2–5, 57–149, 313, 325; L.S. Compl. ¶¶ 2–5, 57–149, 314, 326; N.Y. Compl. ¶¶ 2–5, 57–149, 314, 333.  But significantly, Plaintiffs allege that because the entire MindGeek corporate structure was a sham, *all these activities occurred in Canada and Cyprus.  See* C.S. Compl. ¶¶ 301, 324; S.O. Compl. ¶¶ 301, 325; W.P. Compl. ¶¶ 301, 323; X.N. Compl. ¶¶ 301, 325; L.S. Compl. ¶¶ 301, 326; N.Y.

Compl. ¶¶ 301, 333.  Indeed, Plaintiffs specifically allege that the CSAM depicting them was "upload[ed] . . . through a network of agents and MindGeek employees *in Canada or Cyprus*"—not the United States.  C.S. Compl. ¶ 324(b) (emphasis added); S.O. Compl. ¶ 325(b); W.P. Compl. ¶ 323(b); X.N. Compl. ¶ 325(b); L.S. Compl. ¶ 326(b); N.Y. Compl. ¶ 333(b).  Plaintiffs thus actually specify that MindGeek's *non-U.S.* contacts are the but-for cause of their claims.

And in fact, none of the alleged actions giving rise to Plaintiffs' complaints occurred in the United States. Contrary to Plaintiffs' baseless allegations, MindGeek S.à r.l., MG Freesites, and MG Premium have no offices or employees in the United States—which means they did not take any of the alleged actions in the United States. Andreou Decl. ¶¶ 28, 33, 41.  9219-1568 Quebec had two U.S.-based employees at one point, but those employees supported MindGeek's *paysite* businesses—not the *tubesite* businesses that are at issue here.  *Id.* ¶ 49; *see* C.S. Compl. ¶ 314; CS.O. Compl. ¶ 313; W.P. Compl. ¶ 313; X.N. Compl. ¶ 314; L.S. Compl. ¶ 314; N.Y. Compl. ¶ 314.  And as demonstrated above, Plaintiffs' allegations of MindGeek USA's and MG Global Entertainment's U.S.-based activities, including that they provide "services such as moderation, formatting, review, and approval of content," are incorrect and cannot be credited.  *See* C.S. Compl. ¶¶ 13, 15; S.O. Compl. ¶¶ 13, 15; W.P. Compl. ¶¶ 13, 15; X.N. Compl. ¶¶ 13, 15; L.S. Compl. ¶¶ 13, 15; N.Y. Compl. ¶¶ 13, 15.

Finally, though certain of Plaintiffs' other allegations may demonstrate some contacts with the United States, *see, e.g.*, C.S. Compl. ¶¶ 13, 15, 35–39 ("industry outreach and influencing, lobbying, and media relations," "doing business" in the United States, deriving "profits from U.S.-based operations," and "shar[ing] advertising revenue with numerous sex traffickers who reside in the United States"),[19] doing some business in the forum is not sufficient to establish personal

---

[19]  S.O. Compl. ¶¶ 13, 15, 35–39; W.P. Compl. ¶¶ 13, 15, 35–39; X.N. Compl. ¶¶ 13, 15, 35–39; L.S. Compl. ¶¶ 13, 15, 35–39; N.Y. Compl. ¶¶ 13, 15, 35–39.

jurisdiction if that business is not related to the plaintiff's injury, *see Yamashita*, 62 F.4th at 506 (contacts related to other business activities not relevant to jurisdiction). The Non-U.S. Plaintiffs have drawn no link demonstrating any close connection between these general business activities and their claims or their injuries—all of which also did not occur in the United States. The Court thus lacks personal jurisdiction over those claims. *See, e.g.*, *BMS*, 582 U.S. at 264–65 (no jurisdiction in California for non-California residents who were not injured in California, even though the defendant had "extensive" contacts with California that gave rise to other California plaintiffs' identical claims); *Hernandez v. LG Elecs. U.S.A., Inc.*, 2023 WL 9375095, at *2–3 (C.D. Cal. Dec. 26, 2023) (claims by out-of-California plaintiffs bore no connection to California because they did not purchase the product in California or suffer injury here).

## CONCLUSION

For all of the foregoing reasons, the Court should dismiss with prejudice Plaintiffs' Complaints.

Dated:  October 30, 2024

Respectfully submitted,

MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P.C.

/s/ Peter A. Biagetti
Seth R. Goldman (*pro hac vice forthcoming*)
Peter A. Biagetti (*admitted pro hac vice*)
Arameh Z. O'Boyle
Esteban Morales Fabila

Attorneys for Defendants
MindGeek, S.à r.l., MG Freesites Ltd, MG Premium Ltd, MindGeek USA Incorporated, MG Global Entertainment Inc., and 9219-1568 Quebec Inc.

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants MindGeek, S.à r.l., MG Freesites Ltd, MG Premium Ltd, MindGeek USA Incorporated, MG Global Entertainment Inc., and 9219-1568 Quebec Inc., certifies that this brief contains 43 pages, which complies with the 50-page limit set in the Court's Order Granting Joint Stipulation to Request Limited Coordination for Purposes of Responding to Complaints in Related Cases (ECF No. 54).

Dated:  October 30, 2024          Respectfully submitted,

MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO, P.C.

/s/ Peter A. Biagetti
Seth R. Goldman (*pro hac vice forthcoming*)
Peter A. Biagetti (*admitted pro hac vice*)
Arameh Z. O'Boyle
Esteban Morales Fabila

Attorneys for Defendants
MindGeek, S.à r.l., MG Freesites Ltd, MG Premium Ltd, MindGeek USA Incorporated, MG Global Entertainment Inc., and 9219-1568 Quebec Inc.