Michael J. Bowe
(*admitted pro hac vice*)
mbowe@brownrudnick.com
Lauren Tabaksblat
(*admitted pro hac vice*)
ltabaksblat@brownrudnick.com
**BROWN RUDNICK LLP**
7 Times Square
New York, NY 10036
Telephone:    (212) 209-4800
Facsimile:    (212) 209-4801

David M. Stein (#198256)
dstein@brownrudnick.com
**OLSON STEIN LLP**
240 Nice Lane #301
Newport Beach, CA  92663
Telephone:  (949) 887-4600

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| K.A., | Case No. 2:24-cv-04786-WLH-ADS |
| Plaintiffs, | HON. WESLEY L. HSU |
| v. | **PLAINTIFFS' OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS** |
| MINDGEEK S.A.R.L., et al., | |
| Defendants. | Date:    January 31, 2025<br>Time:    1:30PM<br>Courtroom:    9B |
| | COMPLAINT FILED:   June 7, 2024<br>TRIAL DATE:      None set |

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT.................................................................................. 1

LEGAL STANDARD ............................................................................................... 4

ARGUMENT ........................................................................................................... 5

I.      PLAINTIFFS PLEAD VIOLATIONS OF THE TVPRA............................. 5

     A.     Plaintiffs Plead Beneficiary Liability As To Each Defendant ............... 5

          1.    The MindGeek Defendants are Beneficiaries of a Trafficking Venture...................................................................10

               (a)    MindGeek's Exploitation of CSAM Constitutes a Commercial Sex Act.........................................................12

               (b)    MindGeek's Participation .................................................13

               (c)    MindGeek's Knowledge of Sex Trafficking ...................15

          2.    Colbeck and Redwood are Beneficiaries of a Trafficking Venture...................................................................17

               (a)    Colbeck and Redwood Participated in a Commercial Venture with MindGeek ......................................................17

               (b)    Colbeck and Redwood Had Knowledge that the Venture Violated the TVPRA...........................................21

               (c)    Colbeck and Redwood Knowingly Benefited from their Participation in the Venture......................................23

          3.    Visa Is The Beneficiary Of A Trafficking Venture ...................23

               (a)    Visa Participated in a Commercial Venture with MindGeek ........................................................................23

               (b)    Visa Had Knowledge that the Venture Violated Section 1591 ......................................................................25

          4.    Visa Knowingly Benefitted from Its Participation in the Venture...................................................................26

B.    Plaintiffs Plead Claims for Conspiracy Liability Under the
TVPRA As To Each Defendant .............................................26

C.    Plaintiff J.L.'s Trafficking Claims are Timely Pled...............28

II.    PLAINTIFFS PLEAD CLAIMS FOR VIOLATIONS OF CHILD
SEXUAL EXPLOITATION LAWS .............................................. 29

A.    MindGeek Defendants Knew Plaintiffs Were Minors .........................30

III.    PLAINTIFFS' CLAIMS ARE WITHIN THE TERRITORIAL REACH
OF FEDERAL LAWS ................................................................ 33

A.    Plaintiffs' Claims Are Within the Territorial Reach of the
TVPRA ................................................................................33

1.    The Civil Remedy Provision of the TVPRA Applies
Extraterritorially ........................................................33

2.    Plaintiffs' Claims are a Proper Domestic Application of the
TVPRA ........................................................................37

B.    Plaintiffs Section 2252 Claims Are Within Territorial Reach of
the Statute ...........................................................................39

IV.    PLAINTIFFS' STATE LAW CLAIMS ARE PROPERLY PLED ............ 41

A.    Plaintiffs' Claims Are Timely ..............................................41

B.    Plaintiffs Plead Intentional Infliction of Emotional Distress ...............44

C.    Plaintiffs Plead Violation of Their Privacy Rights................................46

D.    Plaintiffs Plead Both Common Law and Statutory
Misappropriation ................................................................47

E.    Plaintiffs Plead a Violation of the California TVPA............................48

F.    Plaintiffs Plead Negligence .................................................49

G.    Plaintiffs Plead a Claim for Civil Conspiracy ......................................50

H.    Plaintiffs Plead Violations of Unfair Competition Law and Fair
Advertising Law ..................................................................53

V.    CDA SECTION 230 DOES NOT IMMUNIZE DEFENDANTS'
CONDUCT ........................................................................................ 55

A.    MindGeek is a Content Creator ...............................................55

B.    FOSTA Bars MindGeek's Section 230 Defense ...................59

VI.    THE INDIVIDUAL DEFENDANTS ARE LIABLE FOR
MINDGEEK'S ILLEGAL CONDUCT ..................................... 60

A.    The Individual Defendants are Alter Egos of the MindGeek
Entities .................................................................................60

B.    The Individual Defendants were the Guiding Spirit Behind
MindGeek's Illegal Activities ...............................................61

VII.    PLAINTIFFS HAVE ARTICLE III STANDING......................... 62

A.    Plaintiffs' Harm is Traceable To Visa....................................63

B.    Plaintiffs' Harm Is Traceable To Colbeck and Redwood ...................67

C.    Plaintiffs Need Not Plead Proximate Cause..........................69

VIII.    THE COURT HAS PERSONAL JURISDICTION
OVER DEFENDANTS .................................................................. 69

A.    MindGeek S.a.r.l. and the Individual Defendants Are Subject To
Jurisdiction Based On The Contacts Of Their Alter Egos ...................70

B.    This Court May Exercise Nationwide Jurisdiction Over
MindGeek S.a.r.l..................................................................73

1.    MindGeek S.a.r.l. is Subject to Nationwide Jurisdiction
Under Rule 4(k)(2) ........................................................ 74

2.    MindGeek S.a.r.l. is Subject to Nationwide Jurisdiction
Pursuant to Section 18 U.S.C. 2255 ............................. 76

C.    The Court Has Personal Jurisdiction Over the Claims of Non-
U.S. Plaintiffs ...................................................................... 78

D.    Plaintiffs Are Entitled to Jurisdictional Discovery ...............81

CONCLUSION ...................................................................................... 81

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.B. v. Hilton Worldwide Holdings Inc.*,
    484 F.Supp.3d 921 (D. Or. 2020) ................................................................ 21, 22

*Action Embroidery Corp. v. Atl. Embroidery, Inc.*,
    368 F.3d 1174 (9th Cir. 2004) .............................................................................. 90

*Activision Publ'g, Inc. v. EngineOwning UG*,
    2023 WL 3272399 (C.D. Cal. Apr. 4, 2023) ...................................................... 85

*AMA Multimedia LLC v. Sagan Ltd.*,
    2020 WL 5988224 (D. Ariz. Oct. 9, 2020) ......................................................... 75

*Anderson v. TikTok, Inc.*,
    116 F.4th 180 (3rd Cir. 2024) (Matey, J., concurring) ...................................... 69

*Askins v. U.S. Dep't of Homeland Sec.*,
    899 F.3d 1035 .................................................................................................... 39

*Ayla, LLC v. Alya Skin Pty. Ltd.*,
    11 F. 4th 972 (9th Cir. 2021) .............................................................................. 93

*B.M. v. Wyndham Hotels & Resorts, Inc.*,
    2020 WL 4368214 (N.D. Cal. July 30, 2020) ............................................ *passim*

*Barnett v. Cnty. of Los Angeles*,
    2021 WL 826413 (C.D. Cal. Mar. 4, 2021) ........................................... 21, 30, 87

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................... 19

*Brill v. Chevron Corp.*,
    2017 WL 76894 (N.D. Cal. Jan. 9, 2017) ..................................................... 81, 82

*Callahan v. Ancestry.com Inc.*,
    2021 WL 783524 (N.D. Cal. Mar. 1, 2021) ........................................................ 72

*Caraccioli v. Facebook, Inc.*,
    700 F. Appx. 588 (9th Cir. 2017) ....................................................................... 71

*Chunghwa Telecom Global, Inc., v. Medcom LLC,*
    2016 WL 5815831 (N.D. Cal. Oct. 5, 2016) ................................................ 73, 76

*City of Los Angeles v. Wells Fargo & Co.,*
    22 F.Supp.3d 1047 (C.D. Cal. 2014) ...................................................... 81

*Colvin v. Roblox Corp.,*
    725 F.Supp.3d 1018 (N.D. Cal. 2024) ...................................................... 63

*Cook, Perkiss and Liehe, Inc. v. N. California Collective Serv. Inc.,*
    911 F.2d 242 (9th Cir. 1990)................................................................ 34

*Cross v. Facebook, Inc.,*
    14 Cal.App.5th 190 (2017) ................................................................ 62

*Daniel v. Nat'l Park Serv.,*
    891 F.3d 762 (9th Cir. 2018)................................................................ 79

*David v. Signal Int'l.,*
    LLC, 2015 WL 75276 (E.D. La. Jan. 6, 2015) ........................................ 52

*Deflino v. Agilent Tech., Inc.,*
    145 Cal.App.4th 790 (Cal. Ct. App. 2006)........................................ 72

*Doe #1 v. MG Freesites, Ltd.,*
    2022 WL 407147 (N.D. Ala. Feb. 9, 2022) ........................................ 27

*Doe #1 v. Red Roof Inns, Inc.,*
    21 F.4th 714 (11th Cir. 2021) ................................................ 36, 38, 40

*Doe #1 v. Red Roof Inns, Inc.,*
    21 F.4th 715 (11th Cir. 2021)................................................................ 38

*Doe #1 v. Twitter, Inc.,*
    2023 WL 3220912 (9th Cir. May 3, 2023) ........................................ 72

*Doe #9 v. Wyndham Hotels and Resorts, Inc.,*
    2021 WL 1186333 (S.D. Tex. Mar. 30, 2021) (Visa Mot.)............................ 21

*Doe 1 v. Apple Inc.,*
    2021 WL 5774224 (D.D.C. Nov. 2, 2021) ........................................ 50, 79, 80

*Doe 1 v. Apple Inc.,*
    96 F.4th 403 (D.C. Cir. 2024) ........................................................ 50

*Doe 1 v. Deutsche Bank Aktiengesellschaft*,
   671 F.Supp.3d 387 (S.D.N.Y. 2023)............................................................... 20, 35

*Doe (L.M.) v. 42 Hotel Raleigh, LLC*,
   2024 WL 4204906 (E.D.N.C. Sept. 16, 2024)..................................................... 23

*Doe v. Bates*,
   2006 WL 3813758 (E.D. Tex. Dec. 27, 2006)..................................................... 72

*Doe v. Johnson*,
   2018 WL 3239315 (S.D. Cal. July 3, 2018) ................................................. 58, 59

*Doe v. MindGeek USA Inc.*,
   558 F.Supp.3d 828 (C.D. Cal. 2021) ........................................................... *passim*

*Doe v. MindGeek USA Inc.*,
   574 F.Supp.3d 760 (C.D. Cal. 2021) ......................................................... 29, 69

*Doe v. MindGeek USA Inc.*,
   702 F.Supp.3d 937 (C.D. Cal. 2023) ............................................................. 27

*Doe v. MindGeek USA Inc., et al.*,
   Dkt. No. 1 8:21-cv-00338-WLH-ADS ........................................................... 57

*Doe v. Myspace, Inc.*,
   474 F.Supp.2d 843 (W.D. Tex. 2007)............................................................. 64

*Doe v. Reddit, Inc.*,
   2021 WL 5860904 (C.D. Cal. Oct. 7, 2021)..................................................... 64

*Doe v. WebGroup Czech Republic, a.s.*,
   93 F.4th 442 (9th Cir. 2024) ....................................................................... *passim*

*Does 1-6 v. Reddit, Inc.*,
   51 F.4th 1137 (9th Cir. 2022) ............................................................. 27, 28, 73

*Dyroff v. Ultimate Software Grp, Inc.*,
   934 F.3d 1093 (9th Cir. 2019) ..................................................................... 64

*Elizabeth Arden, Inc. v. Merchant of Tennis, Inc.*,
   2011 WL 13217803 (C.D. Cal. Oct. 28, 2011)............................................ 85, 86

*In re Facebook, Inc.*,
   402 F.Supp.3d 767 (N.D. Cal. 2019) ............................................................. 61

*Facebook, Inc. v. Power Ventures, Inc.*,
   844 F.3d 1058 (9th Cir. 2016) .......................................................................... 76

*Faili v. BAC Home Loans Servicing LP*,
   2014 WL 255704 (C.D. Cal. Jan. 23, 2024) ...................................................... 53

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*,
   521 F.3d 1157........................................................................................................ 70

*Fleites v. MindGeek S.a.r.l. et al.*,
   Case No. 21-cv-4920-WLH-ADS.......................................................................... 19

*Fleites v. MindGeek S.a.r.l. et al.*,
   No. 2:21-cv-4920-WLH-ADS, ECF No. 166 ............................................ *passim*

*Ford Motor Co. v. Montana Eighth Judicial District Court*,
   592 U.S. 351 (2021) ............................................................................................. 94

*Ford v. Revlon, Inc.*,
   153 Ariz. 38 (Ariz. 1987)...................................................................................... 59

*Fyk v. Facebook, Inc.*,
   808 F. App'x. 597 (9th Cir. 2020) ...................................................................... 71

*G.G. v. Salesforce.com, Inc.*,
   76 F.4th 544 (7th Cir. 2023) ............................................................ *passim*

*United States ex rel. Ginger v. Ensign Grp.*,
   2022 WL 4110166 (C.D. Cal. Mar. 10, 2022).................................................... 31

*Global-Tech Appliances, Inc. v. SEB S.A.*,
   563 U.S. 754 (2011) ............................................................................................. 46

*Haddad v. Merck and Co., Inc.*,
   2022 WL 18397392 (C.D. Cal. Dec. 9, 2022) ................................................... 57

*Handy v. LogMeIn, Inc.*,
   2015 WL 1729681 (E.D. Cal. Apr. 15, 2015) ................................................... 68

*Hatfield v. Halifax PLC*,
   564 F.3d 117 (9th Cir. 2009)............................................................................... 57

*United States ex rel. Hawkins v. ManTech Int'l Corp.*,
   2024 WL 4332117 (D.D.C. Sept. 27, 2024) ................................. 47, 48, 49, 50

*Heller v. NBCUniversal, Inc.*,
    2016 WL 6573985 (C.D. Cal. Mar. 30, 2016) ................................................... 31

*Hirel Connectors, Inc. v. U.S.*,
    2004 WL 5639770 (C.D. Cal. Jan. 23, 2004) .................................................... 86

*HomeAway.com, Inc. v. City of Santa Monica*,
    918 F.3d 676 (9th Cir. 2019)............................................................................. 69

*Horton by Horton v. City of Santa Maria*,
    915 F.3d 592 (9th Cir. 2019)............................................................................. 30

*In re Idaho Conservation League*,
    811 F.3d 502 (D.C. Cir. 2016) .......................................................................... 82

*IOSM, Inc. v. Martinez*,
    2020 WL 1666567 (S.D. Cal. Apr. 3, 2020)..................................................... 43

*J.B. v. G6 Hospitality, LLC*,
    2020 WL 4901196 (N.D. Cal. Aug. 20, 2020) ................................................. 72

*J.C. v. Choice Hotels Int'l, Inc.*,
    2020 WL 6318707 (N.D. Cal. Oct. 28, 2020) ........................................... 22, 34

*J.M. v. Choice Hotels Intern., Inc.*,
    2022 WL 10626493 (E.D. Cal. Oct. 18, 2022).................................................. 43

*Joude v. WordPress Found.*,
    2014 WL 3107441 (N.D. Cal. July 3, 2014)..................................................... 72

*In re: Juul Labs, Inc., Mktg., Sales Pracs., and Prods. Liab. Litig.*,
    497 F.Supp.3d 552 (N.D. Cal. 2020) ................................................................ 76

*Kaplan v. Int'l Data Grp., Inc.*,
    2015 WL 12806463 (C.D. Cal. Mar. 17, 2015)................................................ 88

*Kayne v. Ho*,
    2012 WL 12878753 (C.D. Cal. Sept. 6, 2012) ................................................. 85

*Kidron v. Movie Acquisition Corp.*,
    40 Cal. App. 4th 1571 (1995) ..................................................................... 66, 67

*Kormylo v. Forever Resorts, LLC*,
    2015 WL 106379............................................................................................ 90, 91

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Labowitz v. Bird Rides, Inc.*,
    2019 WL 8750219 (C.D. Cal. Oct. 29, 2019).................................................. 77, 79

*Lee v. Penthouse Int'l Ltd.*,
    1997 WL 33384309 (C.D. Cal. Mar. 19, 1997)................................................ 61

*Lundy v. Union Carbide Corp.*,
    695 F.2d 394 (9th Cir. 1982)........................................................................ 36

*Lynch v. Matterport, Inc.*,
    2023 WL 1420723 (N.D. Cal. Jan. 31, 2023).................................................. 76

*M.L. v. craigslist Inc.*,
    2020 WL 5494903, at *5 (W.D. Wash. Sept. 11, 2020)................................... 35

*M.A. v. Wyndham Hotels & Resorts, Inc.*,
    425 F. Supp. 3d 959 (S.D. Ohio 2019) ............................................ 30, 31, 34

*Madstad Eng'g Inc. v. U.S. Patent & Trademark Off.*,
    756 F.3d 1366 (Fed. Cir. 2014)..................................................................... 79

*ManTech Intern. Corp.*,
    2024 WL 4332117, at *9............................................................................... 47

*Mariscal v. Innovasis, Inc.*,
    2019 WL 2970833 (C.D. Cal. May 17, 2019) ................................................. 57

*In re McKinsey & Co., Inc. Nat'l Prescription Opiate Litig.*,
    2024 WL 2261926 (N.D. Cal. May 16, 2024)................................................. 65

*Merriam v. Demoulas*,
    2013 WL 2422789 (D. Mass. June 3, 2013) ............................................ 81, 82

*Michaels v. Internet Ent. Grp., Inc.*,
    5 F.Supp.2d 823 (C.D. Cal. 1998) ............................................................... 60

*Min Productions PTE. Ltd. v. FireForge, Inc.*,
    2015 WL 13907701 (C.D. Cal. June 4, 2015) ............................................... 85

*Mossimo Holdings LLC v. Haralambus*,
    2015 WL 476298 (C.D. Cal. Feb. 3, 2015).................................................... 85

*Murthy v. Missouri*,
    603 U.S. 43 (2024)....................................................................................... 79

*Nat'l Org. for Women, Inc. v. Scheidler*,
    510 U.S. 249 (1994) ................................................................................ 81

*Newcombe v. Adolf Coors Co.*,
    157 F.3d 686 (9th Cir. 1998)................................................................... 61

*Novoa v. The GEO Group, Inc.*,
    2018 WL 3343494 (C.D. Cal June 21, 2018) ....................................... 67

*O'Connor v. Uber Techs., Inc.*,
    2013 WL 6354534 (N.D. Cal. Dec. 5, 2013)......................................... 76

*Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co.*,
    81 F. Supp.3d 1 (D.C. 2015).................................................................. 82

*Pacini v. Nationstar Mortg., LLC*,
    2013 WL 2924441 (N.D. Cal. June 13, 2013)....................................... 61

*Parasoft Corp. v. Parasoft S.A.*,
    2015 WL 12645754 (C.D. Cal. Feb. 19, 2015) ..................................... 89

*Parsons v. Crown Disposal Co.*,
    15 Cal.4th 456 (1997) ............................................................................ 63

*Pennie v. Twitter, Inc.*,
    281 F.Supp.3d 874 (N.D. Cal. 2017) ............................................... 71, 78

*People v. Morante*,
    20 Cal 4th 403 (1999) ............................................................................ 66

*People v. Smith*,
    60 Cal. 4th 603 (2014) ........................................................................... 66

*Planet Green Cartridges, Inc. v. Amazon.com, Inc.*,
    2023 WL 8943219 (C.D. Cal. Dec. 5, 2023) ........................................ 71

*Ratha v. Phatthana Seafood Co.*,
    35 F.4th 1159 (9th Cir. 2022) ............................................................... 35

*Ratha v. Phatthana Seafood Co., Ltd.*,
    2017 WL 8293174 (C.D. Cal. Dec. 21, 2017)............................. 21, 35, 38

*Ratha v. Rubicon Resources, LLC*,
    111 F.4th 946 (9th Cir. 2024) ............................................................... 40

*Reaud v. Facebook Inc.*,
   2024 WL 4126066 (N.D. Cal. Sept. 9, 2024) ...................................................... 59

*Rio Props., Inc. v. Rio Int'l Interlink*,
   284 F.3d 1007 (9th Cir. 2002) ........................................................................... 83

*RJR Nabisco v. Eur. Cmty.*,
   579 U.S. 325 (2016) ..................................................................................... 47, 48

*Rodriguez v. Pan American Health Org.*,
   29 F.4th 706 (D.C.C. 2022) ................................................................................ 52

*Roe v. Howard*,
   917 F.3d 229 (4th Cir. 2019) ......................................................................... 49, 50

*S.C. v. Hilton Franchise Holding LLC*,
   2024 WL 4773981 (D. Nev. Nov. 12, 2024) ....................................................... 23

*S.R. v. Wyndham Hotels & Resorts, Inc.*,
   2024 WL 3226126 (S.D. Ohio June 28, 2024) ............................................... 43, 46

*Safarian v. Shaham*,
   2014 WL 5038651 (Cal. Ct. App. Oct. 9, 2014) ................................................ 65

*SAG-AFTRA v. LABC Prods., LLC*,
   2023 WL 11878288 (C.D. Cal. Oct. 20, 2023) ................................................... 31

*Samsung Electronics Co., Ltd. v. Panasonic Corp.*,
   747 F.3d 1199 (9th Cir. 2014) ........................................................................... 42

*Social Media Cases*,
   2023 WL 6847378, at *23-24 (Cal. Super. Ct. Oct. 13, 2023) .......................... 63

*Solano v. Playgirl, Inc.*,
   292 F.3d 1078, 1089 (9th Cir. 2002) ................................................................. 62

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) .......................................................................................... 82

*Square 1 Bank v. Lo*,
   128 F.Supp.3d 1257 (N.D. Cal. 2015) ........................................................... 91, 92

*State Comp. Ins. Fund v. Khan*,
   2013 WL 12132027 (C.D. Cal. July 30, 2013) .............................................. 18, 19

*Supermail Cargo, Inc. v. United States*,
    68 F.3d 1204 (9th Cir. 1995)................................................................ 42

*Tanedo v. E. Baton Rouge Par. Sch. Bd.*,
    2012 WL 5378742 (C.D. Cal. Aug. 27, 2012)............................................ 51, 52

*Taus v. Loftus*,
    40 Cal. 4th 683 (Cal. 2007)................................................................ 61

*Thinking Liberally Media Inc. v. Orange Juice Blog*,
    2010 WL 11596144 (C.D. Cal. Nov. 19, 2010)............................................ 66, 67

*Transgo, Inc. v. Ajac Transmission Parts Corp.*,
    768 F.2d 1001 (9th Cir. 1985) ............................................................ 41

*Twitter, Inc. v. Taamneh*,
    598 U.S. 471 (2023) ...................................................................... 78

*U.S. v. Matta-Ballesteros*,
    71 F.3d 754 (9th Cir. 1995)................................................................ 40, 64

*U.S. v. McVicker*,
    979 F.Supp.2d 1154 (D. Oregon 2013)...................................................... 55

*U.S. v. Thomas*,
    893 F.2d 1066 (9th Cir. 1990) ............................................................ 55

*United States v. Bazar*,
    747 F. Appx. 454 (9th Cir. 2018).......................................................... 27

*United States v. Calaway*,
    524 F.2d 609 (9th Cir. 1975)............................................................... 41

*United States v. Rearden*,
    349 F.3d 608 (9th Cir. 2003)............................................................... 44

*United States v. Salman*,
    618 F. App'x 886 (9th Cir. 2015) ......................................................... 46

*United States v. Sparks*,
    659 F.Supp.3d 1056 (N.D. Cal. 2023) ..................................................... 30

*United States v. Welton*,
    2009 WL 4507744 (C.D. Cal. Nov. 30, 2009)................................................ 44

*United States v. Wolfenbarger*,
  2020 WL 2614958 (N.D. Cal. May 22, 2020) .................................................. 54

*Will Co., Ltd. v. Lee*,
  47 F.4th 917 (9th Cir. 2022) ................................................ 88, 89, 93

*Williams v. Countrywide Fin. Corp.*,
  2017 WL 986517.................................................................... 58

*Yamashita v. LG Chem, Ltd.*,
  62 F.4th 496 (9th Cir. 2023) .................................................... 91

**Statutes**

18 U.S.C § 1591 ........................................................... *passim*

18 U.S.C. § 1594 .................................................... 40, 41

18 U.S.C. §1595 ........................................................... *passim*

18 U.S.C. § 1596 ............................................ 47, 49, 50, 51

18 U.S.C. § 2252 ............................................ 44, 53, 54, 95

18 U.S.C. § 2255 ............................................ 44, 89, 92

47 U.S.C. § 230 ........................................................... *passim*

Cal. Bus. & Prof. Code § 17200 .................................... 57

Cal. Bus. & Prof. Code § 17500.................................... 65

Cal. Civ. Code § 52.5 .............................................. 63, 65

Cal. Civ. Code § 52.5 (c).............................................. 63

Cal. Civ. Code § 1708.85 ................................ 55, 57, 60, 65

Cal. Civ. Code § 3344 .............................................. 61

Cal. Civ. Proc. Code § 338 (a) .................................... 56

1

**Other Authorities**

2

4 Wright & Miller, Fed. Prac. & Proc. Civ. § 1067.5 (4th ed.) ............................. 91

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PRELIMINARY STATEMENT

Plaintiffs are fourteen victims of child sex trafficking.[1] Each was a minor when MindGeek accepted, modified, optimized, uploaded, disseminated, and commercialized their child sexual abuse materials ("CSAM") through paid advertisements.  Plaintiffs' abuse continued for years during which time MindGeek repeatedly transferred and reuploaded Plaintiffs' illegal images to all of its other tubesites and made them available for download so that others could likewise disseminate them all over the internet. Plaintiffs' experiences were not unique or surprising, but were a regular part of the business model that defendants created to get rich in the pornography industry by operating without restriction.

These criminal activities were directed by MindGeek's owners, defendants Bergmair, Antoon, and Tassillo, and executed through a byzantine international structure of shell companies that were in constant metamorphosis, served no legitimate purpose, and were created and dissolved to mask criminal activity, evade liability, and enrich the defendants.

MindGeek's success depended on the intentional and material support of defendants Colbeck, Redwood, and Visa. As this court previously observed, Visa provided MindGeek the tools to commit the crime of monetizing and profiting from

---

[1] Plaintiffs refer to K.A. and Plaintiffs in the Related Actions which refer to the following fourteen actions currently before the Court: *K.A. v. MindGeel S.a.r.l., et al.*, No. 2:24-cv-04786-WLH-ADS; *N.L. v. MindGeek S.a.r.l., et al.*, No. 2:24-cv-04788-WLH-ADS; *L.T. v. MindGeel S.a.r.l., et al.*, No. 2:24-cv-04791-WLH-ADS; *T.C. v. MindGeek S.a.r.l., et al.*, No. 2:24-cv-04795-WLH-ADS; *X.N. v. MindGeek S.a.r.l., et al.*, No. 2:24-cv-04800-WLH-ADS; *N.Y. v. MindGeek S.a.r.l., et al.*, No. 2:24-cv-04801-WLH-ADS; *J.C. v. MindGeek S.a.r.l., et al.*, No. 2:24-cv-04971-WLH-ADS; *W.L. v. MindGeek S.a.r.l., et al.*, No. 2:24-cv-04977-WLH-ADS; *C.S. v. MindGeek S.a.r.l., et al.*, No. 2:24-cv-04992-WLH-ADS; *S.O. v. MindGeek S.a.r.l., et al.*, No. 2:24-cv-04998-WLH-ADS; *L.S. v. MindGeek S.a.r.l., et al.*, No. 2:24-cv-05026-WLH-ADS; *W.P. v. MindGeek S.a.r.l., et al.*, No. 2:24-cv-05185-WLH-ADS; *A.K. v. MindGeek S.a.r.l. et al.*, No. 2:24-cv-05190-WLH-ADS; *J.L. v. MindGeek S.a.r.l., et al.*, No. 2:24-cv-07046-WLH-ADS.

child pornography through its payment processing services. *Fleites v. MindGeek S.a.r.l. et al.*, No. 2:21-cv-4920-WLH-ADS ("Fleites Action" or "Fleites"), ECF No. 166 at 11-12. Defendants Colbeck and Redwood provided the hundreds of millions of dollars that MindGeek needed to build its empire. Before doing so and during the decade of such financing, Colbeck and Redwood were fully aware that MindGeek would be using the financing to monetize child pornography and other nonconsensual content. Nevertheless, they arranged and provided MindGeek the capital to expand and operate those illegal activities because they too had a singular focus on the profits they would earn from the exorbitant interest rates and fees they could demand because others were unwilling to finance this illicit business.

Defendants' conduct gives rise to a host of federal and state claims.

First, each defendant is liable as a beneficiary of a sex trafficking venture in violation of sections 1591 and 1595 of the TVPRA. Defendants' primary challenge is that Plaintiffs have failed to allege Defendants' specific knowledge of each Plaintiff. But victim-specific knowledge is not required under the plain language of the statute or controlling case law. Rather, civil liability lies where defendant participates in a venture with actual or constructive knowledge that the venture is engaged in sex trafficking, even if the defendant itself never engaged in that trafficking. The victim-specific requirement defendants argue applies impermissibly read an actual knowledge requirement into the civil liability provision of the TVPRA and have the unconscionable effect of insulating participants of ventures engaged in widespread sex trafficking where it is impossible for each defendant to know of every single victim. At a minimum, Plaintiffs' allegations raise inherent questions of fact concerning defendants' participation and knowledge that require discovery.

Second, Plaintiffs adequately plead conspiracy liability against each defendant – under both the TVPRA and common law. In seeking to evade liability, defendants argue that Plaintiffs fail to allege defendants' intent to participate in sex trafficking. But the complaints allege each defendants' intent and agreement to monetize child

1   pornography. The robust allegations of defendants' continued participation and

2   support in the face of their actual and constructive knowledge of MindGeek's illegal

3   activities more than satisfy Plaintiffs' burdens at the pleadings stage.

4       Third Plaintiffs also plead numerus state statutory and common law claims

5   which defendants do not meaningfully challenge.

6       As set forth herein, this Court may exercise personal jurisdiction over all

7   defendants and all claims. Jurisdiction is proper over MindGeek S.a.r.l. and the

8   Individual Defendants based on the imputed contacts of their alter egos that have

9   conceded jurisdiction in this action.  Moreover, the Court may exercise nationwide

10  jurisdiction over the foreign Plaintiffs' claims here where the Complaints allege (and

11  the discovery produced in *Fleites* confirms) that MindGeek directed substantial

12  activities toward and received significant profits from the United States.

13      For these reasons and those set forth below, defendants' Motions should be

14  denied.

15                          *       *       *

16      Pursuant to this Court's order permitting limited coordination (ECF No. 54),

17  Plaintiffs incorporate by reference the arguments and evidence presented in the

18  Fleites Opposition (Fleites, Case No. 21-cv-4920-WLH-ADS, ECF No. 480).

19  Pursuant to the parties' Amended Stipulated Protective Order (Fleites, ECF No.

20  490), the parties stipulated that materials produced in *Fleites* may be used in the

21  Related Actions. Plaintiffs thereby incorporate and have attached here the exhibits

22  submitted in *Fleites* in response to Defendants' motions to dismiss and

23  accompanying declarations of Messrs. Antoon (ECF No. 62-2), Tassillo (ECF No.

24  62-3), Bergmair (ECF No. 65-2); and Andreou (ECF No. 78-2).[2]

25  _____

26  [2] At the time Plaintiffs filed their complaints, Defendants were exploiting the
    existing confidentiality order to wholesale designate all information produced in the

27  *Fleites* case as confidential, which is subject to pending motions before this Court.
    *See* Fleites, ECF No. 479, Plaintiff's Application for Leave to File Under Seal

28

1

**LEGAL STANDARD**

2      A motion to dismiss pursuant to Fed. R. Civ. P. 12 should be denied "where

3  a plaintiff has alleged 'enough facts to state a claim to relief that is plausible on its

4  face.'" *State Comp. Ins. Fund v. Khan*, 2013 WL 12132027, at *2 (C.D. Cal. July

5  30, 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The

6  Court "must accept all material allegations in the complaint as true and construe

7  them in the light most favorable to the non-moving party." *Id*. A plaintiff's factual

8  allegations are sufficient to survive a motion to dismiss "even if it strikes a savvy

9  judge that actual proof of those facts is improbable and that a recovery is very

10  remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation omitted).

11      By stipulation and subsequent order of October 9, 2024 (ECF No. 54), the

12  Court permitted Plaintiffs to file a single omnibus opposition to all of the

13  Defendants' motions to dismiss in the Related Cases and incorporate by reference

14  the arguments made by the Parties in the motion to dismiss briefing in Fleites.[3] *Id.*

15  at 2.

16

17

18

19

20

---

21  Materials Related to Omnibus Opposition; Fleites ECF No. 482, Declaration of J.
   Sack; Fleites, ECF No. 483 Declaration of J. Brown; ECF No. 484, Declaration of R.
22  White; ECF No. 485, Declaration of A. Reich; ECF No. 486, Declaration of E.
   Morales Fabila. Since that time, the parties have stipulated to amend the protective
23  order in the *Fleites* action to allow the parties to use the *Fleites* discovery in these
   related actions. Fleites, ECF No. 490, Amended Stipulated Protective Order.
24  Accordingly, Plaintiffs incorporate by reference the evidence and discovery obtained
   in the *Fleites* action to respond to Defendants' jurisdictional and alter ego arguments
25  and in response to the declarations and evidence the MindGeek Defendants and the
26  Individual Defendants have submitted on this motion.
   [3] "Fleites" refers to *Fleites v. MindGeek S.a.r.l. et al.*, Case No. 21-cv-4920-WLH-
27  ADS.

28

# ARGUMENT

## I.   PLAINTIFFS PLEAD VIOLATIONS OF THE TVPRA

### A.   Plaintiffs Plead Beneficiary Liability As To Each Defendant

As set forth in plaintiff's opposition to defendants' motions to dismiss in *Fleites*, the Trafficking Victims Protection Act ("TVPRA") "provides trafficking victims with a private right of action to pursue claims against…those who knowingly benefit financially from trafficking ("beneficiary liability")." Fleites Opp. at 5[4]; *see also Doe v. MindGeek USA Inc.*, 558 F.Supp.3d 828, 835 (C.D. Cal. 2021); 18 U.S.C. § 1595. The statute is remedial and intended to address a wide range of conduct.  Fleites Opp. at 5. Thus, to state a claim under section 1591(a)(2) and its civil counterpart section 1595, a plaintiff need only allege that the defendant: (1) knowingly benefitted financially or by receiving anything of value, (2) from participation in a venture, and (3) knew or should have known that the venture was engaged in sex trafficking. *B.M. v. Wyndham Hotels & Resorts, Inc.*, 2020 WL 4368214, at *4 (N.D. Cal. July 30, 2020); Fleites Opp. at 6-7. These requirements are easily met as to each of Defendant. *See infra* 9-25.

As they did in *Fleites*, Defendants once again seek to graft extra-statutory requirements on to section 1595.

First, they assert that the TVPRA's actual or constructive knowledge requirement requires knowledge of the specific plaintiff or knowledge of that plaintiff's videos or images.  Colbeck Mot. at 18-21; Redwood Mot. at 24-26; Visa Mot. at 14-16; MindGeek Mot. at 10-12. As outlined at length in *Fleites*, this position is not supported by the statutory language of section 1595 (or

---

[4] "Fleites Opp." refers to the Omnibus Opposition to Defendants' Motions to Dismiss (*Fleites*, No. 2:21-cv-04920, ECF. No. 480) filed by plaintiff Serena Fleites. By stipulation and this court's order of October 9, 2024, the court permitted the parties to incorporate by reference the arguments made by the parties in the motion to dismiss briefing in *Fleites*. ECF No. 54.

section1591) or the legislative history of the TVPRA.  *See* Fleites Opp. at 7-10.  To the contrary, the plain language of section 1595 only requires that a defendant have knowledge that the <u>venture</u> is engaged in <u>an act</u> of sex-trafficking. The statute does not require knowledge as to each individual plaintiff or each individual act of sex trafficking. *See id.*; *see also G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 558 (7th Cir. 2023) ("To state a claim under Section 1595, a plaintiff needs to allege plausibly that the defendant had constructive knowledge that a venture <u>generally</u> has violated Section 1591. Knowledge of the specific victim, let alone knowledge of her identity, is not required.") (citations omitted; emphasis in original); *id.* at 556-57 (noting that the statute only requires knowledge of "<u>an act</u>" and does not require that victims show knowledge of "the specific" act as to them); *see also Doe 1 v. Deutsche Bank Aktiengesellschaft*, 671 F.Supp.3d 387, 407 (S.D.N.Y. 2023) (rejecting same argument advanced by defendants here and finding knowledge element satisfied where the complaint alleged banks had knowledge of the Jeffrey Epstein venture). As the Seventh Circuit properly concluded in *Salesforce*, imposing a victim-specific knowledge requirement would have the unintended and unconscionable effect of insulating the beneficiaries of large-scale sex-trafficking from liability. *See Salesforce,* 76 F.4th at 556-57; *see also* Fleites Opp. at 10. At the very minimum, constructive knowledge is a fact-intensive inquiry that is not appropriately resolved on a motion to dismiss. *Barnett v. Cnty. of Los Angeles*, 2021 WL 826413, at *8 (C.D. Cal. Mar. 4, 2021) (factual questions of actual or constructive knowledge are questions that cannot be determined on a motion to dismiss); Fleites Opp. at 19.[5]

---

[5] To support this extra statutory victim specific knowledge requirement, Defendants rely on many of the same cases they cited to in their motions to dismiss in *Fleites*, which have already been distinguished in that briefing. Fleites Opp. at 8-9, n.6, n.7. The additional cases Defendants now cite are likewise distinguishable on the same

Second, Colbeck and Visa argue that participation requires control and management of the venture's sex trafficking activities and the specific activities targeting Plaintiffs. Colbeck Mot. at 19-20; Visa Mot. at 14-15. [6] But as addressed at length in *Fleites*, beneficiary liability does not require direct involvement in the sex trafficking itself. Fleites Opp. at 3, 6, 10; *see also Salesforce*, 76 F.4th at 559. Rather, courts have uniformly held that liability may be imposed for participation in any commercial venture, so long as defendant had the requisite knowledge that the venture was engaged in illegal trafficking. *See* Fleites Opp. at (7-10); *see also* 18 U.S.C.§ 1591(e)(6) (defining venture as "any group of two or more individuals associated in fact"); *Salesforce*, 76 F.4th 544 at 559-560 (finding Salesforce's operational support to Backpage satisfied the participation element under section 1595); *J.C. v. Choice Hotels Int'l, Inc.*, 2020 WL 6318707, at *7 (N.D. Cal. Oct. 28, 2020) (rejecting argument that defendants must participate in a sex trafficking venture). Indeed, it is well-settled that under section 1595, Plaintiffs need not even plead actual knowledge of sex-trafficking or the performance of an overt act in furtherance of the trafficking. Fleites Opp. at 5-6, 15; *see also A.B. v. Hilton Worldwide Holdings Inc.,* 484 F.Supp.3d 921, 937 (D. Or. 2020) (quoting *A.B. v.*

---

grounds in that both involve a single plaintiff and thus knowledge of the venture was synonymous with knowledge of the victim. *See A.B. v. Hilton Worldwide Holdings Inc.*, 484 F.Supp.3d 921, 938-939 (D. Or. 2020) (venture involved a single plaintiff); *Doe #9 v. Wyndham Hotels and Resorts, Inc.*, 2021 WL 1186333 (S.D. Tex. Mar. 30, 2021) (Visa Mot. at 15) (claim involving venture targeting a single victim was insufficient where it alleged only knowledge of sex trafficking at that hotel and not knowledge of plaintiff's trafficker or plaintiff's trafficking).

[6] Visa's and Colbeck's reliance on *Ratha*, Visa Mot. at 14; Colbeck Mot. at 18, is misplaced because the holding in *Ratha* was specifically limited to ventures involving forced labor. *Ratha v. Phatthana Seafood Co., Ltd.*, 2017 WL 8293174, at *4 (C.D. Cal. Dec. 21, 2017). In so ruling, the *Ratha* court notes that "participation" in a sex trafficking venture does not require a direct role in the illegal activities of the venture. *Id.* The court also notes that the term "venture" is defined broadly for the purposes of section 1591 but is not defined for section 1589. *Id.*

*Marriott Int'l, Inc.*, 455 F.Supp.3d 171, 188 (E.D. Pa. 2020)) ("Plaintiff therefore is
not required to allege actual knowledge of a sex trafficking venture or the
performance of an overt act in order to sufficiently plead the "participation in a
venture" element of her § 1595 claim.").  As numerous courts have correctly
reasoned, imposing such a requirement would graft the scienter requirement from
the criminal provision of section 1591 onto section 1595, which would "void the
should have known language in the civil remedy." *A.B.,* 484 F.Supp.3d at 937.
(internal citation omitted). Consistent with these principles, courts routinely find
knowing assistance or support is properly inferred where the complaint pleads a
"continuous business relationship" or "pattern of conduct." *Doe v. MindGeek USA
Inc.*, 558 F.Supp.3d at 837; *see also* Fleites Opp. at 6.

Third, Defendants argue that beneficiary liability requires a direct
relationship between the beneficiary and plaintiffs' direct traffickers.  Colbeck
Mot. at 19-20; Redwood Mot. at 24-25; Visa Mot. 14-15.  There is likewise no
such requirement in the statute.  *See Salesforce*, 76 F.4th at 561 (section 1595 did
not require Salesforce to be directly connected to advertisements of plaintiff placed
on Backpage).  Courts have likewise declined to hold that the "continuous business
relationship" needs to be with plaintiff's direct traffickers. *See* Fleites Opp. at 10-
11.  It is sufficient that the "continuous business relationship" be among those
alleged to be participants in the venture and that one of the participants in the
venture is guilty of a violation of Section 1591(a)(2). *S.C. v. Hilton Franchise
Holding LLC*, 2024 WL 4773981, at *5 (D. Nev. Nov. 12, 2024) (franchisor was
liable under 1591(a)(2) where it was in a business relationship with franchisee that
informed them of suspected sex trafficking at franchisee hotel); *Doe (L.M.) v. 42
Hotel Raleigh, LLC*, 2024 WL 4204906, at *4-6 (E.D.N.C. Sept. 16, 2024)
(sustaining beneficiary liability claim against franchisor where complaint alleged
commercial venture between franchisor and franchisee and that franchisee violated
section 1591(a)(2)). Indeed, the *Salesforce* court made clear that it found

beneficiary liability as to Salesforce both through its commercial venture with
Backpage, which itself was a beneficiary of a venture with street-level traffickers,
and because Backpage was also a sex trafficker. The court's findings did not
depend just on the allegation that Backpage itself was a direct trafficker.
*Salesforce*, 76 F.4th at 560-561 (Salesforce had a "continuous business
relationship" with Backpage through its services contracts which then allowed
Backpage to build relationships with street-level traffickers and increase the
trafficking conducted through its website).  Here, the MindGeek entities are
alleged to have violated section 1591(a)(1) and section 1591(a)(2). Defendants
Colbeck, Redwood, and Visa face civil liability under section 1595 from their
knowing participation and benefit in a commercial venture to monetize child
pornography with the MindGeek Defendants.

Finally, the Colbeck Defendants seek to impose a *quid pro quo* requirement
on the "knowingly benefits" prong of section 1595, asserting that there must be a
causal relationship between the benefit and the furtherance of the sex-trafficking
venture. Colbeck Mot. at 20.  As the Seventh Circuit detailed in *Salesforce*, this
requirement has been rejected by "virtually every other court" because it is
inconsistent with the plain language of section 1595 which does not even require
the sex-trafficker to be the one to provide the benefit.  *See Salesforce*, 76 F.4th 544
at 565, n.20 (collecting cases). "Virtually every other court" that has addressed this
issue has held that the "knowingly benefit" element of section 1595 merely
requires that a defendant be aware that it is benefiting in some way from its
participation in the venture. *Salesforce*, 76 F.4th at 564-65; *B.M. v. Wyndham
Hotels & Resorts, Inc.*, 2020 WL 4368214, at *4 (N.D. Cal. July 30, 2020).
Adopting the interpretation advanced by Colbeck, would change the scienter
requirement of section 1595 to one of actual knowledge which doesn't comport
with the plain statutory text or congressional intent.

1.    <u>The MindGeek Defendants are Beneficiaries of a Trafficking Venture</u>

The *Fleites* opposition details MindGeek's acquisition, growth, and operation of the largest pornography conglomerate in the world through the intentional solicitation, optimization and monetization of child pornography and other forms of non-consensual content. *See* Fleites Opp. 11-15.  As set forth in the Fleites opposition and Plaintiffs' complaints, MindGeek proactively embraced all forms of illicit content because in the arms race to be the number one result in search engine results for pornography, content is king, and the unrestricted accumulation of content is a driving factor in determining which website leads in search engine results. K.A. ¶¶ 3-4, 48, 58-60. Thus, MindGeek embraced an unrestricted content model in which they not only allowed users to populate their platform with virtually any type of pornographic content (K.A. ¶¶ 2, 59-61, 74, 109, 125, 150-154, 196, 202), but also devoted themselves to analyzing all the content and how such content, including child porn, could be used to maximize website traffic and advertising revenue (K.A. ¶¶ 3-5, 41, 43, 47-50, 115-137, 155) This detailed, moment-to-moment analysis provided MindGeek with a comprehensive understanding of the content on its platforms, the users who consumed it, and how to partner with those users to drive further content and traffic. K.A. ¶¶ 59-61, 73-75.

Based on this analysis, MindGeek worked with its users to solicit, optimize, and monetize illegal content on its platforms, directing their users how to describe, title, tag, categorize, and format their content to optimize views. K.A. ¶¶ 4, 43, 116 Moreover, MindGeek's in-house moderation team reviewed every image and video prior to upload ostensibly to screen for illegal content (K.A. ¶¶ 232, 313), but in reality, these moderators were tasked with scrubbing titles, tags, and descriptions for obvious signs of illegality, and adding to or editing the content, its title, tags, categories, and descriptions to conform to MindGeek's algorithm and optimize the content's reach. Fleites Opp. 12-13; K.A. ¶¶ 77-84.  MindGeek's content moderators

1    would also edit the video thumbnail, the scenes, and lengths, (K.A. ¶¶ 117-120), and

2    "scrubbed" words in the titles and tags that unequivocally indicated criminality.

3    K.A. ¶ 78.  It was not until the user—with MindGeek's suggestions, instruction or

4    intervention (K.A. ¶¶ 43, 50, 80, 115-117), had added the descriptive content to the

5    image that the product was added to MindGeek's website. K.A. ¶¶ 4, 137, 141.

6    MindGeek then proactively drew attention to the content by combining it in

7    playlists, suggested searches, and category libraries with other similarly described

8    content offered to users with similar interests.  K.A. ¶¶ 4, 43, 61, 77, 115, 136, 313,

9    324-325, 454.  MindGeek also directly contracted with certain users through its

10   "content partner" program whereby MindGeek agreed to advertise, sell, market,

11   monetize, and promote its partners' videos through dedicated account

12   representatives and also assisted in creating content. J.L. ¶¶ 317, 319. One of

13   MindGeek's most popular content partners was GirlsDoPorn ("GDP"). GDP

14   generated hundreds of millions of dollars in revenue for MindGeek a portion of

15   which MindGeek allocated to GDP through bi-monthly payments. J.L. ¶ 317.

16       To further facilitate the propagation and monetization of illegal content,

17   MindGeek provided users with a download button that they knew and intended users

18   would use to make new content and compilations, or replacements for disabled

19   content. K.A. ¶ 136. Indeed, users were incented to do so through various programs

20   through which users could monetize the content they uploaded. Fleites Opp. at 13;

21   K.A. ¶¶ 41, 136, 142. Even worse, MindGeek itself systematically uploaded user

22   generated and MindGeek optimized content on one platform to all other MindGeek

23   platforms (K.A. ¶¶ 63, 100, 190, 193, 196, 313, 318) and itself reuploaded content

24   that it had been forced to disable to Pornhub and its other sites under different titles

25   and usernames. Fleites Opp. at 14-15; K.A. ¶¶ 100-101. MindGeek also made it

26   extremely difficult for victims to have their nonconsensual and illegal content

27   removed often stonewalling victims and demanding additional information they

28   knew victims could not provide to delay removing such content from their sites.

Fleites Opp. at 13; K.A. ¶¶ 91-97. Even when MindGeek did takedown videos at the request of victims, they retained as much information regarding the video as they could, such as title, description, tags, and comments, so that the webpage could still be retrieved through a search engine and thus increase MindGeek's Search Engine Optimization ("SEO"). Fleites Opp. at 13-14; K.A. ¶¶ 93-94, 98-99. When a user landed on the disabled webpage, MindGeek's algorithms solicited the user with similar videos to the one disabled. *See id.*

Finally, MindGeek has repeatedly stated publicly that it retains copies of all take-down content on its servers, including child pornography. K.A. ¶¶ 68, 100-101, 120. Accordingly, MindGeek, with servers in the United States is the largest repository of child pornography in the world. K.A. ¶ 101.

        (a)   <u>MindGeek's Exploitation of CSAM Constitutes a Commercial Sex Act</u>

MindGeek's creation, hosting, and monetization of CSAM depicting Plaintiffs are commercial sex acts under the TVPRA. *See* 18 U.S.C. § 1591(e)(3) (defining commercial sex act as "*any* sex act, on account of which anything of value is given to or received by *any* person") (emphasis added); *Doe v. MindGeek USA*, 558 F.Supp.3d at 840 (MindGeek's receipt of a financial benefit from the uploading of CSAM on its tubesites satisfied the definition of a commercial sex act); *see also Doe #1 v. MG Freesites, Ltd.*, 2022 WL 407147, at *19 (N.D. Ala. Feb. 9, 2022) (same).[7]

---

[7] Citing *United States v. Bazar,* 747 F. Appx. 454, 456 (9th Cir. 2018), Colbeck argues that a commercial "sex act" under the TVPRA is limited to "an act performed with another for sexual gratification." Colbeck Mot. at 17. This interpretation is not supported by *Bazar* or other caselaw. The *Bazar* court merely found that "an act performed with another for sexual gratification" was one of several dictionary definitions, and specifically rejected the argument that the term "commercial sex act" was limited to sexual intercourse for money. *See Bazar*, 747 Fed. Appx. at 456 (internal quotation omitted). There is also no requirement in the TVPRA that the individuals who uploaded the images and videos intended to monetize them at the

(b)    <u>MindGeek's Participation</u>

MindGeek's motion to dismiss these actions only offers a bare bones refutation of Plaintiffs' allegations. MindGeek again relies heavily on the recent Ninth Circuit holding in *Reddit* to argue that beneficiary liability requires that "the defendant must have actually 'engaged in some aspect of the sex trafficking.'" MG Mot. at 11 (citing *Does 1-6 v. Reddit, Inc.*, 51 F.4th 1137, 1145 (9th Cir. 2022)). But, as explained in *Fleites*, the holding in *Reddit* was limited to the analysis of the FOSTA exception to CDA 230 immunity. *See id.* at 1145. The Ninth Circuit did not extend this standard to the civil analog statute outside the FOSTA exception. *Id.* And the only circuit court to address this standard post-*Reddit* has declined to adopt section 1591's criminal requirements to claims for civil liability. *See Salesforce*, 76 F.4th at 564; Fleites Opp. at 15-16.[8]  The holding in *Salesforce* is consistent with the statutory text of both sections 1591and section 1595. While section 1595 does not define the phrase "participation in a venture," section 1591 provides the ceiling of what participation in a section 1595 venture requires.[9] Section 1591 defines "participation" as "knowingly assisting, supporting, or facilitating a violation" of 1591(a)(1). 18 U.S.C. § 1591(e)(4). As the civil remedy does not demand actual knowledge, participation for the purposes of section 1595 cannot require more than "assisting, supporting, or facilitating" a venture that violates Section 1591. *Salesforce*, 76 F.4th at 558-559.

In any event, as detailed in *Fleites*, unlike Reddit, the MindGeek Defendants did engage directly in sex-trafficking. Fleites Opp. at 16-17; *See* Fleites Ex. 98 (7/19/2024 Tr. at 58:14-18 (distinguishing the user generated content in *Reddit* from

time they were made. *Doe v. MindGeek USA Inc.*, 702 F.Supp.3d 937, 950 (C.D. Cal. 2023).

[8] The application of *Reddit* to the CDA 230 and FOSTA argument in this Action is discussed further below. *Infra* Section V.B.

[9] Venture is also broadly defined as "any group of two or more individuals associated in fact, whether or not a legal entity." 18 U.S.C. § 1591(e)(6).

1  MindGeek generated categories with CSAM code words)). In *Reddit*, the Ninth

2  Circuit held that Reddit had not participated in the venture because Reddit took no

3  part in the creation or transformation of CSAM, but merely turned a blind eye to the

4  CSAM posted by its users. *Reddit*, 51 F.4th at 1142-1143. Plaintiffs in *Reddit* also

5  failed to tie the CSAM posted on Reddit's forums to Reddit's profit. *Id.* at 1145. In

6  contrast to the neutral platform provided by Reddit, the complaints allege that

7  MindGeek proactively partnered with its users to generate substantive messaging,

8  promote, edit, and enhance the CSAM, and other illicit content posted by its users,

9  affirmatively reposted it other MindGeek tubesites, enabled users to download and

10  report, and itself reuploaded content that it was forced to take down. *Supra* p. 9-11;

11  *Infra* Section.I.A.1(c); Fleites Opp. at 16-17.

12      Moreover, MindGeek's revenue was directly tied to its promotion and

13  proliferation of CSAM. As Plaintiffs allege, MindGeek earned revenue from ads it

14  placed alongside Plaintiffs' images and videos. K.A. ¶¶ 39, 121, 149, 313.

15  Moreover, far from neutral advertising, MindGeek's advertising platform allowed

16  advertisers to build campaigns around keywords that clearly reflected child

17  pornography. Fleites Opp. at 17; K.A. ¶ 122-124. MindGeek also benefitted from the

18  proliferation of CSAM on its sites insofar as it used that data to perfect its SEO

19  algorithms to effectively solicit more content and traffic which furthered its race to

20  become the top search engine website result in any porn related search. K.A. ¶¶ 59-

21  61, 91, 115, 125, 148-49. Finally, reflecting the profits MindGeek earned from its

22  dissemination of illegal content, MindGeek paid certain of its "content partner"

23  users, including convicted sex trafficker GDP, for their share of revenues generated

24  by the sale of the illegal videos on MindGeek's websites, including in the case of

25  J.L. J.L. ¶ 317.

26

27

28

1

              (c)      <u>MindGeek's Knowledge of Sex Trafficking</u>

2

Plaintiffs' complaints plead MindGeek's requisite knowledge in spades.  As

3

set forth in the *Fleites* opposition and *supra*, all Plaintiffs need to allege is that

4

MindGeek knew the venture was engaged in sex-trafficking; Plaintiffs do not need

5

to prove that MindGeek knew of the venture's exploitation of each individual

6

Plaintiff. *See* Fleites Opp at 3, 7-10; *Supra* p. 4-9.

7

The *Fleites* opposition details the numerous indicia of the MindGeek

8

Defendants' actual knowledge of their participation and benefits from a venture

9

engaged in sex trafficking.  *See* Fleites Opp. 17-19. Among other things, the

10

complaints demonstrate that (1) MindGeek's business was built on the intentional

11

solicitation, optimization, utilization, and monetization of child pornography (K.A.

12

¶¶ 43-44, 61, 69-71, 77, 83, 85, 88-100, 116, 126-129, 133, 239, 292); (2) that

13

MindGeek's human content formatters reviewed each and every video prior to

14

posting it on its sites, including each image and video of each of the Plaintiffs, which

15

creates strict liability as to their knowledge of the victim's ages, K.A. ¶¶ 70, 232,

16

313; N.L. ¶¶ 70, 232, 313; L.T. ¶¶ 70, 232, 314; T.C. ¶¶ 70, 232, 314; X.N. ¶¶ 70,

17

232, 313; N.Y. ¶¶ 70, 232, 314; J.C. ¶¶ 70, 232, 313; W.L.  ¶¶ 70, 232, 312; C.S. ¶¶

18

70, 232, 314; S.O. ¶¶ 70, 232, 313; L.S. ¶¶ 70, 232, 314; W.P. ¶¶ 70, 232, 313; A.K.

19

¶¶ 70, 232, 312; J.L. ¶¶ 68, 230, 312, 318;  *Doe v. MindGeek USA Inc.*, 574

20

F.Supp.3d 760, 774 (C.D. Cal. 2021) (knowledge element was satisfied where

21

MindGeek's moderators "review and approve each and every video posted to their

22

platforms, including those depicting Plaintiff, specifically evaluating whether the

23

content contains illicit content, such as child pornography, and intentionally allow

24

some videos to be posted anyway"); *United States v. Sparks*, 659 F.Supp.3d 1056,

25

1059-1061 (N.D. Cal. 2023) (TVPRA imposes strict liability as to the victim's age

26

so long as the defendant had a reasonable opportunity to observe the victim even if

27

he never did so); (3) many of Plaintiffs' images and videos contained clear

28

indications that they were minors, including titles, tags, and comments (*infra* Section

II); and (4) MindGeek systemically reuploaded disabled content under different user names and titles, including in the case of Plaintiffs. K.A. ¶ 46, 318; N.L. ¶¶ 46, 318, 321; L.T. ¶¶ 46, 318-319; T.C. ¶¶ 46, 316, 318; X.N. ¶¶ 46, 316-317; N.Y. ¶¶ 46, 316, 321, 327; J.C. ¶¶ 46, 319; W.L. ¶¶ 46, 321; C.S. ¶¶ 46, 317-318; S.O. ¶¶ 46, 316, 319; L.S. ¶¶ 46, 317-318; W.P. ¶¶ 46, 314, 317; A.K. ¶¶ 46, 317, 320; J.L. ¶¶ 44, 320, 327. At the very least, Plaintiffs are entitled to discovery concerning MindGeek's knowledge of Plaintiffs' CSAM images on its tubesites. *See Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 608 (9th Cir. 2019) (factual questions concerning actual or constructive knowledge are not appropriate for resolution on dispositive motions); *see also Barnett v. Cnty. of Los Angeles*, 2021 WL 826413, at *8 (C.D. Cal. Mar. 4, 2021) (same).

In any event, Plaintiffs need not allege actual knowledge. Section 1595 only requires a showing of constructive knowledge, which courts have held is a negligence standard. *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 965 (S.D. Ohio 2019). As detailed in the *Fleites* opposition, MindGeek's constructive knowledge may be inferred from: (1) the sheer volume of child pornography and illegal content on its tubesites, despite its repeated public claim that a human moderator review every image prior to upload (K.A. ¶¶ 70-71, 106, 232, 313, 327); (2) thousands of titles, tags, and categories describing the content as child porn and nonconsensual (K.A. ¶¶ 43-44, 50, 77, 80, 83, 86, 115-116, 126-128, 131-133); (3) MindGeek's abject failure to implement the most basic protections against the upload and monetization of illegal content and their failure to use age-verification technology (K.A. ¶¶ 69, 70-72, 108-109); and (iv) MindGeek's established policy of ignoring red flags for illegal content until an image received more than fifteen such flags. K.A. ¶ 239; *see also* Fleites Opp. at 17-19; *M.A.*, 425 F.Supp.3d at 968 (failure to take steps to combat a known problem in operations can rise to the level of willful blindness or negligence).

2.      Colbeck and Redwood are Beneficiaries of a Trafficking Venture

Each Plaintiff also asserts claims for beneficiary liability against Colbeck and Redwood arising from their investment, expansion, and operation of the MindGeek business, and the enormous profits they reaped from that relationship. As discussed in *Fleites*, both Colbeck and Redwood had a continuous business relationship with MindGeek through which they each exercised significant control over the companies' policies, procedures, and executives, and were entitled to vast disclosure and information rights. *See* Fleites Opp. at 20-30; K.A. ¶¶ 252, 268-270.[10]

(a)      Colbeck and Redwood Participated in a Commercial Venture with MindGeek

As detailed in Plaintiffs' complaints and the *Fleites* opposition, Colbeck and Redwood entered into the first financing agreement with MindGeek in 2011. K.A. ¶¶ 250-251. ████████████████████████████████ ████████████████████████ Fleites Opp. at 21. The 2011 loan was fully secured by all of Manwin's assets. Despite this, the effective interest rate was in excess of 20%, reflecting the unavailability of any other capital due to the well-known illicit nature of the business. K.A. ¶ 252. The high interest rate and exorbitant other debt costs consumed all of the business' earnings for years. As a practical matter, the Colbeck

---

[10] As in *Fleites*, Colbeck, Bergmair, Antoon and Tassillo accuse Plaintiffs of nonpermissive group pleading. Colbeck Mot. at 15-16; Bergmair Mot. at 14; Antoon/Tassillo at 20. But Plaintiffs allege the role of each defendant which is all that is required at the pleading stage. *See Heller v. NBCUniversal, Inc.*, 2016 WL 6573985, at *3 (C.D. Cal. Mar. 30, 2016) (complaint plausibly alleged all twelve defendants were responsible for false publications); *SAG-AFTRA v. LABC Prods., LLC,* 2023 WL 11878288, at *3 (C.D. Cal. Oct. 20, 2023) ("Group pleading is not fatal if the complaint still gives defendants fair notice of the claims against them.") (internal quotation omitted). Moreover, where, as here, Bergmair, Antoon, and Tassillo are alleged to be alter egos of the corporate MindGeek entities, *infra* Section VIII.A, there is no prohibition against group pleading since the claim implies multiple defendants are the same. *United States ex rel. Ginger v. Ensign Grp.*, 2022 WL 4110166, at *3 (C.D. Cal. Mar. 10, 2022).

syndicate owned Manwin and during the term of the financing had the ability to control virtually all aspects of the business and receive the vast majority of its earnings. ¶ K.A. 252. ████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████

███ K.A. ¶¶ 252, 258, 267-268, 270; Fleites Opp. at 21-25. ████

██████████████████████████████████

██████████████████████████████████

██████████████████████████████

████████████████████████████████████████

█████████████ K.A. ¶¶ 268-269. █████████████████ is thoroughly detailed in the *Fleites* briefing. Fleites Opp. at 21-25.

█████████████████████████████████

█████████████████████████████████████

███████. K.A. ¶ 258; Fleites Opp. at 23. ████████████████

█████████████████████████████████████

██████████████████████████████████

██████████████████████████████████████████. Fleites Opp. at 23-24. In 2018, ███████████████████████████

████████████████████████████████

████████████████████████████

██████████████████████████████████████

██████████████████. Fleites Opp. at 23-24.[11]

---

[11] As explained above, certain allegations concerning Redwood's and Colbeck's involvement that were included in the *Fleites* complaint are not specifically included



. Fleites Opp. at 24-25.

. K.A. ¶ 271.

Fleites Opp. at 25.

As discussed above (*supra* Section I.A) and in *Fleites*, these allegations are more than sufficient to establish Colbeck's and Redwood's assistance, support, and

_____

in the Related Actions because at the time those actions were filed MindGeek was asserting improper blanket confidentiality designations over all information produced in *Fleites*. Plaintiffs contend that the allegations in the Related Actions and facts established through the documentary evidence Redwood and Colbeck attached to their motions are sufficient to demonstrate Redwood's and Colbeck's exercise of control over the MindGeek enterprise, intent to conspire, and knowledge of the illegal activities. But in the event the Court deems these allegations insufficient, Plaintiffs refer the Court to the additional evidence in the *Fleites* complaint which the parties agreed may be used for purposes of these Related Actions. *See supra* n. 2. In the event, the Court declines to consider those allegations in connection with defendants' Motions, Plaintiffs seek leave to replead to include these allegations in the Related Actions which should be freely granted. *See infra* n. 56.

facilitation of the acquisition, expansion, and operation of MindGeek's business for nearly a decade. *See* Fleites Opp. at 25-27, citing *Salesforce*, 76 F.4th at 559-560 (Salesforce participated in a venture with Backpage where Salesforce entered into multiple lucrative contracts through which it provided Backpage with software solutions and operational support that facilitated and enabled Backpage's commercial growth).  Moreover, these allegations plead a "continuous business relationship" from which the court may infer "participation" under section 1595. *See* Fleites Opp at 25.  At a minimum, the extent of Redwood's and Colbeck's ███ ███████████████████████ raise genuine issues of fact that cannot be resolved without discovery. *Cook, Perkiss and Liehe, Inc. v. N. California Collective Serv. Inc.*, 911 F.2d 242, 245 (9th Cir. 1990) ("It is well-established that questions of fact cannot be resolved or determined on a motion to dismiss for failure to state a claim upon which relief can be granted.").

As in *Fleites*, Colbeck's and Redwood's main defense is that the absence of any allegations that they knew Plaintiffs or Plaintiffs' direct traffickers is fatal to establishing their participation in a venture with those traffickers or continuous business relationship.  Colbeck Mot. at 19; Redwood Mot. at 24-25.  But, as set forth in *Fleites* and *supra* Section I.A, neither knowledge of Plaintiffs' street-level traffickers or knowledge of Plaintiffs' specific trafficking is required to state a claim for beneficiary liability. *see* Fleites Opp. at 10; *see also J.C.*, 2020 WL 6318707, at *7 (participation was adequately alleged as to corporate franchisors even though they never interacted with street level traffickers where the corporate franchisors knew about the trafficking at their brand hotels from reporting requirements); *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F.Supp.3d 959, 968-71 (corporate franchisors "participated in a venture" where plaintiff alleged brand hotels rented rooms to people it knew or should have known where engaged in sex trafficking and corporate franchisors failed to implement policies to combat knowing sex-trafficking problem at their branded hotels).  Plaintiffs need only plead Colbeck's and

1  Redwood's participation in a commercial venture with MindGeek, which they

2  plainly do here.  *See* Fleites Opp. at 21-27; K.A. ¶¶ 252, 259-271.

3              (b)    Colbeck and Redwood Had Knowledge that the Venture
4                     Violated the TVPRA

5        Each Plaintiff pleads that Colbeck and Redwood had full knowledge that

6  MindGeek was purposely soliciting, proliferating, and monetizing child pornography

7  and other non-consensual content prior to entering into the ███████████████

8  ████████████████████████████████████████████████████. K.A.

9  ¶¶ 259-271; Fleites Opp. at 28-30. As described in *Fleites*, both Colbeck and

10  Redwood conducted extensive due diligence of the MindGeek enterprise prior to

11  each financing agreement (Fleites Opp. at 28; K.A. ¶¶ 259-266), ████████████

12  ████████████████████████████████████████ (Fleites Opp. at

13  28-29; K.A. ¶¶ 268-269); were aware of the drumbeat of public reports of illegal

14  content on MindGeek's sites (K.A. ¶¶ 161-194); ████████████████████

15  ██████████████████ (K.A. ¶ 260).  These allegations more than satisfy

16  Plaintiffs' burden at this stage.  These allegations also constitute constructive

17  knowledge sufficient to plead a civil violation of the TVPRA. *Deutsche Bank*, 671

18  F.Supp.3d at 407 (JP Morgan's knowledge of Epstein's convictions for sex crimes

19  and numerous account red flags were sufficient to infer constructive knowledge);

20  *M.L. v. craiglist Inc.,* 2020 WL 5494903, at *5 (W.D. Wash. Sept. 11, 2020)

21  (applying a negligence, constructive knowledge standard).

22        The only argument proffered by Colbeck and Redwood on this issue is that

23  there are no allegations demonstrating actual or constructive knowledge of each

24  individual Plaintiffs' images and videos. Colbeck Mot. at 21; Redwood Mot. at 26-

25  28.[12] As discussed above the majority of courts that have addressed section 1595's

26

27  [12] The Ninth Circuit's decision in *Ratha I* cited by Colbeck does not address or adopt the victim-specific standard of knowledge. In *Ratha I*, the Ninth Circuit determined

28

constructive-knowledge requirement have determined that the text of the statute only

requires constructive knowledge that a venture generally has violated section 1591.

*Supra* Section I.A; *Salesforce*, 76 F.4th at 558.[13] Redwood's reliance on *B.M.*

(Redwood Mot. at 25, 27-28) is unavailing.  In *B.M.* the complaint failed to allege

any facts as to how the corporate franchisors knew or should have known of sex

trafficking at their branded hotels, pleading only the knowledge of the branded hotel

defendants. *B.M.*, 2020 WL 4368214, at *5-6 (N.D. Cal. July 30, 2020). At the very

least, there are questions of fact as to what Colbeck and Redwood did know that

requires discovery.[14] *Lundy v. Union Carbide Corp.*, 695 F.2d 394, 397 (9th Cir.

---

that plaintiffs had only offered evidence of knowledge of labor abuses in the Thai
shrimp industry generally and that such evidence was insufficient to establish
knowledge of forced labor at a specific company. *Ratha v. Phatthana Seafood Co.*,
35 F.4th 1159, 1176-1177 (9th Cir. 2022). Unlike in *Ratha*, Plaintiffs' allegations
are not based on allegations of sex trafficking in the online pornography industry as
a whole but rather pertain specifically to MindGeek and its business model.
Likewise, Redwood's reliance on *B.M.* (Redwood Mot. at 25, 27-28) is similarly
unavailing because the court did not adopt a victim-specific knowledge requirement
but merely held that the complaint failed to allege the corporate defendants'
knowledge of the specific venture at their branded hotels. *See B.M.*, 2020 WL
4368214, at *5-6 (N.D. Cal. July 30, 2020).

[13] Colbeck and Visa's reliance on *Red Roof Inns* is misplaced. In *Red Roof Inns*,
plaintiffs had alleged that the corporate franchisors had participated in a sex
trafficking venture with hotel employees, management, owners, and sex traffickers.
*Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 725-726 (11th Cir. 2021). Defining
"venture" to mean a "common undertaking or enterprise involving risk and potential
profit," the court found that the plaintiffs' allegations did not adequately allege that
the corporate franchisors had engaged in a common undertaking to engage in sex-
trafficking. *Id*. at 727. Here, Plaintiffs have alleged that the Defendants engaged in a
commercial venture to expand the MindGeek enterprise. It is that commercial
venture that violated the TVPRA.

[14] As thoroughly described in Plaintiffs' complaints, numerous news outlets
provided specific reporting on the proliferation of CSAM and non-consensual
content on MindGeek's websites both before 2018 (K.A. ¶¶ 161-176, 179-186) and
after (K.A. ¶¶ 188-195). This enterprise-specific reporting differs from just general

---

1982) (factual dispute as to whether there was actual or constructive knowledge was an issue left to the jury).

(c)    Colbeck and Redwood Knowingly Benefited from their Participation in the Venture

Plaintiffs' complaints plead that Colbeck and Redwood each earned hundreds of millions of dollars in profit from their partnership with the MindGeek entities and their participation in the MindGeek venture by way of exorbitant interest rates on the financing they provided. K.A. ¶¶ 247-252, 267.  This more than satisfies the benefit requirement.[15] As discussed above, there is no requirement to establish a "causal relationship" between the defendant's conduct and its receipt of the benefit (*Supra* Section I.A; *B.M. v. Wyndham Hotels & Resorts, Inc.*, 2020 WL 4368214, at *4 (requiring a causal connection between the benefit and participation would improperly "read[] a requirement for "actual knowledge" of criminal sex trafficking into the civil statute, reading out the "should have known" language.").

3.    Visa Is The Beneficiary Of A Trafficking Venture

(a)    Visa Participated in a Commercial Venture with MindGeek

As detailed in *Fleites*, Visa "knowingly provided [MindGeek] the tool used to complete a crime" in the form of its payment processing network. Fleites Opp. at 32-33 (citing Fleites, Dkt. No. 166 at 25). Visa's payment processing network was central to MindGeek's ability to monetize the illicit content on its tubesites and thus

---

reporting on sex-trafficking in the hospitality industry that is often references in the various hotel cases. And, in 2016, well before Colbeck's exited its financing agreement, Pornhub partner-channel GDP and its founders were sued by twenty-two women and minors for trafficking. K.A. ¶¶ 177-178.

[15] Colbeck and Redwood assert that there is no proof that MindGeek could not have utilized other sources of financing. Colbeck Mot. at 11; Redwood Mot. at 13. But there is little other explanation for why MindGeek would have agreed to exorbitant interest rates at 20% that consumed the enterprise's profits for several years. K.A. Compl. ¶ 252. Plaintiffs are entitled to discovery on the issue.

1    central to its growth and success. K.A. ¶ 272, 334-335; Fleites Opp. at 33-34.

2    Consequently, Visa had the ability to force MindGeek to change its practices, as

3    evidenced by MindGeek's removal of nearly 10 million videos in 2020, but Visa

4    chose not to use this leverage.[16] K.A. ¶ 272, 334; Fleites Opp. at 34-35.

5         Visa argues that it could not have participated in the venture because it did not

6    play "a direct, active role" in the operation or management of the venture. Visa Mot.

7    at 14. Again, this is a misstatement of the law and a misapplication of the district

8    court decision in *Ratha*. As discussed above, the district court's definition of

9    "participation" in *Ratha* was specific to section 1589 liability and cannot be grafted

10   onto section 1591. Nor does this interpretation have any basis in the statutory

11   language of Sections 1591 and 1595. *Supra* Section I.A. The other cases Visa cites,

12   both cases that did involve alleged violations of sections 1591 and 1595, do not

13   support the requirements Visa seeks to impose. In *B.M.*, the court explicitly rejected

14   the definition of "participation in a venture" now promoted by Visa, with the court

15   stating that B.M. was "not required to allege an overt act" and that such a

16   requirement would void the constructive knowledge standard in section 1595. *B.M.*,

17   2020 WL 4368214, at *3.  The court failed to find that the hotel franchisors had

18   participated in a venture because, as in *Red Roof Inns*, the plaintiff alleged that the

19   franchisors were engaged in a venture to commit sex-trafficking. *B.M.*, 2020 WL

20   4368214, at *5; *see also Red Roof Inns*, 21 F.4th at 726-27 (finding that plaintiffs

21

22

23

24

---

25   [16] Visa again argues that it did not have a direct contractual relationship with

26   MindGeek (Visa Mot. at 14-15). As discussed in *Fleites*, this argument was rejected
     by Judge Carney and is a non-sequitur. Visa retained ultimate control over who it

27   recognized as a merchant as evinced by Visa's December 2020 decision to

28   temporarily suspend all merchant services to MindGeek entities. Fleites Opp. at 34.

had failed to provide "plausible allegations that the franchisors took part in the

common undertaking of sex trafficking.").[17]

    (b)   <u>Visa Had Knowledge that the Venture Violated Section
1591</u>

       In challenging the knowledge element, Visa relies on the same argument as

Colbeck and Redwood, asserting that it cannot be liable for beneficiary liability

because it had no specific knowledge of any of the Plaintiffs, and appeals to Judge

Carney's prior decision in *Fleites* dismissing plaintiff's beneficiary liability as to

Visa. Visa Mot. at 15-16. But in that same order, Judge Carney found that plaintiff

had easily alleged that Visa knew that MindGeek's sites were "teeming with

monetized child porn" and that despite this knowledge, Visa "explicitly agreed with

MindGeek to process the financial transactions" through which MindGeek profited

from the venture. Fleites, ECF. No. 166 at 23. As Judge Carney stated, "[i]f Visa

knew MindGeek's sites contained a wealth of child porn and that MindGeek

regularly placed ads alongside its videos…then it knew that MindGeek was

regularly committing violations of section 1591(a)(2) by participating in hundreds or

thousands of sex trafficking ventures and benefitting from such participation." *Id.* at

23-24. Plaintiffs' complaints here similarly allege Visa's actual and constructive

knowledge through Visa's own due diligence, public reporting, and direct outreach

to Visa from activists. *See* K.A. ¶¶ 274-285, 287-291, 294. At a minimum, Plaintiffs

have alleged willful blindness. Fleites Opp. at 36.

---

[17] In *Fleites*, plaintiff articulated that it is within this court's discretion to revisit
Judge Carney's 2022 order dismissing the beneficiary liability claim against Visa.
Fleites Opp. at 31-32. Plaintiffs here have filed separate, distinct complaints and
therefore are not bound by Judge Carney's prior order as to Visa. *Askins v. U.S.
Dep't of Homeland Sec.*, 899 F.3d 1035, 1042 (the law of the case doctrine provides
that a court may decline to revisit its own rulings *in the same case* where the issue
has been previously decided and is binding on the parties – such as a final decree or
judgment) (emphasis added).

In the time since Judge Carney's decision in *Fleites*, both circuit-level and district courts have held that section 1595 does not require knowledge of a specific victim. The "majority of courts" now hold the same. *Salesforce*, 76 F.4th at 558; *Supra* Section I.A. In light of this intervening case law, the facts alleged by Plaintiffs and the factual findings in Judge Carney's order warrant a different outcome as to Plaintiffs' beneficiary liability claim against Visa.[18] Fleites Opp. at 30-32, 35-36.

(c)   Visa Knowingly Benefitted from Its Participation in the Venture

Visa does not dispute that it knowingly benefitted from its recognition of MindGeek as a merchant, nor could it. By permitting MindGeek to use its payment processing network, Visa collected millions of dollars in fees from the MindGeek entities and a significant portion of those fees came from illegal content. Fleites Opp. at 36; K.A. ¶¶ 8, 286, 337.

**B.   Plaintiffs Plead Claims for Conspiracy Liability Under the TVPRA As To Each Defendant**

Section 1594(c) of the TVPRA establishes criminal liability against those who "conspires with another to violate section 1591." 18 U.S.C. § 1594(c). Since 2008, section 1595 of the TVPRA has provided a claim for civil liability to individuals who are "victim of a violation of this chapter…against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture…" 18 U.S.C. § 1595. This "chapter" includes section 1594. "The

---

[18] Visa relies on *Red Roof Inns*, which for the reasons described above, is inapplicable here. *Supra* at 22, n.13. Visa also notes that *Red Roof Inns* was "cited with approval" in *Ratha II*. However, the Ninth Circuit's citation to *Red Roof Inns* in *Ratha II* was to note the Eleventh Circuit's interpretation of the "knowingly benefits" requirement as "requiring a plaintiff to allege that the defendant knew it was receiving some value from participating in the alleged venture." *Ratha v. Rubicon Resources, LLC*, 111 F.4th 946, 963 (9th Cir. 2024) (quoting *Doe #1 v. Red Roof Inns, Inc.,* 21 F.4th 715 (11th Cir. 2021)). The reference had no bearing on section 1595's constructive knowledge requirement.

essential elements of a conspiracy are (1) an agreement to accomplish an illegal objective, (2) the commission of an overt act in furtherance of the conspiracy, and (3) the requisite intent necessary to commit the underlying offense." *U.S. v. Matta-Ballesteros*, 71 F.3d 754, 765 (9th Cir. 1995). The agreement may be inferred where the defendant "entered into a joint enterprise with consciousness of its general nature and extent." *Fleites*, ECF No. 166 at 23 (citing *Paguirigan v. Prompt Nursing Emp. Agency LLC,* 286 F.Supp.3d 430, 440 (E.D.N.Y. 2017)); *see also Transgo, Inc. v. Ajac Transmission Parts Corp*., 768 F.2d 1001, 1020 (9th Cir. 1985) (quoting *Am. Tobacco Co. v. United States*, 328 U.S. 781, 809-810 (1946)) (agreement to conspire may be inferred from "unity of purpose or a common design and understanding, or the meeting of the minds in an unlawful arrangement."). The requisite intent may also be inferred from circumstantial evidence of knowledge and an act in furtherance of the conspiracy. *See United States v. Calaway*, 524 F.2d 609, 614 (9th Cir. 1975). And, as Judge Carney previously properly held as to Visa, "[a]t this early stage of the proceedings, before Plaintiff has had any discovery from which to derive [defendants'] state of minds, the Court can comfortably infer [defendants] intended to help MindGeek monetize child pornography from the very fact that [defendants] continued to provide MindGeek the means to do so and knew MindGeek was indeed doing so." Fleites, ECF No. 166 at 25.

MindGeek Defendants fail to offer any meaningful response to Plaintiffs' claim that they engaged in a conspiracy to violate section 1591 in violation of section 1594(c). Colbeck, Redwood, and Visa restate the same challenges to conspiracy liability set forth in their motions to dismiss in *Fleites*. Colbeck Mot. at 21-25; Redwood Mot. at 29-33; Visa Mot. at 17. These arguments fail for the reasons stated in Section II of the Omnibus Opposition to Defendants' Motions in

*Fleites* and Plaintiffs incorporate those arguments by reference here. Fleites Opp. at
36-46.[19]

### C.    Plaintiff J.L.'s Trafficking Claims are Timely Pled

The MindGeek Defendants assert that Plaintiff J.L.'s TVPRA claims are
barred by the statute of limitations because more than 10 years have passed between
2008, when J.L. turned 18, and August 20, 2024, the date on which J.L. filed her
complaint. MG Mot. at 13. The TVPRA requires that all claims be brought within 10
years after either the cause of action arose or the victim reaches 18 years of age,
whichever is later. 18 U.S.C. 1595(c). Claims should not be dismissed as time-
barred on a motion to dismiss "unless it appears beyond doubt that the plaintiff can
prove no set of facts that would establish the timeliness of the claim." *Supermail
Cargo, Inc. v. United States*, 68 F.3d 1204, 1207 (9th Cir. 1995). J.L has alleged that
in 2007, she was solicited, recruited, enticed, and coerced into recording sex acts by
GDP, MindGeek's largest content partner at that time. J.L. ¶ 309. The video
depicting J.L. was then edited, monetized, commercialized, and promoted on
MindGeek's websites through its contractual agreement with GDP. J.L. ¶ 309, 317.
But MindGeek's exploitation of J.L. did not end there. From 2011 through 2020, the
video depicting J.L. proliferated on MindGeek's sites, including Pornhub, and was
downloaded and re-uploaded across MindGeek's sites. J.L. ¶ 320. Videos of J.L.
continued to be monetized on MindGeek's tubesites through at least December
2020. J.L. ¶ 323.

December 2020 is thus the earliest time when the statute of limitations on
J.L.'s TVPRA claims could have begun to run.  Contrary to MindGeek's contention,
the alleged TVPRA violations are the monetization of Plaintiffs' known CSAM (J.L.

---

[19] MindGeek's recruitment, solicitation, and enticement of Plaintiffs gives rise to a
claim for direct liability under Section 1591(a)(1), *see* Fleites Opp. at n.12,
particularly in the case of J.L. who was recruited and solicited by MindGeek through
its partner channel GDP.  J.L. ¶¶ 310-323.

¶¶ 333-337), not the sex act or the creation of the video.  As Judge Carney noted, the underlying crime that MindGeek committed is the monetization of child pornography. Fleites, ECF No. 166 at 22, n.13, 23-24, 25. Thus, each time J.L.'s videos were accessed, downloaded, reuploaded, and thereby monetized, a new cause of action accrues. *See Samsung Electronics Co., Ltd. v. Panasonic Corp*., 747 F.3d 1199, 1202-1203 (9th Cir. 2014) (each overt act during the limitations period accrued a new cause of action); *IOSM, Inc. v. Martinez*, 2020 WL 1666567, at *3 (S.D. Cal. Apr. 3, 2020) (under the continuous accrual doctrine, a series of wrongs or injuries may be viewed as each triggering its own limitations period).

Moreover, MindGeek's repeated monetization and repeated creation, commercialization, and distribution of child pornography tolls the statute of limitations until the conclusion of that illegal pattern under the continuing tort doctrine. *See J.M. v. Choice Hotels Intern., Inc.*, 2022 WL 10626493, at *6 (E.D. Cal. Oct. 18, 2022) (statute of limitations did not begin to run on plaintiff's claims under the TVPRA until the last time she was trafficked under the continuing tort doctrine); *S.R. v. Wyndham Hotels & Resorts, Inc.*, 2024 WL 3226126, at *2 (S.D. Ohio June 28, 2024) (trafficking claims are "precisely the sort" to which the "continuing violation" doctrine should apply as trafficking injuries "arise[] from a 'numerous and continuous series of events'") (citing *Ali v. Khan*, 336 F.Supp.3d 901, 910 (N.D. Ill. 2018)).[20]

## II.    PLAINTIFFS PLEAD CLAIMS FOR VIOLATIONS OF CHILD SEXUAL EXPLOITATION LAWS

Each Plaintiff was a minor at the time that MindGeek reviewed, transformed, optimized, and disseminated videos and images of them on Pornhub and its other tubesites. K.A. ¶ 311-13; N.L. ¶¶ 311-13; L.T. ¶¶ 311-14; T.C. ¶¶ 311, 313-14; X.N.

---

[20] Pursuant to this Court's order (ECF No. 54), Plaintiffs incorporate by reference the arguments in Sections I and II in the Fleites Opposition, which are equally applicable here.

¶¶ 311-13; N.Y. ¶¶ 311-14; J.C. ¶¶ 311-13; W.L. ¶¶ 311-12; C.S. ¶¶ 311-14; S.O. ¶¶ 311-13; L.S. ¶¶ 311-14; W.P. ¶¶ 311-13; A.K. ¶¶ 311-12; J.L. ¶¶ 309-312, 315, 318. MindGeek's knowing receipt, distribution, transport, reproduction, possession, advertisement, and commercialization of these images and materials violated federal Child Sexual Exploitation laws under 18 U.S.C. §§ 2252, 2252A, and 2255.[21]

## A.    MindGeek Defendants Knew Plaintiffs Were Minors

As in *Fleites*, the MindGeek Defendants do not dispute that Plaintiffs have pled they possessed child pornography. MG Mot. at 14-15. But MindGeek asserts that Plaintiffs have failed to plead that the MindGeek Defendants had knowledge that Plaintiffs were minors in the videos and images posted to their tubesites. *Id*. MindGeek has repeatedly, publicly claimed that its content "moderators" reviewed and approved every video prior to upload. *See e.g.*, K.A. ¶¶ 70, 201, 232, 313. As discussed in *Fleites*, MindGeek's actual knowledge may be inferred from the physical appearance of Plaintiffs in their videos. Fleites Opp. at 47;[22] *United States v. Rearden*, 349 F.3d 608, 614 (9th Cir. 2003); *United States v. Welton*, 2009 WL 4507744, at *10 (C.D. Cal. Nov. 30, 2009) (quoting *United States v. Rearden*, 349 F.3d 609, 613 (9th Cir. 2003) ("The trier of fact may conclude beyond a reasonable doubt that the visual depictions are of actual children were "it is obvious from the pictures themselves that they are of children."). Many of the Plaintiffs' images and videos also carried other indicators that the images depicted minors, including the video titles and tags, and in some instances, Pornhub was explicitly informed by Plaintiffs that the images were child pornography. N.L ¶¶ 312, 316 (video was titled "Young Stepsister Stripped" and upon discovery of video, N.L. informed Pornhub

---

[21] Pursuant to this Court's Order (ECF No. 54), Plaintiffs incorporate by reference the arguments in Section III in the Fleites Opposition, which are equally applicable here.

[22] Plaintiffs fully incorporate by reference the arguments made in *Fleites*, which are also relevant here. Fleites Opp. at 46-48.

that she was a minor in the video); T.C. ¶¶ 311, 315 (video was titled "Young Girl Sucks D*** For Money" and upon discovery of video law enforcement was contacted); X.N. ¶ 312 (video title included the phrase "school girl"); N.Y. ¶¶ 316, 318 (law enforcement was involved in having the original video removed but nevertheless the photographs and videos were reuploaded to Pornhub and viewed hundreds of thousands of times; N.Y. repeatedly made requests for removal each time content was reuploaded but videos remained on Pornhub through at least December 2020); W.L. ¶¶ 311, 316-17 (video title included the phrase "Korean teen"; W.L. initiated multiple takedown requests but content continued to proliferate on Pornhub); C.S. ¶¶ 311, 312 (images showed C.S. in her middle school uniform and videos contained the title "Thai Student"; C.S. contacted Pornhub to request that the images be removed but content remained on Pornhub until at least the filing of this complaint); A.K. ¶¶ 311, 315-16 (video title indicated A.K. was in high school; traffickers initiated takedown request five-months before A.K. discovered the video but Pornhub ignored their requests, only removing the video following law enforcement subpoena); J.L. ¶¶ 310-12, 315 (MindGeek's content partner, GirlsDoPorn, knew prior to filming J.L. that she was underage; video was then tagged with tags for "young teen" and "Asian teen"). Moreover, MindGeek's standard practice is to retain on its servers all videos ever uploaded onto its tubesites. *See e.g.*, K.A. ¶¶ 68, 101, 193, 197. Accordingly, MindGeek continues to possess Plaintiffs' child porn images to this day.[23] The Individual Defendants, through their control and involvement over the business, had full knowledge of the nonconsensual content that proliferated on MindGeek's sites and its impact on revenue. K.A. ¶¶ 2, 17, 111-12.

---

[23] As discussed in *Fleites*, this Court has previously found these facts sufficient to establish knowledge under Sections 2252 and 2252A. Fleites Opp. at 48.

At the very least, MindGeek chose to ignore these obvious indications of criminality in order to integrate the content into its SEO algorithm and profit from it. As in *Fleites*, MindGeek concedes that the knowledge requirement may be satisfied through a showing of willful blindness. MG Mot. at 14-15; Fleites MG Mot. at 17-19. "[A] willfully blind defendant is one who "takes deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts." *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769-770 (2011). Plaintiffs' complaints each allege that in the face of such explicit indicators of CSAM, MindGeek took deliberate actions to avoid identifying and removing such known CSAM, including that depicting Plaintiffs'. As discussed in *Fleites*, MindGeek's "moderators" were chronically understaffed (K.A. ¶ 76) and not actually tasked with or empowered to weed out CSAM (K.A. ¶¶ 70, 77-79, 81-82), MindGeek refused to employ technology that could effectively screen for child pornography (K.A. ¶¶ 71, 108-109), MindGeek did not enforce its Terms of Service requiring users to be 18 (K.A. ¶ 73), actively avoided investigating content that users or victims flagged as illegal (K.A. ¶¶ 83, 91, 91), and instituted a policy to not review flagged content unless it had been flagged over 15 times (K.A. ¶¶ 239, 240). *See also* Fleites Opp. at 48. MindGeek's deliberate choice to ignore the high probability that it was disseminating and profiting from CSAM satisfies the standard for willful blindness. *S.R. Wyndham Hotels & Resorts, Inc.*, 2024 WL 3227029, at *5 (S.D. Ohio June 28, 2024) (failure to implement policies sufficient to combat a known problem in one's operations constitutes willful blindness); *see also United States v. Salman*, 618 F. App'x 886, 890 (9th Cir. 2015) (where defendant had "ample reasons" to make further inquiry and failed to do so, there was a reasonable inference that he deliberately refrained from asking).

At the very least, these allegations create a question of fact about what MindGeek internally knew about the age of Plaintiffs in these videos. *See supra* 29-32.

## III.    PLAINTIFFS' CLAIMS ARE WITHIN THE TERRITORIAL REACH OF FEDERAL LAWS

### A.    Plaintiffs' Claims Are Within the Territorial Reach of the TVPRA

Visa, Redwood, Colbeck, Antoon, Tassillo, MG Freesites, MindGeek USA, MG Premium, MG Global Entertainment, and 9219-1568 Quebec do not dispute that the U.S.-based Plaintiffs' claims are within the territorial reach of the TVPRA. Redwood, Antoon, and Tassillo assert that the TVPRA claims asserted by the non-U.S.-based Plaintiffs are an improper exterritorial application of the statute. Redwood Mot. at 19-20, 28-29; Antoon/Tassillo Mot. at 28-31. In addition, defendants MindGeek S.a.r.l. and Bergmair argue that the statute does not cover any claims asserted against them by any Plaintiff because they are not "present in" the United States. MG. Mot. at 36; Bergmair Mot. at 16.  Both arguments fail.

### 1.    The Civil Remedy Provision of the TVPRA Applies Extraterritorially

When the TVPRA was initially enacted in 2000, the statute only imposed criminal liability. *United States ex rel. Hawkins v. ManTech Int'l Corp*., 2024 WL 4332117, at *8 (D.D.C. Sept. 27, 2024). Some of the criminal offenses applied extraterritorially by their own terms. *Id*. Since 2000, Congress has amended the statute several times, including to provide a civil remedy in 2003 and in 2008 to further expand the extraterritoriality of specific offenses that were not extraterritorial on their own terms where the alleged offender is "a national of the United States or an alien lawfully admitted for permanent residence" or "is present in the United States". 18 U.S.C. § 1596; *ManTech Intern. Corp*., 2024 WL 4332117, at *9. Defendants argue that the 2008 extraterritoriality amendments set forth in section 1596 do not apply to the claims brought pursuant to the civil remedy provision of the TVPRA under section 1595. Antoon/Tassillo Mot. at 28-30; Redwood Mot. at 28; MindGeek S.a.r.l. at 36.

In considering whether a statute applies extraterritorially, courts apply the two-step analysis outlined in *RJR Nabisco*. *See RJR Nabisco v. Eur. Cmty*., 579 U.S.

325, 336 (2016). First, the court looks to whether the statute gives any clear indication of extraterritorial effect. If it does, then the statute applies extraterritorially. If it does not, then the courts must go to the second step of the analysis, which asks whether the claim involves a permissible domestic application of the statute. *Id*. At this second step, the court must analyze the "focus" of the statute and whether the conduct relevant to the statute's focus occurred in the United States. *Id*. at 337. Applying these principles, the court in *RJR Nabisco* analyzed the federal RICO statute and concluded that RICO's criminal provisions applied extraterritorially but its civil cause of action did not. *Id*. at 340, 344.

Citing the *RJR* holding, MindGeek S.a.r.l., Antoon, and Tassillo assert that the extraterritoriality provision of the TVPRA similarly only applies to the criminal provisions of the TVPRA and not the civil right of action set forth in section 1595. MG Mot. at 36; Antoon/Tassillo Mot. at 29-30. But the analysis in *RJR Nabisco* hinges on the unique structure of the RICO statute. Under that statute, a criminal offense under Section 1962 requires the commission of one or more separate predicate offenses. Only some of those predicate offenses apply extraterritorially. The text of section 1962 itself says nothing about its extraterritorial application but the *RJR* court determined that through Congress' incorporation of extraterritorial predicates, certain offenses under Section 1962 could have extraterritorial application, and therefore a violation of Section 1962 could be based on racketeering conduct committed abroad. *See ManTech* 2024 WL 4332117, at *10; *RJR Nabisco*, 579 U.S. at 339 (extraterritorial application of Section 1962 only applied "to the extent that the predicates alleged in a particular case themselves apply extraterritorially"). The application of extraterritoriality to Section 1962 therefore was entirely derivative of the predicate offenses and did not rely on the RICO statute itself. The Court then determined it could not read the derivative extraterritoriality into the civil cause of action because there was no clear indication that the civil cause of action was meant to apply abroad and that Congress had signaled that the

civil remedy was not coextensive with Section 1962 when it "cabin[ed] RICO's private cause of action to particular kinds of injury," namely business or property, and excluding, for example, personal injuries. *ManTech*, 2024 WL 4332117 at *10; *RJR Nabisco*, 579 U.S. at 349-350.

In contrast, the structure and context of section 1595 is analogous to section 1962 of the RICO statute and provides "a clear, affirmative indication" that it applies to foreign conduct. *ManTech*., 2024 WL 4332117 at *12. Like section 1962 of the RICO statute, the language of section 1595 specifically incorporates predicate offenses that govern foreign conduct, either expressly or through section 1596. *Id.* at 11-12. As explained by the Fourth Circuit, this statutory framework "gives a clear, affirmative indication that § 1595 provides a civil remedy for the foreign conduct that is prohibited by chapter 77." *Roe v. Howard*, 917 F.3d 229, 241-42 (4th Cir. 2019) (holding that the TVPRA applied extraterritorially to violations of the TVPRA against an Ethiopian national that occurred in Yemen); *see also ManTech*, 2024 WL 4332117, at *13 (holding that Section 1595 applies extraterritorially for offenses under sections 1589 and 1592). Section 1596, by its plain language, extends extraterritorial jurisdiction "over any offense" under sections 1581, 1583, 1584, 1589, 1590, or 1591 under certain circumstances. 18 U.S.C. § 1596. The statute does not mention section 1595 because section 1595 does not create an "offense" but creates a civil remedy for existing offenses, including section 1591 which is explicitly covered by section 1596. Thus, it would have made no sense for Congress to include section 1595 in the litany of offenses for which it created extraterritorial application. *ManTech*, 2024 WL 4332117, at *11.

Finally, the legislative history of the TVPRA makes clear that the statute was intended to have extraterritorial application. Congress has repeatedly referenced trafficking as a "transnational" crime that it intended to address "throughout the world" in its various authorizations of the statute and has included provisions with

extraterritorial reach in the statute from its inception. *Id*. at 10; *Roe*, 917 F.3d 229 at 242.[24]

The Redwood entities (K.A. ¶¶ 27-28), the Colbeck entities (K.A. ¶¶ 25, 26), MindGeek USA (Andreou Decl. ¶ 36), MG Global Entertainment (Andreou Decl. ¶ 44), and Visa (K.A. ¶ 29) are all U.S. nationals. Thus, each of them are liable under section 1596 of the TVPRA for the claims made by Plaintiffs who were initially trafficked abroad. MG Freesites and 9219-1568 Quebec do not challenge their presence in the United States for purposes of jurisdiction (Andreou Decl. ¶ 19), and thus are likewise present in the United States for purposes of section 1596. While MindGeek S.a.r.l., and the Individual Defendants are not U.S. nationals or residents, Plaintiffs have shown that they are "present" in the United States and thus liable

---

[24] For the reasons discussed in *ManTech*, Redwood's reliance on *Doe 1 v. Apple Inc.*, 2021 WL 5774224 (D.D.C. Nov. 2, 2021) is unpersuasive. The *Apple* court's analysis fails to take into consideration the order in which the statutes were enacted, fails to consider that the language of 1596 applies particularly to "offenses," and fails to consider the structure of the TVPRA. *ManTech*, 2024 WL 4332117, at *11-12. Notably, in affirming the district court's decision in *Apple*, the D.C. Circuit expressly stated that it was not addressing the issue of whether or not the civil remedy provision of the TVPRA applies extraterritorially but affirmed the district court's decision on the ground that the plaintiffs had failed to adequately allege that the defendants had participated in a venture. *Doe 1 v. Apple Inc.*, 96 F.4th 403, 414, n.4 (D.C. Cir. 2024).

under the extraterritorial reach of the TVPRA.[25] *Infra* Section VIII.A.[26]

### 2.   Plaintiffs' Claims are a Proper Domestic Application of the TVPRA

For the reasons articulated in *Fleites*, the claims of the U.S.-based Plaintiffs against MindGeek S.a.r.l. and Bergmair are appropriate domestic applications of the TVPRA.[27] Fleites Opp. at 84-85; *see also Tanedo v. E. Baton Rouge Par. Sch. Bd.*, 2012 WL 5378742, at *6 (C.D. Cal. Aug. 27, 2012) (findings claims were not based on extraterritorial application of the TVPRA where plaintiffs were trafficked from the Philippines to perform labor in the United States). Those Plaintiffs were exploited in the United States, images and videos of them were uploaded in the United States, and they unquestionably suffered injury in the United States. To hold otherwise would mean that foreign-incorporated companies are insulated from any harm they cause in this country. Every Defendant (including foreign defendants) other than MindGeek S.a.r.l. and Bergmair concede this domestic application of the statute.

---

[25] Citing *Doe v. WebGroup Czech Republic, a.s.*, 2024 WL 3533426, at *9-10 (C.D. Cal. July 24, 2024), Antoon and Tassillo argue that the non-U.S. based Plaintiffs claims should be dismissed because the "International Plaintiffs did not allege that Antoon and Tassillo are U.S. nationals, lawful permanent residents, or are "presented" in the United States." (Antoon/Tassillo Mot. at 30). As set forth below, and in *Fleites*, Plaintiffs' complaints plead the Individual Defendants' presence in the United States in spades, both individually and through their alter egos. Fleites Opp. at Section VII; *infra* Section VIII.A.

[26] Antoon and Tassillo also argue that because Plaintiff N.Y.'s direct street-level trafficker was convicted in the United Kingdom, this prevents her civil recovery. Antoon/Tassillo Mot. at 30, n.28. Antoon and Tassillo cite no case law for this proposition and their argument is foreclosed by the plain text of 18 U.S.C. § 1596(b), which specifically refers to criminal prosecution and only refers to the individual or entity who has been prosecuted for the offense. This plainly does not apply to either Antoon or Tassillo.

[27] Pursuant to this Court's order (ECF No. 54), Plaintiffs incorporate by reference the arguments made in Section VIII of the Fleites Opposition, which are equally applicable here.

The claims of those Plaintiffs based abroad are also proper domestic applications of the TVPRA. Sections 1591(a)(2) and 1595 create a cause of action not only against direct traffickers but also those who "knowingly benefit[]" from violations of the trafficking laws. 18 U.S.C. §§ 1591, 1595. The text of the statutes indicates that the focus of this provision is on those who "benefit" from "participation in a venture" that violates the provisions of the TVPRA. *See Rodriguez v. Pan American Health Org.*, 29 F.4th 706, 716 (D.C.C. 2022) (concluding that the "core" of a claim for a violation of Section 1589(b), which tracks the text of section 1591(a)(2) and makes it illegal to "knowingly benefit" from participation in a venture "which has engaged in the providing or obtaining of labor or services" through illicit means was the financial benefit).[28]

The Individual Defendants, MindGeek S.a.r.l., and the other foreign MindGeek entities all benefited from their participation in an illegal sex trafficking venture here in the United States. The illegal content MindGeek disseminated and monetized was stored, among other locations, on servers in the United States (K.A. ¶ 36), MindGeek derives substantial revenue from its United States users, as the United States is the largest market for Pornhub and Los Angeles is the city with the fourth highest volume of Pornhub usage in the world (K.A. ¶ 37), MindGeek sells targeted advertising directed at the United States-based users for both pornographic and non-pornographic content (K.A. ¶¶ 38, 47, 121-23), sells it Pornhub Premium service to United States-based users (K.A. ¶ 38), sells United States users licenses to view MindGeek's ModelHub content (K.A. ¶ 38), sells its United States-user

---

[28] This conclusion is consistent with how courts have analyzed the "core" or "focus" of other provisions when undergoing an extraterritoriality analysis. *See David v. Signal Int'l., LLC*, 2015 WL 75276, at *1 (E.D. La. Jan. 6, 2015) (where TVPRA proscribes the knowing provision labor by "threats of serious harm" or "physical harm," the focus of the provision was the forced labor occurred and to where the victims were trafficked); *see also Tanedo*, 2012 WL 5378742, at *6 (focus if Section 1589 is to protect those forced to labor within the United States even if trafficking occurred by through threats of harm made abroad).

customer data (K.A. ¶¶ 38, 47), and generates revenue through its United States based "content partners" that uploaded and distributed illicit content (K.A. ¶ 39), including in the case of J.L. (J.L. ¶ 317). And, as MindGeek S.a.r.l. admitted in a Deferred Prosecution Agreement ("DPA") entered in December 2023 with the United States Attorney's Office for the Eastern District of New York, MindGeek received at least some of these illicit payments through United States financial institutions. K.A. ¶ 66; Dkt. No. 9, Case No. 1:23-cr-00463-BMC-LB, at 37. At a minimum, the extent to which MindGeek's benefits from Plaintiffs' images are connected to the United States cannot be resolved prior to discovery. *Faili v. BAC Home Loans Servicing LP*, 2014 WL 255704, at *5 (C.D. Cal. Jan. 23, 2024) (denying motion to dismiss after finding factual issue as to whether or not defendant was responsible for insurance policy and therefore whether plaintiffs had stated an injury in fact).

### B.  Plaintiffs Section 2252 Claims Are Within Territorial Reach of the Statute

Defendants Antoon and Tassillo also assert that the Section 2252 claims of those Plaintiffs residing outside of the United States are impermissible extraterritorial applications of the statute because Plaintiffs' images and videos were taken abroad and then uploaded to tubesites registered abroad. Mot. at 30-31. This argument fails for multiple reasons.

First, the foreign Plaintiffs' claims are a proper domestic application of the statute. As discussed above, whether Plaintiffs' application of the statute is domestic or foreign is determined by analyzing the "focus" of the statute at issue and whether the relevant conduct occurred in the United States. *Supra* 31-35. Section 2252 and 2252A prohibit the transport, receipt, or distribution of materials depicting the sexual exploitation of children. 18 U.S.C. § 2252; 18 U.S.C. § 2252A. Section 2252A further makes it illegal to be in possession of child pornography within the territory of the United States. 18 U.S.C. § 2252A(4); 18 U.S.C. § 2252(5). In

1    determining whether section 2252 extends to the foreign Plaintiffs' claims, the

2    relevant inquiry is the conduct of the individuals who are distributing, reproducing,

3    transporting, receiving, or in possession of the child pornography. That is the focus

4    of these statutes, and the behavior that these statutes seek to regulate. The location

5    and conduct of the exploited children is not relevant. *See United States v.*

6    *Wolfenbarger*, 2020 WL 2614958, at *2, 6-7 (N.D. Cal. May 22, 2020) (finding that

7    the focus of Section 2251(a) was the regulation of adult conduct by criminalizing

8    adult abuse and exploitation of children and so defendant's solicitation of child

9    pornography from individuals in the Philippines was not an extraterritorial

10   application of the statute).

11        Applying these principles, the foreign Plaintiffs' claims are a permissible

12   domestic application of the statute where MindGeek has stated publicly and

13   repeatedly that it retains on its servers all videos ever uploaded onto its tubesites,

14   including servers in the United States. K.A. ¶ 36, 63, 65, 68, 100-101; *supra* p. 12.

15   MindGeek, therefore, has illegally possessed CSAM and child pornography and

16   redistributed that material innumerable times by reuploading it across its tubesites

17   from its servers. K.A. ¶¶ 100-101. ████████████████████████████

18   ████████████████████████████████████████████████████

19   ████████████████████████████████████████████████████

20   ████████████████████████████████████████████████████

21   ████████████████████████████████████████████████████████

22   ████████████████████████████████████████████

23   ████████████████████████████████████████████████████

24   ████████████████████████████████████████████████

25   ████████, then the conduct that is the "focus" of sections 2252 and 2252A occurred

26

27

28

1  in the United States.[29] Moreover, the complaints allege that Plaintiffs' CSAM

2  images were distributed widely throughout the United States, which was one of

3  MindGeek's largest target audiences and from which MindGeek generated a

4  significant amount of its revenue. *Supra* p. 37; *Infra* p. 78; K.A. ¶¶ 37, 65.

5       Second, both section 2252 and 2252A apply extraterritorially. Sections 2252

6  and 2252A are part of Congress's "comprehensive statutory scheme to eradicate

7  sexual exploitation of children," including the receipt, transport, and possession of

8  CSAM and child pornography. *U.S. v. McVicker*, 979 F.Supp.2d 1154, 1174 (D.

9  Oregon 2013) (quoting *U.S. v. Thomas*, 893 F.2d 1066, 1068-69 (9th Cir. 1990)).

10  "Punishing the creation of child pornography outside the United States that is

11  actually, is intended to be, or may reasonably be expected to be transported in

12  interstate or foreign commerce" is an important tool to achieving Congress' aim.

13  *Thomas*, 893 F.2d at 1068-1069. Accordingly, Congress intended both statutes to

14  apply extraterritorially. *Id*.

15  **IV.   PLAINTIFFS' STATE LAW CLAIMS ARE PROPERLY PLED**

16  **A.    Plaintiffs' Claims Are Timely**

17       Defendants assert that certain Plaintiffs' state law claims are untimely because

18  the applicable statute of limitations has lapsed since Plaintiffs alleged to have first

19  discovered the illicit content of themselves on MindGeek's sites (or the date on

20  which they turned 18). MG Mot. at 14, 16-17, 19, 20, 21, 24; Colbeck Mot. at 35-37;

21  Redwood Mot. at 34, 42.[30] But defendants' timeliness arguments fail because the

22  applicable statutes of limitations do not accrue here on the date of first discovery.

23  _____

24  [29] ████████████████████████████████████

25  ████████████████████████████████████████

26  ████████████████████████████████████████

27  [30] The MindGeek Defendants misstate the applicable statute of limitations for a
    claim for the distribution of private sexually explicit materials in violation of Cal.

28

As set forth *supra* Section I.C, the alleged wrongdoing was the continuous reformatting, re-uploading (and hence, according to MindGeek, repeated review by its moderator team), dissemination, and monetization of Plaintiffs' CSAM images on MindGeek's sites long after discovery. Indeed, certain Plaintiffs allege that illicit content depicting them remained live on MindGeek sites up to the filing of their complaint.  K.A. ¶¶ 311, 315-18 (videos disseminated on Pornhub through at least November 2019 and due to MindGeek policies were reuploaded to other MindGeek tubesites); L.T. ¶¶ 318-19; N.L. ¶¶ 312, 316, 318 (videos disseminated on Pornhub through at least May 2020, including on other tubesites owned by MindGeek); N.Y. ¶¶ 311-313, 320-22, 327 (videos disseminated across sites under the MindGeek "umbrella" after January 2021 and due to MindGeek policies were downloaded and reuploaded across other pornographic websites); X.N. ¶¶ 311, 316-17 (videos remained on multiple sites through at least December 2020 and was, due to MindGeek policies, transferred to other tube sites and downloaded by users; X.N. did not turn 18 until 2021); C.S. ¶¶ 312, 315, 318 (underage images remain on Pornhub until at least the filing of the complaint in June 2024); S.O. ¶¶ 312-319 (original videos not removed from Pornhub until after February 2020 but, due to MindGeek policies, had already been downloaded and reuploaded to other sites, including to other MindGeek owned tubesites); W.L. ¶¶ 311, 313-317 (videos remained on Pornhub until at least filing of the complaint in June 2024); L.S. ¶¶ 313, 316-17 (videos disseminated on multiple sites until at least filing of the complaint June 2024); A.K. ¶¶ 311, 316-20 (due to MindGeek's download policies, the video was widely downloaded and uploaded to multiple other MindGeek and non-MindGeek owned tubesites); J.L. ¶¶ 320, 323, 327 (videos disseminated on Pornhub until at least December 2020 but was downloaded and reuploaded to other MindGeek sites countless times). At a minimum, there is a question of fact as to

---

Civ. Code § 1708.85 as two years. The correct statute of limitations is three years under Cal. Civ. Proc. Code § 338 (a).

whether and when MindGeek removed each instance of illicit content depicting Plaintiffs not just from Pornhub, but from its other sites as well. *See Mariscal v. Innovasis, Inc.*, 2019 WL 2970833, at *1 (C.D. Cal. May 17, 2019) ("Resolution of the statute of limitations issue is normally a question of fact" except where uncontradicted facts established through discovery are "susceptible of only one legitimate inference").

Each instance of MindGeek reuploading and monetizing Plaintiffs' CSAM images is a violation of the applicable statutes and common law. *Supra* Section I.C. Moreover, MindGeek's repeated failure to screen for and remove Plaintiffs' illicit content constitutes a continuing pattern and course of conduct that tolls the statute of limitations under the conclusion of that illegal pattern. Accordingly, Plaintiffs' claims did not accrue until MindGeek removes all illicit content of Plaintiffs on its sites. *Supra* Section I.C; *see also Haddad v. Merck and Co., Inc.*, 2022 WL 18397392, at *5 (C.D. Cal. Dec. 9, 2022) (tolling statute of limitations under the "continuous violation" doctrine where plaintiffs continued to take drugs over the course of a decade due to defendants' continued failure to warn).

Moreover, the statute of limitations for each Plaintiffs' claims has been tolled since February 19, 2021, due to the filing of the class action complaint in *Doe v. MindGeek USA Inc., et al.,* Dkt. No. 1 8:21-cv-00338-WLH-ADS. That action, brought on behalf of minor victims, is similarly based on MindGeek Defendants' dissemination of and knowing benefit from CSAM on its websites. The initial complaint alleged causes of action for, among other claims, distribution of private sexually explicit materials in violation of Cal. Civ. Code § 1708.85 and violations of California's Unfair Competition Law ("UCL") under Cal. Bus. & Prof. Code § 17200. California recognizes tolling of all related state law claims "where the class action and the later individual action or intervention are based on the same claims and subject matter and similar evidence." *Hatfield v. Halifax PLC*, 564 F.3d 117, 1177, 1184-86 (9th Cir. 2009) (California law permits a plaintiff to toll individual

claims based on the filing of a prior class action even where plaintiff was not the named plaintiff in the earlier class action and even where the claims are not identical); *Williams v. Countrywide Fin. Corp.*, 2017 WL 986517, at *8 ("[A] statute of limitations is tolled for the period that a putative class action is pending as to "all those who might subsequently participate in the suit . . ."") (quoting *American Pipe and Constr. Co. et al., v. Utah*, 414 U.S. 538, 551 (1974).

Applying the proper accrual date and tolling as of February 2021, each of Plaintiffs' state law claims are timely.

### B.    Plaintiffs Plead Intentional Infliction of Emotional Distress

Each of the Defendants knowingly and purposefully took part in a venture that deliberately commercialized and profited from CSAM through the monetization of Plaintiffs' images and videos. Defendants seek to escape liability by pointing the finger at other responsible actors such as Plaintiffs' direct traffickers (MG Mot. at 23-24; Colbeck Mot. at 34-35) or asserting that their actions were nothing but routine business activities (Visa Mot. at 18-19; Redwood Mot. at 44-45; Colbeck Mot. at 34). But Defendants' counterfactual narratives of their roles and wrongdoing should not be credited on this motion, where the Court must accept Plaintiffs' allegations as true.

Construed in the light most favorable to Plaintiffs, the complaints allege that the, MindGeek Defendants reviewed each of Plaintiffs' underage images or videos (*supra* Section I.A.1), instructed traffickers on how to optimize the videos (*supra* Section I.A.1), transformed, optimized and incorporated Plaintiffs' content into the MindGeek SEO algorithm (*supra* Section I.A.1), stonewalled victims who attempted to have this illicit content removed (*supra* Section I.A.1), and then affirmatively reuploaded previously removed content under different names and titles (*supra* Section I.A.1). This deliberate and blatant exploitation of CSAM constitutes the type of outrageous conduct that "exceed(s) the bounds of that usually tolerated in a civilized community." *Doe v. Johnson*, 2018 WL 3239315, at *4 (S.D. Cal. July 3,

2018) (defendants' distribution of illicitly obtained images to third-party recipients constituted outrageous conduct offensive to a reasonable person). MindGeek's actions "show[] a callous disregard to the emotional distress such conduct would cause Plaintiff[s]." *Doe v. MindGeek USA Inc.*, 558 F.Supp.3d 828, 844-45 (C.D. Cal. 2021).[31]

Colbeck and Redwood financed, directed, and controlled MindGeek's activities with full knowledge of their illicit business model and practices. *Supra* Section 1.A.2. Both Colbeck and Redwood permitted and condoned such behavior because their profits were directly tied to MindGeek's success and its ability to repay its debt and the exorbitant interest rates attached to that debt. *Id*. Visa, likewise, provided the MindGeek Defendants with the tool to profit from this illicit content despite being well aware that it was processing payments for ads placed next to child pornography and non-consensual content. Fleites, ECF No. 166 at 10-11. Defendants' continued role in supporting and growing MindGeek's illegal activities is sufficient to establish their disregard of Plaintiffs' interests. *Ford v. Revlon, Inc.*, 153 Ariz. 38, 43 (Ariz. 1987) (employer was liable for intentional infliction of emotional distress when employer knew of supervisor's sexual harassment but allowed conduct to go on for a year before acting to stop the harassment).[32]

---

[31] MindGeek's and Colbeck's reliance on *Reaud v. Facebook Inc.*, 2024 WL 4126066, at *3 (N.D. Cal. Sept. 9, 2024) is inapposite because in that case Plaintiff's IIED claim against Facebook arose from the passive posting of unwanted third party advertisements on plaintiff's Facebook feed.  By contrast here, each defendant had an active and intentional role in the dissemination and monetization of Plaintiffs' illicit images. *Supra* Section I.A.

[32] It is not the case, as Redwood claims, that the intentional act must occur in the *presence* of the plaintiff. Redwood Mot. at 45; *see Johnson*, 2018 WL 3239315, at *4 (plaintiffs stated a claim for intentional infliction of emotional distress where defendant placed hidden camera in women's restroom and disseminated those images to third-parties online). The conduct need only be directed towards plaintiffs.

### C.    Plaintiffs Plead Violation of Their Privacy Rights

Plaintiffs assert four claims arising from the violation of their common law and statutory rights by the MindGeek Defendants: public disclosure of private facts (Count VII), intrusion into private affairs (Count VIII), placing plaintiffs in false light (Count IX), and the distribution of private sexually explicit materials in violation of California Civil Code § 1708.85 (count XII).[33] In response, the MindGeek Defendants adopt the same arguments made in their *Fleites* motion to dismiss, which center on the assertion that it was Plaintiffs' street-level traffickers who published and disseminated the images and videos of Plaintiffs, and not MindGeek itself. MG Mot. at 15-16.[34]

But it is not third-party conduct that rendered Plaintiffs' images and videos publicly available but rather the intentional actions of the MindGeek Defendants to approve, optimize, upload, disseminate, republish the videos to its other tubesites, and to deploy MindGeek's algorithm to enhance traffic to Plaintiffs' videos. It is not relevant that MindGeek acquired the images or videos from a third-party. *See Michaels v. Internet Ent. Grp., Inc.*, 5 F.Supp.2d 823, 829, 839-843 (C.D. Cal. 1998) (granting preliminary injunction to prevent pornography company from disseminating a sex tape it acquired from a third party after finding plaintiffs had made the requisite showing of success on the merits and irreparable injury as their claims, including claims for public disclosure of private facts, intrusion upon private affairs, and false light publicity). MindGeek did so with knowledge that the

---

[33] This court has already found under similar facts that MindGeek's distribution of CSAM on its platforms constitutes a claim for distribution of private sexually explicit materials in violation of California Civil Code § 1708.85. *Doe v. Mindgeek USA Inc.*, 558 F.Supp.3d at 844.

[34] Pursuant to this Court's Order (ECF No. 54), Plaintiffs fully incorporate the arguments in Section IV.E of the Fleites Opposition, which are equally applicable here.

Plaintiffs were minors and even, in certain instances, after Plaintiffs had requested the videos be removed. *Supra* Section II.[35]

### D. Plaintiffs Plead Both Common Law and Statutory Misappropriation

A common law cause of action for misappropriation lies where a defendant appropriates the plaintiff's name or likeness to the defendant's advantage and a resulting injury. *Newcombe v. Adolf Coors Co.,* 157 F.3d 686, 692 (9th Cir. 1998). The common law cause of action has been complemented by Cal. Civ. Code § 3344, which neither replaces nor codifies the common law claim but is cumulative. *Id*. at 691-692. The statutory cause of action has an additional element which requires a knowing use for the purposes of advertising and a direct connection between the use and the commercial purpose. *Id*. MindGeek defendants adopt the arguments they made in *Fleites* asserting that the use of Plaintiffs' likenesses next to unrelated advertisements does not constitute misappropriation. MG Mot. at 18. But MindGeek's argument ignores that Plaintiffs have alleged that MindGeek both

---

[35] MindGeek cites a number of other cases for the assertion that the injury-inflicting conduct must be intentionally committed by the defendant. Those cases either contain wildly different facts or support Plaintiffs' contention that it is the entity that disseminates the material that is liable and not the third-party they may have acquired the material from. *See In re Facebook, Inc*., 402 F.Supp.3d 767, 796-797 (N.D. Cal. 2019) (finding plaintiffs adequately alleged Facebook engaged in the improper disclosure of private facts and intrusion into private affairs where Facebook shared information plaintiffs had disclosed only to friends on Facebook with app developers); *See Lee v. Penthouse Int'l Ltd.*, 1997 WL 33384309, at *6-7 (C.D. Cal. Mar. 19, 1997) (intimate photos as issue had been previously published in French, Dutch, and U.S. magazines before being published by defendant magazine); *Taus v. Loftus*, 40 Cal. 4th 683, 717-719 (Cal. 2007) (denial of plaintiff's privacy claims rested on finding that the experiences described in the subject case study were clearly newsworthy and newsworthiness was a complete bar to common law liability); *Pacini v. Nationstar Mortg., LLC*, 2013 WL 2924441, at *9 (N.D. Cal. June 13, 2013) (plaintiffs' claim for false light was not actionable because the fact at issue – their default on their mortgage – was true and the claim was barred by the Fair Credit Reporting Act).

misappropriated Plaintiffs' likenesses by profiting from the unauthorized dissemination of Plaintiffs' images and videos to attract users and drive traffic (K.A. ¶¶ 59-61, 108-109, 115, 121) and by profiting from the unauthorized use by placing advertisements alongside the videos of Plaintiff (K.A. ¶¶ 121-123).

MindGeek used Plaintiffs' images in this way despite knowing that Plaintiffs were minors and therefore could not consent to having their images disseminated. And given MindGeek's repeated insistence that moderators reviewed every video prior to transformation and publicization, MindGeek cannot deny that it knowingly used Plaintiffs' images and had the opportunity to observe Plaintiffs' ages. MindGeek did this specifically to grow their content library and perfect their SEO analysis to drive more traffic and users to their sites. K.A. ¶¶ 59-61, 67, 74-77; *See Solano v. Playgirl, Inc.*, 292 F.3d 1078, 1089 (9th Cir. 2002) (liability attached where a defendant used a plaintiff's name and likeness in a knowingly false manner to increase sales of its publication). The proliferation of CSAM on MindGeek's tubesites also enabled MindGeek to use known-CSAM images to enable advertisers to build ad campaigns around keywords reflecting illegal activity, such as "13yearoldteen." K.A. ¶¶ 122-123.  Plaintiffs' allegations differ from the "unrelated ads" referenced by MindGeek in *Cross* as these advertisements were specifically built and targeted towards consumers of Plaintiffs' CSAM. *See Cross v. Facebook, Inc.*, 14 Cal.App.5th 190, 210 (2017).[36]

**E.    Plaintiffs Plead a Violation of the California TVPA**

Plaintiffs have adequately alleged that the MindGeek Defendants knowingly featured child pornography on Pornhub and across their platforms. *Supra* Section

---

[36] Pursuant to this Court's Order (ECF No. 54), Plaintiffs fully incorporate the arguments made in Section IV.F of the Fleites Opposition, which are equally applicable here.

II.[37] MindGeek's intentional and ubiquitous featuring of child pornography creates a reasonable inference that it intended to distribute child pornography when it reviewed, transformed, and commercialized videos of Plaintiffs in violation of sections 236.1 and 311.1 of the California Penal Code. *Doe v. MindGeek USA Inc.*, 558 F.Supp.3d at 843 (finding a reasonable inference that MindGeek had the intent to distribute child pornography where they knowingly featured child pornography on their platforms, and reviewed, approved, and disseminated videos of plaintiff).[38]

### F.    Plaintiffs Plead Negligence

California imposes a baseline duty to exercise reasonable care to prevent harm that can be reasonably anticipated. *Colvin v. Roblox Corp.*, 725 F.Supp.3d 1018, 1025-1026 (N.D. Cal. 2024); *Parsons v. Crown Disposal Co.*, 15 Cal.4th 456, 472 (1997) ("As a general rule, each person has a duty to use ordinary care and 'is liable for injuries caused by his failure to exercise reasonable care in the circumstances.'") (quoting *Rowland v. Christian*, 69 Cal. 2d 108, 112 (Cal. 1968)). MindGeek Defendants breached their duty of ordinary care by, among other things, transforming, optimizing, monetizing, and reuploading the images and videos of Plaintiffs numerous times, with full knowledge that the videos depicted a minor. It was eminently foreseeable that an unrestricted content business model would lead to the optimization and monetization of illegal and exploitative pornography. *Social Media Cases*, 2023 WL 6847378, at *23-24 (Cal. Super. Ct. Oct. 13, 2023) ("[T]he

---

[37] Pursuant to this Court's Order (ECF No. 54), Plaintiffs fully incorporate the arguments made in Section IV.C of the Fleites Opposition, which are equally applicable here.

[38] MindGeek also asserts that Plaintiff J.L.'s California TVPA claim is barred by the statute of limitations. MG Mot. at 14. The statute of limitations under Cal. Civ. Code § 52.5 is seven years from the date the trafficking ended or, in the case of a minor victim, within ten years after the date the plaintiff attained the age of majority. Cal. Civ. Code § 52.5 (c). As discussed above, MindGeek maintained, proliferated, and monetized the video of J.L. until December 2020. *Supra* Section I.C. J.L.'s claim was brought well-within the statute of limitations under section 52.5.

court's task in determining duty is not to decide whether a *particular* plaintiff's injury was reasonably foreseeable in light of a *particular* defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed.") (emphasis in original).

MindGeek cites several cases for the proposition that websites do not have a legal duty to inspect every user-generated message for illicit content. MG Mot. at 19. However, as discussed herein, MindGeek's liability does not arise from third party posts of illicit content using content-neutral tools. MindGeek is liable for their own role in transforming, optimizing, commercializing, distributing, and monetizing Plaintiffs' CSAM content. *Supra* Section I.A.1. Accordingly, the cases that MindGeek relies on involving the purely passive posting of third-party content are plainly distinguishable. *See Doe v. Reddit, Inc.*, 2021 WL 5860904, at *5 (C.D. Cal. Oct. 7, 2021) (plaintiffs' allegations did not show how Reddit "materially contributed" to the child exploitation material on its website because all allegations related to neutral tools); *Dyroff v. Ultimate Software Grp, Inc.,* 934 F.3d 1093, 1097-1098 (9th Cir. 2019) (defendant did not create or develop information but merely published information created by third parties without modification); *Doe v. Myspace, Inc.*, 474 F.Supp.2d 843, 849 (W.D. Tex. 2007) (plaintiff's claims were based on postings made between minor and the individual who sexually assaulted her and were clearly directed at defendant in its publishing and/or screening capacity and not as a content creator).[39]

## G. Plaintiffs Plead a Claim for Civil Conspiracy

The elements of a common law civil conspiracy are the same as those of conspiracy to violate the TVPRA – (i) an agreement to accomplish an illegal

---

[39] Pursuant to this Court's order (ECF No. 54), Plaintiffs fully incorporate the arguments made in Section IV.G of the Fleites Opposition, which are equally applicable here.

objective, (ii) the commission of an overt act in furtherance of the conspiracy, and (iii) the requisite intent necessarily to commit the underlying offense. *U.S. v. Matta-Ballesteros*, 71 F.3d 754, 765 (9th Cir. 1995). Plaintiffs have adequately pled that each of the Defendants conspired to commit wrongful acts in violation of various California state statutes, including by distributing private sexually explicit materials (Cal. Civ. Code. § 1708.85, count XIV); violating California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200 and 17500, count XVI); and violating the California TVPA (Cal. Civ. Code § 52.5, count XVII). MindGeek was engaged in a venture to profit from sex-trafficking and to distribute private, sexually explicit materials, and Visa, Colbeck, and Redwood each knowingly and intentionally agreed to provide MindGeek with the means to effectuate and continue that venture with the resources, assistance, and tools necessary to profit from and grow that venture.[40] *Supra* Section I.A1, Section I.A.2, Section I.A.3. These allegations state a claim for civil conspiracy. Plaintiff need not allege that each Defendant intended to break each of the specific statutes or torts so long as all Defendants agreed, either tacitly or explicitly, to further the MindGeek venture. *In re McKinsey & Co.*, *Inc. Nat'l Prescription Opiate Litig.*, 2024 WL 2261926, at *6-7 (N.D. Cal. May 16, 2024).

Defendants argue that Plaintiffs' conspiracy claims fail because they have not pled conspiracy with particularity. But "[a] plaintiff need not allege in detail the acts that constitute the conspiracy . . . [B]ecause of the inherent difficulty in proving a conspiracy, it has been held that a conspiracy may sometimes be inferred from the nature of the acts done, the relations of the parties, the interests of the alleged conspirators, and other circumstances." *Safarian v. Shaham*, 2014 WL 5038651, at *3 (Cal. Ct. App. Oct. 9, 2014).  Applying these standards, Defendants' civil

---

[40] Pursuant to this Court's order (ECF No. 54), Plaintiffs fully incorporate the arguments made in Section IV.A of the Fleites Opposition, which are equally applicable here.

conspiracy can be easily inferred here based on Colbeck's, Redwood's' and Visa's years-long relationships with MindGeek (K.A. ¶¶ 251, 256, 270, 272-274), their actual knowledge of the extent of MindGeek's criminal conduct (K.A. ¶¶ 247, 259-271, 273-282, 284-291, 294), and Defendants' motives to maximize their own profits (K.A. ¶¶ 7, 8, 252, 273, 286).

Contrary to Defendants' assertions, Plaintiff is not required to allege that each defendant took any overt act in furtherance of the conspiracy. Colbeck Mot. at 24, 32; Redwood Mot. 46-47. Only one defendant must take an overt act in furtherance of the conspiracy—an act which need not itself be illegal—and assuming a meeting of the minds has occurred, all co-conspirators can be held liable for that act. *People v. Smith*, 60 Cal. 4th 603, 616 (2014) ("Other than the agreement, the only act required is an over act by *any* of the conspirators, not necessarily the defendant, and that overt act need not itself be criminal.") (citing *People v. Russo*, 25 Cal.4th 1124, 1135, 108 Cal.Rptr.2d 436, 25 P.3d 641 (2001)); *People v. Morante*, 20 Cal 4th 403, 417 (1999) (conspirators need not be present or personally participate in the overt acts to be liable).

Redwood relies heavily on *Kidron v. Movie Acquisition Corp.*, 40 Cal. App. 4th 1571 (1995) and *Thinking Liberally Media Inc. v. Orange Juice Blog,* 2010 WL 11596144, at *5-6 (C.D. Cal. Nov. 19, 2010) to argue that Redwood's knowledge of sex-trafficking is insufficient to allege conspiracy without evidence of intent. Redwood Mot. at 46-47. But the complaint pleads both Colbeck's and Redwood's to intent to profit in spades. Among other things, the complaints allege that Colbeck and Redwood financing the growth and operation of MindGeek's business predicated on the monetization of child pornography because of the enormous profits they each earned through fees and through the exorbitant interest rates they were able to demand because others were not willing to financing this illicit business. K.A. ¶¶ 7, 247, 262, 266-267, 453. As further evidence of Redwood's

intent, in 2017, Redwood ousted Colbeck so that it could keep a larger share of the profits for itself. Fleites Opp. at 23-24.

In any event, it is well settled that at this stage in the proceedings, before discovery, that the court may infer intent from the Defendants' knowledge of the sex-trafficking and their actions taken in furtherance of the conspiracy that they had the requisite motive to assist MindGeek in monetizing child pornography. *See* Fleites, ECF No. 166 at 25.[41]

### H. Plaintiffs Plead Violations of Unfair Competition Law and Fair Advertising Law

As this court previously observed with respect to Visa, "[u]nder the UCL's unlawful prong, violations of other laws are borrowed and made independently actionable under the UCL." *Fleites*, ECF No. 166 at 29 (citing *Herron v. Best Buy Co. Inc.*, 924 F.Supp.2d 1161, 1177 (E.D. Cal. 2013)). Each Defendant's participation in the MindGeek venture in violation of the TVPRA and their civil conspiracy to violate common law torts serve as predicate wrongs under the UCL. *See Supra* Section I.A, Section I.B; *see Novoa v. The GEO Group, Inc.*, 2018 WL 3343494, at *14 (C.D. Cal June 21, 2018) (denying motion to dismiss UCL claim and holding that "unlawful practices" are any practices forbidden by law).[42]

Plaintiffs also plead violations of the False Advertising Law as to the MindGeek Defendants, Visa, Colbeck, and Redwood. MindGeek's history of false advertising is extensive and includes, among other examples, multiple

---

[41] References in *Kidron* to the need for evidence of intent are inapplicable here, as *Kidron* was decided pursuant to a motion for nonsuit following an evidentiary hearing. *Kidron*, 40 Cal. App. 4th at 1580. *Orange Juice Blog* is also distinguishable because in *Orange Juice Blog*, plaintiffs had made no allegations about the participation of the Orange Juice Blog in the purported conspiracy from which the court could infer intent. *Orange Juice Blog*, 2010 WL 11596144, at *5-6.

[42] Pursuant to this Court's order (ECF No. 54), Plaintiffs fully incorporate the arguments made in Section IV.B of the Fleites Opposition, which are equally applicable here.

misrepresentations concerning its moderation and screening processes, which it knew were ineffective or non-existent (K.A. ¶¶ 106-107, 113), and its efforts to remove repeated illegal content and prevent it from being uploaded (K.A. ¶ 232-233). Defendants Antoon and Tassillo repeated these false narratives in sworn testimony before the Canadian House of Commons. K.A. ¶¶ 106-107, 113. Moreover, the MindGeek Defendants failed to inform the public that Pornhub and its other sites contained videos of rape, child pornography, and other illicit content. These omissions are also actionable under the FAL. *See Handy v. LogMeIn, Inc.,* 2015 WL 1729681, at *5-6 (E.D. Cal. Apr. 15, 2015) (a plaintiff may state a claim under the FAL for fraudulent omissions by a defendant). Plaintiffs were harmed as a result of these unfair business practices when they sustained financial losses by having to pay for therapy, by taking time away from work, and by having to hire investigative firms to have their images taken down. K.A. ¶¶ 317, 438.[43]

---

[43] Defendants also assert that non-California resident Plaintiffs improperly invoke extraterritorial application of California state laws. But the harm underlying Plaintiffs' state law claims did indeed take place, at least in part, in California. At the time the events alleged in Plaintiffs' complaints took place, both MG Global Entertainment and MindGeek USA had their primary place of business located in California. Andreou Decl. ¶¶ 36, 44 (stating that MindGeek USA and MG Global have only had their principal executive offices in Texas since 2023). Both entities were used to support the operations of Pornhub and other MindGeek tubesites and pay sites, including moderation, formatting, review, approval of content, and other support services. K.A. ¶¶ 13, 15. It is these support services, and in particular the faux moderation process, formatting, review, and approval of content that caused the injuries underlying Plaintiffs' privacy rights claims (counts VII, VIII, IX, XII), Plaintiffs' claims under California's Trafficking Victims Protection Act (count XV), and Plaintiffs' negligence claim due to MindGeek's purposeful dissemination and proliferation of CSAM (count XIII). Plaintiffs also allege that MindGeek reaped substantial profits from users in California, including through ad sales and sale of premium subscriptions in the US, giving rise to Plaintiffs misappropriation claims (counts X, XI). K.A. ¶¶ 37-38.

## V.    CDA SECTION 230 DOES NOT IMMUNIZE DEFENDANTS' CONDUCT

Defendants argue that all of Plaintiffs statutory and common law claims are barred by CDA 230. MG Mot. at 2-10; Redwood Mot. at 20-21; Colbeck Mot. at 17; Visa Mot. at 30; Bergmair Mot. at 14; Antoon/Tassillo Mot. at 43-44. As set forth in *Fleites*, Congress enacted CDA 230 to immunize interactive computer services ("ICSs") from liability for content posted by third parties <u>in certain circumstances</u>. *Anderson v. TikTok, Inc.*, 116 F.4th 180, 182-183 (3rd Cir. 2024) (Matey, J., concurring) (emphasis added); *HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676, 682 (9th Cir. 2019) ("The text of the CDA is clear that neither this subsection nor any other declares a general immunity from liability deriving from third-party content."); Fleites Opp. at 53. CDA 230 is not an "all purpose get out-of-jail free card for businesses that publish user content on the internet." *Doe v. Mindgeek USA Inc.*, 574 F.Supp.3d at 772. Where, as here, a defendant takes action to encourage unlawful content and employs features to make a material contribution to such content, CDA 230 has no application. *Id.* It likewise does not bar claims arising from a website's violation of 18 U.S.C 1591(a).[44]

### A.    MindGeek is a Content Creator

The gravamen of MindGeek's Section 230 defense is that an enterprise that solicits images and videos it *knows* is illegal, edits the title, tags, thumbnails, and scenes of those images and videos to optimize it for its internally created algorithm, promotes that content through in-house created trailers, search terms, and playlists, and then proliferates it throughout its hundreds of websites, cannot be held liable for the harm arising from that misconduct because the content it modified, optimized, disseminated, and commercialized initiated from a third-party user. This is not the law (or what Congress intended).

---

[44] Pursuant to this Court's order (ECF No. 54), Plaintiffs fully incorporate the arguments made in Section V of the Fleites Opposition, which are equally applicable here.

CDA 230 was enacted in the wake of *Stratton Oakmont*, where a New York state court held defendant liable for failing to delete an allegedly defamatory post on its message boards because it had previously excluded other offensive content. *See Anderson*, 116 F.4th at 189-190. CDA 230 protects MindGeek from being liable for the "mere act" of hosting the videos that third-parties have uploaded. *Id*. It does not protect MindGeek from the creation and development of child pornography, the optimization of that child pornography, and its purposeful proliferation and monetization. *See Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1167-1168 ("[A] website helps to develop unlawful content, and thus falls within the exception to section 230, if it contributes materially to the alleged illegality of the conduct.").

As stated in *Fleites*, this Court has already held that MindGeek's conduct "goes far beyond the neutral tools the Ninth Circuit has protected within the ambit of Section 230 immunity." *Doe v. MindGeek USA Inc.*, 558 F.Supp.3d at 842; Fleites Opp. at 54. Among other things, Plaintiffs have thoroughly pled MindGeek's contributions to the creation and development of illegal content on its websites, including Plaintiffs' videos.[45] Fleites Opp. at 54-55; K.A. ¶¶ 43-45, 50, 116 (MindGeek instructs and directs users to describe and tag content to enhance its ability to garner attention through keywords that MindGeek's SEO analysis has determined garner the broadest audience, including categories such as "teen," "underage," and "incest"); K.A. ¶¶ 43, 61, 77-81 (MindGeek employees optimized uploaded content including the content titles, tags, categories, thumbnails, and

---

[45] In addition to allegations that MindGeek moderators transformed, edited, and approved the videos specifically depicting Plaintiffs, Plaintiffs have also alleged that this was standard operating practice for all Pornhub videos. K.A. ¶¶ 46, 77, 313. At this stage of the proceedings, Plaintiffs are entitled to the inference that MindGeek reviewed and transformed their videos in accordance with their standard operating procedure. *Doe v. Mindgeek USA Inc.*, 558 F.Supp.3d at 838.

videos to optimize search engine visibility and mask blatant descriptions of criminality); K.A. ¶ 46, 100-101 (MindGeek uploaded all content across all its sites); K.A. ¶ 324 (MindGeek provided instructions to users on how to upload videos of sex trafficking and evade criminal liability while complying with MindGeek's purposefully loose restrictions, including by maintain a public list of "banned words" – i.e., words to avoid in the title of videos); K.A. ¶¶ 120, 370, 382 (MindGeek creates thumbnails to attract users to particular videos and content); K.A. ¶¶ 86, 116, 123 (MindGeek features categories on their websites that target users interested in child pornography and other sexual abuse, trafficking, and nonconsensual materials); J.L. ¶¶ 317-319 (MindGeek maintains account representatives for its content partner channels to help create trailers, revise content, and advertise illicit content); K.A. ¶¶ 93-94, 98-99 (MindGeek maintains the webpage and thumbnails for disabled videos so that MindGeek Defendants can continue to generate traffic and revenue from that illegal content and direct users to similar content); K.A. ¶¶ 41, 324, 454 (MindGeek provides its global network of sex traffickers VPN services to allow them to obscure their locations and identities); K.A. ¶¶ 100-101 (MindGeek systematically reuploads removed content).[46]

MindGeek has not set forth any new facts or new cases that would warrant a different result. None of the cases that MindGeek now cites involve allegations, like those here, involving defendants' material contribution to the illegality of the content at issue. *Fyk v. Facebook, Inc.*, 808 F. App'x. 597, 598 (9th Cir. 2020) (plaintiff conceded that Facebook did not contribute to or alter the Facebook pages plaintiff previously owned and republished by a third-party on Facebook); *Planet Green Cartridges, Inc. v. Amazon.com, Inc.*, 2023 WL 8943219, at *1, 5 (C.D. Cal. Dec. 5, 2023) (allegations were based on false statements published by third-parties that plaintiffs admitted Amazon did not create or alter); *Pennie v. Twitter, Inc.*, 281

---

[46] For the same reasons, CDA 230 does not immunize the Individual Defendants.

F.Supp.3d 874, 889-890 (N.D. Cal. 2017) (plaintiffs sought to hold social media platforms liable for providing material support to Hamas but allegations were based solely on permitting Hamas to post content on its sites and contained no allegations that the platforms altered the content itself beyond placing advertisements); *Caraccioli v. Facebook, Inc.*, 700 F. Appx. 588, 590 (9th Cir. 2017) (plaintiff failed to allege that Facebook had any role in transforming or creating the Facebook page at issue and failed to allege any other facts showing intent and Ninth Circuit's affirmation of the district court's decision rested on the fact that Facebook was a "republisher" of third-party content); *Joude v. WordPress Found.*, 2014 WL 3107441, at *6-8 (N.D. Cal. July 3, 2014) (allegations were based on hosting of an anonymous blog page that plaintiffs conceded the defendants had no hand in creating or developing and instead, had the limited role of hosting, maintaining, and administering); *Callahan v. Ancestry.com Inc.*, 2021 WL 783524, at *6 (N.D. Cal. Mar. 1, 2021) (website merely republished yearbook pictures and information obtained from other yearbook users); *Doe #1 v. Twitter, Inc.*, 2023 WL 3220912, at *2 (9th Cir. May 3, 2023) (claims arose from Twitter's initial refusal to remove posts containing child pornography from its website but contained no allegations that Twitter itself contributed to the content or its illegality); *J.B. v. G6 Hospitality, LLC*, 2020 WL 4901196, at *4 (N.D. Cal. Aug. 20, 2020) (allegations rested on Craigslist's role in hosting the advertisements that depicted plaintiff); *Doe v. Bates*, 2006 WL 3813758, at *3-4 (E.D. Tex. Dec. 27, 2006) (allegations rested on third-party posts on one of Yahoo's messaging boards which Yahoo was not found to have contributed to, edited, or encouraged); *Deflino v. Agilent Tech., Inc.*, 145 Cal.App.4th 790, 807 (Cal. Ct. App. 2006) (sole authorship of the threatening messages was attributed to individual employee and there was no evidence that employer ICS played any role in their creation or development).

### B.    FOSTA Bars MindGeek's Section 230 Defense

Where a plaintiff has adequately pled violations of sex trafficking laws under Sections 1591 and 1595, FOSTA suspends CDA 230 protections for such violations. *Doe v. MindGeek*, 558 F.Supp.3d at 835-836. Plaintiffs fully adopt the arguments made in Fleites, which are equally applicable here where Plaintiffs similarly allege that MindGeek not only knowingly benefitted from its participation in a sex-trafficking venture, but intentionally incorporated the proliferation and monetization of child pornography into is business model, actively encouraged its production and dissemination, and actively contributed to its creation. Fleites Opp. at 56-57.[47]

As set forth *supra* Section I.A.1 and in *Fleites* (Fleites Opp. at 15-16, 56), MindGeek's attempt to analogize this case to *Reddit* (MG Mot. at 8, 10-13), is misplaced because MindGeek's actions are materially different than those in Reddit, who was largely a passive actor and only provided neutral tools for its users to post content. *Does 1-6 v. Reddit, Inc.*, 51 F.4th 1137, 1145 (9th Cir. 2022) (finding allegations that defendants refused to enforce policies, made pseudonyms and private messaging available, relied on untrained moderators who failed to take content down, and "elevated" subreddits depicting CSAM were insufficient to establish a violation of section 1591(a) to invoke the FOSTA). In contrast to the neutral platform provided by Reddit, as detailed in Plaintiffs' complaints and in *Fleites*, MindGeek actively created illicit content, promoted it, distributed it to its other sites, and used it to drive traffic, advertisements, and revenue. Fleites Opp. at 13-15, 54-55; K.A. ¶¶ 58-61, 70-77, 100-101, 138-149.

---

[47] Defendants Colbeck, Redwood, and Visa do not assert a Section 230 defense. As detailed in *Fleites*, these defendants are not covered by Section 230 because Plaintiffs' claims do not treat them as publishers or speakers of third-party content. Fleites Opp. at 57.

# VI.    THE INDIVIDUAL DEFENDANTS ARE LIABLE FOR MINDGEEK'S ILLEGAL CONDUCT

### A.    The Individual Defendants are Alter Egos of the MindGeek Entities

All three Individual Defendants invoke the fiduciary shield doctrine (otherwise referred to as the corporate shield doctrine) in an attempt to insulate themselves from the illegal activities MindGeek conducted under their direction. Bergmair Mot. at 15-16; Antoon/Tassillo Mot. at 18-20. But the fiduciary shield doctrine has no application where, as here, the corporation is an alter ego of the individual. *Chunghwa Telecom Global, Inc., v. Medcom LLC*, 2016 WL 5815831, at *6 (N.D. Cal. Oct. 5, 2016). As detailed in *Fleites*, the Individual Defendants and the MindGeek entities were alter egos of each other. *See* Fleites Opp. Section VII; *see also* Bowe Declaration and Exhibits 1 through 109.



**B.** **The Individual Defendants were the Guiding Spirit Behind MindGeek's Illegal Activities**

Acts of a corporate entity may also be imputed to an individual officer who is a "guiding spirit" behind the wrongful conduct or the central figure in the challenged actions. The applicable standard is, as Bergmair concedes, similar to the inquiry for personal jurisdiction. Bergmair Mot. at 16; *AMA Multimedia LLC v. Sagan Ltd.*, 2020 WL 5988224, at *2 (D. Ariz. Oct. 9, 2020). Plaintiffs' complaints allege, and the evidence uncovered during jurisdictional discovery demonstrates,





.[48]

## VII.  PLAINTIFFS HAVE ARTICLE III STANDING

Defendants Colbeck, Redwood, and Visa each argue that the claims against them should be dismissed because Plaintiffs' injuries are the result of the actions of third parties and not traceable to them. Judge Carney rejected similar arguments asserted by Visa in connection with its initial motion to dismiss in *Fleites*, holding that Visa's key role monetizing illegal CSAM content, including the plaintiff's, conferred standing. Fleites, ECF No. 166 at 9-16. Judge Carney's reasoning applies to the claims against Colbeck and Redwood as well.

The fact that there are other parties that *also* bear responsibility for Plaintiffs' injuries does not absolve Colbeck, Redwood, and Visa from liability. Article III

---

[48] Bergmair incorporates by reference his fiduciary shield argument from his motion to dismiss in *Fleites*. But the cases Bergmair relies on are plainly distinguishable from the allegations here insofar as none of them allege control by the individual defendant over the corporate entity defendant. *See In re: Juul Labs, Inc., Mktg., Sales Pracs., and Prods. Liab. Litig.*, 497 F.Supp.3d 552, 605, 608-609 (N.D. Cal. 2020) (finding general allegations attributed to large group of defendants without identifying which individuals were involved and what their roles were or any votes or control they exercised was insufficient to pierce the corporate veil); *Lynch v. Matterport, Inc.*, 2023 WL 1420723, at *2-3 (N.D. Cal. Jan. 31, 2023) (plaintiff failed to plead any of the individual defendants had unbridled control over the allegedly unlawful practice); *O'Connor v. Uber Techs., Inc.*, 2013 WL 6354534, at *17-18 (N.D. Cal. Dec. 5, 2013) (plaintiffs failed to establish the individual defendants' personal involvement in directing unlawful Uber policy).

standing only requires that "the injury is fairly traceable to the challenged action of the defendant." *Labowitz v. Bird Rides, Inc.*, 2019 WL 8750219, at *6 (C.D. Cal. Oct. 29, 2019) (plaintiffs had standing against electric scooter companies and city defendants for harm resulting from abandonment and docking of electric scooters by third-party users because actions were produced or motivated by conduct of the corporate or city defendants). "[T]he causal chain does not fail simply because it has several links, provided those links are not hypothetical or tenuous and remain plausible." *Id.* Colbeck, Redwood, and Visa are all links (along with MindGeek) in the chain of events that led to Plaintiffs' injuries.

In asserting there is no traceability, Defendants recast Plaintiffs' claims and seek to place the blame solely on Plaintiffs' street-level traffickers. But as Judge Carney properly concluded with respect to Visa, Plaintiffs' claims arise from the monetization of Plaintiffs' sex acts, not the sex act itself. Fleites, ECF No. 10-14. Colbeck and Redwood funded the business model that engaged in this systemic monetization of child pornography, including Plaintiffs. *See supra* Section I.A.2. Visa partnered with MindGeek to monetize Plaintiffs' illegal content. *See supra* Section I.A.3. Each of these Defendants' role in Plaintiffs' harm was direct and traceable.[49]

### A.    Plaintiffs' Harm is Traceable To Visa

Although Visa did not contest standing in its motion to dismiss in *Fleites* (Fleites, ECF No. 432), Visa now claims that Plaintiffs' injuries are not fairly traceable to Visa because its only role in the illegal venture was to process credit

---

[49] As detailed in *Fleites*, FOSTA also separately confers standing on Plaintiffs. Congress has the power to legislate chains of causation that give rise to a case or controversy and has done so here through FOSTA for all claims against those who participate in, or benefit from, a trafficking venture and cause harm to sex trafficking victims. Fleites Opp. at 57-58.

card payments for otherwise legal advertisements. Visa Mot. at 9. This argument has already been rejected by this Court. *See* Fleites, ECF. No. 166 at 9-16.[50]

As alleged in Plaintiffs' complaints, Visa's payment processing network was directly related to Plaintiffs' harm, including: (i) to process premium subscriptions for partner channels such as GDP, which also hosted content on Pornhub, including with respect to GDP victim, J.L., and (ii) to process advertising payments for ads placed on MindGeek's tubesites, including on Plaintiffs' CSAM videos and images. K.A. ¶¶ 122, 282, 284, 286, 313, 334. Plaintiffs allege that through these actions, Visa "provided [MindGeek] the means of monetizing the trafficked content that was an integral part" of MindGeek's growth and market dominance. K.A. ¶ 8. Had MindGeek not been able to monetize CSAM then MindGeek would have had no reason to proliferate such content across its tubesites and Plaintiffs would not have

---

[50] Visa, as in *Fleites*, argues that Plaintiffs' allegations stretch the bounds of secondary liability to "nonfeasance" as described in *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 500 (2023). As discussed in *Fleites*, the key difference between the defendants in *Twitter* and Visa, is that Visa took active, culpable actions to continue its relationship with the MindGeek enterprise in the face of knowledge of MindGeek's illegal activities. Fleites Opp. at 58, n.37. The Court in *Twitter* makes a point to distinguish aiding and abetting liability from conspiracy because, unlike conspiracy liability, aiding and abetting does not require any agreement with the primary wrongdoer and so, as the Court explains, aiding and abetting liability must be more carefully cabined. *Twitter*, 598 U.S. at 489-490. This concern does not exist as to Plaintiffs' TVPRA claims where Congress has articulated that all those who knowingly participate in and benefit from a violation of section 1591, may face liability. The Court in *Twitter* also explained that its hesitancy to impose liability on Twitter was heavily dependent on the "distance" between Twitter's failure to act and the terrorist attack in question where Twitter did not engage in the normal activities associated with aiding and abetting liability. *Twitter*, 598 U.S. at 500. But here, there is no such distance. As Judge Carney previously concluded, Visa provided MindGeek the tool to commit its crimes. And unlike in *Twitter*, Visa did not treat MindGeek as just any other user or recognized merchant. Visa publicly stated that it did not allow merchants engaging in illegal conduct to use its payment processing networks. K.A. ¶¶ 285. Nevertheless, in the face of overwhelming evidence of MindGeek's illegal activities, Visa continued to recognize MindGeek as a merchant.

suffered the injuries alleged in the complaints.[51] This is corroborated by MindGeek's decision to remove 10 million unverified videos when Visa (and other credit card companies) terminated its services to MindGeek. K.A. ¶ 272; Fleites, ECF No. 166 at 9, 12. Visa's conduct therefore, at a minimum, was a substantial motivating factor in MindGeek's actions. *Labowitz*, 2019 WL 8750219, at *6.

Visa relies heavily on the Supreme Court's ruling in *Murthy* to argue that its role was too attenuated to Plaintiffs' harm. Visa Mot. at 10-13. But *Murthy* is factually distinguishable and inapposite. There, the Supreme Court found that plaintiffs lacked standing to pursue *forward-looking* relief against federal officials who had allegedly pressured social media companies to suppress certain speech. *Murthy v. Missouri*, 603 U.S. 43, 59 (2024). Plaintiffs were therefore required to show that the social media platforms would "likely react in predictable ways" to federal conduct and that they faced "a real and immediate threat of repeated injury." *Id.* at 57-58. But the court determined that plaintiffs failed to offer any "proof of an ongoing pressure campaign" on the part of the federal government. *Id*. at 69. The Court also found that the social media platforms had their own incentives for moderating content on their platforms and that there was significant evidence that

---

[51] Contrary to Visa's assertion (Visa Mot. at 11), Plaintiffs' complaints do articulate that MindGeek was proliferate and create CSAM and other illegal content for profit. K.A. ¶¶ 60, 117, 149. Plaintiffs also allege that it was Visa's payment processing network that permitted MindGeek to accomplish this goal (K.A. ¶¶ 8, 272-274), and specifically that without Visa's participation, MindGeek would not have permitted the proliferation of CSAM on its sites. K.A. ¶ 272. Further, in *Murthy*, the court rejected the dissent's theory of standing because the dissent assumed injuries and facts that the plaintiffs had failed to articulate despite a considerable record. *Murthy*, 603 U.S. at n. 7.

1  they had engaged in content moderation prior to receiving any pressure from the

2  federal government.[52]

3       Neither Plaintiffs nor this court must speculate as to what would have

4  happened had Visa deplatformed MindGeek prior to December 2020. ██████████

5  ████████████████████████████████████████████████████████████

6  ████████████████████████████████████████████████████████████

7  ████████████████████████████████████████████████████████████

8  ████████████████████████████████████████████████████████████

9  ██████████████████  Moreover, the significant of this relationship is further

10  confirmed by MindGeek's removal of 10 million videos, reflecting 80% of its

11  platform after Visa suspended MindGeek's merchant privileges in December 2020.

12  K.A. ¶ 272. These facts are sufficient to establish that Visa exerted significant

13  control over MindGeek and was "quite literally" able to force it to operate

14  differently in the immediate aftermath of the December 2020 *New York Times*

15  article. Under these circumstances, Visa bears direct responsibility for MindGeek's

16  monetization of the CSAM depicting Plaintiffs. *See* Fleites, Dkt. No. 166 at 15.

17

18

19  [52] The other cases to which Visa cites are also inapposite. In *Daniel v. Nat'l Park

20  Serv.*, the plaintiff was unable to allege even a single fact connecting the receipt
   printed by the National Park Service and the identity theft. *Daniel v. Nat'l Park

21  Serv.*, 891 F.3d 762, 767 (9th Cir. 2018). In *Madstad Engineering*, the cyber attacks

22  alleged by plaintiff to have caused harm were not traceable to the defendants
   because they already existed prior to the passage of the legislation in question. And

23  there was nothing in the legislation that made it more likely that the cyber-attacks

24  would successful. *Madstad Eng'g Inc. v. U.S. Patent & Trademark Off.*, 756 F.3d

25  1366, 1374 (Fed. Cir. 2014). And in *Apple*, the court found that defendant Apple
   was not in a venture with the individuals who had the mining companies who had

26  exploited them. Apple had no connection to the mining companies and had only

27  purchased refined cobalt through a chain that included at least through other
   intermediary companies. *Doe 1 v. Apple Inc.*, 2021 WL 5774224, at *6-7 (D.D.C.

28  Nov. 2, 2021).

### B.   Plaintiffs' Harm Is Traceable To Colbeck and Redwood

Both Colbeck and Redwood reiterate the same arguments they made in *Fleites*, once again asserting that Plaintiffs' injuries depend entirely on independent third-parties and that their provision of loans cannot give rise to liability. Colbeck Mot. at 11-15; Redwood Mot. at 17. Pursuant to this Court's Order (ECF No. 54), Plaintiffs fully incorporate by reference the arguments made in *Fleites* which are equally applicable here. Fleites Opp. at Section VI.

The existence of other lenders in the syndicates does not defeat the centrality of Colbeck's and Redwood's roles to Plaintiffs' harm for two reasons.

*See Brill v. Chevron Corp.*, 2017 WL 76894, at *3 (N.D. Cal. Jan. 9, 2017); Fleites Opp. at 58-61. Ultimately, the extent of Redwood's and Colbeck's control over the MindGeek business and its policies is a factual question that requires discovery. *City of Los Angeles v. Wells Fargo & Co.*, 22 F.Supp.3d 1047, 1054 (C.D. Cal. 2014) (while allegations may be subject to proof at a later stage, plaintiffs are entitled to conduct discovery and obtain more specific information.).

Both Colbeck and Redwood go to great lengths to argue that they did not interact directly with Plaintiffs' street level traffickers or with her videos and thus these intervening actors weaken the causal chain. Colbeck Mot. at 13-14; Redwood

Mot. at 17. But Article III's traceability requirement does not require that the defendant personally commit the act that harms plaintiff. *Merriam v. Demoulas*, 2013 WL 2422789, at *4 (D. Mass. June 3, 2013) (finding traceability was satisfied where ERISA statute created vicarious liability). Such a requirement would improperly eliminate conspiracy liability, aiding and abetting liability, and agency liability and any other form of vicarious liability. *Id*; *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 255-56 (1994) (finding standing was satisfied where plaintiffs had alleged that the defendants' conspiracy to use force to induce abortion clinic staff and patients to stop working had injured plaintiffs' business and/or property interests). Where, as here, defendants are alleged to be part of a conspiracy or a venture, all that is required to satisfy traceability is showing that plaintiff suffered an injury as a result of the venture or conspiracy in which the defendants participated. *Merriam*, 2013 WL 2422789, at *4; *Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co.*, 81 F. Supp.3d 1, 7 (D.C. 2015) ("[P]laintiffs need only allege…that they suffered damages as a result of the conspiracy in which defendants participated.").

\*      \*      \*

As demonstrated in *Fleites*, FOSTA confers standing on Plaintiffs. Fleites Opp. at 57-58. While Article III does impose a minimal constitutional requirement of traceability, statutory schemes enacted by Congress can inform the question of when an injury is sufficiently traceable to a defendant's conduct such that, that defendant can be found liable. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016) ("Congress has the power to define injuries and articulate chains of causation that will give rise to case or controversy where none existed before."); *see also In re Idaho Conservation League*, 811 F.3d 502, 509-510 (D.C. Cir. 2016) (courts may consider "legislative assessment" when making standing determinations). In enacting FOSTA, Congress conferred Article III standing for all claims against those who participate in, or benefit from, a trafficking venture and cause harm to sex

trafficking victims. 18 U.S.C. §§ 1591(a)(2), 1595. Colbeck, Redwood, and Visa
have benefitted from a venture engaged in sex trafficking and may be held
accountable.

### C.     Plaintiffs Need Not Plead Proximate Cause

Plaintiffs need not demonstrate proximate cause for the purpose of Article III
standing. *Brill*, 2017 WL 76894, at *3. Nor are Plaintiffs required to plead proximate
cause with respect to their TVPRA claims. Colbeck's and Redwood's proximate
cause arguments are merely a regurgitation of the arguments made in *Fleites*.
Colbeck Mot. at 37-39; Redwood Mot. at 21-22. Plaintiffs incorporate the arguments
made in *Fleites*, which distinguish Colbeck's and Redwood's cases and support
standing, causation, and proximate cause here. Fleites Opp. at 27, n. 27, 61-62.

## VIII.  THE COURT HAS PERSONAL JURISDICTION OVER
         DEFENDANTS

Visa, Redwood and Colbeck do not challenge this Court's exercise of personal
jurisdiction over any of Plaintiffs' claims.  The MindGeek Defendants and the
Individual Defendants assert a host of challenges to this Court's jurisdiction.  First,
MindGeek S.a.r.l. and the Individual Defendants challenge jurisdiction as to all
Plaintiffs' claims.  Second, the MindGeek Defendants and the Individual Defendants
challenge jurisdiction as to the non-U.S.-based Plaintiffs' claims. Finally, MindGeek
USA and MindGeek Entertainment challenge jurisdiction over Plaintiffs' state law
claims.  Each of these challenges fail.

At this stage of the proceedings, Plaintiffs only need to make a *prima facie*
showing of jurisdictional facts to survive a motion to dismiss. Any "uncontroverted
allegations" in the complaints must be taken as true and any conflicts between the
facts put forth by the parties must be resolved in the Plaintiffs' favor. *Rio Props.,
Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002). Plaintiffs have pled
sufficient facts to meet this standard. Pursuant to this Court's order (ECF No. 54),

Plaintiffs fully incorporate by reference the arguments and evidence presented in Section VII of the Fleites opposition, which are equally applicable here.

### A. MindGeek S.a.r.l. and the Individual Defendants Are Subject To Jurisdiction Based On The Contacts Of Their Alter Egos

As demonstrated in *Fleites*, MindGeek S.a.r.l and Individual Defendants Bergmair, Tassillo, and Antoon, are all subject to personal jurisdiction in this state on the basis of the imputed contacts of their alter egos. *Fleites* Opp. at 63-84.





10    These allegations and supporting evidence satisfy the required prima facie

11  showing at the pleading stage.  The standard for imputing alter ego contacts the

12  purpose of personal jurisdiction is a lower threshold a less stringent standard at this

13  stage of the proceedings. *Activision Publ'g, Inc. v. EngineOwning UG*, 2023 WL

14  3272399, at *6 (C.D. Cal. Apr. 4, 2023) (noting that "[t]he standard for personal

15  jurisdiction under an alter ego theory is lower than the standard for liability under an

16  alter ego theory."). Where multiple corporate entities or individuals act as a single

17  enterprise, "sister corporations can have alter ego liability even if one does not own

18  stock in the other." *Kayne v. Ho*, 2012 WL 12878753, at *8 (C.D. Cal. Sept. 6,

19  2012). "[I]t would be unjust to permit those who control companies to treat them as

20  a single or unitary enterprise and then assert their corporate separateness in order to

21  commit frauds and other misdeeds with impunity." *Id*; *see also Mossimo Holdings*

22  *LLC v. Haralambus*, 2015 WL 476298, at *3 (C.D. Cal. Feb. 3, 2015) (holding that

23  where entities have been "handled" as a single enterprise then the enterprise can be

24  held liable, as a whole, for the wrongs of its specific component elements); *Elizabeth*

25  *Arden, Inc. v. Merchant of Tennis, Inc.,* 2011 WL 13217803, at *3 (C.D. Cal. Oct.

26  28, 2011) (recognizing alter ego theory where defendants held themselves out to the

27  public as a single enterprise, operated out of the same offices, provided all

28  accounting, sales, purchases, and distribution functions for each other, had

unfettered access to transfer funds across entities); *Kayne*, 2012 WL 12878753 at *7-8 (describing relevant factors when evaluating unity of interest for alter ego theory).

Plaintiffs have also demonstrated that the failure to disregard the corporate form would result in injustice in these actions.[53] ████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████████. Fleites Opp. at 63-64, 66-67. Where a plaintiff has alleged that the corporate form was purposefully used to circumvent laws and liabilities those allegations are sufficient for a finding of injustice. *Elizabeth Arden*, 2011 WL 13217803, at *3 (finding alter ego where defendants were found to have purposefully blurred the corporate distinctions in order to mislead or confuse customers and creditors and to dispute which entity was legally liable to a particular creditor); *Hirel Connectors, Inc. v. U.S.*, 2004 WL 5639770, at *24 (C.D. Cal. Jan. 23, 2004) (finding plaintiff had pled alter ego where parent and subsidiaries had held themselves out as a single enterprise, subsidiaries were alleged to have been the instrumentalities through which parent companies conducted business, parent entities participated in the tortious conduct by directing, authorizing, and ratifying the conduct).

Plaintiffs fully adopt and reiterate the arguments made in the Fleites opposition as to MindGeek S.a.r.l.'s alter ego identity, which are equally applicable to the Plaintiffs in these related actions.

---

[53] Plaintiffs need not show that actual fraud would result as long as they show an inequitable result. *Min Productions PTE. Ltd. v. FireForge, Inc.*, 2015 WL 13907701, at *9 (C.D. Cal. June 4, 2015).

### B. This Court May Exercise Nationwide Jurisdiction Over MindGeek S.a.r.l.

MindGeek S.a.r.l. seeks to insulate itself from the reach of this Court by asserting it has no contacts with the United States. MG Mot. at 26. As set forth herein, Plaintiffs allege (and the evidence obtained during jurisdictional discovery in *Fleites* confirms) that MindGeek S.a.r.l. has availed itself of the laws, protections, and privileges of doing business in the United States. It cannot now avoid the responsibilities that come with transacting in this country.

MindGeek S.a.r.l has already conceded in a prior action that it is responsible and liable for the illicit content displayed on its tubesites, including content on Pornhub. In December 2023, MindGeek S.a.r.l. entered into a Deferred Prosecution Agreement ("DPA") with the United States Attorney's Office for the Eastern District of New York on behalf of itself, MindGeek USA, Inc., and MG Freesites Ltd., arising from its partnership with GDP. Through the DPA, MindGeek S.a.r.l. assumed responsibility for operating and hosting GDP content on its tubesites, including Pornhub, and for receiving payments criminally derived from GDP's sex trafficking as well as from advertisers attributable to GDP content. Dkt. No. 9, Case No. 1:23-cr-00463-BMC-LB, at 36-38. In the same document, MindGeek S.a.r.l consented to personal jurisdiction in the United States and admitted that MindGeek S.a.r.l., although headquartered in Luxembourg, "also had offices *with employees* in Montreal, Canada, *and among other places, Los Angeles, California.*" *Id.* at 1-2, 49; *see also* K.A. ¶ 11.

MindGeek S.a.r.l. has also availed itself of the laws and protections of the United States. ███████████████████████████████████████████████ ███████████████████████████████████████████████████. Fleites Opp. at 64-66, 73-74, 81. ███████████████████████████████████████████████████ ███████████████████████████████████████████████████



Bowe Decl., Ex. 107.

### 1.    MindGeek S.a.r.l. is Subject to Nationwide Jurisdiction Under Rule 4(k)(2)

Federal Rule of Civil Procedure 4(k)(2) provides that for claims arising under federal law, a federal court may assert personal jurisdiction over a defendant so long as: (1) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and (2) exercising jurisdiction is consistent with the United States Constitution and laws. *Doe v. WebGroup Czech Republic, a.s.*, 93 F.4th 442, 450 (9th Cir. 2024). Because six of Plaintiffs' causes of action arise under federal law, the threshold requirement of Rule 4(k)(2) is satisfied as to those causes of action. *Id.* The court may then also assert pendant or supplemental jurisdiction over MindGeek S.a.r.l. as to the Plaintiffs' common law and state statutory claims. *Id.* at 450, n.5. The burden is on the defendant opposing jurisdiction under Rule 4(k)(2) to offer an alternative jurisdiction. MindGeek S.a.r.l. has not done so here.

The only question therefore is whether the exercise of jurisdiction by this court would be consistent with due process. The exercise of personal jurisdiction over a defendant comports with due process if a defendant has "minimum contacts" with the relevant forum such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Will Co., Ltd. v. Lee*, 47 F.4th 917, 922 (9th Cir. 2022). In the context of Rule 4(k)(2) the relevant forum for assessing minimum contacts is the United States "as a whole." *WebGroup Czech Republic*, 93 F.4th at 451. A defendant has minimum contacts with the forum if the defendant purposefully directed activities at the forum, the lawsuit arises out of or

relates to the defendant's forum-related activities, and the exercise of jurisdiction is reasonable. *Id*. MindGeek S.a.r.l's responsibility for the content hosted by its tubesites, its physical presence in California, and its reliance on United States laws permits this court to exercise specific jurisdiction under Rule 4(k)(2).

MindGeek S.a.r.l.'s operation of Pornhub and its other tubesites, its maintenance of an office in Los Angeles until 2023, its use of United States financial institutions, ███████████████████████████████████████ ███████████ were all intentional acts directed towards the United States that confer personal jurisdiction. *Will Co., Ltd. v. Lee*, 47 F.4th at 922 (operation of a website constitutes an intentional act); *Kaplan v. Int'l Data Grp., Inc.*, 2015 WL 12806463, at *2-3 (C.D. Cal. Mar. 17, 2015) (maintenance of an office in California a factor in determining defendant had purposefully directed his activities towards California); *Parasoft Corp. v. Parasoft S.A.*, 2015 WL 12645754, at *3-4 (C.D. Cal. Feb. 19, 2015) (a choice of law provision reinforces a defendant's "deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there" and may confer personal jurisdiction). ███████████████ ███████████████████████████████████████████████ ███████████████████████████████████

These intentional acts were "expressly aimed" at the United States. Where a defendant actively appeals to and profits from a forum, that is sufficient for a finding of purposeful direction. *WebGroup Czech Republic*, 93 F.4th at 453-454. Here, MindGeek S.a.r.l. plainly targets and profits from its contacts in the United States. As the United States was Pornhub's largest market during the relevant time period, MindGeek S.a.r.l. earned considerable revenue from that market. *See Will Co*, 47 F.4th at 924 (defendant's advertising structure profited from viewers in the United States and defendant earned more money from advertisers the more visitors and hits to the site); *see also WebGroup Czech Republic*, 93 F.4th at 455. MindGeek S.a.r.l's maintenance of a Los Angeles office, ███████████████████████████████████

1     ████████████████████████, its use of U.S. financial institutions, ███

2 ████████████████████████████████████████████████████

3 ████████████████████████████████████

       2.   <u>MindGeek S.a.r.l. is Subject to Nationwide Jurisdiction Pursuant to Section 18 U.S.C. 2255</u>

      MindGeek is also subject to personal jurisdiction in this district through the nationwide jurisdiction provision provided by 18. U.S.C. § 2255, which provides that any person who, while a minor, was a victim of crimes in violation of §§ 1591, 2252, and 2252A (among other provisions), is able to bring an action in any appropriate District Court. When a statute authorizes nationwide service of process, a plaintiff need only show that the defendant has minimum contacts with the United States in order for the court to assert personal jurisdiction. *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004) ("In a statute providing for nationwide service of process, the inquiry to determine 'minimum contacts' is thus 'whether the defendant has acted within any district of the United States or sufficiently caused foreseeable consequences in this country.'"). Not only has MindGeek S.a.r.l. directed the operation and growth of its tubesites in the United States, but as described above, MindGeek S.a.r.l. has also relied on the laws and protections of the United States by entering into a DPA on behalf of its subsidiaries, ████████████████████████████████████████████████████, and by having offices in the United States. *Supra* at p.72.

  C.   <u>**This Court Has Personal Jurisdiction over Plaintiffs' State Law Claims Against MindGeek USA Incorporated and MG Global Entertainment**</u>

      MindGeek USA and MG Global concede they are subject to nationwide jurisdiction in California for Plaintiffs' TVPRA and federal child exploitation claims. But they argue that in the event this Court dismisses those claims, they should not be subject to the personal jurisdiction of this Court for Plaintiffs' state law claims because by the time this action was initiated in June 2024, both entities

had moved their primary place of business from California to Texas. MG Mot. at 37-38. This argument is easily disposed of.

While *general* jurisdiction is determined on the date the suit was filed, the analysis does not stop there. Rather, most courts look back from that date to a "reasonable time," typically between three and seven years, to assess whether there are continuous and systematic contacts sufficient for general personal jurisdiction. *Kormylo v. Forever Resorts, LLC*, 2015 WL 106379 a *10 (S.D. Cal. Jan. 6, 2015); *see also* 4 Wright & Miller, Fed. Prac. & Proc. Civ. § 1067.5 (4th ed.).[54] The Court does not need to look far back to do so. It is undisputed that at least until late-May 2023, MindGeek USA and MG Global had their principal places of business in California including throughout the underlying events in Plaintiffs' complaints and at least until a year before the filing of the complaints. This is sufficient to subject these two entities to general jurisdiction in California. *Id*. at *11 (finding general jurisdiction over individual defendant where defendant was domiciles in California during the underlying events and one month before the initial third-party complaint was filed).[55]

Moreover, the Court may also exercise specific jurisdiction over these entities in California. MindGeek USA and MG Global both purposefully availed themselves of the privilege of doing business in California during the relevant period alleged in Plaintiffs' complaints by having their principal place of business in California. *See Square 1 Bank v. Lo*, 128 F.Supp.3d 1257, 1263-1264 (N.D. Cal. 2015) (finding

---

[54] The Andreou Declaration represents that both MindGeek USA and MG Global have had their principal executive offices in Texas since 2023 but does not provide a more precise date. Andreou Decl. ¶¶ 36, 44.

[55] If the court finds general jurisdiction over MindGeek USA and MG Global, then that confers jurisdiction as to these entities for the claims of the non-U.S. based Plaintiffs as well. *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 503 (9th Cir. 2023) (general jurisdiction allows a court to hear "any and all claims" against a foreign corporation concerning its activity "anywhere in the world").

residency and property in California until the filing of the complaint was a "purposeful injection into the forum state's affairs."). Moreover, MG Global provided unspecified "support" to MindGeek's other entities, including work on the Trust and Safety teams of the MindGeek tubesites during the relevant period that it had its principal place of business in California. Andreou Decl. ¶ 46. While MindGeek contends MG Global did not have responsibility for the moderation of content *before* it is uploaded, the nature and extent of its roles in moderating CSAM requires discovery. These state-specific contacts are sufficient to confer specific jurisdiction. *Square 1 Bank*, 128 F.Supp.3d at 1262-63 (N.D. Cal. 2015) (finding specific jurisdiction over defendant who purchased property in California and resided in California until the filing of the action despite defendant's contention that was no longer a California resident when she received the summons and had no other connection to the state).

### D.    The Court Has Personal Jurisdiction Over the Claims of Non-U.S. Plaintiffs

This court may also exercise personal jurisdiction over each of the MindGeek Defendants as it relates to the claims of the non-U.S. based Plaintiffs pursuant to both Rule 4(k)(2) and the nationwide grant of jurisdiction of 18 U.S.C. § 2255. As described above, under Rule 4(k)(2) and Section 2255, Plaintiffs need only plead that MindGeek Defendants had minimum contacts with the United States. *Supra* Section VIII.B.

The Ninth Circuit recently held that a defendants' active appeal to and profits from a forum are sufficient to establish purposeful direction to confer jurisdiction. *WebGroup Czech Republic*, 93 F.4th at 453-454. Here, each of the MindGeek entities targets and profits from its contacts in the United States. As of 2022, the United States was the country with the highest daily traffic on Pornhub and in 2019, Los Angeles was the city with the fourth highest volume of Pornhub usage in the world. K.A. ¶ 37. ████████████████████████████

1   [redacted]

2   [redacted]

3   [redacted]

4   [redacted]. Moreover, MindGeek Freesites and Premium also profited from its

5   audience in the United States. MindGeek Premium and Freesites sold targeted

6   advertising directed at United States-based citizens and California residents on its

7   free tubesites, including Pornhub, sold customer data it collected on those visiting its

8   sites, and also sold its Pornhub Premium service to United States residents and

9   California residents for $9.99 per month. K.A. ¶ 38. As the United States was

10   Pornhub's largest market during the relevant time period, MindGeek Freesites

11   earned considerable revenue from that market. *See Will Co*, 47 F.4th at 924

12   (defendant's advertising structure profited from viewers in the United States and

13   defendant earned more money from advertisers the more visitors and hits to the site);

14   *see also WebGroup Czech Republic*, 93 F.4th at 455. Moreover, MindGeek USA,

15   Entertainment and S.a.r.l. maintained offices in Los Angeles during the relevant

16   period. *See supra* Section VIII.B.  Moreover, as set forth herein, MindGeek S.a.r.l.

17   financial institutions, [redacted]

18   [redacted]

19   [redacted] all of which demonstrate deliberate affiliations with

20   the forum of the United States.

21       Moreover, as described in the Andreou Declaration, MG Freesites was

22   responsible for operating tubesites, including Pornhub (Andreou Decl. ¶ 32), MG

23   Global Entertainment provided support services to other MindGeek entities,

24   including tubesites such as Pornhub (Andreou Decl. ¶ 46), MindGeek Canada has

25   maintained employees in the United States (Andreou Decl. ¶ 49) and directly

26   provided support services to MG Freesites (Andreou Decl. ¶ 14). These entities

27   together distributed and marketed CSAM materials on Pornhub in the United States

28   and in California, thus profiting off of its U.S. audience. These actions reflect

significant focus of operations on the United States. *see Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F. 4th 972, 980-982 (9th Cir. 2021) (finding purposeful direction where company had market, sold, and shipped products to the United States in significant volumes and had a fulfillment center located in the United States). Each of the non-U.S. based Plaintiffs have alleged that MindGeek hosted, transferred, offered, distributed, advertised, and sold CSAM that depicted them through these U.S.-based servers. C.S. ¶¶ 12, 36, 63-68, 100-101; S.O. ¶¶ 12, 36, 63-68, 100-101; W.P. ¶¶ 12, 36, 63-68, 100-101; X.N. ¶¶ 12, 36, 63-68, 100-101; L.S. ¶¶ 12, 36, 63-68, 100-101; N.Y. ¶¶ 12, 36, 63-68, 100-101. Plaintiffs' section 2252, section 2252A, and section 1595 claims arise directly from the transfer, offering, advertisement, distribution, and monetization of these CSAM images. Accordingly, Plaintiffs' claims are sufficiently related to the MindGeek Defendants' actions in the United States to satisfy the nexus for personal jurisdiction. *see Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351, 362 (2021) (a strict causal relationship between a defendant's activities in the forum and the litigation is not required so long as the suit relates to the defendant's contacts with the forum); *WebGroup*, 93 F.4th 442, 457 (9th Cir. 2024) (finding plaintiff's claims related to the defendants' contacts with the United States where the plaintiff's publication-based harms arose out of content-sharing website aimed at the U.S. market).

Each of these Defendants' U.S.-based contacts is directly related to the non-U.S. based Plaintiffs' claims in this action. MG Freesites is admitted to have been responsible for the operation and performance of Pornhub, the website through which the Defendants monetized the illegal CSAM it hosted on U.S. servers. Andreou Decl. ¶¶ 11, 32. MG Freesites is, as admitted by the MindGeek Defendants, reliant upon the services of Defendant 9219-1568 Quebec Inc. to operate. Andreou Decl. ¶¶ 13, 14. ███████████████████████████████████ ████████████████████████████████ (Andreou Decl. ¶ 12) ██████████████████████████████████████████████████

1    ████████████████████████████████ Finally, both MindGeek

2    USA and MG Global provided support services to Pornhub, including in the case of

3    MG Global, moderation and formatting services. C.S. ¶¶ 13, 15. While MindGeek

4    Defendants assert that MindGeek's U.S.-based entities did not provide these services

5    (MG Mot. at 42), this assertion is unsupported and based entirely on the fact that

6    Plaintiffs alleged that these roles were also performed in Canada or Cyprus. In any

7    event, both MindGeek USA and MG Global have admitted they have their primary

8    place of business in Texas and are incorporated in Delaware. Accordingly, they are

9    subject to general nationwide jurisdiction under section 2252.

10    **E.    <u>Plaintiffs Are Entitled to Jurisdictional Discovery</u>**

11    As set forth herein, Plaintiffs' complaints and the evidence adduced during the

12    *Fleites* discovery which the parties agreed may be used to prosecute or defend these

13    Related Actions (Fleites, Amended Stipulated Protective Order (ECF No. 490),

14    Section 7.1), are more than sufficient to confer jurisdiction over each Defendant for

15    each claim.  However, in the event the Court believes additional evidence is

16    warranted, Plaintiffs respectfully request leave to take jurisdictional discovery in

17    these new actions, which Judge Carney previously held was appropriate. Fleites,

18    ECF No. 167 (Order Directing Jurisdictional Discovery). While Plaintiffs did

19    previously take some jurisdictional discovery as set forth in the *Fleites* opposition,

20    Defendants tenaciously fought to limit their production as much as possible and

21    failed to produce entire categories of relevant documents.  Fleites Opp. at 75-80.

22    Moreover, additional jurisdictional discovery is appropriate here because the

23    MindGeek Defendants have also now, for the first time, made new jurisdictional

24    arguments regarding MindGeek USA and MG Global Entertainment.

25    **CONCLUSION**

26    For the foregoing reasons, Plaintiffs respectfully requests that the Court deny

27    Defendants' motions to dismiss. To the extent the Court is inclined to grant

28

Defendants' motions in whole or in part, any dismissal should be without prejudice and with leave to amend as this is Plaintiffs' first complaint.[56]

DATED:  December 12, 2024          Respectfully submitted,

BROWN RUDNICK LLP


By:  */s/ Michael J. Bowe*
_____
     Michael J. Bowe (*pro hac vice*)
     Lauren Tabaksblat (*pro hac vice*)
     *Attorneys for Plaintiffs*

---

[56] "The court should freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a). Requests for leave should be granted with extreme liberality. *Frazier v. City of Fresno*, 2022 WL 1128991, at *13 (E.D. Cal. Apr. 15, 2022). None of the Plaintiffs in the Related Actions has previously amended their complaints. While the Colbeck Defendants assert that permitting Plaintiffs to amend would be futile and result in undue prejudice (Colbeck Mot. at 41-42), the claimed negative publicity that may or may not arise from continued litigation does not constitute prejudice for the purposes of a Rule 15 analysis. Prejudice only exists where new allegations would have "greatly altered the nature of the litigation and would have required defendants to have undertaken, at a late hour, an entirely new course of defense." *Ortiz v. Walmart, Inc.*, 2021 WL 5761727, at *3 (S.D. Cal. Apr. 26, 2021). Colbeck cannot assess prejudice prior to any motion to amend or proposed amended pleading. There is also no prejudice in permitting amendment at this early stage. *Id.* Nor has Colbeck presented any evidence that Plaintiffs have acted in a dilatory manner. Plaintiffs were all minors at the time they were initially trafficked and have filed their claims within the statute of limitations. No deadlines have been set for amended pleadings and no case management schedule has been set.

1

**CERTIFICATE OF COMPLIANCE**

2      The undersigned counsel of record for Plaintiff K.A. and Plaintiffs in the

3  Related Actions certifies that this brief contains eighty-five (85) or fewer pages, as

4  required by this Court's October 11, 2024, order, ECF No. 473.

5      DATED: December 12, 2024    By: /s/ *Michael J. Bowe*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28