1   DREW TULUMELLO (#196484)
2   drew.tulumello@weil.com
    MARK A. PERRY (#212532)
3   mark.perry@weil.com
    WEIL, GOTSHAL & MANGES LLP
4   2001 M Street NW, Suite 600
5   Washington, DC 20036
    Tel: 202 682 7000
6   Fax: 202 857 0940

7
    *Attorneys for Visa Inc.*
8

9                    **UNITED STATES DISTRICT COURT**

10                   **CENTRAL DISTRICT OF CALIFORNIA**

11                         **SOUTHERN DIVISION**

12

13   | K.A.,                              | Case No. 2:24-CV-04786-WLH-ADS |
14   |                                     |                                |
     |                  Plaintiff,         | Judicial Officer: Wesley L. Hsu |
15   |                                     | Courtroom: 9B                  |
     |          v.                         |                                |
16   |                                     |                                |
     | MINDGEEK S.A.R.L.; MG FREESITES,    | **REPLY IN SUPPORT OF**        |
17   | LTD; MINDGEEK USA                   | **DEFENDANT VISA INC.'S OMNIBUS** |
     | INCORPORATED; MG PREMIUM LTD.;      | **MOTION TO DISMISS**          |
18   | MG GLOBAL ENTERTAINMENT INC.;       |                                |
19   | 9219-1568 Quebec, Inc.; BERND       |                                |
     | BERGMAIR; FERAS ANTOON; DAVID       | Date: January 31, 2025         |
20   | TASSILLO; COREY URMAN; VISA         | Time: 1:30 p.m.                |
     | INC.; REDWOOD CAPITAL              |                                |
21   | MANAGEMENT, LLC ; REDWOOD           |                                |
22   | DOE FUNDS 1-7 ; COLBECK CAPITAL     |                                |
     | MANAGEMENT, LLC; COLBECK DOE        |                                |
23   | FUNDS 1-3,                          |                                |
24   |                                     |                                |
     |                 Defendants.         |                                |
25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................1

ARGUMENT ...........................................................................................................2

I.    Plaintiffs Lack Article III Standing As To Visa...............................................2

    A.    Established precedent forecloses Plaintiffs' theory of traceability.......3

    B.    Plaintiffs' conclusory allegations as to Visa cannot support Article III standing ...........................................................................................7

    C.    Visa does not have control over MindGeek...........................................9

II.    The Complaints Do Not State A Claim Against Visa For Direct TVPRA Liability ........................................................................................................10

    A.    Plaintiffs do not adequately allege participation.................................10

    B.    Plaintiffs do not adequately allege knowledge ..................................13

III.    The Complaints Fail To Adequately Allege Civil Conspiracy Against Visa16

IV.    Plaintiffs' Opposition Does Not Address The Flaws in Plaintiffs' State Law Claims Against Visa Under California Business and Professions Code §§ 17200, 17500 .................................................................................................16

V.    The Complaints Do Not Allege Any "Extreme" And "Outrageous" Conduct By Visa Or That Visa Had Any Intent Or Even Knowledge Of Plaintiffs.........................................................................................................17

VI.    Plaintiffs' Opposition Does Not Address Dismissal With Prejudice As To Visa ..............................................................................................................20

CONCLUSION .....................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Johnson*,
   355 F.3d 1179 (9th Cir. 2004) .................................................................8, 19, 20

*Adobe Sys. Inc. v. Blue Source Grp., Inc.*,
   125 F. Supp. 3d 945 (N.D. Cal. 2015) ..............................................................17

*Al-Sadhan v. Twitter Inc.*,
   No. 23-cv-02369, 2024 WL 536311 (N.D. Cal. Feb. 9, 2024) ........................5, 7

*B.M. v. Wyndham Hotels & Resorts, Inc.*,
   No. 20-CV-00656, 2020 WL 4368214 (N.D. Cal. July 30, 2020)..............11, 12

*Benavidez v. County of San Diego*,
   993 F.3d 1134 (9th Cir. 2021) ...........................................................................19

*Boschma v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,
   No. CV 18-2623, 2018 WL 2251629 (C.D. Cal. May 16, 2018)................5, 6, 7

*Christensen v. Super. Ct.*,
   54 Cal. 3d 868 (1991) ........................................................................................19

*Daniel v. Nat'l Park Serv.*,
   891 F.3d 762 (9th Cir. 2018) ...........................................................................6, 7

*Doe #1 v. Red Roof Inns, Inc.*,
   21 F.4th 714 (11th Cir. 2021) ......................................................................12, 14

*Doe #9 v. Wyndham Hotels & Resorts, Inc.*,
   No. 4:19-CV-5016, 2021 WL 1186333 (S.D. Tex. Mar. 30, 2021)...................14

*Doe I v. Apple Inc.*,
   No. 1:19-cv-03737, 2021 WL 5774224 (D.D.C. Nov. 2, 2021) ......................5, 6

*Does No. 1-6 v. Reddit, Inc.*,
   51 F.4th 1137 (9th Cir. 2022), *cert denied*, 143 S. Ct. 2560 (2023) .................15

*Fleites v. MindGeek S.A.R.L.*,
   617 F. Supp. 3d 1146 (C.D. Cal. 2022) .............................................................13

*Ford v. Revlon, Inc.*,
    153 Ariz. 38 (1987).............................................................................................18

*G.G. v. Salesforce.com, Inc.*,
    76 F.4th 544 (7th Cir. 2023) ...........................................................................12

*In re Gilead Scis. Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) ...........................................................................8

*In re McKinsey & Co., Inc. Nat'l Prescription Opiate Litig.*,
    MDL No. 3084, 2024 WL 2261926 (N.D. Cal. May 16, 2024)........................16

*Iron Bridge Mortg. Fund, LLC v. Bank of Am., N.A.*,
    539 F. Supp. 3d 1030 (N.D. Cal. 2021)...........................................................17

*J.M. v. Choice Hotels Int'l, Inc.*,
    No. 2:22-cv-00672, 2022 WL 10626493 (E.D. Cal. Oct. 18, 2022).................14

*Jacobson v. Marin Gen. Hosp.*,
    192 F.3d 881 (9th Cir. 1999) ...........................................................................19

*Janken v. GM Hughes Elecs.*,
    46 Cal. App. 4th 55 (1996) ...............................................................................18

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018) ................................................................8, 16, 19

*Madstad Eng'g, Inc. v. U.S. Patent & Trademark Office*,
    756 F.3d 1366 (Fed. Cir. 2014) ......................................................................5, 6

*Maya v. Centex Corp.*,
    658 F.3d 1060 (9th Cir. 2011) .............................................................................5

*Mayfield v. County of Merced*,
    No. CV F 13-1619, 2014 WL 2574791 (E.D. Cal. June 9, 2014).....................18

*Murthy v. Missouri*,
    603 U.S. 43 (2024)..............................................................................1, 3, 7, 9

*Nasco Petroleum, L.L.C. v. City of Los Angeles*,
    No. 2:23-cv-00884, 2023 WL 8937614 (C.D. Cal. Nov. 8, 2023).......................4

*Ratha v. Phatthana Seafood Co.*,
    35 F.4th 1159 (9th Cir. 2022) ...........................................................................14

*Ratha v. Phatthana Seafood Co.*,
  No. CV 16-4271, 2017 WL 8293174 (C.D. Cal. Dec. 21, 2017), *aff'd*,
  26 F.4th 1029 (9th Cir. 2022), *amended by* 35 F.4th 1159 (9th Cir.
  2022) ..............................................................................................................11

*Reddy v. Litton Indus., Inc.*,
  912 F.2d 291 (9th Cir. 1990) .............................................................................20

*S.J. v. Choice Hotels Int'l, Inc.*,
  473 F. Supp. 3d 147 (E.D.N.Y. 2020).......................................................14, 15

*Simon v. E. Kentucky Welfare Rights Org.*,
  426 U.S. 26 (1976).........................................................................................4, 5

*Soil Retention Prod., Inc. v. Brentwood Indus., Inc.*,
  521 F. Supp. 3d 929 (S.D. Cal. 2021) ...............................................................17

*Turaani v. Wray*,
  988 F.3d 313 (6th Cir. 2021) ...............................................................................6

*Twitter v. Taamneh*,
  598 U.S. 471 (2023)..............................................................................................1

*United States v. Afyare*,
  632 F. App'x 272 (6th Cir. 2016)......................................................................15

*United States v. Page*,
  No. 21-3221, 2024 WL 5154496 (7th Cir. Dec. 18, 2024) (en banc)...............16

*Williams v. Sisolak*,
  No. 22-16859, 2023 WL 8469159 (9th Cir. Dec. 7, 2023), *r'hg denied*,
  2024 WL 194180 (9th Cir. Jan. 18, 2024), *cert. denied*, 144 S. Ct. 2659
  (2024).....................................................................................................................4

**Statutes**

California Business and Professions Code § 17200 .................................................16

California Business and Professions Code § 17500 .................................................16

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

Visa is not a proper defendant and cannot be held liable under any of Plaintiffs' theories of liability.  Plaintiffs' Omnibus Opposition raises many of the same issues as the individual opposition in *Fleites v. MindGeek S.a.r.l.*, No. 21-CV-4920, to which Visa has already replied.  *See* Ex. A.  Pursuant to the Court's direction, *see* ECF No. 54, Visa incorporates those arguments by reference here.

As in *Fleites*, Plaintiffs attempt to expand secondary liability beyond its statutory, constitutional, and logical limits.  The Supreme Court has recently and forcefully reaffirmed the strict limitations on secondary liability.  *See Twitter v. Taamneh*, 598 U.S. 471, 489 (2023).  Plaintiffs give this authority short shrift, urging that "Visa did not treat MindGeek as just any other user or recognized merchant."  Opp'n at 64 n.50.  Yet Plaintiffs' allegations against Visa reveal the exact opposite:  Visa provided MindGeek the same, general payment processing services that Visa offers all third-party users through its Acquirer and Issuers.[1]  These were not services unique to MindGeek or even services that *only* Visa offered.  The harm Plaintiffs allege is attributable to the misconduct of their traffickers and those responsible for the dissemination of unlawful conduct.  Visa cannot be held liable for the conduct of those third parties.

As a threshold and dispositive matter, Plaintiffs' injuries cannot be traced to Visa for purposes of standing.  Plaintiffs' theory of liability as to Visa is based upon third-party conduct—namely, the creation, uploading, and dissemination of unlawful content.  But as the Supreme Court has recently held, it is a "tall order" to establish traceability of injury based on third-party conduct.  *Murthy v. Missouri*, 603 U.S. 43 (2024).  The allegations in the complaints do not clear this hurdle.  Plaintiffs' Opposition instead confirms that Plaintiffs cannot establish traceability as to Visa because (i) Visa is but one of many payment networks that MindGeek used to process payments for its advertisements and

---

[1] Terms used but not defined herein shall have the same meaning as in Visa's Motion to Dismiss.  *See* ECF No. 59-1.

premium subscriptions; (ii) the independent actions and motivations of MindGeek and countless third parties prevent any injury being traced to Visa; and (iii) Visa lacks control over MindGeek and has no direct relationship with MindGeek.

As Judge Carney correctly ruled in *Fleites*, Plaintiffs' direct liability claim under the TVPRA also fails. Courts have repeatedly held that participation liability under the TVPRA requires more than providing general, off-the-shelf services, and though courts have differing views on the level of knowledge required for TVPRA liability, Plaintiffs do not adequately allege Visa's knowledge under any applicable standard. Plaintiffs' conclusory allegation that Visa must have benefitted from illegal content on MindGeek's websites does not make up for those pleading defects and likewise fails on its own terms.

Similarly, Plaintiffs' conspiracy claims and their claims pursuant to California Unfair Competition Law ("UCL") fail for the same reasons as in *Fleites*. *See* Ex. A.

With regards to intentional infliction of emotional distress ("IIED"), Plaintiffs allege only that Visa provided payment processing services for MindGeek. Plaintiffs do not allege that Visa engaged in any "extreme" or "outrageous" conduct, and Plaintiffs do not allege that Visa directed any conduct at or had any knowledge of Plaintiffs. Each of these missing elements is necessary for Plaintiffs IIED claims.

The law is clear that Visa cannot be held liable for the actions of third parties, yet that is what Plaintiffs' complaints seek to do. Accordingly, each of Plaintiffs' claims as to Visa fail as a matter of law and should be dismissed with prejudice.

<strong>ARGUMENT</strong>

## I.    Plaintiffs Lack Article III Standing As To Visa

The threshold defect in all of Plaintiffs' claims against Visa is that they seek to attribute to Visa the misconduct of unrelated third parties. For that reason, Plaintiffs cannot establish Article III standing as to Visa with respect to any of their claims, including most significantly the requirement of showing an injury traceable to Visa. All of their claims should be dismissed on this basis.

### A.    Established precedent forecloses Plaintiffs' theory of traceability

As discussed in Visa's Motion to Dismiss, the Supreme Court's recent decision in *Murthy*—holding that the plaintiffs there failed to establish standing based on the conduct of independent third parties—forecloses any theory of traceability Plaintiffs could offer. ECF No. 59-1, at 9–13.  Plaintiffs assert that *Murthy* is "distinguishable" because the Supreme Court held the plaintiffs in *Murthy* did not have "standing to pursue *forward-looking* relief." Opp'n at 65.  Plaintiffs misinterpret *Murthy*:  Before finding that the plaintiffs in *Murthy* did not have standing for forward-looking relief, the Supreme Court *first* analyzed "whether the plaintiffs have demonstrated traceability for their *past* injuries." *Murthy*, 603 U.S. at 59 (emphasis added).  The Supreme Court reasoned that if the plaintiffs in *Murthy* could establish traceability for their past injuries, that would bolster the plaintiffs' traceability theories and standing for their requested forward-looking relief. *Id.*

But—just like Plaintiffs here—the plaintiffs in *Murthy* could not show that their *past* injuries were traceable to the alleged conduct by the named defendant.  *Murthy*, 603 U.S. at 61–62.  Instead, the *Murthy* plaintiffs' injuries all stemmed from the conduct of third parties, which the Supreme Court held was too far removed and too attenuated to support standing. *Id.* at 62–63.  The Supreme Court further held that the plaintiffs' claims were not traceable to the defendants because the social media companies and other third-parties had their own independent incentives for content moderation and engagement. *Id.*; *see also* Opp'n at 65–66.  As the Supreme Court stated, "it is a bedrock principle that a federal court cannot redress 'injury that results from the independent action of some third party not before the court.'" *Murthy*, 603 U.S. at 57.  That statement came in the context of the Court's retrospective analysis, not its discussion of forward-looking relief.

Here, Plaintiffs rely on the same type of "one-step-removed," third-party conduct to argue that their past injuries are traceable to Visa.  *Id.* at 57.  Plaintiffs claim that

"without Visa's participation, MindGeek would not have permitted the proliferation of CSAM on its sites." Opp'n at 65, n.51. Plaintiffs also claim that "Visa bears direct responsibility for MindGeek's monetization of the CSAM depicting Plaintiffs," evidenced by the "removal of 10 million videos" from MindGeek's websites after Visa suspended payment processing for MindGeek. *Id.* at 66. Even a cursory inspection of those allegations reveals multiple missing links. Plaintiffs' allegations ignore the multiple third-party actions and independent motivations of MindGeek, other defendants, Plaintiffs' traffickers, and the multiple other payment networks that serviced MindGeek that are not parties to this litigation.

Traceability cannot be established by the "independent action of some third party not before the court." *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976) ("In other words, the 'case or controversy' limitation of Art. III still requires that a federal court act only to redress *injury that fairly can be traced to the challenged action of the defendant*, and *not injury that results from the independent action of some third party not before the court*.") (emphasis added); *Williams v. Sisolak*, No. 22-16859, 2023 WL 8469159, at *1 (9th Cir. Dec. 7, 2023) (plaintiffs lacked Article III standing because "plaintiffs injuries [were] the result of allegedly illegal third-party conduct in Nevada's commercial sex industry"), *r'hg denied*, 2024 WL 194180 (9th Cir. Jan. 18, 2024), *cert. denied*, 144 S. Ct. 2659 (2024). But that is what Plaintiffs seek to do here. Visa had no role in (1) Plaintiffs' exploitation by their traffickers and perpetrators, (2) the uploading of Plaintiffs' videos to MindGeek's websites, (3) MindGeek's transferring of their videos to other tubesites, or (4) MindGeek's failure to monitor their tubesites that hosted Plaintiffs' videos. Opp'n at 65–66; ECF No. 1, ("K.A. Compl.") ¶ 318. Plaintiffs' reliance on the independent actions and motivations of MindGeek, other defendants, and third parties is not sufficient to trace their injuries to Visa. *See Nasco Petroleum, L.L.C. v. City of Los Angeles*, No. 2:23-cv-00884, 2023 WL 8937614, at *10 (C.D. Cal. Nov. 8, 2023) ("For causation, while the injury does not have to be caused solely by the defendant,

'[i]n cases where a chain of causation *involves numerous third parties* whose *independent decisions* collectively have a *significant effect on plaintiffs' injuries*, the Supreme Court and this court have found the *causal chain too weak to support standing* at the pleading stage.'") (emphasis added) (quoting *Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011).

Plaintiffs also attempt to trace their injuries to Visa by urging that Visa's payment processing provided the financial motivation for MindGeek to disseminate unlawful content. Opp'n at 64–66, n.51. Plaintiffs assert that without Visa providing MindGeek the "means of monetizing" Plaintiffs' videos, "MindGeek would have had no reason to proliferate" Plaintiffs' videos, and Plaintiffs would not have been injured. Opp'n at 64–65; *see, e.g.*, K.A. Compl. ¶ 8. But that argument falls flat. Courts have consistently held that third parties' indirect financial motivations are not sufficient to establish standing. *See, e.g.*, *Simon*, 426 U.S. at 41–42; *Al-Sadhan v. Twitter Inc.*, No. 23-cv-02369, 2024 WL 536311, at *8 (N.D. Cal. Feb. 9, 2024) (plaintiff did not have standing because her "'independent decisions,' undertaken on her own volition, effected her injuries and broke the chain of causation"); *Boschma v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. CV 18-2623, 2018 WL 2251629, at *3 (C.D. Cal. May 16, 2018) (plaintiff's injury—government's failure to enact gun legislation—was not "fairly traceable" because of the independent actions of "numerous third parties," including those who commit gun violence); *Madstad Eng'g, Inc. v. U.S. Patent & Trademark Office*, 756 F.3d 1366, 1374 (Fed. Cir. 2014) (plaintiff did not have standing because plaintiff's alleged injuries and alleged increase risk of cyberattacks by independent hackers and thieves was not traceable to statutory provision that allegedly increased incentives for cyberattacks). For example, the court in *Doe I v. Apple Inc.*, No. 1:19-cv-03737, 2021 WL 5774224, at *7 (D.D.C. Nov. 2, 2021), held that plaintiffs alleging mistreatment in connection with cobalt mining could not trace their injuries to Apple simply because Apple produced products containing cobalt and therefore created a financial incentive to mine cobalt in the first instance. *Id.*

Instead, "this long 'chain of contingencies, in all its rippling glory, creates mere speculation, *not a traceable harm*.'" *Id.* (citing *Turaani v. Wray*, 988 F.3d 313, 317 (6th Cir. 2021) (emphasis added). Because of these indirect motivations, a "causal chain involving multiple third parties is simply too weak to support standing." *Boschma*, 2018 WL 2251629, at *3.

Plaintiffs try to distinguish *Apple* by pointing to the fact that "Apple had no connection to the mining companies and had only purchased refined cobalt through a chain that included [] other intermediary companies." Opp'n at 66, n.52. This argument actually reinforces the applicability of *Apple*. Like Apple, who had no direct contractual relationship with the mining companies and only worked through intermediaries, here, Visa has no direct relationship with MindGeek. ECF No. 59-1 at 4; *see Apple*, 2021 WL 5774224, at *6–7. The fact that Visa allegedly provided—through the Issuers and Acquirers—the means for MindGeek to realize a financial gain from its conduct, as in *Apple*, does not establish traceability.

Plaintiffs' attempts to distinguish Visa's other cases fall equally flat. Plaintiffs first misread the Federal Circuit's holding in *Madstad Engineering*. Opp'n at 66, n.52. Contrary to Plaintiffs' assertion, the holding that Madstad did not have standing was *not* solely based upon the fact that the risk of cyberattacks existed both before and after the statutes implementation. *Id.*; *Madstad*, 756 F.3d at 1373–1374. Instead, the Federal Circuit also "emphasize[d] all of the unlikely steps required for MadStad to suffer injury *fairly traceable* to any alleged *increased* risk of hacking" caused by the statute. *Madstad*, 756 F.3d at 1373–1374 (emphasis in original). Those "unlikely steps" included not only MadStad's independent motivations, but also the multiple independent actions third-party hackers and thieves would have to take. *Id.* Additionally, in *Daniel v. Nat'l Park Serv.*, 891 F.3d 762 (9th Cir. 2018), the Ninth Circuit held that the plaintiff lacked standing not because the plaintiff did not plead any allegations to support her standing, but because the plaintiff's conclusory allegations and legal conclusions were not sufficient to establish

the link between the plaintiff's injuries and the defendant's conduct. *Id.* at 767.

Plaintiffs' theory of standing for their claims against Visa would contravene this established precedent by allowing parties to bring claims based upon causal chains that would otherwise be "too weak," "hypothetical or tenuous" to establish standing. *See Al-Sadhan*, 2024 WL 536311, at *8; *Boschma*, 2018 WL 2251629, at *3. If the Court accepts Plaintiffs' theory of standing, then Visa could be held responsible for the misconduct of any business that accepts credit cards, as long as the plaintiff pleads that Visa's payment processing capabilities provided the "economic motivation" for that business to engage in unlawful conduct. This cannot be so under the established precedent. The "independent incentives" of MindGeek, other defendants, and non-parties precludes the establishment of any causal link between Plaintiffs' injuries and Visa. *See Murthy*, 603 U.S. at 61–62. Instead, with these third parties, the causal chain between Plaintiffs' injuries and Visa becomes too attenuated and "simply too weak to support standing." *Boschma*, 2018 WL 2251629, at *3. Plaintiffs' theory of standing as to Visa further supports that Visa is not a proper defendant.

### B. Plaintiffs' conclusory allegations as to Visa cannot support Article III standing

Even were Plaintiffs' theory of standing legally cognizable, their allegations are wholly speculative, conclusory, and insufficient to state a claim against Visa—as established by Visa in its Motion to Dismiss. *See* ECF No. 59-1, at 7–8.

Plaintiffs seek to frame Visa as the sole payment network for MindGeek and suggest that Visa, and Visa alone, permitted MindGeek to monetize Plaintiffs' videos on MindGeek's websites, arguing that "without Visa's participation, MindGeek would not have permitted the proliferation of CSAM on its sites." Opp'n at 65–66, n.51. Yet Plaintiffs repeatedly acknowledge that Visa was just one of *many* payment networks for MindGeek. *See, e.g.*, Opp'n at 65 (noting "MindGeek's decision to remove 10 million unverified videos when Visa (*and other credit card companies*) terminated its services

1    to MindGeek" (emphasis added)); K.A. Compl. ¶¶ 114, 272–276, 283, 295

2    (acknowledging that "major credit card companies and their member banks," including

3    PayPal, MasterCard, and Visa, acted as payment networks for MindGeek).  The Court is

4    not "'required to accept as true allegations that are merely conclusory, unwarranted

5    deductions of fact, or unreasonable inferences.'"  *Khoja v. Orexigen Therapeutics, Inc.*,

6    899 F.3d 988, 1008 (9th Cir. 2018) (quoting *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049,

7    1055 (9th Cir. 2008).

8         Plaintiffs further assert in their Opposition, without any support, that *only* Visa

9    processed payments for otherwise lawful advertisements that may have appeared beside

10   Plaintiffs' unlawful content and that *only* Visa processed payments for premium

11   subscriptions to MindGeek affiliated websites, some of which may have contained

12   Plaintiffs' unlawful content.  Opp'n at 64.  That is also pure speculation that ignores

13   Plaintiffs' allegations to the contrary—that *multiple* "major credit card companies and

14   their member banks provid[ed] merchant services to MindGeek."  *See, e.g.*, K.A. Compl.

15   ¶¶ 274–76, 279.  Any of the "major credit card companies and their member banks" that

16   Plaintiffs reference could have processed payments for advertisements that displayed next

17   to Plaintiffs' unlawful content or for premium subscriptions for websites that hosted

18   Plaintiffs' unlawful content—not just Visa.  While a court must accept a plaintiff's

19   allegations as true at this stage in the proceedings, "'allegations that are merely

20   conclusory, unwarranted deductions of fact, or unreasonable inferences'" do not have to

21   be accepted as true.  *See Khoja*, 899 F.3d at 1008 ("'To survive a motion to dismiss, a

22   complaint must contain sufficient factual matter, *accepted as true*, to state a claim to relief

23   that is plausible on its face;' that is, plaintiff must 'plead[] factual content that allows the

24   court to draw the reasonable inference that the defendant is liable[.]'" (emphasis added));

25   *see also Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) ("[C]onclusory

26   allegations of law and unwarranted inferences are insufficient to defeat a motion to

27   dismiss.").

28

### C.    Visa does not have control over MindGeek

Plaintiffs also seek to show traceability by asserting that Visa had "control" over MindGeek, but as addressed in Visa's Motion to Dismiss, *see* ECF No. 59-1, at 12–13, this argument also fails.  As evidence of this supposed "control," Plaintiffs point to the fact that MindGeek removed "10 million videos … after Visa suspended MindGeek's merchant privileges in December 2020."  Opp'n at 66.  But as discussed above and in Visa's Motion to Dismiss, Plaintiffs' claims of Visa's "control" ignores (1) that Visa has no direct relationship with MindGeek and (2) the multiple other "credit card companies" and payment networks that processed payments for MindGeek.  *See id.* at 65–66; *see also* ECF No. 59-1, at 4.  Indeed, as discussed in Visa's Motion to Dismiss, ECF No. 59-1, at 4–5, Visa's payment network generally operates through banks (the Acquirers) and the card-issuing financial institutions (the Issuers).  *Id.*  While Visa has contractual relationships with the Acquirers and Issuers, the Acquirers and Issuers enter into separate contracts with merchants like MindGeek—not Visa.  *Id.*  Visa imposes rules for the types of merchants Acquirers and Issuers can contract with, but it is the Acquirers and Issuers that initiate and maintain relationships with merchants like MindGeek—again, not Visa. *Id.*  Visa has no direct relationship with MindGeek, and Visa has no control over MindGeek.

Moreover, Plaintiffs' own allegations contradict Visa's "control," as MindGeek removed the "10 million unverified videos" after "Visa (*and other credit card companies*) terminated [] services to MindGeek."  Opp'n at 65 (emphasis added); K.A. Compl. ¶ 272.  In fact, this removal only came after the publishing of a *New York Times* article on MindGeek and public scrutiny—both providing independent motivation for MindGeek.  *See Murthy*, 603 U.S. at 61–62.  And Plaintiffs further allege that even after Visa stopped processing payments for MindGeek's tubesites and MindGeek removed "10 million unverified videos," published findings from Canadian authorities in February 2024 report that illicit content is still on MindGeek's tubesites.  *See, e.g.*, K.A. Compl. ¶ 69; *see* Opp'n at 65.  By Plaintiffs' own telling, Visa's response to the *New York Times* article did not

1    stop the conduct complained of here.

2        Plaintiffs also attempt to point to loan agreements between MindGeek and Colbeck

3    and Redwood as further evidence of Visa's "control" over MindGeek, but these

4    arguments also fail.  Opp'n at 66.  The provisions Plaintiffs reference show only that Visa

5    was just one of many payment networks for MindGeek.  *See* ECF No. 70-1 ("Hille

6    Decl."), Ex. A, § 7.01 (v), § 9.01 (c), (t); Hille Decl. Ex. B, § 7.01 (v), § 9.01 (c), (t);

7    Opp'n at 66.  And of course, Visa is not a party to any of those contracts.

8        Visa is but one of many payment networks for MindGeek, and Plaintiffs' injuries

9    cannot be traced to Visa.  For this additional reason, Plaintiffs' allegations do not establish

10   standing as to Visa, and Visa is not a proper defendant.  Plaintiffs' complaints as to Visa

11   should be dismissed with prejudice.

12   **II.    The Complaints Do Not State A Claim Against Visa For Direct TVPRA**
13   **        Liability**

14       Plaintiffs' direct liability claim against Visa for "participation" in a trafficking

15   venture raises the same issues as the plaintiff's direct liability claim against Visa in the

16   *Fleites* case.  *See* Ex. A, at 2–12.  Pursuant to the direction of the Court, *see* ECF No. 54,

17   Visa incorporates those arguments by reference here.  When faced with similar allegations

18   against Visa for direct violations of the TVPRA under Section 1591(a) and 1595, based

19   solely on Visa's general payment processing services, Judge Carney in *Fleites* dismissed

20   the direct liability claim against Visa with prejudice because the plaintiff could not allege

21   either participation or knowledge as to Visa.  Plaintiffs' claims here do not justify a

22   different result.

23       **A.    Plaintiffs do not adequately allege participation**

24       Plaintiffs' only allegation of participation as to Visa is that "Visa 'knowingly

25   provided [MindGeek] the tool used to complete a crime' in the form of its payment

26   processing network."  Opp'n at 23.  Plaintiffs assert that "Visa's payment processing

27   network was central to MindGeek's … growth and success" and MindGeek's

28

monetization of "illicit content," even though Visa was but one of many payment networks for MindGeek. *Id.* at 23–24; *see supra* Section I.B.

Plaintiffs seek to impose a sweeping understanding of "participation" that requires no conduct other than the general operation of a lawful business. Opp'n at 23–25. This broad definition of "participation" has been routinely rejected by courts. *See, e.g.*, *Ratha v. Phatthana Seafood Co.*, No. CV 16-4271, 2017 WL 8293174, at *4 (C.D. Cal. Dec. 21, 2017), *aff'd*, 26 F.4th 1029 (9th Cir. 2022), *amended by* 35 F.4th 1159 (9th Cir. 2022) (requiring defendant to have taken "some action to operate or manage the venture, such as directing or participating in [the alleged venture]"); *B.M. v. Wyndham Hotels & Resorts, Inc.*, No. 20-CV-00656, 2020 WL 4368214, at *5 (N.D. Cal. July 30, 2020) (requiring defendant to have "*directly* participated in [the] venture" to be held liable under the TVPRA) (emphasis added).

Plaintiffs' attempt to distinguish Visa's cited cases fails. Plaintiffs seek to limit the district court's ruling in *Ratha* to only participation liability under Section 1589 (regarding forced labor), but the court in *Ratha* suggested no such limitation to its ruling. When addressing liability for participation under the TVPRA, the court in *Ratha* noted that "[a] defendant who 'knowingly benefits … from participation in a venture which has engaged in any act in violation of section 1581(a), 1592, or 1595(a)' can be liable under the TVPRA." *Ratha*, 2017 WL 8293174, at *4 (second alteration in original). While the court in *Ratha* noted that the definition for "*venture*" differed in the TVPRA for sex trafficking, the court did not make any such distinction when addressing beneficiary participation under the TVPRA. *Id.* Instead, the court in *Ratha* held that "the relevant case law requires *more than receipt of a passive benefit* to satisfy the TVPRA's *participation* in a venture element." *Id.* (emphasis added).

Likewise, in *B.M.*, while the court held that the plaintiff was "not required to allege an overt act" to plead civil liability under Section 1595, the plaintiff *was* required to plead "facts linking **these Defendants []** to the sex trafficking of **this Plaintiff []**." *B.M.*, 2020

1    WL 4368214, at *3, 5 (emphasis in original).  Because the plaintiff could not allege that

2    defendants "directly participated in a venture that ***trafficked B.M.***," the plaintiff did not

3    adequately allege participation in a venture under Section 1595.  *Id.* (emphasis in

4    original).

5         As in the *Fleites* Opposition, Plaintiffs seek to rely on the Seventh Circuit's

6    decision *Salesforce* to support their argument that Sections 1591(a) and 1595 do not

7    require any direct participation by a defendant for a defendant to be found to have

8    participated in the venture.  Opp'n at 7–9.  As discussed in *Fleites*, though, *see* Ex. A, at

9    6–8, *Salesforce* undermines rather than supports Plaintiffs' arguments.  Central to the

10   Seventh Circuit's holding in *Salesforce* were the "targeted solutions" offered by

11   Salesforce and Salesforce's provision of "'operational needs,' and provid[ing] 'active,

12   ongoing support' that was 'tailored'" to Backpage, the alleged trafficker.  *G.G. v.*

13   *Salesforce.com, Inc.*, 76 F.4th 544, 560 (7th Cir. 2023).  Plaintiffs do not and cannot make

14   any such claims as to Visa here.  Indeed, Plaintiffs' allegations against Visa are the same

15   allegations the Seventh Circuit differentiated in *Salesforce*.  As the Seventh Circuit held

16   in *Salesforce*, "[the] relationship between Salesforce and Backpage [was] much closer

17   than that between a web-hosting service or a *credit-card payment processor and a*

18   *website*," because, unlike "the credit card companies [who] were only 'remote

19   intermediaries,' indifferent to any of Backpage's allegedly illegal activities," Salesforce

20   provided "targeted" support to Backpage.  *Id.* at 560–563 (emphasis added).  Moreover,

21   when distinguishing *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 725 (11th Cir. 2021),

22   the Seventh Circuit held that unlike the "franchisor defendants" in *Red Roof Inns*, who

23   were "one step removed from the sex traffickers (i.e., street-level trafficker → hotel →

24   hotel franchisor)," Salesforce "had a direct and long-term contractual relationship with

25   [the] sex trafficker."  *Salesforce.com, Inc.*, 76 F.4th at 562.  Again, there are no such

26   allegations here.

27        Plaintiffs do not allege that Visa "directly" participated in Plaintiffs' trafficking.

28

Plaintiffs allege only that Visa merely offered its general payment network services—the same payment network services offered by MindGeek's multiple "other credit card companies." *See, e.g.*, K.A. Compl. ¶ 272.  As the Seventh Circuit held in *Salesforce*, "'participation' requires more than providing off-the-shelf software (or other common products or services from furniture to telephones or pizza deliveries)" or the "remote intermediary" services offered by "credit card companies." *Id.*  Plaintiffs' allegations are not sufficient to establish Visa's participation in any venture.

## B. Plaintiffs do not adequately allege knowledge

Like participation, Plaintiffs seek to apply a broad standard of knowledge in order to impute knowledge as to Visa, but Plaintiffs' proposed knowledge standard contravenes established and controlling precedent.

First, Plaintiffs misconstrue Judge Carney's ruling in *Fleites*.  Opp'n at 25. Plaintiffs assert that in *Fleites* Judge Carney "found that plaintiff easily alleged" Visa's knowledge regarding the illicit content on MindGeek's tubesites and that this general knowledge is sufficient to hold Visa liable under Section 1591(a)(2).  *Id.*  But Judge Carney, when faced with substantially the same allegations of knowledge as Plaintiffs raise here against Visa, summarily dismissed the plaintiff's direct liability claim because the allegations "do not reflect that Visa had any *knowledge*—constructive or otherwise— of Plaintiff, her videos, or her age in the videos." *Fleites v. MindGeek S.A.R.L.*, 617 F. Supp. 3d 1146, 1162 (C.D. Cal. 2022) (emphasis added).  Just as in *Fleites*, Plaintiffs here do not allege that Visa had any knowledge of Plaintiffs, Plaintiffs' trafficking, or Plaintiffs' videos on MindGeek's websites.  Plaintiffs only allege that Visa generally had (or should have had) knowledge of illicit, unlawful content on MindGeek's websites. *See, e.g.*, K.A. Compl. ¶¶ 274–285.  Judge Carney's reasoning and ruling on Visa's alleged knowledge in *Fleites* applies here with equal force.

Second, Plaintiffs' assertion that the "'majority of courts'" do not require knowledge of a specific victim is wrong.  Opp'n at 26.  As addressed in Visa's reply in

*Fleites*, the "majority of courts" have found the exact opposite. *See* Ex. A, at 8–10; *see, e.g.*, *Red Roof Inns, Inc.*, 21 F.4th at 725 (requiring "actual or constructive knowledge that the venture … violated the TVPRA *as to the plaintiff*") (emphasis added); *J.M. v. Choice Hotels Int'l, Inc.*, No. 2:22-cv-00672, 2022 WL 10626493, at *5 (E.D. Cal. Oct. 18, 2022) ("general knowledge of sex trafficking problems in the hotel industry" was "insufficient to demonstrate defendants should have known about [plaintiff's] trafficking"); *Doe #9 v. Wyndham Hotels & Resorts, Inc.*, No. 4:19-CV-5016, 2021 WL 1186333, at *1 (S.D. Tex. Mar. 30, 2021) ("[T]he complaint must contain facts sufficient to establish that the defendant knew or should have known about the trafficking *of the plaintiff in particular*…."). While some courts have held that defendants must have at least "constructive knowledge of a non-generalized and non-sporadic—a 'particular'— venture," *see* Ex. A, at 9–10, those courts are not in the majority. *See S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020).

Even if, however, Plaintiffs' contention regarding the "majority of the courts" was correct, courts are in wide agreement that at *minimum*, plaintiffs must allege constructive knowledge of a *particular* venture. *See, e.g.*, *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159 (9th Cir. 2022) ("*Ratha I*"). In *Ratha I*, the Ninth Circuit held that "[s]weeping generalities" regarding the Thai shrimp industry were insufficient to infer the defendant's knowledge of the "specifically alleged TVPRA violations." *Id.* at 1177. To show knowledge, the plaintiff would need to show the defendant's knowledge of the *particular* venture that injured the plaintiff. *See id.*

Plaintiffs do not adequately allege Visa's knowledge under either of the aforementioned standards. Plaintiffs do not allege that that Visa had any knowledge of: (i) Plaintiffs' trafficking, (ii) Plaintiffs' videos creation or proliferation on MindGeek, or (iii) of the trafficking ventures that allegedly caused Plaintiffs' harm. Plaintiffs generally point to MindGeek's websites and MindGeek affiliated websites, to support Visa's knowledge, but these "sweeping generalities" do not support the knowledge required

under the TVPRA. *See, e.g.*, K.A. Compl. ¶¶ 273–276, 280–282.

Third, Plaintiffs also wrongly assert that "willful blindness" is sufficient to establish knowledge. Opp'n at 25. As addressed in Visa's reply in *Fleites*, *see* Ex. A, at 5, willful blindness of "unlawful content" by itself is not enough. *See, e.g.*, *Choice Hotels Int., Inc.*, 473 F. Supp. 3d at 154 (holding hotel franchise could not be civilly liable under Section 1595(a) of the TVPRA because "knowledge or *willful blindness* of a general sex trafficking problem … does not satisfy the *mens rea* requirements of the TVPRA"). When considering the criminal predicate for a civil claim under Section 1595(a) in *Does No. 1-6 v. Reddit, Inc.*, 51 F.4th 1137 (9th Cir. 2022) ("*Reddit*"), *cert denied*, 143 S. Ct. 2560 (2023), the Ninth Circuit was clear—Section 1591 "does not target those that merely 'turn a blind eye to the source of their [revenue].'" *Id.* at 1145 (quoting *United States v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016)). As explained by the Ninth Circuit in *Reddit*, "knowingly benefitting from participation in such a venture requires actual knowledge and 'a causal relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit.'" *Id.* The Ninth Circuit's reasoning in *Reddit* holds true here.

Fourth, Plaintiffs' attempt to apply a broad knowledge standard in order to import knowledge on Visa would raise constitutional issues. While Visa is not a distributor of published material and does not itself directly claim a First Amendment interest in the conduct at issue, as provided in the *Fleites* briefing, *see* Ex. A, at 11–12, which Visa specifically incorporates herein, holding Visa or any party tangentially related to MindGeek's business would create a chilling effect directly in contravention of settled precedent.

Finally, Plaintiffs do not plausibly allege that Visa "knowingly benefitted" from its alleged participation. Plaintiffs assert only that "Visa collected millions of dollars in fees from the MindGeek entities and a significant portion of those fees came from illegal content." Opp'n at 26. Plaintiffs point to no factual support for this claim, and, as

discussed above, *supra* Section I.B., a court should not accept as true "conclusory, unwarranted deductions of fact, or unreasonable inferences.'" *Khoja*, 899 F.3d at 1008.

Plaintiffs therefore have not adequately alleged either participation by knowledge as to Visa, and their direct liability claims against Visa fail.

**III.    The Complaints Fail To Adequately Allege Civil Conspiracy Against Visa**

Plaintiffs' Section 1594(c) and 1595(a) claims against Visa, as well as Plaintiffs' claims for common-law conspiracy, fail for the reasons stated in Visa's reply in the *Fleites* case.  *See* Ex. A, at 12–20.  Pursuant to the direction of the Court, *see* ECF No. 54, Visa incorporates those arguments by reference here.  As Plaintiffs acknowledge, to adequately allege a claim of conspiracy, they must allege that all defendants knowingly and intentionally agreed, "either tacitly or explicitly, to further the MindGeek venture."  *See* Opp'n at 51 (citing *In re McKinsey & Co., Inc. Nat'l Prescription Opiate Litig.*, MDL No. 3084, 2024 WL 2261926, at *6–7 (N.D. Cal. May 16, 2024)).  Plaintiffs failed to allege any of these elements here.  Visa will not repeat its arguments here, but notes for the Court that the Seventh Circuit recently confirmed in an en banc ruling that "repeated, distribution-quantity sales of innocuous goods between a buyer and seller do not, on their own, show a conspiratorial agreement, *even when the seller knows that the buyer plans to use those innocuous goods for illicit activities*."  *United States v. Page*, No. 21-3221, 2024 WL 5154496, at *5 (7th Cir. Dec. 18, 2024) (en banc) (emphasis added).  The Seventh Circuit observed that this framework is "in harmony with [the] sister circuits."  *Id.* Application of that fundamental rule confirms here that Plaintiffs have failed to allege the existence of an agreement to benefit from participation in an unlawful trafficking venture.

**IV.    Plaintiffs' Opposition Does Not Address The Flaws in Plaintiffs' State Law Claims Against Visa Under California Business and Professions Code §§ 17200, 17500**

Plaintiffs' claims against Visa for unfair business practices or false advertising under California Business and Professions Code §§ 17200, 17500 (the UCL) fail for the reasons stated in Visa's reply in the *Fleites* case. *See* Ex. A, at 20.  Pursuant to the

direction of the Court, *see* ECF No. 54, Visa incorporates those arguments by reference here.

"To constitute an 'unlawful' business act, a plaintiff must allege facts sufficient to show a violation of some underlying law." *Iron Bridge Mortg. Fund, LLC v. Bank of Am., N.A.*, 539 F. Supp. 3d 1030, 1040 (N.D. Cal. 2021). For all the reasons discussed above, Plaintiffs have not sufficiently pled that Visa violated any underlying law. Accordingly, Plaintiffs' UCL claim and conspiracy to violate the UCL claim both fail, as UCL claims cannot stand alone. *See Soil Retention Prod., Inc. v. Brentwood Indus., Inc.*, 521 F. Supp. 3d 929, 957 (S.D. Cal. 2021). ("Where a plaintiff cannot state a claim under a 'borrowed' law, he or she cannot state a UCL claim either.")

## V.    The Complaints Do Not Allege Any "Extreme" And "Outrageous" Conduct By Visa Or That Visa Had Any Intent Or Even Knowledge Of Plaintiffs

Plaintiffs' IIED claim fails as a matter of law because Plaintiffs do not and cannot allege the essential elements as to Visa. ECF No. 59-1, at 17–20.

First, Plaintiffs' Opposition continues to impermissibly lump all defendants together. ECF No. 59-1 at 18. Because Plaintiffs cannot allege that Visa's conduct—processing payments—was extreme or outrageous, Plaintiffs revert back to impermissible group pleading, alleging with broad strokes that all Defendants played a "role in supporting and growing MindGeek's illegal activities." *See* Opp'n at 45. Plaintiffs cannot lump all Defendants together without distinction. *See Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945, 964 (N.D. Cal. 2015) (cleaned up) (A complaint that "lumps together . . . multiple defendants in one broad allegation fails to satisfy the notice requirement of Rule 8(a)(2)."). Indeed, this effort is yet another way in which Plaintiffs impermissibly seek to attribute the actions of third parties to Visa.

Second, Plaintiffs do not allege any "extreme" or "outrageous" conduct by Visa. ECF No. 59-1 at 18–19. Plaintiffs allege only that Visa processed "credit card payments" for advertisements on MindGeek's free tubesites that may or may not have appeared

alongside one of the videos involving Plaintiffs. Opp'n at 63–64. Such ordinary business conduct is not enough to sustain an IIED claim. *See Mayfield v. County of Merced*, No. CV F 13-1619, 2014 WL 2574791, at *15 (E.D. Cal. June 9, 2014) ("[A]ctions that are within the realm of ordinary personnel actions by an employer—such as hiring, firing, setting duties and priorities—are insufficient to support a claim of IIED even when those decisions are motivated by improper considerations such as retaliation or discrimination."). Moreover, as addressed above, *supra* Sections I.B, and as repeatedly acknowledged by Plaintiffs, Visa was just one of many payment networks for MindGeek.

Plaintiffs' reliance on *Ford v. Revlon* is misplaced, as the facts there are inapposite. *See* Opp'n at 45. In *Ford*, the Arizona Supreme Court held that an employer could be liable for intentional infliction of emotional distress where the employer knew the employee was being sexually harassed by her supervisor, yet allowed the conduct to go on for a year before acting to stop the harassment. *Ford v. Revlon, Inc.*, 153 Ariz. 38, 43 (1987). In finding Revlon's conduct was "extreme or outrageous," the Arizona Supreme Court noted that the employee "made numerous Revlon managers aware" of her supervisor's harassment. *Id.* at 43. That is not the case here. Plaintiffs only assert, without any support, that Visa was "well aware that it was processing payments for ads placed next to child pornography and non-consensual content." Opp'n at 45. But as discussed, there is simply no factual basis for that claim and Plaintiffs' own allegations undermine this claim. *Id.* at 65. When faced with similar claims of IIED based upon general business activities, California courts have found those allegations to be insufficient to support an IIED claim. *See Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 80 (1996) ("A simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged."); *see also Mayfield*, 2014 WL 2574791, at *15.

Third, Plaintiffs make no allegations that Visa had any awareness of Plaintiffs or Plaintiffs' illicit content, had any intent towards Plaintiffs, or exercised any specific

1    conduct towards Plaintiffs. "Extreme" or "outrageous" conduct—neither of which

2    Plaintiffs adequately allege Visa engaged in—by itself is not enough. The conduct must

3    be "directed at the plaintiff" and the defendant must know the identity of the plaintiff.

4    *See Christensen v. Super. Ct.*, 54 Cal. 3d 868, 903 (1991) ("It is not enough that the

5    conduct be intentional and outrageous. It must be conduct directed at the plaintiff, or occur

6    in the presence of a plaintiff of whom the defendant is aware."); *Jacobson v. Marin Gen.*

7    *Hosp.*, 192 F.3d 881, 887 (9th Cir. 1999). There are no such allegations here.

8        Finally, apparently aware of the legal failures in their IIED claims, Plaintiffs

9    generally assert that "Defendants' counterfactual narratives of their roles and wrongdoing

10   should not be credited on this motion, where the Court must accept Plaintiffs' allegations

11   as true." Opp'n at 44. But Plaintiffs forget that the Court does not have to accept as true

12   conclusory allegations (much less legal conclusions) devoid of any facts. *See Benavidez*

13   *v. County of San Diego*, 993 F.3d 1134, 1145 (9th Cir. 2021) ("Thus, 'conclusory

14   allegations of law and unwarranted inferences are insufficient to defeat a motion to

15   dismiss.'") (internal citations omitted); *Khoja*, 899 F.3d at 1008 ("[T]he court [is not]

16   required to accept as true allegations that are merely conclusory, unwarranted deductions

17   of fact, or unreasonable inferences."). Plaintiffs do not allege that Visa directed any

18   conduct towards Plaintiffs or even had knowledge of Plaintiffs. And there is nothing to

19   support Plaintiffs' conclusory allegations of *law* that Visa's everyday business of

20   processing payments constituted "outrageous" or "extreme" conduct. Holding otherwise

21   would require the Court to make "unreasonable inferences." *See Khoja*, 899 F.3d at 1008.

22   In short, Plaintiffs' allegations are insufficient to establish liability against Visa.

23       Plaintiffs have not and cannot allege an IIED claim against Visa. The precedent is

24   clear. "[C]onclusory allegations of law and unwarranted inferences are insufficient to

25   defeat a motion to dismiss," and Plaintiffs' allegations against Visa do not overcome this

26   hurdle. *Adams*, 355 F.3d at 1183. Thus, Plaintiffs' IIED claims against Visa fail as a

27   matter of law.

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## VI.    Plaintiffs' Opposition Does Not Address Dismissal With Prejudice As To Visa

Plaintiffs offer no response to Visa's argument that Plaintiffs' claims should be dismissed with prejudice as to Visa.  Mot. 20–21.  The dispositive legal defects in Plaintiffs' claims cannot be cured by any amendment because Plaintiffs' conclusory and speculative allegations against Visa are legally insufficient.  *See Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990) (affirming dismissal with prejudice when amendment would be futile); *see also Adams*, 355 F.3d at 1183 ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss."). Plaintiffs' Opposition does not alter what is evident in Plaintiffs' complaints—that Visa is not a proper defendant, and all of the complaints should be dismissed with prejudice as to Visa.

## CONCLUSION

For these reasons and the reasons provided in Visa's Motion to Dismiss, the Court should dismiss all claims—Counts II, IV, XIV, XVI, and XVII—asserted against Visa, with prejudice.

Dated:  January 8, 2025                    Respectfully submitted,

WEIL, GOTSHAL & MANGES LLP

*/s/ Drew Tulumello*
DREW TULUMELLO (#196484)
drew.tulumello@weil.com
MARK A. PERRY (#212532)
mark.perry@weil.com
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
Tel: 202 682 7000
Fax: 202 857 0940

*Attorneys for Defendant Visa Inc.*

1

## CERTIFICATE OF COMPLIANCE

2      The undersigned, counsel of record for Visa, certifies that this brief is within the

3 twenty (20) page limit set by Court Order, ECF No. 473, Oct. 11, 2024.

4

5 Dated:  January 8, 2025                 */s/ Drew Tulumello*

6                                         DREW TULUMELLO

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28