JAMES M. PEARL (SB# 198481)
jamespearl@paulhastings.com
KIAURA CLARK (SB# 336314)
kiauraclark@paulhastings.com
**PAUL HASTINGS LLP**
1999 Avenue of The Stars, 27th Floor
Los Angeles, California 90067
Telephone: 1(310) 620-5700
Facsimile: 1(310) 620-5899

ADAM M. REICH (SB# 274235)
adamreich@paulhastings.com
EMMA LANZON (*pro hac vice*)
emmalanzon@paulhastings.com
**PAUL HASTINGS LLP**
71 South Wacker Drive, 45th Floor
Chicago, Illinois 60606
Telephone: 1(312) 499-6000
Facsimile: 1(312) 499-6100

*[Additional Counsel for Defendants
continued on next page]*

*Attorneys for Defendants Redwood Capital
Management, LLC; Redwood Master Fund,
Ltd; Redwood Opportunity Master Fund, Ltd;
Manuel 2018, LLC; Ginogerum, LLC; and
White-Hathaway Opportunity Fund, LLC*

## UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| K.A., | CASE NO. 2:24-cv-4786 |
| Plaintiff, | **REDWOOD DEFENDANTS' OMNIBUS REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINTS IN RELATED CASES** |
| vs. | |
| MINDGEEK S.A.R.L. a foreign entity; MG FREESITES, LTD., a foreign entity; MINDGEEK USA INCORPORATED, a Delaware corporation; MG PREMIUM LTD, a foreign entity; MG GLOBAL ENTERTAINMENT INC., a Delaware corporation; 9219-1568 QUEBEC, INC., a foreign entity; BERND BERGMAIR, a foreign individual; FERAS ANTOON, a foreign individual; DAVID TASSILLO, a foreign individual; VISA INC., a Delaware corporation; REDWOOD CAPITAL MANAGEMENT, LLC, a Delaware limited liability company; REDWOOD DOE FUNDS 1-7; COLBECK CAPITAL MANAGEMENT, | Date: January 31, 2025<br>Time: 1:30 p.m.<br>Place: Courtroom 9B<br>Judge: Hon. Wesley L. Hsu<br><br>SAC filed: May 23, 2024 |

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

1    LLC, a Delaware company, COLBECK DOE
     FUNDS 1-3,
2
                    Defendants.
3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

*[Additional Counsel for Defendants continued from caption page]*

2

3

KRISTOPHER M. HANSEN (*pro hac vice*)
krishansen@paulhastings.com
**PAUL HASTINGS LLP**
200 Park Avenue
New York, New York 10166
Telephone: 1(212) 318-6000
Facsimile: 1(212) 752-3310

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

**Page**

I.    Introduction ..................................................................................1

II.   Plaintiffs' Complaints Should be Dismissed Because Plaintiffs Lack Article III Standing.........................................................................2

III.  Plaintiffs' Complaints Should be Dismissed Under Rule 12(b)(6)................7

    A.    Plaintiffs Have Not Stated a TVPRA Claim Against Redwood...........7

    B.    Plaintiffs' Hybrid UCL/FAL Claim is Not Legally Viable...............24

    C.    Plaintiffs Fail to State a Claim for Intentional Infliction of Emotional Distress. ...............................................................26

    D.    Plaintiffs Fail to State a Claim for Civil Conspiracy.........................28

IV.   Conclusion....................................................................................30

# TABLE OF AUTHORITIES

Page(s)

CASES

*Acevedo v. eXp Realty, LLC,*
    713 F. Supp. 3d 740 (C.D. Cal. 2024) ...............................................................15

*Associated Gen. Contractors of Cal., Inc. v. Cal. Council of Carpenters,*
    459 U.S. 519 (1983) .............................................................................................10

*B.J. v. G6 Hosp., LLC,*
    2023 WL 3569979 (N.D. Cal. May 19, 2023) ....................................................12

*B.M. v. Wyndham Hotels & Resorts, Inc.,*
    2020 WL 4368214 (N.D. Cal. July 30, 2020) ........................................12, 17, 18

*Barnett v. County of Los Angeles,*
    2021 WL 826413 (C.D. Cal. Mar. 4, 2021) ........................................................18

*Bonacasa v. Standard Chartered PLC,*
    2023 WL 2390718 (S.D.N.Y. Mar. 7, 2023) ........................................................9

*Brill v. Chevron Corp,*
    2017 WL 76894 (N.D. Cal. Jan. 9, 2017) .............................................................4

*Cady v. Anthem Blue Cross Life & Health Ins.,*
    583 F. Supp. 2d 1102 (N.D. Cal. 2008) ................................................................7

*Chang v. Wachovia Mortg., FSB,*
    2011 WL 5552899 (N.D. Cal. Nov. 15, 2011) ...................................................27

*Christensen v. Superior Court,*
    54 Cal. 3d 868 (1991) ..........................................................................................27

*City of Los Angeles v. Wells Fargo & Co.,*
    22 F. Supp. 3d 1047 (C.D. Cal. 2014) ..................................................................7

*Compound Prop. Mgmt., LLC v. Build Realty, Inc.,*
    462 F. Supp. 3d 839 (S.D. Ohio 2020) ...............................................................29

*Craigslist Inc. v. 3Taps Inc.,*
    942 F. Supp. 2d 962 (N.D. Cal. Apr. 30, 2013) .................................................30

*Doe 1 v. Deutsche Bank Aktiengesellschaft*,
   671 F. Supp. 3d 387 (S.D.N.Y. 2023) ............................................................ 18

*Doe I v. Apple Inc.*,
   2021 WL 5774224 (D.D.C. Nov. 2, 2021), *aff'd*, 96 F.4th 403 (D.C. Cir.
   2024) ........................................................................................ 19, 20, 21

*Doe (L.M.) v. 42 Hotel Raleigh, LLC*,
   2024 WL 4204906 (E.D.N.C. Sept. 16, 2024) ................................... 8, 14, 15

*Doe (L.M.) v. 42 Hotel Raleigh, LLC*,
   717 F. Supp. 3d 464 (E.D.N.C. 2024) ............................................................ 18

*Doe v. Mindgeek USA Inc.*,
   558 F. Supp. 3d 828 (C.D. Cal. 2021) ................................................... 12, 16

*Does 1-6 v. Reddit, Inc.*,
   51 F.4th 1137 (9th Cir. 2022) ........................................................................... 8

*Fleites v. MindGeek S.A.R.L.*,
   617 F. Supp. 3d 1146 (C.D. Cal. 2022) ................................................ *passim*

*Ford v. Revlon, Inc.*,
   153 Ariz. 38 (Ariz. 1987) ............................................................................... 28

*G.G. v. Salesforce.com, Inc.*,
   76 F.4th 544 (7th Cir. 2023) ................................................... 12, 13, 15, 18

*Grant v. WMC Mortg. Corp.*,
   2010 WL 2509415 (E.D. Cal. June 17, 2010) ............................................... 27

*Holmes v. SIPC*,
   503 U.S. 258 (1992) .......................................................................................... 9

*J.B. v. G6 Hosp., LLC*,
   2020 WL 4901196 (N.D. Cal. Aug. 20, 2020) ............................................... 12

*J.C. v. Choice Hotels Int'l, Inc.*,
   2020 WL 6318707 (N.D. Cal. Oct. 28, 2020) ....................................... 15, 16, 17

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014) ........................................................................................ 10

*Louers v. Lacy*,
   2012 WL 5426442 (D. Md. Nov. 6, 2012) ....................................................... 9

*Marceau v. Int'l Bhd. of Elec. Workers Local 1269*,
   2006 WL 1889600 (D. Ariz. July 7, 2006)........................................................10

*Maya v. Centex Corp.*,
   658 F.3d 1060 (9th Cir. 2011) ...............................................................2, 3

*Merriam v. Demoulas*,
   2013 WL 2422789 (D. Mass. June 3, 2013)........................................................5

*Morrison v. Nat'l Austl. Bank Ltd.*,
   561 U.S. 247 (2010) ...............................................................19

*Nat'l Org. for Women, Inc. v. Scheidler*,
   510 U.S. 249 (1994) ...............................................................5

*Nw. Mortg., Inc. v. Superior Court*,
   72 Cal. App. 4th 214 (1999) ...............................................................25

*Oxbow Carbon & Mins. LLC v. Union Pac. R.R. Co.*,
   81 F. Supp. 3d 1, 7 (D.D.C. 2015 ...............................................................5

*Perez v. Nidek Co.*,
   711 F.3d 1109 (9th Cir. 2013) ...............................................................6

*Potter v. Firestone Tire & Rubber Co.*,
   6 Cal. 4th 965 (1993) ...............................................................27

*Ratha v. Rubicon Res., LLC*,
   111 F.4th 946 (9th Cir. 2024) ...............................................................*passim*

*RJR Nabisco, Inc. v. Eur. Cmty.*,
   579 U.S. 325 (2016) ...............................................................19, 20, 21

*Roe v. Howard*,
   917 F.3d 229 (4th Cir. 2019) ...............................................................19, 20

*S.C. v. Hilton Franchise Holding LLC*,
   2024 WL 4773981 (D. Nev. Nov. 12, 2024) ...............................................................13, 14

*Sanders v. Model Prods. USA, Inc.*,
   2015 WL 13914860 (C.D. Cal. Dec. 14, 2015) ...............................................................27

*Sepulveda v. City of Whittier*,
   2019 WL 13070119 (C.D. Cal. Aug. 7, 2019) ...............................................................27

REDWOOD DEFENDANTS' OMNIBUS REPLY ISO MOTION TO DISMISS

*Steel Co. v. Citizens for a Better Env't*,
 523 U.S. 83 (1998) ....................................................................................7

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*,
 802 F. Supp. 2d 1125 (C.D. Cal. 2011) ......................................25, 28

*Sullivan v. Oracle Corp.*,
 51 Cal. 4th 1191 (2011).........................................................................25

*T.E. v. Wyndham Hotels & Resorts, Inc.*,
 2024 WL 474400 (S.D. Ohio Feb. 7, 2024) ........................................15

*Thinking Liberally Media Inc. v. Orange Juice Blog*,
 2010 WL 11596144 (C.D. Cal. Nov. 19, 2010)............................29, 30

*Tortilla Factory, LLC v. Humm Kombucha, LLC*,
 2018 WL 11408921 (C.D. Cal. July 25, 2018)....................................26

*United States ex rel. Hawkins v. ManTech Int'l Corp.*,
 2024 WL 4332117 (D.D.C. Sept. 27, 2024).........................................20

*United States v. Lennick*,
 18 F.3d 814 (9th Cir. 1994) ..................................................................30

*Young v. City of Menifee*,
 No. 5:17-cv-01630-JGB-SP, 2019 WL 3037926 (C.D. Cal. Apr. 5, 2019).......29

STATUTES

18 U.S.C. 1595 ............................................................................................22

18 U.S.C. § 1596 .........................................................................................19

18 U.S.C § 2257 ..........................................................................................29

Pub. L. No. 110-457, § 223(a), 122 Stat. 5044 (2008) ............................19

RULES

Fed. R. Civ. Proc. 8 ....................................................................................27

REDWOOD DEFENDANTS' OMNIBUS REPLY ISO MOTION TO DISMISS

## I.    INTRODUCTION[1]

Plaintiffs'[2] Opposition does nothing to address the fatal deficiencies identified by Redwood and this Court's prior opinion in *Fleites*.  Plaintiffs do not dispute that their beneficiary liability allegations cannot survive under this Court's prior decision, but instead ignore that decision and advocate for the application of inapposite out-of-circuit case law.  Plaintiffs also do not dispute that, if ATRA is not retroactive, their conspiracy allegations are insufficient.  The plain language of *Ratha v. Rubicon Res., LLC*, 111 F.4th 946 (9th Cir. 2024) settles that question.  And finally, Plaintiffs still can point to no facts suggesting Redwood's agreement and intent to aid in a violation of the TVPRA.  They instead cling to language that exists in nearly every loan document to conjure up a speculative "ability to control" standard that is without support in the case law.  That is patently insufficient.

Each of Plaintiffs' claims against Redwood suffers from at least one fatal legal infirmity.  *First,* the Court should adhere to its prior opinion in *Fleites* and controlling Ninth Circuit case law and decline to find beneficiary liability because: (i) Plaintiffs fail to allege ***any*** relationship (let alone a "continuous business relationship") between Redwood and the Plaintiffs' actual traffickers; and (ii) Plaintiffs allege no constructive knowledge on the part of Redwood of ***Plaintiffs'*** sex trafficking.  The lack of any direct relationship between Redwood and Plaintiffs or their traffickers also defeats both standing under Article III and Plaintiffs' ability to allege proximate causation.  *Second,* Section 1595 of the TVPRA does not extend extraterritorially to injuries and harm that occurred outside of the United States.  *Third,* Plaintiffs'

---

[1] Pursuant to Dkt. 105, Redwood respectfully submits this reply on behalf of Defendants Redwood Capital Management, LLC, Redwood Master Fund, Ltd, Redwood Opportunity Master Fund, Ltd, Manuel 2018, LLC, Ginogerum, LLC, and White-Hathaway Opportunity Fund, LLC (collectively, "Redwood" or the "Redwood Defendants").

[2] All capitalized terms herein have the same definitions as set forth in Redwood's Memorandum of Points and Authorities in Support of Motion to Dismiss Plaintiffs' Complaints in Related Cases.  *See* Dkt. 68-1.

REDWOOD DEFENDANTS' OMNIBUS REPLY ISO MOTION TO DISMISS

TVPRA conspiracy claim fails because all of the alleged conduct occurred prior to 2023. This Court should reject Plaintiffs' invitation to ignore the Ninth Circuit's clear language and to limit the holding of *Ratha*. *Fourth,* Plaintiffs' generalized conspiracy allegations fail to meet the pleading standard of any published case law. There is no case or doctrine that allows a court to infer an "agreement" or "intent" to aid in a TVPRA violation based solely upon one lender's (among many others') agreement *to provide financing.* That is all that Redwood did. *Fifth*, because Plaintiffs cannot establish beneficiary or conspiracy liability under the TVPRA, Plaintiffs' derivative claims under California's consumer protection statutes and common law civil conspiracy also fail. *Finally*, Plaintiffs cannot state a claim for intentional infliction of emotional distress because they: (i) rely on impermissible group pleading; (ii) fail to offer *any* case law suggesting that Redwood's routine arm's-length financing agreements could conceivably constitute "extreme or outrageous conduct"; and (iii) fail to allege Redwood's conduct was directed towards them or actually and proximately caused their severe emotional distress.

Plaintiffs' Complaints should accordingly be dismissed with prejudice.

## II.     PLAINTIFFS' COMPLAINTS SHOULD BE DISMISSED BECAUSE PLAINTIFFS LACK ARTICLE III STANDING[3]

To allege the traceability element of Article III standing, Plaintiffs must allege a "line of causation" between Redwood's action and Plaintiffs' alleged harm "that is more than 'attenuated.'" *Maya v. Centex Corp*., 658 F.3d 1060, 1070 (9th Cir. 2011) (citation omitted). No such "line of causation" exists here because the connection between Redwood's alleged conduct and Plaintiffs' injuries involved numerous third

---

[3] Plaintiffs fully incorporate by reference the arguments made in the *Fleites* Opposition with respect to Article III standing. *See* Dkt. 96-1 ("Opp.") at 67. But these arguments fail for the reasons set forth in Redwood's *Fleites* Motion to Dismiss at Dkt. 450-6 ("*Fleites* Motion") and Reply at Dkt. 495-1 ("*Fleites* Reply"), both of which are incorporated by reference herein.

1  parties and the Complaints contain no allegations showing that Plaintiffs' CSAM

2  would not have been uploaded if Redwood did not exist.  Dkt. 68-1 ("Mot.") at 17

3  (citing *Fleites* Mot. at 14-18).  To the contrary, given the ▮▮▮▮ of parties that

4  participated in financing for MindGeek (including some of the world's largest asset

5  managers and banks), MindGeek easily could have obtained financing had Redwood

6  not existed.  *See Fleites* Mot. at 8-9.

7      In a misguided attempt to counter this reality, Plaintiffs first argue that the

8  "existence of other lenders in the syndicates does not defeat the centrality of

9  Colbeck's and Redwood's roles to Plaintiffs' harm[.]" Opp. at 67.  But this argument

10 is a red herring, as Plaintiffs simply draw *no connection* between the financing

11 provided by Redwood to MindGeek and the harm Plaintiffs suffered *at the hands of*

12 *their traffickers*.[4]  Nor do Plaintiffs directly connect Redwood's financing of

13 MindGeek, on the one hand, to the upload and dissemination of their CSAM, on the

14 other.  They merely allege a chain of speculation—specifically, that Redwood *could*

15 *have* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮," Opp. at 67, which

16 purportedly *would have* left MindGeek with "▮▮▮▮▮▮▮▮▮▮▮

17 ▮▮▮▮▮▮"  *See Fleites* Opp. at 59 (incorporated by reference at Opp. at 67).

18 This "hypothetical" and "attenuated" connection is insufficient to establish Article

19 III standing.  *See Centex Corp.*, 658 F.3d at 1070 ("A causation chain does not fail

20 simply because it has several 'links,' provided those links are 'not hypothetical or

21 tenuous' and remain 'plausib[le].'").

22

23 [4] Plaintiffs state in their Opposition that "Colbeck and Redwood advised and led the

24 syndicates and thus were responsible for bringing other lenders into the financing,"
   but the Complaints do not allege that *Redwood* was responsible for bringing other

25 lenders into the financing.  *Compare* Opp. at 67, *with* K.A. Compl. ¶ 246 ("*Colbeck*

26 *was the initial lead lender that advised and assembled a syndicate of similar hedge*
   *funds to finance MindGeek's growth* (the 'Colbeck Syndicate'), and Redwood would

27 become one of the largest financiers.") (emphasis added).  Regardless, even if true,

28 bringing other lenders into the financing of MindGeek is not sufficient to establish a
   chain of causation to Plaintiffs' harm for the same reasons as stated above.

1    Additionally, Plaintiffs' attempt to cobble together a hypothetical chain of
2    causation lacks any legal support.  Plaintiffs speculate that Redwood *could have*
3    controlled MindGeek.  *See, e.g.,* Opp. at 17-18 ("the Colbeck syndicate owned
4    Manwin and during the term of the financing *had the ability to control* virtually all
5    aspects of the business and receive the vast majority of its earnings[]") (emphasis
6    added).  But they point to no facts showing an *actual* exercise of control by Redwood
7    over MindGeek.  Their allegations also fail common sense.  Plaintiffs' allegations of
8    control depend entirely on loan terms that appear in virtually all lender agreements
9    and allow lenders ███████████████████████████████.  *See id*. at
10   67; Dkts. 450-2 § 6.01(h), 450-3 § 6.01(h).  Following Plaintiffs' logic, anyone
11   harmed by any company's violation of the law would have standing to sue any of the
12   company's lenders if the loan agreement has a standard covenant to ██████████.
13   Plaintiffs, unsurprisingly, point to no case in any jurisdiction finding that the lenders'
14   right to █████████████ in the event a borrower ██████████ confers the kind of
15   broad Article III standing to sue lenders that is needed here.

16   Plaintiffs instead cite to *Brill v. Chevron Corp*, 2017 WL 76894 (N.D. Cal. Jan.
17   9, 2017*)*.  But *Brill* is distinguishable.  In *Brill*, Chevron was alleged to have
18   contributed to financial rewards ultimately provided to suicide bombers, whose
19   families received bounties for the bombings.  *Id*. at *3.  These bounties were "alleged
20   to have been the single most effective strategy in inciting terrorist acts[]" (the cause
21   of the plaintiffs' harm).  *Id*.  The plaintiffs in *Brill* importantly drew "a connection
22   between those rewards"—alleged to have been partially funded by Chevron—"and
23   the attacks at issue" in the complaint.  *Id.*  Not so here.  Plaintiffs do not allege (nor
24   can they) that Redwood's funding was used to incentivize Plaintiffs' trafficking or to
25   monetize CSAM on MindGeek's sites.  The threadbare connection (at best) between
26   Redwood's provision of part of a financing facility to MindGeek and Plaintiffs' harm
27   due to the dissemination of their CSAM is legions more tenuous than in *Brill*.

28

1   Plaintiffs next argue it is unimportant that Redwood "did not interact directly
2   with Plaintiffs' street level traffickers or with her videos," because "Article III's
3   traceability requirement does not require that the defendant personally commit the
4   act that harms plaintiff." Opp. at 67-68. But this divagation answers a question that
5   was not posed. Redwood does not argue that it had to be the trafficker who directly
6   harmed plaintiff in order to incur liability. Instead, Redwood argues that being one
7   of many lenders who provided financing to the website which allegedly interacted
8   with the traffickers is simply too attenuated. *See* Mot. at 15. Plaintiffs fail to
9   substantively address this argument.

10   The cases Plaintiffs cite in support of their contention that Redwood may be
11   held liable for harms not committed by Redwood do not help them. *See* Opp. at 68.
12   In *Merriam v. Demoulas*, 2013 WL 2422789 (D. Mass. June 3, 2013), for example—
13   an unpublished, out-of-circuit decision—the court found that traceability was
14   satisfied under a theory of *vicarious liability*, rather than direct liability such as
15   Plaintiffs have claimed against Redwood here. Specifically, the plaintiffs in *Merriam*
16   alleged that they were directly harmed by the trustee defendants' irresponsible
17   investment, for which the director defendants were vicariously liable pursuant to the
18   applicable ERISA statute. 2013 WL 2422789, at *4. The court explicitly noted that,
19   because the director defendants would be liable under this ERISA vicarious liability
20   theory, "plaintiffs can maintain Article III standing here without showing that the
21   Director defendants directly harmed them." *Id.*

22   Additionally, in *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 255-
23   56 (1994), the court found plaintiff health care clinics had standing because they
24   alleged that a conspiracy by a coalition of anti-abortion groups to shut down clinics
25   had injured their business and/or property interests. Each of the anti-abortion groups,
26   moreover, shared a common purpose and agreement to shut down the clinics. By
27   contrast, here Redwood never entered into any agreement to traffic Plaintiffs, nor do
28   Plaintiffs even allege any such agreement. Further, *Oxbow Carbon & Mins. LLC v.*

*Union Pac. R.R. Co.,* 81 F. Supp. 3d 1, 7 (D.D.C. 2015) is another out-of-circuit case concerning the "injury" component of *antitrust standing* under Section 1 of the Sherman Act—not Article III standing—and thus is irrelevant here. Simply put, and contrary to Plaintiffs' implications otherwise, allegations of conspiracy or aiding and abetting liability do not permit Plaintiffs to forgo the Article III traceability analysis. *See Perez v. Nidek Co*., 711 F.3d 1109, 1112-13 (9th Cir. 2013) (rejecting plaintiff's "endeavor[] to sidestep the traceability hurdle . . . through his allegations of conspiracy and aiding and abetting").

Finally, Plaintiffs argue that Judge Carney's Article III holding in *Fleites* as to Visa should apply to Redwood. Opp. at 63. This Court's prior decision, however, actually supports Redwood's Motion. Judge Carney's rationale concerned entirely different facts, as Visa was alleged to have been the necessary vehicle for monetization of the plaintiff's CSAM. Emphasizing that "Plaintiff's case focuses on the monetization of child porn after it was made and posted to MindGeek's sites," Judge Carney held in *Fleites* that Visa was "unobscured by [] third parties" because it "knowingly provid[ed] the means through which MindGeek monetizes child porn once such content is already produced and posted" by "offer[ing] up its payment network" to allow MindGeek's monetization of Plaintiff's videos via "advertisements running alongside it[.]" *Fleites v. MindGeek S.A.R.L.*, 617 F. Supp. 3d 1146, 1155-56, 1158 (C.D. Cal. 2022). In other words, Article III standing existed, under Judge Carney's view, because it was alleged that Visa provided "the mechanism through which MindGeek earns profit[]" from child pornography. *Id.* at 1156. No similar findings could be made against Redwood, which merely issued a loan to MindGeek and had *no* connection to the "monetization of child porn after it was made and posted to MindGeek's sites[.]" *See id.* at 1155*; Fleites* Mot. at 16, note 7.

Recognizing the futility of their position, Plaintiffs suggest that "[u]ltimately, the extent of Redwood's and Colbeck's control over the MindGeek business and its

policies is a factual question that requires discovery." *See* Opp. at 67.  But the only case Plaintiffs cite for such a proposition, *City of Los Angeles v. Wells Fargo & Co.,* is inapposite.  22 F. Supp. 3d 1047, 1054 (C.D. Cal. 2014).  In *City of Los Angeles*, the court found that Article III standing was sufficiently alleged (and the plaintiff should therefore be afforded an opportunity to conduct discovery) despite independent actions in the causal chain, because "many of the independent actions that Defendants contend defeat causation" were "*produced by or the result of Defendants' challenged conduct.*"  *Id.* at 1054 (emphasis added).  Not so here.  Redwood's loans did not cause Plaintiffs' CSAM to be posted.  It did not provide the means for monetization.  Nor is there any allegation Redwood's financing was used to directly reward any traffickers.  Discovery simply would not further Plaintiffs' case, nor is it appropriate given Plaintiffs' inadequate allegations.  *See Cady v. Anthem Blue Cross Life & Health Ins.*, 583 F. Supp. 2d 1102, 1107 (N.D. Cal. 2008) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-94 (1998)) (denying plaintiff's request for discovery to determine whether standing exists because the court "cannot assume 'hypothetical jurisdiction' to order discovery" where there is no standing).  Accordingly, Plaintiffs' claims against Redwood should be dismissed for failure to allege Article III standing.

## III.  PLAINTIFFS' COMPLAINTS SHOULD BE DISMISSED UNDER RULE 12(b)(6)

### A.    Plaintiffs Have Not Stated a TVPRA Claim Against Redwood.

#### 1.    If This Court Finds MindGeek Immune From Liability Under Section 230 of the CDA, Plaintiffs Cannot State a Civil TVPRA Claim Against Redwood.

Section 230 of the CDA provides ICSPs such as MindGeek broad immunity from liability for content posted to their websites by third parties.  *See* Mot. at 20-21.  If this Court finds MindGeek immune from TVPRA liability under Section 230, then Redwood cannot be liable.

Plaintiffs argue that Section 230 does not immunize Redwood because their claims "do not treat [Redwood] as the publisher[] or speaker[] of third-party content."[5] *See* Opp. at 59, note 47. But such a contention is irrelevant because "a civil TVPRA venture must include at least one party which criminally violated a statute for which the TVPRA provides civil recourse[.]" *See, e.g.*, *Doe (L.M.) v. 42 Hotel Raleigh, LLC*, 2024 WL 4204906, at *4 (E.D.N.C. Sept. 16, 2024). If the Court holds that MindGeek is entitled to CDA immunity, that necessarily entails a finding that MindGeek did not criminally violate the TVPRA. *See, e.g.*, *Does 1-6 v. Reddit, Inc.*, 51 F.4th 1137, 1137 (9th Cir. 2022) (plaintiffs invoking FOSTA[6] must "plausibly allege that website's own conduct violated federal criminal child sex trafficking statute"). Without MindGeek's alleged criminal conduct then, Plaintiffs cannot establish "*MindGeek's* trafficking venture"—the civil TVPRA venture of which Redwood is allegedly a part—and the claims against Redwood likewise fail. *See* K.A. Compl. ¶¶ 51-56 (describing "*MindGeek's* trafficking venture") (emphasis added), ¶ 346 (alleging Redwood participated in MindGeek's trafficking venture).

## 2.    Plaintiffs Failed to Allege Proximate Cause.

Even if MindGeek is not found to be immune from liability under Section 230 of the CDA, Plaintiffs lack statutory standing to pursue their TVPRA claims against Redwood because they fail to adequately allege that their injuries were proximately caused by Redwood's alleged conduct. Mot. at 18, 21-23. Specifically, the Complaints do not—because they cannot—allege that Plaintiffs' injuries flowed "directly" from any alleged conduct on the part of Redwood.[7] *See id.* at 22.

---

[5] Plaintiffs also erroneously argue that Redwood "d[id] not assert a Section 230 defense[,]" Opp. at 59, note 47, but Redwood asserted a Section 230 defense in its Omnibus Motion. *See* Omnibus Mot. at 19-21.

[6] FOSTA, an amendment to Section 230 of the CDA passed in 2018, "provides that section 230 immunity does not apply to certain sex trafficking claims," including Section 1595 of the TVPRA. *Id.* at 1140.

[7] Plaintiffs respond that they are not required to plead proximate cause with respect to their TVPRA claims but otherwise only incorporate by reference the arguments

Plaintiffs do not dispute that they do not, and cannot, allege that Redwood has had **any** connection with Plaintiffs or their traffickers. Plaintiffs instead argue that they need not plead proximate cause with respect to their TVPRA and conspiracy claims and that, regardless, "the [complaints] allege[] the requisite link between defendant's conduct and Plaintiff[s'] harm." *Fleites* Opp. at 62. Plaintiffs are incorrect on both counts.

The *Fleites* Opposition[8] cites two out-of-circuit cases to suggest that the TVPRA does not, in fact, require proximate cause because it is a "remedial statute" that imposes "secondary liability." Those cases do not so hold. In *Louers v. Lacy*, 2012 WL 5426442, at *2-3 (D. Md. Nov. 6, 2012), for instance, the District of Maryland construed a *state statute*. *See id.* at *3 (declining to read a proximate cause requirement into state statute and declining to rely on a case "which applies solely to a federal statute, to establish a new interpretation of State law"). And the court in *Bonacasa v. Standard Chartered PLC* held merely that a different statute (JASTA) "disclaimed any proximate cause requirement." 2023 WL 2390718, at *14 n.23 (S.D.N.Y. Mar. 7, 2023) (emphasizing Congress' explicit "directive that JASTA liability can flow 'indirectly'"). The TVPRA contains no such disclaimer.

The *Fleites* Opposition also seeks to distinguish the numerous Supreme Court and Ninth Circuit cases reading a proximate-cause, directness requirement into federal statutes as irrelevant. Plaintiffs reason that "unlike the statutes at issue in the cases cited by defendants, the TVPRA is a remedial statute that calls for liberal construction." *Fleites* Opp. at 61. But the statutes at issue in those cases requiring proximate cause also were broad, remedial, and liberally construed statutes. *See, e.g.*, *Holmes v. SIPC*, 503 U.S. 258, 274 (1992) (interpreting RICO as imposing a proximate-cause, directness requirement despite being "liberally construed to

---

made in *Fleites*. *See* Opp. at 69. To the extent not addressed here, Redwood fully incorporates the arguments made in its *Fleites* Reply. *See Fleites* Reply at 5-7.

[8] *See* note 7 *supra*.

effectuate its remedial purposes[]"); *Associated Gen. Contractors of Cal., Inc. v. Cal. Council of Carpenters*, 459 U.S. 519, 530 (1983) (imposing proximate cause requirement under antitrust statutes).

The *Fleites* Opposition next argues that the *Fleites* SAC "alleges the requisite link between [Redwood's] conduct and Plaintiff[s'] harm" because this Court "has already determined that *Visa's* support and facilitation of MindGeek's monetization of sex trafficking was the proximate cause of Plaintiff's injuries." *Fleites* Opp. at 62 (emphasis added). But that argument fails here, just as in *Fleites*. *See Fleites* Reply at 7. *First*, the Court in *Fleites* did not find Visa's conduct was the "proximate cause of Plaintiff's injuries," only that Visa's argument was "unpersuasive to the Court at this stage of the case." *See Fleites*, 617 F. Supp. 3d at 1164. *Second*, the facts specific to Visa are easily distinguishable from the allegations against Redwood. While Visa allegedly processed payments for advertisements placed alongside CSAM videos (including Fleites), *see Fleites*, 617 F. Supp. 3d at 1164-65, Redwood is only alleged to have provided partial financing to borrowers who were not Plaintiffs or their traffickers.[9] *See* Mot. at 22-23. As in *Fleites,* Plaintiffs' alleged harms here are simply "too remote" from Redwood's alleged conduct (lending), and therefore Plaintiffs fail to satisfy proximate cause. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014).

### 3.    <u>Plaintiffs Fail to Establish Redwood's Beneficiary Liability.</u>

Plaintiffs also fail to establish that: (1) Redwood "participated in a venture" that harmed Plaintiff; and (2) Redwood "knew or should have known" of Plaintiffs' sex trafficking, as required by the TVPRA. Mot. at 23-28. These inevitable conclusions flow directly from this Court's prior "participation" ruling in *Fleites*,

---

[9] Plaintiffs also argue (via the *Fleites* Opposition) that Redwood's "considerable influence and control over MindGeek's business" establish proximate cause. *Fleites* Opp. at 62. But, unlike in *Marceau v. Int'l Bhd. of Elec. Workers Local 1269*, 2006 WL 1889600 (D. Ariz. July 7, 2006), Plaintiffs allege no instance of *actual control* over MindGeek's business.

which requires direct interaction with a plaintiff's traffickers. *See id.* Plaintiffs ignore this Court's prior holding and Ninth Circuit precedent, instead arguing for the application of inapposite out-of-circuit case law. *See, e.g.,* Opp. at 5-9, 17-22. This Court should decline the invitation to reverse itself and defy applicable precedent.

### a. Redwood did not "Participate in a Venture."

#### i. Judge Carney's Decision in *Fleites* is Controlling.

Plaintiffs' Complaints do not adequately allege Redwood directly "participated in a venture" that harmed them. Mot. at 24-26. This Court has already explicitly held, in dismissing a beneficiary liability claim against Visa, that a similarly-situated plaintiff (Fleites) did not plausibly allege participation as to Visa because she failed to allege Visa had "*any direct interaction with [her], her direct traffickers, or her videos*[]*"* and therefore could not be liable for "knowingly *participating* in the sex trafficking venture that harmed Plaintiff." Mot. at 24 (citing *Fleites*, 617 F. Supp. 3d at 1161-62). This same rationale applies with full force to Redwood. Mot. at 24-26. Plaintiffs identify no reason why this Court should reverse itself on this key legal standard.

#### ii. Plaintiffs Do Not Allege Participation in a Venture Because They Do Not Allege a "Direct Association" or "Continuous Business Relationship" Between Redwood and Plaintiffs' Traffickers.

Plaintiffs also do not establish "participation" because they do not allege a continuous business relationship *between Redwood and their traffickers*. Mot. at 18-19, 24-26. This Court held—and other courts in the Ninth Circuit (and around the country) agree—that "participation" requires a plaintiff to allege the defendant's "continuous relationship with or tacit agreement with *Plaintiff[s'] . . . traffickers*[.]" *Fleites*, 617 F. Supp. 3d at 1162 (emphasis added). *See also* Mot. at 24-25.

Plaintiffs once again ignore this Court's decision in *Fleites* and argue that they need not allege a "continuous business relationship" between Redwood and their

traffickers. *See* Opp. at 8 (citing *Fleites* Opp. at 10-11). But Plaintiffs are wrong, as courts within the Ninth Circuit clearly require such a showing. *See, e.g., J.B. v. G6 Hosp., LLC*, 2020 WL 4901196, at \*9 (N.D. Cal. Aug. 20, 2020) (when there is no "direct association" between a trafficker and the defendant, a plaintiff must allege at least "a showing of *a continuous business relationship between the trafficker and the [defendant]* such that it would appear that the trafficker and the [defendant] have established a pattern of conduct or could be said to have a tacit agreement.") (alterations in original) (emphasis added); *B.J. v. G6 Hosp., LLC*, 2023 WL 3569979, at \*5 (N.D. Cal. May 19, 2023) (dismissing TVPRA claim for failure to show "any kind of 'tacit agreement'" between defendant *and the plaintiff's trafficker* in the alleged sex trafficking venture); *Doe v. Mindgeek USA Inc.*, 558 F. Supp. 3d 828, 837 (C.D. Cal. 2021) ("In the absence of direct association with traffickers, Plaintiff must 'allege at least a showing of a continuous business relationship between the trafficker and [Defendants] such that it would appear that the trafficker and [Defendants] have established a pattern of conduct or could be said to have a tacit agreement.'") (internal citations omitted); *B.M. v. Wyndham Hotels & Resorts, Inc.*, 2020 WL 4368214, at \*5 (N.D. Cal. July 30, 2020) (finding no "participation" where plaintiff failed to "connect the dots between [her] alleged sex trafficking" and the participant defendants).

Plaintiffs' reliance on the Seventh Circuit's holding in *Salesforce* is misplaced. *See* Opp. at 7. In *Salesforce,* the court held that plaintiffs adequately alleged Salesforce was liable as a participant under Section 1595 for "knowingly benefit[ing] from its participation in what it knew or should have known was Backpage's sex-trafficking venture." *See G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 548 (7th Cir. 2023). The court found that plaintiffs "plausibly alleged . . . a 'continuous business relationship[]'" between the participant defendant (Salesforce) and the trafficker (Backpage), because Salesforce provided Backpage with "'targeted solutions addressed to the needs of Backpage's business,' repeatedly assessed Backpage's

'operational needs,' and provided 'active, ongoing support' that was 'tailored' to those needs." *See id.* at 560 (footnote omitted). Critically, the plaintiffs in *Salesforce* alleged that defendant Backpage *was itself a sex trafficker* (or "perpetrator"), rather than a "participant." *See Salesforce*, 76 F.4th at 561. The court held that: "[a]ccording to the allegations in plaintiffs' complaint, *Backpage was also a sex trafficker* [in addition to plaintiff's street-level traffickers]." *Id.* Contrary to Salesforce's assumptions, therefore, Salesforce was not one step removed from G.G.'s traffickers. "***It was in a direct, prolonged, and supportive contractual relationship with one of those sex traffickers—Backpage.***" *Id.* at 561 (emphasis added). Plaintiffs argue—without support—that the court's findings in *Salesforce* "did not depend *just* on the allegation that Backpage itself was a direct trafficker." *See* Opp. at 9 (emphasis added). But this simply ignores that the vast majority of the Seventh Circuit's analysis regarding "participation" focused on plaintiffs' plausible allegations of a direct, "continuous business relationship" between participant Salesforce and the alleged trafficker, Backpage. *See Salesforce*, 76 F.4th at 559-65. Redwood is not alleged to have had any direct contact with or even knowledge of the Plaintiffs or their traffickers.

Plaintiffs then cite to two more out-of-circuit cases to argue that "[i]t is sufficient [for participation] that the 'continuous business relationship' be among those alleged to be participants in the venture and that one of the participants in the venture is guilty of a violation of Section 1591(a)(2)." Opp. at 8. In addition to contradicting this Court and the Ninth Circuit's standard for participation, the cases are also factually distinguishable. First, in *S.C. v. Hilton Franchise Holding LLC*, 2024 WL 4773981, at *5 (D. Nev. Nov. 12, 2024), the court found—without addressing the "participation" element as to Hilton—that Hilton benefitted from a venture that engaged in sex trafficking because its franchisee's "employees were under a duty to inform Hilton of suspected trafficking, and . . . *did [in fact] inform* Hilton of suspected trafficking during the relevant time period, *including [plaintiff]*

*S.C.'s trafficking.*" *Id.* (emphasis added).  Hilton also had extensive control over its franchisee's operations and was made aware of the direct trafficker's suspicious activity through Hilton's room reservation software, which was used to reserve the rooms for the trafficker.  *Id.* at *2.  Again, nowhere in the Complaints do Plaintiffs allege that Redwood knew or should have known of Plaintiffs' actual trafficking or had any interaction with Plaintiffs' traffickers.

Second, in *Doe (L.M.) v. 42 Hotel Raleigh, LLC*, 2024 WL 4204906 (E.D.N.C. Sept. 16, 2024), the court did not address the "continuous business relationship standard."  However, in discussing the franchisor hotel's (Hilton) participation in a venture, the court recognized that the plaintiff sufficiently alleged that "Hilton *facilitated* trafficking, not that Hilton just quietly observed it." *Id.* at *3 (emphasis added).  Those allegations included that "Hilton exercised 'systemic control' over [the franchisee hotel], including by issuing policies and procedures governing security, payment, training, and other circumstances.  At the time of [the plaintiff's] trafficking, Hilton allegedly knew that use of its properties for sex trafficking was a widespread problem, that [franchisee] staff were not taking reasonable steps to deter or detect sex trafficking, that Hilton's own efforts were not effective, and that its policies and practices were facilitating sex trafficking." *Id.* at *2.  The court ultimately sustained the beneficiary liability claim against Hilton, including because plaintiff alleged the franchisee employees "developed an 'implicit understanding'" with plaintiff's traffickers, knew her trafficker's name and addressed him by his "pimp name," and "checked in while plaintiff stood to the side visible" and exhibiting indicia of sex trafficking.  Importantly, the plaintiff alleged that the franchisee hotel "functioned as the *legal agent of [franchisor]* Hilton[,]" *id.* at *2, and the court "conclude[d] [the franchisee] . . . *was indeed Hilton's agent*, at least at the Rule 12 stage." *Id.* at *5 (emphases added).  Here, Plaintiffs' complaints fall far short of the allegations against Hilton in *Doe (L.M.)*.  And, unlike Hilton, Redwood had no interaction with or knowledge of Plaintiffs' traffickers, nor has it been or could it be

1    alleged to be MindGeek's agent.

2          Finally, Plaintiffs assert that they need only plead "Redwood's participation in

3    a *commercial* venture with MindGeek," as opposed to a "continuous business

4    relationship" between Redwood and Plaintiffs' *traffickers*.[10]  Opp. at 20.  But none

5    of the cases in the cited portion of the *Fleites* Opposition hold that a plaintiff may

6    establish "participation" (let alone participation in a *sex trafficking venture*) by

7    alleging "only . . . participation in a commercial venture" with another participant

8    defendant, rather than the trafficker.  *See* Opp. at 20-21; *cf. Salesforce*, 76 F.4th 559

9    ("Where the participant provides assistance, support, or facilitation *to the trafficker*

10   through such a 'continuous business relationship,' a court or jury may infer that the

11   participant and trafficker have a 'tacit agreement' that is sufficient for 'participation'

12   under Section 1595.") (emphasis added); *T.E. v. Wyndham Hotels & Resorts, Inc*.,

13   2024 WL 474400, at *6 (S.D. Ohio Feb. 7, 2024) (holding that participation in a

14   venture under § 1595 requires "at least a showing of a continuous business

15   relationship between *the trafficker and the [defendant] hotels*") (emphasis added);

16   *J.C. v. Choice Hotels Int'l, Inc.,* 2020 WL 6318707, at *7 (N.D. Cal. Oct. 28, 2020)

17   (finding "participation" adequately alleged where plaintiff "connected the dots"

18   between her sex trafficking and the defendants by pleading that defendants provided

19   lodging to plaintiff's traffickers); *Acevedo v. eXp Realty, LLC,* 713 F. Supp. 3d 740,

20   783 (C.D. Cal. 2024) ("a plaintiff must allege *the defendant* had a direct association

21   or a business relationship *with their trafficker*[] . . .") (emphasis added); *see also*

22   *Fleites* Reply at 13, note 8 (addressing "participation" cases in *Fleites* Opp. at 21-

23

---

24   [10] Notably, Plaintiffs' Complaints do not allege a *commercial venture* with
     MindGeek.  To the contrary, Plaintiffs allege that Redwood participated in a *sex*
25   *trafficking venture*.  *Compare* K.A. Compl. ¶ 346 ("Defendants Redwood and
     Colbeck *participated in the MindGeek sex trafficking venture* by participating in the
26   financing syndicates that funded MindGeek's operations and growth") (emphasis
     added) *with 42 Hotel Raleigh,* 2024 WL 4204906, at *5 (pleading explicitly alleged
27   that defendants participated in "a commercial venture," as opposed to a sex
28   trafficking venture).

27).  Regardless, Plaintiffs' pleadings do not allege a commercial venture with MindGeek.  To the contrary, Plaintiffs allege that Redwood participated in a *sex trafficking venture*.

Simply put, to establish "participation" under Ninth Circuit (and majority) precedent, the alleged "continuous business relationship" must be between Redwood and Plaintiffs' *traffickers* (*e.g.*, Plaintiffs' ex-boyfriends, now-convicted sex-trafficking felons, and/or sex-trafficking enterprises).  But Plaintiffs fail to plead *any* facts in the Complaints linking Redwood to any of *Plaintiffs' traffickers* (*e.g.*, ex-boyfriends and sex-trafficking offenders).  Mot. at 26.  Plaintiffs do not contend otherwise in their Opposition.  Because Plaintiffs have not established that Redwood had a "direct association" or "continuous business relationship" with *Plaintiffs' traffickers*, as is required, their claims against Redwood must be dismissed.

### b. Plaintiffs Fail to Allege that Redwood Knew or Should Have Known of *Plaintiffs'* Sex Trafficking.

The Complaints also fail to allege that Redwood "knew or should have known" of *Plaintiffs' specific sex trafficking*, which this Court has already held is a necessary precondition to liability.  *See* Mot. at 26-28; *see also Fleites,* 617 F. Supp. 3d at 1162 (dismissing TVPRA claim against Visa because plaintiff failed to allege "any knowledge – constructive or otherwise – of *Plaintiff*, her videos, or her age in the videos") (emphasis added).

Courts within the Ninth Circuit have consistently required constructive knowledge of the *specific plaintiff's* sex trafficking to satisfy the "knowledge" prong of beneficiary liability.  *See* Mot. at 26-28.  In *MindGeek USA,* 558 F. Supp. 3d at 839, for instance, the court found that the plaintiff had sufficiently alleged knowledge of her sex trafficking—specifically, "that Defendants knew or should have known *that plaintiff was the victim of sex trafficking at the hands of [the] user who posted the content*." *Id.* (alterations omitted) (emphasis added) (citation omitted).  Similarly, in *J.C.,* 2020 WL 6318707, at *6, the plaintiff provided "plausible allegations to show

that the[] defendants had actual and/or constructive knowledge about *her* sex trafficking as opposed to just sex trafficking problems in the hospitality industry in general." *Id.* (emphasis in original). Finally, in *B.M. v. Wyndham Hotels & Resorts, Inc.*, 2020 WL 4368214 (N.D. Cal. July 30, 2020), the court found that while the plaintiff's allegations "support[ed] a theory that the staff at the *franchisee hotels* where Plaintiff was trafficked knew or should have known *about her trafficking*," her allegations failed to establish liability against the franchisor because they failed to show how *the franchisor or parent of the ultimate parent of franchisor* "knew or should have known [she] was being trafficked." *Id.* at *6 (emphasis added).

Plaintiffs argue that Redwood's reliance on *B.M.* is "unavailing," because the "complaint [in *B.M.*] failed to allege any facts as to how the corporate franchisors knew or should have known of sex trafficking at their branded hotels, pleading only the knowledge of the branded hotel defendants." Opp. at 22. As a threshold issue, no subsidiary or company related to Redwood (like a franchisee) is alleged to have knowledge of *Plaintiffs' trafficking*. Redwood's relationship to MindGeek, as a lender, is far more attenuated than the relationship between the defendants in *B.M.* Additionally, the *B.M.* plaintiff, contrary to Plaintiffs' protestations, did in fact allege knowledge based on the corporate defendants' awareness of "acts of sex trafficking tak[ing] place in [corporate defendants'] *franchisee hotels*[,]" not merely "report[s] in the *hospitality industry*" generally. *See* 2020 WL 4368214 at *5; Opp. at 22-23, note 14 (emphases added). This was still insufficient to allege the franchisor's knowledge. The alleged generalized reporting in the media of potential CSAM and non-consensual content on MindGeek's websites is even more generalized and remote than the reports of sex trafficking at franchisee hotels alleged in *B.M.* The reports cited by Plaintiffs—even accepting Plaintiffs' incorrect implication that they were "widely known" in general, or known by Redwood in particular, *see, e.g.*, K.A. Compl. ¶¶ 162-63, 248—simply cannot adequately establish the requisite knowledge

by Redwood of Plaintiffs' specific CSAM.[11] *See B.M.,* 2020 WL 4368214, at *5.

Relying on non-binding cases from the Southern District of New York (*Deutsche Bank*) and the Seventh Circuit (*Salesforce*), Plaintiffs nevertheless contend that knowledge as to a specific plaintiff's trafficking is not required. But the out-of-circuit cases Plaintiffs rely upon provide no basis to deviate from Judge Carney's ruling in *Fleites*. In fact, *Deutsche Bank* recognized that other courts *have required* plaintiff-specific knowledge, but held that out-of-circuit decisions that require such knowledge "do not control this Court." *See Doe 1 v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387, 406-07 (S.D.N.Y. 2023); *see also Doe (L.M.) v. 42 Hotel Raleigh, LLC*, 717 F. Supp. 3d 464, 468 & n.6 (E.D.N.C. 2024) (citing the "circuit split" regarding whether the "knowledge" and "participation" elements of beneficiary liability are "victim-specific"). Plaintiffs identify no reason why this Court should deviate from Judge Carney's prior ruling in *Fleites* and other courts within the Ninth Circuit. *See* Mot. at 26-28.

Plaintiffs' failure to establish any actual or constructive knowledge by Redwood of "*Plaintiff[s], [their] videos, or [their] age in the videos*[]" dooms their beneficiary liability claims, requiring their dismissal.[12] *See Fleites*, 617 F. Supp. 3d at 1162 (emphasis added) (footnote omitted).

---

[11] Similarly, the existence of a 2016 lawsuit against a third-party content creator—filed *after* Redwood decided to participate in financing with MindGeek—does not establish Redwood's knowledge of Plaintiffs or their CSAM. *See* Opp. at 22-23, note 14.

[12] As a last-ditch effort, Plaintiffs allege that "constructive knowledge is a fact-intensive inquiry that is not appropriately resolved on a motion to dismiss." Opp. at 6 (citing *Barnett v. County of Los Angeles*, 2021 WL 826413, at *8 (C.D. Cal. Mar. 4, 2021)). Not so. The *Barnett* case holds that, *where actual or constructive knowledge is sufficiently alleged to survive a 12(b)(6) motion*, the questions of such knowledge are questions of fact to be determined at trial. *See Barnett,*, 2021 WL 826413, at *8 (holding that plaintiff had "sufficiently alleged [the] existence [of actual or constructive knowledge] to survive a 12(b)(6) motion") (alterations added) (citations omitted). Sufficient allegations have not been pled here.

### c. Non-U.S. Plaintiffs Cannot State a TVPRA
Beneficiary Liability Claim Against Redwood.

The Non-U.S. Plaintiffs' civil TVPRA claims against Redwood should be dismissed as an impermissible extraterritorial application of Section 1595.  *See* Mot. at 28-29.  Plaintiffs do not dispute that "[a]bsent clearly expressed congressional intent to the contrary, federal laws will be construed to have only domestic application," and that to overcome that presumption, the statute must give "a clear, affirmative indication that it applies extraterritorially."  *RJR Nabisco, Inc. v. Eur. Cmty.*, 579 U.S. 325, 335, 337 (2016).  Nor do they challenge the Supreme Court's guidance that where "a statute provides for some extraterritorial application, the presumption against extraterritoriality operates to limit that provision to its terms." *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 265 (2010) (citation omitted).

Despite recognizing their burden, Plaintiffs fail to demonstrate that the TVPRA evidences a clear, affirmative congressional intent to allow *private plaintiffs* to bring TVPRA claims for overseas injuries. *See* Mot. at 28-29.  Critically, Congress amended the TVPRA in 2008 to add Section 1596, which explicitly authorizes extraterritorial application for specific *criminal* sections of the TVPRA.  *See* 18 U.S.C. § 1596(a); Pub. L. No. 110-457, § 223(a), 122 Stat. 5044 (2008).  *No such amendment was ever enacted to permit extraterritorial application for civil liability.* Congress could have, but did not, grant extraterritorial jurisdiction over Section 1595 offenses.  *See Doe I v. Apple Inc.*, 2021 WL 5774224, at *16 (D.D.C. Nov. 2, 2021) (holding that Congress did not authorize the extraterritorial application of § 1595), *aff'd*, 96 F.4th 403 (D.C. Cir. 2024).

Plaintiffs nevertheless respond that the "structure and context of section 1595 . . . provides 'a clear, affirmative indication' that it applies to foreign conduct." Opp. at 35.  Plaintiffs' primary argument in support stems from the novel theory, propounded in *Roe v. Howard*, 917 F.3d 229 (4th Cir. 2019) (and apparently followed

by an unpublished District of D.C. case)[13] that "even absent an express statement of extraterritoriality, a statute may apply to foreign conduct insofar as it clearly and directly incorporates a predicate statutory provision that applies extraterritorially." *See Howard,* 917 at 242; Opp. at 34-35 (arguing that "section 1595 specifically incorporates predicate offenses that govern foreign conduct," and therefore may also apply extraterritorially). But while *Howard* purported to interpret 1595(a), the Ninth Circuit has already noted that *Howard* "includes no textual analysis of § 1595(a) *whatsoever*[.]" *Ratha v. Rubicon Res., LLC*, 111 F.4th 946, 965 (9th Cir. 2024) (emphasis added). The Fourth Circuit's theory in *Howard* is therefore already very much in doubt in the Ninth Circuit.

The fact that an underlying *criminal provision* governs conduct in foreign countries is also precisely what the Supreme Court's seminal case on extraterritoriality, *RJR Nabisco,* said "is not enough" to show that a private right of action applies extraterritorially. 579 U.S. at 350. In *RJR Nabisco*, the Supreme Court expressly rejected the Second Circuit's holding that "a RICO plaintiff may sue for foreign injury that was caused by the violation of a predicate statute that applies extraterritorially, just as a substantive RICO violation may be based on extraterritorial predicates." *Id.* at 350. Any reading to the contrary would "fail[] to appreciate that the presumption against extraterritoriality must be applied separately to both RICO's substantive prohibitions and its private right of action." *Id*. The Supreme Court grounded its decision regarding RICO's private right of action in a long line of precedent addressing the potential for private lawsuits to cause "international friction" by seeking to regulate conduct abroad. *See id*. at 346–49. Neither Plaintiffs nor the *Howard* court mention that consideration, despite the

---

[13] *United States ex rel. Hawkins v. ManTech Int'l Corp*., 2024 WL 4332117 (D.D.C. Sept. 27, 2024). *ManTech* contradicts *Doe I,* the District of D.C. decision that concluded the TVPRA did *not* apply extraterritorially.

centrality of this concept in the Supreme Court's extraterritoriality jurisprudence.[14]

Finally, Plaintiffs make a last-ditch argument that the focus of Section 1595 is on extraterritorial conduct because "Congress has repeatedly referenced trafficking as a 'transnational' crime[.]" Opp. at 35. The fact that trafficking is considered a transnational *crime* has no bearing on whether the *civil provision* applies extraterritorially.[15] The Non-U.S. Plaintiffs' TVPRA civil TVPRA claims must therefore be dismissed.

### 4. Plaintiffs Fail to Allege a Conspiracy Claim Against Redwood Under the TVPRA.

#### a. The TVPRA Conspiracy Claim Against Redwood is Barred by Ninth Circuit Law.

Redwood's Motion established that Plaintiff's TVPRA conspiracy claim is definitively barred by the Ninth Circuit's decision in *Ratha*. Mot. at 29-30. *Ratha* unambiguously holds that ATRA—which amended Section 1595 to provide a cause of action for whoever "*attempts or conspires to benefit,* financially or by receiving

---

[14] Plaintiffs also attempt to distinguish *RJR Nabisco's* analysis by suggesting that it "hinges on the unique structure of the RICO statute." Opp. at 34. Specifically, Plaintiffs claim that the *RJR Nabisco* court refused to read the extraterritoriality provision into the civil provision of RICO *because* RICO's civil cause of action only applied to certain injuries (and, therefore, was not wholly coextensive with its criminal counterpart). In other words, Plaintiffs suggest that the *RJR Nabisco* court was unwilling to read extraterritoriality into the civil provision of RICO because of this difference. But Plaintiffs are misguided. *RJR Nabisco's* determination that the civil provision of RICO did not apply extraterritorially *did not hinge* on the so-called "gap" between the civil and criminal provisions. Primarily, the Court did not find a clear indication that Congress had "intended to create a private right of action for injuries suffered" extraterritorially in RICO's civil provision. It simply noted, as an afterthought, that "[i]f anything," this gap corroborated the lack of extraterritoriality the Court had already found to exist. *RJR Nabisco*, 579 U.S. at 349-50.

[15] The "focus" is rather on where the alleged injury occurred, which, for the Non-U.S. Plaintiffs, is abroad. *See Doe I*, 2021 WL 5774224, at *16 ("Plaintiffs do not (and cannot) contest that their injuries, along with the underlying TVPRA violations that they allege, occurred anywhere other than in the DRC.") (alteration in original).

---

REDWOOD DEFENDANTS' OMNIBUS REPLY ISO MOTION TO DISMISS

anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of" the TVPRA, *see* 18 U.S.C. 1595(a) (emphasis added)—"*does not apply to pre-enactment conduct[.]*" *Ratha*, 111 F.4th at 969 (emphasis added). Because ATRA does not apply to pre-enactment conduct, *Ratha*, 111 F.4th at 969, Redwood cannot be liable for conspiracy liability based on conduct that allegedly occurred prior to ATRA's enactment. *See* Mot. at 28-29.

Plaintiffs incorporate by reference the arguments made in the *Fleites* Opposition, which puzzlingly claim that *Ratha*'s holding does not apply because "*Ratha* addressed attempt liability, not civil conspiracy."[16] *Fleites* Opp. at 37. While the plaintiffs in *Ratha* asserted attempt as opposed to conspiracy liability, *Ratha*'s holding and analysis preclude severing the phrase "attempts or conspires" into separate components for the retroactivity analysis. In *Ratha,* the court first analyzed whether the *statute as a whole* has retroactive effect—which included an analysis of "textual indications" from the amendment *as a whole. See, e.g.*, *Ratha,* 111 F.4th at 963 ("*ATRA* contains no 'express command' to apply *the statute* retroactively to events that occurred before *its enactment.* If it were so applied, *ATRA would 'increase a party's liability for past conduct,'* . . . *because it allows a civil penalty to be assessed on **a new class of defendants***: those who attempt **or conspire to benefit from** a TVPRA violation") (emphasis added); *see id.* at 967 ("Other than the reference to *the amendment* as a 'clarifying update' in the title, there are no other textual indications from Congress that it extended to restore the language of §1595(a) as enacted in the TVPRA to what *the statute* had always meant.") (emphasis added). After conducting this textual analysis, the court concluded that "*ATRA does not apply to pre-enactment conduct, including* [but not limited to] *the conduct that is the basis of plaintiffs' claims*." *Id.* at 969 (alteration added) (emphasis added). The *Fleites*

---

[16] Plaintiffs incorporate by reference the arguments made in *Fleites. See* Opp. at 27-28. To the extent not addressed here, Redwood fully incorporates here the arguments made in the *Fleites* Reply. *See Fleites* Reply at 15-16.

Opposition completely ignores the Ninth Circuit's specific holding that "ATRA does not apply to pre-enactment conduct," which is conclusive here. Nothing in the Ninth Circuit's analysis or holding limited *Ratha's* applicability to attempt liability.

The *Fleites* Opposition next argues that "*[p]rior to ATRA*, numerous circuit and district courts have concluded that section 1595's civil liability provision extends to conspiracy claims under section 1594." *Fleites* Opp. at 38. While these cases may have (prior to *Ratha*) supported the proposition that a perpetrator's conspiracy to violate the TVPRA is actionable under Section 1595, not one of the cases cited in the *Fleites* Opposition suggest that conspiring to benefit from *another's violation of the TVPRA* was civilly actionable under Section 1595(a) before ATRA. The Ninth Circuit itself addressed many of the exact cases cited in the *Fleites* Opposition and held that they "do not evidence any judicial difficulty interpreting the TVPRA[]" such that ATRA may have "clarified what the TVPRA had meant all along[.]" *See Ratha* 111 F.4th at 963, 965.

Finally, the *Fleites* Opposition argues that ATRA's "[h]istory [c]onfirms [its] [r]etroactive [i]ntent." *See Fleites* Opp. at 39. But, again, this exact same argument was addressed and rejected by the Ninth Circuit in *Ratha*. *See Ratha,* 111 F.4th at 968 (explaining that "there is no contemporaneous legislative history regarding the enactment of ATRA" that would be "indicative of Congress's intent"). *Ratha* is binding on this Court, and Plaintiffs' claim for civil conspiracy liability based on Redwood's alleged conduct prior to 2023 must therefore be dismissed.

### b. The Complaints' Allegations Do Not Establish a Conspiracy Claim Against Redwood.

Plaintiffs' claims for conspiracy liability against Redwood also fail because Plaintiffs do not allege any support for the proposition that Redwood agreed to or intended to violate the TVPRA. Mot. at 19, 30-33. Plaintiffs instead assert that an agreement may be inferred where "the defendant 'entered into a joint enterprise with consciousness of its general nature and extent'" and that intent may be inferred from

"circumstantial evidence of knowledge and an act in furtherance of the conspiracy." Opp. at 27. Plaintiffs, however, cite *no* case law inferring an agreement or intent from acts similar to those alleged to have been taken by Redwood here.

Plaintiffs instead argue that Judge Carney's conspiracy rationale in *Fleites* as to Visa applies to all of the defendants. Opp. at 27. But Judge Carney found a potential conspiracy claim against Visa on distinct allegations. Judge Carney stressed that Visa's intent to aid in MindGeek's criminal act could be inferred because Visa's alleged conduct was "intertwined with MindGeek's criminal act"— specifically, MindGeek was "being sued for knowingly monetizing child porn," and "Visa's act of continuing to recognize MindGeek as a merchant [was] *directly linked* to MindGeek's criminal act, as Visa's act *served to keep open the means through which MindGeek completed its [monetization of child porn]*." *Fleites*, 617 F. Supp. 3d at 1164 (alterations added) (emphases added). Redwood, on the other hand, is not alleged to have "knowingly provided the tool used to complete [MindGeek's] crime" of "knowingly monetizing child porn." *Fleites*, 617 F. Supp. 3d at 1164. Redwood is merely alleged to have provided partial financing to MindGeek—an action untethered to MindGeek's alleged "criminal act." The "bridge between [Redwood's] conduct"—providing partial financing—and an inference that Redwood intended to assist MindGeek in knowingly benefiting from sex trafficking is therefore "too far" and does not support conspiracy liability. *See* Mot. at 30-33.

## B. Plaintiffs' Hybrid UCL/FAL Claim is Not Legally Viable.

Plaintiffs cannot state a UCL claim or an FAL claim against Redwood.

*First*, Plaintiffs lack standing under both the UCL and FAL. As explained in Redwood's Motion, standing under the UCL and FAL is "substantially narrower" than federal standing under Article III and extends only to those who "lost money or property" as a result of the unfair competition or false advertising violation. Mot. at 34. Neither the Complaints nor the Opposition explain how *Redwood* directly caused Plaintiffs' alleged "financial harm" (which Plaintiffs contend is the use of their

"video, image[], or likeness").  *See* Mot. at 34-35; Opp. at 53-54.  Moreover, Plaintiffs *do not even contest* that they lack standing under either statute.

*Second,* neither the UCL nor FAL applies extraterritorially to Non-California and Non-U.S. Plaintiffs.  *See* Mot. at 35-37.  Plaintiffs dispute this, but then fail to distinguish the longstanding California precedent discussed in Redwood's Motion holding otherwise.  *See id.* (citing, *e.g.*, *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191 (2011); *Nw. Mortg., Inc. v. Superior Court*, 72 Cal. App. 4th 214, 222 (1999)).  Plaintiffs instead assert that "the harm underlying Plaintiffs' state law claims did indeed take place, at least in part, in California," but then recite actions alleged to have been taken by *other Defendants*.  Opp. at 54, note 43.  That is not enough to establish extraterritoriality of the UCL or FAC as applied to Redwood.  The Complaints fail to allege that Redwood made any false or misleading statements at all, let alone that they made any such statements in California.  Nor do their Complaints allege that Redwood engaged in any activity in California (or anywhere) related to the creation or modification of content on MindGeek's platforms or the dissemination of Plaintiffs' CSAM.  The Non-California and Non-U.S. Plaintiffs do not even allege that Redwood entered into the loan agreements in California.[17]

*Third,* Plaintiffs' UCL and FAL counts simply fail to allege actions by Redwood sufficient to state a viable legal claim under either California statute.

Plaintiffs' FAL claim fails because it "rest[s] exclusively on allegations of misconduct . . . [*which*] *do not apply to Redwood*."  Mot. at 37.  Plaintiffs do not explicitly address this argument.  Instead, Plaintiffs try to pivot by suggesting that the FAL claim against Redwood is based on "false claims" or "fraudulent omissions"

---

[17] Plaintiffs do not dispute that the analogous state statutes claims also fail to show an unfair or deceptive practice by Redwood.  *See* Mot. at 41-42.  This is fatal to any claims thereunder.  *See Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("[F]ailure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue.") (citations omitted).

on the part of *other Defendants*. *See* Opp. at 53-54 (describing "false statements" or "misrepresentations" allegedly made by MindGeek and/or the Individual Defendants). But in *Tortilla Factory, LLC v. Humm Kombucha, LLC*, the court explained that "false advertising claims under the FAL and UCL must be based on the defendant's participation in or control over the unlawful practices . . . . They do not arise from allegations of vicarious liability." 2018 WL 11408921, at *9 (C.D. Cal. July 25, 2018) (internal quotation marks omitted) (citations omitted). Here, by Plaintiffs' own admission, none of the conduct underlying the FAL claim "aris[es] from" any false claim, misrepresentation, or omission on the part of the Redwood. Accordingly, the claim must be dismissed.

As for their UCL claim, Plaintiffs attempt to clarify that it is based on the statute's "unlawful" prong and argue that because "[e]ach defendant's participation in the MindGeek venture in violation of the TVPRA . . . serves as [a] predicate wrong[] under the UCL[,]" they state a claim under the UCL. Opp. at 53. But since Plaintiffs fail to state a claim against Redwood under the TVPRA, the dependent UCL claim must therefore be dismissed too. *See* Section III.A *supra; see also* Mot. at 37-38.

## C. Plaintiffs Fail to State a Claim for Intentional Infliction of Emotional Distress.

Redwood demonstrated in its Motion that Plaintiffs' IIED claims fail because Plaintiffs' allegations are too conclusory and they fail to separate out the alleged role of each Defendant. Plaintiffs additionally fail to allege: (i) that Redwood specifically engaged in "atrocious" conduct that was intended to cause emotional distress to Plaintiffs; (ii) that Redwood's conduct was directed towards them; and (iii) that their severe emotional distress was, in each case, actually and proximately caused by Redwood's alleged conduct. Mot. at 42-45.

Plaintiffs' Opposition offers no case law establishing how Redwood's routine, arm's-length financing agreements could conceivably constitute "extreme and outrageous [conduct]" that "exceed[s] all bounds of that usually tolerated in a

civilized community." *See* Mot. at 44 (citing *Chang v. Wachovia Mortg., FSB*, 2011
WL 5552899, at *3 (N.D. Cal. Nov. 15, 2011)).  Seemingly acknowledging the lack
of "outrageous or extreme" conduct by Redwood, Plaintiffs instead endeavor to
impute MindGeek's alleged conduct to Redwood.  *See* Opp. at 44-45 (MindGeek's
"exploitation of CSAM constitutes . . . outrageous conduct that exceed(s) the bounds
of that usually tolerated in a civilized community. . . . Both Colbeck and Redwood
permitted and condoned such behavior").  But Plaintiffs' efforts to "bootstrap" an
IIED claim against Redwood are impermissible, as they must allege extreme and
outrageous conduct actually attributable to Redwood.  *See Sanders v. Model Prods.*
*USA, Inc.,* 2015 WL 13914860, at *7 (C.D. Cal. Dec. 14, 2015) (dismissing
Intentional Infliction of Emotional Distress claim where "Plaintiffs lump the conduct
of all Defendants together."); *Grant v. WMC Mortg. Corp*., 2010 WL 2509415, at *3
(E.D. Cal. June 17, 2010) (IIED claim that "fails to indicate specifically what conduct
constituted intentional infliction of emotional distress and lumps all defendants
together is plainly insufficient under the pleading requirements of Federal Rule of
Civil Procedure 8.").

     Plaintiffs also fail to establish Redwood had the necessary intent for an IIED
violation.  They argue that "the intentional act [need not] occur in the *presence* of
plaintiff," and that Redwood's "continued role in supporting and growing
MindGeek's illegal activities" establishes Redwood's "disregard" of Plaintiffs'
interests.  Opp. at 45 and note 32.  Contrary to Plaintiffs' assertions, "where reckless
disregard of the plaintiff's interests is the theory of recovery, the presence of the
plaintiff at the time the outrageous conduct occurs" is required.  *Christensen v.*
*Superior Court*, 54 Cal. 3d 868, 906 (1991); *Potter v. Firestone Tire & Rubber Co.*,
6 Cal. 4th 965, 1002 (1993) (same); *Sepulveda v. City of Whittier*, 2019 WL
13070119, at *24 (C.D. Cal. Aug. 7, 2019) ("[T]he conduct must be . . . done with
knowledge of their presence and of a substantial certainty that they would suffer
severe emotional injury.").  Nowhere in the Complaints or the Opposition, however,

do Plaintiffs allege that Redwood took any action in the presence of any Plaintiff. Plaintiffs' Opposition offers one inapposite Arizona Supreme Court case to support their claim that Redwood had the requisite intent, but in that case, the court found an employer was liable for its employee's harassment where the employer had *knowledge* of such conduct. *See* Opp. at 45 (citing *Ford v. Revlon, Inc.*, 153 Ariz. 38, 43 (Ariz. 1987)). Plaintiffs here do not allege, nor could they, that Redwood had knowledge of any Plaintiff's actual alleged exploitation.

Finally, Plaintiffs fail to address Redwood's arguments that: (i) Redwood's conduct was not directed toward them; and (ii) that Redwood's conduct did not actually and proximately cause Plaintiffs' harm. *See* Mot. at 45. Plaintiffs concede that alleged outrageous conduct "need . . . be directed towards plaintiffs," yet they make no showing that Redwood directed any conduct towards Plaintiffs. Opp. at 44-45; *see, e.g., Stichting Pensioenfonds ABP*, 802 F. Supp. 2d at 1132 ("[F]ailure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue.") (citation omitted). Plaintiffs' IIED claims must be dismissed on these additional grounds.

### D. Plaintiffs Fail to State a Claim for Civil Conspiracy.

Plaintiffs' civil conspiracy claims should also be dismissed, as they do not plausibly allege that Redwood agreed or intended to join an illegal conspiracy when it provided loans. Plaintiffs argue in opposition that "the elements of a common law civil conspiracy are the same as those of conspiracy to violate the TVPRA," and so the Complaints adequately allege Redwood "conspired to commit wrongful acts in violation of various California state statutes[]" for the same reasons addressed in connection with their 1594(a) claim. Opp. at 50-51.

But, for the reasons set forth in Redwood's Motion and in Section III.A.4 *supra*, Plaintiffs do not plead an agreement or intent by Redwood to violate the TVPRA. *See* Mot. at 46-50. Simply put, agreeing to extend credit to a party that allegedly engaged in unlawful conduct does not create a conspiracy between the

1   lender and the borrower to engage in such unlawful conduct. *See, e.g.*, *Compound*
2   *Prop. Mgmt., LLC v. Build Realty, Inc.*, 462 F. Supp. 3d 839, 864-65 (S.D. Ohio 2020)
3   ("allegations that a lending company engaged in due diligence with regard to its
4   lending activities cannot, and should not, be enough to plausibly establish 'joinder'
5   [in a conspiracy], even at the pleading stage"); *Young v. City of Menifee*, No. 5:17-
6   cv-01630-JGB-SP, 2019 WL 3037926, at *11 (C.D. Cal. Apr. 5, 2019) ("[m]ere
7   association does not make a conspiracy").

8       Furthermore, speculation that a defendant *knew* of another's planned conduct
9   (even if true) is insufficient to allege a civil conspiracy claim without evidence that
10  the defendant *intended* the actual conduct. *See* Mot. at 46-47 (citing *Thinking*
11  *Liberally Media Inc. v. Orange Juice Blog*, 2010 WL 11596144, at *5-6 (C.D. Cal.
12  Nov. 19, 2010)). Plaintiffs attempt to distinguish *Orange Juice Blog* by arguing that
13  the conspiracy claim failed because there were "no allegations about the participation
14  of Orange Juice Blog in the purported conspiracy from which the court could infer
15  intent." Opp. at 53, note 41. But that is exactly the reason Plaintiffs' claims must
16  fail here. Plaintiffs' insistence that Redwood's participation *in the financing*
17  *agreements* establishes an intent to aid in *sex trafficking* is wholly incongruous with
18  a routine, arm's length financing agreement ████████████████████████████████
19  ████████████████████████████████, in particular. Simply put, a plaintiff cannot
20  rely "solely on speculation and evidence of . . . knowledge" to establish intent. *See*
21  *Orange Juice Blog*, 2010 WL 11596144, at *6; *see id.* at *5 ("[A]ctual knowledge of
22  the planned tort, without more, is insufficient to serve as the basis for a conspiracy
23  claim[,]" as "[k]nowledge of the planned tort must be combined with intent to aid in
24  its commission.") (citation omitted).

25      In their Opposition, Plaintiffs argue that Redwood's intent can be "easily
26  inferred here" based on its "years-long relationship[] with MindGeek," its "actual
27  knowledge of the extent of MindGeek's criminal conduct," and its "motives to
28  maximize [its] own profits." Opp. at 51-52. Yet, Plaintiffs do not plead any facts

1  supporting Redwood's alleged agreement or intent to aid in a violation of the

2  TVPRA.  Plaintiffs state that Redwood's "intent" to aid in the wrongful activity is

3  evidenced by "its intent to profit in spades" as well as Redwood's "oust[ing]" of

4  "Colbeck so that it could keep a larger share of the profits[.]"  Opp. at 52-53.  Not

5  only does this ignore the Agent's (as instructed by Redwood and other lenders)

6  ████████████████████████████████████████████████████████████

7  ████████████████████████████████, *see* Mot. at 17 and *Fleites* Dkt. 450-4, but

8  "simple knowledge, approval of, or acquiescence in the object or purpose of a

9  conspiracy, without an intention and agreement to accomplish a specific illegal

10  objective, is not sufficient."  *United States v. Lennick*, 18 F.3d 814, 818 (9th Cir.

11  1994) (emphasis added) (citation omitted).  Plaintiffs' allegations simply do not

12  "plausibly suggest that [Redwood] ever intended to assist [MindGeek] in the alleged

13  wrongful conduct" in the first place.  *See Craigslist Inc. v. 3Taps Inc.*, 942 F. Supp.

14  2d 962, 982 (N.D. Cal. Apr. 30, 2013) (alterations added).  Rather, their allegations,

15  at most, suggest that Redwood provided financing to MindGeek pursuant to routine

16  financing agreements despite "knowledge [] of" MindGeek's illegal activity

17  (allegations which Redwood strenuously disputes).   This is insufficient and

18  Plaintiffs' rank "speculation" about Redwood's intent does not forestall dismissal.

19  *See Orange Juice Blog*, 2010 WL 11596144, at *5-6.

20  Finally, Plaintiffs ignore Redwood's argument that a conspiracy claim "allows

21  tort recovery only against a party who already owes [a] duty" to Plaintiffs.  Mot. at

22  48-50.  Because Redwood did not, and does not, owe any duty to Plaintiffs under

23  California law, Plaintiffs' civil conspiracy claims must be dismissed.  *See id.*

24  **IV.   CONCLUSION**

25  For the foregoing reasons, Redwood respectfully requests that the Court

26  dismiss the Related Actions against Redwood with prejudice.

27

28

1

2  DATED:  January 8, 2025                    **PAUL HASTINGS LLP**

3

4                                            By: */s/ James M. Pearl*

5                                                 JAMES M. PEARL

6                                            *Attorneys   for   Defendants   Redwood
   Capital   Management,   LLC;   Redwood
7  Master Fund, Ltd; Redwood Opportunity
   Master  Fund,  Ltd;  Manuel  2018,  LLC;
   Ginogerum,  LLC;  and  White-Hathaway*
8  *Opportunity Fund, LLC*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Redwood Capital Management, LLC, certifies that this brief contains 30 pages, which complies with the 35-page limit set by court order dated August 2, 2024.

DATED:  January 8, 2025                    **PAUL HASTINGS LLP**


By  */s/James M. Pearl*
    JAMES M. PEARL

REDWOOD DEFENDANTS' OMNIBUS REPLY ISO MOTION TO DISMISS