WIECHERT, MUNK & GOLDSTEIN, PC
David Wiechert, CA Bar No. 94607
4000 MacArthur Boulevard,
Suite 600 East Tower
Newport Beach, CA 92660
Phone: (949) 361-2822
Facsimile: (949) 361-5722
Email: dwiechert@aol.com

MORVILLO ABRAMOWITZ
GRAND IASON & ANELLO PC
Jonathan S. Sack (*pro hac vice*)
565 Fifth Avenue
New York, New York 10017
Phone: (212) 856-9600
Facsimile: (212) 856-9494
Email: jsack@maglaw.com

*Counsel for Specially Appearing Defendant David Tassillo*

COHEN & GRESSER LLP
Jason Brown (*pro hac vice*)
Matthew V. Povolny (*pro hac vice*)
Joanna Chan
800 Third Avenue
New York, New York 10022
Phone: (212) 957-7600
Facsimile: (212) 957-4514
Email: jbrown@cohengresser.com
Email: mpovolny@cohengresser.com
Email: jchan@cohengresser.com

*Counsel for Specially Appearing Defendant Feras Antoon*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| K.A.,<br><br>                    Plaintiff,<br><br>        v.<br><br>MINDGEEK S.A.R.L. a foreign entity; MG FREESITES, LTD., a foreign entity; MINDGEEK USA INCORPORATED, a Delaware corporation; MG PREMIUM LTD, a foreign entity; MG GLOBAL ENTERTAINMENT INC., a Delaware corporation; 9219-1568 QUEBEC, INC., a foreign entity; BERND BERGMAIR, a foreign individual; FERAS ANTOON, a foreign individual; DAVID TASSILLO, a foreign individual; VISA INC., a Delaware corporation; REDWOOD CAPITAL MANAGEMENT, LLC, a Delaware limited liability company; REDWOOD DOE FUNDS 1-7; COLBECK CAPITAL MANAGEMENT, LLC, a Delaware limited liability company; COLBECK DOE FUNDS 1-3<br><br>                    Defendants. | Case No. 2:24-cv-4786-WLH-ADS<br><br>**SPECIALLY APPEARING DEFENDANTS FERAS ANTOON AND DAVID TASSILLO'S REPLY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT**<br><br>**Date:  January 31, 2025**<br>**Time: 1:30 p.m.**<br>**Courtroom:  9 B**<br>**Judge: Hon. Wesley Hsu** |

FERAS ANTOON AND DAVID TASSILLO'S REPLY

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................ 1

ARGUMENT ..................................................................................................... 3

I.  Plaintiffs Have Not Met Their Burden of Pleading
Personal Jurisdiction Over Antoon or Tassillo ................................... 3

    A.  Plaintiffs Fail to Plead that Any of the MindGeek
Entities are Antoon's or Tasillo's Alter Ego ............................. 5

    B.  Plaintiffs' Allegations Do Not Support the
Exercise of Jurisdiction Under the Guiding Spirit
Exception to the Fiduciary Shield Doctrine .............................. 9

II.  Plaintiffs' Complaints Allege Impermissible
Extraterritorial Claims Against Antoon and Tassillo ........................ 12

    A.  The TVPRA Specifies When It Applies
Extraterritorially and None of those Conditions
Are Met as to Antoon or Tassillo ............................................ 12

    B.  Plaintiffs Do Not Seek a Domestic Application of
the TVPRA. ............................................................................ 17

    C.  Plaintiffs' Section 2252 and 2252A Claims Are
Also Impermissibly Extraterritorial ........................................ 20

    D.  Plaintiffs' California Law Claims Are
Impermissibly Extraterritorial ................................................ 22

III.  Section 230 of the CDA Bars Plaintiffs' Claims ............................... 23

CONCLUSION ................................................................................................ 25

FERAS ANTOON AND DAVID TASSILLO'S REPLY

# TABLE OF AUTHORITIES

**Cases**                                                                        **Page(s)**

*Abitron Austria GmbH v. Hetronic Int'l, Inc.*,
  600 U.S. 412, 418 (2023)........................................................................18

*Abundant Living Fam. Church v. Live Design, Inc.*,
  2022 WL 2176583 (C.D. Cal. June 15, 2022)........................................11

*Aldini AG v. Silvaco, Inc.*,
  2022 WL 20016826 (N.D. Cal. Aug. 3, 2022)........................................23

*AMA Multimedia LLC v. Sagan Ltd.*,
  2020 WL 5988224 (D. Ariz. Oct. 9, 2020).............................................11

*Baizakova v. Jaddou*,
  2024 WL 3063227 (C.D. Cal. June 14, 2024)....................................4, 23

*Calise v. Meta Platforms, Inc.*,
  103 F.4th 732 (9th Cir. 2024) ................................................................23

*Chunghwa Telecom Glob., Inc v. Medcom, LLC*,
  2016 WL 5815831 (N.D. Cal. Oct. 5, 2016) .......................................8, 11

*Click v. Dorman Long Technology, Ltd.*,
  2006 WL 2644889 (N.D. Cal. Sept. 14, 2006).........................................4

*Conservation Force v. Salazar*,
  677 F. Supp. 2d 1203 (N.D. Cal. 2009)....................................................4

*Daramola v. Oracle Am., Inc.*,
  2022 WL 2047553 (N.D. Cal. June 7, 2022)..........................................23

*Does 1-6 v. Reddit, Inc.*,
  51 F.4th 1137 (9th Cir. 2022) ................................................................24

*Dyroff v. Ultimate Software Grp., Inc.*,
   934 F.3d 1093 (9th Cir. 2019) ............................................................................25

*Facebook, Inc. v. Power Ventures, Inc.*,
   844 F.3d 1058 (9th Cir. 2016) ......................................................................10, 11

*FootBalance Sys. Inc. v. Zero Gravity Inside, Inc.*,
   2017 WL 1215832 (S.D. Cal. Apr. 3, 2017) ........................................................8

*Gemcap Lending I, LLC v. Crop USA Ins. Agency, Inc.*,
   2014 WL 12589333 (C.D. Cal. Feb. 14, 2014) ...................................................10

*In re Boon Glob. Ltd.*,
   923 F.3d 643 (9th Cir. 2019) .....................................................................6, 7, 10

*j2 Glob. Commc'ns, Inc. v. Blue Jay, Inc.*,
   2009 WL 29905 (N.D. Cal. Jan. 5, 2009)............................................................11

*Klayman v. Zuckerberg*,
   753 F.3d 1354 (D.C. Cir. 2014)...........................................................................24

*Morrison v. Nat'l Australia Bank Ltd.*,
   561 U.S. 247 (2010)......................................................................................13, 19

*Neilson v. Union Bank of California, N.A.*,
   290 F. Supp. 2d 1101 (C.D. Cal. 2003) ................................................................6

*Pado, Inc. v. SG Trademark Holding Co. LLC*,
   2020 WL 1445720 (C.D. Cal. Mar. 24, 2020)......................................................4

*Ranza v. Nike, Inc.*,
   793 F.3d 1059 (9th Cir. 2015) ..............................................................................8

*RJR Nabisco v. Eur. Cmty.*,
   579 U.S. 325 (2016)..............................................................................12, 13, 18

*Roe v. Howard*,
　917 F.3d 229 (4th Cir. 2019) ...................................................................15

*Seagate Tech. v. A.J. Kogyo Co.*,
　219 Cal. App. 3d 696 (1990) ...................................................................10

*Sikousis Legacy, Inc. v. B-Gas Ltd.*,
　97 F.4th 622 (9th Cir. 2024) .....................................................................7

*Swartz v. KPMG LLP*,
　476 F.3d 756 (9th Cir. 2007) .....................................................................4

*United States ex rel. Hawkins v. ManTech Int'l Corp.*,
　2024 WL 4332117 (D.D.C. Sept. 27, 2024)....................................14, 15

*United States v. Kirilyuk*,
　29 F.4th 1128 (9th Cir. 2022) ..................................................................11

*United States v. McVicker*,
　979 F. Supp. 2d 1154 (D. Or. 2013) .......................................................21

*United States v. Ped*,
　943 F.3d 427 (9th Cir. 2019) ...................................................................12

*United States v. Thomas*,
　893 F.2d 1066 (9th Cir. 1990) .................................................................21

*United States v. Wolfenbarger*,
　2020 WL 2614958 (N.D. Cal. May 22, 2020)........................................21

*Wadler v. Bio-Rad Lab'ys, Inc.*,
　916 F.3d 1176 (9th Cir. 2019) .................................................................16

*WesternGeco LLC v. ION Geophysical Corp.*,
　585 U. S. 407 (2018)................................................................................18

*Xyience Beverage Co., LLC v. Statewide Beverage Co., Inc.*,
   2015 WL 13333486 (C.D. Cal. Sept. 24, 2015) ...................................................... 6

**Statutes**

18 U.S.C. § 7 ................................................................................................. 15
18 U.S.C. § 1591 ...................................................................................... *passim*
18 U.S.C. § 1594 ............................................................................................ 14
18 U.S.C. § 1595 ....................................................................................... 14, 15
18 U.S.C. § 1596 .......................................................................... 13, 14, 16, 17
18 U.S.C. § 2251 ............................................................................................ 21
18 U.S.C. § 2252 ...................................................................................... *passim*
18 U.S.C. § 2252A ................................................................................... *passim*
18 U.S.C. § 2255 ............................................................................................ 21
18 U.S.C. § 3271 ............................................................................................ 15
47 U.S.C. § 230 ....................................................................... 3, 23, 24, 25
Cal. Corp. Code § 300 ..................................................................................... 7

**Rules**

Federal Rule of Civil Procedure 4 ............................................................... 11

# **PRELIMINARY STATEMENT**

Specially-appearing Defendants Feras Antoon and David Tassillo have moved to dismiss the complaints in the 14 Related Actions for lack of personal jurisdiction and failure to state a claim.  Plaintiffs' omnibus opposition brief (ECF No. 96-1 ("Opposition" or "Opp'n")) does not effectively challenge, much less defeat, any of the arguments for dismissal urged by Antoon and Tassillo.  (ECF No. 62 ("Motion" or "Mot.")).[1]  Accordingly, this Court should dismiss all 14 Related Actions as to them.

*First*, on the critical threshold issue of personal jurisdiction, the allegations in the Related Actions Complaints fail to make a *prima facie* showing of personal jurisdiction over Antoon or Tassillo, former corporate officers who live and work in Canada and have no contacts with either California or the United States.  The Related Actions Complaints do not allege that Antoon or Tassillo took any specific action in California or the United States—much less engaged in the requisite tortious or other wrongful conduct—that allegedly harmed Plaintiffs.

Plaintiffs argue that Antoon and Tassillo may be sued and are subject to personal jurisdiction as former officers of one MindGeek entity, and shareholders of another entity, over which the Court has personal jurisdiction.  This argument fails under the "fiduciary shield" doctrine in the Ninth Circuit, as explained in Antoon and Tassillo's Motion.  Plaintiffs try to overcome the fiduciary shield doctrine by asserting alter ego and guiding spirit theories of personal jurisdiction.  These attempts fail.

As to alter ego, Plaintiffs recognize that they have not alleged an essential element of an alter ego theory:   that they suffered an injustice caused by Antoon's or Tassillo's alleged abuse of the corporate form.  Plaintiffs do not argue—and

---

[1]  Capitalized terms not defined herein have the definitions given in Antoon and Tassillo's opening memorandum of law.  *See* ECF No. 62.

cannot demonstrate—that the MindGeek entities were inadequately capitalized such that Plaintiffs could not recover from the Non-Contesting Defendants (or any other MindGeek Defendant) if Antoon and Tassillo are dismissed from the case. Instead, Plaintiffs mischaracterize a shareholders' agreement as improper and *per se* evidence of an abuse of the corporate form and reiterate a list of factors from the opposition brief in *Fleites*, none of which suggest that either Antoon or Tassillo were alter egos of the MindGeek Entity Defendants.

The sole case cited by Plaintiffs in the Related Actions does not support their argument, and the Related Actions Complaints do not include any facts showing that Antoon or Tassillo had the requisite unity of interest or domination over any entity sufficient to overcome the fiduciary shield doctrine.  Instead, Plaintiffs merely point to the wholly inadequate briefing in *Fleites*.  Those contentions were insufficient there and incorporating them by reference here does not make them stronger.

*Second*, further recognizing the weakness of their alter ego contentions, Plaintiffs argue that Antoon and Tassillo are subject to personal jurisdiction, and should be held liable, because they were the "guiding spirits" behind the alleged wrongful conduct—an argument made for the first time now, and not made in over three years of the *Fleites* litigation.  The guiding spirit claim relies on a misreading of the law.  A corporate officer or director may be held liable as the guiding spirit of wrongful conduct only if he is both personally involved in the allegedly wrongful conduct, and that involvement created contacts with the forum state. Plaintiffs have failed to allege the facts required to make out guiding spirit liability, and, of particular note, Plaintiffs have failed to allege that Antoon or Tassillo had any contacts whatsoever with the state of California, which forecloses personal jurisdiction on a guiding spirit theory.

FERAS ANTOON AND DAVID TASSILLO'S REPLY
CASE NO. 2:24-cv-4786

*Third*, Plaintiffs impermissibly seek to apply all of their claims extraterritorially. The TVPRA contains several references to extraterritorial application of the statute, but none is applicable to the facts alleged in the Related Actions. Plaintiffs' claim that they merely seek a domestic application—even with respect to plaintiffs who live abroad and have no connection to the U.S. whatsoever—is not supported by precedent and should also be rejected. The same is true of Plaintiffs' 18 U.S.C. § 2252/2252A claims and the California state law claims.

*Fourth*, Plaintiffs make another unsuccessful attempt to get around the immunity conferred by Section 230 of the Communications Decency Act ("CDA"), 47 U.S.C. § 230. All of the Plaintiffs in the Related Actions allege damage from content provided to a website by a third party. MindGeek did not and could not contribute to the illegality of the creation of this content: it was unlawful at the moment it was created. Section 230 confers immunity on subsequent uploading to MindGeek websites. Controlling authority from the Ninth Circuit finds that categories and algorithmic selection of content are not sufficient to turn a website into a content creator. Plaintiffs' claims therefore must be dismissed.

## **ARGUMENT**

### I.    **Plaintiffs Have Not Met Their Burden of Pleading Personal Jurisdiction Over Antoon or Tassillo**

As in *Fleites*, Plaintiffs do not argue that this Court has personal jurisdiction based on the individual contacts of either Antoon or Tassillo; Plaintiffs only assert vicarious theories of personal jurisdiction based on Antoon's and Tassillo's respective roles at MindGeek. By failing to assert jurisdiction based on individual contacts in their Opposition, Plaintiffs have waived the contention that this Court

3

has personal jurisdiction over Antoon or Tassillo directly. *Baizakova v. Jaddou*, No. SA 24-cv-201 (JFW)(DFMX), 2024 WL 3063227, at *7 (C.D. Cal. June 14, 2024) (finding that plaintiff waived argument that she failed to address in opposition to a motion to dismiss and dismissing action with prejudice); *Conservation Force v. Salazar*, 677 F.Supp.2d 1203, 1211 (N.D. Cal. 2009) ("[w]here plaintiffs fail to provide a defense for a claim in opposition [to a motion to dismiss], the claim is deemed waived"), *aff'd*, 646 F.3d 1240 (9th Cir. 2011).

But even without this waiver, Plaintiffs' assertion of personal jurisdiction is deficient. Plaintiffs' complaints do not include specific factual allegations sufficient to make a *prima facie* showing of personal jurisdiction. To meet the constitutional requirements of due process, Plaintiffs may not rely on "mere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations." *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007); *see also Pado, Inc. v. SG Trademark Holding Co. LLC*, No. 20-cv-01565 (CJC)(PVCX), 2020 WL 1445720, at *4 (C.D. Cal. Mar. 24, 2020) (reasoning that "conclusory jurisdictional allegations" that failed to "specifically identify *any* events or transactions that took place in California" were insufficient to establish jurisdiction). The Related Actions Complaints do not allege any intentional act that Antoon or Tassillo took in, or expressly aimed at, either California or the United States. This Court's personal jurisdiction over Antoon or Tassillo thus depends on the success of Plaintiffs' two theories of vicarious personal jurisdiction based on their former positions as officers of one MindGeek entity and shareholders at another MindGeek entity.

Both of Plaintiffs' vicarious theories of personal jurisdiction fail. Under the fiduciary shield doctrine, the Non-Contesting Defendants' contacts with California or the United States may not be imputed to Antoon or Tassillo. *See* Mot. 16-28; *see also Click v. Dorman Long Tech., Ltd.*, No. 06-cv-1936 (PJH), 2006 WL

4

2644889, *4 (N.D. Cal. Sept. 14, 2006) ("[I]n order for fiduciary shield protections to be unavailable to defendants acting on behalf of their employer . . . a defendant's contacts must give rise to some identifiable theory of liability pursuant to which the defendant's contacts on behalf of the corporate employer may justifiably be imputed to the defendant individually.").

Plaintiffs attempt to defeat the fiduciary shield doctrine with two theories, but they have not met the requirements for either one. *First*, Plaintiffs argue that Antoon and Tassillo are alter egos of the MindGeek Entity Defendants, Opp'n 60-61, but this theory fails because Plaintiffs cannot show any injustice flowing from the alleged abuse of the corporate form, or any abuse of the corporate form at all. *Second*, Plaintiffs argue that Antoon and Tassillo are liable for the actions of the MindGeek Entity Defendants because they were the "guiding spirit" behind the allegedly unlawful activities. Opp'n 61-62. This argument fails because Plaintiffs do not allege the specific, individual involvement of Antoon or Tassillo in the alleged harm, and do not allege that such harm caused any contact with California, as required by the guiding spirit doctrine. As both of Plaintiffs' vicarious theories of personal jurisdiction fail, Antoon and Tassillo must be dismissed from the Related Actions.[2]

## A. Plaintiffs Fail to Plead that Any of the MindGeek Entities Are Antoon's or Tasillo's Alter Ego

Plaintiffs seek to overcome the fiduciary shield doctrine by arguing that Antoon and Tassillo, as former officers and minority shareholders, are the alter egos of the Non-Contesting Defendants subject to this Court's jurisdiction. Opp'n 60-61, 62-75; *see also* Compls. ¶¶ 18-23.

---

[2] Antoon and Tassillo join and incorporate by reference the arguments for dismissal set forth in concurrently filed reply memoranda of law submitted by the Non-Contesting Defendants and Bernd Bergmair.

To plead personal jurisdiction on an alter ego theory, Plaintiffs must make a *prima facie* showing of (1) a unity of interest and ownership between the Non-Contesting Defendants and Antoon or Tassillo and (2) an injustice caused by abuse of the corporate form. *In re Boon Glob. Ltd.*, 923 F.3d 643, 653 (9th Cir. 2019).[3] Plaintiffs do not carry their burden on either prong. Above all, Plaintiffs fail even to identify an injustice they would suffer from the alleged abuse of the corporate form. "California courts generally require some evidence of bad faith conduct on the part of defendants before concluding that an inequitable result justifies an alter ego finding." *Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1117 (C.D. Cal. 2003). Conclusory allegations that a corporation "is a sham and a fiction . . . do[] not adequately [allege] this element of alter ego liability." *Xyience Beverage Co., LLC v. Statewide Beverage Co., Inc.*, No. 15-CV-1502513(MMM)(AJWX), 2015 WL 13333486, at *9 (C.D. Cal. Sept. 24, 2015) (granting motion to dismiss claim of alter ego liability). Without even alleging bad faith conduct creating an injustice or an inequitable result, Plaintiffs' alter ego claims must be dismissed.

Plaintiffs primarily argue by citing to the *Fleites* Opposition, noting that the Plaintiff in that case alleged that the corporate form was manipulated to conceal Bergmair's ownership interest and to avoid tax payments, that the corporate structure had no economic substance or business purpose, and that it did not operate pursuant to its legal corporate form. Opp'n 60-61. For the reasons set forth in Antoon and Tassillo's opening brief and reply in *Fleites*, none of these contentions is sufficient to allege an injustice. Allegations that a corporate structure is created to avoid liability is "circular" and has been rejected by the

---

[3] Plaintiffs' alter ego argument largely incorporates by reference the argument from *Fleites*, pursuant to K.A. ECF No. 96-1, and accordingly, Antoon and Tassillo likewise incorporate their arguments from their motion to dismiss and reply in *Fleites* here.

6

FERAS ANTOON AND DAVID TASSILLO'S REPLY
CASE NO. 2:24-cv-4786

Ninth Circuit. *Fleites* Mot. 18, 20-21 (citing *In re Boon,* 923 F.3d at 654). Similarly, Plaintiffs' claim that alleged tax evasion has caused them injustice is not sufficient either. *Fleites* Mot. 21-22. Because Plaintiffs cannot point to any bad faith or manipulative abuse of the corporate form by anyone, and certainly not by Antoon or Tassillo, that caused harm to Plaintiffs, they cannot prevail on an essential element of their alter ego theory of jurisdiction.

Plaintiffs' allegations of a unity of interest and ownership between the MindGeek Defendants and Antoon or Tassillo likewise fall short. Plaintiffs ask this Court to find that the MindGeek corporate structure and Shareholders' Agreement provide *per se* support for their alter ego contentions. Opp'n 60-61. Four of Plaintiffs' six alleged alter ego arguments flow from the mere presence of the Shareholders' Agreement, yet Plaintiffs fail to demonstrate why this agreement supports such a finding. California law expressly permits shareholders of close corporations to enter into shareholders' agreements governing the "management of its business" and the "division of its profits." Cal. Corp. Code § 300(b). The mere presence of such an agreement, which adds another layer of corporate formalities onto those already required by law, does not support a claim that the shareholder signatories to that agreement are alter egos of the corporation. Instead, the existence of an agreement supports the opposite conclusion: that the signatories respect the corporate form and its requirements, recognize their obligations, and have decided to enter into additional agreements concerning their rights in order to suit their particular situation. *See Sikousis Legacy, Inc. v. B-Gas Ltd.*, 97 F.4th 622, 631-32 (9th Cir. 2024) (applying federal common law in admiralty and finding that shareholders' agreement undermined alter ego claims, affirming denial of alter ego liability theory). Had the MindGeek Entities been run in the absence of the Shareholders' Agreement, that would perhaps support an inference of

disrespect for the corporate form.  The presence of the Shareholders' Agreement shows adherence to corporate formalities.

Plaintiffs' allegations of inadequate capitalization are also wholly conclusory, June Compls. ¶¶ 22, 300, J.L. Compl. ¶¶ 22, 298, and "lack any sort of case-specific detail that demonstrates, for example, that [the corporation] is not adequately capitalized to meet its financial obligations, or instances in which [the individual defendant] used [the corporation's] corporate accounts for personal purposes." *FootBalance Sys. Inc. v. Zero Gravity Inside, Inc.*, No. 15-cv-1058 (JLS) (DHB), 2017 WL 1215832, at *7 (S.D. Cal. Apr. 3, 2017) (granting motion to dismiss alter ego theory of liability because plaintiff's conclusory allegations "simply mimic the factors courts consider when determining whether to pierce the corporate veil, and stated in that manner are not entitled to the assumption of truth.")  These contentions cannot support a finding of alter ego liability here.

Additionally, the only case Plaintiffs offer in support of their alter ego argument does not support their contentions in any way.  Opp'n 60.  In *Chunghwa Telecom Glob., Inc v. Medcom, LLC*, No. 5:13-CV-02104 (HRL), 2016 WL 5815831, at *6 (N.D. Cal. Oct. 5, 2016), the court noted in passing that alter ego allegations may overcome the fiduciary shield doctrine in some circumstances, but then ignored that doctrine entirely and went on to address the requirements of the guiding spirit exception.  *Chunghwa Telecom* did not even consider the elements of an alter ego theory of liability or jurisdiction, much less apply them.[4]

In sum, Plaintiffs' alter ego claim fails as the MindGeek Entity Defendants sued by Plaintiffs are adequately capitalized, regularly observed corporate formalities, documented transactions between the entities, and maintained their own books and records.  *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1074 (9th Cir. 2015)

---

[4]  *Chunghwa Telecom* also undermines Plaintiffs' guiding spirit argument, as discussed in the next section.

FERAS ANTOON AND DAVID TASSILLO'S REPLY
CASE NO. 2:24-cv-4786

(finding these factors sufficient to overcome allegations of alter ego claim, affirming grant of motion to dismiss).  Combined with Plaintiffs' inability to even articulate a theory of injustice arising from the alleged alter ego claim here, the court should reject Plaintiffs' contentions and find that this Court has no personal jurisdiction over Antoon or Tassillo.[5]

### B. Plaintiffs' Allegations Do Not Support the Exercise of Jurisdiction Under the Guiding Spirit Exception to the Fiduciary Shield Doctrine

Recognizing that their alter ego allegations are not sufficient to exercise jurisdiction over Antoon or Tassillo, Plaintiffs now belatedly claim that Antoon or Tassillo were the "guiding spirits" behind their harm, and thus that this Court can ignore the fiduciary shield doctrine on that basis.  Opp'n. 61-62.  The timing of this claim is noteworthy.  This theory of jurisdiction was not raised at all in *Fleites*, which has nearly identical claims and defendants.  The Plaintiff in *Fleites*, represented by the same counsel who represent Plaintiffs here, took substantial jurisdictional discovery in that action, but did not make a guiding spirit argument, either before or after jurisdictional discovery.  Plaintiffs' assertion of the theory now indicates a clear recognition of the inadequacy of Plaintiffs' alter ego theory.

In any event, Plaintiffs fail to meet the minimum requirements for the guiding spirit exception to the fiduciary shield doctrine.  The guiding spirit exception permits a corporate officer or director to be subject to personal jurisdiction vicariously through the corporation.  The officer or director "can be liable for corporate actions where they are 'the guiding spirit behind the wrongful

---

[5] Recently, the Northern District of Alabama declined to grant summary judgment to MindGeek on alter ego claims in a related case.  Plaintiffs provided notice of the decision.  *See* ECF No. 104.  That decision is not relevant to Antoon or Tassillo here or in *Fleites* because it only involved MindGeek corporate entities and did not involve any individuals, and because the court only found that a dispute of fact precluded summary judgment.

FERAS ANTOON AND DAVID TASSILLO'S REPLY
CASE NO. 2:24-cv-4786

conduct, or the central figure in the challenged corporate activity.'" *In re Boon*, 923 F.3d at 651 (quoting *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1069 (9th Cir. 2016)).  Under California law, to apply the doctrine, two conditions must be met: "[(1)]The act must be one for which the officer would be personally liable and [(2)] the act must in fact create contact between the officer and the forum state.  If both requirements are met, the act may be considered in determining . . . whether the exercise of personal jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice.'"  *Gemcap Lending I, LLC v. Crop USA Ins. Agency, Inc.*, No. 13-cv-05504 (SJO)(MANX), 2014 WL 12589333, at *6 (C.D. Cal. Feb. 14, 2014) (quoting *Seagate Tech. v. A.J. Kogyo Co.*, 219 Cal. App. 3d 696, 703-04 (1990)); *see also In re Boon*, 923 F.3d at 652 (assessing individual defendant's "contacts with California" in analyzing guiding spirit theory).  Thus, Plaintiffs must allege specific wrongful acts taken by Antoon or Tassillo personally that created contacts with California.

Plaintiffs have not made any such allegations.  As Antoon and Tassillo pointed out in their opening Motion, the Complaints do not contain a single allegation that Antoon or Tassillo took any action directed at California or the United States.  Mot. 17.  The absence of any such allegations against Antoon or Tassillo prevents Plaintiffs from using the guiding spirit exception here.  *Gemcap Lending I*, 2014 WL 12589333 at *7 (dismissing individual defendant "[b]ecause Plaintiff has failed to establish a *prima facie* case that [the individual] expressly directed his alleged tortious acts at California.")

The cases cited by Plaintiffs do not support their contention.  Opp'n 61-62.  One of Plaintiffs' cases recognizes that in order for a corporate officer to be personally liable for the acts of the corporation, the officer's acts must both subject the officer to liability "and may be considered *contacts of the individual* for purposes of determining whether long-arm jurisdiction may be exercised over the

individual." *Chunghwa Telecom*, 2016 WL 5815831, at *6 (quoting *j2 Glob. Commc'ns, Inc. v. Blue Jay, Inc.*, No. C 08-4254 PJH, 2009 WL 29905, at *6 (N.D. Cal. Jan. 5, 2009)).  To prevail on a guiding spirit theory, Plaintiffs must allege both direct participation in the wrong and that the wrongful conduct involved contacts with the forum state.  When the individual is not alleged to have contacts with the forum state, an exercise of jurisdiction is inappropriate. *Abundant Living Fam. Church v. Live Design, Inc.*, No. 22-cv-00140 (RSWL) (MRWX), 2022 WL 2176583, at *3 (C.D. Cal. June 15, 2022) (dismissing individual defendants under fiduciary shield doctrine and declining to apply guiding spirit exception because allegations of participation in the harm and contacts with California were insufficient).

In another case Plaintiffs cite in opposition, the court applied Federal Rule of Civil Procedure 4(k)(2)'s analysis to determine that the defendant had sufficient minimum contacts with the United States as a whole, through his position at a corporate defendant, and attributed those contacts to the individual.  *AMA Multimedia LLC v. Sagan Ltd.*, No. 16-cv-01269 (PHX)(DGC), 2020 WL 5988224, at *2-*3 (D. Ariz. Oct. 9, 2020).  This analysis cannot apply here as Plaintiffs do not allege that Antoon or Tassillo had any contacts with either California or the United States as a whole, and thus Plaintiffs cannot demonstrate that the guiding spirit exception should apply.

The only other authority Plaintiffs offer in opposition, *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1069 (9th Cir. 2016), did not involve a personal jurisdiction defense, and therefore cannot support Plaintiffs' argument either.  *See United States v. Kirilyuk*, 29 F.4th 1128, 1134 (9th Cir. 2022) ("As we have repeatedly stated, '[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as

FERAS ANTOON AND DAVID TASSILLO'S REPLY
CASE NO. 2:24-cv-4786

having been so decided as to constitute precedents.'") (quoting *United States v. Ped*, 943 F.3d 427, 434 (9th Cir. 2019)).

Thus, Plaintiffs cannot establish a *prima facie* case of personal jurisdiction over Antoon or Tassillo, either personally or vicariously, and they must therefore be dismissed from the Related Actions.

## II.     Plaintiffs' Complaints Allege Impermissible Extraterritorial Claims Against Antoon and Tassillo

Antoon and Tassillo argue that the Plaintiffs are seeking an impermissible extraterritorial application of the TVPRA and 18 U.S.C. § 2252/2252A.  Plaintiffs' opposition is unavailing.  Plaintiffs argue that the TVPRA civil remedy applies extraterritorially, and, in the alternative, that they are seeking a domestic application in the Related Actions.  Opp'n 33-39.  Plaintiffs are wrong on both counts.  Plaintiffs' California law claims also involve impermissible extraterritorial applications to foreign residents and thus must be dismissed.

### A. The TVPRA Specifies When It Applies Extraterritorially and None of those Conditions Are Met as to Antoon or Tassillo

In their opening brief, Antoon and Tassillo argued that the TVPRA's civil remedy provision, section 1595, is silent as to its extraterritoriality, and therefore under Supreme Court precedent, "[a]bsent clearly expressed congressional intent to the contrary, federal laws will be construed to have only domestic application." *RJR Nabisco v. Eur. Cmty.*, 579 U.S. 325, 335 (2016); *see also* Mot 29-30.  Thus, because section 1595 lacks an affirmative indication of its extraterritoriality, it does not reach Antoon or Tassillo because Plaintiffs allege all their conduct took place abroad.

In opposition, Plaintiffs argue that section 1595 should apply extraterritorially because some of the criminal offenses incorporated into the

12

TVPRA's civil remedy have extraterritorial effect.  Opp'n 33-36.  But even assuming *arguendo* that section 1595 has the limited extraterritorial effect asserted by Plaintiffs, Plaintiffs cannot demonstrate that the conditions for an extraterritorial application have been met in this case.  As explained below, Plaintiffs misread both the TVPRA and the authority they offer in support of their position.

As an initial matter, Plaintiffs do not rebut Antoon and Tassillo's argument that section 1595 applies only domestically.  Plaintiffs concede, as they must, that the Supreme Court in *RJR Nabisco* separately analyzed the extraterritoriality of RICO's underlying criminal predicate offenses and its civil remedy provision.  Opp'n 34; *RJR Nabisco*, 579 U.S. at 349 ("Nothing in [RICO's civil remedy provision] provides a clear indication that Congress intended to create a private right of action for injuries suffered outside of the United States.")  Section 1595 is equally silent as to its extraterritorial application, so this Court should reach the same conclusion as the Supreme Court in *RJR Nabisco* and hold that section 1595 does not have extraterritorial effect.

Plaintiffs nevertheless argue that because the TVPRA's criminal offenses apply extraterritorially, that the TVPRA should apply extraterritorially in this case.  Opp'n 33-34.  Plaintiffs are incorrect and misread both the TVPRA and the precedents they offer in support of their argument.  In *RJR Nabisco*, the Supreme Court made clear that "when a statute provides for some extraterritorial application, the presumption against extraterritoriality operates to limit that provision to its terms." *Id.* at 339 (quoting *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 265 (2010)).  Although Section 1596 provides for extraterritorial application for some criminal violations of the TVPRA, including section 1591, section 1596 limits that extraterritorial application to certain specific circumstances:  when the "alleged offender is a national of the United States" or "lawfully admitted for permanent residence," or when the "alleged offender is

present in the United States." 18 U.S.C. § 1596(a)(1)-(2). To apply extraterritorially, then—assuming section 1595 applies extraterritorially, which it does not—*first*, the relevant predicate criminal offense must apply extraterritorially under section 1596; and, *second*, the defendant must be either a U.S. national, lawful permanent resident, or present in the United States under section 1596.

Here, Plaintiffs can meet only one of these two requirements. As to the predicate criminal offense, one of Plaintiffs' TVPRA causes of action, under section 1591 (criminal sex trafficking) would possibly apply extraterritorially under section 1596, but Plaintiffs' other cause of action, under section 1594 (attempt and conspiracy), would not. Under the *RJR Nabisco* analysis advanced by Plaintiffs, the TVPRA's civil remedy provision may apply extraterritorially only to the extent that the underlying criminal offense incorporated as part of the civil remedy (here, section 1591) has an expressly extraterritorial effect.

However, as to the second requirement for extraterritorial application—the defendant's connection to the United States—the Plaintiffs' allegations fail. Plaintiffs concede that Antoon and Tassillo "are not U.S. nationals or residents," Opp'n 36, and Plaintiffs do not allege that Antoon or Tassillo were present in the United States. That is not surprising because both men lived and worked in Canada. Consequently, the extraterritoriality provisions of section 1596 are inapplicable and foreclose the TVPRA civil claims against Antoon and Tassillo even if section 1595 applies extraterritorially, which it does not.

The authorities on which Plaintiffs rely do not support their extraterritorial claims and demonstrate that the criminal prohibitions of the TVPRA only applies extraterritorially in limited circumstances that are not present in this case. Opp'n 33-36. In *United States ex rel. Hawkins v. ManTech Int'l Corp.*, No. CV 15-2105 (ABJ), 2024 WL 4332117, at *13 (D.D.C. Sept. 27, 2024), the district court in a *qui tam* action held "that section 1595 applies extraterritorially *to the*

*extent that the offenses for which it supplies a private right of action have extraterritorial application*."  (emphasis added).  There, the court relied on another provision of the TVPRA that further extends the TVPRA's extraterritorial application to those "employed by or accompanying the Federal Government outside the United States."  18 U.S.C. § 3271(a).  As the defendants in *Hawkins* were "U.S. contractors," section 3271(a) provided express indication that the TVPRA applied to their actions abroad.  *Id.* at *13.  Section 3271(a) plainly has no application in this case.

The only other decision Plaintiffs cite in opposition also does not support Plaintiffs' application of the TVPRA in this case.  In *Roe v. Howard*, 917 F.3d 229, 242 (4th Cir. 2019), the Court of Appeals for the Fourth Circuit noted that "the purpose, structure, history, and context of the TVPRA all support the extraterritorial application of § 1595 *for an appropriate predicate offense*."  *Id.* (emphasis added).  The TVPRA applied extraterritorially in *Roe* because the defendants were U.S. embassy employees, and appellant's husband had been found liable after trial for sexually abusing an employee while posted in Yemen.  The Fourth Circuit affirmed the extraterritorial application of section 1591 because it found that another provision, 18 U.S.C. § 7(9), included the residences of U.S. diplomatic employees as within the territorial jurisdiction of the United States, and that it was "undisputed that [one defendant's] part in [plaintiff's] abuse occurred entirely on U.S. embassy grounds and housing in Sana'a," Yemen.  *Roe*, 917 F.3d at 244.  The extraterritorial application of the statute was permissible because Congress had explicitly applied the TVPRA to the conduct of U.S. diplomats in certain facilities abroad.  This analysis plainly has no application to this case.

Plaintiffs offer no other authority to support their position as to why either section 1591, 1594, or 1595 should apply extraterritorially in this action.  It is undisputed that neither Antoon nor Tassillo is within the reach of section 3271, nor

do the Complaints in the Related Actions allege that either Antoon or Tassillo took any action on U.S. diplomatic territory abroad.

Plaintiff argues, without citing any authority, that the TVPRA should apply extraterritorially in this case because Antoon and Tassillo should be considered "present in the United States" for the purposes of Section 1596(a)(2).  Opp'n 36-37.  Tellingly, Plaintiffs do not support this claim with a citation to a single allegation in their Complaints that alleges "presence" in the United States because the Complaints do not allege that Antoon or Tassillo were present in the United States at all.  Plaintiffs' attempt to salvage this application by claiming that Antoon and Tassillo were present in the United States as alter egos of unspecified entity defendants, Opp'n 37 n.25, but this argument is unavailing too.[6]  Had Congress intended to extend jurisdiction to those not physically present in the United States, but to those subject to its long-arm jurisdiction, it could have simply said as much in the statute.  That was not the formulation Congress used:  it used the term "present in the United States."

The text and structure of Section 1596(a) make clear that the law is referring to physical presence.  In the Ninth Circuit, courts are instructed to interpret statutes by looking to their plain language and giving effect to their most natural reading in context.  *See Wadler v. Bio-Rad Lab'ys, Inc.*, 916 F.3d 1176, 1186 (9th Cir. 2019) (using "the more natural and plain reading" of a statutory text and using context to interpret statutory provision).  The natural reading of the text of Section 1596(a)(2) is that it refers to physical presence, and the statutory context of the provision confirms that reading.  The second clause states that Section 1596(a)(2) includes those present in the United States "irrespective of the nationality of the alleged

---

[6] Even though it would be insufficient for the same reasons discussed above, Plaintiffs do not even assert that their guiding spirit theory of jurisdiction should apply here, further demonstrating its use as an eleventh-hour attempt to argue around the manifest deficiency of their pleadings.  Opp'n 37 n.25.

offender." 18 U.S.C. § 1596(a)(2). This clause makes clear that Congress considered the possible relevance of nationality in determining whether an alleged offender was present in the United States, and concluded that nationals of other nations are "present in the United States" only when they are physically present. The language of Section 1596(a)(2) would not make sense if applied to those vicariously "present," as their nationality would be irrelevant: they would either be present via their contacts or not.

In sum, as applied to natural persons, the language of Section 1596(a)(2) clearly covers only a person physically within the U.S., regardless of immigration status or nationality, thus extending the TVPRA's extraterritorial jurisdiction to acts outside the United States committed by those within the U.S. Plaintiffs do not allege that Antoon or Tassillo committed any acts in the United States, and Plaintiffs concede that Antoon and Tassillo are not U.S. nationals or residents, Opp'n 36, and thus they are seeking an impermissible extraterritorial application of the TVPRA.

Since Plaintiffs cannot demonstrate that the TVPRA applies extraterritorially to Antoon or Tassillo even under their own reading of the statute, Plaintiffs' claims are impermissible extraterritorial applications and should be dismissed.

## B. Plaintiffs Do Not Seek a Domestic Application of the TVPRA.

Plaintiffs also argue that even if the TVPRA does not apply extraterritorially, they are merely seeking a domestic application of the statute in any event. Opp'n 37-39. Plaintiffs are incorrect. To determine whether a statutory application is domestic or foreign, courts must start by identifying the "focus of Congressional concern" of the statute at issue. "To make that determination, courts must start by identifying the 'focus of congressional concern' underlying the provision at issue. 'The focus of a statute is the object of its solicitude, which can include the conduct it seeks to "regulate," as well as the

parties and interests it 'seeks to "protect"' or vindicate.'" *Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 600 U.S. 412, 418 (2023) (quoting *RJR Nabisco*, 579 U.S. at 336 and *WesternGeco LLC v. ION Geophysical Corp.*, 585 U. S. 407, 414 (2018)). After identifying the focus of the statute at issue, the court must then ask whether the conduct relevant to that focus occurred in the United States. *Id.*; *see also Morrison*, 561 U.S. at 266-67 (asserted application was foreign because conduct relevant to purchase and sale transactions of securities occurred outside the United States). It is this second step which is "designed to apply the presumption against extraterritoriality to claims that involve both domestic and foreign activity, separating the activity that matters from the activity that does not." *Abitron Austria*, 600 U.S. at 419. Where all conduct regarding the violations took place outside the United States, "courts do 'not need to determine . . . the statute's focus at all.' In that circumstance, there would be no domestic conduct relevant to any focus, so the focus test has no filtering role to play." *Id.* (quoting *RJR Nabisco*, 579 U.S. at 337.)

Plaintiffs fail meaningfully to engage with either aspect of this analysis. Despite bearing the burden of demonstrating a domestic application, *Abitron Austria*, 600 U.S. at 418, Plaintiffs do not address the "focus" of the TVPRA at all for U.S.-based Plaintiffs. Opp'n 37. However, the focus inquiry is necessary for all Plaintiffs in the Related Actions, and Plaintiffs concede that the focus of section 1591(a)(2) is on those who knowingly benefit from participation in a sex trafficking venture. Opp'n 38; 18 U.S.C. § 1591(a)(2). Plaintiffs do not address where the knowledge and receipt of the benefits of Plaintiffs' alleged trafficking occurred. For Antoon and Tassillo, however, both their knowledge and the receipt of any alleged benefit could only have occurred outside the United States, and thus all conduct relevant to a violation of section 1591(a)(2) could only have occurred outside this country. As noted above, *see* Section I, Plaintiffs have not alleged that

Antoon or Tassillo had any relevant contacts with the United States, as they lived and worked in Canada. Any financial benefit either would have allegedly received would have been received abroad, and any actual knowledge of any of the Plaintiffs' CSAM would have been learned abroad. All relevant conduct to the focus of section 1591(a)(2) occurred abroad.

Plaintiffs assert that because some of them were trafficked in the United States, or because some benefits received by the alleged sex trafficking ventures were from domestic sources, they seek a domestic application of section 1951(a)(2). Opp'n 37-39. These tangential connections to domestic activity are insufficient. "[T]he presumption against extraterritorial application would be a craven watchdog indeed if it retreated to its kennel whenever *some* domestic activity is involved in the case." *Morrison*, 561 U.S. at 266.

The decision in *Morrison* is instructive. There, the Supreme Court held that the focus of section 10(b) of the Exchange Act was on the purchase and sale of securities, and "not upon the place where the deception originated." *Id.* Thus, even though the plaintiff in *Morrison* alleged that executives at a Florida subsidiary of an Australian company had engaged in fraud, the relevant purchases and sales of securities took place abroad, and so the alleged fraud in connection with the purchase and sale of a security was an impermissible extraterritorial application of the Exchange Act. *Id.* at 268-69. This reasoning produces the same result here: even though some of the Related Actions Plaintiffs are U.S. citizens who allege trafficking in this country, that connection is not sufficient to demonstrate a domestic application of section 1591(a)(2), when the conduct regulated is knowledge of these individuals abroad and the receipt of a benefit abroad.

Plaintiffs also argue that any foreign-incorporated company would be insulated from harm it causes in this country if this Court fails to find that Plaintiffs

19

are seeking a domestic application of the TVPRA. Opp'n 37. This simply ignores the law. It is not the jurisdiction of incorporation (or the nationality) of a defendant that determines whether an application of section 1591(a)(2) is domestic or foreign, it is where the alleged relevant conduct takes place. If it takes place domestically, the application is domestic, and where it takes place abroad, it is foreign. Because Plaintiffs seek to apply the TVPRA against Antoon or Tassillo for purely foreign conduct, Plaintiffs seek an impermissible extraterritorial application of the law.

Finally, Plaintiffs also argue that the extent of any benefit received from the U.S. can only be resolved through discovery. Opp'n 39. But this puts the cart before the horse. At the motion to dismiss stage, the relevant question is not what discovery might possibly reveal, but whether Plaintiffs have alleged sufficient facts to state a claim. As Plaintiffs have not alleged that Antoon or Tassillo received a domestic benefit from the alleged trafficking, they fail to state a claim for a domestic application of the TVPRA.[7]

### C. Plaintiffs' Section 2252 and 2252A Claims Are Also Impermissibly Extraterritorial

Plaintiffs also argue that Counts V and VI, asserting civil claims for violations of 18 U.S.C. §§ 2252 and 2252A, are permissible domestic applications of the statute. Opp'n 39-41. Plaintiffs are wrong.

In one brief paragraph, Plaintiffs say, in passing, that sections 2252 and 2252A have extraterritorial effect. Opp'n 41. According to Plaintiffs, Congress intended to make possession, transportation or distribution of CSAM a federal offense wherever on earth it may take place, and that it did so without any

---

[7] Moreover, the plaintiff in *Fleites*, represented by the same counsel as Plaintiffs here, took substantial jurisdictional discovery in that matter and still cannot identify any benefit received by Antoon or Tassillo from the United States.

affirmative indication of its extraterritorial effect.  Yet, despite the provisions' breadth (Section 2252 prohibits the knowing transportation, receipt or possession of CSAM), sections 2252 and 2252A are silent as to extraterritorial application.  As noted above, *see* section II.A-B, that is not the law.  The presumption against extraterritoriality limits silent statutes to purely domestic applications.

Plaintiffs claim *United States v. McVicker*, 979 F.Supp.2d 1154, 1174 (D. Or. 2013), and *United States v. Thomas*, 893 F.2d 1066, 1069 (9th Cir. 1990) support their view, but their reliance is misplaced.  *Thomas* dealt with a different statute entirely, 18 U.S.C. § 2251(a), and *McVicker*, another criminal prosecution, expressly noted that a different extraterritoriality analysis should "be applied to criminal statutes which are, as a class, not logically dependent on their locality for the government's jurisdiction."  979 F. Supp. 2d at 1171 n.1.  These cases thus cannot serve as precedent in this civil action.  Under the ordinary civil action extraterritoriality analysis, the silence of sections 2252 and 2252A on their extraterritoriality prevent their application abroad.[8]

Plaintiffs also claim that they are seeking domestic applications of Sections 2252/2252A, Opp'n 39-41, but they do not cite a single authority supporting this view.  They claim that *United States v. Wolfenbarger*, No. 16-ct-00519 (LHK), 2020 WL 2614958, at *2 (N.D. Cal. May 22, 2020) supports their position, but *Wolfenbarger* involved a criminal prosecution under a different statutory provision where a defendant located in the United States allegedly solicited CSAM from

---

[8] The same is true of 18 U.S.C. § 2255, which authorizes civil actions for violations of sections 2252 and 2252A.  Section 2255 contains additional language supporting a limit on its application to purely domestic conduct, as it authorizes service of process only within judicial districts of the United States.  18 U.S.C. §2255(c)(2). If Congress had intended these civil actions to apply extraterritorially, it would logically have provided for service of process on foreign defendants.

children abroad. *Id.* at *1. It is inapposite here, where a civil claim was brought under a different statue, against the *defendants* who were located abroad.

In analyzing the focus of the statute to determine its extraterritorial effect, Plaintiffs argue that the relevant inquiry is the location of the conduct of the individuals who are allegedly distributing, reproducing, transporting, receiving or possessing CSAM. Opp'n 40. Thus, whether the victims were located abroad, they argue, is not relevant to the analysis. *Id.* While Plaintiffs are correct that the focus of these statutes is on the conduct of the defendants, Plaintiffs fail to acknowledge that the misconduct alleged in the Related Actions is all extraterritorial rather than domestic. There is no allegation that any defendant took the alleged actions in the United States. As to Antoon and Tassillo, the Related Actions Complaints do not have a single allegation that they took any action in the United States, and thus the statute cannot be domestically applied to them.

Plaintiffs attempt to bridge this gap in their Complaints by pointing to allegations that certain, unspecified MindGeek Entity Defendants *may have stored* CSAM on servers in the United States. Opp'n 40 (citing K.A. ¶¶ 36, 63, 65, 68, 100-01). In doing so, Plaintiffs prove too much. In each of the cited paragraphs, Plaintiffs fail to connect Antoon or Tassillo to any action involving their CSAM. In so doing, they fail to allege even the basic elements of a domestic application of section 2252 or 2252A against Antoon or Tassillo. Plaintiffs thus fail to state a claim, which would be impermissibly extraterritorial even if properly pleaded.

### D. Plaintiffs' California Law Claims Are Impermissibly Extraterritorial

In their opening brief, Antoon and Tassillo argued that Plaintiffs' state law claims were also impermissible extraterritorial applications of California law insofar as they sought relief for out-of-state Plaintiffs. Mot. 31-33 (citing

*Daramola v. Oracle Am., Inc.*, No. 3:19-CV-07910 (JD), 2022 WL 2047553, at *3 (N.D. Cal. June 7, 2022) (California statutory claims), *aff'd*, 92 F.4th 833 (9th Cir. 2024) and *Aldini AG v. Silvaco, Inc.*, No. 5:21-CV-06423 (JST), 2022 WL 20016826, at *16 (N.D. Cal. Aug. 3, 2022) (California common law claims)). Plaintiffs' only response is in a footnote that cites no authority. Opp'n 54 n.43. This footnote entirely ignores California's statutory presumption against extraterritoriality, and thus Plaintiffs' California statutory claims in Counts XI, XII, XIV and XV should be dismissed in their entirety. *Baizakova*, 2024 WL 3063227 at *7 (argument not addressed in opposition to motion to dismiss is waived). As to the common law claims, Plaintiffs' claims must also be dismissed because they "fail[] to plausibly plead that any of the alleged wrongful conduct occurred in California." *Aldini AG*, 2022 WL 20016826, at *16. In a footnote, Plaintiffs point to ¶¶ 13 and 15 of their Complaints, but those paragraphs just describe the activities of two entity defendants generally. They do not plausibly allege that any wrongful conduct as to any Plaintiff occurred in California. All of Plaintiffs' California claims must be dismissed as impermissible extraterritorial applications.

## III. Section 230 of the CDA Bars Plaintiffs' Claims

Plaintiffs' Opposition fails meaningfully to address arguments of Antoon and Tassillo in their Motion to Dismiss that Plaintiffs' claims against them are barred by Section 230 of the CDA. Opp'n. 55-58. The CDA expressly states that a provider of an interactive computer service (most commonly, websites) may not be treated as the publisher of information provided by a separate information content provider. 47 U.S.C. § 230(c)(1). The law in this Circuit is clear that when a plaintiff asserts a claim under Section 230 against a website and treats the website as a publisher of such third-party content, that claim will fail. *See Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 738 (9th Cir. 2024). There is no factual

dispute that Plaintiffs' claims arise from the use of a website, and that videos of Plaintiffs were provided by a separate content provider.[9]

Plaintiffs seek to treat Antoon and Tassillo, among another individual and entity defendants, as publishers because they allege that those defendants violated a duty that requires them to monitor third-party content.  *See* Mot. 43; *see also Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1103 (9th Cir. 2009), *as amended* (Sept. 28, 2009).  According to Plaintiffs, defendants could have avoided liability for Plaintiffs' claims only by reviewing Plaintiffs' content, thus making them "publishers" for the purpose of Plaintiffs' claims.  That is not the law.  In their Opposition, Plaintiffs sidestep completely the arguments that Antoon and Tassillo are *not* publishers, and fail to analyze or even make mention of the aforementioned case law.  Mot. 43-44.

Plaintiffs argue that MindGeek is a content creator and thus not immune under Section 230, but this claim is undermined by the factual allegations in the Complaints to the contrary – namely, that the MindGeek entities "incorporated all illegal content into its SEO process just like it did all other legal content."  June Compls. ¶ 115; J.L. Compl. ¶ 113.  Plaintiffs cite to various means through which Defendants' actions allegedly "contribut[ed] to the creation and development of illegal content," *see* Opp'n 55-57, yet Plaintiffs' argument is premised on the fact that that those same means were also employed with respect to *legal* content.  Plaintiffs' allegations are that legal and illegal content were treated the same.  *Id.*

---

[9] In a recent decision in the Northern District of Alabama, ECF No. 104, the court denied summary judgment as to certain MindGeek Entity Defendants on a claim under 18 U.S.C. § 2252 in a similar case by finding, in part, that CSAM is not "information" at all.  *Id.* at 33-34.  This position is contrary to Ninth Circuit authority, which holds that CSAM is information eligible for immunity under Section 230.  *See, e.g., Does 1-6 v. Reddit, Inc.*, 51 F.4th 1137, 1139 (9th Cir. 2022) (Section 230 precludes plaintiffs from stating claim arising from CSAM on Reddit).

This is fatal to Plaintiffs' argument that Section 230 immunity does not apply. *See, e.g.*, *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1096 (9th Cir. 2019) (affirming grant of Section 230 immunity to website "because its functions, including recommendations and notifications, were content-neutral tools" that did not treat illegal content differently from lawful content).

Furthermore, even if the Court were to hold that MindGeek itself is a content creator, which it is not, both the Related Actions Complaints and Plaintiffs' Opposition lack any factual allegations or argument whatsoever that Antoon or Tassillo had any knowledge of or involvement in MindGeek's alleged tortious conduct, and thus they are immune from suit pursuant to Section 230. *See Klayman v. Zuckerberg*, 753 F.3d 1354, 1357-58 (D.C. Cir. 2014) (affirming extension of Section 230 immunity to owner of Facebook).

## CONCLUSION

For the reasons set forth above and in Antoon's and Tassillo's opening brief, the Related Action Complaints should be dismissed as to Antoon and Tassillo.


DATED: January 8, 2025                 Respectfully Submitted,

                                       By:  /s/ Jonathan S. Sack

                                       MORVILLO ABRAMOWITZ GRAND
                                       IASON & ANELLO PC
                                       Jonathan S. Sack (*pro hac vice*)

                                       *Counsel for Specially Appearing Defendant
                                       David Tassillo*


                                       COHEN & GRESSER LLP
                                       Jason Brown (*pro hac vice*)
                                       Matthew V. Povolny (*pro hac vice*)

25

FERAS ANTOON AND DAVID TASSILLO'S REPLY
CASE NO. 2:24-cv-4786

1    Joanna Chan

2    *Counsel for Specially Appearing Defendant*
     *Feras Antoon*
3

4    WIECHERT, MUNK & GOLDSTEIN, PC
     David Wiechert (SBN 94607)
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FERAS ANTOON AND DAVID TASSILLO'S REPLY
CASE NO. 2:24-cv-4786

## **CERTIFICATE OF COMPLIANCE**

The undersigned counsel of record for specially appearing defendant David Tassillo, certifies that this brief contains no more than thirty five (35) pages, as required by this Court's October 9, 2024, order, ECF No. 54.

DATED: January 8, 2025                    By:  /s/ Jonathan S. Sack

# CERTIFICATE OF SERVICE

I, Inga-Marie Cohen, an employee of Morvillo, Abramowitz, Grand, Iason & Anello, PC, located at 565 Fifth Avenue, New York, NY 10017, declare under penalty and perjury that I am over the age of eighteen (18) and not a party to the above-entitled proceeding.

On January 8, 2025, I served the forgoing documents, described as **SPECIALLY APPEARING DEFENDANTS FERAS ANTOON AND DAVID TASSILLO'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** on all interested parties as follows:

**BY E-MAIL:**  I caused the document(s) to be transmitted electronically by filing the forgoing with the clerk of the District Court using the CM/ECF system, which electronically notifies counsel for all parties.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 8, 2025, at New York, New York.

/s/ *Inga-Marie Cohen*
Inga-Marie Cohen