1   DAN MARMALEFSKY                    RONALD G. WHITE
    (CA SBN 95477)                     (admitted pro hac vice)
2   DMarmalefsky@mofo.com              RWhite@wmhwlaw.com
3   Morrison & Foerster LLP            Walden Macht Haran & Williams LLP
    707 Wilshire Boulevard             250 Vesey Street
4   Los Angeles, California 90017-3543 New York, NY 10281
5   Telephone: 213-892-5200            Telephone: 212-335-2387
    Facsimile: 213-892-5454            Facsimile: 212-335-2040
6
7   Attorneys for Defendant Bernd Bergmair

8                 UNITED STATES DISTRICT COURT
9                CENTRAL DISTRICT OF CALIFORNIA

10

11  K.A.,                              Case No. 2:24-cv-04786-WLH-ADS

12                      Plaintiff,     **DEFENDANT BERND**
           vs.                         **BERGMAIR'S REPLY IN**
13                                     **SUPPORT  OF**
    MINDGEEK S.A.R.L., et al.,         **MOTION TO**
14                                     **DISMISS PLAINTIFF'S**
                        Defendants.    **COMPLAINT**
15                                     **FOR LACK OF PERSONAL**
                                       **JURISDICTION [FRCP**
16                                     **12(B)(2)] AND FOR**
                                       **FAILURE TO STATE A**
17                                     **CLAIM [FRCP 12(B)(6)];**
                                       **MEMORANDUM OF**
18                                     **POINTS AND**
                                       **AUTHORITIES**
19
20
21                                     Date: January 31, 2025
                                       Time: 1:30 p.m.
22                                     Courtroom: 9B
23                                     Judge: Hon. Wesley L. Hsu
                                       Complaint Filed: June 7, 2024
24                                     Trial Date: None Set
25
26
27
28

1
2

# TABLE OF CONTENTS

**Pages**

INTRODUCTION ...................................................................................................... 1

ARGUMENT ............................................................................................................. 3

I.  Plaintiffs have not established personal jurisdiction over Bergmair............... 3

    A.  Plaintiffs cannot establish the "injustice" element of the alter
        ego test. ............................................................................................. 3

    B.  Plaintiffs cannot establish the "unity of interest" element of the
        alter ego test. .................................................................................... 5

II.  Plaintiffs have failed to state a claim against Bergmair................................. 9

    A.  Extrinsic evidence may not be considered in assessing whether
        Plaintiffs have stated a claim against Bergmair................................. 9

    B.  Section 230 bars all of Plaintiffs' claims against Bergmair. ............. 13

    C.  The federal trafficking claims (Counts I and IV) fail to state a
        claim. ............................................................................................... 14

        1.  18 U.S.C. § 1595 does not apply extraterritorially to
            Bergmair. ............................................................................. 14

        2.  The Complaints fail to allege a relationship between
            Bergmair and Plaintiffs or their traffickers. ............................ 16

        3.  The Complaints' TVPRA Conspiracy Claim (Count IV) is
            Deficient................................................................................ 18

    D.  The federal child pornography claims (Counts V and VI) fail to
        state a claim..................................................................................... 19

    E.  The California law claims (Counts VII through XVII) fail to
        state a claim..................................................................................... 20

CONCLUSION........................................................................................................ 22

i

1

## TABLE OF AUTHORITIES

2
<u>Pages</u>

3
<u>Cases</u>

4

*Abokasem v. Royal Indian Raj Intl. Corp.*,
5
    2011 WL 635222 (N.D. Cal. Feb. 11, 2011).................................................. 10

6
*Acevedo v. EXP Realty, LLC*,
7
    713 F. Supp. 3d 740 (C.D. Cal. 2024)........................................................ 17

8
*Ashcroft v. Iqbal*,
9
    556 U.S. 662 (2009) .................................................................................. 11

10
*B.J. v. G6 Hospitality, LLC*,
    2023 WL 3569979 (N.D. Cal. May 19, 2023) ......................................17, 18
11

12
*B.M. v. Wyndham Hotels & Resorts, Inc.*,
    2020 WL 4368214 (N.D. Cal. July 30, 2020)............................................. 18
13

14
*Chunghwa Telecom Global, Inc. v. Medcom, LLC*,
    2016 WL 5815831 (N.D. Cal. Oct. 5, 2016)............................................... 13

15
*Coste v. Fox Beverage USA Inc.*,
16
    2023 WL 8522987 (C.D. Cal. Oct. 10, 2023) ............................................ 11

17
*Doe v. MG Freesites, Ltd.*,
18
    Docket No. 7:21-cv-220-LSC (N.D. Ala. Dec. 19, 2024) .....................13, 14

19
*Does 1-6 v. Reddit, Inc.*,
20
    51 F. 4th 1137 (9th Cir. 2022)................................................................15, 16

21
*Facebook, Inc. v. Power Ventures, Inc.*,
22
    844 F.3d 1058 (9th Cir. 2016)..................................................................... 13

23
*Fair Housing Council of San Fernando Valley v. Roomates.com*,
    521 F.3d 1157 (9th Cir. 2008)..................................................................... 14
24

25
*G.G. v. Salesforce.com, Inc.*,
    76 F.4th 544 (7th Cir. 2023)........................................................................ 17

26
*Gerritsen v. Warner Bros. Ent. Inc.*,
27
    112 F. Supp. 3d 1011 (C.D. Cal. 2015)...................................................... 11

28

ii

*High v. Choice Mfg. Co.*,
    2012 WL 3025922 (N.D. Cal. July 24, 2012) ...................................................... 10

*J.B. v. G6 Hospitality, LLC*,
    2020 WL 4901196 (N.D. Cal. Aug. 20, 2020) ..................................................... 17

*J.M. v. Choice Hotels International, Inc.*,
    2022 WL 10626493 (E.D. Cal. Oct. 18, 2022) .................................................... 18

*Morrison v. National Australia Bank, Ltd.*,
    561 U.S. 247(2010) ............................................................................................ 15

*Ranza v. Nike, Inc.*,
    793 F.3d 1059 (9th Cir. 2015) ......................................................................... 2, 7

*Ratha v. Rubicon Resources, LLC*,
    111 F.4th 946 (9th Cir. 2024) ............................................................................ 18

*RJR Nabisco, Inc. v. European Community*,
    579 U.S. 325 (2016) ........................................................................................... 15

*Rongxiang Xu v. Nobel Assembly at Karolinska Institutet*,
    2013 WL 9760036 (C.D. Cal. Nov. 20, 2013) ....................................................... 9

*Russo v. APL Marine Services, Ltd.*,
    135 F. Supp. 3d 1089 (C.D. Cal. 2015) .............................................................. 21

*S.C. v. Hilton Franchise Holding LLC*,
    2024 WL 4773981 (D. Nev. Nov. 12, 2024) ................................................. 17, 18

*ScoreBlue, LLC v. Locum Tele PC*,
    2024 WL 3304515 (C.D. Cal. May 29, 2024) ...................................................... 11

*SinglePoint Direct Solar LLC v. Curiel*,
    2022 WL 331157 (D. Az. Feb. 3, 2022) .............................................................. 10

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) ............................................................................... 6

*St. Andrews Links Ltd. v. Source & Design Int'l (UK) LTD*,
    2022 WL 11902199 (N.D. Cal. Oct. 20, 2022) ..................................................... 9

*Stewart v. Screen Gems-EMI Music, Inc.*,
    81 F. Supp. 3d 938 (N.D. Cal. 2015) ................................................................. 10

*Sullivan v. Oracle Corp.*,
    51 Cal. 4th 1191 (Cal. 2011) ................................................................. 21

*Symettrica Ent., Ltd. v. UMG Recordings, Inc.*,
    2019 WL 8806093 (C.D. Cal. Sept. 20, 2019) ...................................... 11

*United States ex rel. Hawkins v. ManTech International*,
    2024 WL 4332117 (D.D.C. Sept. 27, 2024) .......................................... 15

*United States v. Bestfoods*,
    524 U.S. 51 (1998) ................................................................................. 7

*United States v. Levin*,
    13 F.4th 96 (1st Cir. 2021) ................................................................... 20

**Statutes**

18 U.S.C. § 1591(a) ............................................................. 14, 15, 16

18 U.S.C. § 1595 .................................................................. 14, 15, 17

18 U.S.C. § 1596 ........................................................................ 10, 14

18 U.S.C. § 1962(a) ............................................................................ 15

18 U.S.C. § 1962(b) ............................................................................ 15

18 U.S.C. § 1962(c) ............................................................................ 15

18 U.S.C. § 2252 .......................................................................... 10, 19

18 U.S.C. § 2252A ........................................................................ 10, 19

22 U.S.C. § 2258A(f)(3) ..................................................................... 20

22 U.S.C. § 7101 .......................................................................... passim

47 U.S.C. § 230(c) ....................................................................... 10, 13

Cal. Civ. Code § 52.5 .................................................................. 10, 20

**Rules**

Fed. R. Civ. P. 12(b)(2) ...................................................................... 10

Fed. R. Civ. P. 12(b)(6) ............................................................... passim

# **INTRODUCTION**

Plaintiffs' only argument for personal jurisdiction over Bergmair in this and the other Related Cases[1] relies upon imputing to him the contacts of the MindGeek corporate defendants on an alter ego basis. But Plaintiffs' Opposition[2] makes clear that they cannot establish either of the two elements of an alter ego claim. **First** and most obviously, as set forth in Bergmair's motion to dismiss (ECF No. 65), as well as his motion to dismiss and reply in *Fleites*,[3] Plaintiffs cannot establish the injustice element of the alter ego test. The Complaints nowhere allege that the MindGeek corporate defendants are insolvent or unable to pay a judgment in this case, and discovery revealed that the ███████████████████████████████████ ███████████████████████████████████████ As a result, there is no basis to require Bergmair – a foreign resident who was merely the beneficial owner of one of the shareholders of MindGeek – to remain in the case. This flaw alone requires dismissal of the case against Bergmair, without the need for the Court to address Plaintiffs' allegations regarding the unity of interest element. **Second**, Plaintiffs also cannot satisfy the unity of interest prong of the alter ego test since they cannot show that Bergmair exercised "pervasive control" and "dictate[d] every facet" of

---

[1] Capitalized terms have the meaning set forth in Bergmair's motion to dismiss (ECF No. 65).

[2] Plaintiff's Omnibus Opposition to Defendants' Motions to Dismiss (ECF No. 96-1) ("Opposition" or "Opp.").

[3] Defendant Bernd Bergmair's Notice of Motion and Motion to Dismiss Plaintiff's Second Amended Complaint (*Fleites* ECF No. 433) ("Bergmair *Fleites* Motion"); Defendant Bernd Bergmair's Reply in Support of Motion to Dismiss Plaintiff's Second Amended Complaint (*Fleites* ECF No. 499) ("Bergmair *Fleites* Reply"). Pursuant to the Court's order in this case (ECF No. 54), and the other Related Cases, Bergmair incorporates here the Bergmair *Fleites* Motion and Bergmair *Fleites* Reply and all declarations and exhibits submitted in connection therewith in the *Fleites* case. As further directed by the Court, notices referencing the instant reply in support of Bergmair's motion to dismiss in this case are being contemporaneously filed in the other 13 Related Cases. The Court's Order also expanded the page limit for this brief to 35 pages.

MindGeek's business, including "routine matters of day-to-day operation."[4]  The
Complaints concede that the company's ████████████ CEO and COO
handled its daily operations, (June Compl. ¶ 112; J.L. Compl. ¶ 110) and Plaintiffs'
Opposition repeats that MindGeek was ████████████████████████
████████████████████████████████████████████
████████████████ Opp. 70 (emphasis added).  Moreover, the evidence developed in
the *Fleites* jurisdictional discovery affirmatively demonstrated that, ████████
████████████████████████████████████████████
████████████ he did not exercise decision-making authority over MindGeek's daily
operations.  Because Plaintiffs cannot establish either element of the alter ego test –
their only claimed basis for personal jurisdiction over Bergmair – the Court should
grant Bergmair's motion to dismiss all the Related Cases for lack of personal
jurisdiction.

Similarly, Plaintiffs' Opposition barely mentions Bergmair in attempting to
argue that their claims are adequately pled.  Since the Complaints do not allege that
Bergmair even knew of Plaintiffs, their alleged traffickers or their videos, Plaintiffs
attempt to defend the sufficiency of their claims by instead pointing to MindGeek's
conduct, assuming that its conduct can be attributed to Bergmair on an alter ego
basis.  But this is simply wrong, both legally and factually: the *Fleites* jurisdictional
discovery materials are not properly considered on a Rule 12(b)(6) motion, and even
if they were considered, they affirmatively show that MindGeek was not Bergmair's
alter ego, as described above.  As a result of this and other flaws, the Complaints in
all the Related Cases are insufficient to state any claims against Bergmair and should
be dismissed.

---

[4] *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015).

# ARGUMENT[5]

**I.    Plaintiffs have not established personal jurisdiction over Bergmair.**

The *Fleites* jurisdictional discovery materials cannot save Plaintiffs' alter ego claims in the Related Cases.  As described in Bergmair's motion to dismiss and reply in *Fleites*, even with the benefit of the jurisdictional discovery in that case, Plaintiffs here cannot establish either element of the alter ego test.[6]

**A.    Plaintiffs cannot establish the "injustice" element of the alter ego test.**

Plaintiffs' Opposition makes clear that they are unable to establish the injustice element of the alter ego test.  The Complaints nowhere allege that the MindGeek corporate defendants are insolvent or unable to pay a judgment in this case.  Plaintiffs' Opposition merely incorporates the *Fleites* Opposition (Opp. 69-70), which ignores the jurisdictional discovery that ██████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████ In addition, the 2023 financial statements for the specific corporate defendants that own and operate Pornhub, MG Freesites Ltd. ("Freesites") and 9219-1568 Quebec, Inc. ("9219") – which do not challenge personal jurisdiction – ██████████████████ ████████████████████████████████████████████ Plaintiffs offer only a series of meritless arguments to paper over this fatal flaw.  Bergmair *Fleites* Reply 3-6.

---

[5] In addition to the arguments set forth here, Bergmair joins in the motions and arguments submitted by all other defendants, as applicable, in *Fleites* and the Related Cases.

[6] Just as in the *Fleites* Opposition ("*Fleites* Opp." 62, 76-78), Related Cases Plaintiffs continue to stake their alter ego claim on the theory that the Individual Defendants and MindGeek corporate defendants comprise a "single enterprise."  Opp. 71.  But as the cases cited in Bergmair's *Fleites* Reply establish, this is <u>not</u> a basis for establishing personal jurisdiction in the Ninth Circuit.  Bergmair *Fleites* Reply 2, n.3.

1    Plaintiffs' Opposition makes one telling concession.  Attempting to excuse
2  their inability to establish the injustice element of the alter ego test, Plaintiffs'
3  counsel claimed in the *Fleites* Opposition that a showing of injustice was not
4  required in the personal jurisdiction context.  *Fleites* Opp. 82-83.  In his *Fleites*
5  Reply, Bergmair showed that this was demonstrably wrong, citing decades of Ninth
6  Circuit cases that confirm the alter ego test in the jurisdictional context requires
7  establishing *both* unity of interest *and* injustice.  Bergmair *Fleites* Reply 3-4.
8  Yielding to the obvious, Plaintiffs' Opposition here concedes in a footnote that they
9  must "show an inequitable result."  Opp.72, n.53.

10    Plaintiffs' counsel's argument in the *Fleites* Opposition that Fleites did not
11  have to show injustice was clearly prompted by the recognition that she was unable
12  to demonstrate any such injustice.  Now, belatedly conceding that such a showing is
13  required, Related Cases Plaintiffs scratch to find some injustice to which they can
14  point.  Plaintiffs' Opposition first claims that ███████████████████████████
15  ███████████████████████████████████████████ Opp. 72.  But
16  even if this were true, Plaintiffs articulate no theory under which this would result
17  in an injustice to them in these cases, ████████████████████████████
18  ████████████████████████████████████████████████████████
19  ████████████████████████████ Moreover, this theory is
20  inconsistent with Plaintiffs' own allegations.  The *Fleites* Opposition, incorporated
21  by Related Cases Plaintiffs, claims on the one hand that ████████████████
22  ████████████████████████████ (*Fleites* Opp. 64, 67), but a
23  few pages later, claims that ████████████████████████████
24  ████████████████████████████████████████████████████████
25  ████████████████████████████ *Id.* at 70.[7]  In other words,
26
27  ————————————————
28  [7]  As pointed out in Bergmair's *Fleites* motion, Plaintiffs' claim that ██████████
     ████████████████████████████████████ is exaggerated and contradicted
   by the evidence developed in jurisdictional discovery.  Bergmair *Fleites* Motion 23,

1 ███████████████████████████████████████████████████████

2 ██████████████████████████████████ Plaintiffs' Opposition also claims

3 that they have demonstrated injustice because ████████████████████████

4 ███████████████████████████████████████████████████████

5 ██████████████████████ Opp. 72.  But this claim is wrong in several respects.  First,

6 ███████████████████████████████████████████████████████

7 ███████████████████████████████████████████████████████

8 ███████████████████████████████████████████████████████

9 ███████████████████████████████████████████████████████

10 Second, Plaintiffs are incorrect in asserting that ████████████████████████

11 ██████████████████████████████████ As noted above, Freesites

12 and 9219, the specific corporate entities that owned and operated Pornhub, on which

13 Plaintiffs' videos were posted, are defendants in this case, do not challenge personal

14 jurisdiction, and █████████████████████████████████████████

15 The suggestion that Plaintiffs could be left chasing the wrong entity or one that is

16 insolvent is simply a straw-man argument invented by Plaintiffs to try to drag the

17 Individual Defendants into the cases on an alter ego theory.

18     **B.**    **Plaintiffs cannot establish the "unity of interest" element of the**

19              **alter ego test.**

20       With respect to the unity of interest element, Plaintiffs' Opposition similarly

21 incorporates the *Fleites* Opposition (Opp. 69-70), which offers no answer for

22 ─────────────────────

23 n.21.  But Plaintiffs' conflicting allegations illustrate that their alter ego theory is incoherent.

24 [8] Indeed, the fact that ████████████████████████████████

25 ███████████████████████████████████████████████████████

26 ███████████████████████████████████████████████████████

27 ███ ██ ███ ████ ██████ ████ ██ ██ █████ ████ ████ ████ ██ ██ ████

28 ███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████

BERGMAIR REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT



Bergmair's Declaration (ECF No. 65-2 at ¶¶ 4, 6-7) and the extensive evidence summarized in Bergmair's motion to dismiss establishing that he did not exercise day-to-day control of MindGeek's operations, which is a prerequisite for a finding of alter ego.  Bergmair *Fleites* Motion 21-25; Bergmair *Fleites* Reply 7-8.  Plaintiffs do not even try to square their argument with their concession that Antoon and Tassillo "handl[ed] the direct day-to-day implementation" of MindGeek's operations.  June Compl. ¶ 112; J.L. Compl. ¶ 110.  Indeed, they again acknowledge in their Opposition that MindGeek was ███████████████████████████ ███████████████████████████████████████████████████████████ ███████████████ Opp. 70.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (plaintiff can "plead himself out of a claim" by alleging facts inconsistent with his claim).  Nor does their Opposition (or the *Fleites* Opposition) offer any explanation for, among other facts: (1) why █████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ██████████████████████ (2) how Bergmair could direct daily operations of the company from Hong Kong when ██████████████████████████████████ ████████████████████████ whose business day is nighttime in Hong Kong (Bergmair *Fleites* Motion 6, 21-22; Bergmair *Fleites* Reply 7); (3) why Antoon would testify before a Canadian parliamentary committee that Bergmair was "a passive investor" who was "not involved in daily activities" of the company, if that were not true (Bergmair *Fleites* Motion 6; Bergmair *Fleites* Reply 7); or (4) ████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████

---

[9] *See* June Compl. ¶ 301 (MindGeek executives who "actually operated" business were located "primarily in Canada."); J.L. Compl. ¶ 299 (same); ████████████ ███████████████████████████████████████████

(Bergmair *Fleites* Motion 7; Bergmair *Fleites* Reply 8).

As described in Bergmair's *Fleites* Reply, where Plaintiffs address the evidence regarding the management of MindGeek (*Fleites* Opp. 69-71; Opp. 70-71), they frequently mischaracterize it, trying in vain to satisfy the legal standard requiring day-to-day control. Bergmair *Fleites* Reply 8-10. ███████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████ Bergmair *Fleites* Motion 5-7. Plaintiffs repeatedly try to blur the distinction between a shareholder being kept informed of the business's progress – which is typical and not indicative of an alter ego relationship – versus exercising decision-making authority and directing its operations on a daily basis. Bergmair *Fleites* Reply 8-10. Indeed, despite a year of jurisdictional discovery and the production of 100,000 pages of company documents and emails, Plaintiffs are unable to cite even a single one indicating Bergmair "dictated every facet" of MindGeek's business, right down to "routine matters of day-to-day operation." *Ranza*, 793 F.3d at 1073. Instead, the handful of actions by Bergmair that Plaintiffs allege are "consistent with [his] investor status," and do not give rise to alter ego status. *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001) (quoting *United States v. Bestfoods*, 524 U.S. 51, 59 (1998)); Bergmair *Fleites* Motion 23-25. The alleged actions by Bergmair – ██████████████████████████

███████████████████████████████████████████

████████████████████████ – are prototypical examples of what the Ninth Circuit has found to be "macromanagement," which, even along with other corporate involvement, does not give rise to an alter ego relationship. Bergmair *Fleites* Motion 22-24; Bergmair *Fleites* Reply 10-12.

C.    **Plaintiffs' request for further jurisdictional discovery is meritless.**

As shown above and in Bergmair's *Fleites* Motion and Reply, Plaintiffs' counsel came up empty after extensive jurisdictional discovery in their effort to

show that MindGeek was Bergmair's alter ego.  Now, after a year of exhaustive jurisdictional discovery, including eight depositions (of Bergmair and others), the production of over 100,000 pages of corporate and personal emails and documents (including from Bergmair), multiple rounds of interrogatories and requests for admission (and responses from Bergmair and others), foreign letters rogatory and third-party subpoenas, Plaintiffs seek the opportunity to take *even more* discovery. Opp. 81.  This request is wholly meritless.  Bergmair and the other *Fleites* defendants agreed to amend the protective order in that case to permit Plaintiffs in the Related Cases to use the evidence obtained in jurisdictional discovery in *Fleites*. Amended Stipulated Protective Order, *Fleites* ECF No. 490.  As a result, all the Related Cases Plaintiffs have the benefit of the *Fleites* jurisdictional discovery and have incorporated it into their Opposition to the motions to dismiss the Related Cases.  Opp. 3.  There is no basis whatsoever to permit them to take further discovery.  The only grounds for this request that Plaintiffs advance is that the *Fleites* defendants allegedly failed to produce relevant documents. Opp. 81.  But even if that were true – which it is not – the appropriate remedy was for Plaintiffs' counsel to have sought relief from the court during discovery in the *Fleites* case. Indeed, Plaintiffs' counsel was hardly bashful in pressing aggressive claims to jurisdictional discovery with the defendants and the Court in *Fleites*.[10]  Having failed to seek the Court's intervention to obtain whatever unspecified discovery they wish they had obtained, Plaintiff's counsel should not be permitted a do-over two years

---

[10] For example, at one point, Plaintiffs' counsel requested that the Court order MindGeek to provide them with access to the company's internal financial accounting system – not merely data obtained from the system, but *access to the accounting system itself* so Plaintiffs' counsel could rummage through it themselves and retrieve allegedly relevant information.  *Fleites* ECF No. 261 at 45, 54; Mar. 8, 2023 Hearing Tr. (*Fleites* ECF No. 312) 77 (Plaintiffs' counsel arguing to Court that "we need their financial system"), 78, 98, 99.  The Court rejected this request out of hand, noting that MindGeek was correct to object to such a request: "[Plaintiffs' counsel] simply saying, Give me access to your accounting system, would be something that as a lawyer I would say heck no to." *Id.* at 100-02.

later now that it is apparent that Plaintiffs are unable to establish personal jurisdiction over Bergmair. *See Rongxiang Xu v. Nobel Assembly at Karolinska Institutet*, 2013 WL 9760036, at *7-8 (C.D. Cal. Nov. 20, 2013) (denying plaintiff's request for additional jurisdictional discovery and leave to amend where he had already received 26,000 pages of documents and "could have pursued additional discovery if needed" in initial jurisdictional discovery but was still unable to establish personal jurisdiction over defendants); *St. Andrews Links Ltd. v. Source & Design Int'l (UK) LTD*, 2022 WL 11902199, at *5 (N.D. Cal. Oct. 20, 2022) (leave to amend would be futile where plaintiff had the opportunity to conduct jurisdictional discovery and had nonetheless failed to establish jurisdiction).

## II.    Plaintiffs have failed to state a claim against Bergmair.

In addition to the arguments set forth in the motions and replies of the other Defendants in the Related Cases and *Fleites*, the Plaintiffs' claims are insufficient with respect to Bergmair for additional reasons.

### A.    Extrinsic evidence may not be considered in assessing whether Plaintiffs have stated a claim against Bergmair.

To begin with, a persistent flaw running through the Opposition's arguments is its attempt to justify the sufficiency of Plaintiffs' claims against Bergmair by pointing to *MindGeek's* alleged conduct, and not to any conduct by *Bergmair* personally. Plaintiffs assume – incorrectly as both a legal and factual matter – that MindGeek's conduct can be attributed to Bergmair on an alter ego basis for purposes of assessing the sufficiency of their claims. Plaintiffs explicitly base their sufficiency argument on their allegation that Bergmair and MindGeek are alter egos, citing as their basis the evidence obtained in jurisdictional discovery in *Fleites*. Opp. 60-61. Notably, Plaintiffs do not cite a single paragraph of the Complaints as supporting an alter ego relationship, only the extrinsic evidence obtained in *Fleites*. *Id*. Similarly, in trying to defend the sufficiency of their individual claims, Plaintiffs cite only conduct by MindGeek, contending that it can be attributed to Bergmair as

an alter ego.  Opp. 10-17 and 17, n.10 (TVPRA claims); 30-31 (§§ 2252 and 2252A claims); 36-37 and 37, n.25 ("presence" in United States under 18 U.S.C. § 1596); 39-41 (domestic application of § 2252 claims); 44-45 (emotional distress claims); 46-47 (violation of privacy claims); 47-48 (misappropriation claims); 48-49 (California TVPA claim); 49-50 (negligence claim); 50-53 (civil conspiracy claim); 53-54 (California UCL claim); 54, n. 43 (asserting defendants' conduct in California justifies state law claims by Foreign Plaintiffs); 55-57 and 57, n.46 (Section 230).

Plaintiffs assume that MindGeek can be treated as Bergmair's alter ego for purposes of assessing the sufficiency of their claims, but there is no permissible basis to do so here.  First, as noted above, simply as a factual matter, the jurisdictional discovery obtained in *Fleites* does not come close to establishing that MindGeek is Bergmair's alter ego.  *Supra* at 3-7.  But in any event, while such extrinsic materials may be properly considered with respect to the issue of personal jurisdiction on a motion pursuant to Fed. R. Civ. P. 12(b)(2), there is no basis to do so in connection with a Fed. R. Civ. P. 12(b)(6) motion challenging the sufficiency of the Complaint.[11]  *See Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 951-53 (N.D. Cal. 2015) (on Rule 12(b)(6) motion, courts generally may not consider matters outside the pleading; court considered affidavits and exhibits submitted by parties with respect to alter ego issue in connection with Rule 12(b)(2) motion challenging personal jurisdiction but not Rule 12(b)(6) motion).[12]

---

[11] Even if Plaintiffs were permitted to and were capable of amending their complaints after dismissal, the resulting delay from doing so is attributable to their failure to seek permission from the Court and the defendants to use these materials in the full year between the close of jurisdictional discovery in *Fleites* in June 2023 and the filing of the Related Cases in June and August 2024.

[12] *See also SinglePoint Direct Solar LLC v. Curiel*, 2022 WL 331157 at *2-4 (D. Az. Feb. 3, 2022) (affidavit and other discovery materials may be considered in assessing personal jurisdiction pursuant to Rule 12(b)(2), but not with respect to sufficiency of the complaint under Rule 12(b)(6)); *High v. Choice Mfg. Co.*, 2012 WL 3025922 at *3-6 (N.D. Cal. July 24, 2012) (court considered extrinsic materials related to alter ego with respect to issue of personal jurisdiction but not in connection with Rule 12(b)(6) motion, which court based on face of complaint only); *Abokasem v. Royal*

Without the *Fleites* jurisdictional discovery materials, the Related Cases Complaints' bare bones allegations of alter ego are plainly insufficient since they are wholly conclusory. With respect to the unity of interest prong, the Complaints simply recite, with no factual detail regarding Bergmair, the hornbook elements of the alter ego doctrine and assert that each MindGeek corporation is an alter ego of every other one and of every individual MindGeek defendant. June Compl. ¶¶ 20-23, 300; J.L. Compl. ¶¶ 20-23, 298. With respect to the injustice prong, the Complaints' only allegation is a single conclusory sentence stating that recognizing MindGeek's corporate form would "promote injustice," without alleging any facts or explaining how or why. June Compl. ¶ 23; J.L. Compl. ¶ 23. Such conclusory allegations of alter ego status are insufficient; rather, a plaintiff must allege *specific facts* supporting the elements of alter ego liability. *See Coste v. Fox Beverage USA Inc.*, 2023 WL 8522987 at *5 (C.D. Cal. Oct. 10, 2023) (Hsu, J.) (rejecting alter ego claim where complaint "lacks specific facts" and "merely recites the [alter ego] elements in a conclusory fashion"). *See also In re Boon Global Ltd.*, 923 F.3d 643, 650 (9th Cir. 2019); *Symettrica Ent., Ltd. v. UMG Recordings, Inc.*, 2019 WL 8806093, at *4 (C.D. Cal. Sept. 20, 2019); *Gerritsen v. Warner Bros. Ent. Inc.*, 112 F. Supp. 3d 1011, 1042 (C.D. Cal. 2015). Plaintiff's conclusory alter ego allegations do not qualify as well-pled factual allegations in connection with the Rule 12(b)(6) analysis. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (court may disregard "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth"); *ScoreBlue, LLC v. Locum Tele PC*, 2024 WL 3304515 at *3 (C.D. Cal. May 29, 2024) (Hsu, J.) (court is not required to accept as true "legal conclusions couched as factual allegations"). Without resort to their alter ego

---

*Indian Raj Intl. Corp.*, 2011 WL 635222 at *4, 10, n. 7 (N.D. Cal. Feb. 11, 2011) (court considered plaintiff's affidavit on issue of personal jurisdiction, but refused to consider it with respect to sufficiency of complaint, even where it alleged fraudulent statements by a defendant that were not included in the complaint).

1    theory, the Related Cases Complaints plainly fail to sufficiently allege the elements

2    of Plaintiffs' various claims against Bergmair.[13]

3        Plaintiffs also try to defend the sufficiency of their claims by claiming that

4    they satisfy the "guiding spirit" test.  Opp. 61-62.  But this is simply a re-packaging

5    of their deficient alter ego allegations that Bergmair controlled MindGeek.  Putting

6    aside the impermissible extrinsic evidence they cite from the *Fleites* case, the

7    Complaints' allegations to which they point (Opp. 61) either have nothing to do with

8    Plaintiffs' claims or are nothing more than the type of generalized allegations of

9    corporate control and management that courts have repeatedly deemed insufficient

10   to show that a defendant was the guiding spirit behind the challenged conduct.

11   Plaintiffs cite several paragraphs of the Complaints: June Compl. ¶ 111; J.L. Compl.

12   ¶ 109 (business decisions made by Bergmair and others "at ownership level"); June

13   Compl. ¶ 112; J.L. Compl. ¶ 110 (Bergmair had "final say"); June Compl. ¶ 114;

14   J.L. Compl. ¶ 112 (Bergmair "actively managing business"); June Compl. ¶ 156;

15   J.L. Compl. ¶ 154 (Bergmair attended meetings with company's management team);

16   June Compl. ¶ 159; J.L. Compl. ¶ 157 (Bergmair was "ultimate decision maker");

17   and June Compl. ¶ 238; J.L. Compl. ¶ 236 (CEO took action "in consultation with

18   Bergmair").  But these allegations are indistinguishable from those in the cases cited

19   in Bergmair's *Fleites* motion in which courts found such allegations insufficient to

20   satisfy the "guiding spirit" test.  Bergmair *Fleites* Motion 15-17 (finding guiding

21   spirit test not satisfied by allegations that corporate shareholders or executives:

22   approved corporate "business model;" made "all final decisions" on corporate

23   practices and policies; "formulate[d], control[led], direct[ed] [and] supervise[d]"

24   company practices; was a "hands-on micromanager" with whom "all matters of any

25

26   _____

     [13] The Related Cases Complaints are also plainly deficient with respect to Bergmair
27   due to their pervasive "group pleading."  Bergmair Motion 8-9.  Plaintiffs attempt
     to justify this deficiency with the circular argument that such group pleading is
28   permissible where the parties are alter egos (Opp. 17, n.10) but as described above,
     the Complaints' bare-bones alter ego allegations are facially insufficient.

significance" were discussed; and was "actively involved in day-to-day management and operations"). Moreover, the cases cited by Plaintiffs do not lend any support to their claim that the Complaints' generic allegations of corporate control are sufficient to satisfy the guiding spirit test. Opp. 62. In both of Plaintiffs' cases, the defendants found to be a guiding spirit were directly involved in the challenged wrongdoing. *See Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1069-70 (9th Cir. 2016) (individual defendant was company's CEO and admitted that he directed company's actions and that allegedly unlawful promotional campaign was his idea); *Chunghwa Telecom Global, Inc. v. Medcom, LLC*, 2016 WL 5815831 at *6 (N.D. Cal. Oct. 5, 2016) (where plaintiff alleged a fraudulent scheme to obtain telecommunications services from it, defendant corporate CEO participated in "near daily" telephone calls with plaintiff as part of scheme and "knew about and essentially went along with" another corporate officer's misleading representations to plaintiff).

## B. Section 230 bars all of Plaintiffs' claims against Bergmair.

Plaintiffs assert without explanation that Section 230 does not apply to Bergmair (Opp. 57, n.46) and ignore the cases cited by Bergmair confirming that, given the Related Cases Complaints' allegations, he is a "provider ... of an interactive computer service." 47 U.S.C. § 230(c); Bergmair *Fleites* Motion 35. Just as in the *Fleites* Opposition, Plaintiffs argue that certain alleged actions *by MindGeek*, such as allowing users to create titles and tags for videos, make it a "content creator" and thus ineligible for Section 230 immunity (Opp. 56-57), but the Complaints nowhere allege that *Bergmair* was involved in any of the specific practices that Plaintiffs say are the basis to deny MindGeek Section 230's protections.[14] As noted in Bergmair's *Fleites* Reply, the only specific allegation the

---

[14] Similarly, the case Plaintiffs submitted with their Notice of Supplemental Authority (ECF No. 104), *Doe v. MG Freesites, Ltd.*, Docket No. 7:21-cv-220-LSC (N.D. Ala. Dec. 19, 2024), has no applicability to Bergmair. First, the basis for the court's ruling that there was a disputed issue of fact with respect to MindGeek's

Complaints make regarding his involvement in MindGeek is that he did not change its pre-existing "unrestricted content" model,[15] which is exactly what the Ninth Circuit has ruled Section 230 immunizes: "any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online." *Fair Housing Council of San Fernando Valley v. Roomates.com*, 521 F.3d 1157, 1170-71 (9th Cir. 2008). *See* Bergmair *Fleites* Reply 16-17.

## C.    The federal trafficking claims (Counts I and IV) fail to state a claim.

Just as in *Fleites*, Plaintiffs concede that their claim for direct trafficking liability under §1591(a)(1) is insufficient, arguing only for "beneficiary" liability under 18 U.S.C. §1591(a)(2).  Opp. 5.  However, Plaintiffs' remaining claim under subsection (a)(2) fails for several reasons.

### 1.    18 U.S.C. § 1595 does not apply extraterritorially to Bergmair.

18 U.S.C. §1595 does not apply extraterritorially to Bergmair and Plaintiffs' attempts to salvage their claims fail.  Bergmair Motion 16; Bergmair *Fleites* Motion 38-39; Bergmair *Fleites* Reply 18-19.  Plaintiffs first argue that §1595 applies extraterritorially under the circumstances set forth in 18 U.S.C. §1596 and applies to Bergmair since he is "present" in the United States.  Opp. 33-37.  Even if §1596 extended extraterritorial jurisdiction to civil claims under §1595 – an interpretation the Ninth Circuit has never endorsed – §1595 would still not reach Bergmair because there are no allegations in the Related Cases Complaints that he is present in the United States.  The Complaints allege that Bergmair is a resident of China and allege no personal connection to the United States.  June Compl. ¶ 17; J.L. Compl. ¶ 17.

---

immunity under Section 230 was conduct by MindGeek that there is no allegation Bergmair was involved in, such as creating tags and thumbnails.  *Id*. at *24-26. Second, the Alabama court specifically noted that its conclusions conflicted with Ninth Circuit law.  *Id*. at *30, 34.

[15] June Compl. ¶¶ 2, 17, 111-12, 114, 150-59; J.L. Compl. ¶¶ 2, 17, 109-10, 112, 148-57.

Plaintiffs appear to rest their theory of Bergmair's presence in the United States on imputing MindGeek's contacts to him on an alter ego basis. Opp. 37, n.25. But as noted above, the *Fleites* jurisdictional discovery materials may not be considered on a Rule 12(b)(6) motion[16] and the Complaints' conclusory allegations of alter ego do not qualify as well-pled factual allegations. *Supra* at 9-12.

Nor are Plaintiffs' claims a "domestic application" of §1595. In *Fleites*, where the plaintiff was a United States resident, Plaintiffs' counsel argued that the "focus" of the TVPRA is "where the trafficking occurred and where the commercial sex act occurred." *Fleites* Opp. 84. But as set forth in Bergmair's *Fleites* Reply (*id*. at 18-19), Plaintiffs' counsel ignored that they were forced to abandon their §1591(a)(1) claim and the only theory they are now pursuing is under §1591(a)(2). Opp. 5. Section 1591(a)(1) prohibits trafficking, but subsection (a)(2) deals with the *receipt of a benefit* from a trafficking venture. The Ninth Circuit has explicitly ruled that "the gravamen of a section 1595 beneficiary claim under subsection (a)(2) is *the defendant's participation in and benefit from the trafficking scheme*." *Does 1-6 v. Reddit, Inc.*, 51 F. 4th 1137, 1143 (9th Cir. 2022) (emphasis added).[17] Apparently recognizing that their previous definition of the statute's focus would mandate dismissal of the trafficking claims of the six Foreign Plaintiffs (who allege they were

---

[16] The Supreme Court has ruled that the issue of extraterritorial application is a merits question under Rule 12(b)(6), not a jurisdictional question. *See Morrison v. National Australia Bank, Ltd.*, 561 U.S. 247, 253-54 (2010). Indeed, one of the cases Plaintiff relies upon in her Opposition specifically rejected the argument that the extraterritoriality analysis could take into account facts outside of the Complaint. *See United States ex rel. Hawkins v. ManTech International*, 2024 WL 4332117 at *3 (D.D.C. Sept. 27, 2024).

[17] *RJR Nabisco, Inc. v. European Community*, 579 U.S. 325 (2016) demonstrates that the focus (and extraterritorial application) of provisions of a statute criminalizing a particular activity and those dealing with the receipt and use of proceeds from that activity may be different. *Id*. at 341 (even though sections of federal racketeering statute prohibiting racketeering activity, 18 U.S.C. §§1962(b) and (c), had extraterritorial effect, its provision targeting the use of income from racketeering activity, §1962(a), "arguably … extends only to domestic uses of the income").

15

trafficked in foreign countries), Plaintiffs now concede that the focus of §1591(a)(2) is on "those who 'benefit' from 'participation in a venture.'" Opp. 38.  Here, the only conduct the Complaints attribute to Bergmair – failing to change MindGeek's supposed "unrestricted content" model – is not alleged to have taken place in the United States.  To the contrary, the Complaints allege that he was a resident of China and do not suggest that this alleged conduct or his receipt of shareholder dividends from MindGeek took place anywhere but China.  June Compl. ¶ 17; J.L. Compl. ¶ 17.  Plaintiffs strain to try to show "participation" and a "benefit" in the United States by generically citing MindGeek's revenue-generating activities in the United States (Opp. 38-39) but fails to link them in any way to Plaintiffs, especially the Foreign Plaintiffs.  Moreover, even if this were sufficient to show that the §1595 claims *against MindGeek* are a "domestic application" of the statute, it says nothing about the claims *against Bergmair*.  A corporation earning revenues is fundamentally distinct from its subsequent potential distribution of dividends to its shareholders.  Nor is there (or could there be) any allegation that Bergmair, who resided in China, received his dividends in the United States.  Thus, since the Related Cases Complaints allege no facts indicating that the conduct by Bergmair that is the "focus" of §1591(a)(2), as defined by the Ninth Circuit, took place in the United States, Plaintiffs' claims against him are not a "domestic application" of the statute, irrespective of Plaintiffs' residence.

### 2. The Complaints fail to allege a relationship between Bergmair and Plaintiffs or their traffickers.

As described in Bergmair's *Fleites* Motion and *Fleites* Reply, the absence of any allegation that Bergmair had any knowledge of, much less dealings with Plaintiffs or their traffickers is fatal to their beneficiary liability claim under §1591(a)(2).  The Complaints plainly fail to establish each of the elements of the criminal offense under §1591, as is required to overcome Section 230's protections. *Reddit*, 51 F. 4th at 1141; Bergmair *Fleites* Motion 39; Bergmair *Fleites* Reply 17-

18.  But even if Section 230 did not apply and the standard for a §1595 civil claim governed, the absence of any interaction between Bergmair and Plaintiffs or their traffickers means he could not have formed an agreement with the traffickers or known that Plaintiffs were victims of trafficking.   Bergmair *Fleites* Motion 39; Bergmair *Fleites* Reply 17-18.  In their Opposition, Plaintiffs' response is to simply ignore courts applying Ninth Circuit law in favor of out-of-Circuit law that they prefer.  For example, Plaintiffs argue that they may adequately allege a defendant's participation in a sex trafficking venture even without showing a relationship between a defendant and her traffickers.  Opp. 8-9.  But numerous district courts applying Ninth Circuit law, including Judge Carney in the *Fleites* case, have expressly ruled that a plaintiff must show "a direct association or business relationship with their traffickers" to establish this element. *Acevedo v. EXP Realty, LLC*, 713 F. Supp. 3d 740, 783-84 (C.D. Cal. 2024); Bergmair *Fleites* Reply 17.  *See also B.J. v. G6 Hospitality, LLC*, 2023 WL 3569979 at *4 (N.D. Cal. May 19, 2023) (rejecting beneficiary liability claim where plaintiff failed to make a "showing of a continuous business relationship between the trafficker and the defendant"); *J.B. v. G6 Hospitality, LLC*, 2020 WL 4901196 at *9 (N.D. Cal. Aug. 20, 2020) (finding insufficient §1591(a)(2) claim since there was no "showing of a continuing business relationship between the trafficker and" defendant and noting that a website cannot be deemed to have participated in "ventures" with each of the millions of users who post content on its site).[18]  The only Ninth Circuit case Plaintiffs cite does not support their argument.  In that case, *S.C. v. Hilton Franchise Holding LLC*, 2024 WL 4773981 (D. Nev. Nov. 12, 2024), plaintiff sued Hilton, the franchisor of the Hampton Inn hotel where she was trafficked.  *Id*. at *1-2.  In ruling that plaintiff had

---

[18] Indeed, *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544 (7th Cir. 2023), the case on which Plaintiffs base virtually their entire TVPRA argument (*Fleites* Opp. 3, 5-10; Opp. 6-9), similarly ruled that a plaintiff must allege facts demonstrating "'a continuous business relationship' between the participant *and the trafficker*."  *Id*. at 559 (emphasis added).

sufficiently alleged her beneficiary liability claim against Hilton, the Court did <u>not</u> base its holding on the business relationship between Hilton and Hampton Inn, as Plaintiffs here claim.  Opp. 8.  To the contrary, the Court specifically cited the relationship between Hilton and *plaintiff's trafficker*, Mohammad A., in finding that Hilton's participation in the trafficking venture was sufficiently alleged.  The Court specifically ruled that Hilton had allegedly participated in the venture "because Hilton provided the centralized reservation system that Mohammad A. allegedly used to book his rooms at the Hampton Inn," knowing that sex trafficking was taking place at the location.  *Hilton Franchise Holding*, 2024 WL 4773981 at *6.

Plaintiffs here similarly ignore courts applying Ninth Circuit law in arguing that they do not have to allege that a defendant knowingly participated in the trafficking venture involving them.  Opp. 5-6.  *See B.J. v. G6 Hospitality*, 2023 WL 3569979 at *5 (the "venture in which the defendant participated and from which it knowingly benefitted must have violated the TVPRA *as to plaintiff*") (emphasis added); *J.M. v. Choice Hotels International, Inc.*, 2022 WL 10626493 at *5 (E.D. Cal. Oct. 18, 2022) (to satisfy knowledge element of trafficking claim, plaintiff's allegations must demonstrate that defendants should have known about *her trafficking*) (emphasis added); *B.M. v. Wyndham Hotels & Resorts, Inc.*, 2020 WL 4368214 at *5 (N.D. Cal. July 30, 2020) (plaintiff failed to show that defendants participated in venture that trafficked her because her complaint was "devoid of any facts linking ***these defendants (Wyndham and Choice)*** to the sex trafficking of ***this Plaintiff (B.M.)***")(italics and bold in original).

### 3.    The Complaints' TVPRA Conspiracy Claim (Count IV) is Deficient

Finally, Plaintiffs try vainly to distinguish the Ninth Circuit's decision in *Ratha v. Rubicon Resources, LLC*, 111 F.4th 946, 963-69 (9th Cir. 2024), which held that the 2023 amendments to the TVPRA adding civil causes of action for attempting or conspiring to violate the statute did not have retroactive effect.  Opp.

26-28; *Fleites* Opp. 37-40. As described in detail in other defendants' briefs, Plaintiffs' effort to explain away *Ratha* by suggesting that it applies only to an "attempt" to violate the statute but not a "conspiracy" is inconsistent with the Ninth Circuit's reasoning in that case. *See* Visa *Fleites* Reply (*Fleites* ECF No. 498) 12-16; Colbeck *Fleites* Reply (*Fleites* ECF No. 500) 12-14; Redwood *Fleites* Reply (*Fleites* ECF No. 492) 15-16. Since the Related Cases Complaints allege no conduct by Bergmair after 2023, Plaintiffs' TVPRA conspiracy claim fails.

> **D.** **The federal child pornography claims (Counts V and VI) fail to state a claim.**

As with all of Plaintiffs' claims, the absence of any allegation that Bergmair had any knowledge of, much less dealings with Plaintiffs' videos is fatal to their claims under 18 U.S.C. §§ 2252 and 2252A. Plaintiffs have no real answer to Bergmair's argument that the Complaints lack any allegation that he was aware of their videos – much less possessed or distributed them – or knew that Plaintiffs were underage (Bergmair Motion 17). Plaintiffs assert that Bergmair's "control and involvement over" MindGeek made him generally aware that "nonconsensual content … proliferated on MindGeek's sites" (Opp. 31) but this is plainly insufficient. The Complaints contain no allegation that Bergmair himself possessed or distributed Plaintiffs' videos, only that MindGeek did. Indeed, they do not allege Bergmair had any contact with Plaintiffs' videos or suggest any reason why, of the millions of videos posted by users annually on MindGeek websites, Bergmair would have become aware of those featuring Plaintiffs. Although Plaintiffs argue that such knowledge can be inferred from "circumstantial evidence" (*Fleites* Opp. 47, n.26), they cite no case that would suggest that an indirect shareholder of a company, one of whose subsidiaries operates a website, can be charged with knowledge of the content of all of the millions of videos and images posted to the website by third-

party users.[19]  This is particularly true where the website itself had no legal duty to screen for underage content in the first place.  18 U.S.C. § 2258A(f)(3).  As a result, there are simply no allegations in the Complaints to support an inference that Bergmair possessed or distributed Plaintiffs' videos, or knew Plaintiffs' ages or the contents of their videos.

> **E.    The California law claims (Counts VII through XVII) fail to state a claim.**

Plaintiffs' Opposition repeats the same meritless arguments in support of the sufficiency of their California statutory and common law claims.

First, as set forth in Bergmair's Motion, the Complaints contain no allegation that Bergmair ever knew of or had any contact with Plaintiffs or their videos, so the Complaints necessarily fail to allege that he took the actions necessary to satisfy the elements of Plaintiffs' California law claims.  Bergmair Motion 17-21.  In attempting to answer this argument, Plaintiffs point only to conduct by MindGeek, not Bergmair, assuming that they are alter egos of one another.  Opp. 44-45 (emotional distress claims); 46-47 (violation of privacy claims); 47-48 (misappropriation claims); 48-49 (California TVPA claim); 49-50 (negligence claim); 50-53 (civil conspiracy claim); 53-54 (California UCL claim); 54, n. 43 (asserting defendants' conduct in California justifies state law claims by Foreign Plaintiffs).  But as explained above, the *Fleites* jurisdictional discovery materials cited by Plaintiffs may not be considered on a Rule 12(b)(6) motion and in any event, do not demonstrate an alter ego relationship.  *Supra* at 9-12.  In addition, the

---

[19] The one case Plaintiffs cite for this point shows how far removed Bergmair is from the situation where knowledge of the contents of individual videos could be properly inferred from "circumstantial evidence."  In *United States v. Levin*, 13 F.4th 96 (1st Cir. 2021), the court ruled that there was sufficient evidence of defendant's knowledge of the contents of child pornography based on the "circumstantial evidence" that it had been found on his computer, that it had titles indicative of child pornography and that he had conducted searches using terms associated with child pornography.  *Id.* at 100.

Complaints' bare-bones alter ego allegations are patently insufficient to establish such a relationship. *Id.* As a result, the California law claims of all the Related Cases Plaintiffs are insufficient to state a claim against Bergmair.

Second, Bergmair's Motion demonstrated that Non-CA Plaintiffs and Foreign Plaintiffs are unable to state California statutory or common law claims against him because California law does not reach conduct outside California that allegedly injures parties outside the state. Bergmair Motion 18-19, 20-21. *See Russo v. APL Marine Services, Ltd.*, 135 F. Supp. 3d 1089, 1096 (C.D. Cal. 2015) (California common law only applies where "the conduct which gives rise to liability … occurs in California") (internal quotation marks omitted); *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (Cal. 2011) (California statutes generally have no extraterritorial application; in the absence of such application, the conduct alleged to be "unlawful" must be committed in California). Just as the Complaints contain no allegations of conduct by Bergmair himself satisfying the elements of her claims, it includes no allegations of conduct by Bergmair giving rise to liability that took place in California. The only conduct Plaintiffs point to is the fact that two of MindGeek's subsidiaries were based in California and provided "support services" to Pornhub.[20] Opp. 54, n.43. Since the Complaints' bare-bones alter ego allegations are insufficient to establish such a relationship and the *Fleites* jurisdictional discovery materials are not properly considered on a Rule 12(b)(6) motion, MindGeek's conduct cannot be imputed to Bergmair and cannot satisfy the requirement for

---

[20] *See* June Compl. ¶¶ 13, 15; J.L. Compl. ¶¶ 13, 15. Even if this conduct were attributed to Bergmair, it is insufficient. Nowhere are the cited support services linked in any way to Plaintiffs' claims and despite running over 450 paragraphs, neither of these subsidiaries is mentioned anywhere else in the Complaints in connection with the conduct underlying Plaintiffs' alleged claims. In addition, the Opposition's argument is contradicted by the Complaints' allegation that MindGeek's moderation and formatting functions were located in Cyprus – not California – due to "the availability of cheap labor." June Compl. ¶¶ 76-77; J.L. Compl. ¶¶ 74-75.

California-based conduct necessary to state California law claims against him. [21] This defect requires the dismissal of the California law claims of Non-CA Plaintiffs and Foreign Plaintiffs.

## CONCLUSION

For these reasons, the Court should dismiss the Complaint with prejudice for both lack of personal jurisdiction and failure to state a claim for relief.

Dated: January 8, 2025

By: */s/ Ronald G. White*

RONALD G. WHITE
(admitted *pro hac vice*)
rwhite@wmhwlaw.com
Walden Macht Haran & Williams LLP
250 Vesey Street
New York, NY  10281
Tel: (212) 335-2387
Fax: (212) 335-2040

DAN MARMALEFSKY (CA SBN 95477)
DMarmalefsky@mofo.com
Morrison & Foerster LLP
707 Wilshire Boulevard
Los Angeles, California 90017-3543
Telephone: 213-892-5200
Facsimile: 213-892-5454

Attorneys for Defendant Bernd Bergmair

---

[21] The Opposition also claims that the "harm" allegedly suffered by Non-CA Plaintiffs and Foreign Plaintiffs took place in part in California (Opp. 54, n.43) but does not specify any such harm or how it could have occurred in California when Plaintiffs lived as far away as Thailand and Colombia.

22

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Bernd Bergmair, certifies that the Memorandum of Points and Authorities consists of 22 pages, which complies with the 35-page limit set forth in the Court's October 9, 2024 Order Granting Joint Stipulation to Request Limited Coordination for Purposes of Responding to Complaints in Related Cases (ECF No. 54).

Dated: January 8, 2025                    Respectfully submitted,


                                          */s/ Ronald G. White*
                                          RONALD G. WHITE
                                          (admitted *pro hac vice*)
                                          rwhite@wmhwlaw.com
                                          Walden Macht Haran & Williams LLP
                                          250 Vesey Street
                                          New York, NY  10281
                                          Tel: (212) 335-2387
                                          Fax: (212) 335-2040

                                          DAN MARMALEFSKY (CA SBN 95477)
                                          DMarmalefsky@mofo.com
                                          Morrison & Foerster LLP
                                          707 Wilshire Boulevard
                                          Los Angeles, California 90017-3543
                                          Telephone: 213-892-5200
                                          Facsimile: 213-892-5454

                                          Attorneys for Defendant Bernd Bergmair

BERGMAIR REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT

1

## <u>CERTIFICATE OF SERVICE</u>

2

The undersigned, the counsel of record for Bernd Bergmair, certifies that the

3

foregoing instrument was served pursuant to the Federal Rules of Civil Procedure

4

on January 8, 2025 upon all counsel of record via ECF.

5

Dated: January 8, 2025                    Respectfully submitted,

6

7

*/s/ Ronald G. White*

8

RONALD G. WHITE

(admitted *pro hac vice*)

9

rwhite@wmhwlaw.com

10

Walden Macht Haran & Williams LLP

250 Vesey Street

11

New York, NY  10281

Tel: (212) 335-2387

12

Fax: (212) 335-2040

13

DAN MARMALEFSKY (CA SBN 95477)

14

DMarmalefsky@mofo.com

15

Morrison & Foerster LLP

707 Wilshire Boulevard

16

Los Angeles, California 90017-3543

Telephone: 213-892-5200

17

Facsimile: 213-892-5454

18

19

Attorneys for Defendant Bernd Bergmair

20

21

22

23

24

25

26

27

28

24