1
2
3
4
5
6
7
8
9
10
11
12

David G. Hille (*pro hac vice*)
dhille@whitecase.com
Kevin C. Adam (*pro hac vice*)
kevin.adam@whitecase.com
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020-1095
Telephone: (212) 819-8357
Facsimile: (212) 354-8113

Russell J. Gould (SBN 313352)
russell.gould@whitecase.com
WHITE & CASE LLP
555 S. Flower Street, Suite 2700
Los Angeles, CA 90071-2433
Telephone: (213) 620-7700
Facsimile: (213) 452-2329

Attorneys for Defendants

13

UNITED STATES DISTRICT COURT

14

CENTRAL DISTRICT OF CALIFORNIA

15

WESTERN DIVISION

16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| K.A., | Case No. 2:24-cv-04786-WLH-ADS |
| Plaintiff, | Hon. Wesley L. Hsu |
| v. | **DEFENDANTS COLBECK CAPITAL MANAGEMENT, LLC; CB MEDIA VENTURES DD, LLC; CB AGENCY SERVICES, LLC; AND CB PARTICIPATIONS SPV, LLC'S REPLY IN SUPPORT OF THEIR OMNIBUS MOTION TO DISMISS** |
| MINDGEEK S.A.R.L., et al., | |
| Defendants. | Hearing: January 31, 2025<br>Time: 1:30 p.m.<br>Courtroom: 9B |

1

## TABLE OF CONTENTS

2

**Page(s)**

PRELIMINARY STATEMENT ...................................................................... 1

ARGUMENT ................................................................................................. 3

I.    Plaintiffs Cannot Escape the Lack of Standing and Causation for Their Claims Against the CB Defendants ............................................. 3

II.    Plaintiffs Do Not Overcome Their Failure to Plead a Plausible Claim for TVPRA Beneficiary Liability Against the CB Defendants ............................................................................................. 8

III.    Plaintiffs Ask the Court to Save Their TVPRA Conspiracy Claims by Declining to Follow the Ninth Circuit ................................ 22

IV.    Plaintiffs, In Any Event, Do Not Salvage the Complaints' Failures to Allege a Conspiracy Involving the CB Defendants .......... 22

V.    Plaintiffs Fail to Refute That the Complaints Plead No UCL or FAL Claim ......................................................................................... 27

VI.    Plaintiffs Cannot Save Their IIED Claims Against the CB Defendants ......................................................................................... 28

VII.    Plaintiffs Cannot Save Their Untimely California Claims Against the CB Defendants, Which Ceased all Loans to MindGeek Borrowers in 2018 .............................................................................. 30

VIII.    Section 230 Must Bar All Claims Against the CB Defendants ........... 32

CONCLUSION ............................................................................................ 33

CB DEFENDANTS' REPLY IN SUPPORT OF
OMNIBUS MOTION TO DISMISS

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

## CASES

4

*A.B. v. Hilton Worldwide Holdings, Inc.*,

5

484 F. Supp. 3d 921 (D. Or. 2020).........................................................................17

6

*Acevedo v. eXp Realty, LLC*,

7

713 F. Supp. 3d 740 (C.D. Cal. 2024)....................................................................12

8

*Aryeh v. Canon Bus. Sols., Inc.*,

9

55 Cal. 4th 1185 (2013).........................................................................................31

10

*Ashcroft v. Iqbal*,

556 U.S. 662 (2009) ..................................................................................2, 8, 20

11

*B.J. v. G6 Hosp., LLC*,

12

No. 22-cv-03765-MMC, 2023 WL 3569979

13

(N.D. Cal. May 19, 2023)......................................................................................11

14

*B.M. v. Wyndham Hotels & Resorts, Inc.*,

No. 20-cv-00656-BLF, 2020 WL 4368214

15

(N.D. Cal. July 30, 2020) ......................................................................................11

16

*Barnett v. Cnty. of Los Angeles*,

17

No. 2:20-cv-02530-ODW-AS, 2021 WL 826413

18

(C.D. Cal. Mar. 4, 2021) .......................................................................................21

19

*Brill v. Chevron Corp.*,

20

No. 3:15-cv-4916-JD, 2017 WL 76894

(N.D. Cal. Jan. 9, 2017).........................................................................................5

21

*Cady v. Anthem Blue Cross Life & Health Ins.*,

22

583 F. Supp. 2d 1102 (N.D. Cal. 2008) .................................................................8

23

*City of Los Angeles v. Wells Fargo & Co.*,

24

22 F. Supp. 3d 1047 (C.D. Cal. 2014)....................................................................8

25

*Compound Prop. Mgmt., LLC v. Build Realty, Inc.*,

26

462 F. Supp. 3d 839 (S.D. Ohio 2020)..................................................................25

27

*Cook, Perkiss and Liehe, Inc. v. N. California Collective Serv. Inc.*,

28

911 F.2d 242 (9th Cir. 1990)..................................................................................21

CB DEFENDANTS' REPLY IN SUPPORT OF
OMNIBUS MOTION TO DISMISS

*Coubaly v. Cargill, Inc.*,
   610 F. Supp. 3d 173 (D.D.C. 2022) ...................................................7

*DaimlerChrysler Corp. v. Cuno*,
   547 U.S. 332 (2006) .........................................................................6

*DC Comics v. Pac. Pictures Corp.*,
   938 F. Supp. 2d 941 (C.D. Cal. 2013) ............................................31

*Doe #1 v. Red Roof Inns, Inc.*,
   21 F.4th 714 (11th Cir. 2021) ...............................................11, 17

*Doe 1 v. Apple Inc.*,
   96 F.4th 403 (D.C. Cir. 2024) .......................................................12

*Doe 1 v. Deutsche Bank Aktiengesellschaft*,
   671 F. Supp. 3d 387 (S.D.N.Y. 2023).....................8, 9, 10, 11, 15, 18

*Doe (L.M.) v. 42 Hotel Raleigh, LLC*,
   717 F. Supp. 3d 464 (E.D.N.C. 2024) ............................................17

*Doe v. Mindgeek USA Inc.*,
   558 F. Supp. 3d 828 (C.D. Cal. 2021)......................................12, 14

*Doe v. Walmart*,
   No. 18-cv-2125, 2019 WL 499754 (N.D. Cal. Feb. 8, 2019) .................6

*Doe v. Wyndham Hotels & Resorts*,
   No. 8:23-cv-01554-JVS-JDE, 2024 WL 2104596
   (C.D. Cal. Feb. 28, 2024) ...............................................................10

*Does 1-6 v. Reddit, Inc.*
   51 F.4th 1137, 1143 (9th Cir. 2022)................................................10

*Fleites v. MindGeek S.à.r.l.*,
   617 F. Supp. 3d 1146 (C.D. Cal. 2022)......................9, 10, 16, 22, 27

*Ford v. Revlon, Inc.*,
   153 Ariz. 38 (Ariz. 1987) ...............................................................29

*Foundry IV Inc. v. Hard Carry Gaming Inc.*,
   No. 23-cv-2690-KK-MAR, 2024 WL 211010
   (C.D. Cal. Jan. 3, 2024) .................................................................28

*G.G. v. Salesforce.com, Inc.*,
  76 F.4th 544 (7th Cir. 2023) .............................................8, 9, 11, 12, 13, 15, 16, 18

*G.W. v. Northbrook Indus., Inc.*,
  No. 1:20-cv-05232-JPB, 2024 WL 3166083
  (N.D. Ga. June 14, 2024) ...................................................................12, 17

*Geiss v. Weinstein Co. Holdings LLC*,
  383 F. Supp. 3d 156 (S.D.N.Y. 2019).................................................10

*Handy v. LogMeIn, Inc.*,
  No. 1:14-cv-01355-JLT, 2015 WL 1729681
  (E.D. Cal. Apr. 15, 2015) ...................................................................28

*Hatfield v. Halifax PLC*,
  564 F.3d 1177 (9th Cir. 2009) ...........................................................32

*Haugh v. Depuy-Motech, Inc.*,
  14 F. App'x 883 (9th Cir. 2001).........................................................32

*In re McKinsey & Co. Nat'l Prescription Opiate Litig.*,
  No. MDL-3084, 2024 WL 2261926
  (N.D. Cal. May 16, 2024).....................................................................13

*J.C. v. Choice Hotels Int'l, Inc.*,
  No. 20-cv-00155-WHO, 2020 WL 6318707
  (N.D. Cal. Oct. 28, 2020) .....................................................................13

*J.M. v. Choice Hotels Int'l, Inc.*,
  No. 2:22-cv-00672-KJM-JDP, 2022 WL 10626493
   (E.D. Cal. Oct. 18, 2022)..............................................................16, 17

*Johnson v. Ocwen Loan Servicing, LLC*,
  No. 5:17-cv-1373-JGB-SP, 2017 WL 10581088
  (C.D. Cal. Dec. 11, 2017)....................................................................27

*K.B. v. G6 Hosp., LLC, et al.*,
  No. 1:23-cv-2597-TWT, 2024 WL 4701891
  (N.D. Ga. Nov. 5, 2024).......................................................................17

*Labowitz v. Bird Rides, Inc.*,
  No. 2:18-cv-9329, 2019 WL 8750219
  (C.D. Cal. Oct. 29, 2019) ......................................................................5

CB DEFENDANTS' REPLY IN SUPPORT OF
OMNIBUS MOTION TO DISMISS

*LiMandri v. Judkins*,
  52 Cal. App. 4th 326 (1997)...................................................................28

*Lin v. JPMorgan Chase Bank, N.A.*,
  No. 2:24-cv-01837-JLS-E, 2024 WL 5182199
  (C.D. Cal. Aug. 15, 2024) ....................................................................23

*Lujan v. Defs. Of Wildlife*,
  504 U.S. 555 (1992) ...............................................................................6

*Lundstrom v. Choice Hotels Int'l Inc.*,
  No. 21-cv-00619-PAB-SKC, 2021 WL 5579117
  (D. Colo. Nov. 30, 2021)......................................................................17

*Lundy v. Union Carbide Corp.*,
  695 F.2d 394 (9th Cir. 1982).................................................................21

*M.A. v. Wyndham Hotels & Resorts, Inc.*,
  425 F. Supp. 3d 959 (S.D. Ohio 2019)..................................................13

*M.L. v. Craigslist Inc.*,
  No. 19-cv-6153-BHS-TLF, 2020 WL 5494903
  (W.D. Wash. Sept. 11, 2020) ...............................................................18

*Merriam v. Demoulas*,
  No. 11-cv-10577, 2013 WL 2422789 (D. Mass. June 3, 2013)..............6

*Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*,
  198 F.3d 823 (11th Cir. 1999)......................................................26, 31

*Nat'l Org. for Women, Inc. v. Scheidler*,
  510 U.S. 249 (1994) ...............................................................................6

*Oxbow Carbon & Mins. LLC v. Union Pac. R.R. Co.*,
  81 F. Supp. 3d 1 (D.D.C. 2015) .............................................................6

*Perez v. Nidek Co.*,
  711 F.3d 1109 (9th Cir. 2013)................................................................6

*Ratha v. Phatthana Seafood Co.*,
  35 F.4th 1159 (9th Cir. 2022)...............................................................18

*Ratha v. Phatthana Seafood Co.*,
  No. 2:16-cv-4271-JFW-AS, 2017 WL 8293174
  (C.D. Cal. Dec. 21, 2017)..............................................................15, 16

*Reaud v. Facebook Inc.*,
No. 23-cv-06329-AMO, 2024 WL 4126066
(N.D. Cal. Sept. 9, 2024) ...................................................................................29, 30

*S.C. v. Hilton Franchise Holding LLC*,
No. 2:23-cv-02037-APG-DJA, 2024 WL 4773981
(D. Nev. Nov. 12, 2024) ...........................................................................................13

*S.J. v. Choice Hotels Int'l, Inc.*,
473 F. Supp. 3d 147 (E.D.N.Y. 2020)....................................................14, 17, 18, 19

*Safarian v. Shaham*,
No. B244709, 2014 WL 5038651
(Cal. Ct. App. Oct. 9, 2014) ...............................................................................23, 24

*Stutzman v. Armstrong*,
No. 2:13-cv-0116-MCE-KJN, 2013 WL 3992416
(E.D. Cal. Aug. 2, 2013) ...........................................................................................21

*T.M. v. G6 Hosp. LLC*,
No. 1:23-cv-2598-MLB, 2024 WL 4457563
(N.D. Ga. Sept. 23, 2024)..........................................................................................21

*T.S. v. Wyndham Hotels & Resorts, Inc.*,
No. 23-cv-2530-PJS-ECW, 2024 WL 3927382
(D. Minn. Aug. 23, 2024).............................................................11, 12, 15, 17, 19

*Thinking Liberally Media, Inc. v. Orange Juice Blog*,
No. 8:10-cv-00139-DOC, 2010 WL 11596144
(C.D. Cal. Nov. 19, 2010) .........................................................................................25

*Thole v. U.S. Bank N.A.*,
590 U.S. 538 (2020) .....................................................................................................7

*Thompson v. City of Monrovia*,
186 Cal. App. 4th 860 (2010)....................................................................................31

*Transgo, Inc. v. Ajac Transmission Parts Corp.*,
768 F.2d 1001 (9th Cir. 1985) ...................................................................................23

*United States v. Calaway*,
524 F.2d 609, 614 (9th Cir. 1975).............................................................................23

*United States v. Matta-Ballesteros*,
71 F.3d 754 (9th Cir. 1995) .......................................................................................23

- vi -

*Unknown Parties v. Google LLC,*
  No. 23-cv-05523-VC, 2024 WL 1892291
  (N.D. Cal. Apr. 29, 2024).......................................................................12

*Washington Env't Council v. Bellon,*
  732 F.3d 1131 (9th Cir. 2013)..................................................................6

*Williams v. Sisolak,*
  No. 22-16859, 2024 WL 194180 (9th Cir. Jan. 18, 2024).......................5

*Wilson v. Hewlett-Packard Co.,*
  668 F.3d 1136 (9th Cir. 2012)............................................................1, 22

*Young v. City of Menifee,*
  No. 5:17-cv-01630-JGB-SP, 2019 WL 3037926
  (C.D. Cal. Apr. 5, 2019)..........................................................................25

## FEDERAL STATUTES

18 U.S.C. § 1591 ....................................................................11, 15, 16, 19

18 U.S.C. § 1595(a) ................................................................................16

47 U.S.C. § 230 .................................................................................7, 32

## FEDERAL RULES

Fed. R. Civ. P. 8..................................................................................2, 8

Fed. R. Civ. P. 9(b)..............................................................................28

CB DEFENDANTS' REPLY IN SUPPORT OF
OMNIBUS MOTION TO DISMISS

# **PRELIMINARY STATEMENT**

Plaintiffs' Opposition ignores the deficiencies in their allegations related to the CB Defendants.[1]  The CB Defendants highlighted many of these failures in their reply in support of their motion to dismiss the SAC in the *Fleites* action.  Yet despite extensively citing the *Fleites* action in their Opposition, Plaintiffs make no effort to address the defects in their allegations that plague all of their claims against the CB Defendants.

Plaintiffs instead ask the Court to infer that merely advancing loans, ▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, amounts to knowledge of, intent to further, control over, and agreement to benefit from a child sex-trafficking venture. Unreasonable inferences like these should not prevent dismissal. *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1144 n.4 (9th Cir. 2012) (courts need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences") (citation omitted).  None of the cases cited in Plaintiffs' Opposition supports the existence of a claim against an arm's-length lender like the CB Defendants.

The Opposition also does not contradict the additional reasons that the Complaints' claims against the CB Defendants fail.

***First***, no claim is fairly traceable to or caused by the CB Defendants, which participated in two loans to the MindGeek Borrowers in 2011 and 2013 that concluded in 2018—before, as Plaintiffs allege, CSAM on Pornhub and similar websites gained significant attention.  The CB Defendants are not alleged to have engaged in trafficking activity, received any direct benefits from trafficking activity, or to have known or had any contact whatsoever with Plaintiffs or their traffickers.

***Second***, to support a claim for beneficiary liability under the TVPRA, Plaintiffs

---

[1]  The CB Defendants' unredacted omnibus motion to dismiss, including memorandum of points and authorities, is ECF No. 74-1 ("Motion" or "Mot. Mem."), and Plaintiffs' unredacted omnibus opposition to the Motion and motions to dismiss filed by other Defendants is ECF No. 96-1 ("Opposition" or "Opp'n").  Defined terms have the same meaning as stated in the Motion.

CB DEFENDANTS' REPLY IN SUPPORT
OF OMNIBUS MOTION TO DISMISS

cite cases involving defendants with substantially greater and specific knowledge of, contact with, and participation in actual sex-trafficking ventures with actual sex traffickers. Plaintiffs also ignore that Judge Carney has already ruled on these issues in *Fleites*, finding that, even as against Visa—which Judge Carney held, based on specific allegations related to its conduct, knowingly provided the payment-services tool to allow MindGeek to profit from CSAM—the plaintiff failed to state a beneficiary liability claim.

**Third**, the Opposition does not overcome the binding Ninth Circuit authority in *Ratha II* that forecloses Plaintiffs' TVPRA conspiracy claims. Those claims, and Plaintiffs' civil conspiracy claims, also fail because Plaintiffs do not plead a conspiracy involving the CB Defendants. Plaintiffs instead ask the Court to infer, based on unsupported and conclusory allegations, that the CB Defendants intended and agreed with MindGeek to monetize CSAM, even though the plain language of the Loan Agreements—the only actual agreement before the Court—negates such inference.

**Fourth**, the Opposition ignores, or does not meaningfully address, the flaws that doom the California claims (UCL, FAL, and IIED) against the CB Defendants.

**Fifth**, the applicable statutes of limitations bar all California claims (conspiracy, UCL, FAL, and IIED) against the CB Defendants. Plaintiffs do not dispute that the statutes of limitations for the California claims are four or fewer years and that Plaintiffs did not file their claims until over five years after the CB Defendants ceased all loans to the MindGeek Borrowers.

**Sixth**, Section 230 must provide immunity for all claims against the CB Defendants if it immunizes MindGeek.

Plaintiffs do not contend that they can fix the defects in their claims against the CB Defendants by amending their Complaints. Rather, Plaintiffs ask to take discovery to salvage their claims. Opp'n 2:23-24, 20:9-10, 22:8-9, 23:28 n.15, 67:20-23. That is not how Rule 8 works. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more

than conclusions."). The Court should dismiss Plaintiffs' claims against the CB Defendants with prejudice.

## **ARGUMENT**

**I.    Plaintiffs Cannot Escape the Lack of Standing and Causation for Their Claims Against the CB Defendants**

The Opposition fails to refute that Plaintiffs lack standing under Article III to assert claims against the CB Defendants and that the CB Defendants did not cause Plaintiffs' alleged injuries. *See* Mot. Mem. 11:23-15:14, 37:16-40:1. Both of these reasons are independently fatal to all of Plaintiffs' claims against the CB Defendants.

Plaintiffs generally cite to and incorporate by reference arguments made in the *Fleites* plaintiff's omnibus opposition to the defendants' motions to dismiss. Opp'n, 63:25-28 n.49, 67:6-7. As to those arguments, the CB Defendants incorporate by reference their reply in support of their motion to dismiss the SAC in *Fleites* (Case No. 21-cv-4920-WLH-ADS, ECF No. 505-1 ("*Fleites* Reply" or "*Fleites* MTD Reply") § I, 2:20-4:17). The other arguments in the Opposition similarly fail to overcome Plaintiffs' lack of standing and causation for their claims against the CB Defendants.

***First***, Plaintiffs refer to Judge Carney's order ruling on Visa's motion to dismiss in *Fleites* and argue that "Judge Carney's reasoning applies to the claims against Colbeck and Redwood as well." Opp'n 62:15-16. Plaintiffs ignore that, as shown in the Motion, Judge Carney's order supports dismissal of Plaintiffs' claims against the CB Defendants. Mot. Mem. 15:1-14. Rather than refute this, Plaintiffs argue that their "claims arise from the monetization of Plaintiffs' sex acts" and that Judge Carney held Visa had a "key role in monetizing illegal CSAM content, including the plaintiff's [sic]." Opp'n 62:13-14, 63:12-13. But unlike the allegations against Visa, the CB Defendants are not said to have provided any tools for MindGeek to profit from CSAM. *See* Mot. Mem. 15:5-8. At most, Plaintiffs allege that the CB Defendants participated in loans, proceeds of which the MindGeek Borrowers used in generally operating their business. The CB Defendants' role as lenders is not specific to monetizing CSAM

generally or as to Plaintiffs individually. As explained in the Motion, Plaintiffs' flawed view of the law would mean that any third-party service provider allegedly connected in any way to MindGeek's business could be sued for Plaintiffs' injuries. Mot. Mem. 14:1-9. This is especially true for the CB Defendants under Judge Carney's order. Judge Carney based his ruling as to Visa on the fact that it suspended MindGeek's merchant privileges in December 2020, which resulted in MindGeek removing millions of videos, but Visa then reinstated those privileges despite the alleged issues of CSAM continuing. *See* Mot. Mem. 15:8-13. No similar plausible basis for knowledge of CSAM issues or control and influence in decisioning-making over MindGeek exists as to the CB Defendants. *See id.*

*Second*, Plaintiffs argue that "[t]he existence of other lenders" does not disrupt the traceability analysis for the CB Defendants. Opp'n 67:8-25. To begin with, Plaintiffs' argument concedes that ███████████████████████████████ ██████████████████████████████████████████. *See id.*; Mot. Mem. 10:25-11:1. ██████████████████████████████████████████ ██████████████████████████████████████████ ██████████████████████████████████████████ ███████████████████████████████ Mot. Mem. 10:25-11:4. Plaintiffs' concession also undoes Plaintiffs' standing argument (and shows there is no causation) as to the CB Defendants because Plaintiffs' injuries would have occurred regardless of whether the CB Defendants participated in the loans. Mot. Mem. 14:10-21. Even if the Court were to take as true Plaintiffs' conclusory assertion that ████████ ██████████████████████████████████ (Opp'n 67:9-12), it would still be the case that ████████████████████████████████████████ ██████████████████████████████████████████ ████████████████████.

Plaintiffs' theory of standing and causation also fails because it is based on what the CB Defendants allegedly ***could have*** done, not anything they actually did. Even if

- 4 -

the allegations were sufficiently pled, which they are not, failing to take certain precautions identified by Plaintiffs does not make the CB Defendants a "substantial factor" or a "determinative or coercive effect on the actions of another" in causing Plaintiffs' alleged injuries. *Williams v. Sisolak*, No. 22-16859, 2024 WL 194180, at *2 (9th Cir. Jan. 18, 2024) (citation omitted); *cf. Labowitz v. Bird Rides, Inc.*, No. 2:18-cv-9329, 2019 WL 8750219, at *3-4, 6 (C.D. Cal. Oct. 29, 2019) (cited in Opp'n 62:18-63:6) (finding Article III standing for claims against city defendants and electric vehicle company defendants relating to electric scooters impeding pedestrians rights of way because, unlike here, "many of the independent actions . . . are produced by or the result of [the defendants'] challenged conduct").[2]  Plaintiffs' injuries stem directly from the conduct of independent third parties—in particular, their alleged direct traffickers. Even after the direct traffickers, there are the MindGeek Entity Defendants and the MindGeek Borrowers.  This alleged chain of causation is at best "hypothetical or tenuous" and "[im]plausible" (*see* Opp'n 63:7-8 (quoting *Labowitz*, 2019 WL 8750219, at *6)), and ultimately insufficient for Article III standing and causation.

**Third**, like the plaintiff's opposition in *Fleites*, the Opposition here sets up a strawman by stating that a defendant need not "personally commit the act that harms plaintiff" or that standing may exist even if other parties also bear responsibility.  Opp'n 62:17-18, 68:1-16.  The CB Defendants do not contend that Plaintiffs have failed to show standing only because the CB Defendants did not personally commit the act that harmed Plaintiffs (participating in the acts depicted in, recording, uploading, viewing, or even deciding whether to remove the videos) or because only one person may be responsible for the alleged harm.  Plaintiffs lack standing because no act by a CB Defendant was a "substantial factor" or had a "determinative or coercive effect on the actions of another" in causing Plaintiffs' alleged injuries. *Williams*, 2024 WL 194180,

---

[2]  Plaintiffs also cite generally *Brill v. Chevron Corp.*, No. 3:15-cv-4916-JD, 2017 WL 76894, at *3 (N.D. Cal. Jan. 9, 2017).  As shown in the CB Defendants' *Fleites* Reply, *Brill* is not on point.  *See* CB Defs.' *Fleites* MTD Reply § I, 3:13-4:5.

CB DEFENDANTS' REPLY IN SUPPORT
OF OMNIBUS MOTION TO DISMISS

1  at *2.

2  None of the cases that Plaintiffs cite supports finding standing (or causation) as

3  to the CB Defendants.[3]   These cases do not, and cannot, change the Article III

4  requirement of a sufficient, traceable connection between the defendant's acts and the

5  injury complained of.  *See Lujan v. Defs. Of Wildlife,* 504 U.S. 555, 560 (1992);

6  *Washington Env't Council v. Bellon*, 732 F.3d 1131, 1141 (9th Cir. 2013).  "[A] plaintiff

7  must demonstrate standing for each claim he seeks to press."  *DaimlerChrysler Corp.*

8  *v. Cuno*, 547 U.S. 332, 352 (2006).  Allegations of conspiracy or aiding and abetting

9  liability do not permit plaintiffs to forgo Article III traceability analysis for an alleged

10  co-conspirator.  *See Perez v. Nidek Co.*, 711 F.3d 1109, 1112-13 (9th Cir. 2013)

11  (rejecting plaintiff's "endeavor[] to sidestep the traceability hurdle . . . through his

12  allegations of conspiracy and aiding and abetting").

13  There is no connection between loans extended by the CB Defendants and the

14  actions by Plaintiffs' alleged direct traffickers.  *See Doe v. Walmart*, No. 18-cv-2125,

15  2019 WL 499754, at *9 (N.D. Cal. Feb. 8, 2019) (holding plaintiffs failed to show how

16  they were injured by defendant allegedly providing funding for the alleged extortion

17  scheme).  The CB Defendants' remote role as lenders and the absence of any allegations

18  connecting them to Plaintiffs or the videos—neither of which the Opposition

19  meaningfully disputes—confirms that "the causal chain involves numerous third parties

20  whose independent decisions collectively have a significant effect on plaintiffs'

21  injuries," and "the causal chain is too weak to support standing."  *Washington Env't*

22  *Council*, 732 F.3d at 1142.

23  _____

24  [3]  *See Merriam v. Demoulas*, No. 11-cv-10577, 2013 WL 2422789, at *4 (D. Mass. June 3, 2013) (finding standing because fiduciary defendants took affirmative actions to

25  protect, and conceal acts by, other fiduciaries who had allegedly breached duties to plaintiffs); *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 255-56 (1994)

26  (plaintiff health care clinics alleged a coalition of anti-abortion groups, which shared a common purpose and agreement to shut down the clinics, had directly injured clinics'

27  business or property interests); *Oxbow Carbon & Mins. LLC v. Union Pac. R.R. Co.*, 81 F. Supp. 3d 1, 7-8 (D.D.C. 2015) (actions of both defendants allegedly directly caused

28  illegal surcharge and monopoly).

1    **Fourth**, Plaintiffs also try to write Article III out of the Constitution by arguing

2    that FOSTA, a 2018 amendment to the Section 230 safe harbors of the Communications

3    Decency Act, alone confers standing on Plaintiffs for their TVPRA claims. *See* Opp'n

4    63:25-28 n.49, 68:18-69:3. Plaintiffs contend that "Congress conferred Article III

5    standing for all claims" under Sections 1591(a)(2) and 1595. Opp'n 68:27-69:1. This

6    is wrong. Congress cannot legislate away the standing requirement. *Thole v. U.S. Bank*

7    *N.A.*, 590 U.S. 538, 544 (2020) (holding existence of a cause of action "does not affect

8    the Article III standing analysis"). FOSTA does not obviate Plaintiffs' obligation to

9    show Article III standing.

10    In *Coubaly v. Cargill, Inc.*, the court rejected the same argument that Plaintiffs

11    make here—that Article III standing is not required for a TVPRA claim. 610 F. Supp.

12    3d 173, 182-83 (D.D.C. 2022). Like Plaintiffs here, the plaintiffs in *Coubaly* could not

13    sufficiently connect the defendants to the plaintiffs' direct traffickers. *Id.* at 180-81.

14    The court found that the defendants' alleged knowledge of their suppliers' trafficking

15    conduct (employment of children) was insufficient and that the complaint did not

16    adequately address the role of intermediaries. *See id.* The court dismissed the plaintiffs'

17    TVPRA claim for lack of standing because the plaintiffs' theory contained uncertainty

18    in the chain of causation related to the alleged trafficking conduct. *Id.* at 180-82.

19    Plaintiffs' argument and claims against the CB Defendants have the same flaws and

20    should suffer the same fate.

21    **Fifth**, Plaintiffs argue that they need not plead proximate cause for Article III

22    standing or for TVPRA claims. Opp'n 69:5-7. As to Article III standing, Plaintiffs'

23    argument misses the point. The CB Defendants never argued that a lack of "proximate

24    cause" is the reason Plaintiffs lack standing. As shown in the Motion and confirmed

25    above, Plaintiffs lack standing because they do not meet the requirements for standing

26    set forth by the U.S. Constitution and precedent from the U.S. Supreme Court and Ninth

27    Circuit. And as to the TVPRA claims, as explained in the CB Defendants' *Fleites*

28    Reply, causation is indeed required for a TVPRA claim, and no matter what causation

standard is applied (proximate or otherwise), Plaintiffs' alleged injuries lack *any* meaningful causal link to the CB Defendants.  CB Defs.' *Fleites* MTD Reply § I, 4:6-17 (citing cases); *see also* Mot. Mem. 11:23-15:14, 26:3-19, 26:23-28 n.14, 32:18-33:1, 37:16-40:1.

**Sixth**, Plaintiffs, citing *City of Los Angeles v. Wells Fargo & Co.*, 22 F. Supp. 3d 1047, 1054 (C.D. Cal. 2014), contend that they should be able to conduct discovery to obtain more information on the "factual question" of the CB Defendants' control over the MindGeek Borrowers.  Opp'n 67:21-25.  But *City of Los Angeles* merely states that the plaintiff may conduct discovery to obtain evidence to **prove** a claim *if*, under the pleading standards, Article III is met.  22 F. Supp. 3d at 1054.  Where, as here, the allegations are conclusory, contradictory, and implausible, there is no Article III standing to carry the case over the pleading stage into discovery.  *See Cady v. Anthem Blue Cross Life & Health Ins.*, 583 F. Supp. 2d 1102, 1107 (N.D. Cal. 2008) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-94 (1998)) (denying the plaintiff's request for discovery to determine whether standing exists because the court "cannot assume 'hypothetical jurisdiction' to order discovery" where there is no standing); *Ashcroft*, 556 U.S. at 678-79 ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").  Plaintiffs cannot avoid either their burden to show standing or the causation element of their claims by speculating that discovery may fix the flaws in their claims against the CB Defendants.

## II.    Plaintiffs Do Not Overcome Their Failure to Plead a Plausible Claim for TVPRA Beneficiary Liability Against the CB Defendants

Incorporating the arguments from the *Fleites* Opposition, Plaintiffs primarily rely on *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544 (7th Cir. 2023), and *Doe 1 v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387 (S.D.N.Y. 2023).  Opp'n 6:1-7:14, 8:12-17, 8:28-9:27, 20:2-6, 21:17-22:3.[4]  Neither case saves Plaintiffs' TVPRA claims for

---

[4]  Plaintiffs alternate between citing to the *Fleites* Opposition or restating arguments from that opposition.  To the extent that Plaintiffs incorporate the *Fleites* Opposition,

beneficiary liability against the CB Defendants.

In *Salesforce*, Backpage.com committed criminal sex-trafficking violations under Section 1591(a)(1) by advertising the plaintiff and other minors for "sale" on its webpage. *Salesforce*, 76 F.4th at 552. Defendant Salesforce.com had a years-long partnership with Backpage during which it was actively involved in supporting the actual sex-trafficking conduct with the actual sex trafficker, Backpage. *Id.* at 549-50. Salesforce "repeatedly consulted with Backpage 'to assess its operational needs,' designed 'targeted solutions addressed to' those needs, and provided active, 'tailored,' and ongoing support," including customized software, which was used in Backpage's trafficking of minors. *Id.* at 556. Similarly, in *Deutsche Bank*, the plaintiff alleged that defendants JP Morgan and Deutsche Bank knew of and actively concealed the actual sex trafficker's (Jeffrey Epstein) sex-trafficking enterprise through structuring payments and withdrawals to evade detection and by failing to file suspicious activity reports. *Deutsche Bank*, 671 F. Supp. 3d at 406-07. A bank officer from JP Morgan was even alleged to have engaged in sexual contact with a minor, and a JP Morgan subsidiary was alleged to have engaged in the transport and trafficking of Epstein's victims. *Id.* at 399, 406, 410.

The alleged conduct of the CB Defendants falls far short of the allegations made against Salesforce, JP Morgan, and Deutsche Bank. Plaintiffs do not allege that the CB Defendants provided tools or means by which sex trafficking could occur. Nor do Plaintiffs allege that the CB Defendants concealed any trafficking activity. There are no allegations of any involvement or participation in sex trafficking by the CB Defendants—they participated in loans. In addition, the CB Defendants are not alleged to have had any contact at all with the sex traffickers who exploited Plaintiffs. Judge Carney has already held in *Fleites* that MindGeek is not a direct trafficker—the people who took and uploaded the videos of the plaintiffs are the traffickers. *Fleites v.*

---

the CB Defendants incorporate their *Fleites* Reply. *See* CB Defs.' *Fleites* MTD Reply § II, 4:18-12:13.

1  *MindGeek S.à.r.l.*, 617 F. Supp. 3d 1146, 1160 (C.D. Cal. 2022).

2      *Salesforce* and *Deutsche Bank* do not change that Plaintiffs' TVPRA claims for

3  beneficiary liability against the CB Defendants fail because they (1) did not knowingly

4  participate in a sex-trafficking venture, (2) did not knowingly benefit from participation

5  in a trafficking venture, and (3) did not know of Plaintiffs' alleged sex trafficking or

6  any alleged sex-trafficking venture.

7      ***(1) No knowing participation in trafficking venture.***  Plaintiffs argue that

8  participation in a "venture" does not require the venture to be a sex-trafficking venture

9  and that the CB Defendants' loans to the MindGeek Borrowers and their alleged

10 involvement with MindGeek constitute participation in a venture.  Opp'n 17:1-21:2.

11     ***First***, courts in this district, including Judge Carney in *Fleites*, and other courts

12 have held that beneficiary liability under the TVPRA requires participation in a "sex

13 trafficking venture."[5]  Plaintiffs cite Judge Carney's *Fleites* decision on Visa's motion

14 to dismiss in other sections of their Opposition, but they ignore the part of that decision

15 that dismissed the plaintiff's beneficiary liability claim against Visa.  Plaintiffs cannot

16 have it both ways.  Under Judge Carney's decision in *Fleites*, Plaintiffs plead no

17 TVPRA beneficiary liability claim against the CB Defendants.

18     Even if the TVPRA only required participation in a "commercial venture," as

19 Plaintiffs contend, Plaintiffs do not allege that the CB Defendants participated in a

20 commercial venture.  Rather, the Complaints allege that the CB Defendants participated

21 in "MindGeek's sex trafficking venture" and that the CB Defendant's profits stemmed

---

[5]  *See Fleites*, 617 F. Supp. 3d at 1160; *Does 1-6 v. Reddit, Inc.*, 51 F.4th 1137, 1143 (9th Cir. 2022) ("'gravamen' of a section 1595 beneficiary claim is the ***defendant's participation in and benefit from the trafficking scheme***"); *Deutsche Bank*, 671 F. Supp. 3d at 405 ("the defendant must have participated in a ***commercial sex trafficking venture***"); *Doe v. Wyndham Hotels & Resorts*, No. 8:23-cv-01554-JVS-JDE, 2024 WL 2104596, at *3 (C.D. Cal. Feb. 28, 2024) ("The second element of a § 1595 claim is whether Defendants knowingly participated in a ***sex trafficking venture***."); *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019) ("The participation giving rise to the benefit must be participation ***in a sex-trafficking venture***, not participation in other activities engaged in by the sex traffickers that do not further the sex-trafficking aspect of their venture.") (emphases added).

CB DEFENDANTS' REPLY IN SUPPORT
OF OMNIBUS MOTION TO DISMISS

from MindGeek's commercialization of CSAM.  *See, e.g.*, K.A. Compl. ¶¶ 346-47, 350-51; *see Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 726-27 (11th Cir. 2021) (refusing to allow plaintiffs to base beneficiary liability claim on participation in "commercial ventures" because complaints alleged participation in "sex trafficking ventures"); *B.J. v. G6 Hosp., LLC*, No. 22-cv-03765-MMC, 2023 WL 3569979, at *5 (N.D. Cal. May 19, 2023) (same).

**Second**, Plaintiffs (i) misstate the Motion by asserting that the CB Defendants "argue that participation requires control and management of the venture's sex trafficking activities and the specific activities targeting Plaintiffs" and (ii) argue erroneously that an "overt act" in furtherance of a sex-trafficking venture is not required.  Opp'n 7:1-16; Mot. Mem. 18:22-19:1.  But even in *Salesforce*, the court held that "participation" under Section 1595(a) "require[s] more than . . . mere passive nonfeasance" and "more than providing off-the-shelf software []or other common products or services"—the defendant must take action related to the trafficking that goes beyond a general business transaction.  76 F.4th at 562-64.  Unlike in *Salesforce*, the CB Defendants were "arms-length [lenders] of off-the-shelf [loans]," ████████████ ████████████████.  76 F.4th at 562.  Plaintiffs do not and cannot plausibly allege that any CB Defendant engaged in "direct, active, and substantial" aid related to sex trafficking.  *Id.* at 564; *see* Mot. Mem. 9:14-14:22, 18:18-20:15.  Likewise, the *Deutsche Bank* court held that the plaintiff adequately alleged that the defendant banks "participated in Jeffrey Epstein's sex-trafficking venture" because the banks "went well beyond merely providing their usual services to [] Epstein and his affiliated entities." 671 F. Supp. 3d at 405-06 (holding defendants liable for "'structuring' cash withdrawals so that those withdrawals would not appear suspicious," delaying and "willfully failing to file suspicious activity reports," and "conceal[ing] delivery of hundreds of thousands of dollars in cash to Epstein and his associates").  "[A]n entity that . . . simply provide[s] to the venture the same products and services that it provides [to other ventures] does not 'participate' in that venture."  *T.S. v. Wyndham Hotels & Resorts, Inc.*, No. 23-cv-

2530-PJS-ECW, 2024 WL 3927382, at \*10 (D. Minn. Aug. 23, 2024). "[S]omething more than engaging in an ordinary buyer-seller transaction is required to establish 'participation.'" *Doe 1 v. Apple Inc.*, 96 F.4th 403, 415 (D.C. Cir. 2024). Routine loans to the MindGeek Borrowers through Loan Agreements with standard terms do not equate to the CB Defendants knowingly participating in a venture in violation of the TVPRA.

Courts have declined to follow the "continuous business relationship" analysis in *Salesforce* cited by Plaintiffs as a basis to infer participation (Opp'n 8:8-17 (citing *Fleites* Opp'n 6)). *See Unknown Parties v. Google LLC*, No. 23-cv-05523-VC, 2024 WL 1892291, at \*2 (N.D. Cal. Apr. 29, 2024) (distinguishing *Salesforce* and finding standard revenue-sharing agreement between YouTube and its channels did not constitute a "continuous business relationship"); *see also T.S.*, 2024 WL 3927382, at \*9-10 (rejecting *Salesforce*'s interpretation of the "continuous business standard," which would impose "strict liability on anyone who is in a 'continuous business relationship'" with businesses with a risk for sex-trafficking). In any event, as stated in cases that Plaintiffs cite in the Opposition or incorporate by reference from the *Fleites* Opposition, a "continuous business relationship" requires a relationship with the plaintiff's **direct trafficker**. *See, e.g.*, *Acevedo v. eXp Realty, LLC*, 713 F. Supp. 3d 740, 783 (C.D. Cal. 2024) ("a plaintiff must allege the defendant had a direct association or a business relationship with their trafficker").[6] No such relationship exists for the CB Defendants.

Plaintiffs also assert erroneously that the ruling in *Salesforce* did not depend on

_____

[6] *Doe v. Mindgeek USA Inc.*, 558 F. Supp. 3d 828, 837 (C.D. Cal. 2021) (plaintiff must "allege at least a showing of a continuous business relationship between **the trafficker** and Defendants") (emphasis added); *Salesforce*, 76 F.4th at 562 (distinguishing Salesforce from defendants that did not have relationships with sex traffickers); *see also G.W. v. Northbrook Indus., Inc.*, No. 1:20-cv-05232-JPB, 2024 WL 3166083, at \*6 (N.D. Ga. June 14, 2024) (rejecting plaintiff's theory that venture need not involve the direct trafficker because then the "participation requirement would automatically be satisfied any time the defendant is a . . . commercial entity, irrespective of whether the entity had any involvement in the plaintiff's trafficking").

Backpage being a direct trafficker.  Opp'n 8:28-9:8.  The *Salesforce* court, in fact, distinguished Salesforce from TVPRA defendants that are "one step removed from the sex traffickers (i.e., street-level trafficker – > hotel – > hotel franchisor)" to find that Salesforce's "direct and long-term contractual relationship with ***the sex-trafficker***" was the basis for the beneficiary liability claim to survive.  *Salesforce*, 76 F.4th at 561-62 (emphasis added).

Plaintiffs' reliance on *J.C. v. Choice Hotels Int'l, Inc.*, No. 20-cv-00155-WHO, 2020 WL 6318707 (N.D. Cal. Oct. 28, 2020) and *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959 (S.D. Ohio 2019), is also misplaced.  *See* Opp'n 20-28.  In both cases, the plaintiffs plausibly alleged that the defendants "directly 'participated in a venture' by providing lodging to [the plaintiffs' direct traffickers]" where the trafficking took place.  *J.C.*, 2020 WL 6318707, at *7; *M.A.*, 425 F. Supp. 3d 959, 970.  *S.C. v. Hilton Franchise Holding LLC*, No. 2:23-cv-02037-APG-DJA, 2024 WL 4773981 (D. Nev. Nov. 12, 2024) is similarly unavailing because the court found that the plaintiff had plausibly alleged that the defendant hotel franchisor "assisted, supported, or facilitated" the plaintiff's trafficking.  Opp'n 8:19-24; *see S.C.*, 2024 WL 4773981, at *2.  The defendant in *S.C. v. Hilton* also had extensive control over the franchisee's operations and was made aware of the plaintiff's trafficking by the franchisee's employees and the direct trafficker's suspicious activity through the defendant's room reservation software, which was used to reserve the rooms for the trafficker.  2024 WL 4773981, at *2, 5.  Plaintiffs do not dispute that the CB Defendants never interacted with Plaintiffs' direct traffickers.  Even under cases cited favorably by Plaintiffs, the lack of a connection between the CB Defendants and the alleged traffickers dooms Plaintiffs' beneficiary liability claim against the CB Defendants.

***Third***, Plaintiffs fail to rebut that a lender-borrower relationship is not enough to make the lender liable for alleged misconduct of the borrower, including under the TVPRA.  *See* Mot. Mem. 38:1-39:26 (citing cases).  Plaintiffs inaptly compare the CB Defendants' role as lenders to that of hotel franchisors that exercised day to day control

over their franchisees' businesses and actively monitored trafficking activity at their franchisee hotels. *See* Opp'n 20:20-28. Unlike in the cases cited by Plaintiffs, here, the loans in 2011 and 2013 were typical lending services, and no plausible allegation supports that the CB Defendants engaged in any conduct beyond their typical role as lenders. The CB Defendants did not maintain the websites onto which the videos of Plaintiffs were uploaded; monitor or moderate those websites; process payments for those websites; or provide any tool, software, or other means that furthered or was used to further the alleged sex-trafficking.

*(2) No knowing benefit from participation in trafficking venture.* Plaintiffs argue that the CB Defendants knowingly benefitted from participation in a sex-trafficking venture because profits MindGeek generated were used to repay the loans made by the CB Defendants. Opp'n 23:5-9. Plaintiffs also argue that the CB Defendants seek to impose a "quid pro quo" requirement into Section 1595. Opp'n 9:13-20. The first argument is not enough to show beneficiary liability, and the second argument misstates the Motion. Neither argument saves Plaintiffs' claims from dismissal.

Plaintiffs simply have not alleged a relationship between the CB Defendants' conduct *in furtherance of the sex-trafficking venture* and receipt of a benefit. Mot. Mem. 20:16-21:1. This is required for a beneficiary liability claim. *See id.*; *see also Doe v. Mindgeek USA Inc.*, 558 F. Supp. 3d at 839 n.5 (cited favorably by Plaintiffs, Opp'n 5:8-9, 8:10-11) (denying motion to dismiss beneficiary liability claim because plaintiff, unlike Plaintiffs here, sufficiently "allege[d] a direct connection between the underlying sex trafficking . . . and the benefits Defendants received from their participation in the venture"); *see also S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 153 (E.D.N.Y. 2020) (beneficiary liability requires actual or constructive knowledge that the defendant was "*facilitating* a sex trafficking venture") (emphasis added). Plaintiffs' concept of beneficiary liability would make any recipient of funds from MindGeek *for any purpose* a knowing beneficiary of sex-trafficking activity. That

- 14 -

is not and cannot be the law. *See T.S.*, 2024 WL 3927382, at *8 (rejecting *Salesforce*'s interpretation of the statute which would hold liable any defendant "who at any time in the past . . . knowingly benefitted from participating in any venture . . . that violated § 1591(a)").

Further, *B.M. v. Wyndham Hotels & Resorts, Inc.*, which Plaintiffs rely on, held that the "'knowing benefit' element under Section 1595 requires Defendant to knowingly receive a financial benefit . . . from *a relationship with the trafficker*." No. 20-cv-00656-BLF, 2020 WL 4368214, at *4 (N.D. Cal. July 30, 2020) (emphasis added). Plaintiffs do not allege that the CB Defendants received a financial benefit from a relationship with Plaintiffs' direct traffickers. Unlike the defendants in the cases cited by Plaintiffs, whose conduct was directly tied to their benefit from the sex-trafficking venture, there is no nexus between the CB Defendants' alleged benefit (interest and fees from loans to the MindGeek Borrowers) and the actions of Plaintiffs' alleged traffickers, with whom the CB Defendants had no involvement. *See, e.g.*, *Deutsche Bank*, 671 F. Supp. 3d at 408 (defendants "received revenue from Jeffrey Epstein and his affiliated entities *in exchange for* their furtherance of Epstein's sex-trafficking venture"); *Salesforce*, 76 F.4th at 567 (Salesforce benefited from contracts for customized software that Backpage used to increase profitability of trafficking). Repayment of loans constitutes at most "receipt of a passive benefit" unconnected to Plaintiffs' alleged trafficking or a sex-trafficking venture. *See Ratha v. Phatthana Seafood Co.*, No. 2:16-cv-4271-JFW-AS, 2017 WL 8293174, at *4 (C.D. Cal. Dec. 21, 2017) ("receipt of a passive benefit" is insufficient"), *aff'd*, 26 F.4th 1029 (9th Cir. 2022)[7]; *see also*

---

[7]  Plaintiffs argue that the holding in *Ratha* was specifically limited to ventures involving forced labor. *See* Opp'n 7:24-28 n.6 (citing *Ratha,* 2017 WL 8293174, at *4 (C.D. Cal.)). The court in *Ratha*, however, neither specifically limited its analysis in that way nor held that participation in a sex-trafficking venture need not be based on a direct role in the illegal activities of the venture. *See Ratha,* 2017 WL 8293174, at *4. Instead, the court simply noted that the plaintiff's argument was based on a definition of "venture" specific to sex trafficking. *Id.* Citing a Sixth Circuit opinion on sex-trafficking beneficiary liability, the court in *Ratha* then held that the plaintiffs presented no evidence that the defendants acted to operate or manage the venture in violation of

*Salesforce*, 76 F.4th at 563-64 ("Section 1595(a)'s standard of knowing benefit from participation in a venture that has violated Section 1591 [] require[s] more than . . . passive nonfeasance or an arm's length, passive, and largely indifferent relationship with the [trafficker].") (citation omitted).

**(3) No knowledge of alleged trafficking.**  Plaintiffs also fail to plausibly allege that the CB Defendants had actual or constructive knowledge of Plaintiffs' alleged trafficking or an alleged trafficking venture.

To begin with, Plaintiffs' argument that the CB Defendants need not know of ***Plaintiffs or Plaintiffs' trafficking*** contravenes the plain text of the TVPRA.  *See* 18 U.S.C. §§ 1591(a), 1591(e), 1595(a).  Section 1595(a) provides that "[a]n individual who is a victim of a violation of this chapter ***may bring a civil action against*** the perpetrator (or ***whoever knowingly benefits . . . from participation in a venture*** which that person knew or should have known has engaged in an act in violation of this chapter)."  "Participation in a venture" is defined under Section 1591(e)(4) as "***knowingly*** assisting, supporting or facilitating ***a violation of subsection [1591](a)(1)***."  Section 1591(a)(1), in turn, provides that a defendant violates the TVPRA if the defendant "***knowingly*** . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means ***a person*** . . . to engage in a commercial sex act."  Thus, the entire inquiry under Section 1591 relates to the trafficking of "a person," which requires actual or constructive knowledge of the plaintiff.  There is no general violation of Section 1591.

Indeed, Judge Carney held in *Fleites* that the plaintiff must plausibly allege that the defendant "knew or should have known that the plaintiff was a victim of sex trafficking."  *Fleites,* 617 F. Supp. 3d at 1160.  Other courts have held the same.  *See* Mot. Mem. 21:2-5 (citing *Red Roof Inns*)[8]; *see also J.M. v. Choice Hotels Int'l, Inc.*,

---

the TVPRA.  *Id.* (citing *United States v. Afyare*, 632 Fed. App'x 272, 286 (6th Cir. 2016)).

[8]  Plaintiffs do not meaningfully distinguish *Red Roof Inns*.  Opp'n 22:18-24 n.13.  Contrary to the Opposition, the Eleventh Circuit explicitly held that the plaintiff must

No. 2:22-cv-00672-KJM-JDP, 2022 WL 10626493, at *5 (E.D. Cal. Oct. 18, 2022) ("general knowledge of sex trafficking . . . is insufficient to demonstrate defendants should have known about [plaintiff]'s trafficking").[9] Plaintiffs argue that the cases cited by Defendants concerned trafficking ventures involving few victims. Opp'n 6-7 n. 5. But these cases did not limit their holdings in that way. *See, e.g.*, *K.B. v. G6 Hosp., LLC, et al.*, No. 1:23-cv-2597-TWT, 2024 WL 4701891, at *2 (N.D. Ga. Nov. 5, 2024) (noting court in *Red Roof Inns* "did not differentiate its analysis based on how the venture was defined").

The Opposition incorrectly asserts that the "only argument" by the CB Defendants on this issue is that they lack specific knowledge of Plaintiffs' videos. Opp'n 21:22-25. As explained in the Motion and confirmed in this reply, however, even if, as Plaintiffs contend, knowledge of the individual plaintiff is not required, the Complaints do not plausibly allege that the CB Defendants knew or constructively knew of any sex-trafficking venture, which is clearly required. *See* Mot. Mem. 18:9-19:23; *T.S.*, 2024 WL 3927382, at *8 ("plaintiff must plead and ultimately prove that the defendant had actual or constructive knowledge of the particular sex-trafficking venture that harmed the plaintiff"); *S.J.*, 473 F. Supp. 3d at 154 (plaintiff must allege defendant had "requisite knowledge of a specific sex trafficking venture" to be liable under the TVPRA). The allegations in the Complaints do not come close to what the courts in the cases that Plaintiffs cite found sufficient to constitute such knowledge. *See* Opp'n

---

plead "actual or constructive knowledge that the venture . . . violated [Section 1591] ***as to the plaintiff***." *Red Roof Inns*, 21 F.4th at 725 (emphasis added).

[9] *See also Northbrook Indus.*, 2024 WL 3166083, at *3 (dismissing TVPRA claim for failure to allege knowledge as to plaintiff); *Lundstrom v. Choice Hotels Int'l Inc.*, No. 21-cv-00619-PAB-SKC, 2021 WL 5579117, at *8 (D. Colo. Nov. 30, 2021) (dismissing TVPRA claim for failure to allege defendant "should have known about plaintiff's sex trafficking at its hotels"); *A.B. v. Hilton Worldwide Holdings, Inc.*, 484 F. Supp. 3d 921, 938-39 (D. Or. 2020) (dismissing TVPRA claim for failure to "allege[] facts which sufficiently link notice of Plaintiff['s] sex trafficking" to defendants); *Doe (L.M.) v. 42 Hotel Raleigh, LLC*, 717 F. Supp. 3d 464, 468 n.6 (E.D.N.C. 2024) (citing "circuit split" on whether "knowledge" and "participation" must be "victim-specific").

21:5-21 (citing *Deutsche Bank,* 671 F. Supp. 3d at 407 (banks' employees witnessed first-hand Epstein's trafficking victims, including plaintiff); *M.L. v. Craigslist Inc*., No. 19-cv-6153-BHS-TLF, 2020 WL 5494903, at *6 (W.D. Wash. Sept. 11, 2020) (defendant online platform had actual knowledge that its "website was hosting sex trafficking advertisements" but continued to charge fees for those advertisements)); *see also Salesforce,* 75 F.4th at 555-56, 560 (Salesforce entered into contract with Backpage despite "[n]ationwide news coverage" identifying Backpage as "the leading platform for the facilitation of sex trafficking," and provided active, ongoing support that was directly tied to Backpage's TVPRA-violating conduct, which included "analyz[ing] content").

Plaintiffs allege that MindGeek operated the "largest internet pornography platform," which hosted content uploaded by third party users. *See, e.g.*, K.A. Compl. ¶ 43. But willful blindness or even general knowledge of the risk that CSAM may be uploaded to the largest adult-content website in the world cannot equate to actual or constructive knowledge of a sex-trafficking venture. *See S.J.*, 473 F. Supp. 3d at 154 (willful blindness is insufficient); *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1179 (9th Cir. 2022) ("*Ratha I*") (general knowledge is insufficient).[10]

The fact that routine due diligence in connection with the loans—which occurred before most videos of Plaintiffs were posted to a MindGeek website—allegedly noted a general risk for "distribution of illegal material" similarly cannot result in an inference of knowledge of a trafficking venture. *Contra* Opp'n 21:9-20; *see, e.g.*, K.A. Compl. ¶ 261.[11] Plaintiffs argue that their TVPRA claims against the CB Defendants are not

---

[10]  Plaintiffs argue incorrectly that the plaintiffs in *Ratha I* alleged only knowledge of trafficking in an industry generally, rather than trafficking by a defendant specifically. *See* Opp'n 21-22 n.12. The plaintiffs in *Ratha I*, in fact, had asserted knowledge of trafficking by a particular defendant; but the Ninth Circuit held that the plaintiffs—like Plaintiffs here—had provided insufficient support to establish knowledge of TVPRA violations during the relevant time period. *See Ratha I*, 35 F.4th 1177-78.

[11]  In addition, as Plaintiffs acknowledge, due diligence in fact noted that ████████

based on allegations of sex trafficking in the online pornography industry generally, but rather pertain specifically to MindGeek.  Opp'n 22 n.12, n.14.  But even if Plaintiffs had adequately alleged that the CB Defendants knew of previous instances of CSAM on MindGeek's website, which Plaintiffs have not adequately alleged, that still is not enough to meet the actual or constructive knowledge element for beneficiary liability.  For a defendant to be liable as a beneficiary under the TVPRA, the defendant must know of a *specific* sex trafficking venture—it is not enough that the defendant knew that a violation of Section 1591 occurred at some point or might occur in the future.  *S.J.*, 473 F. Supp. 3d at 154.  Plaintiffs' interpretation of the statute would make it "nearly impossible for a plaintiff ***not*** to satisfy § 1595's knowledge requirement," especially for an online platform hosting user-uploaded adult content, as just about every such platform would have "'general, abstract' knowledge that a violation of § 1595 likely occurred" on its platform.  *T.S.*, 2024 WL 3927382, at *8.  Indeed, under Plaintiffs' interpretation, the TVPRA would "authorize[] any sex-trafficking victim to sue any defendant . . . who at any time in the past (even decades ago) knowingly benefitted from participating in any venture (even if the venture had nothing to do with the plaintiff) that committed any act that violated § 1591(a) (even if the plaintiff was not the victim of that act)."  *Id.*  Plaintiffs' theory would make any entity that provided a loan to any large online platform hosting user-uploaded content liable as a beneficiary of sex trafficking for general knowledge that CSAM was previously uploaded to the platform or could be uploaded in the future.

Plaintiffs also argue that the CB Defendants knew that MindGeek monetized CSAM due to their involvement with the company during the time they had loans outstanding to MindGeek.  Opp'n 21:5-15.  All that Plaintiffs cite in support of this conclusory assertion that the CB Defendants received "extensive reporting" from MindGeek, however, is the Loan Agreements' terms.  The terms ████████████

████████████, Redwood Defs.' *Fleites* MTD, Ex. A at 57 (ECF No. 450-2); *see also* K.A. Compl. ¶ 261 (citing generally due diligence materials).

CB DEFENDANTS' REPLY IN SUPPORT OF OMNIBUS MOTION TO DISMISS

1 ██████████████████████████████████████████████████████████

2 ██████████████████████████████████████████████████████████

3 ████████████████. *See, e.g.*, 2011 Loan Agreement §§ 7.01(a)(viii), 7.01(a)(ix),

4 7.01(a)(xiii), 7.01(a)(xvi), 7.01(a)(xxii), 7.01(a)(xix), 7.01(a)(xxii); 2013 Loan

5 Agreement §§ 7.01(a)(viii), 7.01(a)(ix), 7.01(a)(xiii), 7.01(a)(xvi), 7.01(a)(xix),

6 7.01(a)(xxii).  The Loan Agreements also included ████████████████████████

7 ██████████████████████████████████████████████████████████

8 ████████████████████████████.  *See* Mot. Mem. 8:19-9:3.  There is nothing

9 remarkable—or wrongful—about a ████████████████████████████████████

10 ████████████████████████████.  Virtually all loan documentation contains

11 such provisions.    Plaintiffs cannot invert these provisions to show that the CB

12 Defendants knew and intended that MindGeek would engage in unlawful activity.  *See,*

13 *e.g.*, *Ashcroft*, 556 U.S. at 679 (a complaint is insufficient "where the well-pleaded facts

14 do not permit the court to infer more than the mere possibility of misconduct").  To the

15 contrary, the provisions show that the CB Defendants expected and intended that

16 MindGeek would conduct its business lawfully.

17 Plaintiffs also argue that the CB Defendants knew of MindGeek's monetization

18 of CSAM through their regular communication with the Individual Defendants.  Opp'n

19 21:14-15 (citing K.A. Compl. ¶ 260).  But Plaintiffs merely cite a paragraph of the K.A.

20 Complaint that alleges only that the CB Defendants conducted interviews with the

21 Individual Defendants as part of due diligence for the loans.  Plaintiffs do not identify

22 any purported "regular communication[s]" or what was allegedly discussed during the

23 communications to put the CB Defendants on notice that MindGeek was violating the

24 TVPRA.    These conclusory allegations fail to show the requisite knowledge for

25 beneficiary liability.  *See, e.g.*, Mot. Mem. 8:4-11:22, 21:2-16.

26 Plaintiffs' allegation that the CB Defendants knew about a sex-trafficking

27 venture based on news articles is also contradicted by the Loan Agreements (███████

28 █████████████████████████████████████████████████) and by the

1    Complaints (which state the issue of CSAM on MindGeek's websites "exploded in
2    2019-2023.") *See, e.g.*, K.A. Compl. ¶ 113.  This was ***after*** the CB Defendants exited
3    the MindGeek loans in 2018.  *See* Opp'n 18:21-22.  Further, the reporting that the
4    Complaints identify is mostly of isolated, individual cases of CSAM and non-
5    consensual content of adults on MindGeek's websites, and neither indicates a sex-
6    trafficking venture nor is anything like the "bombshell" reporting by the New York
7    Times in 2020.  *Id.* 22-23 n.14 (citing K.A. Compl. ¶¶ 161-176, 179-186).  And the
8    2016 lawsuit against GirlsDoPorn (which Plaintiffs do not allege, other than in a
9    conclusion, that the CB Defendants knew about) did not involve CSAM, minors, or
10   claims under the TVPRA.  *Id.*

11        ***Plaintiffs erroneously request discovery.***    Plaintiffs' failure to plead a
12   beneficiary liability claim under the TVPRA against the CB Defendants is further
13   confirmed by their request for discovery on each element of their claims.  Opp'n 6:18-
14   23, 20:9-10, 22:8-9, 23:25-28 n.15.  The cases that Plaintiffs cite do not support that
15   they can avoid their obligation to allege nonconclusory, plausible facts to support their
16   TVPRA claims.[12]  Courts dismiss inadequately pled TVPRA claims despite plaintiffs'
17   requests for discovery.  *See, e.g.*, *T.M. v. G6 Hosp. LLC*, No. 1:23-cv-2598-MLB, 2024
18   WL 4457563, at *8 (N.D. Ga. Sept. 23, 2024) (denying leave to file amended complaint
19   and rejecting attempt to seek "discovery to cure inadequate pleadings" after dismissal
20   of TVPRA beneficiary liability claim for failure to plausibly allege facts sufficient to
21   state a claim); *see also Stutzman v. Armstrong*, No. 2:13-cv-0116-MCE-KJN, 2013 WL

---

[12]  *Barnett v. Cnty. of Los Angeles*, No. 2:20-cv-02530-ODW-AS, 2021 WL 826413, at
*8 (C.D. Cal. Mar. 4, 2021) (holding plaintiff sufficiently pled each required element
of her claim and finding knowledge of a decedent's need for care under a California
statute on prisoner medical care was a factual question); *Cook, Perkiss and Liehe, Inc.
v. N. California Collective Serv. Inc.*, 911 F.2d 242, 245 (9th Cir. 1990) (holding
plaintiff's allegations did not state a claim; noting unremarkably that questions of fact
cannot be determined on a motion to dismiss); *Lundy v. Union Carbide Corp.*, 695 F.2d
394, 397 (9th Cir. 1982) (reversing order granting ***summary judgment*** because of fact
dispute).

3992416, at *6 (E.D. Cal. Aug. 2, 2013) (citation omitted) (rejecting attempt to "uncover potential factual allegations that [Plaintiff] cannot presently make").

There is no fact question here. The unreasonable inferences that Plaintiffs ask the Court to make—based on conclusory, contradictory, and implausible allegations—are insufficient to state a claim. *See Wilson*, 668 F.3d at 1144 n.4. Like Visa in *Fleites*, which Judge Carney already held is not liable as a beneficiary, the CB Defendants did not "knowingly ***participat[e]*** in the sex trafficking venture that harmed Plaintiff." *Fleites,* 617 F. Supp. 3d at 1162.

### III.    Plaintiffs Ask the Court to Save Their TVPRA Conspiracy Claims by Declining to Follow the Ninth Circuit

To support each Plaintiff's TVPRA conspiracy claim, the Opposition repeats and incorporates by reference arguments in the *Fleites* Opposition. Opp'n 26:14-28:2. As explained in the CB Defendants' *Fleites* Reply, Plaintiffs cannot avoid that the Ninth Circuit's recent opinion in *Ratha II* forecloses Plaintiffs' conspiracy claims under the TVPRA. *See* CB Defs.' *Fleites* MTD Reply 12:14-14:3. The CB Defendants incorporate those same arguments here. *Ratha II* is plainly fatal to Plaintiffs' conspiracy claims.

### IV.    Plaintiffs, In Any Event, Do Not Salvage the Complaints' Failures to Allege a Conspiracy Involving the CB Defendants

Putting *Ratha II* to the side, Plaintiffs state that the elements of a civil conspiracy are the same as those of a conspiracy to violate the TVPRA. Opp'n 50:24-25. Plaintiffs contend that a conspiracy claim requires "(1) an agreement to accomplish an illegal objective, (2) the commission of an overt act in furtherance of the conspiracy, and (3) the requisite intent necessary to commit the underlying offense." Opp'n 50:24-51:3; *see also* Mot. Mem. 30:2-6 (listing conspiracy elements). In this reply, the CB Defendants address the elements as presented by Plaintiffs because the Complaints fail

to allege plausible facts to support any of those elements and save Plaintiffs' TVPRA and civil conspiracy claims from dismissal.[13]

  ***(1) No agreement to accomplish illegal objective***.  Plaintiffs acknowledge that they must plead that there was a "meeting of the minds" such that the CB Defendants made an "agreement to accomplish an illegal objective."  Opp'n 27:1-2, 50:25-51:1, 52:9-10.  Plaintiffs also concede that the Complaints do not plead an agreement involving a CB Defendant to accomplish an illegal (or wrongful) objective.  *See* Mot. Mem. 30:10-31:3.  Plaintiffs instead ask the Court to ***infer*** that the CB Defendants agreed to assist MindGeek in monetizing CSAM.  *See* Opp'n 27:4-11, 51:25-52:5, 53:3-7.  Plaintiffs rely on cases that do not support finding an inference here.  *See* Opp'n 27:7-11, 42:17-43:2.[14]

  Plaintiffs base their statement that "a conspiracy may ***sometimes*** be inferred" on an unpublished California court of appeal opinion.  Opp'n 51:22-24 (emphasis added) (quoting *Safarian v. Shaham*, No. B244709, 2014 WL 5038651, at *3 (Cal. Ct. App. Oct. 9, 2014)).  Courts in this district do not rely on such decisions.  *See Lin v. JPMorgan Chase Bank, N.A.*, No. 2:24-cv-01837-JLS-E, 2024 WL 5182199, at *3 n.1 (C.D. Cal. Aug. 15, 2024) ("'[A]n opinion of a California Court of Appeal or superior court appellate division that is not certified for publication or ordered published must not be cited or relied on by a court or a party in any other action.' Cal. R. Ct. 8.1115. Therefore, the Court does not rely on those decisions in this Order.").  That case, in any

---

[13] To the extent that Plaintiffs incorporate arguments from the *Fleites* Opposition (*see, e.g.*, Opp'n 27:22-25, 51:27-28 n.40), the CB Defendants similarly incorporate their *Fleites* Reply (*see* CB Defs.' *Fleites* MTD Reply § IV, 14:4-18:3), which further supports that the Court should grant the Motion here.

[14] *See United States v. Matta-Ballesteros*, 71 F.3d 754, 765 (9th Cir. 1995) (defendant was member of cartel that abducted, tortured, and murdered victim; defendant participated in meetings with other cartel members where kidnapping was planned; and witness testimony tied defendant specifically to the crime); *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1020 (9th Cir. 1985) ("defendant 'entered into a joint enterprise with consciousness of its general nature and extent,'" as shown by specific allegations such as instructions by conspirator to another conspirator related to conspiracy).

1   event, does not provide any basis to support inferring an agreement by the CB

2   Defendants here. *See Safarian*, 2014 WL 5038651, at *3 (finding plaintiffs had

3   sufficiently alleged individual defendant's knowledge of and voluntary acceptance of

4   benefits of fraudulent activities because, among other reasons, defendant was sole

5   owner and operator of offending entity).

6        Plaintiffs erroneously contend that "Defendants" argue that Plaintiffs' claims

7   fail simply because they have not pled conspiracy with particularity. Opp'n 51:19-10.

8   As explained in the Motion, however, Plaintiffs fail to plead ***plausible allegations*** to

9   support any conspiracy involving the CB Defendants. Mot. Mem. 31:4-32:8, 32:27-

10  33:1. Rather than refute this, the Opposition merely concludes that MindGeek was

11  engaged in a sex-trafficking venture that distributed CSAM and that the CB Defendants,

12  and the Redwood Defendants and Visa, knew and agreed to provide means that the

13  venture needed to grow. Opp'n 51:8-18. But Plaintiffs cite only deficient allegations

14  that the Motion established are conclusory and implausible and, in any event, do not

15  support any inference of an agreement. *See* Opp'n 52:1-5 (citing only "years-long

16  relationship[] with MindGeek"; alleged general knowledge of "MindGeek's criminal

17  conduct"; and a motivation to profit); *see also id.* at 52:21-27.

18       The only nonconclusory allegation to infer an agreement is that the CB

19  Defendants participated in loans in 2011 and 2013. *See* Opp'n 17:11-18:25, 51:25-52:5.

20  Rather than support an inference of conspiracy to profit from or perpetuate CSAM in

21  any way, however, the plain language of the Loan Agreements contradicts such an

22  inference.   Indeed, ███████████████████████████████████████████

23  ██████████████████████████████████████████████████████████

24  ████████████████████████████. Loan Agreements §§ 6.01(h), 6.01(mm),

25  6.01(nn), 6.01(ss), 7.01(a), 7.01(c), 7.01(v), 7.01(z). Plaintiffs' speculation that ████

26  ████████████████████████████████████████████████ does not

27  support an inference of an agreement to monetize CSAM. Plaintiffs do not and cannot

28  distinguish this case from those cited by the CB Defendants where courts declined to

1    infer a conspiracy.  Mot. Mem. 31:4-16 (citing cases); *see also Thinking Liberally*

2    *Media, Inc. v. Orange Juice Blog*, No. 8:10-cv-00139-DOC, 2010 WL 11596144, at *5

3    (C.D. Cal. Nov. 19, 2010) ("actual knowledge of the planned tort, without more, is

4    insufficient to serve as the basis for a conspiracy").

5    **(2) No overt act in furtherance of conspiracy.**  Plaintiffs argue that they need

6    not allege that the **CB Defendants** "took any overt act in furtherance of the conspiracy."

7    Opp'n 52:6-16.  This does not save Plaintiffs' conspiracy claim from dismissal.

8    **First**, Plaintiffs concede that a conspiracy claim requires an overt act in

9    furtherance of the conspiracy.  But they neglect to identify any plausible overt act, by

10    any Defendant or anyone else, in furtherance of a conspiracy to perpetuate CSAM

11    involving the CB Defendants.  The only overt acts identified in the Opposition relating

12    to the CB Defendants concern their participation in loans in 2011 and 2013 to the

13    MindGeek Borrowers.  Opp'n 17:11-18:25.

14    **Second**, Plaintiffs admit that "an act in furtherance of the conspiracy" by the **CB**

15    **Defendants** is required to infer their intent, which, as explained below, Plaintiffs ask

16    the Court to do.  Opp'n 27:11-13.  Extending credit to a party that allegedly engaged in

17    unlawful conduct does not create a conspiracy between the lender and the borrower in

18    respect of such conduct.  *See, e.g.*, *Compound Prop. Mgmt., LLC v. Build Realty, Inc.*,

19    462 F. Supp. 3d 839, 864-65 (S.D. Ohio 2020) (dismissing claims against lenders;

20    finding "allegations that a lending company engaged in due diligence with regard to its

21    lending activities cannot, and should not, be enough to plausibly establish [joinder in a

22    conspiracy] even at the pleading stage"); *Young v. City of Menifee*, No. 5:17-cv-01630-

23    JGB-SP, 2019 WL 3037926, at *11 (C.D. Cal. Apr. 5, 2019) (granting motion to dismiss

24    because "[m]ere association does not make a conspiracy").  Plaintiff, at best, suggests

25    that the CB Defendants made loans **despite** possible risks of CSAM's presence on

26    MindGeek's websites.  *See, e.g.*, Opp'n 21:9-11.  That is not an overt act in furtherance

27    of a conspiracy to benefit from sex trafficking.

28

- 25 -

CB DEFENDANTS' REPLY IN SUPPORT
OF OMNIBUS MOTION TO DISMISS

*(3) No intent to commit underlying offense.* Plaintiffs, lacking allegations to support this element, ask the Court to stack another inference on top of the inference of an agreement: that the CB Defendants intended to financially benefit from sex trafficking. Opp'n 27:11-13, 53:3-7.[15] The only support that Plaintiffs provide the Court to make this inference is that the CB Defendants "inten[ded] to profit" generally from interest and fees and that "the court may infer intent from the Defendants' knowledge of the sex-trafficking and their actions taken in furtherance of the conspiracy." Opp'n 52:21-27, 53:3-7. But as explained in the Motion and above, these allegations are conclusory, implausible, and contradicted, and Plaintiffs have not plausibly alleged that the CB Defendants knew of sex trafficking or committed an overt act in furtherance of any conspiracy to monetize CSAM. Mot. Mem. 30:7-32:17; *supra* § IV(1), (2).[16]

Plaintiffs also argue that they "need not allege that each Defendant intended to break each of the specific statutes or torts so long as all Defendants agreed, either tacitly or explicitly, to further the MindGeek venture." Opp'n 51:14-18 (citing *In re McKinsey & Co. Nat'l Prescription Opiate Litig.*, No. MDL-3084, 2024 WL 2261926, at *6-7 (N.D. Cal. May 16, 2024) (conspiracy liability requires defendant to have **intended** an **unlawful** act or purpose)). Besides ignoring that there was no tacit or explicit agreement involving a CB Defendant and that Plaintiffs admit that a conspiracy claim requires "an agreement to accomplish an illegal objective" and "the requisite intent necessary to commit the underlying offense" (*supra* § IV(1)), this is an irrelevant argument.

---

[15] Plaintiffs cite *United States v. Calaway*, which, unlike this case, involved specific, quoted statements that supported the existence of a gambling-operation conspiracy. 524 F.2d 609, 614 (9th Cir. 1975).

[16] Even if there were a conspiracy, which there was not, the CB Defendants withdrew from it by 2018 when they ceased any loans to the MindGeek Borrowers. *See* Opp'n 18:21-25. A conspirator "withdraws" from an alleged business conspiracy when it has "retired from the business, severed all ties to the business, and deprived the remaining conspirator group of the services which [it] provided to the conspiracy." *Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 839 (11th Cir. 1999), *amended in part*, 211 F.3d 1224 (11th Cir. 2000).

Regardless of "break[ing]" "specific statutes or torts," Plaintiffs do not dispute that the defendant must intend to "aid in the ***wrongful*** activity." Mot. Mem. 30:7-10 (quoting *Ajzenman v. Off. Of Comm'r of Baseball*, 487 F. Supp. 3d 861, 867 (C.D. Cal. 2020)) (emphasis added); *see id.* at 31:17-32:8 (citing cases). As explained in the previous paragraph, Plaintiffs do not plead such intent or any plausible allegations to infer the CB Defendants had such an intent.

Plaintiffs' Opposition references Judge Carney's decision on Visa's motion to dismiss to support a conspiracy as to the CB Defendants. Opp'n 27:14-19. As shown in the Motion, however, Judge Carney found elements of a conspiracy as to Visa because its conduct and payment tool was enmeshed with the alleged unlawful conduct of MindGeek and because specific allegations showed Visa's knowledge and intent, including stopping—and later continuing—to provide payment services. *See* Mot. Mem. 23:16-23; *see also Fleites*, 617 F. Supp. 3d at 1163-64. No similar allegations exist as to the CB Defendants, and no reasonable inference can be made as to their knowledge or intent. *See* Mot. Mem. 23:23-24:5.

## V.    **Plaintiffs Fail to Refute That the Complaints Plead No UCL or FAL Claim**

Plaintiffs ignore two defects in the UCL and FAL claims against the CB Defendants: Plaintiffs neither allege conduct by a CB Defendant nor have statutory standing. Mot. Mem. 25:12-26:19. Plaintiffs simply repeat the conclusory allegation from the Complaints that they suffered financial harm from Defendants' "unfair business practices" without addressing how the CB Defendants caused the alleged harm. *See* Opp'n 54:10-13. Plaintiffs also fail to meaningfully refute other defects.

Plaintiffs limit their UCL claims to only the unlawful prong. *See* Opp'n 53:9-18. Plaintiffs' only purported support for a claim under the unlawful prong is referring to other claims and arguing that Defendants participated in a commercial venture with MindGeek and conspired to commit common law torts. *See* Opp'n 53:12-14. Because Plaintiffs' other claims against the CB Defendants fail, as explained in the Motion and above, Plaintiffs' UCL claims also fail. *See Johnson v. Ocwen Loan Servicing, LLC*,

1  No. 5:17-cv-1373-JGB-SP, 2017 WL 10581088, at *7 (C.D. Cal. Dec. 11, 2017)

2  (dismissing unlawful-prong UCL claim because other claims alleging violations of law

3  failed); *see also Foundry IV Inc. v. Hard Carry Gaming Inc.*, No. 23-cv-2690-KK-

4  MAR, 2024 WL 211010, at *6 (C.D. Cal. Jan. 3, 2024) (citation omitted) ("a common

5  law violation is, on its own, insufficient to establish a violation of the 'unlawful' prong

6  of the UCL").

7      As to the FAL, rather than try to address the reasons in the Motion that show

8  their claims fail (*see* Mot. Mem. 28:8-19), Plaintiffs refer to alleged statements by

9  MindGeek or Messrs. Antoon and Tassillo (Opp'n 53:19-54:8) and alleged omissions

10 by the MindGeek Defendants.    Statements by others cannot constitute

11 misrepresentations (*see* Mot. Mem. 28:8-19 (citing cases)), and Plaintiffs have not

12 alleged—especially not with particularity under Rule 9(b)—any omission by a CB

13 Defendant.  There was no statement to and no interaction with any of the Plaintiffs, nor

14 could a CB Defendant have a duty to disclose to Plaintiffs.  *See LiMandri v. Judkins*,

15 52 Cal. App. 4th 326, 336-37 (1997) (omission requires duty to disclose arising out of

16 "some sort of transaction" between plaintiff and defendant); *Handy v. LogMeIn, Inc.*,

17 No. 1:14-cv-01355-JLT, 2015 WL 1729681, at *5-6 (E.D. Cal. Apr. 15, 2015) (cited

18 favorably by Plaintiff, Opp'n 54:8-9) (FAL omission must be "contrary to a

19 representation actually made by the defendant, or an omission of a fact the defendant

20 was obligated to disclose").  The Opposition effectively conceded Plaintiffs' claims

21 under the FAL should be dismissed as to the CB Defendants.

22 **VI.    Plaintiffs Cannot Save Their IIED Claims Against the CB Defendants**

23      Plaintiffs do not address the fatal defects that doom their IIED claims against the

24 CB Defendants.  Plaintiffs do not dispute that the CB Defendants' conduct must be

25 "extreme and outrageous conduct with the intention of causing, or reckless disregard of

26 the probability of causing, severe emotion distress to plaintiff" and that conduct was the

27 "actual and proximate cause of [Plaintiffs'] emotional distress."  Mot. Mem. 33:7-13

28 (quoting *Doe v. Cal. Inst. of Tech.*, No. 2:19-cv-01005-AB-KS, 2020 WL 8463631, at

- 28 -

1    *6 (C.D. Cal. Feb. 4, 2020)).  Plaintiffs identify no such conduct by a CB Defendant.

2    Plaintiffs instead refer to the alleged conduct of MindGeek and repeat the allegations

3    that the CB Defendants participated in loans to the MindGeek Borrowers and that

4    MindGeek commercialized and profited from CSAM.  Opp'n 44:10-12, 45:6-10, 45:14.

5    Participating in loans is not extreme and outrageous, nor was it the actual or proximate

6    cause of any alleged emotional distress suffered by Plaintiffs here.  Mot. Mem. 34:20-

7    35:14; *supra* § I.

8         Further damning to Plaintiffs' IIED claims is their admission that the CB

9    Defendants' conduct must be "directed towards plaintiffs."  Opp'n 45:28 n.32.  Yet

10   Plaintiffs do not, and cannot, refute that the only alleged conduct by the CB

11   Defendants—participating in loans to the MindGeek Borrowers—was not "directed

12   towards" Plaintiffs.  *See* Mot. Mem. 33:17-34:19.

13        Plaintiffs' reliance on *Ford v. Revlon, Inc.,* 153 Ariz. 38, 43 (Ariz. 1987), is

14   misplaced.  *See* Opp'n 45:14-18.  Besides arising under Arizona law, in *Ford*, the

15   defendant employer had **first-hand knowledge** of the ***plaintiff's*** harassment by her

16   supervisor through the plaintiff's multiple complaints to her managers and yet failed to

17   intervene. 153 Ariz. at 44.  By contrast, Plaintiffs do not dispute that the CB Defendants

18   did not know of any Plaintiffs, their traffickers, or any videos of Plaintiffs, and thus

19   could not have "directed" their conduct at Plaintiffs or acted with intent or reckless

20   disregard that Plaintiffs would suffer emotional distress.  *See* Mot. Mem. 33:17-34:19

21   (citing cases).

22        Plaintiffs' attempt to distinguish *Reaud v. Facebook Inc.*, No. 23-cv-06329-

23   AMO, 2024 WL 4126066 (N.D. Cal. Sept. 9, 2024), exposes the lengths Plaintiffs have

24   gone to distort the straightforward lender role of the CB Defendants.  *See* Opp'n 45:21-

25   25 n.31.  The California district court in *Reaud* found the conduct of defendant

26   Facebook "passive" and therefore insufficient to support the plaintiff's IIED claim

27   specifically because Facebook's conduct—like the alleged conduct of the CB

28   Defendants—was not "directed primarily" at the plaintiff.  *Reaud*, 2024 WL 4126066,

1    at *3 (plaintiff "only assert[ed] in conclusory terms that Facebook 'intentionally

2    injur[ed]' him" and did "not allege any facts establishing that Facebook acted with an

3    intent to injure him or even with a realization that he would be injured"). No allegation

4    in any Complaint supports that the CB Defendants "had an active and intentional role

5    in the dissemination and monetization of Plaintiffs' illicit images." Opp'n 45:21-25

6    n.31. Plaintiffs do not, and cannot, overcome that no allegations support that a CB

7    Defendant engaged in extreme and outrageous conduct with the intention of causing, or

8    reckless disregard of the probability of causing, severe emotional distress to Plaintiffs

9    and that the outrageous conduct was the actual and proximate cause of the emotional

10    distress.

11    **VII.  Plaintiffs Cannot Save Their Untimely California Claims Against the CB**

12    **Defendants, Which Ceased all Loans to MindGeek Borrowers in 2018**

13    Plaintiffs do not dispute the essential facts that show that their state-law claims

14    are barred by the applicable statutes of limitations. *See* Mot. Mem. 36:3-37:4. Plaintiffs

15    base their theory of liability against the CB Defendants on loans made to the MindGeek

16    Borrowers yet filed their Complaints over five years after the CB Defendants ceased all

17    loans. *See* Mot. Mem. 36:12-22. Neither argument in the Opposition refutes that

18    Plaintiffs' California claims against the CB Defendants are untimely.

19    *First*, Plaintiffs ignore the CB Defendants' exit in 2018. Plaintiffs instead argue

20    as to all Defendants generally a theory of "continuous violation": each Plaintiff's video

21    was reuploaded, disseminated, and monetized after Plaintiffs discovered them; each

22    instance is a violation; and thus, the statutes of limitations did not begin to run on

23    Plaintiffs' claims until MindGeek removed all content depicting Plaintiffs from

24    MindGeek websites. Opp'n 42:1-43:16. Even if this were true, it does not affect the

25    statutes of limitations as to the CB Defendants. The CB Defendants could not have

26    engaged in a continuous violation after they ceased any association with the MindGeek

27    Borrowers. If the Court were to accept Plaintiffs' arguments as to the CB Defendants,

28    then the CB Defendants could be liable for all CSAM on MindGeek's websites from

2018 until forever. That is not the law. The statutes of limitations began to run as to the CB Defendants, at the latest, in 2018, and Plaintiffs' claims filed in 2024 are accordingly time-barred. Mot. Mem. 36:12-22 (citing *Carroll v. Lee*, No. 2:08-cv-975-RSL, 2009 WL 2855727, at *2 (W.D. Wash. Aug. 31, 2009)); *see also Thompson v. City of Monrovia*, 186 Cal. App. 4th 860, 879 (2010) (the continuous violation doctrine requires "at least one act [that is part of the proscribed conduct] must occur within the limitations period"); *Morton's*, 198 F.3d at 837 ("[t]he statute of limitations begins to run upon the conspirator's withdrawal from the conspiracy").

Moreover, the continuous violation doctrine would not apply here even if the CB Defendants had not exited in 2018. Plaintiffs confirm this by arguing that "[e]ach instance of MindGeek reuploading and monetizing Plaintiffs' CSAM images is a violation of the applicable statutes and common law." Opp'n 43:7-8. The alleged misconduct is thus "a series of discrete, independently actionable alleged wrongs" that fall outside the continuous violation doctrine's application. *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1198 (2013); *see also DC Comics v. Pac. Pictures Corp.*, 938 F. Supp. 2d 941, 950 (C.D. Cal. 2013) (refusing to apply continuous violation doctrine because "[plaintiff]'s harm was not the result of small harms that may not have been actionable on their own," "[r]ather, each was an independently actionable act"). Under their own interpretation of their claims, Plaintiffs could have filed actions once they first learned of the videos, and their alleged harms are not of a type that required accumulation to be actionable. As explained in the Motion, based on when they discovered videos of them had been uploaded to MindGeek's websites, most Plaintiffs' claims were filed after the statutes of limitations periods expired. Mot. Mem. 36:23-37:15.

**Second**, Plaintiffs argue that "the statute of limitations for each Plaintiffs' claims has been tolled since February 19, 2019," because that is when the class action complaint was filed in *Doe v. MindGeek USA Inc.*, No. 8:21-cv-338-WLH-ADS (C.D. Cal. Feb. 19, 2021). Opp'n 43:17-44:6. But California's equitable tolling doctrine

1    requires "timely notice to the defendant in the filing of the first claim." *Hatfield v.*
2    *Halifax PLC*, 564 F.3d 1177, 1185 (9th Cir. 2009) (cited favorably by Plaintiffs, Opp'n
3    43:27-44:3). "Tolling extends only to a named defendant in the initial class action, not
4    to different defendants in the subsequent action." McLaughlin on Class Actions § 3:15.
5    Under California law, "[a] class action against other [defendants] cannot toll the
6    limitations period against [defendants who were not named defendants in the class
7    action]." *Haugh v. Depuy-Motech, Inc.*, 14 F. App'x 883, 886 (9th Cir. 2001). The CB
8    Defendants were never named defendants in *Doe v. MindGeek USA Inc.*, and the case
9    thus cannot toll any claim against them here.

10        In addition, the Ninth Circuit in *Hatfield* held that tolling benefits are unavailable
11   to non-residents. 564 F.3d at 1189. "[Non-citizens of California] certainly should not
12   be permitted to take advantage of the state's tolling doctrine." *Id.* Thus, all Plaintiffs
13   not alleged to be citizens of California— K.A. (K.A. Compl. ¶ 10), N.L. (N.L. Compl.
14   ¶ 10), L.T. (L.T. Compl. ¶ 10), T.C. (T.C. Compl. ¶ 10), X.N. (X.N. Compl. ¶ 10), N.Y.
15   (N.Y. Compl. ¶ 10), J.C. (J.C. Compl. ¶ 10), C.S. (C.S. Compl. ¶ 10), S.O. (S.O. Compl.
16   ¶ 10), L.S. (L.S. Compl. ¶ 10), W.P. (W.P. Compl.  ¶ 10), A.K. (A.K. Compl. ¶ 10)—
17   may not toll their California claims against the CB Defendants.

18   **VIII.  Section 230 Must Bar All Claims Against the CB Defendants**

19        Plaintiffs, in a footnote, argue that the CB Defendants fail to assert a Section 230
20   defense because Plaintiffs' claims do not treat the CB Defendants as "publishers or
21   speakers" of third-party content. Opp'n 59:27-28 n.47. Plaintiffs refer to the arguments
22   made in the *Fleites* Opposition, but the cases cited there do not support Plaintiffs'
23   argument because, among other differences, they do not involve a plaintiff that seeks to
24   hold a lender (CB Defendants) liable for content (videos of Plaintiff) posted by third
25   parties (direct traffickers) on an interactive-computer-service-provider borrower's
26   (MindGeek) websites. *Fleites* Opp'n 57:7-16; CB Defs.' *Fleites* MTD Reply 20:24-28
27   n.17 (citing cases). Plaintiffs' claims necessarily treat the MindGeek Entity Defendants
28   as publishers or speakers of third-party content, and it would be an absurd result for the

1    MindGeek Entity Defendants to be immunized under Section 230 and not lenders even

2    though claims against them are asserted based on the same content.  *See* Mot. Mem.

3    40:2-41:4.

4                                                    **CONCLUSION**

5              For the reasons in the Motion and set forth above, the Court should grant the

6    Motion and dismiss the Complaints against the CB Defendants with prejudice.

7

8     Dated:  January 8, 2025                         WHITE & CASE LLP

9
                                                      By: _David G. Hille_
10                                                         David G. Hille

11
                                                      Attorneys for Defendants
12                                                    COLBECK CAPITAL
                                                      MANAGEMENT, LLC; CB MEDIA
13                                                    VENTURES DD, LLC; CB AGENCY
                                                      SERVICES, LLC; and CB
14                                                    PARTICIPATIONS SPV, LLC

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>CERTIFICATE OF COMPLIANCE</u>

2       The undersigned, counsel of record for the CB Defendants, certifies that the CB

3   Defendants' Omnibus Reply in Support of Their Omnibus Motion to Dismiss consists

4   of 33 pages, which complies with the 35-page limit set forth in Court's October 9, 2024

5   Order Granting Joint Stipulation to Request Limited Coordination For Purposes of

6   Responding to Complaints in Related Cases, ECF No. 54.

7

8    Dated:  January 8, 2025                         WHITE & CASE LLP

9
                                                     By: _David G. Hille_____
10                                                        David G. Hille

11
                                                     Attorneys for Defendants
12                                                   COLBECK CAPITAL
                                                     MANAGEMENT, LLC; CB MEDIA
13                                                   VENTURES DD, LLC; CB AGENCY
                                                     SERVICES, LLC; and CB
14                                                   PARTICIPATIONS SPV, LLC

15

16

17

18

19

20

21

22

23

24

25

26

27

28